**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**CASE NO.:**

JESSICA GUASTO,

       Plaintiff,

v.

THE CITY OF MIAMI BEACH, FL,
a Florida municipality,
RICHARD M. CLEMENTS,
in his individual capacity,
and STEVEN COSNER,
in his individual capacity.

       Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

      Plaintiff Jessica Guasto ("Plaintiff" or "Guasto") sues The City of Miami Beach, FL ("City"), Chief Richard M. Clements ("Clements") in his individual capacity, and Lieutenant Steven Cosner ("Cosner"), in his individual capacity, and states as follows:

## INTRODUCTION

      1.    This is an action for damages and equitable relief by the Plaintiff against the Defendants under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e et seq. ("Title VII"), for sex discrimination and retaliation, the Florida Civil Rights Act of 1992, § 760.10, Fla. Stat. ("FCRA") for sex discrimination and retaliation, violation of her right to equal protection under the 14th Amendment to the United States Constitution brought under 42 U.S.C. § 1983, conspiracy to violate her civil rights under the United States Constitution, breach of contract, fraudulent misrepresentation, and recission under state law.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under Title VII and 42 U.S.C. § 1983. This court also has supplemental jurisdiction over Plaintiff's related claims arising under state and local laws pursuant to 28 U.S.C. § 1367.

3.      Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

4.      Guasto is a Hispanic female, sui juris, and at all times material, a resident of Miami-Dade County and citizen of Florida.

5.      Defendant, The City of Miami Beach, is a political subdivision and a unit of local government of the State of Florida, duly created and existing pursuant to Article VIII, Section 2 of the Constitution of the State of Florida, and is situated within the geographic jurisdiction of this Court. The City of Miami Beach is an employer as defined by 29 U.S.C. § 203 and § 760.20, Fla. Stat.

6.      Richard M. Clements is the Chief of the City of Miami Beach Police Department. Upon information and belief, Clements resides in Broward County, Florida and is a citizen of Florida.

7.      Steven Cosner is a lieutenant employed by the City of Miami Beach Police Department. Upon information and belief, Cosner resides in Broward County, Florida and is a citizen of Florida.

## **GENERAL ALLEGATIONS**

8.      Guasto was hired by the Miami Beach Police Department ("MBPD") on January 30, 2012. Guasto had wanted to become a police officer since she was an adolescent, had an undergraduate degree in public administration and since the events giving rise to this action, has completed her master's degree in public administration.

9.      Guasto was promoted to the rank of MBPD police sergeant on May 1, 2017.

10.     During her tenure with the MBPD, various members of the MBPD sexually harassed Jessica to the point where it was persistent, severe, and disruptive to her work.

11.     An MBPD lieutenant took screenshots of Guasto's personal pictures on social media and spread them around the police station. He then told Guasto she needed to be more of an "extrovert," which is code for being more sexually active with male police officers.

12.     Guasto's colleagues and supervisors would openly make sexually explicit comments to her, view pornography on their personal cell phones in front of her, discuss penis enlargements, and comment about other female supervisors being promoted due to exchanging sexual favors.

13.     At the time, Guasto asked the Fraternal Order of Police ("FOP"), the local police union, to assist her in reporting this behavior. The FOP reported the behavior to Chief Clements, but Clements did nothing to stop it.

14.     On July 17, 2020, Jessica Guasto filed a charge with the EEOC, describing in detail over two single spaced pages the offensive behavior she was subjected to.

15.     In May 2020, prior to filing the July 2020 EEOC charge, the MBPD gave Guasto and her husband Nicholas Guasto – also an MBPD officer – notice that they were being investigated for being outside the city limits while on duty.

16.     An allegation of being outside the city limits while on duty is not a termination level offense and the MBPD has a custom and practice of giving lenient penalties for this behavior under egregious circumstances.

17.     On September 22, 2020, Chief Clements told Nicholas Guasto that the only way to resolve the internal affairs investigation for minor discipline was for the Plaintiff to withdraw her July 2020 EEOC charge.

18.     At a later meeting the same day, Chief Clements told Nicholas Guasto to communicate with the Plaintiff's then-attorney to withdraw the July EEOC charge, in exchange for disposing of the internal affairs investigation with a small suspension and the MBPD would also address the Plaintiff's harassment complaints.

19.     On September 24, 2020, Chief Clements called Nicholas Guasto upset because the City's attorney found out Chief Clements was speaking with Nicholas Guasto about having the Plaintiff withdraw the July EEOC charge.

20.     In that phone conversation, Chief Clements gave Nicholas Guasto specific instructions on who to call and what to say to remove the implication that Chief Clements was involved in pressuring the Plaintiff to withdraw the July 2020 EEOC charge and that Chief Clements would not be able to "help" Nicholas Guasto and the Plaintiff if this problem was not fixed as he instructed them.

21.     Nicholas Guasto took no further action in response to Chief Clements' directive.

22.     On November 2, 2020, the Plaintiff attended a meeting pursuant to a request by the City attorney. The meeting was allegedly to discuss the harassment complaints and the July 2020 EEOC charge. In attendance for the City were the City's attorney, Chief Clements, the MBPD

Deputy Chief, a MBPD Assistant Chief, the MBPD Internal Affairs Commander, and the City Human Resources Director.

23.     Instead of a discussion of the EEOC charge, the meeting was an interrogation regarding the open internal investigation, where Chief Clements threatened Guasto several times with termination for the open internal affairs investigation if she did not agree to a "settlement" to dismiss the July 2020 EEOC charge. None of the City personnel discussed the harassment complaints or the EEOC charge.

24.     The City personnel did not disclose what the settlement would be and said they would let the Plaintiff know via email to the FOP attorney what their offer of settlement would be.

25.     The City proposed that in exchange for not terminating the Plaintiff pursuant to the internal affairs investigation, the City demanded that the Plaintiff enter into a Settlement Agreement where the Plaintiff would have to dismiss her July 2020 EEOC charge, agree to a 160 hour suspension, and also enter into a "Last Chance Agreement" ("LCA"), which was incorporated into the Settlement Agreement.

26.     The terms of the Settlement Agreement and the LCA were onerous and unprecedented.

27.     The LCA required Guasto to give up her rights under the collective bargaining agreement between the City and the FOP, making her an at-will employee without the protections of the "just cause" standard for discipline under the collective bargaining agreement.

28.     Under the LCA, Chief Clements could terminate Guasto for any violation of any City of MBPD policy or procedure, with Chief Clements being the judge of compliance with those policies and procedures.

29.     The LCA required Guasto to sign a letter of resignation so that if Chief Clements determined that Guasto was in non-compliance with City policy and procedure, the City could claim Guasto resigned instead of admitting that it terminated Guasto's employment.

30.     In comparison with the Plaintiff, similarly situated male officers of the MBPD are treated differently, are not threatened with termination and given much more lenient penalties for the same violation the Plaintiff was accused of committing. A few examples are as follows:

    a.   In 2017 a male MBPD lieutenant was found to have been home while listed on duty and working on multiple occasions. A discipline panel, headed by then-Assistant Chief Clements recommended a letter of reprimand. Then-chief Oates suspended the lieutenant for 40 hours.

    b.   In 2016, 13 male officers and one sergeant of the MBPD motorcycle unit had been compensated for hours they did not work, by leaving early, coming in late or not coming in at all for either overtime details or regular days of work. The officers were only given 10 hours of suspension each. The sergeant was classified as terminated after he failed to cooperate with the MBPD investigation and retired. The discipline panel was led by then-Assistant Chief Clements.

    c.   In 2011, while investigating an incident where an officer ran a civilian over while walking on the beach, an audit was done of the supervisors in the area on attendance and other administrative issues. It was discovered that the male midnight shift lieutenant was violating the off-duty work policy by consistently coming to work late and leaving early to work off-duty yet was being compensated for working on-duty also. The lieutenant was given a minor suspension and subsequently promoted to a high-ranking position in the MBPD.

31.     The settlement agreement also provided that Guasto would meet with Chief Clements to provide information about her sexual harassment complaints so that the complaints could be investigated.

32.     On December 23, 2020, Guasto signed the agreement in good faith hoping to save her job and hoping that her complaints of harassment would be properly investigated and addressed.

33.     Guasto met with Chief Clements pursuant to the settlement agreement to provide information, but Chief Clements only asked for the name of a single staff person, close to him, involved in the sexual harassing behavior.

34.     Neither Chief Clements, the City nor the MBPD conducted any investigation into Guasto's sexual harassment complaints.

35.     On December 27, 2020, Guasto returned to work as a police sergeant, working the afternoon shift, from 3 pm to 11 pm. This was Guasto's first day back at work since signing the settlement and LCA.

36.     At the end of her afternoon shift, Guasto was mandated to work overtime through the ensuing midnight watch, 11 pm (Dec 27, 2020) to 7 am (Dec 28, 2020). Guasto was mandated to work for Lieutenant Steven Cosner.

37.     In 2014, while they were co-workers in patrol, Cosner pursued the Plaintiff romantically – including sending the Plaintiff a profane greeting card which showed a man exposing his penis to a woman.

38.     On multiple occasions Plaintiff rejected his advances. After being rejected, Cosner treated the Plaintiff poorly and refused to speak with her.

39.     Cosner was promoted to the rank of sergeant at the same time as Guasto and was recently promoted to lieutenant on December 27, 2020, so Cosner never worked in a supervisory role over Guasto before that date. In fact, Guasto never worked for Cosner any other time.

40.     Guasto worked the midnight shift from 11 pm (Dec 27, 2020) to 7 am (Dec 28, 2020) without incident.

41.     Upon information and belief, Cosner knew about the LCA and knew Guasto was an at-will employee who could be fired for any policy violation.

42.     Two days later, on December 30, 2020, Cosner submitted a formal allegation of employee misconduct, accusing Guasto of: 1) Failure to Supervise, 2) Conduct Unbecoming, 3) Insubordination, 4) Neglect of Duty, 5) Untruthfulness, 6) Performance of Duties, and 7) Failure to Monitor Radio.

43.     Cosner claimed in the complaint against Guasto that he gave her several specific assignments at the beginning of the shift, and that Guasto did not complete them and then lied about not completing the assignments.

44.     Cosner also claimed in the complaint that Guasto did not respond to her assigned area, was not monitoring the police radio, and insinuated that Guasto was sleeping.

45.     The allegations in the complaint were false.

46.     Chief Clements instructed Guasto to come to meet with him on January 19, 2021, telling Guasto that the attendees would be just Guasto, Chief Clements and the FOP president. When Guasto arrived for the meeting, the internal affairs commander and Cosner were also present.

47.     The internal affairs commander used the meeting as an interrogation, and the City subsequently fired Guasto on January 25, 2021.

48.     On July 7, 2021, the Plaintiff timely filed a charge of sex discrimination and retaliation with the Equal Employment Opportunity Commission. A copy of the charge is attached hereto as Exhibit A. The Plaintiff has complied with all conditions precedent to jurisdiction under Title VII and the FCRA in that Plaintiff filed her Charge of Discrimination with the Equal Employment Opportunity Commission and the Florida Commission on Human Relations ("FCHR") within 300 days of the unfair employment practices alleged in this Complaint.

49.     On January 3, 2022, the EEOC issued the Plaintiff a Notice of Right to Sue. This Complaint has been filed within 90 days of receipt of that notice. Plaintiff has fully complied with all prerequisites to jurisdiction in this Court under Title VII and the FCRA. A copy of the Notice is attached hereto as Exhibit B.

50.     Guasto has retained the undersigned counsel to represent her in this action and has agreed to pay a reasonable attorney's fee for the firm's services.

## COUNT I
## SEX DISCRIMINATION IN VIOLATION OF TITLE VII
### (The City of Miami Beach)

51.     Guasto repeats and realleges paragraphs 1 through 50 hereof, as if fully set forth herein.

52.     This is an action for discrimination based upon sex under Title VII.

53.     Plaintiff belongs to a protected category under Title VII in that she is a woman.

54.     Defendant, and its managers and agents, violated Title VII by discriminating against Plaintiff based upon her sex by subjecting her to unfavorable and disparate treatment when compared to male employees and discharging her.

55.     Defendant's stated reason for Plaintiff's termination is a pretext to conceal the unlawful nature of its conduct.

56.     Defendant is vicariously liable for all material adverse actions suffered by Plaintiff and all sex discrimination engaged in by Defendant's managers and supervisors.

57.     Defendant acted intentionally and with malice and reckless disregard for Plaintiff's rights under Title VII.

58.     As a result of Defendant's unlawful employment practices, Plaintiff has suffered damages, including loss of wages; benefits and other compensation; harm to her personal and business reputations; emotional distress, including, but not limited to, humiliation and embarrassment; and other pecuniary and non-pecuniary losses.

WHEREFORE, Plaintiff, prays that this Honorable Court will enter an Order:

a.     Declaring that Defendant violated Plaintiff's rights as protected by the laws of Title VII and ordering Defendant to institute policies, practices, training and programs that provide protection from discrimination against employees and that eradicate the effects of its past and present unlawful practices;

b.     Enjoining and restraining Defendant from engaging in acts of discrimination;

c.     Awarding Plaintiff back pay and the value of her lost employment benefits;

d.     Awarding Plaintiff reinstatement with full restoration of benefits or front pay in lieu of reinstatement;

e.     Awarding Plaintiff compensatory damages for her emotional distress, humiliation, embarrassment, and loss of reputation;

f.     Awarding Plaintiff her reasonable attorney's fees and costs incurred in this action;

g.     Awarding Plaintiff pre- and post-judgment interest; and

h.     Awarding any and all further relief as this Court may deem just and appropriate.

## COUNT II
## SEX DISCRIMINATION UNDER THE FCRA
### (The City of Miami Beach)

59.     Plaintiff reasserts the general allegations as set forth above in paragraphs 1-50 and incorporates the same herein by this reference.

60.     This is an action for discrimination based upon sex under the FCRA.

61.     Plaintiff belongs to a protected category under the FCRA in that she is a woman.

62.     Defendant, and its managers and agents, violated the FCRA by discriminating against Plaintiff based upon her sex by subjecting her to unfavorable and disparate treatment when compared to male employees and discharging her.

63.     Defendant's reason for Plaintiff's termination is a pretext to conceal the unlawful nature of its conduct.

64.     Defendant is vicariously liable for all material adverse actions suffered by Plaintiff and all sex discrimination engaged in by Defendant's managers and supervisors.

65.     Defendant acted intentionally and with malice and reckless disregard for Plaintiff's rights under the FCRA.

66.     As a result of Defendant's unlawful employment practices, Plaintiff has suffered damages, including loss of wages; benefits and other compensation; harm to her personal and business reputations; emotional distress, including, but not limited to, humiliation and embarrassment; and other pecuniary and non-pecuniary losses.

WHEREFORE, Plaintiff prays that this Honorable Court will enter an Order:

a.     Declaring that Defendant violated Plaintiff's rights as protected by the laws of the FCRA and ordering Defendant to institute policies, practices, training and programs

       that provide protection from discrimination against employees and that eradicate the effects of its past and present unlawful practices;

b.     Enjoining and restraining Defendant from engaging in acts of discrimination;

c.     Awarding Plaintiff back pay and the value of her lost employment benefits;

d.     Awarding Plaintiff reinstatement with full restoration of benefits or front pay in lieu of reinstatement;

e.     Awarding Plaintiff compensatory damages for her emotional distress, humiliation, embarrassment, and loss of reputation;

f.     Awarding Plaintiff her reasonable attorney's fees and costs incurred in this action;

g.     Awarding Plaintiff pre- and post-judgment interest; and

h.     Awarding any and all further relief as this Court may deem just and appropriate.

## COUNT III
## RETALIATION UNDER TITLE VII
### (The City of Miami Beach)

67.     Plaintiff re-alleges and incorporates by reference as if fully set forth herein the allegations in Paragraphs 1-50 above.

68.     This is an action for retaliation under Title VII.

69.     Defendant violated Title VII when it fired Plaintiff for having complained about the discriminatory treatment to which she was subjected.

70.     Defendant's reason for firing Plaintiff for violating policy and procedure is a pretext to conceal the unlawful nature of its conduct.

71.     Defendant is vicariously liable for all material adverse actions suffered by Plaintiff and all retaliation engaged in by Defendant's managers and supervisors.

72.     Defendant acted intentionally and with malice and reckless disregard for Plaintiff's rights under Title VII.

73.     But for reporting the unlawful race and sex discrimination to which she was subjected, Plaintiff would not have been fired.

74.     As a result of Defendant's unlawful employment practices, Plaintiff has suffered damages, including loss of wages; benefits and other compensation; harm to her personal and business reputations; emotional distress, including, but not limited to, humiliation and embarrassment; and other pecuniary and non-pecuniary losses.

WHEREFORE, Plaintiff prays that this Honorable Court will enter an Order:

a.      Declaring that Defendant violated Plaintiff's rights as protected by the laws of Title VII and ordering Defendant to institute policies, practices, training and programs that provide protection from discrimination against employees and that eradicate the effects of its past and present unlawful practices;

b.      Enjoining and restraining Defendant from engaging in acts of retaliation;

c.      Awarding Plaintiff back pay and the value of her lost employment benefits;

d.      Awarding Plaintiff reinstatement with full restoration of benefits or front pay in lieu of reinstatement;

e.      Awarding Plaintiff compensatory damages for her emotional distress, humiliation, embarrassment, and loss of reputation;

f.      Awarding Plaintiff her reasonable attorney's fees and costs incurred in this action;

g.      Awarding Plaintiff pre- and post-judgment interest; and

h.      Awarding any and all further relief as this Court may deem just and appropriate.

## COUNT IV
## RETALIATION UNDER THE FCRA
### (The City of Miami Beach)

75.      Plaintiff re-alleges and incorporates by reference as if fully set forth herein the allegations in Paragraphs 1-50 above.

76.      This is an action for retaliation under the FCRA

77.      Defendant violated the FCRA when it fired Plaintiff for having complained about the discriminatory treatment to which she was subjected.

78.      Defendant's reason for firing Plaintiff for violating policy and procedure is a pretext to conceal the unlawful nature of its conduct.

79.      Defendant is vicariously liable for all material adverse actions suffered by Plaintiff and all retaliatory acts engaged in by Defendant's managers and supervisors.

80.      Defendant acted intentionally and with malice and reckless disregard for Plaintiff's rights under the FCRA.

81.      But for reporting the unlawful sex discrimination to which she was subjected, Plaintiff would not have been fired by Defendant.

82.      As a result of Defendant's unlawful employment practices, Plaintiff has suffered damages, including loss of wages; benefits and other compensation; harm to her personal and business reputations; emotional distress, including, but not limited to, humiliation and embarrassment; and other pecuniary and non-pecuniary losses.

WHEREFORE, Plaintiff prays that this Honorable Court will enter an Order:

a.      Declaring that Defendant violated Plaintiff's rights as protected by the laws of the FCRA and ordering Defendant to institute policies, practices, training and programs

that provide protection from discrimination against employees and that eradicate the effects of its past and present unlawful practices;

b.    Enjoining and restraining Defendant from engaging in acts of retaliation;

c.    Awarding Plaintiff back pay and the value of her lost employment benefits;

d.    Awarding Plaintiff reinstatement with full restoration of benefits or front pay in lieu of reinstatement;

e.    Awarding Plaintiff compensatory damages for her emotional distress, humiliation, embarrassment, and loss of reputation;

f.    Awarding Plaintiff her reasonable attorney's fees and costs incurred in this action;

g.    Awarding Plaintiff pre- and post-judgment interest; and

h.    Awarding any and all further relief as this Court may deem just and appropriate.

**COUNT V**
**42 U.S.C. § 1983**
**SEX DISCRIMINATION IN VIOLATION OF THE 14TH AMENDMENT**
**(City of Miami Beach)**

83.    Plaintiff re-alleges and incorporates by reference as if fully set forth herein the allegations in Paragraphs 1-50 above.

84.    Defendant, as a political subdivision of the State of Florida, has taken action under color of law to deprive Plaintiff of her rights under the Equal Protection Clause of the United States Constitution and federal statutory law against discrimination on the basis of sex.

85.    Defendant's failure to enforce its own equal opportunity policies and its willingness to turn a blind eye and deaf ear to complaints of sex discrimination in the workplace resulted in a pattern, practice, policy and custom of allowing, tolerating and indeed, encouraging sex discrimination in the workplace.

15

86.     Upon information and belief, the City of Miami Beach, under the leadership of Chief Clements as the ultimate policy and decision maker, has engaged in a pattern, practice, policy and custom of allowing, tolerating, and encouraging sex discrimination in the workplace, not the result of mere negligence, but instead reflecting a reckless disregard for, or knowing violation of the statutory and constitutional rights of female employees.

87.     As a direct and proximate result of the actions and/or inactions of the City of Miami Beach, Plaintiff has been harmed and has suffered damages, including loss of wages; benefits and other compensation; harm to her personal and business reputations; emotional distress, including, but not limited to, humiliation and embarrassment; and other pecuniary and non-pecuniary losses.

WHEREFORE, Plaintiff prays that this Court will order Defendant to remedy discriminatory treatment of Plaintiff by:

a.     Paying appropriate back pay;

b.     Awarding Plaintiff reinstatement with full restoration of benefits or front pay in lieu of reinstatement;

c.     Paying for lost benefits including medical insurance, pension and retirement plan;

d.     Paying prejudgment interest;

e.     Providing any other relief that is appropriate.

f.     Enter an order against Defendant for compensatory damages; and

g.     Grant Plaintiff costs and a reasonable award of attorney's fees pursuant to 42 U.S.C. § 1988(b).

## COUNT VI
## 42 U.S.C. § 1983
## SEX DISCRIMINATION IN VIOLATION OF THE 14TH AMENDMENT
### (Defendant Clements)

88.　　Plaintiff re-alleges and incorporates by reference as if fully set forth herein the allegations in Paragraphs 1-50 above.

89.　　Defendant Clements has acted under color of law to deprive Plaintiff of her rights under the Equal Protection Clause of the United States Constitution and federal statutory law against discrimination based on sex.

90.　　The acts and omissions above were undertaken with Defendant Clements' willful, wanton, callous, and knowing disregard of the clearly established rights of the Plaintiff under the law to be free from sex discrimination in the workplace.

91.　　As a direct and proximate result of the actions and/or inactions of Defendant, Plaintiff has been harmed and has suffered damages, including loss of wages; benefits and other compensation; harm to her personal and business reputations; emotional distress, including, but not limited to, humiliation and embarrassment; and other pecuniary and non-pecuniary losses.

WHEREFORE, Plaintiff demands judgment against Defendant Clements, individually, for:

a.　　actual, compensatory, and punitive damages; and

b.　　a reasonable award of attorney's fees pursuant to 42 U.S.C. § 1988(b); and

c.　　any other relief this Court deems just and proper.

**COUNT VI**
**42 U.S.C. § 1983**
**CONSPIRACY TO VIOLATE CIVIL RIGHTS**
**(Defendants Clements and Cosner)**

92.     Plaintiff re-alleges and incorporates by reference as if fully set forth herein the allegations in Paragraphs 1-50 above.

92.     Defendants Clements and Cosner combined, conspired, confederated, and agreed with each other to violate Plaintiff's rights under the 14th Amendment to the United States Constitution and federal statutory law against discrimination on the basis of sex.

93.     As a direct and proximate direct and proximate result of the actions and/or inactions of Defendants, Plaintiff has been harmed and has suffered damages, including loss of wages; benefits and other compensation; harm to her personal and business reputations; emotional distress, including, but not limited to, humiliation and embarrassment; and other pecuniary and non-pecuniary losses.

WHEREFORE, Plaintiff demands judgment against Defendants Clements and Cosner, individually, for:

a.      actual, compensatory, and punitive damages; and

b.      a reasonable award of attorney's fees pursuant to 42 U.S.C. § 1988(b); and

c.      any other relief this Court deems just and proper.

**COUNT VII**
**BREACH OF CONTRACT UNDER FLORIDA LAW**
**(City of Miami Beach)**

94.     Plaintiff re-alleges and incorporates by reference as if fully set forth herein the allegations in Paragraphs 1-50 above.

95.     Plaintiff and defendant entered into a written contract, the Settlement Agreement and incorporated Last Chance Agreement referenced in paragraph 25 above.

18

96.     The written contract required the Plaintiff to withdraw her July 2020 EEOC Charge, give up a certain number of annual vacation hours and pay money to the City, in exchange for continued employment and the City investigating the Plaintiff's sexual harassment complaints, a copy being attached as exhibit C.

97.     Plaintiff performed all conditions precedent to be performed by Plaintiff or the conditions have occurred.

98.     The City did not conduct any investigation of the Plaintiff's sexual harassment complaints, and in fact terminated the Plaintiff's employment pursuant to unsubstantiated accusations.

WHEREFORE, Plaintiff requests judgment that the Settlement Agreement and Last Chance Agreement between the Plaintiff and the City of Miami Beach be canceled, that the parties be returned to the status quo antecedent the signing of the Settlement Agreement, for the costs of this suit, and for any other and further relief the court deems proper.

## COUNT VIII
## FRAUDULENT MISREPRESENTATION UNDER FLORIDA LAW
### (City of Miami Beach)

99.     Plaintiff re-alleges and incorporates by reference as if fully set forth herein the allegations in Paragraphs 1-50 above.

100.    On, or about December 18, 2020, the Plaintiff entered into a Settlement Agreement with the City of Miami Beach.

101.    In that Settlement Agreement, the City represented to the Plaintiff that Chief Clements would meet with the Plaintiff and investigate the claims she made in her July 2020 EEOC Charge, in lieu of the Plaintiff prosecuting her claims with the EEOC and in a court of law.

102.     The representation was made for the purpose of inducing the Plaintiff to withdraw her July 2020 EEOC Charge.

103.     The representation was false and known by the City to be false at the time it was made because Chief Clements met with the Plaintiff to only ask the name of a single staff person involved in the sexually harassing behavior, and neither Chief Clements, the City nor the MBPD conducted any investigation into the Plaintiff's sexual harassment complaints.

104.     The representation induced Plaintiff to enter into the Settlement Agreement.

105.     As a result of the City's misrepresentation, the Plaintiff lost her grievance rights guaranteed to her by the collective bargaining agreement between the City and the FOP and was fired after her first day back at work after signing the Settlement Agreement and Last Chance Agreement, based on Cosner's unsubstantiated allegations.

WHEREFORE, Plaintiff requests judgment that the Settlement Agreement and Last Chance Agreement between Plaintiff and the City of Miami Beach be canceled, that the parties be returned to the status quo antecedent the signing of the Settlement Agreement, for the costs of this suit, and for any other and further relief the court deems proper.

## COUNT IX
## RESCISSION UNDER FLORIDA LAW
### (City of Miami Beach)

106.     Plaintiff re-alleges and incorporates by reference as if fully set forth herein the allegations in Paragraphs 1-50 above.

107.     This is an action for rescission of the December 2020 Settlement Agreement and incorporated Last Chance Agreement.

108.    On, or about November 20, 2020, the City of Miami Beach represented to the Plaintiff that Chief Clements would meet with the Plaintiff to gather information so that the Plaintiff's sexual harassment complaints could be investigated.

109.    After that, on December 18, 2020, Plaintiff and the City entered into a written Settlement Agreement by which the City, through Chief Clements, agreed to meet with the Plaintiff and address the claims made in the July 2020 EEOC Charge, including but not limited to identifying the names of all persons who were alleged to have engaged in sexually harassing conduct as addressed in the Charge. A copy of the Settlement Agreement is attached to this Complaint and marked exhibit C.

110.    Pursuant to the Settlement Agreement, the City gave to Plaintiff the promises of continued employment and to investigate the July 2020 EEOC Charge, and Plaintiff gave to the City money in the form of cash payment and suspension hours, and signed the Last Chance Agreement, which contained additional provisions and was incorporated into the Settlement Agreement as consideration for the mutual promises and obligations of the Settlement Agreement.

111.    The representations made by the City set forth in Paragraph 2 of the Settlement Agreement, are now, and when made were, false and the City knew them to be false at the time that they were made.

112.    The City made the representations intending that they would induce Plaintiff to enter into the Agreement that Plaintiff seeks to rescind.

113.    Plaintiff entered into the Agreement in reliance on the false representations made by the City and had the Plaintiff known that the representations were false, the Plaintiff would not have entered into the Settlement Agreement and incorporated Last Chance Agreement.

114.    In entering into the Settlement Agreement, Plaintiff was not aware of the falsity of the representations made by the City, reasonably believed them to be true, and could not have discovered their falsity by the exercise of reasonable diligence.

115.    On March 5, 2021, Plaintiff sent a letter to the City advising the City that it was in breach of the Settlement Agreement and demanded arbitration, thus placing both parties in the position they occupied prior to entering the Settlement Agreement and notifying the City that Plaintiff would seek to have the contract judicially canceled.

116.    The invalidity of the Settlement Agreement does not appear on the face of it or from the face of any other instrument necessary to the use of the Settlement Agreement in evidence.

117.    Plaintiff has no plain, speedy, and adequate legal remedy that would be as efficient to attain the ends of justice and its prompt administration as a decree for rescission would be.

118.    Rescission of the Settlement Agreement would be fair and equitable and would not be unduly harsh on the City.

WHEREFORE, Plaintiff requests judgment that the Settlement Agreement and Last Chance Agreement between Plaintiff and the City of Miami Beach be canceled, that the parties be returned to the status quo antecedent the signing of the Settlement Agreement, for the costs of this suit, and for any other and further relief the court deems proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims properly triable by a jury.

Respectfully submitted,

**PAUL DARAGJATI PLC**

_____
PAUL A. DARAGJATI, ESQ.
Florida Bar No. 713813
Georgia Bar No. 491830
paul@daragjatilaw.com
4745 Sutton Park Ct., Ste. 503
Jacksonville, FL 32224
Telephone:     (904) 379-4117
Fax:             (904) 379-7108
*Counsel for Jessica Guasto*