UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:22-cv-21004-DPG

**JESSICA GUASTO**,

    Plaintiff,

v.

**THE CITY OF MIAMI BEACH, FL,**
a Florida municipality,
**RICHARD M. CLEMENTS**,
in his individual capacity,
and **STEVEN COSNER**,
in his individual capacity,

    Defendants.

_____/

## ORDER

**THIS CAUSE** comes before the Court on Defendants', The City of Miami Beach ("the City"), Richard M. Clements ("Chief Clements"), and Steven Cosner ("Lieutenant Cosner") (collectively "Defendants"), Motion to Dismiss Plaintiff's Complaint with Prejudice (the "Motion"), [ECF No. 11]. The Court has carefully reviewed the Motion, the record, and the applicable law. For the reasons discussed below, the Motion is granted in part and denied in part.

### BACKGROUND[1]

This action arises out of the alleged discrimination and retaliation that Plaintiff Jessica Guasto experienced while employed with the Miami Beach Police Department (the "MBPD"). Plaintiff was hired as a police officer with the MBPD on January 30, 2012. [ECF No. 1 ¶ 8]. She was subsequently promoted to the rank of sergeant on May 1, 2017. *Id.* ¶ 9. Throughout the course

---

[1] The Court accepts Plaintiff's allegations set forth in her Complaint, [ECF No. 1], as true for purposes of the motion to dismiss. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

of her employment, Plaintiff was persistently and severely sexually harassed by various members of the MBPD, which disrupted her work. *Id.* ¶ 10. On one occasion, an MBPD lieutenant took screenshots of Plaintiff's personal pictures on social media and spread them around the police station. *Id.* ¶ 11. He then told Plaintiff that she needed to be more of an "extrovert"—code for being more sexually active with male police officers. *Id.* However, the harassment did not end there. Plaintiff alleges that her colleagues and supervisors made sexually explicit comments to her, viewed pornography on their personal cell phones in front of her, discussed penis enlargements, and made comments about other female supervisors being promoted due to exchanging sexual favors. *Id.* ¶ 12.

Plaintiff contacted the Fraternal Order of Police ("FOP"), the local police union, to assist her in reporting the harassment. *Id.* ¶ 13. Although FOP reported the harassment to Chief Clements, he did nothing to stop it. *Id.* Plaintiff then filed a charge with the Equal Employment Opportunity Commission ("EEOC") on July 17, 2020, describing the offensive behavior. *Id.* ¶ 14. In May 2020, prior to filing her EEOC charge, the MBPD notified Plaintiff and Nicholas Guasto ("Officer Guasto"), an MBPD officer and Plaintiff's husband, that they were being investigated for being outside the city limits while on duty. *Id.* ¶ 15.

Plaintiff alleges that on September 22, 2020, Chief Clements told her husband that the only way to resolve the internal affairs investigation with minor discipline was for Plaintiff to withdraw her July 2020 EEOC charge. *Id.* ¶ 17. Later that day, Chief Clements told Officer Guasto to ask Plaintiff's then-attorney to withdraw the EEOC charge in exchange for disposing the internal affairs investigations with a small suspension. *Id.* ¶ 18. Chief Clements also told Officer Guasto that the MBPD would address Plaintiff's harassment complaints. *Id.*

After learning that the City's attorney found out about his proposal to drop the EEOC charge, Chief Clements became upset and called Officer Guasto. *Id.* ¶¶ 19–20. Chief Clements gave

Officer Guasto specific instructions on who to call and what to say to absolve him of any implication that he pressured Plaintiff to withdraw her EEOC charge. *Id.* ¶ 20. Officer Guasto took no further action in response to Chief Clements' directive. *Id.* ¶ 21.

On November 2, 2020, Plaintiff attended a meeting with the City's attorney, Chief Clements, the MBPD Deputy Chief, an MBPD Assistant Chief, the MBPD Internal Affairs Commander, and the City's Human Resources Director to discuss her harassment complaints and the EEOC charge. *Id.* ¶ 22. Plaintiff alleges that instead of discussing the EEOC charge, the meeting was an interrogation regarding the open internal affairs investigation. *Id.* ¶ 23. During the meeting, Chief Clements threatened Plaintiff several times with termination if she did not agree to a settlement and dismissal of the EEOC charge. *Id.* An unnamed representative of the City proposed that in exchange for not terminating Plaintiff pursuant to the internal affairs investigation, Plaintiff would enter into a settlement agreement (the "Settlement Agreement") where she would: (1) dismiss her July 2020 EEOC charge; (2) agree to a 160-hour suspension; and (3) enter into a Last Chance Agreement (the "LCA")[2]. *Id.* ¶¶ 25–29, 31. Despite characterizing the terms of the Settlement Agreement and the LCA as onerous and unprecedented, Plaintiff signed the Settlement Agreement on December 23, 2020. *Id.* ¶¶ 26, 32. Soon after, Plaintiff alleges that she met with Chief Clements pursuant to the Settlement Agreement to provide information related to the harassment she experienced. *Id.* ¶ 33. However, Chief Clements only asked for the name of a single staff person involved in the sexually harassing behavior, and neither Chief Clements, the City, nor the MBPD conducted any investigation into Plaintiff's sexual harassment complaints. *Id.* ¶¶ 33–34.

Plaintiff returned to work on December 27, 2020, working the afternoon shift from 3 p.m. to 11 p.m.—her first day back since signing the Settlement Agreement. *Id.* ¶ 35. At the end of her shift, Plaintiff was ordered to work overtime through the subsequent midnight shift—11 p.m. (Dec

---

[2] The LCA was incorporated into the Settlement Agreement.

27, 2020) to 7 a.m. (Dec 28, 2020)—reporting to Lieutenant Cosner. *Id.* ¶ 36. While Plaintiff claims that she worked the midnight shift without incident, Lieutenant Cosner filed a formal allegation of employee misconduct, accusing Plaintiff of: 1) Failure to Supervise, 2) Conduct Unbecoming, 3) Insubordination, 4) Neglect of Duty, 5) Untruthfulness, 6) Performance of Duties, and 7) Failure to Monitor Radio. *Id.* ¶¶ 40, 42. Therein, Lieutenant Cosner claimed that he gave Plaintiff several specific assignments at the beginning of her shift, but that Plaintiff did not complete them and lied about not completing the assignments. *Id.* ¶ 43. Lieutenant Cosner further claimed that Plaintiff did not respond to her assigned area and was not monitoring the police radio, and insinuated that Plaintiff was sleeping. *Id.* ¶ 44. Plaintiff disputes Lieutenant Cosner's allegations. *Id.* ¶ 45. Plaintiff contends that Lieutenant Cosner pursued and sexually harassed her on multiple occasions and that he treated Plaintiff poorly and refused to speak with her after she rejected him. *Id.* ¶ 37–38. Plaintiff also claims that, upon information and belief, Lieutenant Cosner knew about the LCA and that Plaintiff was an at-will employee who could be fired for any policy violation. *Id.* ¶ 41.

On January 19, 2021, Chief Clements instructed Plaintiff to meet with him and the FOP president. *Id.* ¶ 46. Despite being told that no other parties would be present, the internal affairs commander and Lieutenant Cosner were also present. *Id.* Plaintiff contends that the internal affairs commander used the meeting as an interrogation and subsequently terminated her on January 25, 2021. *Id.* ¶ 47. Plaintiff then filed a charge of sex discrimination and retaliation with the EEOC on July 7, 2021. *Id.* ¶ 48. The EEOC issued Plaintiff a Notice of Right to Sue on January 3, 2022. *Id.* ¶ 49.

On April 2, 2022, Plaintiff filed her Complaint against Defendants, setting forth ten counts. Counts I and II allege sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Florida Civil Rights Act of 1992, § 760.10, Fla. Stat. (the "FCRA") as to the City. [ECF No. 1 ¶¶ 51–66]. Counts III and IV allege retaliation under Title VII

4

and the FCRA as to the City. *Id.* ¶¶ 67–82. Counts V and VI allege sex discrimination in violation of the Fourteenth Amendment against the City and Chief Clements, respectively. *Id.* ¶¶ 83–91. Count VII[3] alleges conspiracy to violate civil rights as to Chief Clements and Lieutenant Cosner. *Id.* ¶¶ 92–93. Count VIII[4] alleges breach of contract as to the City. *Id.* ¶¶ 94–98. Count IX[5] alleges fraudulent misrepresentation as to the City. *Id.* ¶¶ 99–105. Finally, Count X[6] alleges recission as to the City. ¶¶ 106–18.

On May 27, 2022, Defendants filed the instant Motion. [ECF No. 11]. Defendants argue that Plaintiff's claims are barred by the Settlement Agreement and that the Complaint lacks sufficient factual allegations to state claims for which relief can be granted.

## LEGAL STANDARD

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" meaning that it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court must accept well-pleaded factual allegations as true, "conclusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010). "[T]he pleadings are construed broadly," *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006), and the allegations in the complaint are viewed in the light most favorable to the plaintiff. *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1270 (11th Cir. 2016). At bottom, the question is not whether the

---

[3] The seventh count in Plaintiff's Complaint is also labeled "Count VI." The Court refers to this count as Count VII.
[4] The eighth count in Plaintiff's Complaint is labeled "Count VII." The Court refers to this count as Count VIII.
[5] The ninth count in Plaintiff's Complaint is labeled "Count VIII." The Court refers to this count as Count IX.
[6] The tenth count in Plaintiff's Complaint is labeled "Count IX." The Court refers to this count as Count X.

claimant "will ultimately prevail . . . but whether [her] complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (internal quotation and citation omitted).

## DISCUSSION

At the outset, Defendants argue that Plaintiff waived many of her claims by signing the Settlement Agreement. An employee may waive a cause of action under Title VII or the like[7] as part of a voluntary settlement agreement, so long as the employee does so knowingly and voluntarily. *See Myricks v. Fed. Reserve Bank of Atlanta*, 480 F.3d 1036, 1040 (11th Cir. 2007) ("To release a cause of action under Title VII, the employee's consent to the settlement [must be] voluntary and knowing based on the totality of the circumstances." (citation and quotations omitted)). The Court agrees that Plaintiff waived her federal and state sex discrimination claims pursuant to the Settlement Agreement. Because Plaintiff points to her claims for breach of contract, false misrepresentation, and recission as bases to void the waiver, the Court will address each in turn.

### I. Breach of Contract

Under Florida law, to plausibly allege a breach of contract, a plaintiff must "plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citing *Friedman v. N.Y. Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008)); *see also NPA Assocs., LLC v. Lakeside Portfolio Mgmt., LLC*, No. 12-23930-CIV, 2014 WL 714812, at *4 (S.D. Fla. Feb. 22, 2014) ("The Complaint must allege which provision of the contract has been

---

[7] Such as FCRA claims, which are evaluated under the same standard as Title VII claims. S*ee Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1271 (11th Cir. 2010) ("Because the FCRA is modeled after Title VII, and claims brought under it are analyzed under the same framework, the state-law claims do not need separate discussion and their outcome is the same as the federal ones.") (citations omitted).

breached.") (citations and quotations omitted). The crux of Plaintiff's breach of contract claim focuses on the parties' purported agreement that Chief Clements would conduct an investigation into Plaintiff's sexual harassment complaint. [ECF No. 1 ¶¶ 96–98]. Plaintiff relies on the following language in the Settlement Agreement:

> Salabarria[8] will immediately have a meeting with the Chief of Police wherein she will address the claims made in the Charge, including but not limited to identifying the names of all persons who allegedly engaged in the conduct addressed in the Charge. The refusal to name the persons who have allegedly engaged in the conduct in the Charge shall be grounds for immediate termination, as discussed in the attached Last Chance Agreement. Salabarria shall be entitled to have a Union Representative with her during this meeting.

[ECF No. 1-3 at 2].

Importantly, the Settlement Agreement does not explicitly require that Chief Clements or the City conduct an investigation into Plaintiff's sexual harassment claims. Nor does the Settlement Agreement describe the scope of any such investigation. So, while Plaintiff met with Chief Clements to provide information regarding the harassment she experienced and provided the name of a staff person involved in the sexual harassing behavior, [ECF No. 1 ¶ 33], she has not sufficiently shown that an investigation was a condition of the Settlement Agreement or how the Settlement Agreement was violated in this respect. *See Simmons v. Peavy–Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940) ("Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control."). Therefore, because Plaintiff has not plausibly alleged a breach of the Settlement Agreement, Count VIII shall be dismissed.

## II.   Fraudulent Misrepresentation

As to Plaintiff's fraudulent misrepresentation claim, the Court also finds Plaintiff pleadings insufficient. To state a claim for fraudulent misrepresentation, "a plaintiff must allege facts which,

---

[8] Plaintiff's surname prior to marrying her husband, Officer Guasto.

if proven, are sufficient to show: (1) that the defendant made a false statement concerning a specific material fact; (2) that the defendant knew the statement was false; (3) that the defendant intended the plaintiff to [rely] on the statement; and (4) that the plaintiff did rely on the statement to [her] detriment." *Meredith & Sons Lumber Co., Inc. v. Weyerhaeuser Co.*, No. 3:04CV283/RV, 2005 WL 8163302, at *3 (S.D. Fla. Oct. 26, 2005). As Plaintiff alleges fraud, her pleadings are subject to the heightened pleading requirement of Federal Rule of Civil Procedure 9(b). *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Plaintiff must "identify (1) the precise statements, documents or misrepresentations made; (2) the time and place of and persons responsible for the statement[s]; (3) the content and manner in which the statements misled the plaintiff; and (4) what the Defendants [gain] by the alleged fraud." *West Coast Roofing and Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008) (citations omitted).

The Complaint alleges that "the City represented to the Plaintiff that Chief Clements would meet with the Plaintiff and investigate the claims she made in her July 2020 EEOC Charge, in lieu of the Plaintiff prosecuting her claims with the EEOC and in a court of law." [ECF No. 1 ¶ 101]. However, as noted above, the Settlement Agreement does not contain an explicit requirement that an investigation be conducted by the City or Chief Clements. Plaintiff alleges that, prior to the Settlement Agreement, Chief Clements told Officer Guasto that the MBPD would address Plaintiff's harassment complaints. *Id.* ¶ 18. But, even if true, that representation would be superseded by the Settlement Agreement. Notably, the Settlement Agreement provides:

> This Agreement (which includes the exhibits attached hereto that are incorporated by reference), is the entire agreement between the Parties on its subject matter and supersedes any other agreement or understanding whatsoever, whether written or oral. **The Parties have entered into this Agreement solely on the basis of the language, representations, and understandings expressed in this Agreement and not on the basis of any other representation or understanding whatsoever. This Agreement shall be construed and applied according to its express language and**

> **not strictly against any Party, regardless of authorship.** This Agreement shall be governed by and construed according to the laws of the State of Florida.

[ECF No. 1-3 at 3] (emphasis added). Because Plaintiff's pleadings fail to satisfy Rule 9(b)'s heightened pleading requirements and the terms of the Settlement Agreement expressly contradict Plaintiff's allegations, Count IX shall be dismissed.

### III. Rescission

Finally, the Court also finds Plaintiff's allegations for recission insufficient. To state a cause of action for recission under Florida law, Plaintiff must plead the following:

> (1) the character or relationship of the parties; (2) the making of a contract; (3) the existence of fraud, mutual mistake, false representation, impossibility of performance, or other ground for rescission or cancellation; (4) the party seeking rescission had rescinded the contract and notified the other party to the contract of such rescission; (5) [if] the moving party has received benefits from the contract, he should further allege an offer to restore these benefits to the party furnishing them, if restoration is possible; and (6) the moving party has no adequate remedy at law.

*Gamez v. ACE Am. Ins. Co.*, No. 11-22842-CIV, 2012 WL 12864985, at *2 (S.D. Fla. May 9, 2012) (citations omitted). Defendants argue that Plaintiff fails to meet the third element, which requires a valid claim for fraud, false representations, or any other valid basis for rescission. The Court agrees. As noted under the fraudulent misrepresentation analysis, Plaintiff insufficiently alleges that she was fraudulently induced to enter the Settlement Agreement or that an official, employee, or agent of the City made fraudulent misrepresentations on which she relied. In the Complaint, Plaintiff references a letter[9] that she sent to the City "advising the City that it was in breach of the Settlement Agreement and demanded arbitration." [ECF No. 1 ¶ 115]. However, the letter provides no additional facts, details, or incidents concerning the purported fraudulent

---

[9] Plaintiff does not include the letter in any of the attached exhibits to her Complaint. However, Defendants attached the letter as an exhibit to their Motion to Dismiss. *See* [ECF No. 11-1].

9

inducements and/or misrepresentations that would alter this Court's analysis. Accordingly, Plaintiff's recission claim fails and Count X shall be dismissed.

### IV. Settlement Agreement – Barred Claims

The Settlement Agreement explicitly stipulates that Plaintiff "releases and waives any and all claims of any kind whatsoever against the City that she had, has or may have from the beginning of the world through the date of [the] Agreement." [ECF No. 1-3 at 2] ("Release of Claims, Covenant Not to Sue").[10] The Settlement Agreement further stipulates that Plaintiff "will not file a lawsuit or claim of any kind asserting the claims released [therein]." *Id.* at 3. The Settlement Agreement was executed on December 23, 2020, upon City Manager Raul J. Aguila signing the finalized agreement. [ECF No. 1-3 at 4, 11]. Plaintiff does not allege that she unknowingly or involuntary signed the Settlement Agreement. In fact, despite her breach of contract, fraudulent misrepresentation, and rescission claims, Plaintiff's pleadings reflect her attempt to enforce favorable terms of the Settlement Agreement. Thus, as stipulated by the parties, any and all claims that Plaintiff may have had against Defendants that occurred before December 23, 2020, are barred by the Settlement Agreement.

The conduct alleged in Counts I, II, V, VI, and VII pre-date the execution of the Settlement Agreement. Thus, each of these claims are barred by Plaintiff's waiver. Further, as the Court noted in the above analysis, Plaintiff also fails to sufficiently plead a cause of action for breach of contract, fraudulent misrepresentation, or recission. Accordingly, Counts I, II, V, VI, VII, VIII, IX, and X shall be dismissed.

---

[10] For the purposes of the Settlement Agreement, "the City" includes "the City of Miami Beach, its elected and appointed officials, its employees, and its insurers, attorneys, or agents of any kind." [ECF No. 1-3 at 1].

V.      **Retaliation**

Finally, the Court finds that Plaintiff pleads a plausible claim for retaliation under Title VII and the FCRA. To establish a *prima facie* case[11] of discriminatory employment retaliation under Title VII or the FCRA, Plaintiff must show (1) she engaged in a statutorily protected activity, (2) she suffered an adverse employment action, and (3) the adverse action was causally connected to the protected activity. *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994).

Here, Plaintiff alleges that she was terminated for complaining about discriminatory treatment and harassment. Plaintiff contends that her termination was premised, at least in part, on a false formal allegation of employee misconduct filed by Lieutenant Cosner. *See* [ECF No. 1-1 at 1–2] (alleging that Plaintiff was terminated following an "perfunctory investigation" and a subsequent meeting with Plaintiff and members of the MBPD to "discuss the allegations" brought against her). The Court finds that Plaintiff adequately alleges that she engaged in a statutorily protected activity when she complained about discriminatory treatment and harassment. The Court also finds that Plaintiff sufficiently alleges that she suffered a materially adverse action when she was terminated. Thus, Plaintiff satisfies the first and second elements of the pleading requirements for retaliation.

The Court further finds that Plaintiff sufficiently alleges a causal link between her protected conduct and the alleged adverse employment action. "To establish a causal connection, a plaintiff must show that 'the decision-makers [were] aware of the protected conduct,' and 'that the protected activity and the adverse action were not wholly unrelated.'" *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000) (alteration in original) (quoting *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999)). The United States Supreme Court in *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53 (2006), established a standard for retaliation cases that is "significantly more

---

[11] The Court recognizes that Plaintiff need not make out a *prima facie* case at this stage of litigation. She need only allege that the elements have been met—with sufficient facts in support of her allegations—that will allow the Court to draw a reasonable inference that Defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678.

liberal than the standard previously applied in [the Eleventh] Circuit." *Henderson v. Dade Cnty. Police Benevolent Ass'n*, No. 14-20321-CIV, 2014 U.S. Dist. LEXIS 98159, at *33 (S.D. Fla. Jul. 18, 2014) (citing *Crawford v. Carroll*, 529 F.3d 967, 974, n.13 (11th Cir. 2008) ("[*Burlington*] strongly suggests that it is for a jury to decide whether anything more than the most petty and trivial actions against an employee should be considered 'materially adverse' to him and thus constitute adverse employment actions.")). "While some adverse actions may not individually rise to the level of an adverse employment action . . . the Court may consider adverse actions collectively to determine whether the totality of the alleged actions rise to the [] level of substantiality to constitute unlawful retaliation." *Henderson*, 2014 U.S. Dist. LEXIS 98159, at *33–34 (citations omitted).

In the instant action, Plaintiff alleges that on her first day back to work after signing the Settlement Agreement, she was assigned to work with Lieutenant Cosner. Lieutenant Cosner was "previously involved in the conduct leading to the 2020 [EEOC] Charge." [ECF No. 1-1 at 2]. Plaintiff also alleges that Lieutenant Cosner knew about the Settlement Agreement and the included LCA, which rendered Plaintiff an at-will employee who could be fired for any policy violation. Plaintiff alleges that based on Lieutenant Cosner's knowledge about the LCA, he submitted a formal allegation of employee misconduct which consisted of false allegations against her. Plaintiff further contends that this contributed to her termination. Based on these allegations, a reasonable person could conclude that Plaintiff's termination was related to her discrimination and harassment claims. Therefore, Counts III and IV may proceed.

## CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss Plaintiff's Complaint with Prejudice, [ECF No. 11], is **GRANTED in part and DENIED in part**.

1. Defendants' Motion is **GRANTED** as to Counts I, II, V, VI, VII, VIII, IX, and X.

2. Defendants' Motion is **DENIED** as to Counts III and IV.

3. Defendants shall file an answer to the Complaint within fourteen (14) days of the date of this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 10th day of July, 2023.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE