UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:22-cv-21004-MD

**JESSICA GUASTO**,

      Plaintiff,

vs.

**THE CITY OF MIAMI BEACH, FL**,
a Florida municipality,

      Defendant.

_____/

## DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S SECOND AMENDED INITIAL DISCLOSURES, MOTION FOR SANCTIONS, AND INCORPORATED MEMORANDUM OF LAW

Defendant, THE CITY OF MIAMI BEACH, FL, a Florida municipality (the "City"), through its counsel and pursuant to Federal Rules of Civil Procedure 16(b)(4) and 37(c)(1), and 28 U.S.C. § 1927, files its Motion to Strike Plaintiff's Second Amended Initial Disclosures, Motion for Sanctions, and Incorporated Memorandum of Law and in support states the following:

## PRELIMINARY STATEMENT

1.      This is an employment discrimination case.

2.      On April 2, 2022, Plaintiff filed a ten (10) count Complaint [DE 1].

3.      On July 10, 2023, this Court issued an order dismissing eight (8) of the ten (10) counts [DE 32].

1

4.      On August 1, 2023, the Court issued its Scheduling Order Setting Civil Trial Date and Pretrial Schedule, Requiring Mediation, and Referring Certain Motions to Magistrate Judge ("Scheduling Order") [DE 37].[1]

5.      Therein, the Court set April 26, 2024, as the fact discovery completion date. *See* DE 37.

6.      On April 30, 2024, without conferral or leave of Court, Plaintiff unilaterally served Plaintiff's Amended Initial Disclosures ("Amended Disclosures"). A copy of the Amended Disclosures is attached as **Exhibit A**.

7.      On May 4, 2024, Defendant filed its Motion to Strike Plaintiff's Amended Initial Disclosures, Motion for Sanctions, and Incorporated Memorandum of Law [DE 58].

8.      On May 7, 2024, again without conferral and without leave of Court, Plaintiff unilaterally served Plaintiff's Second Amended Initial Disclosures ("Second Amended Disclosures"). A copy of the Second Amended Disclosures is attached as **Exhibit B**.

9.      The main difference between the Amended Disclosures and the Second Amended Disclosures is that the Second Amended Disclosures do not include a plea for punitive damages.

10.      As is detailed more fully below, the Court should strike the Second Amended Disclosures for three reasons: (1) the Second Amended Disclosures were served after the fact discovery cut off, without conferral and without leave of Court; (2) the Second Amended Disclosures identify six (6) new witnesses who are only being identified for the first time ***after***

---

[1]      On May 9, 2024, this Court issued its Order Setting Trial and Pre-Trial Schedule, Requiring Mediation, and Referring Certain Matters to Magistrate Judge ("Updated Scheduling Order") [DE 59]. The Updated Scheduling Order replaces "the Scheduling Order previously issued by United States District Judge Darrin P. Gayles in light of the transfer of the above-captioned case to the undersigned for all further proceedings. Any deadlines that have already passed or expired shall remain as such." *See* DE 59. The instant Motion concerns the fact discovery deadline of April 26, 2024. Therefore, the Updated Scheduling Order does not impact the issues raised in this Motion.

the close of fact discovery; (3) and the Second Amended Disclosures disclose witnesses whose anticipated testimony is improper character evidence.

11.     Further, the Court should impose sanctions pursuant to Federal Rule of Civil Procedure 37(c)(1)(A) and/or 28 U.S.C. § 1927.

12.     Specifically, service of the Amended and Second Amended Disclosures after the fact discovery cut off without conferral and/or leave of court, the identification of six (6) new witnesses for the first time ***after*** the close of fact discovery and assertion of a claim for punitive damages against a municipality in the Amended Disclosures (for the first time after the close of fact discovery) is unreasonable and vexatious conduct that is multiplying these proceedings, all meriting sanctions pursuant to Federal Rule of Civil Procedure 37(c)(1)(A) and/or 28 U.S.C. § 1927.

## PROCEDURAL HISTORY THAT SUPPORTS STRIKING THE SECOND AMENDED DISCLOSURES AND ISSUING SANCTIONS

13.     Plaintiff's Complaint does not seek punitive damages. *See* DE 1.

14.     On January 5, 2023, Plaintiff served her Initial Disclosures of Plaintiff Guasto ("Initial Disclosures"). A copy of the Initial Disclosures is attached as **Exhibit C**.

15.     On January 12, 2023, this Court issued its Paperless Order Staying Discovery Pending Resolution of the City's Motion to Dismiss [DE 25].

16.     On July 10, 2023, this Court issued its order granting the City's Motion to Dismiss [DE 32] and also issued its Paperless Order Lifting Discovery Stay [DE 33].

17.     On November 20, 2023, the City served its First Set of Interrogatories and First Request for Production of Documents on Plaintiff.

18.     Therein, the City sought information concerning Plaintiff's employment post-separation from the City.

3

19.     On January 8, 2024, Plaintiff served her Responses to Defendant's Interrogatories ("Responses"). A copy of the Responses are attached as **Exhibit D**.

20.     Therein, in response to Interrogatory No. 1, Plaintiff identifies eleven (11) witnesses, almost all of which had to do with her employment with the City. *See* Exh. D, p. 1.

21.     Additionally, in response to Interrogatory No. 3, Plaintiff identified her employers, post-separation from the City. *See* Exh. D, p. 3.

22.     In response to Interrogatory No. 7, Plaintiff identified her categories of damages. *See* Exh. D., p. 5. Plaintiff did not list punitive damages. *See id.*

23.     On each of February 6, 2024; February 13, 2024; and March 15, 2024; the City took Plaintiff's deposition. A copy of the transcript from each day is attached as **Composite Exhibit E**.

24.     During the deposition, the City asked Plaintiff extensively about the reasons she was separated from her post-City employers. *See* Exh. E, Guasto Feb. 6 Dep. TR:9-36 :13-17.[2]

25.     On February 29, 2024, the City served notice of its intent to serve subpoenas on Plaintiff's post-City employers. A copy of the February 29, 2024, email and the proposed subpoenas is attached as **Exhibit F**.

26.     The subpoenas make clear that the City was seeking information regarding the reasons for Plaintiff's separation from her post-City employers.

27.     Plaintiff objected to the subpoenas and in furtherance thereof, on March 21, 2024, the parties attended a discovery hearing before Magistrate Torres.

28.     Magistrate Torres denied Plaintiff's objection, authorizing service of the subpoenas.

---

[2]     In citing to the deposition transcript, the City uses the citation format "TR:_:_." The "TR" refers to "transcript," the first number refers to the page number(s) and the second number refers to the line number(s).

29.     On each of April 11, 2024; April 18, 2024; April 22, 2024; and April 26, 2024; the City produced the records received from the subpoenas.[3] Copies of the records received from each post-City employer are attached as **Composite Exhibit G**.

30.     On April 30, 2024, ***after the close of fact discovery*** Plaintiff served her Amended Disclosures.

31.     In conjunction with adding a frivolous claim for punitive damages, Plaintiff, for ***the first time ever***, disclosed the following witnesses:

      i.   Elvis Santana

      ii.   Jeremial Lockett

      iii.   Vania Gutierrez

      iv.   Thaely Carrasco

      v.   Nelson Magana

      vi.   Andrea Forero

32.     Five (5) of the six (6) newly disclosed witnesses are listed as having "knowledge of Plaintiff's employment subsequent to her employment for Defendant, character, and work ethic." *See* Exhs. A and B, p. 3.

33.     Elvis Santana is listed as having "knowledge of Plaintiff's employment with Defendant, character, and work ethic." *See id*.[4]

---

[3]     The production dates are on or about the same dates that the City received the records. Additionally, as to the City of Opa Locka, it produced records on April 22, 2024; and April 26, 2024. The records produced on April 22, 2024, were the records showing the reasons for Plaintiff's separation from employment. The records produced on April 26, 2024, were payroll records.

[4]     Since Mr. Santana is disclosed to testify about Plaintiff's employment with the City, it is sanctionable to only disclose him after the close discovery. The Court should not allow these surprise, trial by ambush tactics. More to the point, any witness with knowledge of Plaintiff's employment with the City can and should have been disclosed long before the close of fact discovery. That said and as is more fully addressed below, Mr. Santana, like the other five (5) witnesses, is also an improper character witness.

34.     Despite having knowledge starting on November 20, 2023, that the City was pursuing information about Plaintiff's post-City employment, and then being remined of that pursuit on each of January 8, 2024; February 6, 2024; February 13, 2024; February 29, 2024; March 15, 2024; March 21, 2024; April 11, 2024; April 18, 2024; April 22, 2024; and April 26, 2024; Plaintiff waited until **_AFTER_** the close of discovery to disclose witnesses that could testify about her post-City employment.

35.     As if waiting until after the close of discovery, not conferring and serving the Amended Disclosers without leave of this Court wasn't bad enough, Plaintiff's conduct is amplified and merits sanctions seeing as she aggressively opposed the issuance of the post-City employment subpoenas. In other words, Plaintiff was well aware that the City was seeking her post-City employment records.

36.     Therefore, she could and should have disclosed five (5) of the six (6) witnesses listed in paragraph thirty-one (31) above long-before the close of fact discovery.[5]

37.     Plaintiff's conduct is troubling seeing as she knew the information sought, fought against it, and then lied in wait to purposely disclose witnesses after the close of discovery, all without conferring or seeking leave of this Court for the late disclosure.

38.     Finally, on May 7, 2024, again without conferral and without leave of Court, Plaintiff unilaterally served her Second Amended Disclosures. *See* Exh. B.

39.     Although Plaintiff abandons her frivolous claim for punitive damages, the Court should still strike the Second Amended Disclosures.

40.     Aside from punitive damages, the Second Amended Disclosures suffer from the same infirmities as the Amended Disclosures.

---

[5]       As discussed in detail herein, Witness Elvis Santana also should have been disclosed during the fact discovery period since he is listed as having knowledge of Plaintiff's employment with the City.

41.     Thus, for the reasons stated herein, this Court should strike the Second Amended Disclosures and issue sanctions pursuant to Federal Rule of Civil Procedure 37(c)(1)(A) and/or 28 U.S.C. § 1927.

### ARGUMENT AND CITATION OF AUTHORITY

### POINT I

**THE COURT SHOULD STRIKE PLAINTIFF'S SECOND AMENDED DISCLOSURES BECAUSE THEY WERE SERVED AFTER THE CLOSE OF FACT DISCOVERY, WITHOUT CONFERRAL AND WITHOUT LEAVE OF COURT.**

In order for pretrial deadlines to mean anything, and for the parties to adequately prepare for trial, a "timely" supplemental disclosure "must occur – ***at minimum – during the discovery period***." *Nymbus, Inc. v. Chrome Federal Credit Union*, Case No. 18-CV-25081-MCALILEY [CONSENT CASE], 2021 WL 8894791, at *4 (S.D. Fla. June 3, 2021) (emphasis added). If this Court allows Plaintiff's view of her obligations under Rules 26 (a) and (e), it "would wreak havoc on a court's ability to manage cases in an orderly and efficient manner." *Nymbus, Inc.*, 2021 WL 8894791, at *4.

As courts in the Southern District of Florida have recognized, "the obligation to supplement under Rule 26(e) 'does not extend discovery in perpetuity, rendering the Court's deadlines toothless.'" *Nymbus, Inc.*, 2021 WL 8894791, at *4 (*citing Stewart v. VMSB, LLC*, Case No. 19-cv-22593, 2020 WL 4501830 at *2 (S.D. Fla. July 27, 2020)); *see also Cook v. Royal Caribbean Cruises, Ltd.*, Case No. 11-20723-CIV, 2012 WL 2319089, at *1 (S.D. Fla. June 15, 2012) ("The mere fact that Plaintiff believes she is or was under a duty to supplement her discovery disclosures does not mean that complying with the duty trumps deadlines in the

case and permits trial use of post-deadline disclosures, prejudicial consequences notwithstanding.")).

Further, when there is a scheduling order with a firm discovery cut-off, as there is in this case, "[a]ny attempt to provide additional discovery after that deadline is governed by Federal Rule of Civil Procedure 16(b)." *Stewart*, 2020 WL 4501830 at *2. Federal Rule of Civil Procedure 16(b)(4) is clear that a party can only modify a scheduling order for good cause and with the Judge's consent. *See* Fed. R. Civ. P. 16(b)(4). That did not happen in this case.

"Rule 26(a) (1) of the Federal Rules of Civil Procedure requires parties to make Initial Disclosures to each other very early in the proceedings and requires that names and contact information of any individuals 'likely to have discoverable information' that can support a claim or defense in the case be disclosed." *See Trenhs v. Fast Track Paving, Inc.*, Case No. 10–21981–CIV, 2011 WL 1131112, at *2 (S.D. Fla. Mar. 25, 2011) (*citing* Fed. R. Civ. Pro. 26(a)(1)). The Rule also states a party must supplement its disclosures in a "timely manner." *See Trenhs*, 2011 WL 1131112, at *2.

Additionally, Rule 37(c)(1) states that if a party fails to identify a witness as required by Rule 26(a) or (e), i.e. supplementing in a "timely manner" then the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial and the court may order payment of the reasonable expenses, including attorney's fees, caused by the failure. *See Trenhs*, 2011 WL 1131112, at *2; *see also* Fed. R. Civ. P. 37(c)(1)(A).

**<u>Plaintiff Never Sought Leave of Court To Modify The Scheduling Order To Allow Service of the Second Amended Disclosures After the Close of Discovery.</u>**

There is a firm Scheduling Order in this case that set the fact discovery cut-off as April 26, 2024. *See* DE 37. Plaintiff did not seek leave of this Court to modify that Scheduling Order to allow service of the Second Amended Disclosures after the fact discovery cut off. Moreover,

Plaintiff did not confer with the City's counsel before serving the late Second Amended Disclosures.

Instead, she ignored this Court's Scheduling Order and her obligation to confer, and just served the Second Amended Disclosures, adding six (6) new character witnesses. This Court should not allow Plaintiff's flagrant disregard both for this Court's Scheduling Order and the Federal Rules of Civil Procedure. The Court should strike the Second Amended Disclosures in full.

**<u>Even If Plaintiff Had Sought Leave, There Is No Basis For Such Since The Six Belatedly Disclosed, Improper Character Witnesses Could Have Been Disclosed During the Fact Discovery Period With the Exercise of Reasonable Diligence.</u>**

"Any attempt to provide additional discovery after that deadline is governed by Federal Rule of Civil Procedure 16(b)—that is, the party seeking to provide additional discovery must show good cause why the information could not have been timely provided with the exercise of reasonable diligence." *Stewart*, 2020 WL 4501830 at *2 (*citing Fox v. Safeco Ins. Co. of Ill.*, No. 8:16-cv-2665-T-23JSS, 2017 WL 4102312, at *2–3 (M.D. Fla. Sept. 15, 2017) (analyzing request to supplement discovery responses under Rule 16(b))).

<u>Plaintiff Could Have Disclosed the Six New Witnesses During the Fact Discovery Period With the Exercise of Reasonable Diligence.</u>

As stated above, five (5) of the six (6) new witnesses are "disclosed" to testify about "knowledge of Plaintiff's employment subsequent to her employment for Defendant, character, and work ethic."

During the conferral process regarding the Amended Disclosures, in an email from May 2, 2024, Mr. Barroukh stated: "[a]fter reviewing the documentation with my client, she was entirely surprised by the newly disclosed information and advised me of witnesses who had

information pertinent to those documents. Accordingly, we provided the amended disclosures within one week of the last set of responsive subpoena documents."

<u>Plaintiff and Mr. Barroukh Were Aware that the City was Seeking Information About Plaintiff's Post-City Employment Long Before Production of the Records Obtained From the Subpoenas.</u>

Plaintiff was aware for almost five (5) months of the City's inquiry into Plaintiff's post-City employment. As is detailed above, on November 20, 2023, the City served its First Set of Interrogatories and First Request for Production of Documents on Plaintiff. Therein, the City sought information concerning Plaintiff's employment post-separation from the City.

On January 8, 2024, Plaintiff served her Responses and disclosed eleven (11) witnesses. *See* Exh. D. However, despite the City's inquiry into her post-City employment, the Plaintiff did not disclose any of the six (6) witnesses belatedly disclosed after the close of discovery in the Second Amended Disclosures.

On each of February 6, 2024; February 13, 2024; and March 15, 2024; the City took Plaintiff's deposition. During the deposition on February 6, 2024, and again on March 15, 2024, the City asked Plaintiff extensively about the reasons she was separated from her post-City employers. At that point, Plaintiff could and should have supplemented her disclosures to add witnesses regarding her post-City employment. She did not.

On February 29, 2024, the City served notice of its intent to serve subpoenas on Plaintiff's post-City employers. *See* Exh. F. The subpoenas made clear that the City was seeking information regarding the reasons for Plaintiff's separation from her post-City employers. *See id.* Plaintiff objected to the subpoenas, likely because she knew what was coming.

On March 21, 2024, the parties attended a discovery hearing before Magistrate Torres wherein they addressed Plaintiff's objection to the City obtaining the reasons for Plaintiff's

separation from her post-City employers. Magistrate Torres denied Plaintiff's objection, and authorized service of the subpoenas. If ever there was a time to disclose witnesses that would testify about Plaintiff's post-City employment, that was the time. Had Plaintiff's counsel Daniel Barroukh ("Mr. Barroukh") engaged in any reasonable diligence he would have been able to disclose the six (6) belatedly disclosed witnesses in advance of the close of discovery.

The Court should not accept as good cause, Mr. Barroukh's above explanation, that the witnesses were only disclosed after his client's "surprise" at the contents of the documents produced from the subpoenas. Given the clear record that Plaintiff was on notice that the City was seeking Plaintiff's post-City employment records, and she vigorously fought to prevent disclosure, waiting to discuss this matter until after production of the documents from the subpoenas was the opposite of reasonable diligence. Plaintiff and Mr. Barroukh could and should have made inquiry of the matter at a minimum when Magistrate Torres denied the objections. Apparently, they did not.

Since Plaintiff could have disclosed the six (6) new witnesses during the fact discovery period with exercise of reasonable diligence and did not, the Court should strike the witnesses and the Second Amended Disclosures in full.

<u>Mr. Barroukh's Claim That His Client Was "Surprised" By the Contents of the Documents Produced In Response to the Subpoenas Is Not Credible and Does Not Establish Good Cause.</u>

The idea that Plaintiff was "surprised' by the contents of the documents at Composite Exhibit G is absurd and wholly uncredible. As to the documents from Miami-Dade College, the documents show that (1) Plaintiff was involved in an extensive back and forth regarding the allegations against her; and (2) when threatened with termination if she did not resign, Plaintiff

executed a resignation letter with a detailed explanation concerning her resignation. *See* Exh. G, City Bates Nos. 001675 – 001683.[6]

As to the documents from Allied Universal, Plaintiff's separation for "dishonesty and falsification" occurred on August 17, 2023. *See* Exh. G, City Bates Nos. 001381 – 001387. It is inconceivable that in a mere eight (8) months, Plaintiff suddenly "forgot" that Allied Universal fired her for "dishonesty and falsification." In fact, it is likely the opposite. As noted above, Plaintiff fought aggressively to prevent production of her post-City employment documents. That didn't happen because Plaintiff forgot about her termination from Allied Universal for "dishonesty and falsification," that likely happened because Plaintiff remembered and wanted to prevent disclosure.

As to the documents from the City of Opa Locka Police Department, Plaintiff was terminated on November 15, 2023, for, among other things, conduct unbecoming.[7] *See* Exh. G, City Bates Nos. 001895 – 001902.[8] The same arguments above as to Allied Universal apply and

---

[6]     Importantly, when asked why she left Miami-Dade College, Plaintiff stated that she resigned, but that she was not forced to resign in lieu of termination. *See* Exh. E, Guasto Feb. 6 Dep. TR:36:7-14. Additionally, when asked if she had any disciplinary issues at Miami Dade College, on two different occasions, Plaintiff said no. *See* Exh. E, Guasto Feb. 6 Dep. TR:30:11-14; 36:7-16. The documents attached at Exh. G, City Bates Nos. 001675 – 001683 show that Plaintiff lied in her deposition. Bates Nos. 001675 – 001683 show that Plaintiff resigned in lieu of termination and executed a resignation letter with a detailed explanation concerning her resignation. *See* Exh. G, City Bates Nos. 001675 – 001683. Seeing as Plaintiff lied in her deposition concerning the very issue on which she now seeks to introduce six (6) new witnesses, the Court should not give credit to the claim that she was "surprised" by the contents of the documents produced from the subpoenas.

[7]     Conduct Unbecoming is also one of the City's legitimate non-retaliatory reasons for implementing Plaintiff's Last Chance Agreement.

[8]     Just like with Miami-Dade College, Plaintiff lied about the reasons she was terminated from the City of Opa Locka. Specifically, in her deposition, Plaintiff was asked why she left Opa Locka and she said she was terminated without a reason after she filed a complaint against a fellow officer. *See* Exh. E, Guasto Feb. 6 Dep. TR:14:3-8. The documents attached at Exh. G, City Bates Nos. 001895 – 001902 show that Plaintiff lied in her deposition. Specifically, City Bates No. City 001895, shows that Plaintiff was fired for: (1) Attendance History; (2) Failure to Follow Policy and Procedure; and (3) Conduct Unbecoming. This directly contradicts Plaintiff's deposition testimony that she was not given a reason for her separation. Seeing as Plaintiff lied in her deposition concerning the very issue on which she now seeks to introduce six (6) new improper character witnesses, the Court should not give credit to the claim that she was "surprised" by the contents of the documents produced from the subpoenas.

are incorporated as to the City of Opa Locka Police Department. As to Opa Locka, the time period between Plaintiff's termination and her late witness disclosure is even shorter. Further, the sheer detail of the documentation of Plaintiff's separation makes it highly unlikely that Plaintiff "forgot" the basis of her termination.

Based on the foregoing, the notion that Plaintiff was "surprised" by the contents of the produced documents is not credible and does not serve as a basis to support the late Second Amended Disclosures. Since Plaintiff could have disclosed the six (6) new witnesses during the fact discovery period with exercise of reasonable diligence and did not, the Court should strike the witnesses and the Second Amended Disclosures in full.

> Newly Disclosed Witness Elvis Santana Can and Should Have Been Disclosed During the Fact Discovery Period.

Elvis Santana is listed as having "knowledge of Plaintiff's employment with Defendant, character, and work ethic." *See* Exhs. A and B, p. 3. Since Mr. Santana is disclosed to testify about Plaintiff's employment with the City, he can and should have been disclosed during the fact discovery period. This case has been pending since April 2022. There is no excuse to disclose a witness regarding Plaintiff's employment with the City after the close of fact discovery which is two (2) years after the filing of the Lawsuit. The conduct in this regard is sanctionable. The Court should not allow these surprise, trial by ambush tactics. Accordingly, the Court should strike Mr. Santana and the other five (5) belatedly disclosed witnesses.

> Plaintiff's Offer to Allow Written Discovery and Depositions of the Six Belatedly Disclosed, Improper Character Witnesses Does Not Justify the Post Fact Discovery Deadline Disclosure.

During the conferral regarding the Amended Disclosures, Mr. Barroukh indicated in his May 2, 2024, email that Plaintiff does not object "to the Defendant engaging in written discovery or depositions relating to the witnesses in order to resolve your concerns about the discovery

deadline.[9] In fact, you have already agreed to conduct the deposition of Steven Cosner outside of the discovery period, which largely contradicts your argument about the closeness of the summary judgment deadline."

First, the deposition of Lieutenant, Steven Cosner ("Lieutenant Cosner") is wholly irrelevant to the issues raised herein. During the discovery period, the parties mutually agreed, through negotiation, that Plaintiff could take the deposition of Steven Cosner on May 17, 2024. This was due, in large part, to the fact that Lieutenant Cosner's work schedule, which is 10:00 p.m. – 6:00 a.m., created challenges for finding a suitable day for his deposition.

As the discovery deadline was nearing, the parties worked together to ensure that Plaintiff could take his deposition. Plaintiff could have insisted that she take Lieutenant Cosner's deposition during the fact discovery period. She did not. More to the point, Lieutenant Cosner is not a surprise witness disclosed in violation of the Court's Scheduling Order. He is a central figure in this case. Plaintiff is now trying to use the mutual agreement to take Lieutenant Cosner's deposition on May 17, 2024, as a sword to justify her late and surprise disclosure of six (6) new witnesses. The Court should not accept Plaintiff's tactics.

Second, there is a dramatic difference between mutually agreeing to schedule one (1) witness outside the fact discovery period and Plaintiff disclosing six (6) brand new improper character witnesses after the close of discovery and one month before the deadline for filing dispositive motions. Requiring the City's counsel to rearrange his entire schedule to rush to take the depositions of six (6) brand new improper character witnesses now, when dispositive motions are due on June 3, 2024, is prejudicial. More to the point, it would require the expedited ordering

---

[9]     In this regard, it is clear the Mr. Barroukh does not understand the concern regarding the discovery deadline. The conferral about the discovery deadline was, as is stated more fully above, that Plaintiff needed leave of Court to file Amended Disclosures after the close of fact discovery. The same concern exists regarding the Second Amended Disclosures.

of six (6) transcripts, costs which the City should not have to incur because of Plaintiff's late disclosure. This too is prejudicial.

To sum up Mr. Barroukh's argument from his conferral on the Amended Disclosures, he's basically saying "You already agreed to one deposition after the discovery cut-off, so what difference does another six (6) make?" The Court should not indulge such incredulous positions.

The Court should strike the improper character witnesses and the Second Amended Disclosures in full because Plaintiff did not get leave of Court to deviate from the Court's Scheduling Order. The Court should also strike the improper character witnesses and the Second Amended Disclosures because the belatedly disclosed witnesses can and should have been disclosed during the fact discovery period.

**Even If Leave Were Appropriate, Which It Is Not, the Court Should Still Strike the Six Belatedly Disclosed Witnesses Because Their Anticipated Testimony Is Improper Character Evidence.**

"The text of Fed. R. Evid. 404(a)(1) provides that '[e]vidence of a person's character or a trait of character' is impermissible unless '[i]n a criminal case, evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same.'" *Securities and Exchange Commission v. Acord*, Case No. 09-21977-CIV-JORDAN, 2010 WL 11505963, at *1 (S.D. Fla. Aug. 23, 2010) (*citing* Fed. R. Evid. 404(a)(1)).

Moreover, "[t]he Advisory Notes to the 2006 Amendments confirm that character evidence is not admissible in civil cases: 'The Rule has been amended to clarify that in a civil case evidence of a person's character is **_never_** admissible to prove that the person acted in conformity with the character trait.'" *Securities and Exchange Commission*, 2010 WL 11505963, at *1 (emphasis added).

Here, the proffered testimony of five (5) of the six (6) newly and late disclosed witnesses is "knowledge of Plaintiff's employment subsequent to her employment for Defendant, character, and work ethic." *See* Exhs. A and B, p. 3. Belatedly disclosed witness Elvis Santana is listed as having "knowledge of Plaintiff's employment with Defendant, character, and work ethic." *See id.*  In other words, Plaintiff wants to introduce evidence of her "work ethic" and "character" to rebut issues about her work dismissal from the City and rebut the reasons for her dismissal from her post-City employers. This is improper character evidence.

As the documents at Composite Exhibit F show, Plaintiff was essentially terminated from all three of her post-City employers for, among other things, dishonesty. Not so coincidentally, dishonesty is one of the many legitimate non-retaliatory reasons asserted by the City for implementing Plaintiff's Last Chance Agreement.

Plaintiff is prohibited from introducing character evidence of this kind. Therefore, even if there was leave to amend the Scheduling Order to allow the disclosure of these six (6) new witnesses after the close of fact discovery, the Court should strike the witnesses because their anticipated testimony is improper character evidence.

### POINT II

### THE COURT SHOULD ISSUE SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 37(c)(1)(A) AND 28 U.S.C. § 1927.

Federal Rule of Civil Procedure 37(c)(1)(A) states that if a party fails to identify a witness as required by Rule 26(a) or (e), i.e. supplementing in a "timely manner," then the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial and the court may order payment of the reasonable expenses, including attorney's fees, caused by the failure. *See Trenhs*, 2011 WL 1131112, at *2; *see also* Fed. R. Civ. P. 37(c)(1)(A).

28 U.S.C. § 1927 states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

"To require counsel to pay attorney's fees, three requirements must be met. First, the lawyer must have engaged in 'unreasonable and vexatious' conduct. Second, the 'unreasonable and vexatious' conduct must have 'multiplied the proceedings.' Lastly, 'the dollar amount of the sanction must bear a financial nexus to the excess proceedings.'" *Patsalides v. City of Fort Pierce*, Case No. 15-14431-CIV-GRAHAM/MAYNARD, 2017 WL 10402990, at *3 (S.D. Fla. Sept. 29, 2017) (*citing Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997)).

Because 28 U.S.C. § 1927 is penal in nature, it must be strictly construed. *See Voudy v. Israel*, Case No. 15-60129-CIV-DIMITROULEAS/SNOW, 2018 WL 4829048, at *2 (S.D. Fla. July 27, 2018) (*citing Peterson v. BMI Refractories*, 124 F.3d 1386, 1395 (11th Cir. 1997)). "In order for sanctions to be imposed, the attorney's conduct must be so egregious that it is tantamount to bad faith." *Voudy*, 2018 WL 4829048, at *2 (*citing Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007)). "'Bad faith' is judged by an objective standard, requiring that 'the attorney must knowingly *or* recklessly pursue a frivolous claim or needlessly obstruct the litigation of a non-frivolous claim.'" *Voudy,* 2018 WL 4829048, at *2.

**<u>Pursuant to Federal Rule of Civil Procedure 37(c)(1)(A) The Court Should Award The City Its Attorney's Fees For Having to Bring this Motion.</u>**

There is simply no justification for the Plaintiff serving her Amended Disclosures and Second Amended Disclosures after the discovery cut off and without leave of Court. As articulated above, Plaintiff did not seek leave of Court to serve the Amended Disclosures or

Second Amended Disclosures after the discovery cut off. Moreover, even if she had sought leave, there is no basis for such since, as articulated above, the six (6) new witnesses identified can and should have been disclosed during the fact discovery period.

Finally, Plaintiff just threw in a brand-new claim for punitive damages for the first time after the discovery cut off. Plaintiff's belated withdrawal of her claim for punitive damages does address her conduct. The City has had to expend significant resources in moving to strike the Amended Disclosures in full, strike the six (6) newly disclosed witnesses and strike the frivolous claim for punitive damages. Now, the City continues to expend resources having to strike the Second Amended Disclosures. The City respectfully requests that the Court sanction Plaintiff and award the City its reasonable attorney's fees for having to bring the instant Motion.

**Pursuant to 28 U.S.C. § 1927 The Court Should Sanction Attorney, Daniel Barroukh For His Bad-Faith Conduct In Recklessly Pursuing A Frivolous Course of Action that Has Unnecessarily Multiplied the Proceedings.**

Mr. Barroukh has engaged in unreasonable and vexatious conduct that has multiplied the proceedings. Specifically, he served the Amended Disclosures and the Second Amended Disclosures without ever seeking leave of Court to do so. Mr. Barroukh knew the discovery deadline had passed. Via conferral, the City informed Mr. Barroukh that he cannot file Amended Disclosures and add six (6) new witnesses after the close of discovery. Nonetheless, Mr. Barroukh remained steadfast that his service of the belated Amended Disclosures was proper, refusing to withdraw same.

In this regard, Mr. Barroukh's conduct cannot be described as anything other than objectively in bad faith. Mr. Barroukh is recklessly pursuing a frivolous position; that the filing of the Amended Disclosures and the Second Amended Disclosures after the close of the fact discovery deadline without leave of Court is proper. It is not proper.

Mr. Barroukh knows that there is a Scheduling Order in this case. Yet, despite conferral, he continues to maintain that he does not have to abide by the Scheduling Order. This is demonstrated by the fact that he insists on pursuing his position that service of the Amended Disclosures and the Second Amended Disclosures after the close of fact discovery and without leave of Court is proper.

Further evidence of bad faith conduct is shown through the belated disclosure of witness Elvis Santana and the addition of the claim for punitive damages in the Amended Disclosures. As to witness Santana, Mr. Santana is listed as having "knowledge of Plaintiff's employment with Defendant, character, and work ethic." *See* Exhs. A and B, p. 3. Since Mr. Santana is disclosed to discuss Plaintiff's employment with the City, there is no justification for his disclosure after the close of discovery. Even if Mr. Barroukh's excuse is that his client belatedly told him about Mr. Santana, Mr. Barroukh has an obligation to follow the Court's Scheduling Order. Even more concerning, Mr. Barroukh did not even confer about the belated disclosure, he just took it upon himself to file what he wants, when he wants with no regard for the deadlines established by this Court. The Court should not allow this conduct.

As to the plea for punitive damages, withdrawal does not save Mr. Barroukh from sanctions. Putting aside the fact that punitive damages are not available against a municipality, the sanctionable conduct is trying to add a claim for punitive damages via an amended rule 26 disclosure after the close of discovery. Mr. Barroukh knows that Plaintiff did not seek punitive damages in her Complaint or in any discovery response. So, he attempted to rectify this by frivolously trying to amend the Complaint after the close of discovery and all without any conferral. The Court should not allow this conduct.

All of the above-referenced conduct is unnecessarily multiplying the proceedings. The City has had to expend significant time and resources addressing with Mr. Barroukh punitive damages and informing him that he cannot just add witnesses after the close of discovery. Now, the City has had to expend even more resources brining yet another Motion. Accordingly, the City respectfully requests that Court sanction Mr. Barroukh with an amount commensurate with the City's attorney's fees incurred in addressing the Amended Disclosures and the Second Amended Disclosures. Such an amount would bear a financial nexus to the excess proceedings.

## CONCLUSION

Based on the foregoing, the City respectfully requests that the Court grant the instant Motion in its entirety, striking the Amended Disclosures and the Second Amended Disclosures in full and issuing sanctions the Court deems just proper.

## CERTIFICATE OF CONFERRAL

Undersigned counsel Michael L. Elkins certifies that he conferred with Plaintiff's counsel about the relief sought herein and Plaintiff's counsel did not respond to the conferral regarding the Second Amended Disclosures. If Plaintiff's counsel does respond regarding the Second Amended Disclosures, undersigned counsel will supplement this Motion to reflect counsel's position. Plaintiff's counsel opposes the relief sought herein as to the Amended Disclosures and sanctions request.

Dated: May 12, 2024.

Respectfully submitted,

By: */s/Michael L. Elkins*
Michael L. Elkins, Esq.
Florida Bar No. 523781
melkins@mlelawfirm.com
**MLE LAW**
1212 NE 16th Terrace
Fort Lauderdale, FL 33304
Telephone: 954.401.2608
*Co-Counsel for Defendant*

By: */s/Henry J. Hunnefeld*
Henry J. Hunnefeld, Esq.
Florida Bar No. 343811
henryhunnefeld@miamibeachfl.gov

By: */s/Benjamin J. Braun*
Benjamin J. Braun, Esq.
Florida Bar No. 1017937
benjaminbraun@miamibeachfl.gov

**CITY OF MIAMI BEACH**
**CITY ATTORNEY**
City Attorney's Office
1700 Convention Center Drive
Fourth Floor- Legal Department
Miami Beach, FL 33139
Telephone: 305.673.7470
*Co-Counsel for Defendant*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on May 12, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/Michael L. Elkins*
Michael L. Elkins

<u>**SERVICE LIST**</u>

CASE NO.: 1:22-cv-21004-MD

Daniel J. Barroukh, Esq.
danielb@dereksmithlaw.com
**DEREK SMITH LAW GROUP, PLLC**
520 Brickell Key Drive
Suite O-301
Miami, FL 33131
*Counsel for Plaintiff*