UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:22-cv-21004-MD

**JESSICA GUASTO**,

    Plaintiff,

vs.

**THE CITY OF MIAMI BEACH, FL**,
a Florida municipality,

    Defendant.
_____/

**DEFENDANT'S LOCAL RULE 56.1(a)(1)
STATEMENT OF MATERIAL FACTS IN SUPPORT
OF ITS FULLY DISPOSITIVE MOTION FOR SUMMARY
JUDGMENT AND  INCORPORATED MEMORANDUM OF LAW**

## MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1(a)(1)

1. The City is committed to equal employment opportunity and does not make employment decisions for any factors that are not job-related. A copy of the City's Employee Handbook, which includes the City's policy of equal employment, is attached at **Exhibit 1**. *See* Exh. 1, p. 16, Bates No. City 001105.

2. The City's policy of equality and opportunity applies to all organizational levels of the City and to all job classifications. *See id*.

3. Plaintiff's acknowledgement of receipt of the Handbook, which also contains her Report to Work date, is attached at **Exhibit 2**.

4. The City's anti-discrimination/retaliation policy is reiterated in its Personnel Rules, which are attached as **Exhibit 3**. *See* Exh. 3; Rule I § 3(a); Bates No. City 001021.

5. On or about January 27, 2012, the City hired Plaintiff for the position of Police Officer. Plaintiff's New-Hire Paperwork is attached at **Exhibit 4**. *See* Exh. 4, Bates Nos. City 000856 – 000857.

**Plaintiff's 2018 EEOC Charge and Settlement Agreement**

6. On August 31, 2018, Plaintiff filed a Charge of Discrimination ("2018 Charge") with the EEOC alleging gender discrimination.[1] The 2018 Charge makes no mention of sexual harassment or any issues between Plaintiff and then Sergeant, now Lieutenant Steven Cosner ("Lieutenant Cosner").[2] *See* Exh. 5, Bates No. City 001225; Exh. 6, Cosner TR:9:10-25.

7. On September 13, 2019, Plaintiff entered into a Settlement Agreement (the "First Settlement Agreement") with the City, releasing all claims against the City from the

---

[1] The 2018 Charge is attached as **Exhibit 5**.
[2] A copy of the deposition transcript of Lieutenant Cosner is attached as **Exhibit 6**. In citing to deposition transcripts generally, the City uses the citation format "TR:_:_." The "TR" refers to "transcript," the first number(s) after the TR refers to the page number(s) of the transcript and the second number(s) refers to the line number(s) of the transcript. Additionally, the City identifies the specific deponent by using their last name before the "TR."

beginning of the world through the date of the First Settlement Agreement, and agreeing to dismiss the 2018 Charge. A copy of the First Settlement Agreement is attached as **Exhibit 7**. *See* Exh. 7, Bates Nos. City 001227 – 001230.

8. The Chief of Police at the time of the First Settlement Agreement was Richard Clements ("Chief Clements") and the FOP President at the time of the First Settlement Agreement was Kevin Millan ("President Millan"). *See* Exh. 7, Bates No. City 001229 – 001230.

**The 2020 Internal Affairs Investigation**

9. On April 23, 2020, Internal Affairs ("IA") at the City of Miami Beach received an Allegation of Employee of Misconduct regarding Plaintiff. A copy of the Declaration of Commander A.J. Prieto and its Exhibits is attached as **Exhibit 8**. *See* Exh. 8, ¶¶ 13, 36-37; *see also* Exh. B to Exh. 8, Bates No. City 001573.

10. On May 4, 2020, Plaintiff was notified that she was under investigation by IA in IA Case No. 2020-010 (the "IA Case"). *See* Exh. 8, ¶ 14; *see also* Exh. B to Exh. 8, Bates No. City 001575.

11. Lieutenant Cosner was not involved in the IA Case. *See* Exh. 8, ¶ 31; *see also* Exh. B to Exh. 8, Bates Nos. City 001572 – 001673; *see also* Exh. 6, Cosner TR:147:1-3.

**Plaintiff's 2020 EEOC Charge of Discrimination**

12. On July 13, 2020, Plaintiff filed her second EEOC Charge, EEOC Charge No. 510-2020-04794 ("2020 Charge"). The 2020 Charge is attached as **Exhibit 9**, Bates Nos. City 001232 – 001233.

13. The IA Case came before the 2020 Charge. *See* Exh. 8, ¶ 30; *see also* Exh. B to Exh. 8, Bates Nos. City 001572 – 001673; *compare* Exh. 9.

14. The 2020 Charge does not mention Lieutenant Cosner. *See* Exh. 9.

**The November 2020 Meeting**

15. On November 2, 2020, there was a confidential settlement meeting between Plaintiff, the Fraternal Order of Police, Lodge 8 ("FOP") and the City (the "November Meeting"). *See* Exh. 8, ¶¶ 16-17;[3] *see also* Exh. 10 ¶¶ 15-16; Exh. 11 ¶¶ 18-19; Exh. 12, Pancier TR:9-11:15-3; Exh. 13, Gibbons TR:12-14:13-1; 17:15-23; Exh. 14, Millan TR:25-27:12-9.

16. During the November Meeting, Plaintiff was represented by two lawyers: (1) Michael Pancier, Esq.; and (2) Eugene Gibbons, Esq. Additionally, Plaintiff was represented by then-FOP President, Kevin Millan. *See* Exh. 8, ¶ 21; Exh. 10 ¶ 20; Exh. 11 ¶ 23; Exh. 12, Pancier TR:9-10:15-9; Exh. 13, Gibbons TR:10-14:7-1; Exh. 14, Millan TR:25-27:1-9; 30:1-6.

17. The purpose of the November Meeting was to try and settle the IA Case and the 2020 Charge. *See* Exh. 8, ¶ 20; Exh. 10 ¶ 19; Exh. 11 ¶ 22; Exh. 12, Pancier TR:13-15:5-10 (*see also* Exh. 3 to Pancier Dep., Exh. 12); Exh. 13, Gibbons TR:12-13:13-9; Exh. 14, Millan TR:25-26:12-20.

18. The November Meeting was not a subject officer interview pursuant to Florida Statute § 112.532, and Plaintiff was never questioned during the November Meeting. *See* Exh. 8, ¶¶ 22-25; Exh. 10, ¶¶ 21-24; Exh. 11, ¶¶ 24-27; Exh. 12, Pancier TR:11-12:4-22 ("No, there was no questioning"); Exh. 13, Gibbons TR:17-21:15-15; Exh. 14, Millan TR:27-28:18-7.

19. At no point during the November Meeting did any one of Plaintiff's two attorney's or Mr. Millan, the FOP President, object that the City was violating Florida Statute § 112.532 or invoke the provisions of Florida Statute § 112.534. *See* Exh. 8, ¶¶ 32-33; Exh. 10, ¶¶

---

[3] Attached as **Exhibit 10** is the Declaration of former Human Resources Director, Michael Smith. Attached as **Exhibit 11** is the Declaration of current Chief of Police, Wayne Jones. Attached as **Exhibit 12** is deposition transcript of Plaintiff's former counsel Michael Pancier, Esq. Attached as **Exhibit 13** is the deposition transcript of Plaintiff's former counsel, and FOP counsel Eugene Gibbons, Esq. Attached as **Exhibit 14** is the deposition transcript of then-FOP President, Kevin Millan.

25-26; Exh. 11, ¶¶ 28-29; Exh. 12, Pancier TR:11-12:4-22; Exh. 13, Gibbons TR:21:9-22; Exh. 14, Millan TR:27-28:25-7; Exh. 17, Plaint. Vol. I TR:113-114:22-19.

20. During the November Meeting, the City showed Plaintiff, her two lawyers and the FOP President a power point presentation (the "November Meeting Power Point"). *See* Exh. 8, ¶ 26, *see also* Exh. A to Exh. 8, Bates Nos. City 001767 – 001882; Exh. 12, Pancier TR:11-12:25-8.

21. The November Meeting Power Point shows that Plaintiff, and then-boyfriend Police Office Nicholas Guasto ("N. Guasto"), were, among other things, radioing into the City that they were within the City limits and on duty, when they were outside City limits. *See* Exh. 8, ¶ 28, *see also* Exh. A to Exh. 8, Bates Nos. City 001813 – 001815.

22. The November Meeting Power Point further details all the instances when Plaintiff and N. Guasto claimed to be on duty and within City limits when they were outside of the City, effectively stealing time from the City. *See* Exh. 8, ¶ 29, *see also* Exh. A to Exh. 8, Bates Nos. City 001767 – 001882.

23. After the November Meeting, Settlement discussions between the City's outside counsel and Plaintiff's two attorneys continued. *See* Exh. 8, ¶ 35; Exh. 10, ¶ 28; Exh. 11, ¶ 31; Exh. 12, Pancier TR:18-19:24-13; Exh. 14, Millan TR:28-30:23-6.

**The Settlement Agreement and the Last Chance Agreement**

24. On or about December 18, 2023, Plaintiff, the FOP, and the City entered into a Settlement Agreement and a Last Chance Agreement. A copy of the Settlement Agreement and the Last Chance Agreement are attached as **Exhibit 15**, Bates Nos. City 001235 – 001238; 001240 – 001246; 001248. As part of the Last Chance Agreement, Plaintiff executed an Irrevocable Letter of Resignation ("Resignation"). *See* Exh. 15, Bates Nos. City 001248.

25. In entering into the Settlement Agreement and the Last Chance Agreement, Plaintiff was represented by two (2) lawyers and the FOP President.[4] *See* Exh. 8, ¶¶ 38-42; Exh. 10, ¶¶ 29-34; Exh. 11, ¶¶ 32-36; Exh. 12, Pancier TR:7-9:8-14 (*see* Exh. 2 to Exh. 12); Exh. 13, Gibbons TR:10-12:5-12 (*see* Exh. 1 to Exh. 13); Exh. 14, Millan TR:30-31:7-12; 36-38:6-24; Exh. 16, Clements TR:130-131:25-24; 143:14-20.

26. Plaintiff voluntarily entered into the Settlement Agreement and the Last Chance Agreement. The City did not "put" Plaintiff on the Last Chance Agreement or force her to sign anything. *See* Exh. 8, ¶¶ 40-42; Exh. 10, ¶¶ 32-34; Exh. 11, ¶¶ 34-36; Exh. 12, Pancier TR:19:5-18; Exh. 13, Gibbons TR:12:3-12; Exh. 14, Millan TR:38:11-24; Exh. 16:131:2-24.

27. The Last Chance Agreement made Plaintiff an employee at will. *See* DE 1, ¶ 27, 41; DE 32, p. 4; Exh. 8 ¶ 43; Exh. 10, ¶ 35; Exh. 11, ¶ 37.

28. As part of the Settlement Agreement, the City did not pay any money to Plaintiff. Plaintiff accepted a one hundred and sixty (160) hour suspension, and among other things, paid the City Three Thousand Five Hundred Thirty-One Dollars and 20/100 ($3,531.20). *See* Exh. 15, Bates Nos. City 001235 – 001236, § 2.a-b.

29. As part of the Last Chance Agreement, Plaintiff "admits that she committed the misconduct in association with IA Case Number 2020-010 and was in violation of numerous City and Police Department policies and the City Personnel Rules for Classified Service." *See* Exh. 15, Bates No. City 001240 (5th WHEREAS Clause).

30. The Last Chance Agreement specifically references the IA Case. *See* Exh. 8, ¶ 44; Exh. 10, ¶ 36; Exh. 11, ¶ 38; Exh. 15, Bates No. City 001240.

31. The Last Chance Agreement does not reference the 2020 Charge because the 2020 Charge was not the basis for the Last Chance Agreement, or any future performance of

---

[4] Attached as **Exhibit 16** is the deposition transcript of then-Chief of Police Richard Clements.

Plaintiff or any future discipline pursuant to the Last Chance Agreement. So, it was specifically omitted from reference in the Last Chance Agreement. *See* Exh. 8, ¶ 45; Exh. 10, ¶¶ 30, 37; Exh. 11, ¶ 39; Exh. 15, Bates Nos. City 00124 – 001246; Exh. 16, Clements TR:79-80:12-1 (Last Chance Agreement was because of the IA Case, not the 2020 Charge); 146-147:7-2.

**The Relationship Between Plaintiff and Lieutenant Cosner**

32. In approximately 2014, Plaintiff and Lieutenant Cosner, who was at that time the rank of Police Officer and then Sergeant, spent time together outside of work. *See* Exh. 6, Cosner TR:20-21:18-17.[5]

33. The nature of the relationship between Plaintiff and Lieutenant Cosner "was professional and it was a friendship."[6] They were good friends. *See* Exh. 6, Cosner TR:24:3-11; Exh. 17, Plaint. Vol I TR:50-51:12-6; 60:20-21.

34. In approximately 2014, Lieutenant Cosner and Plaintiff did things like go to lunch together and he met her parents and grandparents. *See* Exh. 6, Cosner TR:23-24:20-5.

35. Plaintiff introduced Lieutenant Cosner to her parents and grandparents as a friend, and he did not believe that he and Plaintiff were anything more than friends or in a formal relationship. *See* Exh. 6, Cosner TR:24:3-11; 33:10-16.

36. Into the first quarter of 2015, Plaintiff and Lieutenant Cosner would text each other for hours. *See* Exh. 6, Cosner TR:24-25:18-9.

37. The relationship between Plaintiff and Lieutenant Cosner ended in approximately 2014 - 2015. *See* Exh. 6:32:12-15; 85:7-11; Exh. 17, Plaint. Vol. I TR:73-74:15-2.

---

[5] Steven Cosner is referred to herein as "Lieutenant Cosner" for ease of reference. However, during the time of 2014-2015, Lieutenant Cosner was the ranks of Police Officer and then Sergeant. He was promoted to Lieutenant in September 2020. *See* Exh. 6, Cosner TR:9-10:8-7.
[6] A copy of Volume I of Plaintiff's deposition transcript is attached as **Exhibit 17**.

38. Other than 2017 request from Lieutenant Cosner to Plaintiff for Plaintiff to approve an arrest form, between the end of the relationship in 2014-2015 and December 2020, Plaintiff and Lieutenant Cosner had no other interactions. *See* Exh. 17, Plaint. Vol. I TR:73-74:15-2.

39. During the time referenced on paragraph 39 above, Plaintiff and Lieutenant Cosner ignored each other when they saw each other. Exh. 17, Plaint. Vol. I TR:74:3-9.

**Lieutenant Cosner's Allegations of Employee Misconduct Against Plaintiff**

40. On or about January 8, 2021, Lieutenant Cosner submitted via email an Administrative Action Form ("AAF") to then-Internal Affairs Commander A.J. Prieto ("Commander Prieto"). A copy of the January 21, 2021, email and the AAF are attached as **Exhibit 18**, Plaint. Bates Nos. Vol 2, 150-153; *See also* Exh. 8, ¶ 47, Exh. D to Exh. 8.

41. The AAF contains allegations against Plaintiff that span the evening of December 27, 2020 through December 28, 2020 at approximately 6:00 a.m. *See* Exh. 18, Plaint. Bates Nos. Vol 2, 151-152.

42. In making his allegations against Plaintiff, Lieutenant Cosner used the wrong form. He should have used an "Allegation of Employee Misconduct" form. *See* Exh. 8, ¶¶ 48-49.

43. The fact that Lieutenant Cosner used the incorrect form has no bearing on the veracity of his allegations against Plaintiff, it appeared it was just an administrative mistake. *See* Exh. 8, ¶ 51.

44. The fact that Lieutenant Cosner did not sign the Administrative Action Form is equally immaterial. There was no question that Lieutenant Cosner was the one who filled out the Administrative Action Form. *See* Exh. 8, ¶¶ 51-52.

45. The City corrected the form error and put Lieutenant Cosner's allegations against Plaintiff on an Allegation of Employee Misconduct Form ("AEM"), which is the correct form. *See* Exh. 8, ¶¶ 54-55.[7]

46. The allegations on the Administrative Action Form and the Allegation of Employee Misconduct Form are identical. The City merely corrected a paperwork error. *See* Exh. 8, ¶ 57.

47. The AEM is not signed. *See* Exh. 19, Bates Nos. City 001250 – 001251.

48. The fact that the AEM is not signed does not impact the validity of the allegations contained therein. The AEM does not necessarily have to be signed, it has "happened where the officer was unable to sign it." *See* Exh. 16, Clements TR:134:4-12[8]; Exh. 20, Flaherty TR:47-48:18-6; 49:11-17.

49. Essentially, Lieutenant Cosner alleged that Plaintiff was not in her assigned area when she was supposed to be, that she failed to give out certain assignments to subordinate officers, and then lied to Lieutenant Cosner (her supervisor that evening) about giving out the assignments. *See* Exh. 19, Bates Nos. City 001250 – 001251.

50. At the time that Lieutenant Cosner submitted the AAF, i.e. made his allegations against Plaintiff, he was not aware of: (1) the 2018 Charge; (2) the 2020 Charge; (3) the fact that Plaintiff signed a Settlement Agreement and Last Chance Agreement in December 2020; and (4) the fact that Plaintiff was on a Last Chance Agreement. *See* Exh. 6, Cosner TR:40:5-14; 40-41:21-2; 41-42:23-5; 146-147:18-10;[9] *see also* Exh. 21, p. 8, responses to Request No. 34.

51. Plaintiff does not have any evidence that Cosner knew about her 2020 EEOC Charge or her Last Chance Agreement. *See* Exh. 17, Plaint. Vol. I TR:109-111:7-18.

---

[7] A copy of the AEM is attached as **Exhibit 19**, Bates Nos. City 001250 – 001251.
[8] Attached as **Exhibit 20** is the deposition transcript of Sergeant Arley Flaherty ("Sergeant Flaherty").
[9] Attached as **Exhibit 21** is the City's Responses and Objections to Plaintiff's Requests for Admissions.

**The January 19, 2021, Meeting**

52. In January 2021, Chief Clements was notified about the allegations against Plaintiff from Lieutenant Cosner. Because Plaintiff was on a Last Chance Agreement and thus, an employee at will, based on Lieutenant Cosner's allegations, Chief Clements could have implemented Plaintiff's Resignation without speaking to Plaintiff. *See* DE 1, ¶ 27; Exh. 8, ¶ 43; Exh. 10, ¶¶ 35, 38-43; Exh. 11, ¶¶ 37, 41; Exh. 16, Clements TR:96:1-7; 98-99:25-1; Exh. 20, Flaherty TR:31:8-14; 32:3-5; 40:1-6.

53. Despite not having to hold any meeting, on January 19, 2021, Chief Clements held a meeting with Plaintiff and the following individuals: (1) Wayne Jones (then Assistant Chief of Police); (2) Lieutenant Paul Ozaeta (then President of the FOP); (3) Sergeant Arley Flaherty, (then FOP First Vice President); (4) Sergeant Reggie Lester, (then FOP Second Vice President); (5) then-Lieutenant Delvin Brown, (then FOP Grievance Chairman); (6) Commander A.J. Prieto (then Commander of IA); and (7) Lieutenant Steven Cosner. *See* Exh. 8, ¶ 58; Exh. 11, ¶ 44; Exh. 16, Clements TR:93:8-18;[10] Exh. 22, Plaint. Vol. II TR:152:13-20; 154:1-10; Exh. 20, Flaherty TR:34:13-24; 40:1-6.

54. Prior to the meeting, Chief Clements believed he had enough information to implement Plaintiff's Resignation. However, Chief Clements held the meeting to allow Plaintiff to address the concerns and see if there was something the City didn't consider. *See* Exh. 6, Clements TR:96:5-7; 96:15-19; 97:1-10; 98-99:22-3; 146:1-5; Exh. 10, ¶ 44; Exh. 11, ¶ 43.

55. At the meeting, Plaintiff was represented by the FOP's entire Executive Board, i.e. her union's entire leadership. *See* Exh. 6, Cosner TR:45:15-20; Exh. 8, ¶¶ 58, 61-63; Exh. 11,

---

[10] A copy of Volume II of Plaintiff's deposition transcript is attached as **Exhibit 22**.

¶¶ 44, 47-48; Exh. 16, Clements TR:93:6-18; Exh. 20, Flaherty TR:27-28:24-19; 34:13-21; 35:21-23; 37:15-20;[11] Exh. 23, Ozaeta TR:16:5-16.

56. At no point during the meeting did Plaintiff or any of Plaintiff's four (4) union representative representatives (the top officials in the FOP) request an attorney be present, allege that the City was violating Florida Statute § 112.532, or invoke the provisions of Florida Statute § 112.534. *See* Exh. 8, ¶¶ 59, 61-65; Exh. 11, ¶¶ 45, 47-50; Exh. 16, Clements TR:93:19-24; 144-145:13-8; Exh. 20, Flaherty Dep. TR:35-36:24-1; 39-41:2-3; Exh. 23, Ozaeta TR:36-37:12-14; 49:20-24; 67:23-25;[12] Exh. 24, Lester TR:46:8-14.

57. President Ozaeta re-affirmed that: (1) the union and its attorney reviewed and blessed Plaintiff's Settlement Agreement and Last Chance Agreement; (2) because of the Last Chance Agreement, Chief Clements could have implemented the Resignation without having the January 2021 meeting; (3) Chief Clements held the meeting as a courtesy because he wanted to hear what Plaintiff had to say; and (4) because of the Last Chance Agreement, the City did not have to conduct an investigation into the allegations against Plaintiff. *See* Exh. 23, Ozaeta TR:19-21:7-10; 28-30:5-1; 31-32:5-3; 41:10-12; 48:13-22; 48-49:23-1; 65:12-19; 67:13-19; 70:8-11; 70:12-14.

58. Had Plaintiff or any of her representatives requested an attorney during the January 2021, invoked the provisions of Florida Statute § 112.534, or even implied that there was something improper about the January 19, 2021, meeting the meeting would have been stopped. *See* Exh. 8, ¶¶ 60, 66; Exh. 11, ¶ 46; Exh. 16, Clements TR:144:13-24; Exh. 20, Flaherty TR:39-41:2-3.

---

[11] Attached as **Exhibit 23** is the deposition transcript of Lieutenant Paul Ozaeta ("President Ozaeta") who at the time of the January 2021 meeting was the President of the FOP. *See* Exh. 23, Ozaeta TR:8-9:3-1.
[12] Attached as **Exhibit 24** is the deposition transcript of Sergeant Reggie Lester who, at the time of the January Meeting was the FOP Second Vice President. *See* Exh. 24, Lester TR:11:6-8.

59. At the January 19, 2021, meeting, Plaintiff stated that the reason she was at the main police station so long during her December 27-28, 2020, shift was that she was working on Officer Stella's evaluation. *See* Exh. 8, ¶ 70.

60. Commander Prieto determined, based on information provided by the City's IT Department, that Officer Stella's evaluation was not even created on Plaintiff's computer until January 10, 2021. *See* Exh. 8, ¶ 71.

61. Commander Prieto documented his finding in an email that he sent to Chief Clements on January 25, 2021. *See* Exh. 8, ¶ 72; *see also* Exh. G to Exh. 8, Plaintiff's Bates Nos. Vol. 2 168 – 170.[13]

62. Commander Prieto prepared a PowerPoint regarding his findings as to the overall allegations against Plaintiff, which he provided to Chief Clements. *See* Exh. 8, ¶¶ 73-74, *see also* Exh. H to Exh. 8, Plaintiff's Bates Nos. Vol. 2 158 – 167.[14]

**Implementing Plaintiff's Resignation**

63. On January 25, 2021, Chief Clements, who was the decision-maker, implemented Plaintiff's Resignation. A copy of the January 25, 2021, Memorandum from Chief Clements to Plaintiff is attached as **Exhibit 27**, Bates Nos. City 001253 – 001267.[15] *See also* Exh. 6, Cosner TR:42-43:19-2; Exh. 8, ¶ 75; Exh. 10, ¶ 45; Exh. 11, ¶ 51; Exh. 16, Clements TR:98-99:22-3; 99-100:16-1 Exh. 28, p. 6, Answer to Rog No. 4.

64. The reasons Chief Clements implemented Plaintiff's Resignation are detailed in the letter to Plaintiff dated January 25, 2021, which also accurately memorializes what happened

---

[13] The January 25, 2021, email, and attachment, which is Exh. G to Exh. 8, is also attached as **Exhibit 25**.
[14] The PowerPoint which is Exh. G to Exh. 8, is also attached as **Exhibit 26**.
[15] Attached as **Exhibit 28** are the City's Verified Answers and Objections to Plaintiff's Second Set of Interrogatories, which are sworn to by Chief Clements. *See* Exh. 28, p. 3, Answer to Rog. No. 1, p. 11, Verification Page.

12

at the January 19, 2021, meeting. *See* Exh. 8, ¶¶ 78-79; Exh. 10. ¶ 48; Exh. 11, ¶¶ 54-55; Exh. 16, Clements TR:97-98:1-4 Exh. 28, p. 6, Answer to Rog No. 4.

65. Chief Clements did not consider Plaintiff's 2020 Charge or any complaints of harassment when implementing Plaintiff's Resignation. *See* Exh. 8, ¶¶ 76-78; Exh. 10, ¶¶ 46-49;[16] Exh. 11, ¶¶ 52-54, 56;[17] Exh. 16, Clements TR:99-100:16-1; 146-147:11-2; Exh. 20, Flaherty TR:43:1-24; 45-46:22-1; Exh. 23, Ozaeta TR:43-44:10-9.

66. Lieutenant Cosner was not a decision-maker regarding Plaintiff and was not consulted about implementing Plaintiff's Resignation. *See* Exh. 6, Cosner TR:17:3-5; 42-43:19-2; 43:13-15; 147:11-24; Exh. 8, ¶¶ 81-82; Exh. 10, ¶¶ 51-52; Exh. 11, 58-59.

**The Decision to Implement the Resignation is Not Reviewable**

67. Pursuant to paragraph 4 of the Last Chance Agreement, the decision of the Chief Clements is not subject to review or explanation. *See* Exh. 15, Bates No. City 001241, ¶ 4.

68. Paragraph eleven (11) of the Last Chance Agreement states if Charging Party commits any of the violations referenced in paragraph four (4), "her resignation shall be effective, without the right to grieve or otherwise contest, in any manner, her separation. *See* Exh. 15, Bates No. City 001243, ¶ 11.

69. Paragraph twelve (12) of the Last Chance Agreement states that if Plaintiff is separated pursuant to the Last Chance Agreement, she further waives the right to challenge or appeal her separation pursuant to any administrative or statutory avenue that may exist. *See id.* at ¶ 12.

---

[16] Then Director of Human Resources Mike Smith participated in discussion with Chief Clements about implementing Plaintiff's Resignation and in so doing, he did not consider the 2020 Charge or any complaints of harassment from Plaintiff. *See* Exh. 10, ¶¶ 46, 50.

[17] Then Assistant Chief of Police Wayne Jones participated in discussion with Chief Clements about implementing Plaintiff's Resignation and in so doing, he did not consider the 2020 Charge or any complaints of harassment from Plaintiff. *See* Exh. 11, ¶ 52, 57.

**Plaintiff's Union Did Not Challenge Implementation of Her Resignation**.

70. The FOP (Plaintiff's Union) did not challenge the City implementing Plaintiff's Resignation because there was no basis to do so. *See* Exh. 13, Gibbons TR:23:1-13;[18] Exh. 20, Flaherty TR:44-45:3-21; Exh. 23, Ozaeta TR:44-45:1-21; 50:14-22; 56:15-17.

**Last Chance Agreements In General At the City**

71. During Plaintiff's employment with the City, last chance agreements were not rare. *See* Exh. 10, ¶ 59;[19] Exh. 30, ¶¶ 43-44. Between 2015 – 2024, there have been forty-two (42) last chance agreements at the City. *See* Exh. 30, ¶¶ 45-47, *see also* Exh. C to Exh. 30, Bates Nos. City 001955 – 001956.

72. The City frequently proposes/uses last chance agreements, which are always the product of negotiation between the City, the employee and the employee's union, the City cannot impose last chance agreements. *See* Exh. 10, ¶¶ 55-56, 58, 60; Exh. 30, ¶¶ 40-42, 44.

**The Testimony of Nicholas Guasto ("N. Guasto")**

73. N. Guasto is Plaintiff's ex-husband and currently a Police Officer with the City.[20] *See* Exh. 31, N. Guasto TR:7-8:19-3; 9:4-15.

74. Chief Clements never told N. Guasto that he was going to fire Plaintiff because of her 2020 Charge. *See id*. TR:58:10-19; 63:9-14.

75. Chief Clements wanted resolution of the 2020 Charge that included dismissal of the 2020 Charge and that's what ultimately happened. *See id*. TR:58-59:20-4.

---

[18] On February 19, 2021, Plaintiff, through her third attorney John Cunill, Esq., filed a labor grievance with the City. A copy of the grievance is attached as **Exhibit 29**. This grievance was not filed by the FOP, and the City did not process the grievance. *See* Exh. 22, Plaint. Vol. II TR:156:10-16; 162:9-17

[19] Attached as **Exhibit 30** is the Declaration of current Director of Human Resources Marla Alpizar. During Plaintiff's employment Ms. Alpizar was the Assistant Director of Human Resources. *See* Exh. 30, ¶ 8.

[20] Nicholas Guasto's deposition transcript is attached as **Exhibit 31**.

76. N. Guasto never had any conversation with Chief Clements or any other decision-maker at the City about Plaintiff after Plaintiff entered into her December 2020 Settlement Agreement and Last Chance Agreement. *See id*. TR:59:5-9.

77. N. Guasto was not involved, in any way, in the decision to implement Plaintiff's Resignation. He does not have firsthand knowledge of why the City implemented Plaintiff's Resignation. *See id*. TR:63:3-8; 63-64:23-1.

**Plaintiff's Protected Activity and Connection to Cosner's Allegations**

78. Plaintiff's protected activity is her 2020 Charge.[21] *See* Exh. 17, Plaint. Vol. I TR:105-107:15-22; Exh. 22, Plaint. Vol II TR:148-149:4-6;[22] Exh. 32, Plaint. Vol. III TR:184-186:23-3.

79. On June 22, 2021, in advance of this lawsuit, Plaintiff filed an EEOC Charge ("2021 Charge"). The 2021 Charge is at DE 1-1.

80. Therein, on page 2, Plaintiff alleges that she "was terminated for engaging in a protected activity, filing the 2020 charge of discrimination and retaliation against RP." *See* DE 1-1, p. 2. Plaintiff testified that she does not know what the phrase "and retaliation agaist RP" means. *See* Exh. 32, Plaint. Vol. III TR:185-186:10-3.

81. When asked to connect her 2020 Charge with her January 2021 termination, Plaintiff testified: "Okay. So I know that I filed a EEOC charge. And then, I was retaliated against for filing that EEOC charge. And then, I was retaliated against for filing that EEOC -- EEOC charge. And then, I suffered an adverse employment action by being terminated for filing that EEOC charge." *See* Exh. 32, Plaint. Vol. III TR:221-222:14-9.

---

[21] Plaintiff testified that Lieutenant Cosner is not part of Plaintiff's 2020 Charge. *See* Exh. 17, Plaint. Vol. I TR:105:8-14; 107:16-22.
[22] A copy of Volume III of Plaintiff's deposition transcript is attached as **Exhibit 32**.

82. When asked to clarify, Plaintiff testified: "by being falsely accused of these allegations that led to this adverse employment action. And I was terminated." When asked to clarify again, Plaintiff testified: "I -- I don't understand your question. I -- all I know is that the way I answered it, that's my answer. And that's as good of an answer that I have right now. I'm sorry." *See* Exh. 32, Plaint. Vol. III TR:222-223:10-7.

83. The false allegations to which Plaintiff is referring are the allegations from Lieutenant Cosner. *See* DE 1, ¶¶ 42-45; DE 1-1, p. 2; Exh. 32. Plaint. Vol. III TR:187-189:3-2 (Plaintiff affirmatively stating that Lieutenant Cosner retaliated against her for filing her 2020 Charge).

84. In alleging that the allegations from Lieutenant Cosner are false, Plaintiff testified that as to most of the allegation, she does not know if they are false, and she did not do any investigation into such prior to filing her lawsuit. *See* Exh. 32, Plaint. Vol. III TR:189-203:11-14; 207-213:12-20.

85. When asked "[b]ut sitting here today after you filed your lawsuit in federal court claiming it's all false, you don't know?" Plaintiff testified: "I don't' know." *See* Exh. 32, Plaint. Vol. III TR:213:17-20.

Dated: June 3, 2024.

Respectfully submitted,

By: /s/*Michael L. Elkins*
Michael L. Elkins, Esq.
Florida Bar No. 523781
melkins@mlelawfirm.com
**MLE LAW**
1212 NE 16th Terrace
Fort Lauderdale, FL 33304
Telephone: 954.401.2608
*Co-Counsel for Defendant*

By: /s/*Henry J. Hunnefeld*
Henry J. Hunnefeld, Esq.
Florida Bar No. 343811
henryhunnefeld@miamibeachfl.gov

By: /s/*Benjamin J. Braun*
Benjamin J. Braun, Esq.
Florida Bar No. 1017937
benjaminbraun@miamibeachfl.gov

**CITY OF MIAMI BEACH**
**CITY ATTORNEY**
City Attorney's Office
1700 Convention Center Drive
Fourth Floor- Legal Department
Miami Beach, FL 33139
Telephone: 305.673.7470
*Co-Counsel for Defendant*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on June 3, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/Michael L. Elkins*
Michael L. Elkins

## SERVICE LIST

CASE NO.: 1:22-cv-21004-MD

Daniel J. Barroukh, Esq.
danielb@dereksmithlaw.com
**DEREK SMITH LAW GROUP, PLLC**
520 Brickell Key Drive
Suite O-301
Miami, FL 33131
*Counsel for Plaintiff*