UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:22-cv-21004-MD

**JESSICA GUASTO**,

Plaintiff,

vs.

**THE CITY OF MIAMI BEACH, FL**,
a Florida municipality,

Defendant.
_______________________________________________/

**DECLARATION OF COMMANDER A.J. PRIETO PURSUANT TO 28 U.S.C. § 1746 IN SUPPORT OF DEFENDANT'S FULLY DISPOSITIVE MOTION FOR SUMMARY JUDGMENT**

1. My name is A.J. Prieto.

2. I make this Declaration pursuant to 28 U.S.C. § 1746, and in Support of the City of Miami Beach's ("City") Fully Dispositive Motion for Summary Judgment.

3. Pursuant to 28 U.S.C. § 1746(2), I executed this Declaration in the United States of America.

4. The information herein is based on my personal knowledge.

**Law Enforcement Employment Background**

5. I am currently a Commander with the City's Police Department.

6. I have worked for the City since 1993.

7. In March 1998, I became a Detective in the Economic Crimes Squad.

8. In March 2004, I was promoted to Sergeant.

9. In February 2018, I was promoted to Commander.

10. I served as Commander of the Internal Affairs Unit ("IA") from February 2018 until October 2023.

11. In my role as Commander of IA, I had supervisory authority for internal investigations for the entire department.

12. During the period that encompasses the facts and circumstances of the above-styled case, I was the Commander of IA.

**The IA Investigation, Settlement Agreement, and the Last Chance Agreement**

13. On April 23, 2020, Internal Affairs ("IA") at the City of Miami Beach received an Allegation of Employee of Misconduct regarding Plaintiff.

14. On May 4, 2020, Plaintiff was notified that she was under investigation by IA in IA Case No. 2020-010 (the "IA Case").

15. On July 13, 2020, Plaintiff filed EEOC Charge No. 510-2020-04794 (the "2020 Charge").

16. On November 2, 2020, I attended a meeting in the Chief of Police Conference Room at the Police Department Building (the "November Meeting").

17. The November Meeting was a confidential settlement meeting between the City, Plaintiff, The Fraternal Order of Police, William Nichols Lodge No. 8 ("FOP"), and Plaintiff's privately hired attorney, Michael Pancier, Esq.

18. The FOP is, and was in November 2020, the exclusive bargaining representative for a bargaining unit of City police employees.

19. Plaintiff was a member of the FOP.

20. The purpose of the November Meeting was to discuss possible settlement of the IA Case and the 2020 Charge.

21. At the November Meeting, the following individuals were representing Plaintiff:

i. Eugene Gibbons, Esq. (Plaintiff's attorney provided by the FOP);

ii. Michael Pancier, Esq. (Plaintiff's attorney hired privately by Plaintiff); and

iii. Kevin Millan (then President of the FOP).

22. At the beginning of the November Meeting, Eugene Gibbons gave a speech reminding everyone that the November Meeting was a confidential settlement meeting and that anything said in the November Meeting could not be used in any future proceeding.

23. The fact that the November Meeting was a confidential settlement meeting meant that in the event Plaintiff was ever interrogated by IA in a subject-officer interview pursuant to Florida Statute § 112.532, nothing said or presented in the November Meeting could be used against Plaintiff by the City.

24. The November Meeting was not a subject-officer interview pursuant to Florida Statute § 112.532.

25. Plaintiff was never interrogated during the November Meeting.

26. During the November Meeting, the City showed Plaintiff, her two lawyers and the FOP President a power point presentation (the "November Meeting Power Point"). A copy of the November Meeting Power Point is attached as **Exhibit A** Bates Nos. City 001767 - 001882.

27. The November Meeting Power Point that is attached herewith as Exhibit A was a collaborative effort between me and Internal Affairs Sgt. Andy Descalzo.[1]

28. The November Meeting Power Point shows that Plaintiff, and then-boyfriend Police Office Nicholas Guasto ("N. Guasto"), were, among other things, radioing into the City that

---

[1] The November Meeting Power Point uses the term "09." "09" is the code that is used when Police Officer is informing the City that he/she is on duty and most importantly, within the City limits.

they were within the City limits and on duty, when they were outside City limits. *See* Exh. A, Bates Nos. City 001813 – 001815.

29. The November Meeting Power Point further details all the instances when Plaintiff and N. Guasto claimed to be on duty and within City limits when they were outside of the City, effectively stealing time from the City. *See generally* Exh. A.

30. The IA Case came **before** the 2020 Charge.

31. Lieutenant Steven Cosner ("Lieutenant Cosner") was not involved in the IA Case.

32. At no point during the November Meeting ***did any one of Plaintiff's two attorney's*** or Mr. Millan, the FOP President, object that the City was violating Florida Statute § 112.532.

33. At no point during the November Meeting ***did any one of Plaintiff's two attorney's*** or Mr. Millan, the FOP President, invoke the provisions of Florida Statute § 112.534.

34. During the November Meeting, the parties discussed possible resolution of the IA Case and the 2020 Charge.

35. After the November Meeting, Settlement discussions between the City's outside counsel and Plaintiff's two attorneys continued.

36. A copy of the Internal Affairs Investigative Report for the IA Case ("IA Report") is attached as **Exhibit B**, Bates Nos. City 001572 - 001673 to this Declaration.

37. I certify that the document attached as Exhibit B is a true and correct copy of the IA Report.

38. On December 18, 2020, the City, Plaintiff, and the FOP entered into a Settlement Agreement and a Last Chance Agreement. As part of the Last Chance Agreement, Plaintiff also

provided an Irrevocable Letter of Resignation.[2] Copies of the Settlement Agreement, the Last Chance Agreement, and the Irrevocable Letter of Resignation are attached to this Declaration as **Composite Exhibit C**, Bates Nos. City 001235 – 001238; 001240 – 001246; 001248.

39. I have personal knowledge that the City negotiated the Settlement Agreement and the Last Chance Agreement with Plaintiff's two attorneys and by extension, the FOP.

40. The City did not "put" Plaintiff on a Last Chance Agreement.

41. Plaintiff, with the advice of her two attorneys and the President of the FOP, voluntarily entered into the Settlement Agreement and the Last Chance Agreement; the City did not force the Plaintiff to sign either.

42. Plaintiff, with the advice of her two attorneys and the President of the FOP, voluntarily provided the Irrevocable Letter of Resignation; the City did not force Plaintiff to provide anything.

43. The Last Chance Agreement effectively made Plaintiff an employee at will.

44. The Last Chance Agreement specifically references the IA Case. *See* Exh. C, p. 1.

45. The Last Chance Agreement does not reference the 2020 Charge because the 2020 Charge had nothing to do with any future performance of Plaintiff or any future discipline pursuant to the Last Chance Agreement. Thus, it was specifically omitted from reference in the Last Chance Agreement.

**Implementation of Plaintiff's Irrevocable Letter of Resignation**

46. The decision-maker for implementing Plaintiff's Irrevocable Letter of Resignation was then Chief of Police, Richard Clements ("Chief Clements").

[2] Paragraph nine (9) of the Last Chance Agreement required Plaintiff to "sign an irrevocable letter of resignation which shall take effect immediately upon her violation of [the Last Chance Agreement] or any part of it at any time during the term of [the] Last Chance Agreement." *See* Exh. C, ¶ 9.

47. On January 8, 2021, Lieutenant Cosner emailed me a copy of an Administrative Action Form that he filled out regarding Plaintiff. A copy of the January 8, 2021, email and the attachment are attached as **Exhibit D**[3] to this Declaration.

48. In making his allegations against Plaintiff, Lieutenant Cosner used the wrong form.

49. Lieutenant Cosner should have used an "Allegation of Employee Misconduct" form.

50. The Administrative Action Form is sometimes used after action is taken against an Officer.

51. The fact that Lieutenant Cosner used the incorrect form has no bearing on the veracity of his allegations against Plaintiff, it appeared it was just an administrative mistake.

52. Further, the fact that Lieutenant Cosner did not sign the Administrative Action Form is equally immaterial.

53. There was no question that Lieutenant Cosner was the one who filled out the Administrative Action Form.

54. The City corrected the form error and put Lieutenant Cosner's allegations against Plaintiff on an Allegation of Employee Misconduct Form.

55. This is the correct form.

56. On January 19, 2021, I received a copy of the Allegation of Employee Misconduct Form via email from Sergeant Andy Descalzo. A copy of the January 19, 2021, email and its attachment are attached as **Exhibit E**[4] to this Declaration.

---

[3] Exhibit D is Plaintiff's Bates Nos. Vol. 2 150 – 153.

[4] Exhibit E is Plaintiff's Bates Nos. Vol. 2 71 – 73.

57. The allegations on the Administrative Action Form and the Allegation of Employee Misconduct Form are identical. The City merely corrected a paperwork error.

58. On January 19, 2021, I attended a meeting with Plaintiff, Chief Clements, and the following individuals:

i. Wayne Jones (then Assistant Chief of Police);

ii. Lieutenant Paul Ozaeta (then President of the FOP);

iii. Sergeant Arley Flaherty, (then FOP First Vice President);

iv. Sergeant Reggie Lester, (then FOP Second Vice President);

v. Then-Lieutenant Delvin Brown, (then FOP Grievance Chairman); and

vi. Lieutenant Steven Cosner.

59. At no point during the January 19, 2021, meeting did Plaintiff request an attorney.

60. Had Plaintiff or any of her representatives requested an attorney, the meeting would have been stopped so that she could have an attorney.

61. That said, Plaintiff was represented at the meeting by the top officials in the FOP.

62. Said another way, Plaintiff was represented by the FOP's entire leadership.

63. Accordingly, Plaintiff had representation.

64. At no point during the meeting did any one of Plaintiff's four (4) union representatives allege that the City was violating Florida Statute § 112.532.

65. At no point during the meeting did any one of Plaintiff's four (4) union representatives invoke the provisions of Florida Statute § 112.534.

66. Had any one of Plaintiff's four (4) union representatives invoked the provisions of Florida Statute § 112.534, or even implied that there was something improper about the January 19, 2021, meeting, as the then-Commander of IA, I would have stopped the meeting.

67. On January 20, 2021, I forwarded the Allegation of Employee Misconduct Form to Sergeant Arley Flaherty. A copy of my January 20, 2021, email and its attachment are attached as **Exhibit F**[5] to this Declaration.

68. I forwarded the Allegation of Employee Misconduct Form to Sergeant Flaherty because she was then the FOP First Vice President and I wanted Plaintiff's union representatives to have a copy of the correct form.

69. Again, the allegations from Lieutenant Cosner did not change, they were just placed on the correct form.

70. During the January 19, 2021, meeting, Plaintiff stated that the reason she was at the main police station so long during her December 27-28, 2020, shift was that she was working on Officer Stella's evaluation.

71. Based on information provided by the City's IT Department, Officer Stella's evaluation was not even created on Plaintiff's computer until January 10, 2021.

72. I documented my finding in an email that I sent to Chief Clements on January 25, 2021. A copy of my January 5, 2021, email and its attachments are attached as **Exhibit G**[6] to this Declaration.

73. Additionally, I prepared a PowerPoint regarding my findings as to the allegations against Plaintiff. A copy of the PowerPoint that I prepared is attached as **Exhibit H**[7] to this Declaration.

74. I provided the PowerPoint as Exhibit H to Chief Clements.

---

5 Exhibit F is Plaintiff's Bates Nos. Vol. 2 74 – 76.

6 Exhibit G is Plaintiff's Bates Nos. Vol. 2 168 – 170.

7 Exhibit H is Plaintiff's Bates Nos. Vol. 2 158 – 167.

75. Ultimately, Chief Clements decided to implement Plaintiff's Irrevocable Letter of Resignation.

76. I spoke with Chief Clements about his decision to implement Plaintiff's Irrevocable Letter of Resignation.

77. Chief Clements never mentioned, discussed, or even implied that his decision had anything to do with the 2020 Charge.

78. The reasons Chief Clements implemented Plaintiff's Irrevocable Letter of Resignation are detailed in the letter to Plaintiff dated January 25, 2021. A copy of January 25, 2021, Letter and its exhibits are attached as **Exhibit I**, Bates Nos. City 001253 – 001267, to this Declaration.

79. The January 25, 2021, Letter accurately memorializes what happened at the January 19, 2021, meeting. *See* Exh. I.

80. I did not consider the 2020 Charge or any complaints of harassment from Plaintiff when investigating the allegations against Plaintiff or participating in discussions about implementing Plaintiff's Irrevocable Letter of Resignation.

81. Lieutenant Cosner was not a decision-maker regarding Plaintiff.

82. Lieutenant Cosner was not consulted about implementing Plaintiff's Irrevocable Letter of Resignation.

Pursuant to 28 U.S.C. Section 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

Executed on May31, 2024

A.J. PRIETO

# EXHIBIT A
# TO DECLARATION OF
# A.J. PRIETO

# SERGEANT SALABARRIA
# OFFICER GUASTO

## INTERNAL AFFAIRS CASE # 2020-0010

# SERGEANT SALABARRIA

## NOVEMBER 12, 2019

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1430-0030 | 1424 | 0002 | 28 Min |

Sgt. Salabarria's vehicle was at the station prior to her 09 time and remained in the station after her 06 time.

# SERGEANT SALABARRIA

## NOVEMBER 19, 2019

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1430-0030 | 1448 | 2351 | 57 Min |

Sgt. Salabarria's vehicle was at the station prior to her 09 time and remained in the station after her 06 time.

# SERGEANT SALABARRIA

## NOVEMBER 20, 2019*

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1430-0030 | 1443 | 2326 | 77 Min |

Sgt. Salabarria’s vehicle was at the station prior to her 09 time and remained in the station after her 06 time. Sgt. Salabarria’s vehicle does not turn on during her shift. Key card shows 1313 at Jail.

# SERGEANT SALABARRIA

## NOVEMBER 26, 2019

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1430-0030 | 1435 | 0002 | 33 Min |

Sgt. Salabarria's vehicle was at the station prior to her 09 time and remained in the station after her 06 time.

# SERGEANT SALABARRIA

## DECEMBER 4, 2019

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1430-0030 | 1430 | 2338 | 52 Min |

Sgt. Salabarria's vehicle was at home prior to her 09 time and remained in the station after her 06 time. On this day Sgt. Salabarria drove herself in to work in her police vehicle. Her vehicle did not move during her shift. Officer Guasto's AVL shows his vehicle leaving the City at 2338 and arriving home (117 N.W. 42 Ave) At 2350…forty (40) minutes before the end of Sgt. Salabarria's shift.

# SERGEANT SALABARRIA

## DECEMBER 5, 2019

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1430-0030 | 1429 | 2259 | 89 Min |

Sgt. Salabarria's vehicle was at the station prior to her 09 time and remained in the station after her 06 time. Officer Guasto's AVL shows his vehicle leaving the City at 2259 and stops at a City of Miami location. His vehicle arrives home at 2348…forty eight (48) minutes before the end of Sgt. Salabarria's shift.

# SERGEANT SALABARRIA

## DECEMBER 10, 2019

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1430-0030 | 1443 | 2237 | 126 Min |

Sgt. Salabarria's vehicle was at the station prior to her 09 time and remained in the station after her 06 time. Officer Guasto's AVL shows his vehicle leaving the City at 2237 and arriving home at 2354.

# SERGEANT SALABARRIA

## DECEMBER 11, 2019

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1430-0030 | 1430 | 2225 | 125 Min |

Sgt. Salabarria's vehicle was at the station prior to her 09 time and remained in the station after her 06 time. Officer Guasto's AVL shows his vehicle leaving the City at 2225 and arriving home at 2322.

# SERGEANT SALABARRIA

## DECEMBER 17, 2019

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1430-0030 | 1430 | 2335 | 55 Min |

Sgt. Salabarria’s vehicle was at the station prior to her 09 time and remained in the station after her 06 time. Officer Guasto’s AVL shows his vehicle leaving the City at 2335 and arriving home at 2348.

# SERGEANT SALABARRIA

## DECEMBER 18, 2019

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1430-0030 | 1430 | 2314 | 76 Min |

Sgt. Salabarria’s vehicle was at the station prior to her 09 time and remained in the station after her 06 time. Officer Guasto’s AVL shows his vehicle leaving the City at 2314 and arriving home at 2342.

# SERGEANT SALABARRIA

DECEMBER 20, 2019

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1430-0030 | 1500 | 2242 | 138 Min |

Sgt. Salabarria's vehicle was at the station prior to her 09 time and remained in the station after her 06 time. Officer Guasto's AVL shows his vehicle leaving the City at 2242 and arriving home at 2256.

# SERGEANT SALABARRIA

## DECEMBER 27, 2019

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1430-0030 | 1430 | 2334 | 56 Min |

Sgt. Salabarria's vehicle was at the station prior to her 09 time and remained in the station after her 06 time. Officer Guasto's AVL shows his vehicle leaving the City at 2334 and arriving home at 2347.

# SERGEANT SALABARRIA

## JANUARY 1, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1430-0030 | 1436 | 2340 | 56 Min |

Sgt. Salabarria's vehicle was at the station prior to her 09 time and remained in the station after her 06 time. Officer Guasto's AVL shows his vehicle leaving the City at 2340 and arriving home at 2351.

# SERGEANT SALABARRIA

## JANUARY 2, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1430-0030 | 1430 | 2257 | 93 Min |

Sgt. Salabarria's vehicle was at the station prior to her 09 time and remained in the station after her 06 time. Officer Guasto's AVL shows his vehicle leaving the City at 2257 and arriving home at 2309.

# SERGEANT SALABARRIA

## JANUARY 3, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1430-0030 | 1430 | 2316 | 74 Min |

Sgt. Salabarria’s vehicle was at the station prior to her 09 time and remained in the station after her 06 time. Officer Guasto’s AVL shows his vehicle leaving the City at 2316 and arriving home at 2331.

# SERGEANT SALABARRIA

## JANUARY 8, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1430-0030 | 1430 | 2315 | 75 Min |

Sgt. Salabarria's vehicle was at the station prior to her 09 time and remained in the station after her 06 time. Officer Guasto's AVL shows his vehicle leaving the City at 2315 and arriving home at 2326.

# SERGEANT SALABARRIA

## JANUARY 10, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1430-0030 | 1430 | 2111 | 199 Min |

Sgt. Salabarria's vehicle was at the station prior to her 09 time and remained in the station after her 06 time. Officer Guasto's AVL shows his vehicle leaving the City at 2111 and arriving home at 2122.

# SERGEANT SALABARRIA

## FEBRUARY 12, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1430-0030 | 1453 | 2230 | 143 Min |

Sgt. Salabarria's vehicle was at the station prior to her 09 time and remained in the station after her 06 time. Officer Guasto's AVL shows his vehicle leaving the City at 2230 and arriving home at 2245.

# SERGEANT SALABARRIA

FEBRUARY 12, 2020



# SERGEANT SALABARRIA

## FEBRUARY 13, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1430-0030 | 1430 | 2354 | 36 Min |

Sgt. Salabarria's vehicle was at the station prior to her 09 time and remained in the station after her 06 time. Officer Guasto's AVL shows his vehicle leaving the City at 2354 and arriving home at 0006.

# SERGEANT SALABARRIA

FEBRUARY 13, 2020



# SERGEANT SALABARRIA

## FEBRUARY 20, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1430-0030(2CL) | 1703 | 0013 | 35 Min |

Sgt. Salabarria's vehicle was at the station prior to her 09 time and drove it home at 06 time. They both arrive at the station at 1714 (not in uniform).

# SERGEANT SALABARRIA

FEBRUARY 20, 2020



# SERGEANT SALABARRIA

## FEBRUARY 21, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1430-0030 | 1430 | 2304 | 86 Min |

Sgt. Salabarria's vehicle was home prior to her 09 time and remained in the station after her 06 time.

# SERGEANT SALABARRIA

FEBRUARY 21, 2020






# SERGEANT SALABARRIA

March 8, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 0630-2000 | 0630 | 1058-1324, 1843-1952 (solo) | 215 Min |

Sgt. Salabarria’s vehicle was home prior to her 09 time and remained in the station after her 06 time. Guasto’s vehicle leaves City at 1058 and returns to the station at 1332 via 11 St.(Salabarria on video in car). At 1814 video shows both Salabarria and Guasto leaving in Guasto’s vehicle via 11 Street. At 1847 Guasto’s Vehicle arrives at home (117 NW 42 Ave). Guasto returns to station at 1952 via 11 street…video shows solo.

# SERGEANT SALABARRIA

March 8, 2020






# SERGEANT SALABARRIA

## March 9, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 0630-2000 (OT) | 0630 | 1805 | 115 Min |

Sgt. Salabarria's vehicle was at the station prior to her 09 time and remained in the station after her 06 time. Guasto's AVL shows his vehicle leaving the City at 1805 and arrives home at 1919. Does not return to the City.

# SERGEANT SALABARRIA

March 10, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
| --- | --- | --- | --- |
| 0630-2000 (OT) | 0637 | 1802 | 125 Min |

Sgt. Salabarria's vehicle was at the station prior to her 09 time and remained in the station after her 06 time. Guasto's AVL shows his vehicle leaving the City at 1802 and arrives home at 1820. Does not return to the City.

# SERGEANT SALABARRIA

## March 12, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 0630-2000 | 0637 | 1858 | 69 Min |

Sgt. Salabarria's vehicle was at the station prior to her 09 time and remained in the station after her 06 time. Guasto's AVL shows his vehicle leaving the City at 1858 and arrives home at 1914. Does not return to the City.

# SERGEANT SALABARRIA

## March 13, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 0630-2000 | 0647 | 1836 | 101 Min |

Sgt. Salabarria’s vehicle was at the station prior to her 09 time and remained in the station after her 06 time. Guasto’s AVL shows his vehicle leaving the City at 1836 and arrives home at 1848. Does not return to the City.

# SERGEANT SALABARRIA

March 13, 2020



# SERGEANT SALABARRIA

March 14, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 0630-2000 | 0647 | 1137-1352, 1901 | 211 Min |

Sgt. Salabarria's vehicle was at the station prior to her 09 time and remained in the station after her 06 time. Guasto's AVL shows his vehicle leaving the City at 1137 and arrives home at 1154. Guasto's vehicle arrives back at the station at 1352…Sgt. Salabarria is on video exiting the vehicle (11 Street Canon).
Guasto's vehicle leaves the City at 1901 and arrives home at 1926. Does not return to the City.

# SERGEANT SALABARRIA

March 14, 2020






# SERGEANT SALABARRIA

March 15, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 0630-2000 | 0641 | 1019-1115, 1923 | 104 Min |

Sgt. Salabarria's vehicle was at the station prior to her 09 time and remained in the station after her 06 time. Guasto's AVL shows his vehicle leaving the City at 1019 and arrives at 319 NE 25 St at 1026. Guasto's vehicle arrives back at the City at 1115. The vehicle returns to the station with Sgt. Salabarria in the vehicle (video 11 Street). Guasto's vehicle leaves the City at 1923 and arrives home at 1930. Does not return to the City.

# SERGEANT SALABARRIA

March 15, 2020






# SERGEANT SALABARRIA

March 15, 2020






# SERGEANT SALABARRIA

March 16, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
| --- | --- | --- | --- |
| 0900-2000 (OT) | 0954 | 1923 | 91 Min |

Sgt. Salabarria's vehicle was at the station prior to her 09 time and remained in the station after her 06 time. Guasto's AVL turns on at 0942 at 117 NW 42 Ave (Home) and arrives at the station at 1002. Sgt. Salabarria goes 09 at 0911 per radio logs. Guasto's vehicle leaves the City at 1923. Does not return to the City.

# SERGEANT SALABARRIA

March 16, 2020






# SERGEANT SALABARRIA

## March 17, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 0630-2000 (OT) | 0656 | 0831-0949, 1927 | 137 Min |

Sgt. Salabarria's vehicle was at the station prior to her 09 time and remained in the station after her 06 time. Guasto's vehicle leaves the City at 0831 and arrive home (117 nw 42 Ave) at 0844. The vehicle returns to the City at 0949. The vehicle enters the station at 0955 and Sgt. Salabarria is shown entering the station via the second floor garage door at 1000. Guasto's vehicle leaves the City at 1927. Does not return to the City.

# SERGEANT SALABARRIA

March 17, 2020



# SERGEANT SALABARRIA

## March 19, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 0630-2000 (OT) | 0635 | 1758 | 127 Min |

Sgt. Salabarria's vehicle was at the station prior to her 09 time and remained in the station after her 06 time. Guasto's vehicle leaves the City at 1758. Does not return to the City.

# SERGEANT SALABARRIA

## March 20, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 0630-2000 (OT) | 0651 | 1159-1329, 1632 | 319 Min |

Sgt. Salabarria's vehicle was at the station prior to her 09 time and remained in the station after her 06 time. Guasto's vehicle leaves the City at 1159 and returns to the station at 1359. Sgt. Salabarria is seen inside the vehicle (11 St. Video). At 1624 Guasto and Salabarria are seen leaving the station via 11 Street (Guasto's vehicle) where Salabarria appears to be sleeping in his car. Guasto's vehicle leaves the City at 1632. The vehicle arrives home at 1646. Does not return to the City.

# SERGEANT SALABARRIA

March 21, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 0630-2000 (OT) | 0641 | 0740-0804, 1127-1459, 1924 | 293 Min |

Sgt. Salabarria's vehicle was at the station prior to her 09 time and remained in the station after her 06 time. Guasto's vehicle leaves the City at 0740 and returns to the City at 0804 . Guasto's vehicle leaves the City again At 1127 and returns at 1459. Guasto's vehicle leaves one last time at 1924. Does not return to the City.

# SERGEANT SALABARRIA

March 22, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 0630-2000 (OT) | 0651 | 1333 | 408 Min |

Sgt. Salabarria's vehicle was at the station prior to her 09 time and remained in the station after her 06 time. Guasto's vehicle left the City at 1333. Does not return to the City.

# SERGEANT SALABARRIA

## April 22, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 0730-1855 | 0827 | 1840 | 57 Min |

Sgt. Salabarria's vehicle was at the station prior to her 09 time and remained in the station after her 06 time. Sgt. Salabarria goes in service at 0813 per radio log and recording. She is observed on video exiting her residence in Miami (117 NW 42 Ave) at 0818. Sgt. Salabarria is seen exiting Guasto's vehicle on the roof of the station at 0833. Does not return to the City.

# SERGEANT SALABARRIA

April 22, 2020



# SERGEANT SALABARRIA

April 22, 2020



# SERGEANT SALABARRIA

April 22, 2020

**934.03 Interception and disclosure of wire, oral, or electronic communications prohibited.**—
(1) Except as otherwise specifically provided in this chapter, any person who:(a) Intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, oral, or electronic communication;

# Officer Nicholas Guasto

## October 22, 2019

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1000-2000<br>OT Shift<br>2000-0000 | 1404 | 1757-2016, 2321 | 383 Min |

Officer Guasto enters the city at 1404. Officer Guasto’s vehicle at 2040 NW 108 Ave P. Pines (1852-1947).

# Officer Nicholas Guasto

## October 23, 2019

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1000-2000<br>OT Shift<br>2000-0000 | 0919 | 1857-1927, 2220-2354, 0030 | 53 Min |

Officer Guasto leaves the city at 1857 (2460 SW 16 CT. Officer Guasto leaves the city at 2220 to a city of Miami QTH

# Officer Nicholas Guasto

## October 24, 2019

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1000-2000 | 1857 | 0006 | 537 Min |

Officer Guasto doesn't arrive into the city until 1857. Officer Guasto's vehicle at 2040 NW 108 Ave P. Pines from 1321-1549, then in Hialeah from 1709-1801.

# Officer Nicholas Guasto

## October 26, 2019

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1400-0100 OT | 1606 | 0057 | 126 Min |

Officer Guasto doesn’t arrive in the city until 1606 from Pembroke Pines location.

# Officer Nicholas Guasto

October 29, 2019

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1000-2000<br>OT<br>2200-0000 | 0851 | 1650-1933, 1949-2126 | 260 Min |

Officer Guasto's vehicle 2040 NW 108 Ave P. Pines from 1743-1832. Officer Guasto's vehicle at 2543 SW 121 from 2015-2057.

# Officer Nicholas Guasto

October 30, 2019

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1000-2000<br>OT<br>2200-0000 | 1050 | 1302-1400, 1526-1602, 0019 | 245 Min |

Officer Guasto’s vehicle in the Hialeah area (East 5 Ave and 51 St.) 1324-1400.

# Officer Nicholas Guasto

## November 4, 2019

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1000-2000 | 0700 | 1427-1928 | 301 min |

Officer Guasto’s vehicle in the Doral and Miami locations.

# Officer Nicholas Guasto

November 5, 2019

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1400-0000 | 1405 | 1537-1716, 1755-1932, 2026-2041 | 201 min |

Officer Guasto’s vehicle at several Doral and Surfside QTH’s.

# Officer Nicholas Guasto

November 6, 2019

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1400-0000 | 1345 | 1516-1621, 1631-1846<br>1912-2210, 0035 | 378 min |

Officer Guasto's vehicle in the Doral, Pembroke Pines and Miami area.

# Officer Nicholas Guasto

## November 7, 2019

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1000-2000 | 1251 | 0024 | 168 min |

Officer Guasto's vehicle in the Miramar and Pines area prior to arriving into the city.

# Officer Nicholas Guasto

## November 12, 2019

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1000-2000 | 1040 | 1336-1424 | 88 min |

Officer Guasto’s vehicle at 470 East 51 St. at 1350, possibly picking up Salabarria.

# Officer Nicholas Guasto

## November 13, 2019

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1400-0000 | 1429 | 2017-2124, 2141-2236 | 150 min |

Officer Guasto's vehicle in the city of Miami area 2018-2124, 2141-2236.

# Officer Nicholas Guasto

## November 14, 2019

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1000-2000<br>OT<br>00000-0500 | 1427 | 1847-2031, 2245-2304,<br>0010 | 679 min |

Officer Guasto's vehicle in the Hialeah and P. Pines.

# Officer Nicholas Guasto

## November 19, 2019

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1000-2000 | 1148 | 1338-1445, 1735-1946, 2351 | 306 min |

Officer Guasto's vehicle in the Hialeah (470 East 51 St.) and Miami (4101 NW 2nd St.) area.

# Officer Nicholas Guasto

November 20, 2019

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1000-2000 | 1443 | 2326 | 282 min |

Officer Guasto's vehicle in the city at 1403 but key card information indicates keying in at 1252 via 11th St. gate.

# Officer Nicholas Guasto

## November 26, 2019

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1000-2000 | 1435 | 1849-2038, 0002 | 384 min |

Officer Guasto's vehicle at 114 NW 42 Ave and Coral Gables locations prior to arriving in the city.

# Officer Nicholas Guasto

## November 27, 2019

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1400-0000 | 1346 | 2150 | 129 min |

Officer Guasto's vehicle at 115 NW 42nd Ave at 2242.

# Officer Nicholas Guasto

## November 28, 2019

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
| --- | --- | --- | --- |
| 1700-0300 | 1600 | 2050-2340 | 169 min |

Officer Guasto's vehicle at 115 NW 42nd Ave at 2242.

# Officer Nicholas Guasto

December 12, 2019

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1000-2000 | 1422 | 2228 | 261 min |

Officer Guasto's vehicle at 128 NW 42 Ave and Coral Gables area 1000-1410.

# Officer Nicholas Guasto

## December 17, 2019

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
| --- | --- | --- | --- |
| 1000-2000<br>2000-2330 | 0749 | 1247-1424, 2335 | 97 min |

Officer Guasto’s vehicle at 128 NW 42 Ave 1315-1406

# Officer Nicholas Guasto

December 18, 2019

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1000-2000<br>2000-2300 | 1033 | 1335-1428, 2314 | 86 min |

Officer Guasto's vehicle at 128 NW 42 Ave 1351-1411

# Officer Nicholas Guasto

## December 19, 2019

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1000-2000 | 1434 | 1719-2059, 2341-2354, 0017 | 435 min |

Officer Guasto's vehicle at 128 NW 42 Ave 1351-1411

# Officer Nicholas Guasto

## December 30, 2019

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1000-2000 | 1518 | 1632 | 514 min |

Officer Guasto's vehicle turns on at at 128 NW 42 Ave 1507. Back at 117 NW 42 Ave 1649-1749. Officer Guasto's vehicle is then in the area of Broward County (Pompano/Ft Lauderdale) 1844-2025.

# Officer Nicholas Guasto

## January 2, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1400-2000<br>OT<br>2000-2330 | 1428 | 1913-2132, 2224-2257 | 233 min |

Officer Guasto’s vehicle at 128 NW 41 Ave (1926-1936), (2146-2213).

# Officer Nicholas Guasto

## January 6, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1000-2000 | 1618 | 1630 | 588 min |

Officer Guasto's vehicle turns on at 115 NW 42 Ave at 1302. Pembroke Pines area 1427-1511, Midtown area 1710-1736, Home 1825-1907, Coral Gables area 1921-2020.

# Officer Nicholas Guasto

## January 7, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1000-2000<br>OT<br>2000-0000 | 1034 | 2215 | 139 min |

Officer Guasto's vehicle in the area of 32 NW 41 Ave (Home) at 2232.

# Officer Nicholas Guasto

## January 8, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1000-2000<br>OT<br>0800-1000<br>2000-0000 | 0901 | 1058-1437, 2315 | 280 min |

Officer Guasto's vehicle at 128 NW 41 Ave (1119-1210), Coral Gables (1226-1258), back to 128 NW 41 Ave (1312-1422).

# Officer Nicholas Guasto

January 13, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1000-2000<br>OT<br>2000-2330 | 1143 | 2135 | 218 min |

Officer Guasto's vehicle is in the area of 4200 NW 5 St. until 1135. Officer Guasto's vehicle in the area of 117 NW 42 Ave (home) 2148-2213 and is then in the Coral Gables area until 0037.

# Officer Nicholas Guasto

## January 14, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1000-2000<br>OT<br>0800-1000 | 0843 | 1335-1447, 1805 | 230 min |

Officer Guasto's vehicle at 117 NW 42 Ave from 1353-1419.
Officer Guasto's vehicle is then in the Opa Locka (5286 NW 192 LN) from 1856-1955

# Officer Nicholas Guasto

## January 15, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1000-2000 | N/A | 1000-2000 | 600 min |

Officer Guasto's vehicle at home and several QTH's in the Miami and Broward area. Home at 1533 and never returns to the city

# Officer Nicholas Guasto

January 16, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1000-2000 | 1323 | 1333 Does not return | 589 min |

Officer Guasto’s vehicle turns on at 1307 at 117 NW 42 Ave. Vehicle is then a several Miami, Coral Gables, Hialeah, and Opa Locka locations.

# Officer Nicholas Guasto

## January 20, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 0600-1600 | 0825 | 1442 | 233 min |

Officer Guasto’s vehicle turns on at 117 NW 42 Ave at 0812 and returns at 1454.

# Officer Nicholas Guasto

January 21, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 0800-1800<br>OT<br>1800-2000 | 1001 | 1548 | 373 min |

Officer Guasto’s vehicle turns on at 0942, at 117 NW 42 Ave. Officer Guasto’s vehicle returns to 117 NW 42 Ave from 1609-2018.

# Officer Nicholas Guasto

February 4, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1000-2000<br>OT<br>0700-1000<br>OT<br>2000-0000 | 0856 | 0946-1437, 1855-2048<br>2211 | 567 min |

Officer Guasto's vehicle turns on at 117 NW 42 Ave at 0822. Officer Gusatso returns home (1010-1114), Coral Gables area from 1114-1250. Officer Guasto returns home 1258-1404, is then in the Pembroke Pines area from 1930-1947. Officer Guasto's final stop is at 117 NW 42 Ave at 2231.

# Officer Nicholas Guasto

## February 5, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1000-2000 | 1437 | 1930-2049, 2238 | 67 min |

Officer Guasto uses 4Hrs VAC 1000-1400. Officer Guasto arrives 37 min late and leaves 30 min early.

# Officer Nicholas Guasto

February 6, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1000-2000<br>OT<br>2000-0130 | 1707 | 1909-2135, 2313 | 332 min |

Officer Guasto's vehicle is in the Coral Gables area 1400-1510, Hialeah area 1600-1701. Officer Guasto's vehicle is in the area of 12553 SW 121 Way 1942-2107. Final QTH of 117 NW 42 Ave at 2347.

# Officer Nicholas Guasto

## February 7, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1430-0030 | 1427 | 1911-2043, 2132 | 274 min |

Officer Guasto's vehicle is in the area of 12553 SW 121 Way 1947-2014. He is home at 2146 and does not return.

# Officer Nicholas Guasto

February 11, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1000-2000 | 0902 | 1245-1432, 1857-2202 | 292 min |

Officer Guasto's vehicle is at 117 NW 42 Ave 1301-1418. Officer Guasto's vehicle is then in the Pembroke Pines area 1946-2133.

# Officer Nicholas Guasto

## February 12, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1000-2000 OT 0800-1000 OT 2000-2300 | 0919 | 1235-1453, 1908-2055, 2140-2219, 2230 | 314 min |

Officer Guasto's vehicle leaves 117 NW 42 Ave at 0857. Returns to the same location from 1249-1422. Officer Guasto's vehicle is then in the Pines area ( 2040 NW 108 Ave) 1947-2023.

# Officer Nicholas Guasto

## February 13, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1000-2000<br>OT<br>2000-0000 | 0929 | 1401-1438, 1515-1555,<br>2128-2219, 2354 | 128 min |

Officer Guasto's vehicle is at 117 NW 42 Ave 1415-1428. Officer Guasto's vehicle is at several Miami QTH's 2138-2219.

# Officer Nicholas Guasto

## February 18, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1000-2000<br>OT<br>2000-0000 | 1000 | 1153-1420, 2207-2309, | 209 min |

Officer Guasto’s vehicle is at 117 NW 42 Ave 1206-1346. Officer Guasto’s vehicle is at several Miami QTH from 2207-2309

# Officer Nicholas Guasto

## February 19, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
| --- | --- | --- | --- |
| 1000-2000<br>OT<br>2000-0000 | 1417 | 1434-2012, 0023 | 583 min |

Officer Guasto's vehicle turns on at 117 NW 42 Ave 1402. Officer Guasto's vehicle in the Pembroke Pines area from 1508-1902 and returns to 117 NW 42 Ave from 1943-1952.

# Officer Nicholas Guasto

## February 20, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1000-2000<br>OT<br>2000-0000 | 1703 | 2056-2235, 2321 | 558min |

Officer Guasto's vehicle turns on at 117 NW 42 Ave 1131. vehicle is then in the Hialeah- Opa Locka areas from 1148-1640. Officer Guasto's vehicle is at his home QTH from 2119-2215.

# Officer Nicholas Guasto

## February 24, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1000-2000 | 0919 | 0947 | 600min |

Officer Guasto’s vehicle never enters the city during his regular shift. However his vehicle travels to multiple locations to include 117 NW 42 Ave , Hialeah and Pembroke Pines areas.

# Officer Nicholas Guasto

## February 25, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1000-2000 | 0919 | 1056 | 543 min |

Officer Guasto's vehicles at 117 NW 42 Ave from 1109-1236, and then several QTH's in Miami and Broward.

# Officer Nicholas Guasto

## February 26, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1000-2000<br>OT<br>2000-2330 | 1017 | 1329-1421, 1948-2024, 2149 | 216 min |

Officer Guasto's vehicles at 117 NW 42 Ave from 1350-1417. Vehicle is then at several Miami QTH's 1948-2024. Final stop at 117 NW 42 Ave 2209.

# Officer Nicholas Guasto

## February 27, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1000-2000<br>OT<br>0800-1000<br>OT<br>2000-2300 | 0814 | 1052-1415, 2155 | 282 min |

Officer Guasto's vehicles at 117 NW 42 Ave from (1106-1158, 1306-1403,) 2206 Final.

# Officer Nicholas Guasto

## February 28, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
| --- | --- | --- | --- |
| 0930-2330 OT | 1506 | 1949 | 557 min |

Officer Guasto's vehicles at 117 NW 42 Ave from 0930-1234. Vehicle is then in the Coral Gables area from 1256-1414. Final location is 117 NW 42 Avr at 2001.

# Officer Nicholas Guasto

## March 3, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 0600-1600 | 0630 | 0914-1128, 1418 | 266 min |

Officer Guasto's vehicle at City of Miami locations 0933-1128 and then goes to several other Miami locations after 1418.

# Officer Nicholas Guasto

## March 4, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 1000-2000 | 1118 | 1456-1544, 1850 | 196 min |

Officer Guasto’s vehicle returns home from 1514-1527. Guasto’s vehicle then returns home at 1908 and doesn’t return to the city.

# Officer Nicholas Guasto

March 5, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 0600-1600 | 0623 | 0937-1020, 1135 | 264 min |

Officer Guasto's vehicle is at 266 NW 4 St 0945-1007. His vehicle is then back at 117 NW 42 Ave (home) 1155-1204 and then in the Pines area (2040 NW 108 Ave) 1237-1434.

# Officer Nicholas Guasto

## March 7, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 0630-2130 (OT) | 0624 | 0958-1133, 1848 | 257 min |

Officer Guasto's vehicle is at 327 NE 25 St. 100-1051. Officers Guasto's vehicle is then at 117 NW 42 Ave 1903-1945 and then at a Miami location 2011-2144.

# Officer Nicholas Guasto

## March 8, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 0630-2230 (OT) | 0627 | 1058-1324, 1843-1945, 2215 | 208 min. |

Officer Guasto's vehicle is at 117 NW 42 Ave. (1110-1313) . Officer Guasto's vehicle then returns home , 1859-1929.

# Officer Nicholas Guasto

## March 9, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 0630-1930 | 0630 | 1805 | 85 min. |

Officer Guasto's vehicle leaves the city at 1805, and proceeds to several Miami-Dade qth's until he's home at 1919.

# Officer Nicholas Guasto

March 10, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 0630-1630<br>OT 1630-1930 | 0637 | 1802 | 84 MINS. |

Officer Guasto’s vehicle arrives at 117 NW 42 Ave. at 1820, and never returns.

# Officer Nicholas Guasto

## March 12, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 0630-1630<br>OT 1630-1930 | 0637 | 1858 | 39 MINS. |

Officer Guasto’s vehicle arrives at 117 NW 42 Ave. at 1910.

# Officer Nicholas Guasto

March 13, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
| --- | --- | --- | --- |
| 0630-1630<br>OT 1630- 2300 | 0647 | 1836 | 281 MINS. |

Officer Guasto's vehicle arrives at 117 NW 42 Ave. at 1848 – 1921, he then drives to several locations in Coral Gables (1921-1932). Officer Guasto then returns home at 2032 and never returns to the city.

# Officer Nicholas Guasto

March 14, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 0630-1930 (OT) | 0647 | 1137-1352, 1901 | 181 MINS. |

Officer Guasto's vehicle is at 117 NW 42 Ave (1154-1342). He then returns home at 1926.

# Officer Nicholas Guasto

March 15, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 0630-2230 (OT) | 0641 | 0837-0956, 1019-1115,1923 | 333 MINS. |

Officer Guasto's vehicle leaves the city at 0837 and goes to a city of Miami qth (0846-0849). His vehicle then goes to 2040 NW 108 Ave (Pines) from 0916 to 0928. He then goes to 319 NE 25 ST. from 1019-1115. Final qth of 117 NW 42 Ave, 1936.

# Officer Nicholas Guasto

March 16, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 0630-1630<br>OT 1630-1930 | 0719 | 0825-0954, 1923 | 138 MINS |

Officer Guasto’s vehicle is at 117 NW 42 Ave. from 0837-0941.

# Officer Nicholas Guasto

## March 17, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 0430-1430<br>OT 1430-1930 | 0656 | 0831-0949, | 224 MINS |

Officer Guasto's vehicle is at 117 NW 42 Ave. from 0844-0940.

# Officer Nicholas Guasto

## March 19, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 0630-1630<br>OT 1630-1930 | 0635 | 1758 | 97 MINS |

Officer Guasto's vehicle leaves the city at 1758 and arrives at 117 NW 42 Ave. at 1836.

# Officer Nicholas Guasto

## March 20, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 0630-1630<br>OT 1630-1930 | 0651 | 1159-1329, 1632 | 289 MINS |

Officer Guasto's vehicle is at 2780 SW 37 Ave, (1216-1315). Officer Guasto's vehicle leaves the station at 1632 and arrives home at 1647. He never returns to the city.

# Officer Nicholas Guasto

March 21, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 0630-1930 (OT) | 0641 | 0740- 0804, 1127-1459, 1924 | 247 MINS |

Officer Guasto's vehicle leaves the city at 0740 and returns at 0804 via the north end. Officer Guasto;s vehicle leaves the city at 1127 and goes to 11205 SW 112 Ave from 1153-1224. He then goes to 117 NW 42 Ave. from 1311-1449.

# Known Locations

- 117 NW 42 Ave- Sgt. Salabarria and Nick Guasto's apartment in Miami
- 2040 NW 42 Ave- Ofc. Guastos former home in Pembroke Pines. (listed on Telestaff)
- 470 E 51 St- Sgt Salabarrias former home location in Hialeah. (listed on Telestaff)

# Officer Nicholas Guasto

## April 22, 2020

| SHIFT | IN THE CITY | OUT OF THE CITY | VIOLATION |
|---|---|---|---|
| 0600-1600 | 0827 | 1730 | COVID |

Date of the Allegation of Employee Misconduct. Officer Guasto is observed dropping off Sgt. Salabarria on the 5th floor of the station. This is during COVID deployment.

# EXHIBIT B
# TO DECLARATION OF
# A.J. PRIETO

MIAMIBEACH

# POLICE

INTERNAL AFFAIRS REPORT

| | |
|---|---|
| **I.A. CASE NUMBER:** | **2020-010** |
| **M.B.P.D. CASE NUMBER:** | N/A |
| **COMPLAINANT:** | Office of the Chief of Police |
| **DATE OF INCIDENT:** | April 22, 2020 |
| **DATE REPORTED:** | April 22, 2020 |
| **DATE RECEIVED BY INTERNAL AFFAIRS:** | April 23, 2020 |
| **DATE CASE TOLLED:** | April 23, 2020 (S.O.E)<br>June 19, 2020 (S.O.E/Exposure)<br>September 24, 2020<br>April 27, 2021 |
| **DATE CASE UNTOLLED:** | May 27, 2020<br>September 20, 2020<br>April 1, 2021<br>May 11, 2021 |
| **180 DAY EXPIRATION DATE:** | September 21, 2021 |
| **INVOLVED EMPLOYEES:** | Sgt. J. Sgt. Salabarria, ID 1023<br>Ofc. N. Officer Guasto, ID 848<br>Capt. Steve Feldman, ID 694<br>Lieutenant J. Rodriguez, ID 768<br>Lieutenant A. Dohler, ID 533<br>Lieutenant S. Flanagan, ID 720<br>Lieutenant D. Brown, ID 851<br>Lieutenant R. Carvajal, ID 971<br>Sgt. A. Loperfido, ID 766 |
| **[illegible]STIGATOR:** | Sergeant A. Descalzo |

**ALLEGATION:**

**The Internal Affairs Office received an Allegation of Employee Misconduct memorandum from the Operations Division where it is alleged that Sgt. Jessica Sgt. Salabarria was untruthful and was outside of the city when she was supposed to be working within the city.**

**PERSONS INTERVIEWED:**

Capt. Steve Feldman, ID 694
Lieutenant J. Rodriguez, ID 768
Lieutenant A. Dohler, ID 533
Lieutenant S. Flanagan, ID 720
Lieutenant D. Brown, ID 851
Lieutenant R. Carvajal, ID 971
Sgt. A. Loperfido, ID 766
Ofc. K. Milan, ID 141

**PERSONS NOT INTERVIEWED:**

Sgt. J. Sgt. Salabarria, ID 1023
Ofc. N. Officer Guasto, ID 840

**SYNOPSIS:**

On April 23, 2020, the Internal Affairs Unit received an Allegation of Employee Misconduct involving Sergeant Jessica Salabarria #1023 that occurred on April 22, 2020. On the date of the violation, the department was deployed under the COVID 19 mobilization. Lieutenant Dohler realized that Sgt. Salabarria was not at work at the time she was supposed to be and attempted to contact her. After several attempts, Lieutenant Dohler was able to contact Sgt. Salabarria who stated that she was in the restroom located on the 5th floor. Further investigation by Lieutenant Dohler revealed that Sgt. Salabarria was untruthful being that she was out of the city when she went in service.

Further investigation by Internal Affairs revealed that Sgt. Salabarria would not use her vehicle to travel to and from work and would have Officer Nick Guasto pick her up and take her home during the course of his shift. Investigatory efforts and evidence gathered via Telestaff reports, Trackstar AVLS, Station CCTV, and Entry/Keycard reports revealed multiple dates where Sgt. Salabarria and Officer Guasto were outside the city when they were supposed to be working within city limits.

Multiple interviews were conducted with Sgt. Salabarria's supervisors all of which stated that at no point did they authorize her to leave early, arrive late, or work outside of the

city. Some of her supervisors also stated that at no point did Sgt. Salabarria mention that she was having a hardship getting to and from work.

Both Captain Feldman and Sgt. Loperfido were interviewed due to them being Officer Guasto's supervisors in the Tech Unit. Both supervisors stated that there are specific instances where officers assigned to the Tech Unit are allowed to work from home and provided examples. After going through all the instances where Officer Guasto was found to be out of the City of Miami Beach while working with the supervisors, Sgt. Loperfido and Captain Feldman stated that on multiple occasions Officer Guasto took advantage of the honor system the Tech Unit operates under.

After reviewing all of the evidence gathered for the dates of this investigation, it was determined that Sgt. Salabarria and Ofc. Guasto working outside of the city during their shifts. Sgt. Salabarria's total time working outside of the city was 71.18 hours. Ofc. Guasto's total time working outside of the city was 320.11 hours.

During the course of this investigation, both Sgt. Salabarria and Officer Guasto entered into negotiations with the City of Miami Beach. Sgt. Salabarria entered into an agreement with the City of Miami Beach under a last chance agreement on December 18, 2020. Officer Guasto signed his agreement with the City of Miami Beach on July 7, 2021. See Appendix A (Salabarria) and Appendix B (Guasto).

**INVESTIGATION:**

**April 23, 2020**

- On April 23, 2020, the Internal Affairs Unit received an Allegation of Employee Misconduct involving Sgt. Salabarria #1023 that occurred on April 22, 2020. The allegations listed are untruthfulness and theft of time. Sgt. Salabarria was contacted by Lieutenant Dohler at 0801 hours due to her not being present at roll call. Sgt. Salabarria was scheduled to be at the station at 0730. Sgt. Salabarria advised Lieutenant Dohler that she was on the 5th-floor restroom due to not feeling well. Lieutenant Dohler and Lieutenant Flannagan responded to the 5th floor to check on Sgt. Salabarria's welfare. Upon arriving at the restroom they observed the door to be locked. While waiting outside the restroom. Sgt. Salabarria then enters the 5th floor via the Range/ Roof south side door. It was later determined that the only way to use the female restroom on the 5th floor is using a key that Sgt. Salabarria did not have therefore making it impossible that she used said restroom.
- This investigator was assigned this case and responded to the property window and requested that Property Supervisor Stacey Wright provide Key card usage

for both Sgt. Salabarria and Officer Guasto at 1448 hours for the time frame of 10/22/19 thru 03/22/20

- At 1515 Sgt. Han and I observed Sgt. Salabarria's vehicle parked on the west side of the 4th level of the police station facing east on her day off.
- **Case tolled due to a State of Emergency/COVID-19.** See case file for all State of Emergency documentation.

**April 24, 2020**

- Gathering of AVL, Telestaff, and key card data inputted into Microsoft Excel to establish inconsistencies such as tardiness.
- Began reviewing the MBPD station surveillance video.

**April 30, 2020**

- AVL reviews were conducted on both Sgt. Salabarria's vehicle (17004) and Officer Guasto's vehicle (3391). Sgt. Salabarrias's vehicle appears to be stationary for multiple days at a time. Officer Guasto's vehicle AVL reveals that he uses it on a daily basis and appears to have a final stop of 117 NW 42 Ave on multiple days.
- Reviewed station video.

**May 4, 2020**

- Subject Officer Notification sent to Sgt. Salabarria via email to Lieutenant Baldwin.
- Subject Officer Notification sent to Officer Guasto via email to Sgt. Loperfido. Baldwin.
- Reviewed station video.

**May 8, 2020**

- Received the signed copy of Officer Guasto's Subject Ofc. Notification via interoffice mail. See the case file for a copy.

**May 11, 2020**

- Received the signed copy of Sgt. Salabarria's Subj Ofc. Notification via inter-office email. See the case file for a copy.
- Reviewed station CCTV video.

**May 18, 2020**

- During the course of the investigation, this investigator observed that Officer Guasto appeared to be using two key cards/ access keys. While reviewing station camera footage, this investigator observed that Officer Guasto would remove what appeared to be a key card from the visor of his assigned police vehicle and use it to enter the garage. A comparison was then done using the station video and Officer Guasto's key card audit sheet and several inconsistencies were found. These included zero instances where Officer Guasto would use his assigned key card to enter the garage.
- This investigator requested an audit of all key cards being used to enter the parking garage on several dates and specific times where Officer Guasto was observed entering the parking garage via station camera and AVL information. PEU Supervisor S. Wright assisted in providing me a copy of Access Vendor #2 key card information which is the key card this investigator suspected Officer Guasto was using to enter the building based on information gathered. The information on the Access Vendor #2 card was consistent with the times Officer Guasto was entering the garage.

**May 20, 2020**

- Lieutenant Gil, Sgt. Lemus, and I responded to 117 NW 42 Ave (Sgt. Salabarria and Officer Guastos current residence). I met with building manager Mariesly Morales (7864495592) to retrieve the video from 4/22/2020, the date of occurrence for the Allegation of Employee Misconduct.. Ms. Morales was able to provide footage and it was uploaded to the file. While reviewing footage with Ms. Morales, she observed Officer Guasto's vehicle on camera and stated that the vehicle belonged to a Miami Beach Police Officer. She also stated that his girlfriend was also a police officer for Miami Beach. I confirmed the time on the CCTV with the live time and it was accurate. Sgt. Salabarria was scheduled to work 0730-1855 hours.
- I began reviewing the footage provided which revealed the following…
    1. Sgt. Salabarria walking out of the elevator with Officer Guasto at 08:18 hours. Sgt. Salabarria appeared to not be in possession of her duty belt.
    2. Officer Guasto's vehicle (black unmarked Ford Explorer) is then observed driving through the property's parking garage before exiting.

**May 26, 2020**

- Review of AVL for both Sgt. Salabarria and Officer Guasto. Officer Guasto was observed arriving late on 5/22/20.

- The time period for the scope of this investigation was determined to be for dates between October 22, 2019, through March 22, 2020, excluding the Super Bowl.
- Witness Officer interview conducted at 225 Washington Ave. See below.

**At 1:55 PM, Sergeant Anthony Loperfido was interviewed as a witness officer in this investigation. The interview was conducted at the Miami Beach Police Internal Affairs Office, located at 225 Washington Avenue, Miami Beach, Florida. Sgt. Luis Corps and I conducted the interview. Sergeant Anthony Loperfido provided a sworn recorded statement. The following is a synopsis of his statement:**

- Sgt. Loperfido has been employed by MBPD for 16 plus years.
- Currently assigned to the Technical Operations Unit.
- Stated that he is Officer Guasto's direct supervisor.
- At the time of this interview, per Sgt. Loperfido, Officer Guasto's hours were 0600-1600. He is assigned to IT duties along with South Pointe park due to the COVID-19 deployment mask enforcement duties.
- Officer Guasto is supposed to report to Southpoint Park by 0730. Prior to 0730, he is to complete administrative tasks.
- No roll call at the beginning of the shift.
- Per. Sgt. Loperfido, Officer Guasto had been approved for time off for a previous engagement (father's birthday).
- Advised that if Telestaff shows Officer Guasto checked in by Loperfido, then he did check him in for 5/20/20.
- Sgt. Loperfido stated that if there were to be an adjustment to any of his employee's schedules, he would be made aware.
- Loperfido stated that it was common practice for his employees to advise him if they were running late or weren't going to come into work.
- Stated that if Officer Guasto was 1 hour and 42 minutes late on 5/20/20, he would've been made aware.
- Stated that Officer Guasto was working a full 10 hour day and had no approved time off.

**The interview was concluded at 2:06 PM. (Refer to the case file for the entire recorded statement).**

**May 27, 2020**

- The case was un-tolled.

**May 28, 2020**

- Contact made with MBPD Union President Milan to meet at 225 Washington Ave with Officer Guasto. Officer Guasto responded to the Internal Affairs Office where he surrendered most of his issued equipment to Internal Affairs. The property was impounded under MBPD CS# 2020-39921 with PEU J8. Mahle 884. His vehicle # 3391 was also impounded. Lieutenant Jorge Garcia was advised.
- Commander Prieto asked for Departmentally issued Entry Cards. Officer Guasto surrendered the one assigned to him. When asked if he had another one, he stated that he might have one at home. (NOTE) He is observed entering the station garage on 5/28/20 using the card he keeps on his driver-side visor. When the vehicle was inventoried, the card was not in the vehicle. After speaking with union representation, Officer Guasto surrendered said entry card to FOP Pres. Milan who in turn turned it over to IA. The entry card was confirmed to be the Access Vendor # 2 card.
- When asked about his city-issued laptop computer, Officer Guasto stated he did not have one. That whenever work had to be done, he would connect virtually. After speaking with FOP Pres. Milan, Officer Guasto surrendered the Mac Book Pro that was assigned to him.
- When asked about a city-issued cell phone (Apple iPhone) he surrendered it.
- All of the property that was surrendered on this date was impounded at PEU with the assistance of PEU technician John Mahele. See case file for property receipts and documentation.
- An administrative review of Officer Guasto's city-issued laptop and cell phone in accordance with SOP# 10A was conducted by Sgt. Daniel Han. A review of the cell phone revealed a recorded conversation between Sgt. Salabarria and Lieutenant J. Rodriguez on an unknown date.
- Officer Guasto was relieved of duty. All documents were signed with FOP President Milan present. See case file for documentation. Officer Guasto completed the Memorandum and provided a current home address of 117 NW 42 Ave #1008 in the City of Miami.
- Item # 18 (USB) was signed out reference investigation. NCR completed.

**June 2, 2020**

- FOP President Milan contacted me to surrender additional issued equipment that Officer Guasto had in his possession. All property was impounded at PEU with the assistance of technician John Mahle. See the case file for property receipts.
- Witness Officer interview conducted at 225 Washington Ave with Lieutenant Jack Rodriguez.

**At 8:36 PM, Lieutenant Joaquin Rodriguez was interviewed as a witness officer in this investigation. The interview was conducted at the Miami Beach Police Internal Affairs Office, located at 225 Washington Avenue, Miami Beach, Florida. Sgt. Janelle Delgado and I conducted the interview. Lieutenant Joaquin Rodriguez provided a sworn recorded statement. The following is a synopsis of his statement:**

- Lieutenant Rodriguez has been a supervisor for almost 10 years
- Stated that he has never authorized any employee to record him during a phone conversation.
- The recording with Sgt. Salabarria and Lieutenant Rodriguez was played for Rodriguez.
- Rodriguez acknowledged that he is the male voice heard in the phone conversation.
- Rodriguez stated that the conversation was in reference to a day off request that "she" had made not within her chain of command. When asked who he was referring to when he said "she" he stated Sgt. Salabarria.
- Rodriguez stated that he did not authorize Sgt. Salabarria to record this conversation.
- Rodriguez stated that he did not authorize anyone to record the conversation.

**The interview was concluded at 8:47 and no further questions were asked. (Refer to the case file for the entire recorded statement).**

**June 10, 2020**

- Resubmitted evidence Item # 18 (USB) back into PEU under IA evidence.

**June 17, 2020**

- Review of AVL and Station CCTV.

**June 22, 2020**

- Completed downloading of all available Station CCTV for the time period of 2/11/20 through 03/22/2020.
- Reviewed station CCTV and AVL.
- Requested recordings from Nuria Diaz of PSCU via landline for 4/22/20 ( date of the Allegation of Employee Misconduct). Recordings were made available the same day and picked up by this investigator.

  I reviewed the recordings which consisted of Main Channel 1,2, and Supervisor Channel 13 between 0630 and 1030 hours. Once the review was completed, I compared the audio to the CCTV footage of Sgt. Salabarria and Officer Guasto leaving their apartment located at 117 NW 42 Ave in Miami.

| Time | Audio Recording | 117 NW 42 Ave CCTV |
|---|---|---|
| 08:13 | Sgt. Salabarria goes 09 and states in Area 4. (Recording time 16:30) | N/A |
| 08:18 | N/A | Sgt. Salabarria and N. Officer Guasto were observed walking out of the elevator at 117 NW 42 Ave. No gun-beLieutenant on, just a radio. |
| 08:30-08:35 | Lieutenant Dohler raises Sgt. Salabarria on PD Main at 08:30 (recording time 21:23) to have her QSY to Channel 13. At 08:31 (recording time of 22:36) Sgt. Salabarria is asked what her QTH is, and she asks Dohler if he's on the first floor. Dohler responds by asking her for her QTH again and she states 05. Dohler asks where and she states range bathroom. Dohler responds by having her raise him when she's out of the restroom or to come to the second floor. | Sgt. Salabarria and N. Officer Guasto were observed driving into the station via 12 St. They proceed to drive up to the 5th floor where she observed exiting the passenger side door of the vehicle. She is then observed walking into the range via the helipad where she is encountered by Lieutenant Dohler and Lieutenant Flanagan. **Note:** Sgt. Salabarria is never observed in the fifth-floor bathroom before her arrival at the station at 08:34 |

**July 23, 2020**

- The scope of this investigation was for the time period between October 22, 2019, through March 22, 2020, and April 22, 2020. While reviewing AVL, Telestaff, and Station CCTV, it was determined that Sgt. Salabarria and Officer Guasto were leaving the city while on duty on several occasions without the approval of a supervisor.

**August 3, 2020**

- I requested all overtime slips for Sgt. Salabarria and Officer Guasto for the time period between October 22, 2019, through March 22, 2020, via payroll employee Yamilet Acosta. All overtime slips were received the same day. **NOTE: There were no physical overtime slips for the month of March due to the spring break deployment. All entries were done directly through Telestaff.**

**August 5, 2020**

- During the course of the investigation, multiple resources were used in order to determine whether Sgt. Salabarria and Officer Guasto were outside of the city limits during work hours. Trackstar AVLS, Telestaff, Key card reports, station CCTV, and the CCTV from Officer Guasto and Sgt. Salabarria residence were used. This calculated to the below-listed amount of hours that Sgt. Salabarria and Officer Guasto were outside of the city limits.

  Sgt. Salabarria- 71.18 Hours
  Officer Guasto- 320.11 Hours

  **See the case file for the Microsoft Excel Sheet describing each incident in detail.**

**August 6, 2020**

- Subject Officer Notification of Interview emailed to Sgt. Salabarria via Lieutenant Flanagan at 8:13 PM. The email consisted of the interview notification and a copy of the Officer Bill of Rights. The interview was scheduled for August 20, 2020, at 11 AM.

- Subject Officer Notification of Interview emailed to Officer Guasto via FOP President Milan at 8:38 PM. The email consisted of the interview notification and a copy of the Officer Bill of Rights. The interview was scheduled for August 24, 2020, at 11 AM

**August 7, 2020**

- FOP President Milan responded to the Subject Interview Notification advising me that the FOP attorney would not be available for either interview for the dates scheduled. I responded to Milan advising him that a mutually agreed interview date would be discussed and scheduled for a later date.

**August 10, 2020**

- Received a signed Subject Officer Notification of Interview from Sgt. Salabarria via city email. See the case file for a copy of the signed notification.

- Review of Station CCTV, AVL, and keycard information in preparation for interviews.

**August 12, 2020**

- FOP President Millian contacted me to discuss dates of availability for the FOP attorneys as it pertains to both Subject Officer interviews. The new dates were taken into consideration and a new Subject Officer Notification of Interviews was sent.

- Sgt. Salabarria was notified of a new interview date via city email through Lieutenant Flanagan. The new interview date was scheduled for August 27, 2020, at 11 AM.

- Officer Guasto was notified of a new interview date via city email through FOP President Milan. The interview was scheduled for September 3, 2020, at 11 AM

**At 1043 AM, Lieutenant Joaquin Rodriguez was interviewed as a Witness Officer in this investigation. The interview was conducted at the Miami Beach Police Internal Affairs Office, located at 225 Washington Avenue, Miami Beach, Florida. Sgt. Daniel Han and I conducted the interview. Lieutenant Joaquin Rodriguez provided a sworn recorded statement. The following is a synopsis of his statement:**

- During the time period between October 22, 2019, through Spring Break 2020, Lieutenant Rodriguez was assigned to the Operations Division as a Lieutenant on afternoons
- Part of the responsibilities of being a Lieutenant is staffing and approving time off on Telestaff.
- A Sergeant would request time off via Telestaff, word of mouth, or an email.
- Lieutenant Rodriguez stated that if an officer or Sergeant needed time off at the beginning, middle, or end of the shift, he would need to be notified.
- Time would be deducted from the officer's time bank by Telestaff.
- Lieutenant Rodriguez stated that he has supervised Sgt. Salabarria while he was on afternoons during the above-mentioned time period.

| Date | Supervisor Yes or No | Approved time Yes or No |
|---|---|---|
| **10/23/19** | **Yes** | **No** |
| **10/25/19** | **Yes** | **Yes/ Alternate used** |
| **10/30/19** | **Yes** | **Yes/1.5 hours Atlernate** |
| **10/31/19** | **No** | **No** |

| | | |
|---|---|---|
| 11/1/19 | Yes | No |
| 11/6/19 | Yes | No |
| 11/7/19 | Yes | No |
| 11/8/19 | Yes | No |
| 11/14/19 | Yes | No |
| 11/15/19 | Yes | Yes/Vacation Days |
| 11/20/20 | Yes | No |
| 11/27/19 | Yes | No |
| 11/28/19 | Yes | No |
| 12/4/19 | Yes | No |
| 12/5/19 | Yes | No |
| 12/11/19 | Yes | No |
| 12/12/19 | Yes | Yes/CL 2300-0030 |
| 12/18/19 | Yes | No |
| 12/26/19 | Yes | No |
| 12/27/19 | Yes | No |
| 1/1/20 | Yes | No |
| 1/2/20 | Yes | No |
| 1/3/20 | Yes | No |
| 2/20/19 | Yes | Yes/ CL 1430-1630 |
| 2/26/20 | Yes | No |
| 2/27/20 | Yes | No |
| 2/28/20 | Yes | No |

- Responsibilities of an area Patrol Sergeant include monitoring personnel and radio traffic, approving reports, and administrative tasks with their subordinates. On occasion, Sergeants respond to calls and check on their officers.
- Patrol Sergeants can leave their assigned area with permission from the shift commander. Examples include: Eating out of the zone while they still monitor the radio.
- A Patrol Sergeant is required to be in the city to monitor the radio.
- Lieutenant Rodriguez has never seen Sgt. Salabarria inside Officer Guasto's

vehicle.

- Patrol Sergeants are not allowed to leave the city without the shift commanders' permission.
- A supervisor working 1430-0030 must be at the station at 1430. If there was an issue where they are running late, they must notify the shift commander.
- A supervisor working 1430-0030 is allowed to leave the city 15 min before the end of the shift (0015) from within the city limits.

The interview was concluded at 1117 hours and no further questions were asked. **(Refer to the case file for the entire recorded statement).**

**August 13, 2020**

**At 1202 PM, Sgt. Loperfido was interviewed as a Witness Officer in this investigation. The interview was conducted at the Miami Beach Police Internal Affairs Office, located at 225 Washington Avenue, Miami Beach, Florida. Sgt. Jorge Lemus and I conducted the interview. Sgt. Loperfido provided a sworn recorded statement. The following is a synopsis of his statement:**

- Sgt. Loperfido (Loperfido) is the Sergeant that supervises the Tech Services Unit. This includes the Technical Operations section and the Information Systems section.
- Approving time off for his employees is one of his duties.
- Loperfido stated that he should be made aware if one of his employees is working outside of the city limits.
- Has been Officer Guasto's immediate supervisor for approximately 3 years.
- All requests for time off can be made via Telestaff, word of mouth, or a "sticky note" on Loperfido's desk.
- If time off is approved, the time would be deducted from the employee's time bank via Telestaff.
- All of his employee's work hours fluctuate depending on the type of projects they are working on.
- Loperfido advised that he was certain that at times he had employees under his supervision working without his knowledge.
- When it comes to his employees being at work, Sgt Loperfido stated "I only know what I know" and stated that his unit works with a "tremendous honor

policy".

- Tech Services does not complete a daily log or any document that advises Loperfido of tasks that have been completed due to not having time to fill one out and because it is not required. He stated that all of his employees are self-directed.
- Tech Services employees are allowed to work from home. Loperfido stated that the unit was given this direction over 13 years ago. He also stated that the organization doesn't care if you are sitting at home in your bed, as long as the work gets done.
- When asked about specific work locations outside of the city, he stated that no specific location was known but that the tech unit is based on the "honor policy".
- Loperfido stated that if an employee felt that they could complete a task more efficiently out of the city, they were allowed to do it.
- Tech Services does not hold a roll call. When asked where Officer Guasto should be at the beginning of his shift, Loperfido stated "working".

Sgt. Loperfido was then provided Telelstaff printouts and overtime slips for dates that Officer Guasto worked in the timeframe between October 22, 2019, through March 22, 2020. Sgt. Loperfido stated that he had no recollection regarding approval or disapproval of time off requests for the past 9 months.

- Loperfido stated that it would have been acceptable for employees under his supervision to work from home pre, post, and during the COVID-19 deployment.
- When asked if there was a lack of supervision within Tech Services, Loperfido responded stating " we have is a lack of our agency to take care of our people and minimize the amount of workload they put on them".

After a brief recess, Loperfido stated that he takes his job personally and that he was in the position he was in due to Officer Guasto doing something that he shouldn't have done. He then stated that he felt that Officer Guasto took advantage of the "honor policy", of him, and of the Tech Service Unit.

Loperfido was then asked about multiple dates where Officer Guasto leaves the city during his shift and goes to multiple locations throughout Miami Dade and Broward

County. Loperfido stated that he had no recollection of being notified nor had any documentation regarding Officer Guasto being outside city limits during work hours. On multiple occasions, Sgt. Loperfido stated that the locations Officer Guasto was responding to had nothing to do with work. These locations include numerous locations in Pembroke Pines (previous residence), Hialeah, Opa Locka, Miami, Unincorporated Dade, and Coral Gables.

Loperfido was then given multiple examples of Officer Guasto leaving the city during his shift and responding to the area of 117 NW 42 Ave Miami, Fl which at the time of this interview is where Officer Guasto currently resides with Sgt. Salabarria. When advised that Officer Guasto was leaving the city to pick up Sgt. Salabarria to bring her to work, Loperfido advised that he knew a handful of times. He also stated that he had approved of Officer Guasto's actions, but only for a couple of times not as many times as had occurred.

Loperfido was then asked if that was based on the information provided to him, did he feel that Officer Guasto took advantage of him. He replied, "Yes, there is some very clear, taking advantage of me". I then asked Loperfido if this behavior was common practice within the Tech Services Unit and he stated "no".

During this investigation, Officer Guasto was observed using a vendor key card to enter the parking garage. He would then use his assigned key card to enter the building. When asked if there would be any logical explanation as to why a Tech Officer would use an unassigned key card, Loperdifo stated "yes". He explained that Tech Services is assigned two (2) vendor key cards to issue to vendors working on projects within the building. Loperfido has one card and Officer Guasto had the other. Loperfido stated that because he is a "lazy" person, he maintains custody of his vendor key and keeps it in his vehicle's visor to use when entering the parking garage. Loperfido then stated that he authorized Officer Guasto to possess the vendor key card.

I then asked Loperfido who authorized Officer Guasto to use the vendor key card for his personal use. He replied by stating that nobody authorized him. The card is assigned to his unit, and it's in his possession so he uses it. I then asked Loperfido if the purpose of

a vendor card was solely for vendors and he stated "yes".

**The interview was concluded at 1536 hours and no further questions were asked. (Refer to the case file for the entire recorded statement, interview transcript, and the spreadsheet highlighting specific dates of violations.).**

**August 14, 2020**

**At 1:11 PM, Lieutenant Scott Flanagan (Flanagan) was interviewed as a Witness Officer in this investigation. The interview was conducted at the Miami Beach Police Internal Affairs Office, located at 225 Washington Avenue, Miami Beach, Florida. Sgt. Jorge Lemus and I conducted the interview. Lieutenant Scott Flanagan provided a sworn recorded statement. The following is a synopsis of his statement:**

- Flanagan has been employed by MBPD for 19+ years
- He has been a Lieutenant on patrol for five years.
- Approving time off and staffing is part of the responsibilities of a Patrol Lieutenant.
- Flanagan stated that employees would notify him via Telestaff, email, or word of mouth to request time off.
- Flanagan is usually notified if a subordinate needed time off before their shift. Example: A Sergeant calling the sick line requesting an hour off.
- If employees needed time off during their shift or toward the end of the shift, he (Lieutenant) must be notified.
- Time off would be deducted via Telestaff record. No other way the time off would be documented.
- Flanagan has supervised Sgt. Salabarria while he was a lieutenant.
- Flanagan stated some responsibilities of an area patrol sergeant include attendance and assigning daily assignments and tasks. Keeping the lieutenant posted with updates about any significant incidents, monitoring the radio and their personnel, and communicating with other supervisors in reference to personnel and calls and time-off requests.
- Sgt. Salabarria has never communicated any hardships about her commute to and from work.
- Area patrol sergeants are allowed to leave their zone. An example would be to eat

out of their zone. Flanagan also stated that a sergeant is allowed to leave the zone without notifying a lieutenant if he/she is having lunch in Area 1 while being assigned to Area 4. If they are going to the middle or north from the south, he should be notified.

- Doesn't recall seeing Sgt. Salabarria inside of Officer Guasto's assigned police vehicle first hand. Flanagan then referred to the incident that took place on April 22, 2020, where he observed Sgt. Salabarria exiting a dark-colored SUV in the station parking lot that he suspected was Officer Guasto's vehicle via station CCTV.
- Flanagan stated that a patrol area sergeant is not allowed to leave the city without notifying the shift commander/Lieutenant
- An area patrol sergeant scheduled to work 0630-2000 hours must be at the station at 0630 and no later. If the sergeant encountered an issue where they can't make it to work on time, they would need to notify the shift commander.
- If an area patrol sergeant is working 0630-2000 hours, they are allowed to leave 15 min before the end of their shift. In this case, it would be 1945 and from within city limits.
- A patrol sergeant must be in the city while working patrol overtime.

| Date | Supervisor Yes or No | Approved time Yes or No | Did you Approve time Yes or No | Did you approve her to leave the city Yes or no | Were you aware she was Out of the city | Should she had made you aware? |
|---|---|---|---|---|---|---|
| 3/5/20 | Yes | No | No | No | No | Yes |
| 3/6/20 | Yes | No | No | No | No | Yes |
| 3/7/20 | Yes | No | No | No | No | Yes |
| 3/12/20 | Yes | No | No | No | No | Yes |
| 3/13/20 | Yes | No | No | No | No | Yes |
| 3/14/20 | Yes | No | No | No | No | Yes |
| 3/19/20 | Yes | No | No | No | No | Yes |
| 3/20/20 | Yes | No | No | No | No | Yes |
| 3/21/20 | Yes | No | No | No | No | Yes |
| Refer to questions | Dealing with 4/22/20 | | | | | |
| 4/22/20 | No | No | No | No | No | Yes |

**All of the below statements are about the Allegation of Employee Misconduct for the events that transpired on April 22, 2020.**

- Lieutenant Flanagan stated he was working as the Area 1 Lieutenant on 4/22/2020 working 0530-1655 hours during the COVID deployment.
- Lieutenant Dohler and Baldwin were also working. Per Telestaff, Sgt. Salabarria was assigned to Lieutenant Dohler on 4/22/2020.
- Before Sgt. Salabarria's scheduled time, she did not notify Lieutenant Flanagan that she would be late. Lieutenant Flanagan did receive an email from Sgt. Salabarria an hour or more after she arrived at the station requesting that an hour of compensatory leave time be deducted from her time bank. Lieutenant Flanagan emailed me a copy of that email. **See the case file for a copy of the email. As of this date, there was no entry into Telestaff to reflect the time deduction.**

The statements below are what Lieutenant Flanagan recalls as his involvement with the Allegation of Employee Misconduct.

- Lieutenant Flanagan was contacted by Lieutenant Dohler informing him to respond to the first floor of the station garage at approximately 0800 about assisting him in locating Sgt. Salabarria who had not reported to work and was scheduled to be at the station at 0730.
- Lieutenant Flanagan acquired Sgt. Salabarria's car number and conducted an AVL check. The AVL check revealed that the vehicle was in the station on the second floor and that it hadn't moved since April 2, 2020.
- Lieutenant Flanagan stated that Dohler called and raised Sgt. Salabarria on the radio and she stated that she was in the range/fifth-floor bathroom.
- Lieutenant Flanagan and Dohler proceeded to go to the fifth-floor bathroom area. They noticed that both bathrooms were locked. They proceeded to knock on the door and received no answer. At this point, Lieutenant Flanagan became concerned for Sgt. Salabarria's well being and went downstairs to PEU to get a key for the bathroom. When he got back up to the fifth floor, the bathroom door had been opened by who he recalls as range personnel. The women's bathroom was vacant. Sgt. Salabarria was then observed by Lieutenant Flanagan enter the fifth floor via the doors leading into the hallway from the helipad/roof. According to

Lieutenant Flanagan, she appeared nervous. She stated that she was embarrassed and had to get fresh air because she didn't feel well possibly because of some diet pills she had taken. Lieutenant Flanagan then stated that both he and Lieutenant Dohler asked Sgt. Salabarria if she needed medical attention and she stated that she was fine.

- Lieutenant Flanagan then asked Sgt. Salabarria if she was inside the bathroom and she stated "yes". When asked who was in the bathroom now since it was locked, she stated that she possibly locked it by mistake when she walked out. Lieutenant Flanagan found this suspicious due to the lock being a deadbolt which meant that it had to be physically locked from the inside once the door was shut or with a key from the outside.
- Lieutenant Flanagan went to the Lieutenants office where he asked Lieutenant Baldwin, who has access to the camera system, to review the station cameras. Lieutenant Baldwin then reviewed the cameras with Lieutenant Flanagan present. Footage from the fifth-floor hallway leading to the bathroom was reviewed previous to Lieutenant Flanagan and Dohlers' arrival. Sgt. Salabarria was never observed. The first time she is observed entering the fifth floor is when she walked in via the roof/helipad door. At this point, Lieutenant Flanagan determined there was a problem.
- Further investigation into the camera footage, revealed Sgt. Salabarria exiting a dark-colored SUV with dark tints (assumed to be Officer Guasto's vehicle) on the floor just below the helipad. She is then observed walking up the stairs and walking into the building via the fifth floor/ helipad door.
- Lieutenant Flanagan conducted an AVL check of Officer Guasto's vehicle. **(Refer to the Allegation of Employee Misconduct).** Lieutenant Flanagan stated that the AVL check of Officer Guasto's vehicle is consistent with the time frame in which Sgt. Salabarria is observed exiting the black SUV and entering the station.
- Lieutenant Flanagan stated that according to the Lieutenant's investigation with AVL and camera footage, Sgt. Salabarria couldn't have been in the city at 0813 hours which is when she went into service on channel 1 (Radio Logs and Recording of Channel 1 on file).
- On April 22, 2020, the department was operating under the COVID 19 deployment. Which meant there were 2 start times for officers (0600 and 0800{Flanagan and

Baldwin}) and two for supervisors (0530-0730 {Dohler and Sgt. Salabarria}).

- Roll Call was conducted daily. One at 0600 on the first floor of the station where officers would have their temperature checked, and checked in by their supervisors. The second would be at 0800 where the same procedure was conducted. Sgt. Salabarria was scheduled to be at work at 0730 and to be at roll call at 0800.
- All officers and supervisors were aware of the times and locations of their roll calls.
- Lieutenant Flanagan stated that he knew that a key was needed for the bathroom on the fifth floor due to recognizing that it used a deadbolt. This would make it impossible to lock the door from the outside unless someone had a key.
- Lieutenant Flanagan believes the statements provided to him by Sgt. Salabarria were untruthful.
- Based on the information gathered by Lieutenant Flanagan (camera footage, AVL, and statements) he believed Sgt. Salabarria was running very late on 4/22/20. For the past month, she had been riding with Officer Guasto to and from work. Around the times that Sgt. Salabarria is supposed to report to work, Officer Guasto's AVL is observed leaving 117 NW 42 Avenue Miami, FL (later identified as Officer Guasto and Sgt. Salabarria home) and coming into the city. Taking about 20 minutes.
- On 4/22/20, Officer Guasto's vehicle is observed (AVL) leaving the same 117 NW 42 Ave Miami, FL and taking approximately 20 min to come to the station. The AVL indicated that Officer Guasto's vehicle traveled east on 11th 1 Street, bypassed the 11th Street gate, traveled northbound on Washington, then west on 12th Street, and enter the station via the 12th Street gate. Lieutenant Flanagan then stated that he was advised that the 12th Street gate cameras were not operating at the time.
- Lieutenant Flanagan stated that he believes that Officer Guasto and Sgt. Salabarria purposely entered via the 12th Street gate to avoid being captured on the key card access/camera.

The interview was concluded at 1:54 PM and no further questions were asked. **(Refer to the case file for the entire recorded statement and the email).**

**August 17, 2020**

**At 1031 AM, Lieutenant Gregory Baldwin was interviewed as a witness officer in this investigation. The interview was conducted at the Miami Beach Police Internal Affairs Office, located at 225 Washington Avenue, Miami Beach, Florida. Sgt. Daniel Han and I conducted the interview. Lieutenant Gregory Baldwin provided a sworn recorded statement. The following is a synopsis of his statement:**

- Lieutenant Baldwin has been employed by MBPD for 27 years. He has been a Lieutenant for 5.5 years.
- Currently assigned to the patrol division as a lieutenant.
- Approving time off and staffing is part of the responsibilities of a patrol lieutenant
- If time off is needed, employees would notify him (Lieutenant) via Telestaff, email, or word of mouth.
- If an employee needed time off at the beginning of the shift, Lieutenant Baldwin would be notified via sick line or directly.
- If employees needed time off during their shift or toward the end of the shift, he (lieutenant) would need to be notified via word of mouth or Telestaff.
- Time off would be deducted via Telestaff record to his understanding as he isn't the one that directly deducts the time.
- Lieutenant Baldwin has supervised Sgt. Salabarria while he was a lieutenant on patrol.
- Sgt. Salabarria has never communicated any hardships about her commute to and from work.
- An area patrol sergeant is allowed to leave their zone on occasion ( meal break, or if they are requested. The lieutenant should ideally be notified but not 100 percent of the time.
- A patrol sergeant must be in the city while working patrol overtime.

| Date | Supervisor Yes or No | Approved time Yes or No | Did you Approve time Yes or No | Did you approve her to leave the city Yes or no | Were you aware she was Out of the city | Should she had made you aware? |
|---|---|---|---|---|---|---|
| | | | | | | |
| 4/22/20 | No/Lieutenant Dohler | No | No | No | No | Yes/ Should've advised |

**All of the below statements are in reference to the Allegation of Employee Misconduct for the events that transpired on April 22, 2020.**

- Sgt. Salabarria was scheduled to work 0730-1855 hrs. She should have been at the station at 0730 conducting administrative tasks until Roll Call at 0800.
- Lieutenant Baldwin was scheduled to be the early lieutenant 0530-1655 hours.
- All employees were aware of the times and locations of roll call.
- Lieutenant Baldwin stated he was working as the Area 3 lieutenant on 4/22/2020 working 0530-1655
- Lieutenant's. Dohler and Flanagan were also working. Per Telestaff, Sgt. Salabarria was assigned to Lieutenant Dohler on 4/22/2020.
- Before Sgt. Salabarria's scheduled time, she did not notify Lieutenant Baldwin that she would be late.
- Lieutenant Baldwin was assigned to Areas 2 and 3. He responded to the NESS to conduct a roll call. He was then notified by either Lieutenant Dohler or Flanagan at approximately 9 AM to review station cameras due to Sgt. Salabarria arriving late to work.
- Lieutenant Baldwin responded to headquarters and began reviewing camera footage based on the information provided to him by Lieutenant's. Dohler and Flannagan.

- Lieutenant Baldwin observed Sgt. Salabarria exit a black-colored unmarked SUV on the fifth floor. He then observed her enter the range via the helipad/roof entrance.
- At the time (4/22/20) he did not know who the unmarked SUV belonged to but was later advised that it belonged to Officer N. Guasto.
- Lieutenant Baldwin was told by Lieutenant Flanagan that he had reviewed Officer Guasto's AVL. At this point using the information provided by the AVL, Lieutenant Baldwin backtracked the video footage and was able to determine that Officer Guasto's vehicle had entered via 12th Street gate. Refer to Lieutenant Flanagan's interview reference AVL.
- Lieutenant Baldwin believes an AVL review was done of Sgt. Salabarria's vehicle but wasn't sure.
- Lieutenant Baldwin was not present on the fifth floor but it was his understanding that the female bathroom is impossible to lock from the outside unless a key is used due to it being a deadbolt.
- Lieutenant Baldwin stated that he believes that Sgt. Salabarria was not being truthful about her statements on being in the fifth-floor bathroom due to him reviewing the video of the fifth floor 30 min before entering the fifth floor.

The interview was concluded at 1:54 PM and no further questions were asked. **(Refer to the case file for the entire recorded statement).**

**August 18, 2020**

**At 1:09 PM, Lieutenant Andy Lozano was interviewed as a Witness Officer in this investigation. The interview was conducted at the Miami Beach Police Internal Affairs Office, located at 225 Washington Avenue, Miami Beach, Florida. Sgt. Luis Corps and I conducted the interview. Lieutenant Andy Lozano provided a sworn recorded statement. The following is a synopsis of his statement:**

- Lieutenant Lozano has been a lieutenant for 11 months and is currently assigned to the Street Crimes section of Criminal Investigations Division.
- For the time period between 10/22/19- Spring Break 2020, Lieutenant Lozano was a Patrol Lieutenant on the afternoon shift in Area 4.
- Part of the responsibilities of being a lieutenant is staffing and approving time off on Telestaff.

- Though assigned to Area 4, Lieutenant Lozano would cover for Area one as the Lieutenant on occasion.
- A Sgt./Ofc. who would need time off, would request time off via Telestaff, advising their immediate supervisor.
- Lieutenant Lozano stated that if an Ofc. or Sgt needed time off at the beginning, middle, or end of the shift, he would need to be notified.
- Time would be deducted from the officer's time bank via Telestaff.
- Lieutenant Lozano stated that to his recollection, he had never supervised Sgt. Salabarria directly.

| Date | Supervisor Yes or no | Approved Time off Yes or No? | Did you approve time off Yes or No? | Did you approve her to leave the city Yes or No? | Were you aware she was out of the city? | Should she have made you aware that she was out of the city? Yes or No? |
|---|---|---|---|---|---|---|
| 11/5/19 | Working Area 4 and poss. Covering Area 1 | No | No | No | No | Yes |
| 1/15/20 | Sgt. Salabarria Sick | Yes/Sick | N/A | N/A | N/A | N/A |
| 2/11/20 | Doesn't recall/Area 4 | No | No | No | No | No |
| 2/19/20 | Working Area 4 and covered Area 1 | No | No | No | No | Yes |

- Has never observed Sgt. Salabarria riding inside of Officer Guasto's police vehicle during her tour of duty.
- A patrol sergeant. is not allowed to leave the city without the shift commander's permission.
- A supervisor working 1430-0030 must be at the station at 1430. If there was an issue where they are running late, they must notify the shift commander.
- A supervisor working 1430-0030 is allowed to leave 15 min prior to the end of the shift (0015) from within the city limits.

The interview was concluded at 1:23 PM and no further questions were asked. **(Refer to the case file for the entire recorded statement).**

- During the course of conducting interviews, one of the witness officers interviewed tested positive for COVID-19. All Internal Affairs investigators were quarantined pending test results. FOP President was made aware of the situation and advised of the Subject Officer Interview rescheduling due to other witness officers that needed to be interviewed being exposed to COVID-19.

**August 20, 2020**

- Sgt. Salabarria responded to her Subject interview notification advising that she was made aware that her interview had been canceled due to COVID. She also stated that her attorney was not available for an interview on August 27th. See case file for email.

**August 24 – August 26, 2020**

- Reviewed the case file.

**August 27 through August 28, 2020**

- The Internal Affairs Unit was advised Officer Guasto was reassigned to the Operations Division, afternoon shift, with Thursday, Friday, and Saturday off effective August 31, 2020, per the Chief of Police.

- PEU Lieutenant Jorge Garcia notified PEU Supervisors Morales and Wright to assist in having Officer Guasto's equipment reassigned to him.

- PEU Supervisor Morales contacted me about releasing Officer Guasto's property. I responded with an email advising him to release all of the property except for the Macbook and city-issued cell phone as it is still needed for investigative purposes. Morales advised me that the property will be released but to complete an NCR as soon as possible. See the case file for all emails and NCR.

**August 28, 2020**

**At 1023 AM, Lieutenant Andrew Dohler was interviewed as a Witness Officer in this investigation. The interview was conducted at the Miami Beach Police Internal Affairs Office, located at 225 Washington Avenue, Miami Beach, Florida. Sgt. Janelle Delgado and I conducted the interview. Lieutenant Andrew Dohler provided a sworn recorded statement. The following is a synopsis of his statement:**

- Lieutenant Dohler has been employed by MBPD for 25 years
- Lieutenant Dohler has been a lieutenant on patrol for 6.5 years and is currently assigned to dayshift area 4.
- Approving time off and staffing are part of the responsibilities of a patrol lieutenant.
- Stated that employees would notify him (Lieutenant) via the chain of command, Telestaff, email, or word of mouth for any time off requests.
- Lieutenant Dohler is usually notified if a subordinate needed time off prior to their shift. Example: A sergeant calling the sick line requesting an hour off.
- If an employee needed time off at any point during their shift, he (Lieutenant) would need to be notified.
- Approved time off would be deducted via Telestaff record. There is no other way the time off would be documented.
- Lieutenant Dohler has supervised Sgt. Salabarria while he was a Lieutenant on patrol.
- Stated some responsibilities of an area patrol sergeant include:
    1. Check Officers in at Roll Call/ Temp. checks
    2. Ensure officers are on time
    3. Provide assignments
    4. Monitor Radio
    5. Approve Arrests
    6. Approve time off
- These responsibilities would have been some of Sgt. Salabarria's responsibility as a sergeant.
- For a sergeant to carry out these responsibilities, they must be within the city.

- Sgt. Salabarria never communicated any hardships about her commute to and from work.
- An area patrol sergeant is allowed to leave their zone. Example:
    1. Meal break (within the city)
    2. Family emergency (lieutenant must be notified)
- Stated he observed Sgt. Salabarria exit a black SUV but couldn't make out who the driver was. Found out later that the vehicle belonged to Officer N. Guasto
- Stated that a patrol area sergeant is never allowed to leave the city without notifying the shift commander/lieutenant
- Stated an area patrol sergeant scheduled to work 0630-2000 hours needs to be at the station at 0630. If the sergeant. encountered an issue where they can't make it to work on time, they would need to notify the shift commander.
- Stated an area patrol sergeant scheduled to work 0730-1855 hours needs to be at the station at 0730. If the sergeant encountered an issue where they can't make it to work on time, they would need to notify the shift commander.
- If an area patrol sergeant is working 0630-2000 hours, they are allowed to leave 15 min prior to the end of their shift. In this case, it would be 1945 and from their assigned area within city limits.
- A patrol sergeant. must be in the city while working patrol overtime.

| Date | Supervisor Yes or No | Approved time Yes or No | Did you Approve time Yes or No | Did you approve her to leave the city Yes or no | Were you aware she was out of the city | Should she had made you aware? |
|---|---|---|---|---|---|---|
| 3/8/20 | Yes | No | No | No | No | Yes |
| 3/9/20 | Yes | No | No | No | No | Yes |
| 3/10/20 | Yes | No | No | No | No | Yes |
| 3/15/20 | Yes | No | No | No | No | Yes |
| 3/16/20 | Yes | No | No | No | No | Yes |
| 3/17/20 | Yes | No | No | No | No | Yes |
| 3/22/20 | Yes | No | No | No | No | Yes |
| 4/22/20 | Yes | No | No | No | Yes | Yes |

**All of the below statements are in reference to the Allegation of Employee Misconduct for the events that transpired on April 22, 2020.**

- On 4/22/20, Sgt. Salabarria was scheduled to work 0730-1855 and was under the direct supervision of Lieutenant Dohler. She should have been at the station at 0730 but was not present.
- Sgt. Salabarria did not notify Lieutenant Dohler prior to 0730 that she would be late.
- Lieutenant Dohler made contact with Sgt. Salabarria via channel 13 after observing she was not at work. Sgt. Salabarria stated that she was in the fifth floor/range restroom when speaking to the Lieutenant via police radio.
- Lieutenant's Dohler, Flanagan, and Baldwin were the shift commanders on that date for dayshift.
- Sgt. Salabarria authored an email at 10:16 am on 4/22/20, (two hours and 46 minutes after the beginning of her assigned shift) requesting that she be docked 1 hour of CL for her personal emergency. The email was directed to Lieutenant Dohler, Lieutenant Flanagan, and she copied FOP union, President Kevin Milan.
- From 0730-0800, Sgt. Salabarria was supposed to be conducting administrative tasks to prepare for the 0800 Roll Call.
- Roll Call was being conducted at the station to conduct temperature checks with the assistance of a medical professional due to the COVID 19 deployment.
- Upon Lieutenant Dohler arriving on the first floor for Roll Call at approximately 0800 he observed Sgt. Salabarria was not present.
- At approximately 0818-0820 hours, Dohler became concerned and raised Sgt. Salabarria via main channel due to her not picking up her cell phone. Contact was made on Channel 13 where she stated she was in the fifth floor/range bathroom not feeling well.
- Lieutenant's Dohler and Flanagan immediately responded to the fifth floor and began knocking on the bathroom door and calling out Sgt. Salabarria's name to no avail. At this point, both Lieutenant's became concerned for her safety.

Lieutenant Flanagan walked to PEU to retrieve a key while Lieutenant Dohler remained on the fifth floor.

- Sgt. Salabarria then entered the fifth floor via the range/helipad door. She appeared out of breath and stated that she was having stomach issues. She then provided pictures of some medication she was having adverse effects with to Lieutenant Dohler.
- Due to the bathroom being locked, Lieutenant Dohler asked if there was someone in the restroom. Sgt. Salabarria responded by saying that she must have accidentally locked it when she walked out. Lieutenant Dohler identified the lock as a deadbolt, which is impossible to lock from the outside unless someone has a key or locks it from the inside.
- Sgt. Salabarria was then asked if she wanted to go to the hospital and she stated that she was fine. She was then advised to check in with the nurse on the first floor.
- A training officer (possibly McVey) provided a key and opened the restroom which revealed it to be empty.
- Lieutenant Dohler then advised Sgt. Salabarria to respond to Medrite to get medically cleared due to the nurse not being on the first floor. She was then medically cleared and stated she was feeling better.
- AVL check conducted by either Lieutenant Flanagan AVL revealed that Sgt. Salabarria's #17004 vehicle has not been moved since April 2, 2020. PEU was asked if Sgt. Salabarria had checked out a loaner vehicle and was advised that she had not checked out a loaner vehicle.
- Sgt. Salabarria never advised any of the Lieutenant's that her vehicle was having problems.
- Lieutenant Flanagan then observed Sgt. Salabarria's vehicle parked between the second and third floor of the station consistent with the AVL.
- Station cameras were reviewed by all three lieutenants'.(Flanagan, Dohler, Baldwin)
- A Black SUV was observed pulling up on the floor just below the helipad. Sgt. Salabarria was observed exiting the passenger side of the SUV and entering the station via the 5th-floor door.

- One of the three lieutenant's believed that the SUV belonged to Officer N. Guasto.
- An AVL check was conducted on Officer Guasto's car by Lieutenant Flanagan. The check revealed that around the time Sgt. Salabarria was contacted, Officer Guasto's AVL is observed leaving a City of Miami location and responding directly to the Miami Beach police station never stopping at another location.
- Station cameras then revealed that the Officer Guasto's vehicle bypassed the 11th Street gate going west from Washington Ave, and then enter via the 12th Street. gate. When the lieutenant's attempted to review the 12th Street. key card entry camera, they observed that it was out of service. The SUV was observed entering via another camera on the first floor near the 12th Street gate. The lieutenant's then followed the vehicle from the first floor all the way up to the floor underneath the helipad up until Sgt. Salabarria exited the vehicle.
- Lieutenant Dohler advised that the AVL, camera footage, and his contact with Sgt. Salabarria were all consistent with her being late to work.
- All area 1 and 4 sergeant's and officers were aware of the time and place for roll call on 4/22/20.
- Based on the lieutenant's investigation, and Sgt. Salabarria's radio logs (09 at 0813 hours), Dohler stated that it was not possible for Sgt. Salabarria to be in the city at 0813.
- Lieutenant Dohler stated that Sgt. Salabarria was being untruthful by going into service in the city at 0813 hours.
- Lieutenant Dohler did not tell Sgt. Salabarria to author the email regarding being charged the one hour of CL for her being late. Lieutenant Dohler then made Major De La Espriella aware of the email and was told to not do anything with it.
- Lieutenant Dohler stated that Sgt. Salabarria's statements about being in the restroom were untruthful.
- Lieutenant Dohler concluded that Sgt. Salabarria was out of the city at the time he spoke to her and she stated that she was on the fifth-floor restroom.

The interview was concluded at 1108 PM and no further questions were asked. **(Refer to the case file for the entire recorded statement).**

**At 12:32 PM, Lieutenant Delvin Brown was interviewed as a witness officer in this investigation. The interview was conducted at the Miami Beach Police Internal Affairs Office, located at 225 Washington Avenue, Miami Beach, Florida. Sgt. Janelle Delgado and I conducted the interview. Lieutenant Delvin Brown provided a sworn recorded statement. The following is a synopsis of his statement:**

- Lieutenant Brown has been a lieutenant for approximately one year and is currently assigned to the Operations Division afternoon shift.
- For the time period between 10/22/19- Spring Break 2020, Lieutenant Brown was an Operations Division lieutenant on the afternoon shift.
- Part of the responsibilities of being a lieutenant is staffing and approving time off on Telestaff.
- A sergeant would request time off via Telestaff, word of mouth, or an email.
- Stated that if an officer or a sergeant needed time off at the beginning, middle, or end of the shift, he would need to be notified via sick line, word of mouth, Telestaff, or by a fellow supervisor.
- Time would be deducted from the officers time bank via Telestaff
- Stated that he has supervised Sgt. Salabarria while he was on afternoons.

| • Date | Supervisor Yes or No | Approved time Yes or No | Did you Approve time Yes or No | Did you approve her to leave the city Yes or no | Were you aware she was Out of the city | Should she had made you aware? |
|---|---|---|---|---|---|---|
| 10/22/19 | Yes | No | No | No | No | Yes |
| 11/12/19 | Yes | No | No | No | No | Yes |
| 11/26/19 | Yes | No | No | No | No | Yes |
| 12/10/19 | Yes | No | No | No | No | Yes |
| 12/17/19 | Yes | No | No | No | No | Yes |
| 12/31/19 | Yes | Yes | No | No | No | Yes |
| 1/7/20 | Yes | No | No | No | No | Yes |
| 1/14/20 | Yes | Yes/CL 1830-0030 | No | No | No | Yes |
| 2/4/20 | Yes | No | No | No | No | Yes |
| 2/18/20 | Yes | No | No | No | No | Yes |

- Responsibilities of an area patrol sergeant include supervising and monitoring their personnel, responding to scenes, approving reports, and monitoring the radio.
- These were some of the responsibilities Sgt. Salabarria had while under Lieutenant Brown's supervision.
- A patrol sergeant must be in the city to carry out these responsibilities to make themselves available.
- Lieutenant Brown has never seen Sgt. Salabarria inside Officer Guasto's vehicle.
- A patrol sergeant is not allowed to leave the city without the permission of the shift commander or a higher ranking officer.
- A supervisor working 1430-0030 must be in the city at 1430. If there was an issue where they are running late, they must notify the shift commander.
- A supervisor working 1430-0030 is allowed to leave 15 min prior to the end of the shift (0015) from within the city limits.

The interview was concluded at 1448 hrs/ 4:48 PM and no further questions were asked. **(Refer to the case file for the entire recorded statement).**

**At 4:05 PM, Lieutenant Rosa Carvajal was interviewed as a witness officer in this investigation. The interview was conducted at the Miami Beach Police Internal Affairs Office, located at 225 Washington Avenue, Miami Beach, Florida. Sgt. Janelle Delgado and I conducted the interview. Lieutenant Rosa Carvajal provided a sworn recorded statement. The following is a synopsis of her statement:**

- Lieutenant Carvajal has been a lieutenant for the past 11 months and is currently assigned to the patrol division.
- For the time period between 10/22/19 through Spring Break 2020, Lieutenant Carvajal was a patrol lieutenant on afternoons area 4.
- Part of the responsibilities of being a lieutenant is staffing and approving time off on Telestaff.
- A sergeant would request time off via Telestaff, word of mouth, or an email.
- Stated that if an officer or a sergeant needed time off at the beginning, middle, or end of the shift, she would need to be notified.

- Time off would be deducted from the officers time bank via Telestaff
- Stated that she has supervised Sgt. Salabarria while he was on afternoons.

| Date | Supervisor Yes or No | Approved time Yes or No | Did you Approve time Yes or No | Did you approve her to leave the city Yes or no | Were you aware she was Out of the city | Should she had made you aware? |
|---|---|---|---|---|---|---|
| 11/13/19 | Yes | No | No | No | No | Yes |
| 11/19/19 | Yes | No | No | No | No | Yes |
| 12/19/19 | Yes | No | No | No | No | Yes |
| 12/20/19 | Yes | No | No | No | No | Yes |
| 1/8/20 | Yes | No | No | No | No | Yes |
| 1/9/20 | Yes | No | No | No | No | Yes |
| 1/10/20 | Yes | No | No | No | No | Yes |
| 2/6/20 | Yes | No | No | No | No | Yes |
| 2/7/20 | Yes | No | No | No | No | Yes |
| 2/12/20 | Yes | No | No | No | No | Yes |
| 2/13/20 | Yes | No | No | No | No | Yes |
| 2/21/20 | Yes | No | No | No | No | Yes |

- Responsibilities of an area patrol sergeant include responding to major incidents in their vehicles, making sure that officers are carrying out their duties, and monitoring the radio.
- These were some of the responsibilities for Sgt. Salabarria while under Lieutenant Carvajal's supervision.
- A patrol sergeant must be in the city to monitor the radio.
- Lieutenant Carvajal has never seen Sgt. Salabarria inside Officer Guasto's vehicle
- A patrol sergeant is not allowed to leave the city without the shift commander's permission.
- A supervisor working 1430-0030 must be in the city at 1430. If there was an issue where they are running late, they must notify the shift commander.
- A supervisor working 1430-0030 is allowed to leave 15 min prior to the end of the shift (0015) from within the city limits.

The interview was concluded at 4:21 PM and no further questions were asked. **(Refer to the case file for the entire recorded statement).**

**August 31, 2020**

- Using the New World System, I printed Sgt. Salabarria's Officer Activity Report for the time period of October 22, 2019, through March 22, 2020, and April 22, 2020. This report indicates every time Sgt. Salabarria used her assigned police radio to communicate and give a status. The total time reviewed was 153 Days 20 Hours 42 Minutes, with a total of 233 statuses. **See Appendix C for the Officer Activity Report.**

- Using the same system, I obtained Sgt. Salabarria's Officer Dispatch Report for the time period of October 22, 2019, through March 22, 2020, and April 22, 2020. This report provides a summary of information about the activity of a given officer. The review for the given time period revealed a total of 23 calls for service. **See Appendix D for the Officer Dispatch Report.**

**September 1, 2020**

- NCR completed at PEU advising that all city-issued equipment could be released to Officer Guasto with the exception of the Macbook and the city-issued Apple iPhone.

**September 10, 2020**

- Review of AVL, Key Card logs, CCTV, and Officer Dispatch Reports.

**September 15, 2020**

- An updated Subject Notification of Interview was sent via city email to Lieutenant Mitat informing Sgt. Salabarria of the new interview date. The new interview date was scheduled for 09/22/20 at 3 PM.

- Witness interview notification also sent to Major Guerrero advising Capt. Feldman of his witness interview for 09/21/20 at 11 AM.

**September 16, 2020**

- Sgt. Salabarria responded to the Internal Affairs Office in person to hand-deliver her Subject Interview Notification to me.

**September 21, 2020**

- Sgt. Salabarria was notified via email advising her that her interview for 09/22/20 had been canceled rescheduled for 09/28/20 at 3 PM . FOP President Millian was also notified.

**At 1112 AM, Captain Steven Feldman was interviewed as a witness officer in this investigation. The interview was conducted at the Miami Beach Police Internal Affairs Office, located at 225 Washington Avenue, Miami Beach, Florida. Lieutenant Tony Gil and I conducted the interview. Captain Steven Feldman provided a sworn recorded statement. The following is a synopsis of his statement:**

- Capt. Feldman has been employed by the Miami Beach Police Department for 20 years and is currently the Captain that oversees the Tech Services Unit. He has overseen the unit since 2015.

- Captain Feldman stated that he was Officer Guasto's Captain while he was assigned to Tech Services.

- Captain Feldman stated that at times, he might be the supervisor that approves time off if Sgt. Loperfido is unavailable.

- When asked if prior to the COVID-19 deployment, if there was a specific SOP or DRR that would allow Officer Guasto to work outside of the city, Capt. Feldman stated that there wasn't, but there was a verbal authorization. He explained that at various times, employees were allowed to work from wherever they were at, as long as they were "working". He specified that the Tech Services Unit receives calls after hours requiring their response to complete the tasks that could be done while working remotely. An example of this would be an employee locking themselves out of their profile after hours. The IT Unit would then be able to unlock the profile from anywhere as long as they have their issued laptop and a network connection.

- Captain Feldman stated that there were times, he didn't know how many, that Officer Guasto would notify him that he was working outside of the city. Captain Feldman would tell him to go take care of whatever he needed to do as long as it was work-related.

- Captain Feldman stated that he couldn't think of any locations, other than home, where Officer Guasto would be working from if out of the city.

- Captain Feldman was advised that the scope of this investigation was for the dates between 10/22/19 through 03/22/2020.When asked how many times Officer Guasto was allowed to work from home, Capt. Feldman was unable to provide a number of dates.

- Captain Feldman then stated that Officer Guasto could not just leave the city at

his own discretion and not notify a supervisor.

- Capt. Feldman then stated that during the scope of this investigation, Officer Guasto was going through a very "interesting" time in his life. Without going into too many personal details, Capt. Feldman stated that it had to do with his wife and current girlfriend. Due to the ongoing personal issues with his family, Capt. Feldman would authorize Officer Guasto to go take care of the issue, but to stand by his phone in case something work-related came up.

- I then asked Capt. Feldman that if Officer Guasto was in need of taking care of personal issues outside of the City of Miami Beach while scheduled to work, he would have to take time off, and Capt. Feldman stated "correct".

- Capt. Feldman confirmed that the person that Officer Guasto was in a current relationship with was Jessica Salabarria.

- Capt. Feldman stated that he did not authorize Officer Guasto to drive Sgt. Salabarria to and from work during his work hours. He was made aware of a conversation between Officer Guasto and Sgt. Loperfido where Sgt. Loperfido was made aware of the transportation issue and approved it a couple of times. Capt. Feldman was made aware of the situation post Subject Officer Notification. Capt. Feldman also mentioned that he found it unacceptable for Officer Guasto to be leaving during his shift on a constant basis to drive Sgt. Salabarria to work and that he was taking advantage of the agreement between him and Sgt. Loperfido.

- This investigator then referred to the spreadsheet created that listed the numerous dates where Officer Guasto leaves the city to pick up Sgt. Salabarria, and conduct activities not known to be work-related. Capt. Feldman was provided with all Telestaff and overtime slips that were available from payroll. There were a few instances where Capt. Feldman stated that according to the overtime slips provided, the detail that Officer Guasto was working on could've been done remotely due to it being after the conclusion of Officer Guasto's shift. There were multiple occasions where Officer Guasto was scheduled to be working and his vehicle AVL indicates multiple locations throughout Miami-Dade (specifically Hialeah and Miami areas/ his current home address) and Capt. Feldman was not made aware nor did he approve Officer Guasto to be working remotely. **Refer to the Excel spreadsheet for specific dates and unauthorized locations.**

The interview was concluded at 3:08 PM and no further questions were asked. **(Refer to the case file for the entire recorded statement and transcription).**

**September 24, 2020**

- On this date, an email was received from attorney Michael Elkins advising that he spoke to FOP attorney Gene Gibbons about tolling the 180 day period for Sgt. Salabarria's pending IA investigation. The FOP had no objection.

The email further confirms that Mr. Elkins spoke to attorney Michael Pancier who also represents Sgt. Salabarria, and he agreed to toll the180 day period (refer to case file for email).

**September 29, 2020**

- Request made for radio communication recordings (Channel 1 and 2) for March 16, 2020, via Nuria Rodriguez of PSCU.

**October 1, 2020**

- The recording was completed and picked up by this investigator. A review of the recording revealed Sgt. Salabarria going into service at 0911 via main channel. Her vehicle AVL shows the vehicle off at the station since her prior shift. Officer Guasto's AVL shows it arriving in the city at 0954

**October 9, 2020**

- Commander Prieto contacted Tim Vandergiesen of the Miami Dade State Attorney's Office for review in reference to the unauthorized recording of Lieutenant Joaquin Rodriguez done by Sgt. Salabarria (FSS 934.03). Mr. Vandergiesen subsequently responded to Commander Prieto and advised him that his office would not investigate the matter and to proceed administratively.

- Sgt. Han signed Item #55 (Apple iPhone) out of property for investigative purposes.

**October 28, 2020**

- Reviewed the case file.

**November 23, 2020**

- Reviewed the case file.

**December 16, 2020**

- Reviewed the case file.

**December 18, 2020**

- Sgt. Salabarria entered into a "Last Chance Agreement". **See Appendix A for a copy of Sgt. Salabarrias' agreement.**

**January 5, 2021**

- This investigator received a copy of Sgt. Salabarria's signed Request for Withdrawal of Charge of Discrimination. **(See case file for a copy).**

**February 1, 2021**

- Reviewed the case file.

**February 18, 2021**

- Reviewed the case file.

**March 15, 2021**

- Reviewed the case file.

**April 1, 2021**

- I was advised by Commander Prieto that Officer Guasto did not agree with the offer made to him by the city and wanted to proceed with the investigation. **Case untolled.**

**April 8, 2021**

**At 1:09 PM hrs, Officer Kevin Millan was interviewed as a witness officer in this investigation. The interview was conducted at the Miami Beach Police Internal Affairs Office, located at 225 Washington Avenue, Miami Beach, Florida. Lieutenant Gil and I conducted the interview. Officer Kevin Millan provided a sworn recorded statement. The following is a synopsis of his statement:**

- As the F.O.P president, there would be times that he was notified of officers being under investigation by Internal Affairs. It would depend if the officer contacts the FOP and notified them for representation.
- Millan was aware that both Sgt. Salabarria and Officer Guasto were under investigation by Internal Affairs.
- Millan was aware that both Sgt. Salabarria and Officer Guasto were in talks or

negotiations with the city to resolve their internal affairs case.

- Millan stated that he met with Sgt. Salabarria countless times to discuss the negotiations. When asked how many times exactly, Millan stated that he discussed the terms of the negotiation with her in person less than ten (10) times, and via phone call more than 10 times.

- Millan stated that he met with Officer Guasto the same number of times to discuss the terms of the negotiation.

- Millan stated that these meetings took place at some point between October and December of 2020.

- When asked how long were these negotiations going for, Millan stated that he knew that Sgt. Salabarrias case was resolved. He then stated that Officer Guasto's portion of the case had still not been resolved.

The interview was concluded at 1150 AM and no further questions were asked. **(Refer to the case file for the entire recorded statement and transcription).**

**April 28, 2021**

- I received an email from Commander Prieto where attorney Michael Elkins states that Officer Guasto has hired Paul Daragjati as his attorney. The email states that both the City and Officer Guasto have agreed to toll the case for 15 days as of April 27, 2021, due to being close to resolving pending discipline. **(Refer to the case file for the email).**

- **Case tolled as of April 28, 2021.**

**May 11, 2021**

- **Case un-tolled due to the 15 day period expiring.**

- Commander Prieto contacted attorney Michael Elkins due to the tolling period. Both Commander Prieto and Elkins agreed to toll the case one additional day after the 15 day period. **Case Tolled for one more day**.

- Per. Michael Elkins, the city and Officer Guasto were unable to come to an agreement for pending discipline. I was then advised that Officer Guasto would have to complete an Internal Affairs subject officer interview.

- Subject Officer Interview date of May 19, 2021, at 3 PM was selected. Elkins was advised of the scheduled interview and notified Officer Guasto's attorney (Daragjati) and advised him of the date and time. This notification was made via email at 2:21 PM. Prior to the selection of the date and time for the interview, I verified that Officer Guasto was working on the date. There was no pending time

off requests for the date of the interview. At approximately 2:55 PM, Officer Guasto submitted an entry into Telestaff requesting May 19, 2021, off.

- I sent the Subject Officer Notification of Interview memorandum to Officer Guasto via city email advising Lieutenant M. George to serve the notice. I received the signed memorandum via email at 5:49 PM.
- Lieutenant M. George denied the time off request on Telestaff entered by Officer Guasto.

**May 19, 2021**

- The Internal Affairs Unit was advised by Michael Elkins that Officer Guasto entered into an agreement with the City of Miami Beach in reference to discipline. Officer Guasto did not provide an interview to the Internal Affairs Unit as scheduled.

**June 14, 2021**

- Awaiting signed agreement between Officer Guasto and the City of Miami Beach.

**July 5, 2021**

- Awaiting signed agreement between Officer Guasto and the City of Miami Beach.

**August 25, 2021**

- The Internal Affairs Unit received a copy of the settlement agreement between the City of Miami Beach and Officer N. Guasto. The agreement was sent via email by attorney Mike Elkins and was signed by Officer Guasto and the FOP Vice President. See the case file for a copy of the agreement.

**OFFICIAL RECORDS**

1. IA Pro Printout
2. IA Final Report
3. IA Advisory Forms
4. IA Statement Forms and Affidavits
5. Trackstar AVLS Report
6. Key Card Report
7. Officer Activity Report
8. Officer Dispatch Report
9. Station CCTV
10. Radio Communication Audio Files
11. Telestaff Roster
12. Emails
13. Digital Recordings of Statements
14. Subject Officer Notifications
15. Witness Officer Notifications
16. Interview Transcripts
17. Settlement Agreements

*"I, the undersigned, do hereby swear, under penaLieutenanty of perjury, that, to the best of my personal knowledge, information, and belief, I have not knowingly or willfully deprived, or allowed another to deprive, the subject of the investigation of any of the rights contained in SS. 112.532 and 112.533, Florida Statutes."*

**Investigator: Sergeant Andy Descalzo** | **Date**
**Internal Affairs Investigator**

**Reviewed by: Lieutenant Tony Gil** | **Date**
**Internal Affairs Lieutenant**

**Reviewed by: Commander A.J. Prieto** | **Date**
**Internal Affairs Commander**

10/05/2021

**Approved by: Chief Richard Clements** | **Date**
**Chief of Police**

# APPENDIX A

MIAMIBEACH
POLICE
MEMORANDUM

TO: Sergeant, Jessica Salabarria

FROM: Rick Clements, Chief of Police

DATE: January 25, 2021

RE: Implementing Letter of Resignation

---

On December 18, 2020, you entered into a Last Chance Agreement ("Agreement"). A copy of that Agreement is attached as Exhibit A. Additionally, as part of the Agreement, on that same date you signed a Letter of Resignation ("Resignation"). A copy of that Resignation is attached as Exhibit B.

Based on the violations outlined below, and per the Agreement, I am implementing the Resignation, effective immediately and as of the date indicated on Resignation attached as Exhibit B.

Specifically, on December 30, 2020, Lieutenant, Steven Cosner submitted an Allegation of Employee Misconduct ("AEM"). A copy of the AEM is attached as Exhibit C. The allegations of the AEM are incorporated in full herein.

On January 19, 2021, I held a meeting with you to discuss the allegations in the AEM. In addition to you and I, also present at that meeting was:

- Wayne Jones, Deputy Chief
- Paul Ozaeta, Lieutenant (FOP President)
- Arley Flaherty, Sergeant (FOP First Vice President)
- Reggie Lester. Sergeant (FOP Second Vice President)
- Delvin Brown. Lieutenant (FOP Grievance Chairman)
- Steven Cosner. Lieutenant
- A.J. Prieto, Captain Internal Affairs.

During the meeting, you were provided a copy of the "AEM" and given the opportunity to review the "AEM" in full. After your review, you informed me that, despite being assigned to the North District, you did not report to the North District. Instead, you remained in your assigned City vehicle, stationary at the City's main police station. You further informed me that while in your vehicle at the police station (for what was at or around four (4) plus hours) you worked on administrative issues (an employee evaluation

for Police Officer Vincent Stella) and worked on your "school work." The "school work" at issue is not work assigned by the City. You informed me that, independent from the City, you are working toward a Master's Degree.

Further, you acknowledged that you missed two radio calls specifically to you from Lieutenant Cosner and a phone call from Lieutenant Cosner to your personal cell phone. Ultimately, you did not respond to the North End Sub-Station (in the North District) until approximately 4:20 a.m., and only after being told to do so by Lieutenant Cosner. You further acknowledged that despite receiving an email from Lieutenant Cosner at approximately 3:20 a.m. directing you to have certain officers perform certain assignments, you did not issue the assignments until after 4:20 a.m., and only after speaking with Lieutenant Cosner. You again indicated to me that prior to speaking to Lieutenant Cosner at 4:20 a.m., you were focused on the employee evaluation and your independent school work.

In speaking with Lieutenant Cosner during this meeting, he indicated, among other things that you informed him that you had conveyed the assignment details, when in fact, you had not. You conveyed the assignment details after speaking to Lieutenant Cosner despite telling him you had already done so.

Moreover, Lieutenant Cosner indicated in this meeting that you did not leave the main police station during most of your shift and only left the police station when instructed to do so by Lieutenant Cosner.

The above is only a summary of the events of the January 19, 2021 meeting.

After the meeting, the City reviewed your City issued laptop computer, which is the computer that you would have used to work on Officer Stella's evaluation. A review of the laptop shows that Officer Stella's evaluation was not created until January 10, 2021. The City's Information Technology Department confirmed that Officer Stella's evaluation was not created or saved anywhere else on the City's system.

Pursuant to paragraph 4 of the Agreement, I determine that you have not complied with the Agreement and engaged in conduct that is beyond an individual, discreet or minor policy violation. Pursuant to paragraph 4 of the Agreement, my decision in this regard is not subject to review or explanation. Accordingly, as stated above, I am implementing your Resignation.

# EXHIBIT A

DocuSign Envelope ID: CC3C604A-8185-4007-95EB-8735D7C89FEF

# LAST CHANCE AGREEMENT

THIS LAST CHANCE AGREEMENT is entered into between the CITY OF MIAMI BEACH, FLORIDA (hereinafter, the "City"), FRATERNAL ORDER OF POLICE, (hereinafter, "the Union") and JESSICA SALABARRIA (hereinafter, "SALABARRIA" or "Employee").

WHEREAS, SALABARRIA is employed by the City as a Police Officer in the City's Police Department.

WHEREAS, SALABARRIA is subject to the terms and conditions of employment contained in the Collective Bargaining Agreement between the Union and the City effective October 1, 2018 through September 30, 2021;

WHEREAS, SALABARRIA is the subject of an Internal Affairs ("IA") Investigation, IA Case Number 2020-010, which arose from SALABARRIA's involvement in not being on-duty when she was supposed to be, and from SALABARRIA's claims of being on-duty in the City when she was actually outside the City;

WHEREAS, the City wishes to continue to employ Employee, Employee wishes to continue to be employed by the City, and the FOP desires for Employee to continue to be employed under the terms and conditions described herein; and

WHEREAS, the Employee admits that she committed misconduct in association with IA Case Number 2020-010 and was in violation of numerous City and Police Department policies and the City Personnel Rules for the Classified Service; and

WHEREAS, the purposes of this Agreement, with which all the Parties concur, include: to protect and preserve the integrity of the Police Department and all its officers and to give Employee the opportunity to further and support that purpose; and to give Employee the

CITY    UNION    JESSICA

DocuSign Envelope ID: CC3C604A-8185-4007-95EB-8735D7C89FEF

opportunity to rehabilitate herself personally and as a police sergeant for the City and this Department; and to give Employee an opportunity to preserve her career.

NOW, THEREFORE, without establishing precedent for any purpose and intending to be bound, the Parties agree as follows:

1. All of the above statements are true and correct to the best of the Parties' belief and knowledge and for a five (5) year period beginning with the execution of this Agreement by all parties, SALABARRIA will be subject to the provisions of this Agreement.

2. During this period, SALABARRIA must be on-duty and in the City limits during all of her scheduled shifts unless given prior authorization. For the avoidance of confusion, this means that, during the terms of this Agreement, SALABARRIA shall not be outside the City limits when she is on-duty, shall not tell the City she's on-duty when she is outside the City's limits, and shall not leave before the end of her scheduled shift, unless given prior authorization.

3. Additionally, SALABARRIA shall refrain from violating any City or Police Department policies, rules or regulations; Standard Operating Procedures ("SOPs") or Personnel Rules, all of which (including any amendments or additions) are incorporated herein by reference. In any instance during which City or Police Department policies, procedures or Personnel Rules differ from or conflict with the stipulations set forth in the applicable collective bargaining agreement, the City or Police Department policies, procedures or Personnel Rules shall prevail.

4. The Chief of Police shall exclusively assess and determine Employee's compliance with this Agreement. The Chief's decision as to compliance with this Agreement shall not be subject to any grievance and/or review of any kind by SALABARRIA and/or the Union and is not subject to explanation or review.

CITY UNION JESSICA

5. Failure to comply with any portion or requirement of this Agreement (including but not limited to the requirement not to violate any City or Police Department policies, Standard Operating Procedures ("SOPs") or Personnel Rules, as referenced in paragraph 3 above) may result in the immediate implementation of the attached letter of resignation as referenced in paragraph 9 below. It is the intent and understanding of the parties that the violations contemplated to trigger the implementation of the attached letter of resignation shall not be for individual, discreet minor policy and procedural violations. The parties agree that repeated violation of the same, discreet minor policy may result in an event triggering the implementation of the attached letter of resignation. In that event, the Employee and the Union understand and agree there will be no recourse or review available pursuant to any grievance, appeal or review process under any federal, state or local statute, ordinance, collective bargaining agreement, or in any other forum or under any other process or procedure.

6. SALABARRIA shall serve a four-week (160 hour) suspension without pay and waive any and all rights to grieve or appeal that suspension. Employee shall also be subject to the additional provisions of the Settlement Agreement to which this Agreement is attached and is made part of via incorporation by reference.

7. Further, for the same five (5) year period described above, the Chief of Police shall have full discretion regarding Employee's assignments, including, without limitation, duties, supervisor and chain of command. Employee shall have the ability to bid for shift and days off, if the employee is reassigned her duty hours and days off shall remain the same.

8. For a period of one (1) year from the date of execution of this Agreement, Employee is not eligible for any promotional opportunities.

CITY



UNION

JESSICA

DocuSign Envelope ID: CC3C604A-8185-4007-95EB-8735D7C89FEF

9. Employee shall sign an irrevocable letter of resignation which shall take effect immediately upon her violation of this Agreement or any part of it at any time during the term of this Last Chance Agreement. .

10. Employee shall attend and cooperate with any training required by the Chief of Police.

11. If during the above-referenced five (5) year period, SALABARRIA violates any provisions of this agreement or any City or Police Department policies. Standard Operating Procedures ("SOPs") or Personnel Rules and/or regulations as previously referenced in paragraph #4 , her resignation shall be effective , without the right to grieve or otherwise contest, in any manner, her separation. .

12. In the event that SALABARRIA is separated pursuant to the terms and conditions of this Last Chance Agreement, she and the Union understand that her separation is not subject to appeal pursuant to the contractual grievance/arbitration procedure, or otherwise. In other words, SALABARRIA agrees that should she be separated pursuant to the terms of this agreement that she waives her right to utilize the contractual grievance and arbitration procedure and she further waives the right to challenge or appeal her separation pursuant to any administrative or statutory avenue that may exist.

13. The City retains the right to rely upon the facts and circumstances of the events from which this Last Chance Agreement arose in any future proceeding in the event the Employee successfully meets the terms and conditions referred to in this Agreement but thereafter has deficiencies in conduct or performance, and such deficiencies shall be sufficient to warrant discipline, including dismissal.

CITY



UNION

JESSICA

DocuSign Envelope ID: CC3C604A-8185-4007-95EB-8735D7C89FEF

14. It is understood and agreed by all parties hereto that this Last Chance Agreement is executed based on the particular circumstances of this case and does not establish precedent for the resolution of other cases.

15. SALABARRIA acknowledges that she could be terminated from her employment from the City as a result of her conduct as referenced above and that remaining employed by the City is adequate consideration for entering into this Last Chance Agreement, serving the suspension without pay and waiving the rights described herein and in the Settlement Agreement.

16. SALABARRIA being of lawful age, for and in consideration of the above-action agreed to by the City, and other valuable consideration received from or on behalf of the City, receipt whereof is hereby acknowledged, does hereby release, acquit, satisfy and forever discharge the City, as well as each and everyone of the City's former and current officers, agents, attorneys, employees and officials -- in both their official and individual capacities -- and their successors and assigns, from any and all claims, cause and causes of action, grievances, unfair labor practice charges, lawsuits, claims of employment discrimination (including, but not limited to claims under the Americans With Disabilities Act), and any and all other claims and demands whatsoever, in law or in equity, tort or contract, which SALABARRIA has or may have against the above-named individuals in both their individual and official capacities, from the beginning of the world until today, including, but not limited to, all matters concerning or arising out of her employment with the CITY, her discipline stemming from the incidents described in this Last Chance Agreement and the execution of this Last Chance Agreement.

17. It is understood and agreed that this Last Chance Agreement does not constitute an admission by the City or SALABARRIA of any violation of the collective bargaining

DocuSign Envelope ID: CC3C604A-8185-4007-95EB-8735D7C89FEF

agreement. This Last Chance Agreement is being entered into by the parties solely for the purpose of avoiding the expense and inconvenience of further administrative proceedings.

18. SALABARRIA has received and reviewed this Last Chance Agreement prior to executing it and she agrees to be bound by its terms and conditions.

19. Prior to signing this Last Chance Agreement, SALABARRIA had the opportunity, and did, in fact, consult with her attorney and/or with the Union.

20. This Last Chance Agreement, and the Settlement Agreement which is attached constitutes the entire understanding and agreement of the parties hereto, and can be modified, amended or revoked only by express written consent of all parties.

21. This Last Chance Agreement shall be governed by and construed in accordance with the laws of the State of Florida, and where applicable, federal laws. The language of this Last Chance Agreement shall be construed as a whole, according to its fair meaning, and not strictly construed for or against either party.

22. In the event that any party to this Last Chance Agreement institutes legal proceedings regarding the terms of this Last Chance Agreement, it is stipulated and agreed that such a claim shall be heard and determined by the court, and not by a jury, in Miami-Dade County, Florida. **SALABARRIA AGREES AND UNDERSTANDS THAT SHE IS WAIVING THE RIGHT TO A JURY TRIAL, IF ONE EXISTS, AS TO ANY CLAIM REGARDING THE TERMS OF THIS AGREEMENT.**

CITY | UNION | JESSICA

DocuSign Envelope ID: CC3C604A-8185-4007-95EB-8735D7C89FEF

This Agreement is dated the ____ day of December 2020. in Miami-Dade County, Florida.

JESSICA SALABARRIA

Date: 12/18/2020

DocuSigned by:
Paul J. Aguila
2B3D8240F92843D...

CITY MANAGER
CITY OF MIAMI BEACH

Date: 12/23/2020 | 1:34 EST

FRATERNAL ORDER OF POLICE

President
Signature & Title

Kevin Millan President
Print Name & Title

12/18/2020
Date

CHIEF OF POLICE

12/15/2020
Date

# EXHIBIT B

December 18, 2020

City of Miami Beach
Human Resources Department
Miami Beach City Hall
1700 Convention Center Drive
Miami Beach, FL 33139

Re: *Letter of Resignation as Part of Settlement Agreement and Last Chance Agreement*

To Whom It May Concern:

Pursuant to the Settlement Agreement and Last Chance Agreement to which this Letter of Resignation is attached, I resign my employment with the City of Miami Beach, effective January 25, 2021.

Very Truly Yours,

Jessica Salabarria.

# EXHIBIT C

# MIAMI BEACH POLICE DEPARTMENT
## Initial Report Concerning a Police Employee - Allegation of Employee Misconduct

| | | |
|---|---|---|
| Date and Time Reported<br>12/30/2020 2345 hours | Received By (Employee Name)<br>Lieutenant Steven Cosner | ( X ) In Person ( ) By Phone<br>( ) Other ______ |
| Date and Time Occurred<br>12/28/2020 0000-0600 hours | Location of Occurrence<br>MBPD | |

| Reporting Party's Name | Race/Sex | D.O.B | Address | Telephone # |
|---|---|---|---|---|
| Lieutenant Steven Cosner | W/M | | 1100 Washington Ave., Miami Beach, Florida 33139 | |

Specific Allegation (In Brief): Failure to Supervise, Conduct Unbecoming, Insubordination, Neglect of Duty, Untruthfulness (lying/false statements), Performance of Duties, Failure to Monitor Radio

| Employee (s) Name | |
|---|---|
| 1. Sergeant Jessica Salabarria | 3. |
| 2 | 4. |

### Witnesses

| Name | Race/Sex | D.O.B | Address | Telephone |
|---|---|---|---|---|
| Lieutenant Steven Cosner<br>Officer Werner Baumer<br>Officer Richard Ocejo<br>Officer Steven Serrano<br>Officer Christopher Garrido<br>Officer Hansel Romero<br>Officer Rodolfo Albaladejo | W/M<br>W/M<br>W/M<br>W/M<br>W/M<br>W/M<br>W/M | | Resident: MBPD<br>Business: 1100 Washington Ave., Miami Beach, FL 33139 | |
| | | | Resident<br>Business | |

### Details of Allegation

On Sunday night, 12/27/2020 at approximately 2200 hours, I advised Sergeant Jessica Salabarria that we needed a Sergeant on overtime for the midnight shift. I told her that she was the next supervisor to be forced to work over since we did not have any volunteers for the position. She was told that she would be assigned to Area 3 and would be working from 0000-0600 hours. She acknowledged the order and within several minutes she provided me with an overtime slip completed by her in which she documented in her own handwriting that she was working in Area 3. She left the sergeant's office shortly thereafter. At approximately 0355 hours, I forwarded an email to Sergeant Salabarria with the details and watch orders that needed to be assigned to the Area 3 officers for completion prior to the end of their shift. I then sent a text message to her cellular phone advising her to check her email at 0359 hours. After a few minutes I did not receive an acknowledgement of the text message, so I tried to call her phone at 0404 hours. Then phone rang repeatedly and went to voicemail. I tried to raise her via the police radio immediately afterwards. The dispatcher raised her multiple times with no response. Sergeant Wilson Romero advised via radio that he would try to call her. He called me at 0411 hours to advise that he could not reach her and that her phone rang through to voicemail. I again tried to have the dispatcher raise her, and after several attempts by name and unit

number, she finally responded. The tone of her voice sounded as if she was just waking up. I spoke with her via the supervisor channel and asked her where she was. She told me that she was "05". I responded by asking if she meant, "05 at the NESS". She said no and that she was at the main station. I asked if she was aware that she was assigned to Area 3 and she answered affirmatively. I then ordered her to respond to Area 3 and to check her email.

I became involved in a vehicle stop along 71 street that resulted in an arrest at 0416. Officer Ocejo was one of the officers who responded as back-up. After the subject was transported, I waited on scene with Officer Ocejo as he waited for a tow truck. I asked Officer Ocejo to check his email to see if the details had been forwarded by Sergeant Salabarria. He told me that he did not have any emails from her. This was at approximately 0520 hours. At 0543 hours, I received an unsolicited text message from Sergeant Salabarria advising that she had emailed me the squad stats and the detail assignments. She claimed that she had told the officers via landline and email of their detail assignments. The email that she sent me was sent at 0536 hours. It included the squad stats and detail assignments. I called Officer Hansel Romero and asked him if he had received any emails, texts, or phone calls from Sergeant Salabarria advising him of detail assignments. He said that he did not and that she had only asked for stats in an email that was sent at 0521 hours. That email was forwarded to me by Officer Ocejo. I began calling all the officers assigned to Area 3 and inquired the same of each of them. Every one of the officers advised that they had not received a call or text advising of the details. Officer Romero then forwarded an email that he received from Sergeant Salabarria at 0542 hours. The email had been sent to each of the Area 3 officers. It was the detail assignments and began with a highlighted line stating, "squad per our conversation please note the below details for our shift". I found this very concerning because it was now the second time that she had claimed to have had a conversation with the officers about their assignments when all six of them claimed that never happened and they did not report to any assigned details during the shift.

I sent an email to Lieutenant Jorge Garcia asking for a Detail Report for Sergeant Salabarria's assigned marked vehicle via the AVL system. My inquiry was for her vehicle movement from 2200 hours on 12/27/2020 through 0600 hours on 12/28/2020. The Detail Report showed that her vehicle had been parked at the station from 2200 hours on 12/27/2020 until 0423 hours on 12/28/2020 which was a few minutes after we spoke on the supervisor channel. For a total of 6 hours and 23 minutes. It is unknown how long the vehicle had been parked prior to that. The report indicated that she left the station and drove directly to 73rd Street and Ocean Terrace where she again parked her vehicle at 0440 hours. The vehicle remained in that position until 0533 hours for a total of 53 minutes. She then left that location and drove directly to the MBPD headquarters.

Note that of the six officers assigned to Area 3 on the shift in question 4 of them have 2 years of experience or less.

Sergeant Salabarria's actions show a willful effort to deceive a supervisor and a failure to obey a direct order from said supervisor. She failed to report to her assigned zone and failed to supervise the officers under her watch. She failed on multiple occasions to respond to the police radio and showed extreme neglect in the performance of her duties.

# APPENDIX

# B

# SETTLEMENT AGREEMENT

The SETTLEMENT AGREEMENT ("Agreement") is entered into between the CITY OF MIAMI BEACH, its elected and appointed officials, its employees, and its insurers, attorneys, or agents of any kind (collectively, the "City"); NICHOLAS GUASTO ("Guasto") and the FRATERNAL ORDER OF POLICE, WILLIAM NICHOLS LODGE NO. 8 ("FOP") (all collectively, the "Parties").

WHEREAS, Guasto is employed by the City in its Police Department; and

WHEREAS, the FOP is the exclusive bargaining representative for a bargaining unit of City police employees, including Guasto; and

WHEREAS, Guasto was the subject of Internal Affairs investigation, I.A. Case No. 2020-010 ("the Investigation"); and

WHEREAS, the Parties, wish to settle all discipline associated with the Investigation and wish to resolve all other disputes between them.

NOW, THEREFORE, intending to be legally bound but without setting precedent, the Parties agree as follows:

1. Recitals. The Parties acknowledge and agree that the Recitals above are true to the best of their knowledge and belief and incorporate them as if fully set forth here and that the Recitals are a material inducement for the Parties to enter into this Agreement.

2. Discipline. Guasto and the FOP agree that, by executing this Agreement, they will simultaneously withdraw, with prejudice, any and all grievances. Additionally, Guasto agrees to accept a Twenty (20) hour suspension, to be completed by the end of 2021. Guasto agrees to pay back One Hundred and Thirty-Six (136) hours of regular time, which is a total amount due of Seven Thousand Two Hundred Seventeen Dollars and 52/100 ($7,217.52). The total amount due was calculated using an hourly rate of $53.07/hour. Guasto must pay back the entire amount referenced herein on or before 365 days from the date of his execution of this Agreement (the "Due Date"). If Guasto fails to make complete payment on or before the Due Date, the City is authorized to take the equivalent of the remaining amounts due from any of Guasto's leave banks. Finally, Guasto agrees that he is not eligible for any promotional opportunities in the year 2021 and for the length of the current Sergeant and Lieutenant Promotional Lists, which run past the year 2021. For the avoidance of confusion, this means that Guasto is not eligible for any promotions until the expiration of the aforementioned Promotional Lists.

3. Revocation of Written Reprimand. On February 9, 2021, Guasto received a written reprimand (the "Reprimand"). Separate from any consideration herein, the City revokes the Reprimand. The Reprimand is referenced herein for convenience purposes only. The revocation of the Reprimand is not connected to any consideration provided by Guasto. The Reprimand cannot be used by the City in considering future discipline.

4. Release Of Claims, Covenant Not To Sue. Guasto hereby releases and waives any and all claims of any kind whatsoever against the City that he had, has or may have from the beginning of the world through the date of this Agreement. The claims released include, but are not limited to, any and all claims arising under any federal, state, local or foreign statute or regulation, including, without limitation, those relating to any and all unfair or discriminatory employment practices (for example, employment discrimination based on race, national origin, sex, religion, age, disability or handicap, and harassment of any kind) under the federal Civil Rights Acts of 1866, 1871, 1964 and 1991 (including Title VII), the federal Age Discrimination in Employment Act ("ADEA"), including the Older Workers Benefits Protection Act, the Florida Civil Rights Act, the federal Americans With Disabilities Act, the federal Employee Retirement Income Security Act of 1974, the Internal Revenue Code of 1986, the federal Fair Labor Standards Act of 1938, the Florida Wage Discrimination Law, the Florida Wage and Hour laws, Florida and federal statutes regarding "whistleblower" activities, the federal Family and Medical Leave Act of 1993, the federal Rehabilitation Act of 1973, the Consolidated Omnibus Budget Reconciliation Act of 1985 (known as "COBRA"), the Federal Fair Credit Reporting Act, any other federal and state employment-related statutes and regulations, and any other employment-related local ordinance up to the date of this Agreement.

The disputes released by Guasto also include any and all disputes he had, has or may believe to have against the City in contract or at common law, including, but not limited to: breach of oral, written and/or implied contract, breach of an implied covenant of good faith and fair dealing, wrongful discharge under any theory (including for lack of good cause) in violation of public policy and constructive discharge, intentional and/or negligent infliction of emotional distress, negligent retention and/or supervision, assault, battery, negligence, misrepresentation or fraud of any kind, duress, unfair dealing, breach of fiduciary or other duty, invasion of privacy, defamation, and interference with contract and/or prospective economic advantage up to the date of this Agreement.

Notwithstanding anything contained herein, this release does not include a release of any workers compensation claims.

Guasto further covenants and agrees that he will not file a lawsuit or claim of any kind asserting the claims released herein. Guasto understands that this Agreement does not prohibit participating in an investigation or the filing of a charge with the EEOC or like administrative agency, but he does understand and agree that, not only is he releasing the stated claims, but also is releasing the right to any monetary damages or any relief of any kind from those claims, whether brought by him or on his behalf. Guasto hereby represents that he has not assigned to any person or entity any rights to the claims released herein.

5. Effect; Precedent. The Parties agree that Guasto remains subject to all applicable rules, policies, orders, procedures or regulations of whatever kind, except as may be expressly otherwise provided herein. The Parties agree that the facts underlying this Agreement are unique and that this Agreement does not establish precedent of any kind whatsoever and may not be used in any manner whatsoever in any proceeding, including but not limited to any labor proceeding of any kind.

6. Consideration. The consideration for this Agreement are the mutual promises, releases, and forbearances recited herein, the adequacy of which is hereby affirmed by the Parties.

7. Miscellaneous. This Agreement is the entire agreement between the Parties on its subject matter and supersedes any other agreement or understanding whatsoever, whether written or oral. The Parties have entered into this Agreement solely on the basis of the language, representations, and understandings expressed in this Agreement and not on the basis of any other representation or understanding whatsoever. This Agreement shall be construed and applied according to its express language and not strictly against any Party, regardless of authorship. This Agreement shall be governed by and construed according to the laws of the State of Florida. Any dispute arising from this Agreement, its application, or its breach shall be heard by a judge and not a jury. The Parties agree that venue shall be proper in Miami-Dade County, Florida, and agree that they shall not challenge such venue, regardless of convenience. If any provision or part thereof of this Agreement shall be found invalid or unenforceable by a court of competent jurisdiction, the remainder of the Agreement shall remain valid and enforceable, provided, however, that if Paragraph 3, "Release," is found invalid or unenforceable, the entire Agreement shall fail and be null and void and shall be treated as if it were never made. The prevailing party in any action of or relating to this Agreement shall be entitled to an award of reasonable attorney's fees and costs.

IN WITNESS WHEREOF, having read and fully understood this Agreement in its entirety, having duly considered the same, and intending to enjoy the benefits and undertake the obligations established herein, the Parties do hereby enter into and execute this Agreement as set forth below.

| CITY OF MIAMI BEACH | NICHOLAS GUASTO | FRATERNAL ORDER OF POLICE, LODGE 8 |
|---|---|---|
| By__________ City Manager | __________ NICHOLAS GUASTO | By__________ ~~President~~ Vice President |
| __________ DATE | 07/07/2021 DATE | 7/8/2021 DATE |

CHIEF OF POLICE

__________
RICK CLEMENTS
Chief of Police

# APPENDIX

# C

**Start Date/Time:** 10/22/2019 00:00:00

**End Date/Time:** 03/22/2020 23:59:59

# Officer Dispatch Report

**Agency:** FL0130700 - Miami Beach Police Department
**Officers:** Salabarria, Jessica - 1023
**CFS Types:** ALL

| Officer | Created Date/Time | CFS # | CFS Type | Dispatched Date/Time | Arrived Date/Time | Cleared Date/Time | Dispatched To Arrived | Dispatched To Cleared |
|---|---|---|---|---|---|---|---|---|
| Salabarria, Jessica | 10/22/2019 15:24:44 | 22579 | 19 | 10/22/2019 15:24:44 | 10/22/2019 15:24:44 | 10/22/2019 15:38:00 | 00:00:00 | 00:13:16 |
| Salabarria, Jessica | 11/06/2019 19:26:48 | 7880 | 27 | 11/06/2019 19:52:47 | 11/06/2019 21:31:12 | 11/07/2019 00:12:20 | 01:38:25 | 04:19:33 |
| Salabarria, Jessica | 11/08/2019 19:54:56 | 9218 | 41 | 11/08/2019 20:02:52 | 11/08/2019 20:17:45 | 11/08/2019 21:37:57 | 00:14:53 | 01:35:05 |
| Salabarria, Jessica | 11/08/2019 22:57:40 | 9300 | 14 | 11/08/2019 23:11:05 | 11/08/2019 23:11:05 | 11/08/2019 23:38:41 | 00:00:00 | 00:27:36 |
| Salabarria, Jessica | 11/13/2019 19:31:26 | 12463 | 18 | 11/13/2019 20:11:46 | 11/13/2019 20:11:46 | 11/13/2019 20:12:18 | 00:00:00 | 00:00:32 |
| Salabarria, Jessica | 11/14/2019 17:23:59 | 12953 | 14 | 11/14/2019 17:23:59 | 11/14/2019 17:23:59 | 11/14/2019 17:29:45 | 00:00:00 | 00:05:46 |
| Salabarria, Jessica | 11/26/2019 18:36:58 | 20900 | 19 | 11/26/2019 18:36:58 | 11/26/2019 18:36:58 | 11/26/2019 18:46:17 | 00:00:00 | 00:09:19 |
| Salabarria, Jessica | 12/05/2019 19:31:42 | 1577 | 317E | 12/05/2019 19:32:51 | 12/05/2019 19:45:10 | 12/05/2019 22:21:54 | 00:12:19 | 02:49:03 |
| Salabarria, Jessica | 12/10/2019 18:04:27 | 5328 | 14 | 12/10/2019 18:10:33 | 12/10/2019 18:23:48 | 12/10/2019 20:08:24 | 00:13:15 | 01:57:51 |
| Salabarria, Jessica | 12/19/2019 22:29:36 | 11330 | BLDGFIRE | 12/19/2019 22:52:56 | 12/19/2019 22:52:56 | 12/20/2019 00:22:24 | 00:00:00 | 01:29:28 |
| Salabarria, Jessica | 01/01/2020 17:05:58 | 19376 | 14 | 01/01/2020 17:05:59 | 01/01/2020 17:05:59 | 01/01/2020 19:17:05 | 00:00:00 | 02:11:06 |
| Salabarria, Jessica | 01/03/2020 21:11:34 | 20947 | 14 | 01/03/2020 21:30:13 | 01/03/2020 21:30:13 | 01/03/2020 23:28:10 | 00:00:00 | 01:57:57 |
| Salabarria, Jessica | 01/09/2020 10:06:33 | 24402 | 14 | 01/09/2020 10:06:33 | 01/09/2020 10:06:33 | 01/09/2020 11:20:28 | 00:00:00 | 01:13:55 |
| Salabarria, Jessica | 01/10/2020 16:18:59 | 303 | 14 | 01/10/2020 16:18:59 | 01/10/2020 16:18:59 | 01/10/2020 16:26:49 | 00:00:00 | 00:07:50 |
| Salabarria, Jessica | 02/01/2020 19:49:01 | 15516 | 36 | 02/01/2020 20:00:41 | 02/01/2020 20:00:41 | 02/01/2020 20:22:17 | 00:00:00 | 00:21:36 |
| Salabarria, Jessica | 02/05/2020 22:07:15 | 18616 | 14 | 02/05/2020 22:21:28 | 02/05/2020 22:42:48 | 02/06/2020 00:16:14 | 00:21:20 | 01:54:46 |
| Salabarria, Jessica | 02/07/2020 17:15:57 | 19793 | 22 | 02/07/2020 17:15:58 | 02/07/2020 17:15:58 | 02/07/2020 18:40:04 | 00:00:00 | 01:24:06 |
| Salabarria, Jessica | 02/11/2020 21:19:05 | 22488 | 43 | 02/11/2020 21:28:33 | 02/11/2020 21:32:46 | 02/11/2020 21:42:39 | 00:04:13 | 00:14:06 |
| Salabarria, Jessica | 02/12/2020 18:35:36 | 23070 | 17 | 02/12/2020 19:40:46 | 02/12/2020 19:58:55 | 02/12/2020 20:06:50 | 00:18:09 | 00:26:04 |
| Salabarria, Jessica | 02/12/2020 19:55:17 | 23105 | 19 | 02/12/2020 19:55:17 | 02/12/2020 19:55:17 | 02/12/2020 19:58:02 | 00:00:00 | 00:02:45 |
| Salabarria, Jessica | 02/19/2020 20:32:31 | 2893 | 34 | 02/19/2020 20:38:27 | 02/19/2020 20:41:23 | 02/19/2020 20:57:40 | 00:02:56 | 00:19:13 |
| Salabarria, Jessica | 03/10/2020 10:02:23 | 16287 | 14 | 03/10/2020 10:02:23 | 03/10/2020 10:02:23 | 03/10/2020 10:03:13 | 00:00:00 | 00:00:50 |

**Start Date/Time:** 10/22/2019 00:00:00

**End Date/Time:** 03/22/2020 23:59:59

# Officer Dispatch Report

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Salabarria, Jessica | 03/12/2020 17:00:58 | 18108 315 | 03/12/2020 17:02:28 | 03/12/2020 17:06:56 | 03/12/2020 18:24:40 | 00:04:28 | 01:22:12 |

**Officer CFS Count:** 23

**Total CFS Count:** 23

**Start Date/Time:** 04/22/2020 00:00:00

**End Date/Time:** 04/22/2020 23:59:59

# Officer Dispatch Report

**Agency:** FL0130700 - Miami Beach Police Department
**Officers:** Salabarria, Jessica - 1023
**CFS Types:** ALL

| Officer | Created Date/Time | CFS # | CFS Type | Dispatched Date/Time | Arrived Date/Time | Cleared Date/Time | Dispatched To Arrived | Dispatched To Cleared |
|---|---|---|---|---|---|---|---|---|
| **Total CFS Count:** 0 | | | | | | | | |

**Start Date/Time:** 10/22/2019 00:00:00
**End Date/Time:** 03/22/2020 23:59:59

# Daily CFS Detail

**Agency:** FL0130700 - Miami Beach Police Department **Sources:** ALL **From CFS:** **To:**

**Units:** ALL **Personnel:** Salabarria, Jessica - 1023 **CFS Types:** ALL

**Dispositions:** ALL **Include Canceled:** No **Layer:** ALL

**Areas:** ALL **Details:** ALL

| Created Date/Time | Dispatched Date/Time | Arrived Date/Time | CFS # | CFS Type | Report Req. | Caller Name Caller Phone | Priority | Source | Entered by | Location | ORIs |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/22/2019 15:24:44 | 10/22/2019 15:24:44 | 10/22/2019 15:24:44 | 22579 | 19 | No | | 2 | Officer Initiated | CMB \EMGTConM | S POINTE DR \ OCEAN DR, Miami Beach | 01012, FL0130700 |
| 10/30/2019 21:17:57 | 10/30/2019 21:17:57 | 10/30/2019 21:17:57 | 3041 | 34 | No | | 3 | Officer Initiated | CMB \EMGTChrJ | 800 COLLINS AVE, Miami Beach | 01012, FL0130700 |
| 11/06/2019 19:26:48 | 11/06/2019 19:38:18 | 11/06/2019 19:45:12 | 7880 | 27 | No | | 4 | 911 Call | system | 1149 5TH ST, Miami Beach | 01012, FL0130700 |
| 11/08/2019 19:54:56 | 11/08/2019 19:58:14 | 11/08/2019 20:08:34 | 9218 | 41 | No | | 3 | 911 Call | system | 411 WASHINGTON AVE, Miami Beach | 01012, FL0130700 |
| 11/08/2019 22:57:40 | 11/08/2019 23:10:08 | 11/08/2019 23:09:51 | 9300 | 14 | No | | 4 | 911 Call | system | 900 WEST AVE 337, Miami Beach | 01012, FL0130700 |
| 11/13/2019 19:31:26 | 11/13/2019 20:11:46 | 11/13/2019 20:11:46 | 12463 | 18 | No | | 3 | 911 Call | system | MAC ARTHUR CSWY WB \ FOUNTAIN ST, Miami Beach | 01012, FL0130700 |

**Start Date/Time:** 10/22/2019 00:00:00

**End Date/Time:** 03/22/2020 23:59:59

# Daily CFS Detail

| Created Date/Time | Dispatched Date/Time | Arrived Date/Time | CFS # | CFS Type | Report Req. | Caller Name Caller Phone | Priority | Source |
|---|---|---|---|---|---|---|---|---|
| 11/14/2019 17:23:59 | 11/14/2019 17:23:59 | 11/14/2019 17:23:59 | 12953 | 14 | No | | 4 | Officer Initiated |
| **Entered by:** CMB \EMGTConM | | **Location:** 1100 WASHINGTON AVE, Miami Beach | | | | **ORIs:** 01012, FL0130700 | | |
| 11/20/2019 20:52:25 | 11/20/2019 20:52:25 | 11/20/2019 20:52:25 | 16967 | 19 | No | | 2 | Officer Initiated |
| **Entered by:** CMB \EMGTHanT | | **Location:** 8TH ST \ JEFFERSON AVE, Miami Beach | | | | **ORIs:** 01012, FL0130700 | | |
| 11/26/2019 18:36:58 | 11/26/2019 18:36:58 | 11/26/2019 18:36:58 | 20900 | 19 | No | | 2 | Officer Initiated |
| **Entered by:** CMB \EMGTMcmD | | **Location:** 600 WEST AVE, Miami Beach | | | | **ORIs:** 01012, FL0130700 | | |
| 11/28/2019 15:50:50 | 11/28/2019 16:02:26 | 11/28/2019 16:11:23 | 22005 | 14 | No | | 4 | 911 Call |
| **Entered by:** system | | **Location:** 1 OCEAN DR, Miami Beach | | | | **ORIs:** 01012, FL0130700 | | |
| 12/05/2019 19:31:42 | 12/05/2019 19:32:20 | 12/05/2019 19:33:13 | 1577 | 317E | No | | 1 | 911 Call |
| **Entered by:** system | | **Location:** 16TH ST \ ALTON RD, Miami Beach | | | | **ORIs:** 01012, FL0130700 | | |
| 12/10/2019 18:04:27 | 12/10/2019 18:09:32 | 12/10/2019 18:11:34 | 5328 | 14 | No | | 4 | 911 Call |
| **Entered by:** system | | **Location:** 1523 ALTON RD, Miami Beach | | | | **ORIs:** 01012, FL0130700 | | |
| 12/19/2019 22:29:36 | 12/19/2019 22:30:48 | 12/19/2019 22:35:51 | 11330 | BLDGFIRE | No | 7863429400 | 1 | 911 Call |
| **Entered by:** CMB \EMGTCamM | | **Location:** 61 COLLINS AVE 404, Miami Beach | | | | **ORIs:** 01012, FL0130700 | | |

**Start Date/Time:** 10/22/2019 00:00:00
**End Date/Time:** 03/22/2020 23:59:59

# Daily CFS Detail

| Created Date/Time | Dispatched Date/Time | Arrived Date/Time | CFS # | CFS Type | Report Req. | Caller Name Caller Phone | Priority | Source | Entered by | Location | ORIs |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/20/2019 20:45:03 | 12/20/2019 20:49:21 | 12/20/2019 20:54:01 | 11877 | 25 | No | MFH, OPER 8772857397 | 2 | Telephone | CMB \EMGTTelN | 311 WASHINGTON AVE, Miami Beach | 01012, FL0130700 |
| 12/27/2019 21:02:27 | 12/27/2019 21:05:25 | 12/27/2019 21:07:22 | 15842 | 329 | No | PACHECO, DEIRRY | 1 | 911 Call | system | 720 MERIDIAN AVE, Miami Beach | 01012, FL0130700 |
| 01/01/2020 17:05:58 | 01/01/2020 17:05:59 | 01/01/2020 17:05:59 | 19376 | 14 | No | | 4 | Officer Initiated | CMB \EMGTHanT | 1100 WASHINGTON AVE, Miami Beach | 01012, FL0130700 |
| 01/03/2020 21:11:34 | 01/03/2020 21:11:34 | 01/03/2020 21:11:34 | 20947 | 14 | No | | 4 | Officer Initiated | CMB \EMGTMajR | 300 ALTON RD, Miami Beach | 01012, FL0130700 |
| 01/09/2020 10:06:33 | 01/09/2020 10:06:33 | 01/09/2020 10:06:33 | 24402 | 14 | No | | 4 | Officer Initiated | CMB \EMGTGuyT | 1821 W 27TH ST, Miami Beach | 01012, FL0130700 |
| 01/10/2020 16:18:59 | 01/10/2020 16:18:59 | 01/10/2020 16:18:59 | 303 | 14 | No | | 4 | Officer Initiated | CMB \EMGTMajR | MAC CAUSEWAY | FL0130700 |
| 01/10/2020 16:25:03 | 01/10/2020 16:25:52 | 01/10/2020 16:27:20 | 308 | 317E | No | | 1 | 911 Call | system | 6TH ST \ MICHIGAN AVE, Miami Beach | 01012, FL0130700 |

**Start Date/Time:** 10/22/2019 00:00:00

**End Date/Time:** 03/22/2020 23:59:59

# Daily CFS Detail

| Created Date/Time | Dispatched Date/Time | Arrived Date/Time | CFS # | CFS Type | Report Req. | Caller Name Caller Phone | Priority | Source | Entered by | Location | ORIs |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 01/10/2020 17:47:40 | 01/10/2020 17:55:04 | | 379 | 38 | No | | 3 | 911 Call | system | 535 15TH ST 2, Miami Beach | 01012, FL0130700 |
| 01/30/2020 16:09:23 | 01/30/2020 16:09:23 | 01/30/2020 16:09:23 | 13447 | 38 | No | | 3 | Officer Initiated | CMB \EMGTChrJ | 1901 CONVENTION CENTER DR, Miami Beach | 01012, FL0130700 |
| 02/01/2020 19:49:01 | 02/01/2020 19:49:01 | 02/01/2020 19:49:01 | 15516 | 36 | No | | 3 | Officer Initiated | CMB \EMGTMajR | 1901 CONVENTION CENTER DR, Miami Beach | 01012, FL0130700 |
| 02/05/2020 22:07:15 | 02/05/2020 22:07:15 | 02/05/2020 22:07:15 | 18616 | 14 | No | | 4 | Officer Initiated | CMB \EMGTChrJ | 1400 NE 1ST AVE BLK | FL0130700 |
| 02/07/2020 17:15:57 | 02/07/2020 17:15:58 | 02/07/2020 17:15:58 | 19793 | 22 | No | | 4 | Officer Initiated | CMB \EMGTChrJ | 1288 COLLINS AVE, Miami Beach | 01012, FL0130700 |
| 02/11/2020 20:48:24 | 02/11/2020 20:48:24 | 02/11/2020 20:48:24 | 22476 | 14 | No | | 4 | Officer Initiated | CMB \EMGTMajR | 1100 5TH ST blk, Miami Beach | 01012, FL0130700 |
| 02/11/2020 21:19:05 | 02/11/2020 21:21:59 | 02/11/2020 21:23:06 | 22488 | 43 | No | -RESIDENT, MIKE | 3 | 911 Call | system | 1428 EUCLID AVE, Miami Beach | 01012, FL0130700 |

**Start Date/Time:** 10/22/2019 00:00:00

**End Date/Time:** 03/22/2020 23:59:59

# Daily CFS Detail

| Created Date/Time | Dispatched Date/Time | Arrived Date/Time | CFS # | CFS Type | Report Req. | Caller Name Caller Phone | Priority | Source |
|---|---|---|---|---|---|---|---|---|
| 02/12/2020 18:35:36 | 02/12/2020 18:41:06 | 02/12/2020 18:50:12 | 23070 | 17 | No | 3057999420 | 4 | Telephone |
| **Entered by:** CMB \EMGTCunA | | **Location:** 14TH ST \ ALTON RD, Miami Beach | | | | **ORIs:** 01012, FL0130700 | | |
| 02/12/2020 19:55:17 | 02/12/2020 19:55:17 | 02/12/2020 19:55:17 | 23105 | 19 | No | | 2 | Officer Initiated |
| **Entered by:** CMB \EMGTHanT | | **Location:** 11TH ST \ ALTON RD, Miami Beach | | | | **ORIs:** 01012, FL0130700 | | |
| 02/18/2020 17:00:36 | 02/18/2020 17:02:47 | 02/18/2020 17:11:00 | 2069 | WATEREMER | No | CALLER, FEMALE 7862163333 | 1 | Telephone |
| **Entered by:** CMB \EMGTGarV | | **Location:** 190 MAC ARTHUR CSWY EB, Miami Beach | | | | **ORIs:** 01012, FL0130700 | | |
| 02/18/2020 22:54:36 | 02/18/2020 22:54:36 | 02/18/2020 22:54:36 | 2248 | 26 | No | | 5 | Officer Initiated |
| **Entered by:** CMB \EMGTTayC | | **Location:** 100 MAC ARTHUR CSWY WB | | | | **ORIs:** FL0130700 | | |
| 02/19/2020 20:32:31 | 02/19/2020 20:33:30 | 02/19/2020 20:39:46 | 2893 | 34 | No | | 3 | 911 Call |
| **Entered by:** system | | **Location:** 1504 BAY RD, Miami Beach | | | | **ORIs:** 01012, FL0130700 | | |
| 02/26/2020 19:48:03 | 02/26/2020 20:27:35 | 02/26/2020 20:35:28 | 7766 | 25 | No | OPER4670, CENTRAL 8006332677 | 2 | Telephone |
| **Entered by:** CMB \EMGTCunA | | **Location:** 37 STAR ISLAND DR, Miami Beach | | | | **ORIs:** 01012, FL0130700 | | |
| 02/26/2020 20:02:37 | 02/26/2020 20:26:42 | 02/26/2020 20:28:27 | 7773 | 34 | No | 3056722395 | 3 | Telephone |
| **Entered by:** CMB \EMGTMicA | | **Location:** 1443 ALTON RD, Miami Beach | | | | **ORIs:** 01012, FL0130700 | | |
| 02/26/2020 20:42:13 | 02/26/2020 20:52:49 | 02/26/2020 20:56:23 | 7784 | 34 | No | 3059682663 | 3 | Telephone |

**Start Date/Time:** 10/22/2019 00:00:00

**End Date/Time:** 03/22/2020 23:59:59

# Daily CFS Detail

| Created Date/Time | Dispatched Date/Time | Arrived Date/Time | CFS # | CFS Type | Report Req. | Caller Name Caller Phone | Priority | Source | Location | ORIs |
|---|---|---|---|---|---|---|---|---|---|---|
| **Entered by:** CMB \EMGTGarV | | | | | | | | | 1321 14TH TER, Miami Beach | 01012, FL0130700 |
| 03/05/2020 09:32:24 | 03/05/2020 09:34:43 | 03/05/2020 09:36:16 | 12520 | 14 | No | | 4 | 911 Call | 1501 COLLINS AVE, Miami Beach | 01012, FL0130700 |
| **Entered by:** system | | | | | | | | | | |
| 03/10/2020 10:02:23 | 03/10/2020 10:02:23 | 03/10/2020 10:02:23 | 16287 | 14 | No | | 4 | Officer Initiated | 1061 MICHIGAN AVE, Miami Beach | 01012, FL0130700 |
| **Entered by:** CMB \EMGTRamR | | | | | | | | | | |
| 03/12/2020 17:00:58 | 03/12/2020 17:02:13 | 03/12/2020 17:03:37 | 18108 | 315 | No | | 1 | Telephone | 1330 PENNSYLVANIA AVE, Miami Beach | 01012, FL0130700 |
| **Entered by:** CMB \PINGSanR | | | | | | | | | | |

**Start Date/Time:** 10/22/2019 00:00:00

**End Date/Time:** 03/22/2020 23:59:59

# Daily CFS Detail

**Agency:** FL0130700 - Miami Beach Police Department **Sources:** ALL **From CFS:** **To:**

**Units:** ALL **Personnel:** Salabarria, Jessica - 1023 **CFS Types:** ALL

**Dispositions:** ALL **Include Canceled:** No **Layer:** ALL

**Areas:** ALL **Details:** ALL

| Created Date/Time | Dispatched Date/Time | Arrived Date/Time | CFS # | CFS Type | Report Req. | Caller Name Caller Phone | Priority | Source |
|---|---|---|---|---|---|---|---|---|
| 10/22/2019 15:24:44 | 10/22/2019 15:24:44 | 10/22/2019 15:24:44 | 22579 | 19 | No | | 2 | Officer Initiated |
| **Entered by:** CMB \EMGTConM | **Location:** S POINTE DR \ OCEAN DR, Miami Beach | | | | | **ORIs:** 01012, FL0130700 | | |
| 10/30/2019 21:17:57 | 10/30/2019 21:17:57 | 10/30/2019 21:17:57 | 3041 | 34 | No | | 3 | Officer Initiated |
| **Entered by:** CMB \EMGTChrJ | **Location:** 800 COLLINS AVE, Miami Beach | | | | | **ORIs:** 01012, FL0130700 | | |
| 11/06/2019 19:26:48 | 11/06/2019 19:38:18 | 11/06/2019 19:45:12 | 7880 | 27 | No | | 4 | 911 Call |
| **Entered by:** system | **Location:** 1149 5TH ST, Miami Beach | | | | | **ORIs:** 01012, FL0130700 | | |
| 11/08/2019 19:54:56 | 11/08/2019 19:58:14 | 11/08/2019 20:08:34 | 9218 | 41 | No | | 3 | 911 Call |
| **Entered by:** system | **Location:** 411 WASHINGTON AVE, Miami Beach | | | | | **ORIs:** 01012, FL0130700 | | |
| 11/08/2019 22:57:40 | 11/08/2019 23:10:08 | 11/08/2019 23:09:51 | 9300 | 14 | No | | 4 | 911 Call |
| **Entered by:** system | **Location:** 900 WEST AVE 337, Miami Beach | | | | | **ORIs:** 01012, FL0130700 | | |
| 11/13/2019 19:31:26 | 11/13/2019 20:11:46 | 11/13/2019 20:11:46 | 12463 | 18 | No | | 3 | 911 Call |
| **Entered by:** system | **Location:** MAC ARTHUR CSWY WB \ FOUNTAIN ST, Miami Beach | | | | | **ORIs:** 01012, FL0130700 | | |

| | |
|---|---|
| **Start Date/Time:** | 10/22/2019 00:00:00 |
| **End Date/Time:** | 03/22/2020 23:59:59 |

# Daily CFS Detail

| Created Date/Time | Dispatched Date/Time | Arrived Date/Time | CFS # | CFS Type | Report Req. | Caller Name Caller Phone | Priority | Source |
|---|---|---|---|---|---|---|---|---|
| 11/14/2019 17:23:59 | 11/14/2019 17:23:59 | 11/14/2019 17:23:59 | 12953 | 14 | No | | 4 | Officer Initiated |
| **Entered by:** CMB \EMGTConM | | **Location:** 1100 WASHINGTON AVE, Miami Beach | | | | **ORIs:** 01012, FL0130700 | | |
| 11/20/2019 20:52:25 | 11/20/2019 20:52:25 | 11/20/2019 20:52:25 | 16967 | 19 | No | | 2 | Officer Initiated |
| **Entered by:** CMB \EMGTHanT | | **Location:** 8TH ST \ JEFFERSON AVE, Miami Beach | | | | **ORIs:** 01012, FL0130700 | | |
| 11/26/2019 18:36:58 | 11/26/2019 18:36:58 | 11/26/2019 18:36:58 | 20900 | 19 | No | | 2 | Officer Initiated |
| **Entered by:** CMB \EMGTMcmD | | **Location:** 600 WEST AVE, Miami Beach | | | | **ORIs:** 01012, FL0130700 | | |
| 11/28/2019 15:50:50 | 11/28/2019 16:02:26 | 11/28/2019 16:11:23 | 22005 | 14 | No | | 4 | 911 Call |
| **Entered by:** system | | **Location:** 1 OCEAN DR, Miami Beach | | | | **ORIs:** 01012, FL0130700 | | |
| 12/05/2019 19:31:42 | 12/05/2019 19:32:20 | 12/05/2019 19:33:13 | 1577 | 317E | No | | 1 | 911 Call |
| **Entered by:** system | | **Location:** 16TH ST \ ALTON RD, Miami Beach | | | | **ORIs:** 01012, FL0130700 | | |
| 12/10/2019 18:04:27 | 12/10/2019 18:09:32 | 12/10/2019 18:11:34 | 5328 | 14 | No | | 4 | 911 Call |
| **Entered by:** system | | **Location:** 1523 ALTON RD, Miami Beach | | | | **ORIs:** 01012, FL0130700 | | |
| 12/19/2019 22:29:36 | 12/19/2019 22:30:48 | 12/19/2019 22:35:51 | 11330 | BLDGFIRE | No | 7863429400 | 1 | 911 Call |
| **Entered by:** CMB \EMGTCamM | | **Location:** 61 COLLINS AVE 404, Miami Beach | | | | **ORIs:** 01012, FL0130700 | | |

**Start Date/Time:** 10/22/2019 00:00:00

**End Date/Time:** 03/22/2020 23:59:59

# Daily CFS Detail

| Created Date/Time | Dispatched Date/Time | Arrived Date/Time | CFS # | CFS Type | Report Req. | Caller Name Caller Phone | Priority | Source | Entered by | Location | ORIs |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/20/2019 20:45:03 | 12/20/2019 20:49:21 | 12/20/2019 20:54:01 | 11877 | 25 | No | MFH, OPER 8772857397 | 2 | Telephone | CMB \EMGTTelN | 311 WASHINGTON AVE, Miami Beach | 01012, FL0130700 |
| 12/27/2019 21:02:27 | 12/27/2019 21:05:25 | 12/27/2019 21:07:22 | 15842 | 329 | No | PACHECO, DEIRRY | 1 | 911 Call | system | 720 MERIDIAN AVE, Miami Beach | 01012, FL0130700 |
| 01/01/2020 17:05:58 | 01/01/2020 17:05:59 | 01/01/2020 17:05:59 | 19376 | 14 | No | | 4 | Officer Initiated | CMB \EMGTHanT | 1100 WASHINGTON AVE, Miami Beach | 01012, FL0130700 |
| 01/03/2020 21:11:34 | 01/03/2020 21:11:34 | 01/03/2020 21:11:34 | 20947 | 14 | No | | 4 | Officer Initiated | CMB \EMGTMajR | 300 ALTON RD, Miami Beach | 01012, FL0130700 |
| 01/09/2020 10:06:33 | 01/09/2020 10:06:33 | 01/09/2020 10:06:33 | 24402 | 14 | No | | 4 | Officer Initiated | CMB \EMGTGuyT | 1821 W 27TH ST, Miami Beach | 01012, FL0130700 |
| 01/10/2020 16:18:59 | 01/10/2020 16:18:59 | 01/10/2020 16:18:59 | 303 | 14 | No | | 4 | Officer Initiated | CMB \EMGTMajR | MAC CAUSEWAY | FL0130700 |
| 01/10/2020 16:25:03 | 01/10/2020 16:25:52 | 01/10/2020 16:27:20 | 308 | 317E | No | | 1 | 911 Call | system | 6TH ST \ MICHIGAN AVE, Miami Beach | 01012, FL0130700 |

**Start Date/Time:** 10/22/2019 00:00:00

**End Date/Time:** 03/22/2020 23:59:59

# Daily CFS Detail

| Created Date/Time | Dispatched Date/Time | Arrived Date/Time | CFS # | CFS Type | Report Req. | Caller Name / Caller Phone | Priority | Source | Entered by | Location | ORIs |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 01/10/2020 17:47:40 | 01/10/2020 17:55:04 | | 379 | 38 | No | | 3 | 911 Call | system | 535 15TH ST 2, Miami Beach | 01012, FL0130700 |
| 01/30/2020 16:09:23 | 01/30/2020 16:09:23 | 01/30/2020 16:09:23 | 13447 | 38 | No | | 3 | Officer Initiated | CMB \EMGTChrJ | 1901 CONVENTION CENTER DR, Miami Beach | 01012, FL0130700 |
| 02/01/2020 19:49:01 | 02/01/2020 19:49:01 | 02/01/2020 19:49:01 | 15516 | 36 | No | | 3 | Officer Initiated | CMB \EMGTMajR | 1901 CONVENTION CENTER DR, Miami Beach | 01012, FL0130700 |
| 02/05/2020 22:07:15 | 02/05/2020 22:07:15 | 02/05/2020 22:07:15 | 18616 | 14 | No | | 4 | Officer Initiated | CMB \EMGTChrJ | 1400 NE 1ST AVE BLK | FL0130700 |
| 02/07/2020 17:15:57 | 02/07/2020 17:15:58 | 02/07/2020 17:15:58 | 19793 | 22 | No | | 4 | Officer Initiated | CMB \EMGTChrJ | 1288 COLLINS AVE, Miami Beach | 01012, FL0130700 |
| 02/11/2020 20:48:24 | 02/11/2020 20:48:24 | 02/11/2020 20:48:24 | 22476 | 14 | No | | 4 | Officer Initiated | CMB \EMGTMajR | 1100 5TH ST blk, Miami Beach | 01012, FL0130700 |
| 02/11/2020 21:19:05 | 02/11/2020 21:21:59 | 02/11/2020 21:23:06 | 22488 | 43 | No | -RESIDENT, MIKE | 3 | 911 Call | system | 1428 EUCLID AVE, Miami Beach | 01012, FL0130700 |

**Start Date/Time:** 10/22/2019 00:00:00

**End Date/Time:** 03/22/2020 23:59:59

# Daily CFS Detail

| Created Date/Time | Dispatched Date/Time | Arrived Date/Time | CFS # | CFS Type | Report Req. | Caller Name Caller Phone | Priority | Source |
|---|---|---|---|---|---|---|---|---|
| 02/12/2020 18:35:36 | 02/12/2020 18:41:06 | 02/12/2020 18:50:12 | 23070 | 17 | No | 3057999420 | 4 | Telephone |
| **Entered by:** CMB \EMGTCunA | | **Location:** 14TH ST \ ALTON RD, Miami Beach | | | | **ORIs:** 01012, FL0130700 | | |
| 02/12/2020 19:55:17 | 02/12/2020 19:55:17 | 02/12/2020 19:55:17 | 23105 | 19 | No | | 2 | Officer Initiated |
| **Entered by:** CMB \EMGTHanT | | **Location:** 11TH ST \ ALTON RD, Miami Beach | | | | **ORIs:** 01012, FL0130700 | | |
| 02/18/2020 17:00:36 | 02/18/2020 17:02:47 | 02/18/2020 17:11:00 | 2069 | WATEREMER | No | CALLER, FEMALE 7862163333 | 1 | Telephone |
| **Entered by:** CMB \EMGTGarV | | **Location:** 190 MAC ARTHUR CSWY EB, Miami Beach | | | | **ORIs:** 01012, FL0130700 | | |
| 02/18/2020 22:54:36 | 02/18/2020 22:54:36 | 02/18/2020 22:54:36 | 2248 | 26 | No | | 5 | Officer Initiated |
| **Entered by:** CMB \EMGTTayC | | **Location:** 100 MAC ARTHUR CSWY WB | | | | **ORIs:** FL0130700 | | |
| 02/19/2020 20:32:31 | 02/19/2020 20:33:30 | 02/19/2020 20:39:46 | 2893 | 34 | No | | 3 | 911 Call |
| **Entered by:** system | | **Location:** 1504 BAY RD, Miami Beach | | | | **ORIs:** 01012, FL0130700 | | |
| 02/26/2020 19:48:03 | 02/26/2020 20:27:35 | 02/26/2020 20:35:28 | 7766 | 25 | No | OPER4670, CENTRAL 8006332677 | 2 | Telephone |
| **Entered by:** CMB \EMGTCunA | | **Location:** 37 STAR ISLAND DR, Miami Beach | | | | **ORIs:** 01012, FL0130700 | | |
| 02/26/2020 20:02:37 | 02/26/2020 20:26:42 | 02/26/2020 20:28:27 | 7773 | 34 | No | 3056722395 | 3 | Telephone |
| **Entered by:** CMB \EMGTMicA | | **Location:** 1443 ALTON RD, Miami Beach | | | | **ORIs:** 01012, FL0130700 | | |
| 02/26/2020 20:42:13 | 02/26/2020 20:52:49 | 02/26/2020 20:56:23 | 7784 | 34 | No | 3059682663 | 3 | Telephone |

**Start Date/Time:** 10/22/2019 00:00:00

**End Date/Time:** 03/22/2020 23:59:59

# Daily CFS Detail

| Created Date/Time | Dispatched Date/Time | Arrived Date/Time | CFS # | CFS Type | Report Req. | Caller Name Caller Phone | Priority | Source |
|---|---|---|---|---|---|---|---|---|
| **Entered by:** CMB \EMGTGarV | | **Location:** 1321 14TH TER, Miami Beach | | | | **ORIs:** 01012, FL0130700 | | |
| [illegible] | | | | | | | | |
| 03/05/2020 09:32:24 | 03/05/2020 09:34:43 | 03/05/2020 09:36:16 | 12520 | 14 | No | | 4 | 911 Call |
| **Entered by:** system | | **Location:** 1501 COLLINS AVE, Miami Beach | | | | **ORIs:** 01012, FL0130700 | | |
| [illegible] | | | | | | | | |
| 03/10/2020 10:02:23 | 03/10/2020 10:02:23 | 03/10/2020 10:02:23 | 16287 | 14 | No | | 4 | Officer Initiated |
| **Entered by:** CMB \EMGTRamR | | **Location:** 1061 MICHIGAN AVE, Miami Beach | | | | **ORIs:** 01012, FL0130700 | | |
| [illegible] | | | | | | | | |
| 03/12/2020 17:00:58 | 03/12/2020 17:02:13 | 03/12/2020 17:03:37 | 18108 | 315 | No | | 1 | Telephone |
| **Entered by:** CMB PINGSanR | | **Location:** 1330 PENNSYLVANIA AVE, Miami Beach | | | | **ORIs:** 01012, FL0130700 | | |
| [illegible] | | | | | | | | |

# APPENDIX

# D

Miami Beach
Radio Log
Jessica Salabarria

**Start Date/Time:** 10/22/2019 00:00:00

**End Date/Time:** 03/23/2020 23:59:59

# Officer Activity Report

**Agency:** FL0130700 - Miami Beach Police Department **Units:** ALL **Personnel:** Salabarria, Jessica - 1023

| **Statuses:** | | | | | |
|---|---|---|---|---|---|
| | **SL:** | 0h 50m 22s | 0.02 % | **Total Statuses:** | 233 |
| | **SA:** | 2h 41m 04s | 0.07 % | **Total Dispatches:** | 19 |
| | **SD:** | 453h 11m 40s | 12.27 % | **Total Busy:** | 214 |
| | **OL:** | 8h 17m 53s | 0.23 % | **Total Traffic Stops:** | 0 |
| | **05:** | 19h 16m 28s | 0.52 % | **Total Time:** | 153 Days 20 Hours 42 Minutes 54 Seconds |
| | **10:** | 17h 08m 53s | 0.46 % | | |
| | **06:** | 2930h 21m 26s | 79.36 % | | |
| | **EN:** | 8h 04m 41s | 0.22 % | | |
| | **DI:** | 5h 48m 57s | 0.16 % | | |
| | **09:** | 219h 30m 14s | 5.94 % | | |
| | **AR:** | 27h 31m 16s | 0.75 % | | |
| | **Total:** | 3692h 42m 54s | 100.00 % | | |

| Activity Date/Time | Unit # | Badge # | Status | Incident #/ Plate | Unit Location | Nature Of Call |
|---|---|---|---|---|---|---|
| 10/22/2019 14:59:55 | 1023 | 1023 | 09 | | | |
| 10/22/2019 15:00:24 | 1023 | 1023 | SD | | | |
| 10/22/2019 15:24:44 | 1023 | 1023 | AR | 2019-00094126 / IUYX53 | | |
| 10/22/2019 15:24:44 | 1023 | 1023 | AR | 2019-00094126 / IUYX53 | | |
| 10/22/2019 15:38:00 | 1023 | 1023 | 09 | 2019-00094126 / IUYX53 | | |
| 10/22/2019 16:35:15 | 1023 | 1023 | SD | | | |
| 10/23/2019 00:16:30 | 1023 | 1023 | 06 | | | |
| 10/23/2019 15:13:10 | 1023 | 1023 | 09 | | | |
| 10/23/2019 18:08:05 | 1023 | 1023 | SD | | | |
| 10/24/2019 00:55:47 | 1023 | 1023 | 06 | | | |
| 10/25/2019 15:29:38 | 1023 | 1023 | 09 | | | |
| 10/25/2019 5:32:20 | 1023 | 1023 | SD | | | |
| 10/25/2019 22:05:23 | 1023 | 1023 | 09 | | | |

**Start Date/Time:** 10/22/2019 00:00:00

**End Date/Time:** 03/23/2020 23:59:59

# Officer Activity Report

| Activity Date/Time | Unit # | Badge # | Status | Incident #/ Plate | Unit Location | Nature Of Call |
|---|---|---|---|---|---|---|
| 10/25/2019 22:13:44 | 1023 | 1023 | 06 | | | |
| 10/28/2019 22:39:34 | 1023 | 1023 | 09 | | | |
| 10/29/2019 00:43:58 | 1023 | 1023 | SD | | | |
| 10/29/2019 01:37:20 | 1023 | 1023 | 06 | | | |
| 10/30/2019 16:03:40 | 1023 | 1023 | 09 | | | |
| 10/30/2019 16:03:47 | 1023 | 1023 | SD | | | |
| 10/30/2019 21:19:06 | 1023 | 1023 | EN | | | |
| 10/30/2019 21:19:06 | 1023 | 1023 | EN | | | |
| 10/30/2019 22:18:11 | 1023 | 1023 | 09 | | | |
| 10/31/2019 00:17:12 | 1023 | 1023 | 06 | | | |
| 10/31/2019 14:40:30 | 1023 | 1023 | 09 | | | |
| 10/31/2019 16:12:11 | 1023 | 1023 | SD | | | |
| 11/01/2019 02:49:18 | 1023 | 1023 | 06 | | | |
| 11/01/2019 15:10:49 | 1023 | 1023 | 09 | | | |
| 11/01/2019 15:13:18 | 1023 | 1023 | SD | | | |
| 11/01/2019 15:35:36 | 1023 | 1023 | 09 | | | |
| 11/01/2019 15:35:52 | 1023 | 1023 | 10 | | | |
| 11/01/2019 16:18:39 | 1023 | 1023 | 09 | | | |
| 11/01/2019 16:27:04 | 1023 | 1023 | SD | | | |
| 11/01/2019 19:43:16 | 1023 | 1023 | 05 | | | |
| 11/01/2019 19:53:14 | 1023 | 1023 | 09 | | | |
| 11/01/2019 19:53:18 | 1023 | 1023 | SD | | | |
| 11/02/2019 00:22:09 | 1023 | 1023 | 06 | | | |

**Start Date/Time:** 10/22/2019 00:00:00

**End Date/Time:** 03/23/2020 23:59:59

# Officer Activity Report

| Activity Date/Time | Unit # | Badge # | Status | Incident #/ Plate | Unit Location | Nature Of Call |
|---|---|---|---|---|---|---|
| 11/05/2019 15:21:43 | 1023 | 1023 | 09 | | | |
| 11/05/2019 15:21:50 | 1023 | 1023 | SD | | | |
| 11/05/2019 15:45:28 | 1023 | 1023 | 10 | | | |
| 11/05/2019 17:08:34 | 1023 | 1023 | 09 | | | |
| 11/05/2019 17:46:35 | 1023 | 1023 | SD | | | |
| 11/06/2019 00:16:12 | 1023 | 1023 | 06 | | | |
| 11/06/2019 15:58:00 | 1023 | 1023 | 09 | | | |
| 11/06/2019 15:58:14 | 1023 | 1023 | SD | | | |
| 11/06/2019 19:52:47 | 1023 | 1023 | DI | | 05 - 2129H | |
| 11/06/2019 19:52:50 | 1023 | 1023 | EN | | 05 - 2129H | |
| 11/06/2019 21:31:12 | 1023 | 1023 | AR | | 05 - 2129H | |
| 11/06/2019 21:31:16 | 1023 | 1023 | SA | | 05 - 2129H | |
| 11/07/2019 00:12:20 | 1023 | 1023 | 09 | | 05 - 2129H | |
| 11/07/2019 00:30:27 | 1023 | 1023 | 06 | | | |
| 11/07/2019 15:53:11 | 1023 | 1023 | 09 | | | |
| 11/07/2019 15:55:35 | 1023 | 1023 | SD | | | |
| 11/08/2019 00:28:47 | 1023 | 1023 | 06 | | | |
| 11/08/2019 14:31:35 | 1023 | 1023 | 09 | | | |
| 11/08/2019 14:31:46 | 1023 | 1023 | 05 | | | |
| 11/08/2019 15:27:30 | 1023 | 1023 | 09 | | | |
| 11/08/2019 15:39:25 | 1023 | 1023 | SD | | | |
| 11/08/2019 [illegible]:02:52 | 1023 | 1023 | DI | | | |
| 11/08/2019 20:08:27 | 1023 | 1023 | EN | | | |

**Start Date/Time:** 10/22/2019 00:00:00

**End Date/Time:** 03/23/2020 23:59:59

# Officer Activity Report

| Activity Date/Time | Unit # | Badge # | Status | Incident #/ Plate | Unit Location | Nature Of Call |
|---|---|---|---|---|---|---|
| 11/08/2019 20:17:45 | 1023 | 1023 | AR | | | |
| 11/08/2019 21:37:57 | 1023 | 1023 | 09 | | | |
| 11/08/2019 21:38:19 | 1023 | 1023 | SD | | | |
| 11/08/2019 22:15:08 | 1023 | 1023 | 09 | | | |
| 11/08/2019 23:11:05 | 1023 | 1023 | AR | | | |
| 11/08/2019 23:11:05 | 1023 | 1023 | AR | | | |
| 11/08/2019 23:38:41 | 1023 | 1023 | 09 | | | |
| 11/09/2019 00:02:14 | 1023 | 1023 | SD | | | |
| 11/09/2019 00:20:27 | 1023 | 1023 | 06 | | | |
| 11/12/2019 18:35:17 | 1023 | 1023 | 09 | | | |
| 11/12/2019 18:35:23 | 1023 | 1023 | SD | | | |
| 11/12/2019 22:14:24 | 1023 | 1023 | 09 | | | |
| 11/13/2019 00:20:37 | 1023 | 1023 | 06 | | | |
| 11/13/2019 15:20:53 | 1023 | 1023 | 09 | | | |
| 11/13/2019 15:21:05 | 1023 | 1023 | SD | | | |
| 11/13/2019 20:11:46 | 1023 | 1023 | AR | 2019-00101274 / | | |
| 11/13/2019 20:11:46 | 1023 | 1023 | AR | 2019-00101274 / | | |
| 11/13/2019 20:12:18 | 1023 | 1023 | 09 | 2019-00101274 / | | |
| 11/13/2019 21:16:21 | 1023 | 1023 | SD | | | |
| 11/14/2019 01:47:20 | 1023 | 1023 | 09 | | | |
| 11/14/2019 06:15:18 | 1023 | 1023 | 06 | | | |
| 11/14/2019 15:47:16 | 1023 | 1023 | 09 | | | |
| 11/14/2019 15:47:31 | 1023 | 1023 | SD | | | |

**Start Date/Time:** 10/22/2019 00:00:00

**End Date/Time:** 03/23/2020 23:59:59

# Officer Activity Report

| Activity Date/Time | Unit # | Badge # | Status | Incident #/ Plate | Unit Location | Nature Of Call |
|---|---|---|---|---|---|---|
| 11/14/2019 17:23:59 | 1023 | 1023 | AR | 2019-00101527 / | | |
| 11/14/2019 17:23:59 | 1023 | 1023 | AR | 2019-00101527 / | | |
| 11/14/2019 17:29:45 | 1023 | 1023 | 09 | 2019-00101527 / | | |
| 11/14/2019 17:30:10 | 1023 | 1023 | SD | | | |
| 11/15/2019 00:14:51 | 1023 | 1023 | 06 | | | |
| 11/19/2019 15:20:42 | 1023 | 1023 | 09 | | | |
| 11/19/2019 15:20:47 | 1023 | 1023 | SD | | | |
| 11/19/2019 18:13:52 | 1023 | 1023 | 10 | | | |
| 11/19/2019 19:58:18 | 1023 | 1023 | 09 | | | |
| 1/19/2019 9:58:26 | 1023 | 1023 | SD | | | |
| 11/20/2019 00:22:41 | 1023 | 1023 | 06 | | | |
| 11/20/2019 15:21:33 | 1023 | 1023 | 09 | | | |
| 11/20/2019 15:21:39 | 1023 | 1023 | SD | | | |
| 11/20/2019 21:35:34 | 1023 | 1023 | DI | / LWZD65 | | |
| 11/20/2019 21:35:37 | 1023 | 1023 | EN | / LWZD65 | | |
| 11/20/2019 22:23:32 | 1023 | 1023 | 09 | / LWZD65 | | |
| 11/21/2019 00:13:18 | 1023 | 1023 | 06 | | | |
| 11/26/2019 15:28:11 | 1023 | 1023 | 09 | | | |
| 11/26/2019 16:23:43 | 1023 | 1023 | SD | | | |
| 11/26/2019 18:36:58 | 1023 | 1023 | AR | 2019-00105233 / KGCT03 | | |
| 11/26/2019 18:36:58 | 1023 | 1023 | AR | 2019-00105233 / KGCT03 | | |
| 1/26/2019 :46:17 | 1023 | 1023 | 09 | 2019-00105233 / KGCT03 | | |
| 11/27/2019 00:17:36 | 1023 | 1023 | 06 | | | |

**Start Date/Time:** 10/22/2019 00:00:00

**End Date/Time:** 03/23/2020 23:59:59

# Officer Activity Report

| Activity Date/Time | Unit # | Badge # | Status | Incident #/ Plate | Unit Location | Nature Of Call |
|---|---|---|---|---|---|---|
| 11/27/2019 15:32:33 | 1023 | 1023 | 09 | | | |
| 11/27/2019 15:46:35 | 1023 | 1023 | SD | | | |
| 11/28/2019 00:00:53 | 1023 | 1023 | 09 | | | |
| 11/28/2019 00:16:50 | 1023 | 1023 | 06 | | | |
| 11/28/2019 14:32:29 | 1023 | 1023 | 09 | | | |
| 11/28/2019 14:32:36 | 1023 | 1023 | 05 | | | |
| 11/28/2019 15:13:47 | 1023 | 1023 | 09 | | | |
| 11/28/2019 16:50:31 | 1023 | 1023 | DI | | | |
| 11/28/2019 18:57:25 | 1023 | 1023 | 09 | | | |
| 11/29/2019 00:20:29 | 1023 | 1023 | SD | | | |
| 11/29/2019 06:17:06 | 1023 | 1023 | 06 | | | |
| 12/03/2019 15:18:53 | 1023 | 1023 | 09 | | | |
| 12/03/2019 15:31:14 | 1023 | 1023 | SD | | | |
| 12/03/2019 22:14:47 | 1023 | 1023 | 09 | | | |
| 12/04/2019 00:17:27 | 1023 | 1023 | 06 | | | |
| 12/04/2019 14:30:22 | 1023 | 1023 | 09 | | | |
| 12/04/2019 14:30:26 | 1023 | 1023 | 05 | | | |
| 12/04/2019 15:43:43 | 1023 | 1023 | 09 | | | |
| 12/04/2019 15:43:52 | 1023 | 1023 | SD | | | |
| 12/05/2019 00:15:50 | 1023 | 1023 | 06 | | | |
| 12/05/2019 14:29:52 | 1023 | 1023 | 09 | | | |
| 12/05/2019 ?9:32:51 | 1023 | 1023 | DI | | | |
| 12/05/2019 19:45:10 | 1023 | 1023 | AR | | | |

Start Date/Time: 10/22/2019 00:00:00

End Date/Time: 03/23/2020 23:59:59

# Officer Activity Report

| Activity Date/Time | Unit # | Badge # | Status | Incident #/ Plate | Unit Location | Nature Of Call |
|---|---|---|---|---|---|---|
| 12/05/2019 22:21:54 | 1023 | 1023 | 09 | | | |
| 12/06/2019 00:17:44 | 1023 | 1023 | 06 | | | |
| 12/10/2019 14:41:30 | 1023 | 1023 | 09 | | | |
| 12/10/2019 14:41:38 | 1023 | 1023 | 05 | | | |
| 12/10/2019 15:16:04 | 1023 | 1023 | 09 | | | |
| 12/10/2019 15:16:12 | 1023 | 1023 | SD | | | |
| 12/10/2019 18:10:33 | 1023 | 1023 | DI | | 9TH ST & ALTON RD | |
| 12/10/2019 18:23:48 | 1023 | 1023 | AR | | 9TH ST & ALTON RD | |
| 12/10/2019 20:08:24 | 1023 | 1023 | 09 | | 9TH ST & ALTON RD | |
| 12/10/2019 20:13:09 | 1023 | 1023 | SD | | | |
| 12/11/2019 00:21:14 | 1023 | 1023 | 06 | | | |
| 12/11/2019 15:35:02 | 1023 | 1023 | 09 | | | |
| 12/11/2019 15:35:09 | 1023 | 1023 | SD | | | |
| 12/11/2019 17:44:28 | 1023 | 1023 | 06 | | | |
| 12/11/2019 17:44:30 | 1023 | 1023 | 09 | | | |
| 12/11/2019 17:44:39 | 1023 | 1023 | SD | | | |
| 12/11/2019 22:11:33 | 1023 | 1023 | 09 | | | |
| 12/12/2019 00:20:35 | 1023 | 1023 | 06 | | | |
| 12/12/2019 15:54:40 | 1023 | 1023 | 09 | | | |
| 12/12/2019 15:54:44 | 1023 | 1023 | SD | | | |
| 12/12/2019 22:52:09 | 1023 | 1023 | 06 | | | |
| 12/17/2019 1:33:45 | 1023 | 1023 | 09 | | | |
| 12/17/2019 17:05:44 | 1023 | 1023 | SD | | | |

Start Date/Time: 10/22/2019 00:00:00

End Date/Time: 03/23/2020 23:59:59

# Officer Activity Report

| Activity Date/Time | Unit # | Badge # | Status | Incident #/ Plate | Unit Location | Nature Of Call |
|---|---|---|---|---|---|---|
| 12/18/2019 00:18:13 | 1023 | 1023 | 06 | | | |
| 12/18/2019 15:35:26 | 1023 | 1023 | 09 | | | |
| 12/18/2019 15:35:38 | 1023 | 1023 | SD | | | |
| 12/18/2019 22:11:08 | 1023 | 1023 | 09 | | | |
| 12/18/2019 23:11:58 | 1023 | 1023 | SD | | | |
| 12/18/2019 23:40:57 | 1023 | 1023 | 09 | | | |
| 12/19/2019 00:31:19 | 1023 | 1023 | 06 | | | |
| 12/19/2019 16:14:20 | 1023 | 1023 | 09 | | | |
| 12/19/2019 16:28:21 | 1023 | 1023 | SD | | | |
| 12/19/2019 22:52:56 | 1023 | 1023 | AR | | | |
| 12/19/2019 22:52:56 | 1023 | 1023 | AR | | | |
| 12/20/2019 00:22:24 | 1023 | 1023 | 09 | | | |
| 12/20/2019 00:22:34 | 1023 | 1023 | 06 | | | |
| 12/20/2019 15:23:45 | 1023 | 1023 | 09 | | | |
| 12/20/2019 15:23:52 | 1023 | 1023 | SD | | | |
| 12/20/2019 20:49:25 | 1023 | 1023 | DI | | | |
| 12/20/2019 20:49:28 | 1023 | 1023 | EN | | | |
| 12/20/2019 20:51:47 | 1023 | 1023 | 09 | | | |
| 12/20/2019 20:51:55 | 1023 | 1023 | SD | | | |
| 12/20/2019 22:08:31 | 1023 | 1023 | 09 | | | |
| 12/21/2019 00:05:44 | 1023 | 1023 | SD | | | |
| 12/21/2019 00:14:52 | 1023 | 1023 | 06 | | | |
| 12/26/2019 14:32:34 | 1023 | 1023 | 09 | | | |

Start Date/Time: 10/22/2019 00:00:00

End Date/Time: 03/23/2020 23:59:59

# Officer Activity Report

| Activity Date/Time | Unit # | Badge # | Status | Incident #/ Plate | Unit Location | Nature Of Call |
|---|---|---|---|---|---|---|
| 12/26/2019 14:32:42 | 1023 | 1023 | 05 | | | |
| 12/26/2019 15:21:47 | 1023 | 1023 | 09 | | | |
| 12/26/2019 15:21:53 | 1023 | 1023 | SD | | | |
| 12/27/2019 00:15:44 | 1023 | 1023 | 06 | | | |
| 12/27/2019 14:37:10 | 1023 | 1023 | 09 | | | |
| 12/27/2019 14:37:14 | 1023 | 1023 | 05 | | | |
| 12/27/2019 15:44:13 | 1023 | 1023 | 09 | | | |
| 12/27/2019 17:38:38 | 1023 | 1023 | SD | | | |
| 12/27/2019 21:06:01 | 1023 | 1023 | DI | | | |
| 12/27/2019 23:17:31 | 1023 | 1023 | 09 | | | |
| 12/27/2019 23:17:37 | 1023 | 1023 | SD | | | |
| 12/28/2019 00:16:13 | 1023 | 1023 | 06 | | | |
| 12/31/2019 17:04:12 | 1023 | 1023 | 09 | | | |
| 12/31/2019 17:04:16 | 1023 | 1023 | SD | | | |
| 01/01/2020 00:18:32 | 1023 | 1023 | 06 | | | |
| 01/01/2020 14:35:49 | 1023 | 1023 | 09 | | | |
| 01/01/2020 14:37:12 | 1023 | 1023 | SD | | | |
| 01/01/2020 17:05:59 | 1023 | 1023 | AR | 2020-00000236 / | | |
| 01/01/2020 17:05:59 | 1023 | 1023 | AR | 2020-00000236 / | | |
| 01/01/2020 19:17:05 | 1023 | 1023 | 09 | 2020-00000236 / | | |
| 01/01/2020 19:22:15 | 1023 | 1023 | SD | | | |
| 01/02/2020 0:14:33 | 1023 | 1023 | 06 | | | |
| 01/02/2020 15:14:50 | 1023 | 1023 | 09 | | | |

Start Date/Time: 10/22/2019 00:00:00

End Date/Time: 03/23/2020 23:59:59

# Officer Activity Report

| Activity Date/Time | Unit # | Badge # | Status | Incident #/ Plate | Unit Location | Nature Of Call |
|---|---|---|---|---|---|---|
| 01/02/2020 15:14:56 | 1023 | 1023 | 05 | | | |
| 01/02/2020 16:58:22 | 1023 | 1023 | 09 | | | |
| 01/02/2020 16:58:33 | 1023 | 1023 | SD | | | |
| 01/03/2020 00:14:22 | 1023 | 1023 | 06 | | | |
| 01/03/2020 16:15:27 | 1023 | 1023 | 09 | | | |
| 01/03/2020 16:15:31 | 1023 | 1023 | SD | | | |
| 01/03/2020 21:30:13 | 1023 | 1023 | AR | | | |
| 01/03/2020 21:30:13 | 1023 | 1023 | AR | | | |
| 01/03/2020 22:20:31 | 1023 | 1023 | AR | | | |
| 01/03/2020 23:28:10 | 1023 | 1023 | 09 | | | |
| 01/04/2020 00:14:17 | 1023 | 1023 | 06 | | | |
| 01/07/2020 14:44:34 | 1023 | 1023 | 09 | | | |
| 01/07/2020 14:44:38 | 1023 | 1023 | 05 | | | |
| 01/07/2020 16:47:21 | 1023 | 1023 | 09 | | | |
| 01/07/2020 16:47:27 | 1023 | 1023 | SD | | | |
| 01/07/2020 22:34:10 | 1023 | 1023 | 09 | | | |
| 01/08/2020 00:16:07 | 1023 | 1023 | 06 | | | |
| 01/08/2020 14:32:38 | 1023 | 1023 | 09 | | | |
| 01/08/2020 14:32:42 | 1023 | 1023 | 05 | | | |
| 01/08/2020 16:16:31 | 1023 | 1023 | 09 | | | |
| 01/08/2020 16:16:40 | 1023 | 1023 | SD | | | |
| 01/09/2020 00:16:16 | 1023 | 1023 | 06 | | | |
| 01/09/2020 10:06:33 | 1023 | 1023 | 09 | | | |

**Start Date/Time:** 10/22/2019 00:00:00

**End Date/Time:** 03/23/2020 23:59:59

# Officer Activity Report

| Activity Date/Time | Unit # | Badge # | Status | Incident #/ Plate | Unit Location | Nature Of Call |
|---|---|---|---|---|---|---|
| 01/09/2020 10:06:33 | 1023 | 1023 | AR | | | |
| 01/09/2020 10:06:33 | 1023 | 1023 | AR | | | |
| 01/09/2020 11:20:28 | 1023 | 1023 | 09 | | | |
| 01/09/2020 11:20:32 | 1023 | 1023 | 06 | | | |
| 01/09/2020 11:24:49 | 1023 | 1023 | 09 | | | |
| 01/09/2020 11:24:50 | 1023 | 1023 | 06 | | | |
| 01/09/2020 15:20:29 | 1023 | 1023 | 09 | | | |
| 01/09/2020 15:20:36 | 1023 | 1023 | OL | | | |
| 01/09/2020 16:15:58 | 1023 | 1023 | 09 | | | |
| [illegible]1/09/2020 [illegible]2:36:32 | 1023 | 1023 | SD | | | |
| 01/10/2020 00:18:26 | 1023 | 1023 | 06 | | | |
| 01/10/2020 15:24:14 | 1023 | 1023 | 09 | | | |
| 01/10/2020 15:24:21 | 1023 | 1023 | OL | | | |
| 01/10/2020 16:18:59 | 1023 | 1023 | AR | 2020-00003111 / | | |
| 01/10/2020 16:18:59 | 1023 | 1023 | AR | 2020-00003111 / | | |
| 01/10/2020 16:26:49 | 1023 | 1023 | 09 | 2020-00003111 / | | |
| 01/10/2020 16:26:52 | 1023 | 1023 | DI | | | |
| 01/10/2020 16:26:57 | 1023 | 1023 | EN | | | |
| 01/10/2020 17:54:53 | 1023 | 1023 | 09 | | | |
| 01/10/2020 17:55:04 | 1023 | 1023 | EN | | | |
| 01/10/2020 17:55:04 | 1023 | 1023 | EN | | | |
| [illegible]1/10/2020 [illegible]:56:24 | 1023 | 1023 | 09 | | | |
| 01/10/2020 18:05:18 | 1023 | 1023 | SD | | | |

**Start Date/Time:** 10/22/2019 00:00:00

**End Date/Time:** 03/23/2020 23:59:59

# Officer Activity Report

| Activity Date/Time | Unit # | Badge # | Status | Incident #/ Plate | Unit Location | Nature Of Call |
|---|---|---|---|---|---|---|
| 01/11/2020 00:15:19 | 1023 | 1023 | 06 | | | |
| 01/14/2020 15:05:08 | 1023 | 1023 | 09 | | | |
| 01/14/2020 15:05:10 | 1023 | 1023 | OL | | | |
| 01/14/2020 16:57:03 | 1023 | 1023 | 09 | | | |
| 01/14/2020 17:10:23 | 1023 | 1023 | 10 | | | |
| 01/14/2020 17:36:22 | 1023 | 1023 | 09 | | | |
| 01/14/2020 17:54:24 | 1023 | 1023 | SD | | | |
| 01/14/2020 17:54:38 | 1023 | 1023 | 06 | | | |
| 01/23/2020 06:36:29 | 1023 | 1023 | 09 | | | |
| 01/23/2020 08:00:24 | 1023 | 1023 | 10 | | | |
| 01/23/2020 09:46:10 | 1023 | 1023 | 09 | | | |
| 01/23/2020 19:52:54 | 1023 | 1023 | 06 | | | |
| 01/25/2020 08:55:27 | 1023 | 1023 | 09 | | | |
| 01/25/2020 08:56:37 | 1023 | 1023 | SD | | | |
| 01/25/2020 19:11:06 | 1023 | 1023 | 06 | | | |
| 01/26/2020 11:35:37 | 1023 | 1023 | 09 | | | |
| 01/26/2020 20:34:38 | 1023 | 1023 | 06 | | | |
| 01/28/2020 12:17:43 | 1023 | 1023 | 09 | | | |
| 01/29/2020 05:55:27 | 1023 | 1023 | 06 | | | |
| 01/30/2020 16:09:36 | 1023 | 1023 | EN | | | |
| 01/30/2020 16:09:36 | 1023 | 1023 | EN | | | |
| 01/30/2020 16:11:53 | 1023 | 1023 | 09 | | | |
| 01/30/2020 23:33:53 | 1023 | 1023 | 06 | | | |

Start Date/Time: 10/22/2019 00:00:00

End Date/Time: 03/23/2020 23:59:59

# Officer Activity Report

| Activity Date/Time | Unit # | Badge # | Status | Incident #/ Plate | Unit Location | Nature Of Call |
|---|---|---|---|---|---|---|
| 02/01/2020 20:00:41 | 1023 | 1023 | AR | | | |
| 02/01/2020 20:00:41 | 1023 | 1023 | AR | | | |
| 02/01/2020 20:22:17 | 1023 | 1023 | 09 | | | |
| 02/02/2020 00:17:10 | 1023 | 1023 | 06 | | | |
| 02/04/2020 16:08:47 | 1023 | 1023 | 09 | | | |
| 02/04/2020 16:31:24 | 1023 | 1023 | SD | | | |
| 02/05/2020 00:15:05 | 1023 | 1023 | 06 | | | |
| 02/05/2020 15:59:12 | 1023 | 1023 | 09 | | | |
| 02/05/2020 22:21:28 | 1023 | 1023 | EN | | | |
| 02/05/2020 22:21:28 | 1023 | 1023 | EN | | | |
| 02/05/2020 22:42:48 | 1023 | 1023 | AR | | | |
| 02/06/2020 00:16:14 | 1023 | 1023 | 09 | | | |
| 02/06/2020 00:16:15 | 1023 | 1023 | 06 | | | |
| 02/06/2020 17:05:19 | 1023 | 1023 | 09 | | | |
| 02/06/2020 17:59:43 | 1023 | 1023 | SD | | | |
| 02/07/2020 00:21:48 | 1023 | 1023 | 06 | | | |
| 02/07/2020 15:37:15 | 1023 | 1023 | 09 | | | |
| 02/07/2020 15:37:23 | 1023 | 1023 | OL | | | |
| 02/07/2020 16:41:48 | 1023 | 1023 | 09 | | | |
| 02/07/2020 16:42:11 | 1023 | 1023 | SD | | | |
| 02/07/2020 17:15:58 | 1023 | 1023 | AR | / LZZU791 | | |
| 02/07/2020 17:15:58 | 1023 | 1023 | AR | / LZZU791 | | |
| 02/07/2020 18:40:04 | 1023 | 1023 | 09 | / LZZU791 | | |

Start Date/Time: 10/22/2019 00:00:00

End Date/Time: 03/23/2020 23:59:59

# Officer Activity Report

| Activity Date/Time | Unit # | Badge # | Status | Incident #/ Plate | Unit Location | Nature Of Call |
|---|---|---|---|---|---|---|
| 02/07/2020 18:40:14 | 1023 | 1023 | 05 | | | |
| 02/07/2020 19:12:43 | 1023 | 1023 | 10 | | | |
| 02/07/2020 20:50:38 | 1023 | 1023 | 09 | | | |
| 02/08/2020 00:37:12 | 1023 | 1023 | 06 | | | |
| 02/11/2020 15:20:03 | 1023 | 1023 | 09 | | | |
| 02/11/2020 15:20:07 | 1023 | 1023 | OL | | | |
| 02/11/2020 16:16:02 | 1023 | 1023 | 09 | | | |
| 02/11/2020 16:16:45 | 1023 | 1023 | SD | | | |
| 02/11/2020 20:51:53 | 1023 | 1023 | DI | | | |
| 2/11/2020 1:00:35 | 1023 | 1023 | 09 | | | |
| 02/11/2020 21:00:48 | 1023 | 1023 | SD | | | |
| 02/11/2020 21:28:33 | 1023 | 1023 | DI | | | |
| 02/11/2020 21:32:46 | 1023 | 1023 | AR | | | |
| 02/11/2020 21:42:39 | 1023 | 1023 | 09 | | | |
| 02/11/2020 21:58:35 | 1023 | 1023 | SD | | | |
| 02/12/2020 00:37:37 | 1023 | 1023 | 06 | | | |
| 02/12/2020 16:02:28 | 1023 | 1023 | 09 | | | |
| 02/12/2020 16:02:44 | 1023 | 1023 | SD | | | |
| 02/12/2020 19:40:46 | 1023 | 1023 | DI | | | |
| 02/12/2020 19:40:48 | 1023 | 1023 | EN | | | |
| 02/12/2020 19:54:54 | 1023 | 1023 | 09 | | | |
| 2/12/2020 :55:17 | 1023 | 1023 | AR | 2020-00012841 / IFPA22 | | |
| 02/12/2020 19:55:17 | 1023 | 1023 | AR | 2020-00012841 / IFPA22 | | |

**Start Date/Time:** 10/22/2019 00:00:00

**End Date/Time:** 03/23/2020 23:59:59

# Officer Activity Report

| Activity Date/Time | Unit # | Badge # | Status | Incident #/ Plate | Unit Location | Nature Of Call |
|---|---|---|---|---|---|---|
| 02/12/2020 19:58:02 | 1023 | 1023 | 09 | 2020-00012841 / IFPA22 | | |
| 02/12/2020 19:58:09 | 1023 | 1023 | EN | | | |
| 02/12/2020 19:58:09 | 1023 | 1023 | EN | | | |
| 02/12/2020 19:58:55 | 1023 | 1023 | AR | | | |
| 02/12/2020 20:06:50 | 1023 | 1023 | 09 | | | |
| 02/12/2020 22:30:42 | 1023 | 1023 | SD | | | |
| 02/13/2020 00:26:09 | 1023 | 1023 | 06 | | | |
| 02/13/2020 16:03:28 | 1023 | 1023 | 09 | | | |
| 02/13/2020 16:59:36 | 1023 | 1023 | SD | | | |
| )2/14/2020 )0:16:05 | 1023 | 1023 | 06 | | | |
| 02/18/2020 15:15:36 | 1023 | 1023 | 09 | | | |
| 02/18/2020 15:15:38 | 1023 | 1023 | OL | | | |
| 02/18/2020 16:41:30 | 1023 | 1023 | 09 | | | |
| 02/18/2020 16:41:34 | 1023 | 1023 | SD | | | |
| 02/18/2020 17:03:45 | 1023 | 1023 | DI | | | |
| 02/18/2020 17:04:03 | 1023 | 1023 | EN | | | |
| 02/18/2020 17:07:52 | 1023 | 1023 | 09 | | | |
| 02/18/2020 17:07:52 | 1023 | 1023 | DI | | | |
| 02/18/2020 17:20:29 | 1023 | 1023 | 09 | | | |
| 02/18/2020 22:56:26 | 1023 | 1023 | EN | | | |
| 02/18/2020 22:56:26 | 1023 | 1023 | EN | | | |
| )2/18/2020 :13:53 | 1023 | 1023 | 09 | | | |
| 02/19/2020 00:35:31 | 1023 | 1023 | 06 | | | |

Start Date/Time: 10/22/2019 00:00:00

End Date/Time: 03/23/2020 23:59:59

# Officer Activity Report

| Activity Date/Time | Unit # | Badge # | Status | Incident #/ Plate | Unit Location | Nature Of Call |
|---|---|---|---|---|---|---|
| 02/19/2020 15:15:47 | 1023 | 1023 | 09 | | | |
| 02/19/2020 15:15:55 | 1023 | 1023 | SD | | | |
| 02/19/2020 20:38:27 | 1023 | 1023 | EN | | 3RD FL | |
| 02/19/2020 20:38:27 | 1023 | 1023 | EN | | 3RD FL | |
| 02/19/2020 20:41:23 | 1023 | 1023 | AR | | 3RD FL | |
| 02/19/2020 20:57:40 | 1023 | 1023 | 09 | | 3RD FL | |
| 02/19/2020 20:58:29 | 1023 | 1023 | SD | | | |
| 02/19/2020 23:36:37 | 1023 | 1023 | 05 | | | |
| 02/20/2020 00:15:13 | 1023 | 1023 | 06 | | | |
| 02/20/2020 [illegible]6:55:16 | 1023 | 1023 | 09 | | | |
| 02/20/2020 23:04:57 | 1023 | 1023 | SD | | | |
| 02/21/2020 00:13:19 | 1023 | 1023 | 06 | | | |
| 02/21/2020 15:36:17 | 1023 | 1023 | 09 | | | |
| 02/21/2020 15:51:49 | 1023 | 1023 | SD | | | |
| 02/22/2020 00:12:58 | 1023 | 1023 | 06 | | | |
| 02/26/2020 15:45:32 | 1023 | 1023 | 09 | | | |
| 02/26/2020 16:16:45 | 1023 | 1023 | SD | | | |
| 02/26/2020 20:26:42 | 1023 | 1023 | DI | | | |
| 02/26/2020 20:26:44 | 1023 | 1023 | EN | | | |
| 02/26/2020 20:27:29 | 1023 | 1023 | 09 | | | |
| 02/26/2020 20:27:35 | 1023 | 1023 | DI | | | |
| 02/26/2020 [illegible]:28:14 | 1023 | 1023 | EN | | | |
| 02/26/2020 20:29:07 | 1023 | 1023 | 09 | | | |

**Start Date/Time:** 10/22/2019 00:00:00

**End Date/Time:** 03/23/2020 23:59:59

# Officer Activity Report

| Activity Date/Time | Unit # | Badge # | Status | Incident #/ Plate | Unit Location | Nature Of Call |
|---|---|---|---|---|---|---|
| 02/26/2020 20:29:13 | 1023 | 1023 | SD | | | |
| 02/26/2020 20:52:49 | 1023 | 1023 | DI | 2020-00016972 / | | |
| 02/26/2020 20:53:58 | 1023 | 1023 | 09 | 2020-00016972 / | | |
| 02/26/2020 20:54:02 | 1023 | 1023 | SD | | | |
| 02/26/2020 23:02:57 | 1023 | 1023 | 09 | | | |
| 02/27/2020 00:14:23 | 1023 | 1023 | 06 | | | |
| 02/27/2020 16:13:08 | 1023 | 1023 | 09 | | | |
| 02/27/2020 22:34:46 | 1023 | 1023 | SD | | | |
| 02/28/2020 00:12:54 | 1023 | 1023 | 06 | | | |
| 02/28/2020 5:09:15 | 1023 | 1023 | 09 | | | |
| 02/28/2020 15:09:22 | 1023 | 1023 | OL | | | |
| 02/28/2020 16:19:10 | 1023 | 1023 | 09 | | | |
| 02/28/2020 23:41:18 | 1023 | 1023 | SD | | | |
| 02/29/2020 00:10:19 | 1023 | 1023 | 06 | | | |
| 03/03/2020 06:33:33 | 1023 | 1023 | 09 | | | |
| 03/03/2020 06:33:41 | 1023 | 1023 | 05 | | | |
| 03/03/2020 06:34:05 | 1023 | 1023 | 09 | | | |
| 03/03/2020 06:34:21 | 1023 | 1023 | 05 | | | |
| 03/03/2020 07:27:33 | 1023 | 1023 | 09 | | | |
| 03/03/2020 07:27:40 | 1023 | 1023 | SD | | | |
| 03/03/2020 14:17:11 | 1023 | 1023 | 06 | | | |
| 03/05/2020 7:48:25 | 1023 | 1023 | 09 | | | |
| 03/05/2020 07:50:16 | 1023 | 1023 | SD | | | |

Start Date/Time: 10/22/2019 00:00:00

End Date/Time: 03/23/2020 23:59:59

# Officer Activity Report

| Activity Date/Time | Unit # | Badge # | Status | Incident #/ Plate | Unit Location | Nature Of Call |
|---|---|---|---|---|---|---|
| 03/05/2020 09:42:58 | 1023 | 1023 | DI | | 15TH ST/OCEAN | |
| 03/05/2020 09:42:58 | 1023 | 1023 | DI | | ON TAC 7 | |
| 03/05/2020 09:58:42 | 1023 | 1023 | SL | | 15TH ST/OCEAN | |
| 03/05/2020 09:58:42 | 1023 | 1023 | SL | | ON TAC 7 | |
| 03/05/2020 10:23:53 | 1023 | 1023 | 09 | | 15TH ST/OCEAN | |
| 03/05/2020 10:23:53 | 1023 | 1023 | 09 | | ON TAC 7 | |
| 03/05/2020 10:45:09 | 1023 | 1023 | SD | | | |
| 03/05/2020 16:20:04 | 1023 | 1023 | 06 | | | |
| 03/06/2020 07:25:00 | 1023 | 1023 | 09 | | | |
| 03/06/2020 08:17:12 | 1023 | 1023 | SD | | | |
| 03/06/2020 08:49:34 | 1023 | 1023 | 09 | | | |
| 03/06/2020 09:33:58 | 1023 | 1023 | SD | | | |
| 03/06/2020 19:17:14 | 1023 | 1023 | 06 | | | |
| 03/06/2020 19:19:16 | 1023 | 1023 | 09 | | | |
| 03/06/2020 19:19:18 | 1023 | 1023 | 06 | | | |
| 03/07/2020 06:21:14 | 1023 | 1023 | 09 | | | |
| 03/07/2020 06:21:16 | 1023 | 1023 | 05 | | | |
| 03/07/2020 07:33:23 | 1023 | 1023 | 09 | | | |
| 03/07/2020 14:54:04 | 1023 | 1023 | SD | | | |
| 03/07/2020 19:16:51 | 1023 | 1023 | 06 | | | |
| 03/08/2020 06:31:34 | 1023 | 1023 | 09 | | | |
| 03/08/2020 6:31:43 | 1023 | 1023 | 05 | | | |
| 03/08/2020 07:15:05 | 1023 | 1023 | 09 | | | |

Start Date/Time: 10/22/2019 00:00:00

End Date/Time: 03/23/2020 23:59:59

# Officer Activity Report

| Activity Date/Time | Unit # | Badge # | Status | Incident #/ Plate | Unit Location | Nature Of Call |
|---|---|---|---|---|---|---|
| 03/08/2020 16:11:32 | 1023 | 1023 | 10 | | | |
| 03/08/2020 19:45:16 | 1023 | 1023 | 06 | | | |
| 03/09/2020 06:35:19 | 1023 | 1023 | 09 | | | |
| 03/09/2020 06:35:36 | 1023 | 1023 | 05 | | | |
| 03/09/2020 07:38:14 | 1023 | 1023 | 09 | | | |
| 03/09/2020 15:40:30 | 1023 | 1023 | SD | | | |
| 03/09/2020 20:13:36 | 1023 | 1023 | 06 | | | |
| 03/10/2020 07:19:54 | 1023 | 1023 | 09 | | | |
| 03/10/2020 07:20:21 | 1023 | 1023 | 10 | | | |
| 3/10/2020 .0:02:23 | 1023 | 1023 | AR | | | |
| 03/10/2020 10:02:23 | 1023 | 1023 | AR | | | |
| 03/10/2020 10:03:13 | 1023 | 1023 | 09 | | | |
| 03/10/2020 19:57:28 | 1023 | 1023 | 06 | | | |
| 03/12/2020 08:13:53 | 1023 | 1023 | 09 | | | |
| 03/12/2020 08:14:03 | 1023 | 1023 | SD | | | |
| 03/12/2020 17:02:28 | 1023 | 1023 | EN | | | |
| 03/12/2020 17:02:28 | 1023 | 1023 | EN | | | |
| 03/12/2020 17:06:56 | 1023 | 1023 | AR | | | |
| 03/12/2020 18:24:40 | 1023 | 1023 | 09 | | | |
| 03/12/2020 19:31:57 | 1023 | 1023 | 05 | | | |
| 03/12/2020 19:52:45 | 1023 | 1023 | 06 | | | |
| 3/13/2020 3:11:40 | 1023 | 1023 | 09 | | | |
| 03/13/2020 20:08:52 | 1023 | 1023 | 06 | | | |

**Start Date/Time:** 10/22/2019 00:00:00

**End Date/Time:** 03/23/2020 23:59:59

# Officer Activity Report

| Activity Date/Time | Unit # | Badge # | Status | Incident #/ Plate | Unit Location | Nature Of Call |
|---|---|---|---|---|---|---|
| 03/14/2020 07:32:24 | 1023 | 1023 | 09 | | | |
| 03/14/2020 07:32:44 | 1023 | 1023 | SD | | | |
| 03/14/2020 19:44:22 | 1023 | 1023 | 06 | | | |
| 03/15/2020 07:44:06 | 1023 | 1023 | 09 | | | |
| 03/15/2020 08:21:12 | 1023 | 1023 | SD | | | |
| 03/15/2020 19:44:09 | 1023 | 1023 | 09 | | | |
| 03/15/2020 19:45:58 | 1023 | 1023 | 06 | | | |
| 03/16/2020 09:11:16 | 1023 | 1023 | 09 | | | |
| 03/16/2020 15:41:50 | 1023 | 1023 | SD | | | |
| 03/16/2020 19:45:32 | 1023 | 1023 | 06 | | | |
| 03/17/2020 07:56:16 | 1023 | 1023 | 09 | | | |
| 03/17/2020 07:56:22 | 1023 | 1023 | SD | | | |
| 03/17/2020 17:42:50 | 1023 | 1023 | 05 | | | |
| 03/17/2020 19:09:40 | 1023 | 1023 | 09 | | | |
| 03/17/2020 19:46:43 | 1023 | 1023 | 06 | | | |
| 03/19/2020 07:41:11 | 1023 | 1023 | 09 | | | |
| 03/19/2020 07:41:21 | 1023 | 1023 | SD | | | |
| 03/19/2020 19:43:42 | 1023 | 1023 | 06 | | | |
| 03/20/2020 07:47:26 | 1023 | 1023 | 09 | | | |
| 03/20/2020 07:47:46 | 1023 | 1023 | SD | | | |
| 03/20/2020 19:54:51 | 1023 | 1023 | 06 | | | |
| 03/21/2020 07:04:48 | 1023 | 1023 | 09 | | | |
| 03/21/2020 07:04:51 | 1023 | 1023 | SD | | | |

Start Date/Time: 10/22/2019 00:00:00

End Date/Time: 03/23/2020 23:59:59

# Officer Activity Report

| Activity Date/Time | Unit # | Badge # | Status | Incident #/ Plate | Unit Location | Nature Of Call |
|---|---|---|---|---|---|---|
| 03/21/2020 09:59:17 | 1023 | 1023 | 10 | | | |
| 03/21/2020 11:30:29 | 1023 | 1023 | 09 | | | |
| 03/21/2020 11:30:33 | 1023 | 1023 | 10 | | | |
| 03/21/2020 13:12:29 | 1023 | 1023 | 09 | | | |
| 03/21/2020 13:12:33 | 1023 | 1023 | SD | | | |
| 03/21/2020 19:38:36 | 1023 | 1023 | 06 | | | |
| 03/22/2020 07:04:13 | 1023 | 1023 | 09 | | | |
| 03/22/2020 07:33:26 | 1023 | 1023 | 05 | | | |
| 03/22/2020 08:58:50 | 1023 | 1023 | 09 | | | |
| 03/22/2020 08:59:03 | 1023 | 1023 | SD | | | |
| 03/22/2020 19:40:06 | 1023 | 1023 | 06 | | | |
| 03/23/2020 07:31:37 | 1023 | 1023 | 09 | | | |
| 03/23/2020 09:15:25 | 1023 | 1023 | SD | | | |
| 03/23/2020 18:41:36 | 1023 | 1023 | 06 | | | |
| 03/23/2020 18:47:01 | 1023 | 1023 | 09 | | | |
| 03/23/2020 19:40:30 | 1023 | 1023 | 06 | | | |

**Start Date/Time:** 04/22/2020 00:00:00

**End Date/Time:** 04/22/2020 23:59:59

# Officer Activity Report

**Agency:** FL0130700 - Miami Beach Police Department **Units:** ALL

**Personnel:** Salabarria, Jessica - 1023

| **Statuses:** | | | |
|---|---|---|---|
| | SD: | 4h 41m 29s | 29.75 % |
| | 06: | 5h 18m 36s | 33.67 % |
| | 09: | 5h 46m 15s | 36.59 % |
| | Total: | 15h 46m 20s | 100.00 % |

**Total Statuses:** 1

**Total Dispatches:** 0

**Total Busy:** 1

**Total Traffic Stops:** 0

**Total Time:** 0 Days 15 Hours 46 Minutes 20 Seconds

| Activity Date/Time | Unit # | Badge # | Status | Incident #/ Plate | Unit Location | Nature Of Call |
|---|---|---|---|---|---|---|
| 04/22/2020 08:13:39 | 1023 | 1023 | 09 | | | |
| 04/22/2020 13:59:54 | 1023 | 1023 | SD | | | |
| 04/22/2020 18:41:23 | 1023 | 1023 | 06 | | | |

# EXHIBIT C

# TO DECLARATION OF

# A.J. PRIETO

**SETTLEMENT AGREEMENT**

The SETTLEMENT AGREEMENT ("Agreement") is entered into, by, and between the CITY OF MIAMI BEACH, its elected and appointed officials, its employees, and its insurers, attorneys, or agents of any kind (collectively, the "City"); JESSICA SALABARRIA ("Salabarria") and the FRATERNAL ORDER OF POLICE, WILLIAM NICHOLS LODGE NO. 8 ("FOP") (all collectively, the "Parties").

WHEREAS, Salabarria is employed by the City in its Police Department; and

WHEREAS, the FOP is the exclusive bargaining representative for a bargaining unit of City police employees, including Salabarria; and

WHEREAS, Salabarria is the subject of an on-going Internal Affairs investigation, I.A. Case No. 2020-010 ("the Investigation"); and

WHEREAS, Salabarria has filed an EEOC Charge, EEOC Charge No. 510-2020-04794 ("EEOC Charge"); and

WHEREAS, the Investigation and EEOC charge are all pending and constitute all the charges, investigations and grievances by or on behalf of Salabarria that have been or may be filed as of the Effective Date of this Agreement that have not otherwise been resolved or otherwise achieved finality; and

WHEREAS, the Parties, wish to avoid the burdens of further investigation, litigation and to resolve the disputes between them.

NOW, THEREFORE, intending to be legally bound but without setting precedent, do hereby agree as follows:

1. Recitals. The Parties acknowledge and agree that the Recitals above are true to the best of their knowledge and belief and incorporate them as if fully set forth here and that the Recitals are a material inducement for the Parties to enter into this Agreement.

2. EEOC Charge Withdrawn With Prejudice and Discipline. Salabarria and the FOP agree that, by executing this Agreement, they will simultaneously withdraw the Charge with prejudice by executing the attached Notice of Withdrawal with Prejudice and immediately filing same with the EEOC. Additionally, as discipline for the matters that are the subject of the Investigation, Salabarria agrees to accept the following:

a. A One Hundred and Sixty (160) hour suspension,

b. Payback of Eighty-Six (86) total hours, of which Forty-Four (44) Hours is regular time and Twenty-Four (24) hour is overtime. The regular rate is Forty-Four Dollars and 14/100 ($44.14) for a total of One Thousand Nine Hundred Forty-Two Dollars and 00/100 ($1,942.16) of regular time. The overtime hourly rate is Sixty-Six Dollars and 21/100 ($66.21), for a total amount of One



City 001235

Thousand Five Hundred Eighty-Nine Dollars and 04/100 ($1,589.04). **Accordingly, the Total Amount due to the City is Three Thousand Five Hundred Thirty-One Dollars and 20/100 ($3,531.20) ("the Total Amount").** Salabarria can pay the Total Amount via a cashier's check made payable to the City of Miami Beach on or before January 4, 2021. If the City does not receive full payment on or before 5:00 p.m. on January 4, 2021, then the City is authorized to deduct the remaining amounts due from Salabarria's vacation leave bank.

c. Salabarria will execute the attached Last Chance Agreement, which contains additional provisions. The Last Chance Agreement is incorporated by reference into this Agreement.

d. Permanent deletion, from all platforms (platforms includes but is not limited to: Apple Podcasts, Stitcher, Spotify, Spotify Podcasts, Google Play Music, Google Podcasts, iHeart Radio, and any other social media and/or electronic platform) the podcast titled: "Cafecitos y Chisme with Nick & Jess."

e. Salabarria will immediately have a meeting with the Chief of Police wherein she will address the claims made in the Charge, including but not limited to identifying the names of all persons who allegedly engaged in the conduct addressed in the Charge. The refusal to name the persons who have allegedly engaged in the conduct in the Charge shall be grounds for immediate termination, as discussed in the attached Last Chance Agreement. Salabarria shall be entitled to have a Union Representative with her during this meeting.

f. Release Of Claims, Covenant Not To Sue. Salabarria hereby releases and waives any and all claims of any kind whatsoever against the City that she had, has or may have from the beginning of the world through the date of this Agreement. The claims released include, but are not limited to, any and all claims arising under any federal, state, local or foreign statute or regulation, including, without limitation, those relating to any and all unfair or discriminatory employment practices (for example, employment discrimination based on race, national origin, sex, religion, age, disability or handicap, and harassment of any kind) under the federal Civil Rights Acts of 1866, 1871, 1964 and 1991 (including Title VII), the federal Age Discrimination in Employment Act ("ADEA"), including the Older Workers Benefits Protection Act, the Florida Civil Rights Act, the federal Americans With Disabilities Act, the federal Employee Retirement Income Security Act of 1974, the Internal Revenue Code of 1986, the federal Fair Labor Standards Act of 1938, the Florida Wage Discrimination Law, the Florida Wage and Hour laws, Florida and federal statutes regarding "whistleblower" activities, the federal Family and Medical Leave Act of 1993, the federal Rehabilitation Act of 1973, the Consolidated Omnibus Budget Reconciliation Act of 1985 (known as "COBRA"), the Federal Fair Credit Reporting Act, any other federal and state employment-related statutes and regulations, and any other employment-related local ordinance up to the date of this Agreement. The claims released also include any claims under the United States Constitution, including but not limited to claims arising under the First Amendment or any other claims whatsoever.

The disputes released by Salabarria also include any and all disputes she had, has or may believe to have against the City in contract or at common law, including, but not limited to: breach of oral, written and/or implied contract, breach of an implied covenant of good faith and fair dealing, wrongful discharge under any theory (including for lack of good cause) in violation of public policy and constructive discharge, intentional and/or negligent infliction of emotional distress, negligent retention and/or supervision, assault, battery, negligence, misrepresentation or fraud of any kind, duress, unfair dealing, breach of fiduciary or other duty, invasion of privacy, defamation, and interference with contract and/or prospective economic advantage up to the date of this Agreement.

Salabarria further covenants and agrees that she will not file a lawsuit or claim of any kind asserting the claims released herein. Salabarria understands that this Agreement does not prohibit participating in an investigation or the filing of a charge with the EEOC or like administrative agency, but she does understand and agree that, not only is she releasing the stated claims, but also is releasing the right to any monetary damages or any relief of any kind from those claims, whether brought by her or on her behalf. Salabarria hereby represents that she has not assigned to any person or entity any rights to the claims released herein.

g. Effect; Precedent. The Parties agree that Salabarria remains subject to all applicable rules, policies, orders, procedures or regulations of whatever kind, except as may be expressly otherwise provided herein. The Parties agree that the facts underlying this Agreement are unique and that this Agreement does not establish precedent of any kind whatsoever and may not be used in any manner whatsoever in any proceeding, including but not limited to any labor proceeding of any kind, with the exception of any labor proceeding involving Salabarria. The parties further agree that Salabarria's prior settlement agreement may also be used in any labor proceeding involving Salabarria.

h. Consideration. The consideration for this Agreement is the City's early conclusion of the Investigation. The parties acknowledge that the City could continue the Investigation. The parties further acknowledge that continuing the Investigation would likely be detrimental to Salabarria. Therefore, the City is giving up its right to continue the Investigation in exchange fro Salabarria's agreement to the provisions and terms of this Agreement. The mutual promises, releases, and forbearances recited herein, the adequacy of which is hereby affirmed by the Parties.

i. Miscellaneous. This Agreement (which includes the exhibits attached hereto that are incorporated by reference), is the entire agreement between the Parties on its subject matter and supersedes any other agreement or understanding whatsoever, whether written or oral. The Parties have entered into this Agreement solely on the basis of the language, representations, and understandings expressed in this Agreement and not on the basis of any other representation or understanding whatsoever. This Agreement shall be construed and applied according to its express language and not strictly against any Party, regardless of authorship. This Agreement shall be governed by and construed according to the laws of the State of Florida. Any dispute arising from this Agreement, its application, or its breach shall be heard by a judge and not a jury. The Parties agree that venue shall be proper in Miami-Dade County, Florida, and agree that they shall not challenge such venue, regardless of convenience. If any provision or part thereof of this Agreement shall be found invalid or unenforceable by a court of competent jurisdiction, the remainder of the Agreement shall remain valid and enforceable, provided, however, that if Paragraph 3, "Release,"

is found invalid or unenforceable, the entire Agreement shall fail and be null and void and shall be treated as if it were never made. The prevailing party in any action of or relating to this Agreement shall be entitled to an award of reasonable attorney's fees and costs.

IN WITNESS WHEREOF, having read and fully understood this Agreement in its entirety, having duly considered the same, and intending to enjoy the benefits and undertake the obligations established herein, the Parties do hereby enter into and execute this Agreement as set forth below.

**CITY OF MIAMI BEACH**

DocuSigned by:

By Paul J. Aguila

2B3D6240F92B45D...

City Manager

12/23/2020 | 1:34 EST

DATE

**JESSICA SALABARRIA**

JESSICA SALABARRIA

12/18/2020

DATE

**FRATERNAL ORDER OF POLICE, LODGE 8**

By

KEVIN MILLAN
President

12/18/2020

DATE

**CHIEF OF POLICE**

RICK CLEMENTS
Chief of Police

# LAST CHANCE AGREEMENT

THIS LAST CHANCE AGREEMENT is entered into between the CITY OF MIAMI BEACH, FLORIDA (hereinafter, the "City"), FRATERNAL ORDER OF POLICE, (hereinafter, "the Union") and JESSICA SALABARRIA (hereinafter, "SALABARRIA" or "Employee").

WHEREAS, SALABARRIA is employed by the City as a Police Officer in the City's Police Department.

WHEREAS, SALABARRIA is subject to the terms and conditions of employment contained in the Collective Bargaining Agreement between the Union and the City effective October 1, 2018 through September 30, 2021;

WHEREAS, SALABARRIA is the subject of an Internal Affairs ("IA") Investigation, IA Case Number 2020-010, which arose from SALABARRIA's involvement in not being on-duty when she was supposed to be, and from SALABARRIA's claims of being on-duty in the City when she was actually outside the City;

WHEREAS, the City wishes to continue to employ Employee, Employee wishes to continue to be employed by the City, and the FOP desires for Employee to continue to be employed under the terms and conditions described herein; and

WHEREAS, the Employee admits that she committed misconduct in association with IA Case Number 2020-010 and was in violation of numerous City and Police Department policies and the City Personnel Rules for the Classified Service; and

WHEREAS, the purposes of this Agreement, with which all the Parties concur, include: to protect and preserve the integrity of the Police Department and all its officers and to give Employee the opportunity to further and support that purpose; and to give Employee the

opportunity to rehabilitate herself personally and as a police sergeant for the City and this Department; and to give Employee an opportunity to preserve her career.

NOW, THEREFORE, without establishing precedent for any purpose and intending to be bound, the Parties agree as follows:

1. All of the above statements are true and correct to the best of the Parties' belief and knowledge and for a five (5) year period beginning with the execution of this Agreement by all parties, SALABARRIA will be subject to the provisions of this Agreement.

2. During this period, SALABARRIA must be on-duty and in the City limits during all of her scheduled shifts unless given prior authorization. For the avoidance of confusion, this means that, during the terms of this Agreement, SALABARRIA shall not be outside the City limits when she is on-duty, shall not tell the City she's on-duty when she is outside the City's limits, and shall not leave before the end of her scheduled shift, unless given prior authorization.

3. Additionally, SALABARRIA shall refrain from violating any City or Police Department policies, rules or regulations; Standard Operating Procedures ("SOPs") or Personnel Rules, all of which (including any amendments or additions) are incorporated herein by reference. In any instance during which City or Police Department policies, procedures or Personnel Rules differ from or conflict with the stipulations set forth in the applicable collective bargaining agreement, the City or Police Department policies, procedures or Personnel Rules shall prevail.

4. The Chief of Police shall exclusively assess and determine Employee's compliance with this Agreement. The Chief's decision as to compliance with this Agreement shall not be subject to any grievance and/or review of any kind by SALABARRIA and/or the Union and is not subject to explanation or review.

5. Failure to comply with any portion or requirement of this Agreement (including but not limited to the requirement not to violate any City or Police Department policies, Standard Operating Procedures ("SOPs") or Personnel Rules, as referenced in paragraph 3 above) may result in the immediate implementation of the attached letter of resignation as referenced in paragraph 9 below. It is the intent and understanding of the parties that the violations contemplated to trigger the implementation of the attached letter of resignation shall not be for individual, discreet minor policy and procedural violations. The parties agree that repeated violation of the same, discreet minor policy may result in an event triggering the implementation of the attached letter of resignation. In that event, the Employee and the Union understand and agree there will be no recourse or review available pursuant to any grievance, appeal or review process under any federal, state or local statute, ordinance, collective bargaining agreement, or in any other forum or under any other process or procedure.

6. SALABARRIA shall serve a four-week (160 hour) suspension without pay and waive any and all rights to grieve or appeal that suspension. Employee shall also be subject to the additional provisions of the Settlement Agreement to which this Agreement is attached and is made part of via incorporation by reference.

7. Further, for the same five (5) year period described above, the Chief of Police shall have full discretion regarding Employee's assignments, including, without limitation, duties, supervisor and chain of command. Employee shall have the ability to bid for shift and days off, if the employee is reassigned her duty hours and days off shall remain the same.

8. For a period of one (1) year from the date of execution of this Agreement, Employee is not eligible for any promotional opportunities.

9. Employee shall sign an irrevocable letter of resignation which shall take effect immediately upon her violation of this Agreement or any part of it at any time during the term of this Last Chance Agreement. .

10. Employee shall attend and cooperate with any training required by the Chief of Police.

11. If during the above-referenced five (5) year period, SALABARRIA violates any provisions of this agreement or any City or Police Department policies, Standard Operating Procedures ("SOPs") or Personnel Rules and/or regulations as previously referenced in paragraph #4 , her resignation shall be effective , without the right to grieve or otherwise contest, in any manner, her separation. .

12. In the event that SALABARRIA is separated pursuant to the terms and conditions of this Last Chance Agreement, she and the Union understand that her separation is not subject to appeal pursuant to the contractual grievance/arbitration procedure, or otherwise. In other words, SALABARRIA agrees that should she be separated pursuant to the terms of this agreement that she waives her right to utilize the contractual grievance and arbitration procedure and she further waives the right to challenge or appeal her separation pursuant to any administrative or statutory avenue that may exist.

13. The City retains the right to rely upon the facts and circumstances of the events from which this Last Chance Agreement arose in any future proceeding in the event the Employee successfully meets the terms and conditions referred to in this Agreement but thereafter has deficiencies in conduct or performance, and such deficiencies shall be sufficient to warrant discipline, including dismissal.

14. It is understood and agreed by all parties hereto that this Last Chance Agreement is executed based on the particular circumstances of this case and does not establish precedent for the resolution of other cases.

15. SALABARRIA acknowledges that she could be terminated from her employment from the City as a result of her conduct as referenced above and that remaining employed by the City is adequate consideration for entering into this Last Chance Agreement, serving the suspension without pay and waiving the rights described herein and in the Settlement Agreement.

16. SALABARRIA being of lawful age, for and in consideration of the above-action agreed to by the City, and other valuable consideration received from or on behalf of the City, receipt whereof is hereby acknowledged, does hereby release, acquit, satisfy and forever discharge the City, as well as each and everyone of the City's former and current officers, agents, attorneys, employees and officials -- in both their official and individual capacities -- and their successors and assigns, from any and all claims, cause and causes of action, grievances, unfair labor practice charges, lawsuits, claims of employment discrimination (including, but not limited to claims under the Americans With Disabilities Act), and any and all other claims and demands whatsoever, in law or in equity, tort or contract, which SALABARRIA has or may have against the above-named individuals in both their individual and official capacities, from the beginning of the world until today, including, but not limited to, all matters concerning or arising out of her employment with the CITY, her discipline stemming from the incidents described in this Last Chance Agreement and the execution of this Last Chance Agreement.

17. It is understood and agreed that this Last Chance Agreement does not constitute an admission by the City or SALABARRIA of any violation of the collective bargaining

CITY UNION JESSICA

agreement. This Last Chance Agreement is being entered into by the parties solely for the purpose of avoiding the expense and inconvenience of further administrative proceedings.

18. SALABARRIA has received and reviewed this Last Chance Agreement prior to executing it and she agrees to be bound by its terms and conditions.

19. Prior to signing this Last Chance Agreement, SALABARRIA had the opportunity, and did, in fact, consult with her attorney and/or with the Union.

20. This Last Chance Agreement, and the Settlement Agreement which is attached constitutes the entire understanding and agreement of the parties hereto, and can be modified, amended or revoked only by express written consent of all parties.

21. This Last Chance Agreement shall be governed by and construed in accordance with the laws of the State of Florida, and where applicable, federal laws. The language of this Last Chance Agreement shall be construed as a whole, according to its fair meaning, and not strictly construed for or against either party.

22. In the event that any party to this Last Chance Agreement institutes legal proceedings regarding the terms of this Last Chance Agreement, it is stipulated and agreed that such a claim shall be heard and determined by the court, and not by a jury, in Miami-Dade County, Florida. **SALABARRIA AGREES AND UNDERSTANDS THAT SHE IS WAIVING THE RIGHT TO A JURY TRIAL, IF ONE EXISTS, AS TO ANY CLAIM REGARDING THE TERMS OF THIS AGREEMENT.**

CITY UNION JESSICA

This Agreement is dated the ____ day of December 2020, in Miami-Dade County, Florida.

| | |
|---|---|
| JESSICA SALABARRIA | DocuSigned by: Paul J. Aguila 2B3D6240F92B45D... CITY MANAGER CITY OF MIAMI BEACH |
| Date: 12/18/2020 | Date: 12/23/2020 \| 1:34 EST |

**FRATERNAL ORDER OF POLICE**

President
Signature & Title

Kevin Millan President
Print Name & Title

12/18/2020
Date

**CHIEF OF POLICE**

12/18/2020
Date



City 001246

December 18, 2020

City of Miami Beach
Human Resources Department
Miami Beach City Hall
1700 Convention Center Drive
Miami Beach, FL 33139

Re: *Letter of Resignation as Part of Settlement Agreement and Last Chance Agreement*

To Whom It May Concern:

Pursuant to the Settlement Agreement and Last Chance Agreement to which this Letter of Resignation is attached, I resign my employment with the City of Miami Beach, effective _______________.

Very Truly Yours,

Jessica Salabarria.

# EXHIBIT D

# TO DECLARATION OF

# A.J. PRIETO

**From:** Cosner, Steven <StevenCosner@miamibeachfl.gov>
**Subject:** Salabarria AAF
**To:** Prieto, AJ <AJPrieto@miamibeachfl.gov>
**Sent:** January 8, 2021 12:35 AM (UTC-05:00)
**Attached:** Salabarria AAF.pdf

Hello AJ,

I was advised to forward this to you. Please review and advise if there is anything else you need me to take care of. Thanks.

SC

***Steve Cosner, Lieutenant***
**MIAMI BEACH POLICE DEPARTMENT**
**Operations Division/Third Platoon/Area 2**
1100 Washington Ave, Miami Beach, FL 33139
Tel: 305-673-7776, ext. 5526 / Fax: 786-394-4976
StevenCosner@miamibeachfl.gov

**Mission**: Address Crime and Community Concerns
**Vision**: A safe and welcoming environment for everyone
**Values**: Honorable, Professional, Resilient
**Our Daily Goals**: Use innovative approaches to address crime, maintain and enhance a professional and well trained workforce, enhance the public's perception of the Miami Beach Police Department

MIAMIBEACH POLICE

# Administrative Action Form

D#

| Employee: Salabarria, Jessica | Job Title: Sergeant of Police | Division: Operations/Patrol | Date: 12/30/2020 |
|---|---|---|---|
| **Level of Action:** **Documentation of Verbal Conference:** | **Written Warning:** | **Letter of Reprimand:** | |
| **Violation of City Work Rule:** | **Title:** | | |
| **Violation of Department SOP #:** DRR 3.8.2, DRR 6.5.4, DRR 6.15.1, 6.15.6, 6.15.9, DRR 6.28.3.6, 6.28.3.10, 6.28.3.20, 6.28.3.34, DRR 6.34.1, DRR 6.39.1, DRR 6.40.1 | **Title: Insubordination, Integrity, Performance of Duties, Conduct Unbecoming, Untruthfulness, Supervisor Responsibility, Radio Transmissions** | | |
| **Violation of General Special Order #:** | **Title:** | | |

**Documentation of Incident:** On Sunday night, 12/27/2020 at approximately 2200 hours, I advised Sergeant Jessica Salabarria that we needed a Sergeant on overtime for the midnight shift. I told her that she was the next supervisor to be forced to work over since we did not have any volunteers for the position. She was told that she would be assigned to Area 3 and would be working from 0000-0600 hours. She acknowledged the order and within several minutes she provided me with an overtime slip completed by her in which she documented in her own handwriting that she was working in Area 3. She left the sergeant's office shortly thereafter. At approximately 0355 hours, I forwarded an email to Sergeant Salabarria with the details and watch orders that needed to be assigned to the Area 3 officers for completion prior to the end of their shift. I then sent a text message to her cellular phone advising her to check her email at 0359 hours. After a few minutes I did not receive an acknowledgement of the text message, so I tried to call her phone at 0404 hours. Then phone rang repeatedly and went to voicemail. I tried to raise her via the police radio immediately afterwards. The dispatcher raised her multiple times with no response. Sergeant Wilson Romero advised via radio that he would try to call her. He called me at 0411 hours to advise that he could not reach her and that her phone rang through to voicemail. I again tried to have the dispatcher raise her, and after several attempts by name and unit number, she finally responded. The tone of her voice sounded as if she was just waking up. I spoke with her via the supervisor channel and asked her where she was. She told me that she was "05". I responded by asking if she meant, "05 at the NESS". She said no and that she was at the main station. I asked if she was aware that she was assigned to Area 3 and she answered affirmatively. I then ordered her to respond to Area 3 and to check her email.

I became involved in a vehicle stop along 71 street that resulted in an arrest at 0416. Officer Ocejo was one of the officers who responded as back-up. After the subject was transported, I waited on scene with Officer Ocejo as he waited for a tow truck. I asked Officer Ocejo to check his email to see if the details had been forwarded by Sergeant Salabarria. He told me that he did not have any emails from her. This was at approximately 0520 hours. At 0543 hours, I received an unsolicited text message from Sergeant Salabarria advising that she had emailed me the squad stats and the detail assignments. She claimed that she had told the officers via landline and email of their detail assignments. The email that she sent me was sent at 0536 hours. It included the squad stats and detail assignments. I called Officer Hansel Romero and asked him if he had received any emails, texts, or phone calls from Sergeant Salabarria advising him of detail assignments. He said that he did not and that she had only asked for stats in an email that was sent at 0521 hours. That email was forwarded to me by Officer Ocejo. I began

calling all the officers assigned to Area 3 and inquired the same of each of them. Every one of the officers advised that they had not received a call or text advising of the details. Officer Romero then forwarded an email that he received from Sergeant Salabarria at 0542 hours. The email had been sent to each of the Area 3 officers. It was the detail assignments and began with a highlighted line stating, "squad per our conversation please note the below details for our shift". I found this very concerning because it was now the second time that she had claimed to have had a conversation with the officers about their assignments when all six of them claimed that never happened and they did not report to any assigned details during the shift.

I sent an email to Lieutenant Jorge Garcia asking for a Detail Report for Sergeant Salabarria's assigned marked vehicle via the AVL system. My inquiry was for her vehicle movement from 2200 hours on 12/27/2020 through 0600 hours on 12/28/2020. The Detail Report showed that her vehicle had been parked at the station from 2200 hours on 12/27/2020 until 0423 hours on 12/28/2020 which was a few minutes after we spoke on the supervisor channel. For a total of 6 hours and 23 minutes. It is unknown how long the vehicle had been parked prior to that. The report indicated that she left the station and drove directly to 73rd Street and Ocean Terrace where she again parked her vehicle at 0440 hours. The vehicle remained in that position until 0533 hours for a total of 53 minutes. She then left that location and drove directly to the MBPD headquarters.

Note that of the six officers assigned to Area 3 on the shift in question 4 of them have 2 years of experience or less.

Sergeant Salabarria's actions show a willful effort to deceive a supervisor and a failure to obey a direct order from said supervisor. She failed to report to her assigned zone and failed to supervise the officers under her watch. She failed on multiple occasions to respond to the police radio and showed extreme neglect in the performance of her duties.

**I have read the Administrative Action Form and understand it. Additionally, I have been provided with an employee's Administrative Action Response Form and it has been explained to me.**
Employee's Initials ________

| | |
|---|---|
| Employee's Signature: ____________________<br><br>Print Name:__________________ Date: | Lieutenant Signature:___________________________<br><br>Print Name:_____________________ Date: |
| Preparer's Signature: ______________________<br><br>Print Name: _________________ Date: | Captain Signature: _____________________________<br><br>Print Name:_____________________ Date: |
| Witness Signature: _______________________<br><br>Print Name:_________________ Date: | Division Commander Signature:__________________<br><br>Print Name:_____________________ Date: |

| | |
|---|---|
| Witness Signature: ______________________<br>Print Name:________________ Date: | Chief of Police Signature:_____________________<br>Print Name:____________________ Date: |

# EXHIBIT E
# TO DECLARATION OF
# A.J. PRIETO

**From:** Descalzo, Andy <AndyDescalzo@miamibeachfl.gov>
**Subject:** Sgt. Salabarria AEM
**To:** Prieto, AJ <AJPrieto@miamibeachfl.gov>; Ozaeta, Paul <PaulOzaeta@miamibeachfl.gov>
**Sent:** January 19, 2021 3:38 PM (UTC-05:00)
**Attached:** MIAMI BEACH POLICE DEPARTMENT.pdf

Gentlemen,
See attached.

# MIAMI BEACH POLICE DEPARTMENT
## Initial Report Concerning a Police Employee - Allegation of Employee Misconduct

| | | |
|---|---|---|
| **Date and Time Reported**<br>12/30/2020 2345 hours | **Received By (Employee Name)**<br>Lieutenant Steven Cosner | ( X ) In Person ( ) By Phone<br>( ) Other ________ |
| **Date and Time Occurred**<br>12/28/2020 0000-0600 hours | **Location of Occurrence**<br>MBPD | |

| Reporting Party's Name | Race/Sex | D.O.B | Address | Telephone # |
|---|---|---|---|---|
| Lieutenant Steven Cosner | W/M | | 1100 Washigton Ave., Miami Beach, Florida 33139 | |

**Specific Allegation (In Brief):** Failure to Supervise, Conduct Unbecoming, Insubordination, Neglect of Duty, Untruthfulness (lying/false statements), Performance of Duties, Failure to Monitor Radio

| Employee (s) Name | |
|---|---|
| 1. Sergeant Jessica Salabarria | 3. |
| 2. | 4. |

### Witnesses

| Name | Race/Sex | D.O.B | Address | Telephone |
|---|---|---|---|---|
| Lieutenant Steven Cosner<br>Officer Werner Baumer<br>Officer Richard Ocejo<br>Officer Steven Serrano<br>Officer Christopher Garrido<br>Officer Hansel Romero<br>Officer Rodolfo Albaladejo | W/M<br>W/M<br>W/M<br>W/M<br>W/M<br>W/M<br>W/M | | Resident: MBPD<br>Business: 1100 Washington Ave., Miami Beach, FL 33139 | |
| | | | Resident<br>Business | |

### Details of Allegation

On Sunday night, 12/27/2020 at approximately 2200 hours, I advised Sergeant Jessica Salabarria that we needed a Sergeant on overtime for the midnight shift. I told her that she was the next supervisor to be forced to work over since we did not have any volunteers for the position. She was told that she would be assigned to Area 3 and would be working from 0000-0600 hours. She acknowledged the order and within several minutes she provided me with an overtime slip completed by her in which she documented in her own handwriting that she was working in Area 3. She left the sergeant's office shortly thereafter. At approximately 0355 hours, I forwarded an email to Sergeant Salabarria with the details and watch orders that needed to be assigned to the Area 3 officers for completion prior to the end of their shift. I then sent a text message to her cellular phone advising her to check her email at 0359 hours. After a few minutes I did not receive an acknowledgement of the text message, so I tried to call her phone at 0404 hours. Then phone rang repeatedly and went to voicemail. I tried to raise her via the police radio immediately afterwards. The dispatcher raised her multiple times with no response. Sergeant Wilson Romero advised via radio that he would try to call her. He called me at 0411 hours to advise that he could not reach her and that her phone rang through to voicemail. I again tried to have the dispatcher raise her, and after several attempts by name and unit

C:\WPWIN60\WPDOCS\FORMS\MISCOND.FRM

number, she finally responded. The tone of her voice sounded as if she was just waking up. I spoke with her via the supervisor channel and asked her where she was. She told me that she was "05". I responded by asking if she meant, "05 at the NESS". She said no and that she was at the main station. I asked if she was aware that she was assigned to Area 3 and she answered affirmatively. I then ordered her to respond to Area 3 and to check her email.

I became involved in a vehicle stop along 71 street that resulted in an arrest at 0416. Officer Ocejo was one of the officers who responded as back-up. After the subject was transported, I waited on scene with Officer Ocejo as he waited for a tow truck. I asked Officer Ocejo to check his email to see if the details had been forwarded by Sergeant Salabarria. He told me that he did not have any emails from her. This was at approximately 0520 hours. At 0543 hours, I received an unsolicited text message from Sergeant Salabarria advising that she had emailed me the squad stats and the detail assignments. She claimed that she had told the officers via landline and email of their detail assignments. The email that she sent me was sent at 0536 hours. It included the squad stats and detail assignments. I called Officer Hansel Romero and asked him if he had received any emails, texts, or phone calls from Sergeant Salabarria advising him of detail assignments. He said that he did not and that she had only asked for stats in an email that was sent at 0521 hours. That email was forwarded to me by Officer Ocejo. I began calling all the officers assigned to Area 3 and inquired the same of each of them. Every one of the officers advised that they had not received a call or text advising of the details. Officer Romero then forwarded an email that he received from Sergeant Salabarria at 0542 hours. The email had been sent to each of the Area 3 officers. It was the detail assignments and began with a highlighted line stating, "squad per our conversation please note the below details for our shift". I found this very concerning because it was now the second time that she had claimed to have had a conversation with the officers about their assignments when all six of them claimed that never happened and they did not report to any assigned details during the shift.

I sent an email to Lieutenant Jorge Garcia asking for a Detail Report for Sergeant Salabarria's assigned marked vehicle via the AVL system. My inquiry was for her vehicle movement from 2200 hours on 12/27/2020 through 0600 hours on 12/28/2020. The Detail Report showed that her vehicle had been parked at the station from 2200 hours on 12/27/2020 until 0423 hours on 12/28/2020 which was a few minutes after we spoke on the supervisor channel. For a total of 6 hours and 23 minutes. It is unknown how long the vehicle had been parked prior to that. The report indicated that she left the station and drove directly to 73rd Street and Ocean Terrace where she again parked her vehicle at 0440 hours. The vehicle remained in that position until 0533 hours for a total of 53 minutes. She then left that location and drove directly to the MBPD headquarters.

Note that of the six officers assigned to Area 3 on the shift in question 4 of them have 2 years of experience or less.

Sergeant Salabarria's actions show a willful effort to deceive a supervisor and a failure to obey a direct order from said supervisor. She failed to report to her assigned zone and failed to supervise the officers under her watch. She failed on multiple occasions to respond to the police radio and showed extreme neglect in the performance of her duties.

# EXHIBIT F
# TO DECLARATION OF
# A.J. PRIETO

**From:** AJPrieto@miamibeachfl.gov <AJPrieto@miamibeachfl.gov>
**Subject:** Sgt. Salabarria
**To:** Arley Flaherty <ArleyFlaherty@miamibeachfl.gov>
**Sent:** January 20, 2021 3:38 PM (UTC-05:00)
**Attached:** MIAMI BEACH POLICE DEPARTMENT.pdf

Arley,

See attached.

AJ

# MIAMI BEACH POLICE DEPARTMENT
## Initial Report Concerning a Police Employee - Allegation of Employee Misconduct

| | | |
|---|---|---|
| Date and Time Reported<br>12/30/2020 2345 hours | Received By (Employee Name)<br>Lieutenant Steven Cosner | ( X ) In Person ( ) By Phone<br>( ) Other ______ |
| Date and Time Occurred<br>12/28/2020 0000-0600 hours | Location of Occurrence<br>MBPD | |

| Reporting Party's Name | Race/Sex | D.O.B | Address | Telephone # |
|---|---|---|---|---|
| Lieutenant Steven Cosner | W/M | | Address: 1100 Washigton Ave., Miami Beach, Florida 33139 | |

**Specific Allegation (In Brief):** Failure to Supervise, Conduct Unbecoming, Insubordination, Neglect of Duty, Untruthfulness (lying/false statements), Performance of Duties, Failure to Monitor Radio

| Employee (s) Name | |
|---|---|
| 1. Sergeant Jessica Salabarria | 3. |
| 2. | 4. |

### Witnesses

| Name | Race/Sex | D.O.B | Address | Telephone |
|---|---|---|---|---|
| Lieutenant Steven Cosner<br>Officer Werner Baumer<br>Officer Richard Ocejo<br>Officer Steven Serrano<br>Officer Christopher Garrido<br>Officer Hansel Romero<br>Officer Rodolfo Albaladejo | W/M<br>W/M<br>W/M<br>W/M<br>W/M<br>W/M<br>W/M | | Resident: MBPD<br>Business: 1100 Washington Ave., Miami Beach, FL 33139 | |
| | | | Resident<br>Business | |

### Details of Allegation

On Sunday night, 12/27/2020 at approximately 2200 hours, I advised Sergeant Jessica Salabarria that we needed a Sergeant on overtime for the midnight shift. I told her that she was the next supervisor to be forced to work over since we did not have any volunteers for the position. She was told that she would be assigned to Area 3 and would be working from 0000-0600 hours. She acknowledged the order and within several minutes she provided me with an overtime slip completed by her in which she documented in her own handwriting that she was working in Area 3. She left the sergeant's office shortly thereafter. At approximately 0355 hours, I forwarded an email to Sergeant Salabarria with the details and watch orders that needed to be assigned to the Area 3 officers for completion prior to the end of their shift. I then sent a text message to her cellular phone advising her to check her email at 0359 hours. After a few minutes I did not receive an acknowledgement of the text message, so I tried to call her phone at 0404 hours. Then phone rang repeatedly and went to voicemail. I tried to raise her via the police radio immediately afterwards. The dispatcher raised her multiple times with no response. Sergeant Wilson Romero advised via radio that he would try to call her. He called me at 0411 hours to advise that he could not reach her and that her phone rang through to voicemail. I again tried to have the dispatcher raise her, and after several attempts by name and unit

C:\WPWIN60\WPDOCS\FORMS\MISCOND.FRM

number, she finally responded. The tone of her voice sounded as if she was just waking up. I spoke with her via the supervisor channel and asked her where she was. She told me that she was "05". I responded by asking if she meant, "05 at the NESS". She said no and that she was at the main station. I asked if she was aware that she was assigned to Area 3 and she answered affirmatively. I then ordered her to respond to Area 3 and to check her email.

I became involved in a vehicle stop along 71 street that resulted in an arrest at 0416. Officer Ocejo was one of the officers who responded as back-up. After the subject was transported, I waited on scene with Officer Ocejo as he waited for a tow truck. I asked Officer Ocejo to check his email to see if the details had been forwarded by Sergeant Salabarria. He told me that he did not have any emails from her. This was at approximately 0520 hours. At 0543 hours, I received an unsolicited text message from Sergeant Salabarria advising that she had emailed me the squad stats and the detail assignments. She claimed that she had told the officers via landline and email of their detail assignments. The email that she sent me was sent at 0536 hours. It included the squad stats and detail assignments. I called Officer Hansel Romero and asked him if he had received any emails, texts, or phone calls from Sergeant Salabarria advising him of detail assignments. He said that he did not and that she had only asked for stats in an email that was sent at 0521 hours. That email was forwarded to me by Officer Ocejo. I began calling all the officers assigned to Area 3 and inquired the same of each of them. Every one of the officers advised that they had not received a call or text advising of the details. Officer Romero then forwarded an email that he received from Sergeant Salabarria at 0542 hours. The email had been sent to each of the Area 3 officers. It was the detail assignments and began with a highlighted line stating, "squad per our conversation please note the below details for our shift". I found this very concerning because it was now the second time that she had claimed to have had a conversation with the officers about their assignments when all six of them claimed that never happened and they did not report to any assigned details during the shift.

I sent an email to Lieutenant Jorge Garcia asking for a Detail Report for Sergeant Salabarria's assigned marked vehicle via the AVL system. My inquiry was for her vehicle movement from 2200 hours on 12/27/2020 through 0600 hours on 12/28/2020. The Detail Report showed that her vehicle had been parked at the station from 2200 hours on 12/27/2020 until 0423 hours on 12/28/2020 which was a few minutes after we spoke on the supervisor channel. For a total of 6 hours and 23 minutes. It is unknown how long the vehicle had been parked prior to that. The report indicated that she left the station and drove directly to 73rd Street and Ocean Terrace where she again parked her vehicle at 0440 hours. The vehicle remained in that position until 0533 hours for a total of 53 minutes. She then left that location and drove directly to the MBPD headquarters.

Note that of the six officers assigned to Area 3 on the shift in question 4 of them have 2 years of experience or less.

Sergeant Salabarria's actions show a willful effort to deceive a supervisor and a failure to obey a direct order from said supervisor. She failed to report to her assigned zone and failed to supervise the officers under her watch. She failed on multiple occasions to respond to the police radio and showed extreme neglect in the performance of her duties.

# EXHIBIT G

# TO DECLARATION OF

# A.J. PRIETO

**From:** Prieto, AJ <AJPrieto@miamibeachfl.gov>
**Subject:** Sgt. Salabarria
**To:** Clements, Rick <RickClements@miamibeachfl.gov>
**Cc:** Michael Elkins <melkins@mlelawfirm.com>
**Sent:** January 25, 2021 9:00 AM (UTC-05:00)
**Attached:** Salabarria Laptop.jpg, POLISALJ - Excel Files U drive.JPG

Chief,

Sgt. Salabarria stated to us during the meeting that she was in her patrol car working on Officer Stella's evaluation on December 28-29, 2020. We located Officer Stella's evaluation on her laptop and it showed that Officer Stella's evaluation was not created until January 10, 2021 (see attached). We had the IT department check to see if Stella's evaluation was created or saved anywhere else in the network (U Drive, F Drive, Cloud, etc.) They did not located Stella's evaluation anywhere else in the network. The second attachment on this email shows all the Excel files that Sgt. Salabarria had on her U Drive. Lastly, if you closely at the screenshot of her laptop, you will notice the cloud symbol on the Stella file icon. This cloud icon indicates the file was never downloaded to her laptop.

MIAMIBEACH
**Commander A.J. Prieto**
**Office of the Chief of Police**
*Internal Affairs Unit*
Miami Beach Police Department
1100 Washington Avenue, Miami Beach, FL 33139
Tel: 305-673-7776 ext. 5649 Fax: 786-394-5198
ajprieto@miamibeachfl.gov

***Mission:*** *Address crime and community concerns.*

***Vision:*** *A safe and welcoming environment for everyone.*

***Values:*** *Honorable, Professional, and Resilient.*

*Our Daily Goals: Use innovative approaches to address crime; Maintain and enhance a professional and well trained workforce; Enhance the public's perception of the Miami Beach Police Department.*

Shape your future START HERE > | United States Census 2020

*Complete the Census today! Click Here*


Recycle Bin
CISCO Unity Voicemail
CareMC - CorVel's Cla...
New World LERMS
VMware Horiz...
JS FEMA
MBPD 2020 Handbook
Vincent Stella Evaluation ...
Case Supplemen...
City Clerk Laserfic...
Homeless Outreac...
WinZip
Patrol Stats
Sign In (1)
TargetSolut...
XProtect Smart Clie...
CMB Fishtank
Internet Explorer
Police Main Menu V2
Word
Microsoft Teams
Microsoft Teams - Copy
Acrobat Reader DC
David Website
iyeTek Admin Portal
PowerDMS
BlueTeam
Blue Team
CareMC - CorVel's Cla...
A-Form Thinkstream
Energov-P...
Law Enforceme...
PowerPoint
Microsoft Edge
Outlook
DAVID_ Driver and...
AXON
E-Notify
LexisNexis® Coplogic™...
Siemens Web Assistant
NWS Enterprise ...
Axon View XL
Axon Live Streaming
Barracuda e-mail ...
MB Fax
MDPD Photo Imaging
TAS Client
Patrol Stats
Adobe Digital Editions 4.5
Google Chrome
CISCO Self-Service
Excel
Munis Live v3
TeleStaff
Adobe Connect
Case Report 2021-6743...
Vincent Stella ID # 1065 2020 Annual Evaluation Propert...
General
Security
Details
Previous Versions
Vincent Stella ID # 1065 2020 Annual Evaluation
Type of file: Microsoft Excel Worksheet (.xlsx)
Opens with: Excel
Change...
Location: C:\Users\polisalj\OneDrive - City of Miami Beach\De
Size: 101 KB (103,759 bytes)
Size on disk: 0 bytes
Created: Sunday, January 10, 2021, 9:50:00 PM
Modified: Tuesday, January 12, 2021, 8:05:50 PM
Accessed: Sunday, January 17, 2021, 4:20:54 PM
Attributes: Read-only Hidden
Advanced...
OK
Cancel
Apply
Type here to search

Search Results in POLISalJ ▾

*.xlsx

Tools Help

ve search

es

C:)
E:)

.gov
CH1483

| Name | Date modified | Type | Size | Folder |
|---|---|---|---|---|
| South of Fifth Officers.xlsx | 11/19/2019 4:11 PM | Microsoft Excel Worksheet | 18 KB | SUPERVISOR FORMS, EMAIL TEMPLATES (\\miamibeach.gov\files\Users\poli\POLISalJ\SUPERVISOR FOLDER) |
| Alex Piedra ID # 852 2019 Annual Evaluation.xlsx | 10/24/2019 12:35 AM | Microsoft Excel Worksheet | 102 KB | 2019 (\\miamibeach.gov\files\Users\poli\POLISalJ\SUPERVISOR FOLDER\OFFICERS INFORMATION\EVALUATIONS) |
| Frederick Dominguez ID # 880 2017 Annual Evaluation.xlsx | 10/23/2019 11:34 PM | Microsoft Excel Worksheet | 94 KB | 2017 (\\miamibeach.gov\files\Users\poli\POLISalJ\SUPERVISOR FOLDER\OFFICERS INFORMATION\EVALUATIONS) |
| 19 Salabarria Annual Sergeant.xlsx | 9/19/2019 2:07 PM | Microsoft Excel Worksheet | 104 KB | My Evaluations (\\miamibeach.gov\files\Users\poli\POLISalJ\SUPERVISOR FOLDER\OFFICERS INFORMATION\EVALUATIONS) |
| 19 Salabarria Annual Evaluation.xlsx | 8/10/2019 11:19 AM | Microsoft Excel Worksheet | 104 KB | My Evaluations (\\miamibeach.gov\files\Users\poli\POLISalJ\SUPERVISOR FOLDER\OFFICERS INFORMATION\EVALUATIONS) |
| 18 Kenne Espada - Completion of Probation.xlsx | 8/11/2018 12:47 AM | Microsoft Excel Worksheet | 85 KB | Action Plan Observation Emails, Demotion, Probation, Reinstatement, FTS, 2017-2020 (\\miamibeach.gov\files\Users\poli\POLISalJ\SUPERVISOR FOLDER\EMAILS) |
| Elizabeth Vidal ID # 1084 2018 Annual Evaluation.xlsx | 6/18/2018 2:16 PM | Microsoft Excel Worksheet | 106 KB | 2018 (\\miamibeach.gov\files\Users\poli\POLISalJ\SUPERVISOR FOLDER\OFFICERS INFORMATION\EVALUATIONS) |
| Robert Sabater ID # 997 2018 Annual Evaluation.xlsx | 1/13/2018 11:13 AM | Microsoft Excel Worksheet | 100 KB | 2018 (\\miamibeach.gov\files\Users\poli\POLISalJ\SUPERVISOR FOLDER\OFFICERS INFORMATION\EVALUATIONS) |
| Nelson Gonzalez ID # 996 2018 Annual Evaluation.xlsx | 1/13/2018 11:07 AM | Microsoft Excel Worksheet | 110 KB | 2018 (\\miamibeach.gov\files\Users\poli\POLISalJ\SUPERVISOR FOLDER\OFFICERS INFORMATION\EVALUATIONS) |
| Manuel Cano ID # 998 2018 Annual Evaluation.xlsx | 1/13/2018 8:10 AM | Microsoft Excel Worksheet | 107 KB | 2018 (\\miamibeach.gov\files\Users\poli\POLISalJ\SUPERVISOR FOLDER\OFFICERS INFORMATION\EVALUATIONS) |
| Gustavo Villamil ID # 1003 2018 Annual Evaluation.xlsx | 1/13/2018 7:46 AM | Microsoft Excel Worksheet | 109 KB | 2018 (\\miamibeach.gov\files\Users\poli\POLISalJ\SUPERVISOR FOLDER\OFFICERS INFORMATION\EVALUATIONS) |
| 17 Salabarria, Jessica - Annual.xlsx | 11/16/2017 2:41 PM | Microsoft Excel Worksheet | 86 KB | My Evaluations (\\miamibeach.gov\files\Users\poli\POLISalJ\SUPERVISOR FOLDER\OFFICERS INFORMATION\EVALUATIONS) |
| Michael Garcia ID # 1046 2017 Annual Evaluation.xlsx | 9/9/2017 6:40 AM | Microsoft Excel Worksheet | 106 KB | 2017 (\\miamibeach.gov\files\Users\poli\POLISalJ\SUPERVISOR FOLDER\OFFICERS INFORMATION\EVALUATIONS) |
| Frederick Dominguez ID # 880 2017 Annual Evaluation (2).xlsx | 8/12/2017 11:33 AM | Microsoft Excel Worksheet | 96 KB | 2017 (\\miamibeach.gov\files\Users\poli\POLISalJ\SUPERVISOR FOLDER\OFFICERS INFORMATION\EVALUATIONS) |
| David Socarres ID # 849 Mid-Term.xlsx | 6/17/2017 10:42 AM | Microsoft Excel Worksheet | 119 KB | 2017 (\\miamibeach.gov\files\Users\poli\POLISalJ\SUPERVISOR FOLDER\OFFICERS INFORMATION\EVALUATIONS) |
| Gustavo Villamil ID # 1003 Mid-Term.xlsx | 6/17/2017 10:37 AM | Microsoft Excel Worksheet | 119 KB | 2017 (\\miamibeach.gov\files\Users\poli\POLISalJ\SUPERVISOR FOLDER\OFFICERS INFORMATION\EVALUATIONS) |
| Manuel Cano ID # 998 Mid-Term.xlsx | 6/17/2017 10:35 AM | Microsoft Excel Worksheet | 119 KB | 2017 (\\miamibeach.gov\files\Users\poli\POLISalJ\SUPERVISOR FOLDER\OFFICERS INFORMATION\EVALUATIONS) |
| Robert Sabater ID # 997 Mid-Term.xlsx | 6/17/2017 10:32 AM | Microsoft Excel Worksheet | 119 KB | 2017 (\\miamibeach.gov\files\Users\poli\POLISalJ\SUPERVISOR FOLDER\OFFICERS INFORMATION\EVALUATIONS) |
| Nelson Gonzalez ID # 996 Mid-Term.xlsx | 6/17/2017 10:27 AM | Microsoft Excel Worksheet | 119 KB | 2017 (\\miamibeach.gov\files\Users\poli\POLISalJ\SUPERVISOR FOLDER\OFFICERS INFORMATION\EVALUATIONS) |
| 17 Salabarria Annual.xlsx | 1/30/2017 12:34 PM | Microsoft Excel Worksheet | 131 KB | My Evaluations (\\miamibeach.gov\files\Users\poli\POLISalJ\SUPERVISOR FOLDER\OFFICERS INFORMATION\EVALUATIONS) |
| 16 Salabarria, Jessica Annual.xlsx | 3/31/2016 2:22 PM | Microsoft Excel Worksheet | 97 KB | My Evaluations (\\miamibeach.gov\files\Users\poli\POLISalJ\SUPERVISOR FOLDER\OFFICERS INFORMATION\EVALUATIONS) |
| 14 Salabarria, Jessica annual NEW EVAL FORMAT.xlsx | 1/19/2014 11:39 PM | Microsoft Excel Worksheet | 174 KB | My Evaluations (\\miamibeach.gov\files\Users\poli\POLISalJ\SUPERVISOR FOLDER\OFFICERS INFORMATION\EVALUATIONS) |

Search again in:

Libraries Computer Custom... Internet File Contents

# EXHIBIT H
# TO DECLARATION OF
# A.J. PRIETO

# Sgt. Jessica Salabarria

ALLEGATION OF EMPLOYEE MISCONDUCT 12/28/2020

# Allegations

- Failure to Supervise
- Conduct Unbecoming
- Insubordination
- Neglect of Duty
- Untruthfulness
- Performance of Duties
- Failure to Monitor Radio

# Telestaff

- Sgt. Salabarria was scheduled to work the afternoon shift (1400-0000).

- Due to staffing, Lt. Cosner advised Sgt. Salabarria that she was being forced to work as the Area 3 Sergeant for the midnight shift (0000-0600).

- Sgt. Salabarria acknowledges verbally and in writing that she is assigned to Area 3. Prior to 0000 hours she submits a signed OT slip to Lt. Cosner, where she writes that her assignment is in Area 3.

# 12/27/2020 arriving for her shift.

- Keycard- Sgt. Salabarria uses her issued key card to enter the station via 11 street gate 10 minutes late at 1410 hours.
- Sgt. Salabarria does not arrive in her assigned police vehicle (17004). She is observed driving a dark SUV bearing FL Tag NYTV70. Vehicle is registered to Ofc. Nick Guasto.
- AVL reading indicated that Sgt. Salabarria’s police vehicle was in the station garage at the beginning of the shift and does not turn on until 1749 hours.

# 12/27/20 CCTV

- Sgt. Salabarria arriving at 1410 hours via 11 St gate.



# AVL locations for vehicle 17704

- Avl for vehicle number 17704 indicates that Sgt. Salabarria leaves the station at 1753 via 11 St and drives around Area 1 and Area 2.
- Returns to the station via 12 St gate at 2040.
- Vehicle shuts off between the 2nd and 3rd floor of the station garage at 2042.
- Sgt Salabarria then enters the station via 3rd floor using her key card at 2044 hours. She then exits the building and turns her vehicle on at 2056 hours.
- Vehicle remains on and stationary at the station from 2056 hours until 2212 hours where it is turned off.
- Sgt. Salabarria enters the station at 2212 via second floor garage doors. She then exits the station at 2227 via the same doors and is not observed on camera again until her vehicle drives out of the station at 0424 hours. Her police vehicle is off during this time period.

# Continued CCTV

- Image #1- Sgt. Salabarria exiting the station via second floor garage door – 2227 hours.

- Image#2- Vehicle #17004 assigned to Sgt. Salabarria exiting the station via 12 St. Consistant with AVL. – 0424 hours.






# 12/28/20 AVL/CCTV/Keycard

- AVL indicates that Sgt. Salabarria's vehicle (17004) responds to Area 3 and remains stationary at 3 73rd St from 0440-0533.
- The vehicle then travels back to the South and arrives at the station via 11 St. at 0549 hours.
- Sgt. Salabarria is then observed keying in at the 11 St gate at 0549 via CCTV.
- Sgt. Salabarria keys into the station via 1st Floor rear door to what appears to be her docking her BWC.
- Her vehicle then drives up the garage and becomes stationary between the 2nd and 3rd floor. Shutting off at 0601.
- The same dark colored SUV that Sgt. Salabarria was observed arriving in, exits the parking lot at 0605 hours.

# CCTV Images

- Image 1- Sgt Salabarria arriving at the station at 0549 hours.

- Vehicle Sgt. Salabarria arrived in exiting via 11 St at 0605 hours.






# Key card Printout 12-27 thru 12-28

- Key card times are approximately 4 minutes ahead of AVL and CCTV.

bits 008-12652

| | | | | | | |
|---|---|---|---|---|---|---|
| Sun | 12/27/2020 14:14:33 | Unlock<br>Extra Info: Unlock SALABARRIA, JESSICA Wiegand 26 bits 008-12652 | MBPD | P111-11ST GATE -1 | SALABARRIA, JESSICA | Wiegand 26 bits 008-12652 |

Page 36 of 37 - 1/6/2021 -14:34

| Date & Time | | Action | Site | Device | Name/Other Info. | Key/Card Code |
|---|---|---|---|---|---|---|
| Sun | 12/27/2020 15:52:26 | Unlock<br>Extra Info: Unlock SALABARRIA, JESSICA Wiegand 26 bits 008-12652 | MBPD | P111-11ST GATE -1 | SALABARRIA, JESSICA | Wiegand 26 bits 008-12652 |
| Sun | 12/27/2020 20:49:58 | Unlock<br>Extra Info: Unlock SALABARRIA, JESSICA Wiegand 26 bits 008-12652 | MBPD | 338-GARAGE ENT -26 | SALABARRIA, JESSICA | Wiegand 26 bits 008-12652 |
| Mon | 12/28/2020 05:53:29 | Unlock<br>Extra Info: Unlock SALABARRIA, JESSICA Wiegand 26 bits 008-12652 | MBPD | P111-11ST GATE -1 | SALABARRIA, JESSICA | Wiegand 26 bits 008-12652 |
| Mon | 12/28/2020 05:54:32 | Unlock<br>Extra Info: Unlock SALABARRIA, JESSICA Wiegand 26 bits 008-12652 | MBPD | 135-GARAGE ENT -4 | SALABARRIA, JESSICA | Wiegand 26 bits 008-12652 |
| Mon | 12/28/2020 14:23:50 | Unlock<br>Extra Info: Unlock SALABARRIA, JESSICA Wiegand 26 bits 008-12652 | MBPD | 338-GARAGE ENT -26 | SALABARRIA, JESSICA | Wiegand 26 bits 008-12652 |
| Mon | 12/28/2020 14:31:25 | Unlock<br>Extra Info: Unlock SALABARRIA, JESSICA Wiegand 26 bits 008-12652 | MBPD | 238-GARAGE ENT-19 | SALABARRIA, JESSICA | Wiegand 26 bits 008-12652 |
| Mon | 12/28/2020 17:46:48 | Unlock<br>Extra Info: Unlock SALABARRIA, JESSICA Wiegand 26 bits 008-12652 | MBPD | P102- 12ST GATE -2 | SALABARRIA, JESSICA | Wiegand 26 bits 008-12652 |
| Mon | 12/28/2020 18:31:12 | Unlock<br>Extra Info: Unlock SALABARRIA, JESSICA Wiegand 26 bits 008-12652 | MBPD | 238-GARAGE ENT-19 | SALABARRIA, JESSICA | Wiegand 26 bits 008-12652 |
| Mon | 12/28/2020 20:36:46 | Unlock<br>Extra Info: Unlock SALABARRIA, JESSICA Wiegand 26 bits 008-12652 | MBPD | 135-GARAGE ENT -4 | SALABARRIA, JESSICA | Wiegand 26 bits 008-12652 |
| Tue | 12/29/2020 19:36:01 | Unlock<br>Extra Info: Unlock SALABARRIA, JESSICA Wiegand 26 bits 008-12652 | MBPD | 238-GARAGE ENT-19 | SALABARRIA, JESSICA | Wiegand 26 bits 008-12652 |

Page 37 of 37 - 1/6/2021 -14:34

# EXHIBIT I

# TO DECLARATION OF

# A.J. PRIETO

MIAMIBEACH POLICE

# MEMORANDUM

TO: Sergeant, Jessica Salabarria

FROM: Rick Clements, Chief of Police

DATE: January 25, 2021

RE: Implementing Letter of Resignation

---

On December 18, 2020, you entered into a Last Chance Agreement ("Agreement"). A copy of that Agreement is attached as Exhibit A. Additionally, as part of the Agreement, on that same date you signed a Letter of Resignation ("Resignation"). A copy of that Resignation is attached as Exhibit B.

Based on the violations outlined below, and per the Agreement, I am implementing the Resignation, effective immediately and as of the date indicated on Resignation attached as Exhibit B.

Specifically, on December 30, 2020, Lieutenant, Steven Cosner submitted an Allegation of Employee Misconduct ("AEM"). A copy of the AEM is attached as Exhibit C. The allegations of the AEM are incorporated in full herein.

On January 19, 2021, I held a meeting with you to discuss the allegations in the AEM. In addition to you and I, also present at that meeting was:

- Wayne Jones, Deputy Chief
- Paul Ozaeta, Lieutenant (FOP President)
- Arley Flaherty, Sergeant (FOP First Vice President)
- Reggie Lester, Sergeant (FOP Second Vice President)
- Delvin Brown, Lieutenant (FOP Grievance Chairman)
- Steven Cosner, Lieutenant
- A.J. Prieto, Captain Internal Affairs.

During the meeting, you were provided a copy of the "AEM" and given the opportunity to review the "AEM" in full. After your review, you informed me that, despite being assigned to the North District, you did not report to the North District. Instead, you remained in your assigned City vehicle, stationary at the City's main police station. You further informed me that while in your vehicle at the police station (for what was at or around four (4) plus hours) you worked on administrative issues (an employee evaluation

for Police Officer Vincent Stella) and worked on your "school work." The "school work" at issue is not work assigned by the City. You informed me that, independent from the City, you are working toward a Master's Degree.

Further, you acknowledged that you missed two radio calls specifically to you from Lieutenant Cosner and a phone call from Lieutenant Cosner to your personal cell phone. Ultimately, you did not respond to the North End Sub-Station (in the North District) until approximately 4:20 a.m., and only after being told to do so by Lieutenant Cosner. You further acknowledged that despite receiving an email from Lieutenant Cosner at approximately 3:20 a.m. directing you to have certain officers perform certain assignments, you did not issue the assignments until after 4:20 a.m., and only after speaking with Lieutenant Cosner. You again indicated to me that prior to speaking to Lieutenant Cosner at 4:20 a.m., you were focused on the employee evaluation and your independent school work.

In speaking with Lieutenant Cosner during this meeting, he indicated, among other things that you informed him that you had conveyed the assignment details, when in fact, you had not. You conveyed the assignment details after speaking to Lieutenant Cosner despite telling him you had already done so.

Moreover, Lieutenant Cosner indicated in this meeting that you did not leave the main police station during most of your shift and only left the police station when instructed to do so by Lieutenant Cosner.

The above is only a summary of the events of the January 19, 2021 meeting.

After the meeting, the City reviewed your City issued laptop computer, which is the computer that you would have used to work on Officer Stella's evaluation. A review of the laptop shows that Officer Stella's evaluation was not created until January 10, 2021. The City's Information Technology Department confirmed that Officer Stella's evaluation was not created or saved anywhere else on the City's system.

Pursuant to paragraph 4 of the Agreement, I determine that you have not complied with the Agreement and engaged in conduct that is beyond an individual, discreet or minor policy violation. Pursuant to paragraph 4 of the Agreement, my decision in this regard is not subject to review or explanation. Accordingly, as stated above, I am implementing your Resignation.

# EXHIBIT A

DocuSign Envelope ID: CC3C604A-8185-4007-95EB-8735D7C89FEF

# LAST CHANCE AGREEMENT

THIS LAST CHANCE AGREEMENT is entered into between the CITY OF MIAMI BEACH, FLORIDA (hereinafter, the "City"), FRATERNAL ORDER OF POLICE, (hereinafter, "the Union") and JESSICA SALABARRIA (hereinafter, "SALABARRIA" or "Employee").

WHEREAS, SALABARRIA is employed by the City as a Police Officer in the City's Police Department.

WHEREAS, SALABARRIA is subject to the terms and conditions of employment contained in the Collective Bargaining Agreement between the Union and the City effective October 1, 2018 through September 30, 2021;

WHEREAS, SALABARRIA is the subject of an Internal Affairs ("IA") Investigation, IA Case Number 2020-010, which arose from SALABARRIA's involvement in not being on-duty when she was supposed to be, and from SALABARRIA's claims of being on-duty in the City when she was actually outside the City;

WHEREAS, the City wishes to continue to employ Employee, Employee wishes to continue to be employed by the City, and the FOP desires for Employee to continue to be employed under the terms and conditions described herein; and

WHEREAS, the Employee admits that she committed misconduct in association with IA Case Number 2020-010 and was in violation of numerous City and Police Department policies and the City Personnel Rules for the Classified Service; and

WHEREAS, the purposes of this Agreement, with which all the Parties concur, include: to protect and preserve the integrity of the Police Department and all its officers and to give Employee the opportunity to further and support that purpose; and to give Employee the

opportunity to rehabilitate herself personally and as a police sergeant for the City and this Department; and to give Employee an opportunity to preserve her career.

NOW, THEREFORE, without establishing precedent for any purpose and intending to be bound, the Parties agree as follows:

1. All of the above statements are true and correct to the best of the Parties' belief and knowledge and for a five (5) year period beginning with the execution of this Agreement by all parties, SALABARRIA will be subject to the provisions of this Agreement.

2. During this period, SALABARRIA must be on-duty and in the City limits during all of her scheduled shifts unless given prior authorization. For the avoidance of confusion, this means that, during the terms of this Agreement, SALABARRIA shall not be outside the City limits when she is on-duty, shall not tell the City she's on-duty when she is outside the City's limits, and shall not leave before the end of her scheduled shift, unless given prior authorization.

3. Additionally, SALABARRIA shall refrain from violating any City or Police Department policies, rules or regulations; Standard Operating Procedures ("SOPs") or Personnel Rules, all of which (including any amendments or additions) are incorporated herein by reference. In any instance during which City or Police Department policies, procedures or Personnel Rules differ from or conflict with the stipulations set forth in the applicable collective bargaining agreement, the City or Police Department policies, procedures or Personnel Rules shall prevail.

4. The Chief of Police shall exclusively assess and determine Employee's compliance with this Agreement. The Chief's decision as to compliance with this Agreement shall not be subject to any grievance and/or review of any kind by SALABARRIA and/or the Union and is not subject to explanation or review.

CITY UNION JESSICA

DocuSign Envelope ID: CC3C604A-8185-4007-95EB-8735D7C89FEF

5. Failure to comply with any portion or requirement of this Agreement (including but not limited to the requirement not to violate any City or Police Department policies, Standard Operating Procedures ("SOPs") or Personnel Rules, as referenced in paragraph 3 above) may result in the immediate implementation of the attached letter of resignation as referenced in paragraph 9 below. It is the intent and understanding of the parties that the violations contemplated to trigger the implementation of the attached letter of resignation shall not be for individual, discreet minor policy and procedural violations. The parties agree that repeated violation of the same, discreet minor policy may result in an event triggering the implementation of the attached letter of resignation. In that event, the Employee and the Union understand and agree there will be no recourse or review available pursuant to any grievance, appeal or review process under any federal, state or local statute, ordinance, collective bargaining agreement, or in any other forum or under any other process or procedure.

6. SALABARRIA shall serve a four-week (160 hour) suspension without pay and waive any and all rights to grieve or appeal that suspension. Employee shall also be subject to the additional provisions of the Settlement Agreement to which this Agreement is attached and is made part of via incorporation by reference.

7. Further, for the same five (5) year period described above, the Chief of Police shall have full discretion regarding Employee's assignments, including, without limitation, duties, supervisor and chain of command. Employee shall have the ability to bid for shift and days off, if the employee is reassigned her duty hours and days off shall remain the same.

8. For a period of one (1) year from the date of execution of this Agreement, Employee is not eligible for any promotional opportunities.

CITY | UNION | JESSICA

DocuSign Envelope ID: CC3C604A-8185-4007-95EB-8735D7C89FEF

9. Employee shall sign an irrevocable letter of resignation which shall take effect immediately upon her violation of this Agreement or any part of it at any time during the term of this Last Chance Agreement. .

10. Employee shall attend and cooperate with any training required by the Chief of Police.

11. If during the above-referenced five (5) year period, SALABARRIA violates any provisions of this agreement or any City or Police Department policies, Standard Operating Procedures ("SOPs") or Personnel Rules and/or regulations as previously referenced in paragraph #4 , her resignation shall be effective , without the right to grieve or otherwise contest, in any manner, her separation. .

12. In the event that SALABARRIA is separated pursuant to the terms and conditions of this Last Chance Agreement, she and the Union understand that her separation is not subject to appeal pursuant to the contractual grievance/arbitration procedure, or otherwise. In other words, SALABARRIA agrees that should she be separated pursuant to the terms of this agreement that she waives her right to utilize the contractual grievance and arbitration procedure and she further waives the right to challenge or appeal her separation pursuant to any administrative or statutory avenue that may exist.

13. The City retains the right to rely upon the facts and circumstances of the events from which this Last Chance Agreement arose in any future proceeding in the event the Employee successfully meets the terms and conditions referred to in this Agreement but thereafter has deficiencies in conduct or performance, and such deficiencies shall be sufficient to warrant discipline, including dismissal.

CITY UNION JESSICA

DocuSign Envelope ID: CC3C604A-8185-4007-95EB-8735D7C89FEF

14. It is understood and agreed by all parties hereto that this Last Chance Agreement is executed based on the particular circumstances of this case and does not establish precedent for the resolution of other cases.

15. SALABARRIA acknowledges that she could be terminated from her employment from the City as a result of her conduct as referenced above and that remaining employed by the City is adequate consideration for entering into this Last Chance Agreement, serving the suspension without pay and waiving the rights described herein and in the Settlement Agreement.

16. SALABARRIA being of lawful age, for and in consideration of the above-action agreed to by the City, and other valuable consideration received from or on behalf of the City, receipt whereof is hereby acknowledged, does hereby release, acquit, satisfy and forever discharge the City, as well as each and everyone of the City's former and current officers, agents, attorneys, employees and officials -- in both their official and individual capacities -- and their successors and assigns, from any and all claims, cause and causes of action, grievances, unfair labor practice charges, lawsuits, claims of employment discrimination (including, but not limited to claims under the Americans With Disabilities Act), and any and all other claims and demands whatsoever, in law or in equity, tort or contract, which SALABARRIA has or may have against the above-named individuals in both their individual and official capacities, from the beginning of the world until today, including, but not limited to, all matters concerning or arising out of her employment with the CITY, her discipline stemming from the incidents described in this Last Chance Agreement and the execution of this Last Chance Agreement.

17. It is understood and agreed that this Last Chance Agreement does not constitute an admission by the City or SALABARRIA of any violation of the collective bargaining

DocuSign Envelope ID: CC3C604A-8185-4007-95EB-8735D7C89FEF

agreement. This Last Chance Agreement is being entered into by the parties solely for the purpose of avoiding the expense and inconvenience of further administrative proceedings.

18. SALABARRIA has received and reviewed this Last Chance Agreement prior to executing it and she agrees to be bound by its terms and conditions.

19. Prior to signing this Last Chance Agreement, SALABARRIA had the opportunity, and did, in fact, consult with her attorney and/or with the Union.

20. This Last Chance Agreement, and the Settlement Agreement which is attached constitutes the entire understanding and agreement of the parties hereto, and can be modified, amended or revoked only by express written consent of all parties.

21. This Last Chance Agreement shall be governed by and construed in accordance with the laws of the State of Florida, and where applicable, federal laws. The language of this Last Chance Agreement shall be construed as a whole, according to its fair meaning, and not strictly construed for or against either party.

22. In the event that any party to this Last Chance Agreement institutes legal proceedings regarding the terms of this Last Chance Agreement, it is stipulated and agreed that such a claim shall be heard and determined by the court, and not by a jury, in Miami-Dade County, Florida. **SALABARRIA AGREES AND UNDERSTANDS THAT SHE IS WAIVING THE RIGHT TO A JURY TRIAL, IF ONE EXISTS, AS TO ANY CLAIM REGARDING THE TERMS OF THIS AGREEMENT.**

CITY UNION JESSICA

This Agreement is dated the ____ day of December 2020, in Miami-Dade County, Florida.

**JESSICA SALABARRIA**

Date: 12/18/2020

DocuSigned by:
Paul J. Aguila
2B3D6240F92B45D...
**CITY MANAGER**
**CITY OF MIAMI BEACH**

Date: 12/23/2020 | 1:34 EST

**FRATERNAL ORDER OF POLICE**

President
Signature & Title

Kevin Millan President
Print Name & Title

12/18/2020
Date

**CHIEF OF POLICE**

12/18/2020
Date

# EXHIBIT B

December 18, 2020

City of Miami Beach
Human Resources Department
Miami Beach City Hall
1700 Convention Center Drive
Miami Beach, FL 33139

Re: *Letter of Resignation as Part of Settlement Agreement and Last Chance Agreement*

To Whom It May Concern:

Pursuant to the Settlement Agreement and Last Chance Agreement to which this Letter of Resignation is attached, I resign my employment with the City of Miami Beach, effective January 25, 2021.

Very Truly Yours,

Jessica Salabarria.

# EXHIBIT C

# MIAMI BEACH POLICE DEPARTMENT
## Initial Report Concerning a Police Employee - Allegation of Employee Misconduct

| | | | | |
|---|---|---|---|---|
| Date and Time Reported<br>12/30/2020 2345 hours | Received By (Employee Name)<br>Lieutenant Steven Cosner | | ( X ) In Person ( ) By Phone<br>( ) Other ______ | |
| Date and Time Occurred<br>12/28/2020 0000-0600 hours | Location of Occurrence<br>MBPD | | | |
| Reporting Party's Name<br>Lieutenant Steven Cosner | Race/Sex<br>W/M | D.O.B | Address: 1100 Washigton Ave., Miami Beach, Florida 33139 | Telephone # |

Specific Allegation (In Brief): Failure to Supervise, Conduct Unbecoming, Insubordination, Neglect of Duty, Untruthfulness (lying/false statements), Performance of Duties, Failure to Monitor Radio

| Employee (s) Name | |
|---|---|
| 1. Sergeant Jessica Salabarria | 3. |
| 2. | 4. |

### Witnesses

| Name | Race/Sex | D.O.B | Address | Telephone |
|---|---|---|---|---|
| Lieutenant Steven Cosner<br>Officer Werner Baumer<br>Officer Richard Ocejo<br>Officer Steven Serrano<br>Officer Christopher Garrido<br>Officer Hansel Romero<br>Officer Rodolfo Albaladejo | W/M<br>W/M<br>W/M<br>W/M<br>W/M<br>W/M<br>W/M | | Resident: MBPD<br>Business: 1100 Washington Ave., Miami Beach, FL 33139 | |
| | | | Resident<br>Business | |

### Details of Allegation

On Sunday night, 12/27/2020 at approximately 2200 hours, I advised Sergeant Jessica Salabarria that we needed a Sergeant on overtime for the midnight shift. I told her that she was the next supervisor to be forced to work over since we did not have any volunteers for the position. She was told that she would be assigned to Area 3 and would be working from 0000-0600 hours. She acknowledged the order and within several minutes she provided me with an overtime slip completed by her in which she documented in her own handwriting that she was working in Area 3. She left the sergeant's office shortly thereafter. At approximately 0355 hours, I forwarded an email to Sergeant Salabarria with the details and watch orders that needed to be assigned to the Area 3 officers for completion prior to the end of their shift. I then sent a text message to her cellular phone advising her to check her email at 0359 hours. After a few minutes I did not receive an acknowledgement of the text message, so I tried to call her phone at 0404 hours. Then phone rang repeatedly and went to voicemail. I tried to raise her via the police radio immediately afterwards. The dispatcher raised her multiple times with no response. Sergeant Wilson Romero advised via radio that he would try to call her. He called me at 0411 hours to advise that he could not reach her and that her phone rang through to voicemail. I again tried to have the dispatcher raise her, and after several attempts by name and unit

number, she finally responded. The tone of her voice sounded as if she was just waking up. I spoke with her via the supervisor channel and asked her where she was. She told me that she was "05". I responded by asking if she meant, "05 at the NESS". She said no and that she was at the main station. I asked if she was aware that she was assigned to Area 3 and she answered affirmatively. I then ordered her to respond to Area 3 and to check her email.

I became involved in a vehicle stop along 71 street that resulted in an arrest at 0416. Officer Ocejo was one of the officers who responded as back-up. After the subject was transported, I waited on scene with Officer Ocejo as he waited for a tow truck. I asked Officer Ocejo to check his email to see if the details had been forwarded by Sergeant Salabarria. He told me that he did not have any emails from her. This was at approximately 0520 hours. At 0543 hours, I received an unsolicited text message from Sergeant Salabarria advising that she had emailed me the squad stats and the detail assignments. She claimed that she had told the officers via landline and email of their detail assignments. The email that she sent me was sent at 0536 hours. It included the squad stats and detail assignments. I called Officer Hansel Romero and asked him if he had received any emails, texts, or phone calls from Sergeant Salabarria advising him of detail assignments. He said that he did not and that she had only asked for stats in an email that was sent at 0521 hours. That email was forwarded to me by Officer Ocejo. I began calling all the officers assigned to Area 3 and inquired the same of each of them. Every one of the officers advised that they had not received a call or text advising of the details. Officer Romero then forwarded an email that he received from Sergeant Salabarria at 0542 hours. The email had been sent to each of the Area 3 officers. It was the detail assignments and began with a highlighted line stating, "squad per our conversation please note the below details for our shift". I found this very concerning because it was now the second time that she had claimed to have had a conversation with the officers about their assignments when all six of them claimed that never happened and they did not report to any assigned details during the shift.

I sent an email to Lieutenant Jorge Garcia asking for a Detail Report for Sergeant Salabarria's assigned marked vehicle via the AVL system. My inquiry was for her vehicle movement from 2200 hours on 12/27/2020 through 0600 hours on 12/28/2020. The Detail Report showed that her vehicle had been parked at the station from 2200 hours on 12/27/2020 until 0423 hours on 12/28/2020 which was a few minutes after we spoke on the supervisor channel. For a total of 6 hours and 23 minutes. It is unknown how long the vehicle had been parked prior to that. The report indicated that she left the station and drove directly to 73rd Street and Ocean Terrace where she again parked her vehicle at 0440 hours. The vehicle remained in that position until 0533 hours for a total of 53 minutes. She then left that location and drove directly to the MBPD headquarters.

Note that of the six officers assigned to Area 3 on the shift in question 4 of them have 2 years of experience or less.

Sergeant Salabarria's actions show a willful effort to deceive a supervisor and a failure to obey a direct order from said supervisor. She failed to report to her assigned zone and failed to supervise the officers under her watch. She failed on multiple occasions to respond to the police radio and showed extreme neglect in the performance of her duties.