UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:22-cv-21004-MD

**JESSICA GUASTO**,

     Plaintiff,

vs.

**THE CITY OF MIAMI BEACH, FL**,
a Florida municipality,

     Defendant.

_____/

## DECLARATION OF MICHAEL SMITH PURSUANT TO 28 U.S.C. § 1746 IN SUPPORT OF DEFENDANT'S FULLY DISPOSITIVE MOTION FOR SUMMARY JUDGMENT

1.     My name is Michael Smith.

2.     I make this Declaration pursuant to 28 U.S.C. § 1746, and in Support of the City of Miami Beach's ("City") Fully Dispositive Motion for Summary Judgment.

3.     Pursuant to 28 U.S.C. § 1746(2), I executed this Declaration in the United States of America.

4.     The information herein is based on my personal knowledge.

**Public Sector Employment Background**

5.     From 2016 until November 2021, I was the Director of Human Resources ("Director") for the City of Miami Beach.

6.     Prior to being the Director at the City of Miami Beach, from 2001 – 2016, I was the Director of Human Resources for the City of Pompano Beach.

7.     From 1995 – 2001, I was the City Manager for the City of Dania Beach.

8.     I am currently retired.

9.      A complete and accurate copy of my Curriculum Vitae is attached as **Exhibit A** to this Declaration and is incorporated by reference in full herein.

**General Job Duties As Director and Assistant Director**

10.      When I was Director, the City had approximately 2,200 employees and five (5) unions which represent five (5) bargaining units.

11.      As Director my duties were as follows:

   i.   Assist with supervision of the entire Human Resources Department which is comprised of approximately twenty-nine (29) employees.

   ii.  Focus primarily in the areas of Employee and Labor Relations, Recruitment, and Compensation.

   iii. Participate in disciplinary matters with employees and unions.

   iv.  Represent management in collective bargaining negotiations and all labor relations matters.

   v.   Work closely with the City's Pension Department.

**The Settlement Agreement and the Last Chance Agreement**

12.      On April 23, 2020, Internal Affairs ("IA") at the City of Miami Beach received an Allegation of Employee of Misconduct regarding Plaintiff.

13.      On May 4, 2020, Plaintiff was notified that she was under investigation by IA in IA Case No. 2020-010 (the "IA Case").

14.      On July 13, 2020, Plaintiff filed EEOC Charge No. 510-2020-04794 (the "2020 Charge").

15.      On November 2, 2020, I attended a meeting in the Chief of Police Conference Room at the Police Department Building (the "November Meeting").

16.     The November Meeting was a confidential settlement meeting between the City, Plaintiff, The Fraternal Order of Police, William Nichols Lodge No. 8 ("FOP"), and Plaintiff's privately hired attorney, Michael Pancier, Esq.

17.     The FOP is, and was in November 2020, the exclusive bargaining representative for a bargaining unit of City police employees.

18.     Plaintiff was a member of the FOP.

19.     The purpose of the November Meeting was to discuss possible settlement of the IA Case and the 2020 Charge.

20.     At the November Meeting, the following individuals were representing Plaintiff:

     i.   Eugene Gibbons, Esq. (Plaintiff's attorney provided by the FOP);

     ii.  Michael Pancier, Esq. (Plaintiff's attorney hired privately by Plaintiff); and

     iii. Kevin Millan (then President of the FOP).

21.     At the beginning of the November Meeting, Eugene Gibbons gave a speech reminding everyone that the November Meeting was a confidential settlement meeting and that anything said in the November Meeting could not be used in any future proceeding.

22.     The fact that the November Meeting was a confidential settlement meeting meant that in the event Plaintiff was ever interrogated by IA in a subject-officer interview pursuant to Florida Statute § 112.532, nothing said or presented in the November Meeting could be used against Plaintiff by the City.

23.     The November Meeting was not a subject-officer interview pursuant to Florida Statute § 112.532.

24.     Plaintiff was never interrogated during the November Meeting.

25.     At no point during the November Meeting ***did any one of Plaintiff's two attorney's*** or Mr. Millan, the FOP President, object that the City was violating Florida Statute § 112.532.

26.     At no point during the November Meeting ***did any one of Plaintiff's two attorney's*** or Mr. Millan, the FOP President, invoke the provisions of Florida Statute § 112.534.

27.     During the November Meeting, the parties discussed possible resolution of the IA Case and the 2020 Charge.

28.     After the November Meeting, settlement discussions between the City's outside counsel and Plaintiff's two attorneys continued.

29.     On December 18, 2020, the City, Plaintiff, and the FOP entered into a Settlement Agreement and a Last Chance Agreement. As part of the Last Chance Agreement, Plaintiff also provided an Irrevocable Letter of Resignation.[1] Copies of the Settlement Agreement, the Last Chance Agreement, and the Irrevocable Letter of Resignation are attached to this Declaration as **Composite Exhibit B**, Bates Nos. City 001235 – 001238; 001240 – 001246; 001248.

30.     I personally participated in the negotiating the Settlement Agreement and the Last Chance Agreement.

31.     I have personal knowledge that the City negotiated the Settlement Agreement and the Last Chance Agreement with Plaintiff's two attorneys and by extension, the FOP.

32.     The City did not "put" Plaintiff on a Last Chance Agreement.

33.     Plaintiff, with the advice of her two attorneys and the President of the FOP, voluntarily entered into the Settlement Agreement and the Last Chance Agreement; the City did not force the Plaintiff to sign either.

---

[1]     Paragraph nine (9) of the Last Chance Agreement required Plaintiff to "sign an irrevocable letter of resignation which shall take effect immediately upon her violation of [the Last Chance Agreement] or any part of it at any time during the term of [the] Last Chance Agreement." *See* Exh. B, ¶ 9.

34.     Plaintiff, with the advice of her two attorneys and the President of the FOP, voluntarily provided the Irrevocable Letter of Resignation; the City did not force Plaintiff to provide anything.

35.     The Last Chance Agreement effectively made Plaintiff an employee at will.

36.     The Last Chance Agreement specifically references the IA Case. *See* Exh. B, p. 1.

37.     The Last Chance Agreement does not reference the 2020 Charge because the 2020 Charge had nothing to do with any future performance of Plaintiff or any future discipline pursuant to the Last Chance Agreement. Thus, it was specifically omitted from reference in the Last Chance Agreement.

**Implementation of Plaintiff's Irrevocable Letter of Resignation**

38.     I was the Director when the City implemented Plaintiff's Irrevocable Letter of Resignation.

39.     The decision-maker was then Chief of Police, Richard Clements ("Chief Clements").

40.     In January 2021, Chief Clements notified me that he had received an allegation of employee misconduct regarding Plaintiff from Lieutenant Steven Cosner ("Lieutenant Cosner").

41.     I spoke with Chief Clements about the specifics of Lieutenant Cosner's allegations.

42.     I told Chief Clements that pursuant to paragraph four (4) of the Last Chance Agreement, Chief Clements had the exclusive authority to assess and determine Plaintiff's compliance with the Last Chance Agreement. *See* Exh. B, ¶ 4.

43.     I further told Chief Clements that pursuant to the Last Chance Agreement, he did not have to have a meeting with Plaintiff to discuss Lieutenant Cosner's allegations.

44.     Chief Clements told me that he wanted to meet with Plaintiff to give her a chance to explain herself.

45.     Ultimately, Chief Clements decided to implement Plaintiff's Irrevocable Letter of Resignation.

46.     I spoke with Chief Clements about his decision to implement Plaintiff's Irrevocable Letter of Resignation.

47.     Chief Clements never mentioned, discussed, or even implied that his decision had anything to do with the 2020 Charge or any complaints of harassment from Plaintiff.

48.     The reasons Chief Clements implemented Plaintiff's Irrevocable Letter of Resignation are detailed in the letter to Plaintiff dated January 25, 2021. A copy of January 25, 2021, Letter and its exhibits are attached as **Exhibit C** to this Declaration.

49.     Chief Clements did not consider the 2020 Charge or any complaints of harassment from Plaintiff when implementing Plaintiff's Irrevocable Letter of Resignation.

50.     I did not consider the 2020 Charge or any complaints of harassment from Plaintiff when participating in discussions about implementing Plaintiff' Irrevocable Letter of Resignation.

51.     Lieutenant Cosner was not a decision-maker regarding Plaintiff.

52.     Lieutenant Cosner was not consulted about implementing Plaintiff's Irrevocable Letter of Resignation.

**Last Chance Agreements**

53.     As the Director, I was very familiar with "Last Chance Agreements."

54.     A Last Chance Agreement is just as the name identifies, it is an agreement between the City, an employee and an employee's union that provides an employee a chance to avoid separation from employment.

55.     The City did not "place" employees on Last Chance Agreements. It cannot do that.

56.     When I was Director, all Last Chance Agreements were the product of negotiation between the City, the employee and the employee's union.

57.     I personally participated in the negotiation of all Last Chance Agreements entered into when I was Director.

58.     If an employee or the employee's union did not agree to a Last Chance Agreement, then the City could not impose the agreement on the employee.

59.     Last Chance Agreements were not rare when I was Director.

60.     I frequently proposed Last Chance Agreements when I was Director.

Pursuant to 28 U.S.C. Section 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

Executed on May __, 2024

05/29/24



MICHAEL SMITH

# EXHIBIT A
# TO DECLARATION OF
# MICHAEL W. SMITH

# MICHAEL W. SMITH

## SUMMARY

A successful municipal manager who offers a proven record in public services with in excess of 35 years' experience in a broad range of arenas including six years as a City Manager in a dynamic urban environment. Areas of expertise include human resources, labor relations, risk management, community redevelopment, annexation, economic development, budget development, and grants administration.  I strive to forge consensus among staff and elected officials; engage community organizations and build partnerships between the city and other external organizations.

## EXPERIENCE

**Director of Human Resources- City of Miami Beach**                    **2016 – Present**

Responsible for Human Resources, Labor Relations and Risk Management functions for approximately 2500 employees, and direct supervision of staff of thirty. Responsibilities include:

- Coordination of Recruitment, Compensation, Benefits, Employee Relations and Risk Management
- Played a key role in negotiation of collective bargaining agreements with five collective bargaining units
- Management of all Labor Relations activities.

Accomplishments:

- Negotiation of favorable collective bargaining agreements with five unions.
- Expanded a wellness program which minimized increases in health insurance premiums, reduced absenteeism and frequency of workers compensation claims.
- Provided training programs and counseling on management, customer service, performance management, skill development, conflict management and performance improvement.
- Controlled outside legal costs by proactively managing labor relations issues in coordination with inhouse counsel and providing advice to managers and supervisors.
- Assisted all departments with successful resolutions of difficult labor issues while minimizing litigation and when cases did proceed to litigation favorable outcomes were achieved.

**Director of Human Resources- City of Pompano Beach**                    **2001 – 2016**

Responsible for Human Resources, Labor Relations and Risk Management functions for approximately 1000 employees, and direct supervision of staff of ten. Responsibilities include:

- Coordination of Recruitment and Hiring of all city employees
- Negotiation of collective bargaining agreements with FOPE and IAFF
- Management of all Labor Relations activities
- Coordinated training programs for all levels of staff.
- Supervision of Risk Management and employee benefit programs

Accomplishments:

- Negotiation of favorable collective bargaining agreements with two unions which resulted in long term recurring savings.
- Implemented a wellness program which minimized increases in health insurance premiums, reduced absenteeism and frequency of workers compensation claims. Program was recognized by IPMA-HR as a best practice.
- Provided training programs on management, customer service, performance management, skill development, performance benchmarking, supervisory practices and diversity.
- With a consultant and Florida Atlantic University, trained all City staff in Lean Six Sigma
- Controlled outside legal costs by proactively managing labor relations issues and providing counsel to managers and supervisors.
- Lead several departmental reorganization efforts which improved effectiveness, efficiency and accountability.
- Handle responses all EEOC claims in HR. In my career I have never had a discrimination claim sustained.

---

**Resume of Michael Smith**                                                    Page 2

- Revamped employee evaluation system to provide more meaningful reviews, establish performance objectives and increase employee performance accountability.
- Expanded volunteer program through marketing and building relationships with education and non-profit organizations providing significant value added labor at no cost.

**City Manager - City of Dania Beach, FL**                    **1995 – 2001**

Dania Beach located in Broward County, is a full service city with a population of 30,000. Dania Beach is a coastal community and is home to the Fort Lauderdale-Hollywood International Airport and Port Everglades. Marine, design and tourism are the three most significant industries. Dania Beach has maintained small town qualities in a metropolitan setting.

Duties and Responsibilities:

- Chief Executive Officer of a municipal government with 175 employees and combined operating budgets of $30 million. Oversight responsibility for police, fire/rescue, growth management, pubic works/utilities, stormwater management, parks and recreation, finance, and administrative services.
- Implementation of commission directed policy. Administration of day-to-day operations as well as identification and resolution of long-range issues.
- Preparation and administration of operating budgets.
- Negotiation with pubic and private sector entities on a variety of issues ranging from economic development to service contracts.

Accomplishments:

- Conducted a successful annexation campaign, which added 8000 new residents and additional revenue of $5 million dollars.
- Obtained Florida Main Street designation, the first in Broward County through effort that included considerable community collaboration. Initiated inclusive visioning process with City Commission, residents, and business organizations. Sessions focused on neighborhood issues, redevelopment and land use.
- Enhanced public safety through upgrading of fire-rescue equipment and additional police staffing funded through the federal Universal Cops program. Obtained in excess of *one million dollars* in grant funds for public safety from a variety of county, state and federal sources.
- Increased public participation through development of a city website, quarterly educational forums on city government, publication of monthly newsletter, and regular involvement with community and civic organizations.
- Negotiated lease of city property to Florida Board of Regents for FAU Sea Tech facility to convert a decaying entertainment complex to state of the art research facility and an ongoing consulting relationship with Florida Atlantic University.

**Resume of Michael Smith**                                                                                   Page 3

**Director Personnel/Community Development-City of Dania Beach**                    **1984 – 1995**

Accomplishments:

- Developed and administered cafeteria benefits program which included self funded, managed care health and dental insurance programs.
- Negotiated affordable labor contracts with AFSCME, IAFF and PBA unions while establishing an organizational climate based on trust, respect and fairness, thereby virtually eliminating labor related suits and grievances.
- Coordinated claims against the City for workers compensation, liability and property loss.
- Administered CDBG program resulting in over *$5 million* in funded projects.

- Served as interim Parks and Recreation Director for 7 of 11 years in addition to regular duties.

**Director Personnel/Risk Management-City of Lauderhill**          **1980 – 1984**

Established professional personnel department and structure for the first time in this city of 40,000. Areas of responsibility included human resources, labor relations, risk management and employee benefits

## <u>EDUCATION</u>

**Florida Atlantic University**          **1979 – 1981**
Completed 80% of required coursework for Master of Public Administration

**University of Florida 1978, BA (Political Science)**

## <u>PROFESSIONAL/PERSONAL AFFILIATIONS</u>

Society for Human Resources Management
Florida Public Employer Labor Relations Association
Human Resources Association of Broward County
International Public Management Association-HR (Past President- S. FL Chapter)
John Scott Dailey Florida Institute of Government at FAU, Steering Committee Member 2008 to present
Kiwanis Club of Dania Beach- Past President
United Way of Broward County- 2007, 2009 and 2011 Allocations Sub-Committee Member
Board of Directors – Marina Mile Association (Past Member)

## <u>CERTIFICATIONS</u>

IPMA-SCP
Lean Six Sigma Green Belt- Florida Atlantic University 2016
Lean Six Sigma Yellow Belt- Florida Benchmarking Consortium 2014
Certified Public Pension Trustee- 2019

# EXHIBIT B
# TO DECLARATION OF
# MICHAEL W. SMITH

# SETTLEMENT AGREEMENT

The SETTLEMENT AGREEMENT ("Agreement") is entered into, by, and between the CITY OF MIAMI BEACH, its elected and appointed officials, its employees, and its insurers, attorneys, or agents of any kind (collectively, the "City"); JESSICA SALABARRIA ("Salabarria") and the FRATERNAL ORDER OF POLICE, WILLIAM NICHOLS LODGE NO. 8 ("FOP") (all collectively, the "Parties").

WHEREAS, Salabarria is employed by the City in its Police Department; and

WHEREAS, the FOP is the exclusive bargaining representative for a bargaining unit of City police employees, including Salabarria; and

WHEREAS, Salabarria is the subject of an on-going Internal Affairs investigation, I.A. Case No. 2020-010 ("the Investigation"); and

WHEREAS, Salabarria has filed an EEOC Charge, EEOC Charge No. 510-2020-04794 ("EEOC Charge"); and

WHEREAS, the Investigation and EEOC charge are all pending and constitute all the charges, investigations and grievances by or on behalf of Salabarria that have been or may be filed as of the Effective Date of this Agreement that have not otherwise been resolved or otherwise achieved finality; and

WHEREAS, the Parties, wish to avoid the burdens of further investigation, litigation and to resolve the disputes between them.

NOW, THEREFORE, intending to be legally bound but without setting precedent, do hereby agree as follows:

1.  Recitals. The Parties acknowledge and agree that the Recitals above are true to the best of their knowledge and belief and incorporate them as if fully set forth here and that the Recitals are a material inducement for the Parties to enter into this Agreement.

2.  EEOC Charge Withdrawn With Prejudice and Discipline. Salabarria and the FOP agree that, by executing this Agreement, they will simultaneously withdraw the Charge with prejudice by executing the attached Notice of Withdrawal with Prejudice and immediately filing same with the EEOC. Additionally, as discipline for the matters that are the subject of the Investigation, Salabarria agrees to accept the following:

    a.  A One Hundred and Sixty (160) hour suspension,

    b.  Payback of Eighty-Six (86) total hours, of which Forty-Four (44) Hours is regular time and Twenty-Four (24) hour is overtime. The regular rate is Forty-Four Dollars and 14/100 ($44.14) for a total of One Thousand Nine Hundred Forty-Two Dollars and 00/100 ($1,942.16) of regular time. The overtime hourly rate is Sixty-Six Dollars and 21/100 ($66.21), for a total amount of One

1

City 001235

DocuSign Envelope ID: CC3C60A0-9486-4907-B5EB-8735D7C895E5

Thousand Five Hundred Eighty-Nine Dollars and 04/100 ($1,589.04). **Accordingly, the Total Amount due to the City is Three Thousand Five Hundred Thirty-One Dollars and 20/100 ($3,531.20) ("the Total Amount")**. Salabarria can pay the Total Amount via a cashier's check made payable to the City of Miami Beach on or before January 4, 2021. If the City does not receive full payment on or before 5:00 p.m. on January 4, 2021, then the City is authorized to deduct the remaining amounts due from Salabarria's vacation leave bank.

c. Salabarria will execute the attached Last Chance Agreement, which contains additional provisions. The Last Chance Agreement is incorporated by reference into this Agreement.

d. Permanent deletion, from all platforms (platforms includes but is not limited to: Apple Podcasts, Stitcher, Spotify, Spotify Podcasts, Google Play Music, Google Podcasts, iHeart Radio, and any other social media and/or electronic platform) the podcast titled: "Cafecitos y Chisme with Nick & Jess."

e. Salabarria will immediately have a meeting with the Chief of Police wherein she will address the claims made in the Charge, including but not limited to identifying the names of all persons who allegedly engaged in the conduct addressed in the Charge. The refusal to name the persons who have allegedly engaged in the conduct in the Charge shall be grounds for immediate termination, as discussed in the attached Last Chance Agreement. Salabarria shall be entitled to have a Union Representative with her during this meeting.

f.     Release Of Claims, Covenant Not To Sue.  Salabarria hereby releases and waives any and all claims of any kind whatsoever against the City that she had, has or may have from the beginning of the world through the date of this Agreement. The claims released include, but are not limited to, any and all claims arising under any federal, state, local or foreign statute or regulation, including, without limitation, those relating to any and all unfair or discriminatory employment practices (for example, employment discrimination based on race, national origin, sex, religion, age, disability or handicap, and harassment of any kind) under the federal Civil Rights Acts of 1866, 1871, 1964 and 1991 (including Title VII), the federal Age Discrimination in Employment Act ("ADEA"), including the Older Workers Benefits Protection Act, the Florida Civil Rights Act, the federal Americans With Disabilities Act, the federal Employee Retirement Income Security Act of 1974, the Internal Revenue Code of 1986, the federal Fair Labor Standards Act of 1938, the Florida Wage Discrimination Law, the Florida Wage and Hour laws, Florida and federal statutes regarding "whistleblower" activities, the federal Family and Medical Leave Act of 1993, the federal Rehabilitation Act of 1973, the Consolidated Omnibus Budget Reconciliation Act of 1985 (known as "COBRA"), the Federal Fair Credit Reporting Act, any other federal and state employment-related statutes and regulations, and any other employment-related local ordinance up to the date of this Agreement. The claims released also include any claims under the United States Constitution, including but not limited to claims arising under the First Amendment or any other claims whatsoever.



City 001236

The disputes released by Salabarria also include any and all disputes she had, has or may believe to have against the City in contract or at common law, including, but not limited to: breach of oral, written and/or implied contract, breach of an implied covenant of good faith and fair dealing, wrongful discharge under any theory (including for lack of good cause) in violation of public policy and constructive discharge, intentional and/or negligent infliction of emotional distress, negligent retention and/or supervision, assault, battery, negligence, misrepresentation or fraud of any kind, duress, unfair dealing, breach of fiduciary or other duty, invasion of privacy, defamation, and interference with contract and/or prospective economic advantage up to the date of this Agreement.

Salabarria further covenants and agrees that she will not file a lawsuit or claim of any kind asserting the claims released herein. Salabarria understands that this Agreement does not prohibit participating in an investigation or the filing of a charge with the EEOC or like administrative agency, but she does understand and agree that, not only is she releasing the stated claims, but also is releasing the right to any monetary damages or any relief of any kind from those claims, whether brought by her or on her behalf. Salabarria hereby represents that she has not assigned to any person or entity any rights to the claims released herein.

g.   Effect; Precedent.   The Parties agree that Salabarria remains subject to all applicable rules, policies, orders, procedures or regulations of whatever kind, except as may be expressly otherwise provided herein. The Parties agree that the facts underlying this Agreement are unique and that this Agreement does not establish precedent of any kind whatsoever and may not be used in any manner whatsoever in any proceeding, including but not limited to any labor proceeding of any kind, with the exception of any labor proceeding involving Salabarria. The parties further agree that Salabarria's prior settlement agreement may also be used in any labor proceeding involving Salabarria.

h.   Consideration.   The consideration for this Agreement is the City's early conclusion of the Investigation. The parties acknowledge that the City could continue the Investigation. The parties further acknowledge that continuing the Investigation would likely be detrimental to Salabarria. Therefore, the City is giving up its right to continue the Investigation in exchange fro Salabarria's agreement to the provisions and terms of this Agreement. The mutual promises, releases, and forbearances recited herein, the adequacy of which is hereby affirmed by the Parties.

i.   Miscellaneous.   This Agreement (which includes the exhibits attached hereto that are incorporated by reference), is the entire agreement between the Parties on its subject matter and supersedes any other agreement or understanding whatsoever, whether written or oral. The Parties have entered into this Agreement solely on the basis of the language, representations, and understandings expressed in this Agreement and not on the basis of any other representation or understanding whatsoever. This Agreement shall be construed and applied according to its express language and not strictly against any Party, regardless of authorship. This Agreement shall be governed by and construed according to the laws of the State of Florida. Any dispute arising from this Agreement, its application, or its breach shall be heard by a judge and not a jury. The Parties agree that venue shall be proper in Miami-Dade County, Florida, and agree that they shall not challenge such venue, regardless of convenience. If any provision or part thereof of this Agreement shall be found invalid or unenforceable by a court of competent jurisdiction, the remainder of the Agreement shall remain valid and enforceable, provided, however, that if Paragraph 3, "Release,"

3

City 001237

is found invalid or unenforceable, the entire Agreement shall fail and be null and void and shall be treated as if it were never made. The prevailing party in any action of or relating to this Agreement shall be entitled to an award of reasonable attorney's fees and costs.

IN WITNESS WHEREOF, having read and fully understood this Agreement in its entirety, having duly considered the same, and intending to enjoy the benefits and undertake the obligations established herein, the Parties do hereby enter into and execute this Agreement as set forth below.

**CITY OF MIAMI BEACH**

By _____
City Manager

DATE 12/23/2020 | 1:34 EST

**JESSICA SALABARRIA**

_____
JESSICA SALABARRIA

DATE 12/18/2020

**FRATERNAL ORDER OF POLICE, LODGE 8**

By _____
KEVIN MILLAN
President

DATE 12/18/2020

**CHIEF OF POLICE**

_____
RICK CLEMENTS
Chief of Police

4

City 001238

## LAST CHANCE AGREEMENT

THIS LAST CHANCE AGREEMENT is entered into between the CITY OF MIAMI BEACH, FLORIDA (hereinafter, the "City"), FRATERNAL ORDER OF POLICE, (hereinafter, "the Union") and JESSICA SALABARRIA (hereinafter, "SALABARRIA" or "Employee").

WHEREAS, SALABARRIA is employed by the City as a Police Officer in the City's Police Department.

WHEREAS, SALABARRIA is subject to the terms and conditions of employment contained in the Collective Bargaining Agreement between the Union and the City effective October 1, 2018 through September 30, 2021;

WHEREAS, SALABARRIA is the subject of an Internal Affairs ("IA") Investigation, IA Case Number 2020-010, which arose from SALABARRIA's involvement in not being on-duty when she was supposed to be, and from SALABARRIA's claims of being on-duty in the City when she was actually outside the City;

WHEREAS, the City wishes to continue to employ Employee, Employee wishes to continue to be employed by the City, and the FOP desires for Employee to continue to be employed under the terms and conditions described herein; and

WHEREAS, the Employee admits that she committed misconduct in association with IA Case Number 2020-010 and was in violation of numerous City and Police Department policies and the City Personnel Rules for the Classified Service; and

WHEREAS, the purposes of this Agreement, with which all the Parties concur, include: to protect and preserve the integrity of the Police Department and all its officers and to give Employee the opportunity to further and support that purpose; and to give Employee the

CITY

Page 1 of 7

UNION          JESSICA

City 001240

opportunity to rehabilitate herself personally and as a police sergeant for  the City and this Department; and to give Employee an opportunity to preserve her career.

NOW, THEREFORE, without establishing precedent for any purpose and intending to be bound, the Parties agree as follows:

1.      All of the above statements are true and correct to the best of the Parties' belief and knowledge and for a five (5) year period beginning with the execution of this Agreement by all parties, SALABARRIA will be subject to the provisions of this Agreement.

2.      During this period, SALABARRIA must be on-duty and in the City limits during all of her scheduled shifts unless given prior authorization. For the avoidance of confusion, this means that, during the terms of this Agreement, SALABARRIA shall not be outside the City limits when she is on-duty, shall not tell the City she's on-duty when she is outside the City's limits, and shall not leave before the end of her scheduled shift, unless given prior authorization.

3.      Additionally, SALABARRIA shall refrain from violating any City or Police Department policies, rules or regulations; Standard Operating Procedures ("SOPs") or Personnel Rules, all of which (including any amendments or additions) are incorporated herein by reference.  In any instance during which City or Police Department policies, procedures or Personnel Rules differ from or conflict with the stipulations set forth in the applicable collective bargaining agreement, the City or Police Department policies, procedures or Personnel Rules shall prevail.

4.      The Chief of Police shall exclusively assess and determine Employee's compliance with this Agreement. The Chief's decision as to compliance with this Agreement shall not be subject to any grievance and/or review of any kind by SALABARRIA and/or the Union and is not subject to explanation or review.

CITY

Page 2 of 7

UNION          JESSICA

City 001241

5.     Failure to comply with any portion or requirement of this Agreement (including but not limited to the requirement not to violate any City or Police Department policies, Standard Operating Procedures ("SOPs") or Personnel Rules, as referenced in paragraph 3 above) may result in the immediate implementation of the attached letter of resignation as referenced in paragraph 9 below. It is the intent and understanding of the parties that the violations contemplated to trigger the implementation of the attached letter of resignation shall not be for individual, discreet minor policy and procedural violations. The parties agree that repeated violation of the same, discreet minor policy may result in an event triggering the implementation of the attached letter of resignation. In that event, the Employee and the Union understand and agree there will be no recourse or review available pursuant to any grievance, appeal or review process under any federal, state or local statute, ordinance, collective bargaining agreement, or in any other forum or under any other process or procedure.

6.     SALABARRIA shall serve a four-week (160 hour) suspension without pay and waive any and all rights to grieve or appeal that suspension. Employee shall also be subject to the additional provisions of the Settlement Agreement to which this Agreement is attached and is made part of via incorporation by reference.

7.     Further, for the same five (5) year period described above, the Chief of Police shall have full discretion regarding Employee's assignments, including, without limitation, duties, supervisor and chain of command.  Employee shall have the ability to bid for shift and days off, if the employee is reassigned her duty hours and days off shall remain the same.

8.     For a period of one (1) year from the date of execution of this Agreement, Employee is not eligible for any promotional opportunities.

CITY

Page 3 of 7

UNION          JESSICA

City 001242

9.     Employee shall sign an irrevocable letter of resignation which shall take effect immediately upon her violation of this Agreement or any part of it at any time during the term of this Last Chance Agreement. .

10.    Employee shall attend and cooperate with any training required by the Chief of Police.

11.    If during the above-referenced five (5) year period, SALABARRIA violates any provisions of this agreement or any City or Police Department policies, Standard Operating Procedures ("SOPs") or Personnel Rules and/or regulations as previously referenced in paragraph #4 , her resignation shall be effective , without the right to grieve or otherwise contest, in any manner, her separation. .

12.    In the event that SALABARRIA is separated pursuant to the terms and conditions of this Last Chance Agreement, she and the Union understand that her separation is not subject to appeal pursuant to the contractual grievance/arbitration procedure, or otherwise. In other words, SALABARRIA agrees that should she be separated pursuant to the terms of this agreement  that she waives her right to utilize the contractual grievance and arbitration procedure and she further waives the right to challenge or appeal her separation pursuant to any administrative or statutory avenue that may exist.

13.    The City retains the right to rely upon the facts and circumstances of the events from which this Last Chance Agreement arose in any future proceeding in the event the Employee successfully meets the terms and conditions referred to in this Agreement but thereafter has deficiencies in conduct or performance, and such deficiencies shall be sufficient to warrant discipline, including dismissal.

CITY                                         Page 4 of 7                    UNION          JESSICA

City 001243

14. It is understood and agreed by all parties hereto that this Last Chance Agreement is executed based on the particular circumstances of this case and does not establish precedent for the resolution of other cases.

15. SALABARRIA acknowledges that she could be terminated from her employment from the City as a result of her conduct as referenced above and that remaining employed by the City is adequate consideration for entering into this Last Chance Agreement, serving the suspension without pay and waiving the rights described herein and in the Settlement Agreement.

16. SALABARRIA being of lawful age, for and in consideration of the above-action agreed to by the City, and other valuable consideration received from or on behalf of the City, receipt whereof is hereby acknowledged, does hereby release, acquit, satisfy and forever discharge the City, as well as each and everyone of the City's former and current officers, agents, attorneys, employees and officials -- in both their official and individual capacities -- and their successors and assigns, from any and all claims, cause and causes of action, grievances, unfair labor practice charges, lawsuits, claims of employment discrimination (including, but not limited to claims under the Americans With Disabilities Act), and any and all other claims and demands whatsoever, in law or in equity, tort or contract, which SALABARRIA has or may have against the above-named individuals in both their individual and official capacities, from the beginning of the world until today, including, but not limited to, all matters concerning or arising out of her employment with the CITY, her discipline stemming from the incidents described in this Last Chance Agreement and the execution of this Last Chance Agreement.

17. It is understood and agreed that this Last Chance Agreement does not constitute an admission by the City or SALABARRIA of any violation of the collective bargaining

CITY         Page 5 of 7         UNION       JESSICA

City 001244

agreement. This Last Chance Agreement is being entered into by the parties solely for the purpose of avoiding the expense and inconvenience of further administrative proceedings.

18.     SALABARRIA has received and reviewed this Last Chance Agreement prior to executing it and she agrees to be bound by its terms and conditions.

19.     Prior to signing this Last Chance Agreement, SALABARRIA had the opportunity, and did, in fact, consult with her attorney and/or with the Union.

20.     This Last Chance Agreement, and the Settlement Agreement which is attached constitutes the entire understanding and agreement of the parties hereto, and can be modified, amended or revoked only by express written consent of all parties.

21.     This Last Chance Agreement shall be governed by and construed in accordance with the laws of the State of Florida, and where applicable, federal laws. The language of this Last Chance Agreement shall be construed as a whole, according to its fair meaning, and not strictly construed for or against either party.

22.     In the event that any party to this Last Chance Agreement institutes legal proceedings regarding the terms of this Last Chance Agreement, it is stipulated and agreed that such a claim shall be heard and determined by the court, and not by a jury, in Miami-Dade County, Florida. **SALABARRIA AGREES AND UNDERSTANDS THAT SHE IS WAIVING THE RIGHT TO A JURY TRIAL, IF ONE EXISTS, AS TO ANY CLAIM REGARDING THE TERMS OF THIS AGREEMENT.**

CITY                    Page 6 of 7                    UNION          JESSICA

City 001245

This Agreement is dated the _____ day of December 2020, in Miami-Dade County, Florida.

_____

**JESSICA SALABARRIA**

DocuSigned by:

*Paul J. Aguila*

2B3D6240F92B45D...

_____

**CITY MANAGER**
**CITY OF MIAMI BEACH**

Date: __12/18/2020__

Date: _____12/23/2020 | 1:34 EST_____

**FRATERNAL ORDER OF POLICE**

_____ President

Signature & Title

_Kevin Millan_    President

Print Name & Title

__12/18/2020__

Date

_____

**CHIEF OF POLICE**

__12/18/2020__

Date

City 001246

December 18, 2020

City of Miami Beach
Human Resources Department
Miami Beach City Hall
1700 Convention Center Drive
Miami Beach, FL 33139

      Re:    *Letter of Resignation as Part of Settlement Agreement and Last Chance Agreement*

To Whom It May Concern:

      Pursuant to the Settlement Agreement and Last Chance Agreement to which this Letter of Resignation is attached, I resign my employment with the City of Miami Beach, effective _____.

                    Very Truly Yours,

                    Jessica Salabarria.

City 001248

# EXHIBIT C
# TO DECLARATION OF
# MICHAEL W. SMITH



## MEMORANDUM

TO:        Sergeant, Jessica Salabarria

FROM:    Rick Clements, Chief of Police

DATE:    January 25, 2021

RE:        Implementing Letter of Resignation

---

On December 18, 2020, you entered into a Last Chance Agreement ("Agreement"). A copy of that Agreement is attached as Exhibit A. Additionally, as part of the Agreement, on that same date you signed a Letter of Resignation ("Resignation"). A copy of that Resignation is attached as Exhibit B.

Based on the violations outlined below, and per the Agreement, I am implementing the Resignation, effective immediately and as of the date indicated on Resignation attached as Exhibit B.

Specifically, on December 30, 2020, Lieutenant, Steven Cosner submitted an Allegation of Employee Misconduct ("AEM"). A copy of the AEM is attached as Exhibit C. The allegations of the AEM are incorporated in full herein.

On January 19, 2021, I held a meeting with you to discuss the allegations in the AEM. In addition to you and I, also present at that meeting was:

- Wayne Jones, Deputy Chief
- Paul Ozaeta, Lieutenant (FOP President)
- Arley Flaherty, Sergeant (FOP First Vice President)
- Reggie Lester, Sergeant (FOP Second Vice President)
- Delvin Brown, Lieutenant (FOP Grievance Chairman)
- Steven Cosner, Lieutenant
- A.J. Prieto, Captain Internal Affairs.

During the meeting, you were provided a copy of the "AEM" and given the opportunity to review the "AEM" in full. After your review, you informed me that, despite being assigned to the North District, you did not report to the North District. Instead, you remained in your assigned City vehicle, stationary at the City's main police station. You further informed me that while in your vehicle at the police station (for what was at or around four (4) plus hours) you worked on administrative issues (an employee evaluation

<span style="color:red">City 001253</span>

for Police Officer Vincent Stella) and worked on your "school work." The "school work" at issue is not work assigned by the City. You informed me that, independent from the City, you are working toward a Master's Degree.

Further, you acknowledged that you missed two radio calls specifically to you from Lieutenant Cosner and a phone call from Lieutenant Cosner to your personal cell phone. Ultimately, you did not respond to the North End Sub-Station (in the North District) until approximately 4:20 a.m., and only after being told to do so by Lieutenant Cosner. You further acknowledged that despite receiving an email from Lieutenant Cosner at approximately 3:20 a.m. directing you to have certain officers perform certain assignments, you did not issue the assignments until after 4:20 a.m., and only after speaking with Lieutenant Cosner. You again indicated to me that prior to speaking to Lieutenant Cosner at 4:20 a.m., you were focused on the employee evaluation and your independent school work.

In speaking with Lieutenant Cosner during this meeting, he indicated, among other things that you informed him that you had conveyed the assignment details, when in fact, you had not. You conveyed the assignment details after speaking to Lieutenant Cosner despite telling him you had already done so.

Moreover, Lieutenant Cosner indicated in this meeting that you did not leave the main police station during most of your shift and only left the police station when instructed to do so by Lieutenant Cosner.

The above is only a summary of the events of the January 19, 2021 meeting.

After the meeting, the City reviewed your City issued laptop computer, which is the computer that you would have used to work on Officer Stella's evaluation. A review of the laptop shows that Officer Stella's evaluation was not created until January 10, 2021. The City's Information Technology Department confirmed that Officer Stella's evaluation was not created or saved anywhere else on the City's system.

Pursuant to paragraph 4 of the Agreement, I determine that you have not complied with the Agreement and engaged in conduct that is beyond an individual, discreet or minor policy violation. Pursuant to paragraph 4 of the Agreement, my decision in this regard is not subject to review or explanation. Accordingly, as stated above, I am implementing your Resignation.

City 001254

# EXHIBIT A

City 001255

DocuSign Envelope ID: CC3C604A-8185-4007-95EB-8735D7C89FEF

## LAST CHANCE AGREEMENT

THIS LAST CHANCE AGREEMENT is entered into between the CITY OF MIAMI BEACH, FLORIDA (hereinafter, the "City"), FRATERNAL ORDER OF POLICE, (hereinafter, "the Union") and JESSICA SALABARRIA (hereinafter, "SALABARRIA" or "Employee").

WHEREAS, SALABARRIA is employed by the City as a Police Officer in the City's Police Department.

WHEREAS, SALABARRIA is subject to the terms and conditions of employment contained in the Collective Bargaining Agreement between the Union and the City effective October 1, 2018 through September 30, 2021;

WHEREAS, SALABARRIA is the subject of an Internal Affairs ("IA") Investigation, IA Case Number 2020-010, which arose from SALABARRIA's involvement in not being on-duty when she was supposed to be, and from SALABARRIA's claims of being on-duty in the City when she was actually outside the City;

WHEREAS, the City wishes to continue to employ Employee, Employee wishes to continue to be employed by the City, and the FOP desires for Employee to continue to be employed under the terms and conditions described herein; and

WHEREAS, the Employee admits that she committed misconduct in association with IA Case Number 2020-010 and was in violation of numerous City and Police Department policies and the City Personnel Rules for the Classified Service; and

WHEREAS, the purposes of this Agreement, with which all the Parties concur, include: to protect and preserve the integrity of the Police Department and all its officers and to give Employee the opportunity to further and support that purpose; and to give Employee the

CITY

Page 1 of 7

UNION          JESSICA

City 001256

DocuSign Envelope ID: CC3C604A-8185-4007-95EB-8735D7C89FEF

opportunity to rehabilitate herself personally and as a police sergeant for  the City and this Department; and to give Employee an opportunity to preserve her career.

NOW, THEREFORE, without establishing precedent for any purpose and intending to be bound, the Parties agree as follows:

1.      All of the above statements are true and correct to the best of the Parties' belief and knowledge and for a five (5) year period beginning with the execution of this Agreement by all parties, SALABARRIA will be subject to the provisions of this Agreement.

2.      During this period, SALABARRIA must be on-duty and in the City limits during all of her scheduled shifts unless given prior authorization. For the avoidance of confusion, this means that, during the terms of this Agreement, SALABARRIA shall not be outside the City limits when she is on-duty, shall not tell the City she's on-duty when she is outside the City's limits, and shall not leave before the end of her scheduled shift, unless given prior authorization.

3.      Additionally, SALABARRIA shall refrain from violating any City or Police Department policies, rules or regulations; Standard Operating Procedures ("SOPs") or Personnel Rules, all of which (including any amendments or additions) are incorporated herein by reference.  In any instance during which City or Police Department policies, procedures or Personnel Rules differ from or conflict with the stipulations set forth in the applicable collective bargaining agreement, the City or Police Department policies, procedures or Personnel Rules shall prevail.

4.      The Chief of Police shall exclusively assess and determine Employee's compliance with this Agreement. The Chief's decision as to compliance with this Agreement shall not be subject to any grievance and/or review of any kind by SALABARRIA and/or the Union and is not subject to explanation or review.

CITY

Page 2 of 7

UNION

JESSICA

City 001257

DocuSign Envelope ID: CC3C604A-8185-4007-95EB-8735D7C89FEF

5.      Failure to comply with any portion or requirement of this Agreement (including but not limited to the requirement not to violate any City or Police Department policies, Standard Operating Procedures ("SOPs") or Personnel Rules, as referenced in paragraph 3 above) may result in the immediate implementation of the attached letter of resignation as referenced in paragraph 9 below. It is the intent and understanding of the parties that the violations contemplated to trigger the implementation of the attached letter of resignation shall not be for individual, discreet minor policy and procedural violations. The parties agree that repeated violation of the same, discreet minor policy may result in an event triggering the implementation of the attached letter of resignation. In that event, the Employee and the Union understand and agree there will be no recourse or review available pursuant to any grievance, appeal or review process under any federal, state or local statute, ordinance, collective bargaining agreement, or in any other forum or under any other process or procedure.

6.      SALABARRIA shall serve a four-week (160 hour) suspension without pay and waive any and all rights to grieve or appeal that suspension. Employee shall also be subject to the additional provisions of the Settlement Agreement to which this Agreement is attached and is made part of via incorporation by reference.

7.      Further, for the same five (5) year period described above, the Chief of Police shall have full discretion regarding Employee's assignments, including, without limitation, duties, supervisor and chain of command.  Employee shall have the ability to bid for shift and days off, if the employee is reassigned her duty hours and days off shall remain the same.

8.      For a period of one (1) year from the date of execution of this Agreement, Employee is not eligible for any promotional opportunities.

_____
CITY

Page 3 of 7

_____
UNION

_____
JESSICA

City 001258

DocuSign Envelope ID: CC3C604A-8185-4007-95EB-8735D7C89FEF

9.     Employee shall sign an irrevocable letter of resignation which shall take effect immediately upon her violation of this Agreement or any part of it at any time during the term of this Last Chance Agreement. .

10.     Employee shall attend and cooperate with any training required by the Chief of Police.

11.     If during the above-referenced five (5) year period, SALABARRIA violates any provisions of this agreement or any City or Police Department policies, Standard Operating Procedures ("SOPs") or Personnel Rules and/or regulations as previously referenced in paragraph #4 , her resignation shall be effective , without the right to grieve or otherwise contest, in any manner, her separation. .

12.     In the event that SALABARRIA is separated pursuant to the terms and conditions of this Last Chance Agreement, she and the Union understand that her separation is not subject to appeal pursuant to the contractual grievance/arbitration procedure, or otherwise. In other words, SALABARRIA agrees that should she be separated pursuant to the terms of this agreement  that she waives her right to utilize the contractual grievance and arbitration procedure and she further waives the right to challenge or appeal her separation pursuant to any administrative or statutory avenue that may exist.

13.     The City retains the right to rely upon the facts and circumstances of the events from which this Last Chance Agreement arose in any future proceeding in the event the Employee successfully meets the terms and conditions referred to in this Agreement but thereafter has deficiencies in conduct or performance, and such deficiencies shall be sufficient to warrant discipline, including dismissal.

CITY                          Page 4 of 7                    UNION            JESSICA

City 001259

DocuSign Envelope ID: CC3C604A-8185-4007-95EB-8735D7C89FEF

14.     It is understood and agreed by all parties hereto that this Last Chance Agreement is executed based on the particular circumstances of this case and does not establish precedent for the resolution of other cases.

15.     SALABARRIA acknowledges that she could be terminated from her employment from the City as a result of her conduct as referenced above and that remaining employed by the City is adequate consideration for entering into this Last Chance Agreement, serving the suspension without pay and waiving the rights described herein and in the Settlement Agreement.

16.     SALABARRIA being of lawful age, for and in consideration of the above-action agreed to by the City, and other valuable consideration received from or on behalf of the City, receipt whereof is hereby acknowledged, does hereby release, acquit, satisfy and forever discharge the City, as well as each and everyone of the City's former and current officers, agents, attorneys, employees and officials -- in both their official and individual capacities -- and their successors and assigns, from any and all claims, cause and causes of action, grievances, unfair labor practice charges, lawsuits, claims of employment discrimination (including, but not limited to claims under the Americans With Disabilities Act), and any and all other claims and demands whatsoever, in law or in equity, tort or contract, which SALABARRIA has or may have against the above-named individuals in both their individual and official capacities, from the beginning of the world until today, including, but not limited to, all matters concerning or arising out of her employment with the CITY, her discipline stemming from the incidents described in this Last Chance Agreement and the execution of this Last Chance Agreement.

17.     It is understood and agreed that this Last Chance Agreement does not constitute an admission by the City or SALABARRIA of any violation of the collective bargaining

CITY                           Page 5 of 7              UNION           JESSICA

City 001260

agreement. This Last Chance Agreement is being entered into by the parties solely for the purpose of avoiding the expense and inconvenience of further administrative proceedings.

18.     SALABARRIA has received and reviewed this Last Chance Agreement prior to executing it and she agrees to be bound by its terms and conditions.

19.     Prior to signing this Last Chance Agreement, SALABARRIA had the opportunity, and did, in fact, consult with her attorney and/or with the Union.

20.     This Last Chance Agreement, and the Settlement Agreement which is attached constitutes the entire understanding and agreement of the parties hereto, and can be modified, amended or revoked only by express written consent of all parties.

21.     This Last Chance Agreement shall be governed by and construed in accordance with the laws of the State of Florida, and where applicable, federal laws. The language of this Last Chance Agreement shall be construed as a whole, according to its fair meaning, and not strictly construed for or against either party.

22.     In the event that any party to this Last Chance Agreement institutes legal proceedings regarding the terms of this Last Chance Agreement, it is stipulated and agreed that such a claim shall be heard and determined by the court, and not by a jury, in Miami-Dade County, Florida.     **SALABARRIA AGREES AND UNDERSTANDS THAT SHE IS WAIVING THE RIGHT TO A JURY TRIAL, IF ONE EXISTS, AS TO ANY CLAIM REGARDING THE TERMS OF THIS AGREEMENT.**

CITY

Page 6 of 7

UNION          JESSICA

City 001261

This Agreement is dated the _____ day of December 2020, in Miami-Dade County, Florida.

**JESSICA SALABARRIA**

DocuSigned by:

Paul J. Aguila

2B3D6240F92B45D...

**CITY MANAGER**
**CITY OF MIAMI BEACH**

Date: _12/18/2020_

Date: _____ 12/23/2020 | 1:34 EST

**FRATERNAL ORDER OF POLICE**

_____ President
Signature & Title

_Kevin Millan_  President
Print Name & Title

_12/18/2020_
Date

_____
**CHIEF OF POLICE**

_12/15/2020_
Date

Page 7 of 7

City 001262

# EXHIBIT B

City 001263

December 18, 2020

City of Miami Beach
Human Resources Department
Miami Beach City Hall
1700 Convention Center Drive
Miami Beach, FL 33139

Re:   *Letter of Resignation as Part of Settlement Agreement and Last Chance Agreement*

To Whom It May Concern:

Pursuant to the Settlement Agreement and Last Chance Agreement to which this Letter of Resignation is attached, I resign my employment with the City of Miami Beach, effective January 25, 2021.

Very Truly Yours,

Jessica Salabarria.

City 001264

# EXHIBIT C

City 001265

# MIAMI BEACH POLICE DEPARTMENT
## Initial Report Concerning a Police Employee - Allegation of Employee Misconduct

| Date and Time Reported<br>12/30/2020    2345 hours | Received By (Employee Name)<br>Lieutenant Steven Cosner | ( X ) In Person  (  ) By Phone<br>(  ) Other _____ |
|---|---|---|
| Date and Time Occurred<br>12/28/2020   0000-0600 hours | Location of Occurrence<br>MBPD | |

| Reporting Party's Name<br>Lieutenant Steven Cosner | Race/Sex<br>W/M | D.O.B | Address: 1100 Washigton Ave., Miami Beach, Florida 33139 | Telephone # |
|---|---|---|---|---|

**Specific Allegation (In Brief):** Failure to Supervise, Conduct Unbecoming, Insubordination, Neglect of Duty, Untruthfulness (lying/false statements), Performance of Duties, Failure to Monitor Radio

| Employee (s) Name | | |
|---|---|---|
| 1. Sergeant Jessica Salabarria | 3. | |
| 2. | 4. | |

## Witnesses

| Name | Race/Sex | D.O.B | Address | Telephone |
|---|---|---|---|---|
| Lieutenant Steven Cosner | W/M | | Resident: MBPD | |
| Officer Werner Baumer | W/M | | Business: 1100 Washington Ave., Miami Beach, | |
| Officer Richard Ocejo | W/M | | FL 33139 | |
| Officer Steven Serrano | W/M | | | |
| Officer Christopher Garrido | W/M | | | |
| Officer Hansel Romero | W/M | | | |
| Officer Rodolfo Albaladejo | W/M | | | |
| | | | Resident | |
| | | | Business | |

## Details of Allegation

 On Sunday night, 12/27/2020 at approximately 2200 hours, I advised Sergeant Jessica Salabarria that we needed a Sergeant on overtime for the midnight shift.  I told her that she was the next supervisor to be forced to work over since we did not have any volunteers for the position.  She was told that she would be assigned to Area 3 and would be working from 0000-0600 hours.  She acknowledged the order and within several minutes she provided me with an overtime slip completed by her in which she documented in her own handwriting that she was working in Area 3.  She left the sergeant's office shortly thereafter.  At approximately 0355 hours, I forwarded an email to Sergeant Salabarria with the details and watch orders that needed to be assigned to the Area 3 officers for completion prior to the end of their shift.  I then sent a text message to her cellular phone advising her to check her email at 0359 hours.  After a few minutes I did not receive an acknowledgement of the text message, so I tried to call her phone at 0404 hours.  Then phone rang repeatedly and went to voicemail.  I tried to raise her via the police radio immediately afterwards.  The dispatcher raised her multiple times with no response.  Sergeant Wilson Romero advised via radio that he would try to call her.  He called me at 0411 hours to advise that he could not reach her and that her phone rang through to voicemail.  I again tried to have the dispatcher raise her, and after several attempts by name and unit

City 001266

number, she finally responded. The tone of her voice sounded as if she was just waking up. I spoke with her via the supervisor channel and asked her where she was. She told me that she was "05". I responded by asking if she meant, "05 at the NESS". She said no and that she was at the main station. I asked if she was aware that she was assigned to Area 3 and she answered affirmatively. I then ordered her to respond to Area 3 and to check her email.

I became involved in a vehicle stop along 71 street that resulted in an arrest at 0416. Officer Ocejo was one of the officers who responded as back-up. After the subject was transported, I waited on scene with Officer Ocejo as he waited for a tow truck. I asked Officer Ocejo to check his email to see if the details had been forwarded by Sergeant Salabarria. He told me that he did not have any emails from her. This was at approximately 0520 hours. At 0543 hours, I received an unsolicited text message from Sergeant Salabarria advising that she had emailed me the squad stats and the detail assignments. She claimed that she had told the officers via landline and email of their detail assignments. The email that she sent me was sent at 0536 hours. It included the squad stats and detail assignments. I called Officer Hansel Romero and asked him if he had received any emails, texts, or phone calls from Sergeant Salabarria advising him of detail assignments. He said that he did not and that she had only asked for stats in an email that was sent at 0521 hours. That email was forwarded to me by Officer Ocejo. I began calling all the officers assigned to Area 3 and inquired the same of each of them. Every one of the officers advised that they had not received a call or text advising of the details. Officer Romero then forwarded an email that he received from Sergeant Salabarria at 0542 hours. The email had been sent to each of the Area 3 officers. It was the detail assignments and began with a highlighted line stating, "squad per our conversation please note the below details for our shift". I found this very concerning because it was now the second time that she had claimed to have had a conversation with the officers about their assignments when all six of them claimed that never happened and they did not report to any assigned details during the shift.

I sent an email to Lieutenant Jorge Garcia asking for a Detail Report for Sergeant Salabarria's assigned marked vehicle via the AVL system. My inquiry was for her vehicle movement from 2200 hours on 12/27/2020 through 0600 hours on 12/28/2020. The Detail Report showed that her vehicle had been parked at the station from 2200 hours on 12/27/2020 until 0423 hours on 12/28/2020 which was a few minutes after we spoke on the supervisor channel. For a total of 6 hours and 23 minutes. It is unknown how long the vehicle had been parked prior to that. The report indicated that she left the station and drove directly to 73rd Street and Ocean Terrace where she again parked her vehicle at 0440 hours. The vehicle remained in that position until 0533 hours for a total of 53 minutes. She then left that location and drove directly to the MBPD headquarters.

Note that of the six officers assigned to Area 3 on the shift in question 4 of them have 2 years of experience or less.

Sergeant Salabarria's actions show a willful effort to deceive a supervisor and a failure to obey a direct order from said supervisor. She failed to report to her assigned zone and failed to supervise the officers under her watch. She failed on multiple occasions to respond to the police radio and showed extreme neglect in the performance of her duties.

City 001267

# Final M. Smith Declaration

Final Audit Report                                                              2024-05-29

| | |
|---|---|
| Created: | 2024-05-29 |
| By: | Michael Elkins (melkins@mlelawfirm.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAALF4QP0YPtxAInEG6Xwoq2FXTAySmowp8 |

## "Final M. Smith Declaration" History

Document created by Michael Elkins (melkins@mlelawfirm.com)
2024-05-29 - 1:53:49 PM GMT- IP address: 108.252.74.124

Document emailed to Mike Smith (m_smyth@hotmail.com) for signature
2024-05-29 - 1:54:03 PM GMT

Email viewed by Mike Smith (m_smyth@hotmail.com)
2024-05-29 - 2:03:29 PM GMT- IP address: 174.228.170.181

Document e-signed by Mike Smith (m_smyth@hotmail.com)
Signature Date: 2024-05-29 - 2:06:42 PM GMT - Time Source: server- IP address: 70.168.90.178

Agreement completed.
2024-05-29 - 2:06:42 PM GMT

**Adobe Acrobat Sign**