**Page 1**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO.:1:22-cv-21004-DPG

JESSICA GUASTO,

        PLAINTIFF,

VS.

THE CITY OF MIAMI BEACH, FL,
A FLORIDA MUNICIPALITY,

        DEFENDANT.
_____/

DEPOSITION OF:          EUGENE GIBBONS, ESQ.
DATE:                   APRIL 18, 2024
TIME:                   9:00 A.M. - 9:41 A.M.
PLACE:                  VIA ZOOM REMOTE CONFERENCING
REPORTED BY:            TIMOFEY GARBUZ, COURT REPORTER
                        NOTARY PUBLIC, STATE OF FLORIDA

**Page 2**

1 APPEARANCES:
2 DANIEL B. BARROUKH, ESQ.
  DEREK SMITH LAW GROUP, PLLC
3 520 BRICKELL KEY DRIVE
  SUITE O-301
4 MIAMI, FLORIDA  33131-2433
  (786) 688-2335
5 DANIELB@DEREKSMITHLAW.COM
      COUNSEL APPEARING ON BEHALF OF THE PLAINTIFF.
6
7
8 MICHAEL L. ELKINS, ESQ.
  MLE LAW
9 1212 NORTHEAST 16TH TERRACE
  FORT LAUDERDALE, FLORIDA  33304
10 (954)401-2608
  MELKINS@MLELAWFIRM.COM
11    COUNSEL APPEARING ON BEHALF OF THE DEFENDANT.
12
13 ALSO PRESENT:
14 ROBERT BUSCHEL, ESQ.
  BUSCHEL GIBBONS, P.A.
15 501 E. LAS OLAS BOULEVARD, FLOOR 3
  FORT LAUDERDALE, FLORIDA  33301-2881
16 (954) 530-5748
  BUSCHEL@BGLAW.COM
17    APPEARING ON BEHALF OF THE WITNESS, EUGENE GIBBONS, ESQ.
18          * * * * * * * * *
19          S T I P U L A T I O N S
20
21        It is hereby stipulated and agreed by and
22 between counsel for the respective parties, and the
23 deponent, that the reading and signing of the deposition
24 are hereby reserved.
25

**Page 3**

1              I N D E X
2 WITNESS                                          PAGE
3 EUGENE GIBBONS, ESQ.
4 Direct Examination by Mr. Elkins                    4
5
6            E X H I B I T S
7 DEPOSITION      DESCRIPTION                      PAGE
8 Exhibit Number 1   Settlement Agreement and Last   11
                     Chance Agreement
9
   Exhibit Number 2   Email chain between Gibbons,    15
10                    Elkins and Pancier
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**Page 4**

1          P R O C E E D I N G S
2              * * * *
3        THE REPORTER:  Okay.  Counsel, please state your
4 names and whom you represent for the record.
5        MR. BARROUKH:  Daniel Barroukh for the plaintiff,
6 Jessica Salabarria, formerly Jessica Guasto.
7        MR. ELKINS:  Michael Elkins on behalf of City of
8 Miami Beach.
9        MR. BUSCHEL:  Robert Buschel, on behalf of Gene
10 Gibbons.
11       THE REPORTER:  Mr. Gibbons, do you swear or affirm
12 that the statements you give in this matter shall be
13 the truth, the whole truth, and nothing but the truth
14 so help you God?
15       THE WITNESS:  I do.
16       THE REPORTER:  We may proceed.
17            EUGENE GIBBONS, ESQ.,
18 Having been first duly sworn, testified as follows:
19            DIRECT EXAMINATION
20 BY MR. ELKINS:
21     Q.  Good morning.  Do you have a preference if I call
22 you Gene or Mr. Gibbons.  You and I obviously --
23     A.  Whatever you prefer is fine.
24     Q.  Well, if you're okay with me calling you Gene, I
25 think that's easier.  We have a -- you and I have obviously

Eugene Gibbons, Esq.

**5**

1 known each other for a long time and have worked on a lot of
2 cases opposing each other, so --
3    A.  Sure.
4    Q.  All right.  Obviously, I'm going to short-circuit
5 a whole lot of the preamble, Gene, because I'm going to
6 presume you have been involved in an untold number of
7 depositions; is that accurate?
8    A.  No, not really.  As a police officer, but not as a
9 lawyer.
10    Q.  Oh, okay.
11    A.  So it's been a long time since I had to sit for a
12 deposition.  I've taken them.  I haven't sat for them.
13    Q.  No, I meant taken or observed, defended, all that
14 stuff.
15    A.  Okay.  Yeah, yeah.  I'm familiar with the process.
16    Q.  I didn't mean sat for.  And I only bring that up
17 because I'm going to skip over all the general rules I would
18 give a witness that's never been involved in a deposition
19 before.  Does that make sense?
20    A.  I'm familiar with the process.
21    Q.  The only rule I would remind you of, just so make
22 it go a little easier, is of course the court reporter can't
23 take down two people talking at the same time.  So you're
24 probably going to anticipate 98 percent of my questions, if
25 not a hundred percent of my questions today.  Just wait for

**6**

1 me to finish the question so we don't give Tim a hard time.
2 Is that okay?
3    A.  Perfect.
4    Q.  Okay.  Can you just give us a very brief
5 background of your history, both as a police officer and as
6 a labor and employment attorney?
7    A.  I started my career off as a police officer with
8 the City of Coral Gables, first assignment at the University
9 of Miami and then transferred to the city patrol or citywide
10 Coral Gables back in 1996, roughly, where I was a police
11 officer up until 2009.  June of 2009, I believe is my
12 retirement date.
13    I did 16 years total with the City as a police
14 officer.  Part of -- part of that was working as the
15 Union -- a Union rep, and then also as a Union President.  I
16 was the President for two terms, which is four years,
17 two-year terms, where I represented the collective
18 bargaining unit for the Fraternal Order of Police, Lodge
19 Number 7, which is Coral Gables.
20    After that -- well, during that I obtained my J.D.
21 from Nova Southeastern University and started practicing
22 law -- was admitted to the practice of law in Florida in
23 2004.
24    Q.  And have you always been primarily a labor and
25 employment attorney?  I know you do some other stuff, but is

**7**

1 it fair to say that's, like, your primary practice?
2    A.  Yeah, the lion's share of my business is
3 representing police officers through the Fraternal Order of
4 Police Union.
5    Q.  Okay.  I'm going to ask you some questions
6 regarding Jessica Salabarria, formerly known as Jessica
7 Guasto.
8    To be clear, at no point do I want to know or am I
9 asking what you talked with Jessica about in the course of
10 your representation of her.  So even if the question might
11 implicate the attorney-client privilege, I'm not asking it.
12 I'm sure Rob will jump in and caution you not to reveal any
13 privileged communications.  I'm not asking for them.
14    I am also not asking for any attorney-client
15 communications between you and the Fraternal Order of
16 Police.
17    Again, a question may implicate that, but I'm only
18 asking or you should only answer to the extent you can
19 without revealing privileged communications.  Do you
20 understand that?
21    A.  I do.
22    Q.  Okay.  Do you know Jessica Salabarria?
23    A.  Yes.
24    Q.  How do you know her?
25    A.  I represented her at one point.

**8**

1    Q.  And what was the --
2    A.  I might have represented her more than once,
3 but -- on other issues before, I'm not sure.  But I want to
4 say I did.  And when I say represented, it was not -- might
5 have been in Internal Affairs or something like that.
6    So that's part of my duties or part of our job is
7 to represent officers when they're being investigated,
8 may -- the investigation may lead to nothing, no discipline
9 or whatever.  But I believe I represented her in internal
10 affairs on other -- other matters.
11    Q.  And can you explain your relationship with the
12 Fraternal Order of Police Lodge 8, which I believe is the
13 lodge for City of Miami Beach?
14    A.  Our firm, Buschel Gibbons, is contracted to
15 represent the Fraternal Order of Police, Lodge Number 8,
16 which is Miami Beach, for legal services and assisting and
17 representing our members when needed.
18    Q.  And so, is it fair to say that, essentially, the
19 FOP provides an attorney to its members, and you and/or Rob
20 Buschel would be one of those attorneys that would be
21 provided?
22    A.  Yes.  If they -- if they give the matter to us or
23 assign an attorney for representation, yes.
24    Q.  And I'm not -- I don't mean that they get an
25 attorney for anything.  It's related to matters having to do

Eugene Gibbons, Esq.

9

1  with their role at the police department, whether it's a
2  grievance, a disciplinary issue, something -- something
3  involving their job at the City of Miami Beach Police
4  Department?
5      A.  Correct.  Correct.  But sometimes they assign
6  Union reps to represent their members.
7      Q.  Understood.  I'm referring to a period of time in
8  approximately April/May of 2020.  Did you have the
9  opportunity to represent Jessica in an Internal Affairs
10 investigation?
11     A.  Off the top of my head, I don't know -- is that in
12 relation to what led to the Last Chance Agreement?
13     Q.  It is, yes, absolutely.  I'm trying not to ask
14 leading questions, but I mean, I certainly can make it go
15 faster.  Yes, did you have the opportunity to --
16     A.  I don't have a good timeline on all of it as far
17 as, like, the date, the month, you know, but yes, I did
18 represent her.  I was assigned to represent her by the Union
19 in regards to the matter where she was being investigated,
20 as well as I believe Guasto.
21     Q.  Guasto, being Nicholas Guasto?
22     A.  Correct.
23     Q.  Her then I think boyfriend, then soon-to-be
24 husband, now ex-husband, correct?
25     A.  Yeah, I don't -- I don't remember the timing of

10

1  all that, but --
2      Q.  All right.  Fair enough.
3      A.  There was -- her name was Salabarria when I
4  undertook representation on it.
5      Q.  All right.  I'm going to show you -- make it a
6  little easier.  Just give me one second.
7          Can you see the document I'm sharing?
8      A.  Can you enlarge it a little bit?
9      Q.  Sure can.
10     A.  Let me get my glasses.  Hold on.
11     Q.  How's that?
12     A.  Okay.  I can see it.
13     Q.  Okay.  Let me just move this over here.
14         Okay.  This is a Settlement Agreement entered into
15 between the City of Miami Beach -- you can see that at the
16 top -- Jessica Salabarria, and the FOP, Lodge Number 8,
17 which is the Beach's lodge.  And I will scroll down.
18 There's a number of initials on the document.  And hold on
19 one second.  I'm referring to your representation of Jessica
20 involving IA Case Number 2020-010.  Do you remember
21 representing Jessica on that issue and being involved in
22 this Settlement Agreement?
23     A.  Yes.
24     Q.  Okay.  I'm going to scroll down.  And you see here
25 where the Union signed the Settlement Agreement?

11

1      A.  Yeah, Kevin Milan, as President, yeah.
2          (Deposition Exhibit Number 1 marked for
3  identification.)
4  BY MR. ELKINS:
5      Q.  And did you represent the Union and Jessica in
6  negotiating this Settlement Agreement?
7      A.  Yes.
8      Q.  I don't want to know the specifics of the
9  negotiations.  Thank you.
10         And then also, there's a Last Chance Agreement; do
11 you see this?
12     A.  Yes, sir.
13     Q.  Did you represent Jessica in the negotiation of
14 this Last Chance Agreement?
15     A.  Yes.
16     Q.  Okay.  I'm going -- see, there's some initials on
17 each page.  And I'm going to scroll down.  And you see here
18 the Union signed this?
19     A.  Yes.
20     Q.  Sorry.  That's my dog barking.  She's keeping
21 everybody safe from iguanas if you can hear that.
22         Did you also represent the Union in negotiating
23 this Last Chance Agreement?
24     A.  Yes, that's normal.
25     Q.  And did you represent Jessica in negotiating this

12

1  Last Chance Agreement?
2      A.  Yes.
3      Q.  Okay.  Did Jessica voluntarily enter into both the
4  Settlement Agreement and the Last Chance Agreement?
5      A.  I believe she did.
6      Q.  Are you aware of anybody that forced her into
7  entering either the Last Chance Agreement or the Settlement
8  Agreement?
9      A.  No.  If I were, I would have addressed that.
10     Q.  Okay.  And did you review both of these
11 agreements?
12     A.  Yes.
13     Q.  Okay.  Prior to entering into the Settlement
14 Agreement and the Last Chance Agreement, were you -- was
15 there a meeting held in November -- early November 2020
16 between various representatives of the City, yourself,
17 Michael Pancier and Jessica?
18     A.  Yes.
19     Q.  Do you remember that meeting?
20     A.  Generally.
21     Q.  What do you remember was the purpose of that
22 meeting?
23     A.  I believe -- my memory is the purpose of that
24 meeting was to come to a -- or attempt to come to a global
25 resolution between -- because there was two things I think

Eugene Gibbons, Esq.

13

going on mainly.  There was an EEOC charge, which I wasn't
representing Jessica on.  She had another attorney, Michael
Pancier, who was, like, you know, the lead counsel for her
and her representative for that matter.  And then I was
there for the Internal Affairs disciplinary component.  And
then yourself, who was representing the City.  And I -- I
recall the general purpose of that meeting was to try to
come to a global resolution of all her claims and the
City's.

**Q.  Sort of like a settle all family business meeting;
is that fair to say?**

A.  Yeah.  I don't know if it's family.  But yeah.
It's settle the employer/employee/Union business.

**Q.  Okay.  But it was not a secret -- correct me if
I'm wrong -- that the meeting was to handle both the EEOC
charge that was pending and the Internal Affairs
investigation; is that fair to say?**

A.  Well, yeah, that's -- yes, obviously, I can't
settle, nor could I have any authority to settle her EEOC
claim, so Mr. Pancier had to be involved.

**Q.  Did Jessica know the purpose of the meeting?**

MR. BARROUKH:  Objection to form.

THE WITNESS:  Well --

BY MR. ELKINS:

**Q.  You can answer.**

14

A.  I believe so.

**Q.  Okay.  Do you remember if Jessica and the FOP
agreed to toll the 180-day rule because of the settlement
negotiations for the Internal Affairs investigation?**

A.  You know, I don't know.  May have.  I don't
remember.

**Q.  Okay.  Well, first, I'll show you -- I'm going to
show you an email that I think will refresh your
recollection.**

**But can you explain what the 180-day rule is in
relation to police officer --**

A.  I was in a couple months ago.  So I honestly don't
know what it is anymore.  But generally speaking, the
180-day rule is a provision that was put into the Law
Enforcement Officer's Bill of Rights, LEOBR, which is
Chapter 112.532 and others.

Basically, says that you, the agency/the police
department has to notify the officer within 180 days of the
complaint when they receive the complaint of the proposed
discipline that they're going to seek against officers.

So not only do they have to wrap up their
investigation, but they have to present the officer with the
specific discipline they're going to be seeking, so to bring
closure.

And the gist behind it all was to bring closure to

15

the officer so they're not sitting under the, you know, the
bad light of an investigation for longer than necessary.  So
it kind of was to have agencies speed up their
investigations, not sit on them, and get them done within a
prompt time, which six months, 180 days, was the
determination, but --

And so, if they do not meet the 180 days, then the
agency cannot discipline the officer.

**Q.  Basically, if the agency blows the 180 days, they
waive the ability to discipline, subject to some limitations
of course, but generally?**

A.  Right.  Obviously, there's exceptions:  If there's
a criminal investigation, if the officer is unavailable for
whatever reason, you know, there's a whole bunch of
exceptions that fall under that toll, the 180 days.  So if
none of those apply, then yes.

**Q.  And the officer can also agree to toll the 180
days, correct?**

A.  Correct.

**Q.  Okay.  I'm going to show you what I'm marking as
Exhibit 2.**

**(Deposition Exhibit Number 2 marked for
identification.)**

BY MR. ELKINS:

**Q.  This Exhibit 2 is actually a series of emails I'll**

16

tell you, between you, myself, and Michael Pancier.  I'll
represent that these emails are basically us scheduling the
November meeting.

But I'm really, for purposes of this deposition,
concerned with this first email, which take a minute and
read it.  Let me know if you need anything.

A.  Can you enlarge it a little bit, Mike?  I can't --

**Q.  Of course.  Of course.  How's that?**

A.  Yeah, that's better.  Okay, yeah.

**Q.  All right.  So does this refresh your recollection
as to whether the 180-day period was tolled?**

A.  I mean, I'm reading it, and you're -- am I on this
email?  Yes, I'm on it.  So yeah, it sounds right.

**Q.  Okay.  And was the purpose of tolling the 180 days
so that we -- and extending the time for the City to respond
to the EEOC charge so that the parties could attempt to
reach a global resolution on all issues?**

A.  Yes.

**Q.  And was Jessica aware of all that?**

MR. BARROUKH:  Objection.  Form.

BY MR. ELKINS:

**Q.  If you know.**

A.  I don't know if I specifically spoke to Jessica
about that, but I know I would have spoken to the Union
about it, who may have spoken to her about it.  I don't

17

1  know, but --
2      Q.  Okay.  But --
3      A.  I can't tell you for certainty.
4      Q.  But the Union was acting on her behalf in this
5  matter, correct?
6      A.  Yes.
7      Q.  Did she ever object at any point?
8      A.  Not that I'm aware of.
9      Q.  Okay.  Okay.  And then, ultimately, I showed you
10  earlier a Settlement Agreement and the Last Chance
11  Agreement.  Ultimately, the City, Jessica and the Union did
12  reach a resolution, correct?
13      A.  And Mr. Pancier.
14      Q.  And Mr. Pancier, correct.
15          So I want to talk a little bit about the November
16  meeting, and then I'm going to fast-forward to Jessica's
17  separation from employment.
18          At that November meeting, do you recall if you
19  gave a statement -- I don't know -- I don't mean a statement
20  formally, but if you said at the beginning of the meeting to
21  the entire room that the meeting was a confidential
22  settlement meeting?  Do you remember saying that?
23      A.  Yes, a hundred percent.
24      Q.  Okay.  Was the meeting at any point an officer
25  interrogation under Chapter 112?

18

1      A.  In my opinion, no.  We were in there to try to
2  resolve all the matters and obtain a Settlement Agreement.
3  And I specifically wanted to make sure that any discussions
4  that took place back and forth were confidential and that
5  they would not be used by either party, and that they were
6  protected communications inside that meeting for the sole
7  purpose of trying to come to a resolution for everybody.
8      Q.  And you gave -- you gave a -- I'm going to call it
9  a speech.  Maybe "speech" is the wrong word, but I'm going
10  to call it that.  You gave a speech at the beginning of the
11  meeting that made clear to everybody in the room -- and by
12  everybody, I mean, myself, Michael Pancier, Jessica and all
13  of the representatives of the City -- that it was a
14  confidential settlement discussion akin to a mediation with
15  all of the confidentiality rules that apply to a mediation;
16  is that accurate?
17      A.  Yes.  Me and Mr. Pancier wanted to make sure that
18  that was the case so that the City could not and would not
19  be able to use anything that might have been said or uttered
20  against Jessica.
21      Q.  And did the City agree to that?
22      A.  Yes.
23      Q.  Okay.  Just a few more questions on the November
24  meeting and then I'll move on.  And then, actually, I think
25  I'll be -- I'm almost close to being finished.

19

1          During the group -- I'm not talking about anything
2  that happened in your caucuses.  I am only -- all these
3  questions relate solely to the group session for the
4  November 2020 meeting.
5          During the group section, did anybody from the
6  City interrogate Jessica?
7      A.  I don't recall that.  Not at all.
8      Q.  Okay.  You don't recall if --
9      A.  I don't know what interrogation means.  Like,
10  it's --
11      Q.  Okay.  I'll -- that's a fair point.  I'll clarify.
12          Did anybody from the City, whether it be A.J.
13  Prieto, Chief Clements, Michael Smith, ask Jessica any
14  questions?
15      A.  I don't -- I mean, I know we met in a room.  There
16  was the group meeting.  Then we went off into another room.
17  Right?  And where we had this confidential settlement
18  discussions.  Right?
19      Q.  I'm talking about the group meeting.
20      A.  Well, which group meeting?  That's what I'm trying
21  to -- we met all -- the Chief, everybody was in one room,
22  you.  Then we kind of broke off and went into the settlement
23  discussion room.
24      Q.  Well, by we -- well, let's break that down a
25  little bit.

20

1          First, everybody met in the big Chief conference
2  room?
3      A.  Correct.
4      Q.  Correct?
5      A.  Right.  And I don't -- I think I spoke in that
6  room.  I don't know who else did.  Maybe Mr. Pancier may
7  have, yourself.
8      Q.  That's when you gave the speech to everybody to
9  confirm that this was a confidential settlement meeting,
10  that all the communications that we were sharing were going
11  to fall under the mediation rules of confidentiality because
12  we were attempting to resolve both the Internal Affairs
13  claim and the EEOC charge; is that accurate?
14      A.  Right.  And then we broke -- then we broke off --
15      Q.  Well, hold on.
16      A.  -- and had those discussions.
17      Q.  Hold on.  When you say "we broke off," are you
18  referring to the lawyers going into --
19      A.  Yes.
20      Q.  -- a separate room to caucus and start discussing
21  broad-based terms of a resolution?
22      A.  Yes.
23      Q.  Okay.  I'm not referring to the lawyers caucusing.
24  All my questions relate to what happened in that room when
25  everybody was in the --

**21**

1    A.  Okay.
2    Q.  -- big Chief conference room.  So sorry for that.
3         During that portion do you remember if anyone from
4    the City questioned Jessica directly?
5    A.  Honestly, I don't remember.  I mean, I just don't
6    remember.  But if they did, it was under, you know, our
7    representation and with the understanding it was
8    confidential, so --
9    Q.  Was there any -- was there any -- during that
10   meeting, did you view anything that happened in the group
11   meeting as an interrogation as that's defined under Chapter
12   112 in the Police Officer Bill of Rights?
13   A.  Well, no.  No, because it was confidential.  It
14   was for settlement purposes.  It was not the agency
15   interrogating her for an investigation.
16   Q.  And at any point in that meeting, did you object
17   or raise any objection and say, no, this is an improper 112
18   interrogation?
19   A.  No.
20   Q.  Why not?
21   A.  Because there was no 112 interrogation going on.
22   It was a settlement -- confidential settlement discussion.
23   Q.  Okay.
24   A.  It was a meeting to resolve the potential
25   discipline and everything that was, the EEOC claim, the --

**22**

1    all the claims with the City.
2    Q.  I understand that.  And let me clarify why I'm
3    asking.  Jessica has taken the position in this lawsuit that
4    her rights under Chapter 112 were violated by the City
5    during that November meeting.  That's why I'm asking these
6    questions.  Do you understand that?
7    A.  I understand.
8    Q.  Okay.  I'm going to move on to my next part here,
9    which is Jessica's separation from employment.  Are you
10   familiar with Jessica's separation from employment?
11   A.  Well, in -- that's a pretty open question, so in
12   what regards?
13        Now, the Last Chance Agreement we designed and put
14   together to avoid termination, at least that's -- that was
15   my objective, was to not have her terminated, unemployed and
16   not receiving a paycheck and going through the potential
17   uncertainties of arbitration to try to get her job back, you
18   know.  And so, in that regard, I know that we came to a
19   resolution on a level of discipline as well as a Last Chance
20   Agreement.
21   Q.  Well, you're familiar that in January of 2021, the
22   City invoked the Letter of Resignation as part of the Last
23   Chance Agreement and Jessica was separated from employment.
24   You know that that happened, right?
25   A.  I did find out that that happened, yes.

**23**

1    Q.  Do you know if the FOP filed a grievance on
2    Jessica's behalf to grieve that separation from employment?
3    A.  I think I saw a grievance on it.  I don't know if
4    the FOP filed it or somebody else.  But I don't know.
5    Q.  Okay.  It's possible, though, that somebody else,
6    a different lawyer, filed it?
7    A.  I mean, our Last Chance Agreement was our Last
8    Chance Agreement.  And if the City invoked it, and I felt
9    or, you know, that it was done improperly, then we would
10   have challenged the Last Chance Agreement enforcement.
11   Q.  Right.  And did the FOP challenge the enforcement
12   of the Last Chance Agreement?
13   A.  I don't believe so.
14   Q.  Right.  And did the Last Chance Agreement
15   essentially convert Jessica to an employee-at-will?
16   A.  That's -- I mean, that's kind of a hard legal
17   question to answer.  I think that -- certainly, she
18   submitted an irrevocable Letter of Resignation along with
19   it.  I don't have the agreement in front of me, but if you
20   have it.
21   Q.  Of course.  Let me --
22   A.  I know you couldn't just -- they couldn't just
23   terminate her for any reason.  I mean, that was -- that was
24   certainly not going to be the case.  I would have never had
25   such loose terms.

**24**

1         But usually -- usually, I try to have them tied to
2    the same misconduct she's alleged to have occurred or that
3    the officer generally, not just, oh, well, you showed up
4    late to work for today, now we're firing you.  It would be
5    too loose, too whimsical, but -- so usually I try to tailor
6    them so that it's, you know, they -- the employee knows this
7    is the misconduct they don't want to see again.  And don't
8    do it again.  Because if they do in the time period of the
9    Last Chance, or not forever, but just don't do it.  Be on
10   your best behavior.  And that's -- that's kind of the
11   overall gist of it.
12   Q.  Let me clarify that question.  By
13   employee-at-will, what I mean is, not the generic
14   employment-at-will that we kind of all know that --
15   A.  Right.  That's --
16   Q.  Hold on.  Let's not talk over each other just for
17   Tim's sake.
18        -- that we all know in the private sector.
19        What I'm referring to really is the fact that
20   under the Collective Bargaining Agreement and, obviously,
21   general labor law as a public sector employee and a police
22   officer, police officers are entitled to a level of due
23   process before any type of discipline, correct?
24   A.  Say that again.  I was reading the agreement.
25   Q.  Yeah.  I'm going to walk you through the

**25**

1  agreement, so you don't have to go into the agreement just
2  yet.
3       Generally speaking, under labor law, Florida state
4  law is that -- police officers, as well as the constitution
5  police officers because their government employees, they
6  have a property interest in their job, they are -- and
7  through the Collective Bargaining Agreement, they are
8  entitled to a level of due process and certain procedures
9  prior to the City undertaking any type of discipline against
10  them.  Correct?
11      A.  Correct.
12      Q.  But generally speaking, when an officer enters
13  into a Last Chance Agreement, there is essentially a waiver
14  of some of those provisions, correct?
15      A.  Yes.
16      Q.  So most Last Chance Agreements -- we are going to
17  get into this one specifically.  But generally, Last Chance
18  Agreements tend to waive the procedural due process rights
19  guaranteed under the Collective Bargaining Agreement, for
20  example; is that fair to say?
21      A.  Depending on the agreement, yes, and its terms.
22      Q.  Okay.  Perfect.
23      So getting into Jessica's agreement -- I'm going
24  to scroll down.  Okay.  It says here that -- in paragraph 2:
25  "During this period, Salabarria must be on duty and in City

**26**

1  limits during all of her scheduled shifts, unless given
2  prior authorization.  For the avoidance of confusion, this
3  means that during the terms of this agreement, Salabarria
4  shall not be outside the City limits when she's on duty,
5  shall not tell the City she's on duty when she is outside
6  the City limits and shall not leave before the end of her
7  scheduled shift unless given prior authorization."
8       Do you remember that?
9      A.  Yeah.  Yes.
10      Q.  So that's one specific thing that this Last Chance
11  Agreement addresses, correct?
12      A.  Correct.
13      Q.  Then it says: "Additionally, Salabarria shall
14  refrain from violating any City or the police department
15  policies, rules or regulations; Standard Operating
16  Procedures, or Personnel Rules, all of which (including any
17  amendments or additions) are incorporated herein by
18  reference.  In any instance during which City or police
19  department policies, procedures or Personnel Rules differ
20  from or conflict with the stipulations set forth in the
21  Collective Bargaining Agreement, the City or police
22  department policies, procedures or Personnel Rules shall
23  prevail."
24      Is that accurate -- an accurate representation of
25  what this says?

**27**

1      A.  Yes.
2      Q.  Okay.  Then it says: "The Chief of Police shall
3  exclusively assess and determine employee's compliance with
4  this agreement.  The Chief's decision as to compliance with
5  this agreement shall not be subject to any grievance and/or
6  review of any kind by Salabarria and/or the Union and is not
7  subject to explanation or review."
8       So does that mean that the City -- basically, that
9  the Chief and the City had the ability to implement this
10  agreement and not even explain why?
11      MR. BUSCHEL:  I'm going to object.  I'm going to
12  object because I think you're asking Gene for legal
13  opinions on an interpretation of a contract.  And I
14  think the contract speaks for itself.
15      MR. ELKINS:  Okay.  I'll rephrase.  That's fair.
16  BY MR. ELKINS:
17      Q.  Does the agreement state that the City's decision
18  is not subject to explanation or review?
19      A.  It's what it says.
20      Q.  Okay.
21      A.  Can you just scroll down?  Can I read the rest of
22  it?
23      Q.  Yeah, I'm going to actually read paragraph 5 now,
24  which is the last paragraph I'm going to read, but may be
25  the most important.

**28**

1      "Failure to comply with any portion or requirement
2  of this agreement, including, but not limited to, the
3  requirement not to violate any City or police department
4  policies, Standard Operating Procedures or personnel rules
5  as referenced in paragraph 3 above, may result in immediate
6  implementation of the attached Letter of Resignation, as
7  referenced in paragraph 9 below.  It is the intent and
8  understanding of the parties that the violations
9  contemplated to trigger the implementation of the attached
10  Letter of Resignation shall not be for individual, discreet
11  minor policy and procedural violations.  The parties agree
12  that repeated violation of the same discreet, minor policy
13  may result in an event triggering the implementation of the
14  attached Letter of Resignation.  In that event, the employee
15  and the Union understand and agree there will be no recourse
16  or review available pursuant to any grievance, appeal or
17  review process under any federal, state or local statute
18  ordinance, Collective Bargaining Agreement or in any other
19  form or under any other process or procedure."
20      Do you want to take a minute and just digest that
21  before I ask you --
22      A.  Yeah, that's -- that's -- I remember that.
23      Q.  First of all, is any of this language that I've
24  read to you in this Last Chance Agreement unusual or
25  completely different than other types of language you might

Eugene Gibbons, Esq.

29

1  see or have been involved with in Last Chance Agreements?
2      A.  I'm -- I mean, that's hard to say.  Each Last
3  Chance Agreement I try to negotiate.  Obviously, it's a
4  negotiation.  So I -- I have to get the City -- City to
5  agree on what they're willing to move to agree to in it.
6  And so, it's all in negotiation, right?
7          So this was the language that we, from our
8  standpoint, I could get in there the best to try to protect
9  her --
10      Q.  And this is --
11      A.  So she wasn't fired for some, like, we entered
12  this Last Chance Agreement, and then, a week later the Chief
13  goes, oh, you were late for roll call, you're fired.  You
14  know?  And -- and you know, I believe you and I had
15  discussions about that, that I -- we didn't want her to be
16  able to be terminated for something minor that, you know,
17  because, you know, it's -- it's just -- that wasn't the
18  intent.
19      Q.  Is a police officer not telling -- in general, if
20  a police officer tells a supervisor that they've done
21  something or that they are in a location and they're not
22  really there, is that minor in general?
23          MR. BUSCHEL:  I'm going to object.  I think that
24      calls for an opinion.  And we don't want a Union lawyer
25      starting to give opinions about what's appropriate

30

1  discipline --
2          MR. ELKINS:  That's fair.
3          MR. BUSCHEL:  -- in general.
4  BY MR. ELKINS:
5      Q.  I'll ask it a different way.  Did the FOP file any
6  grievance or any type of legal challenge to Jessica's
7  separation from employment?
8      A.  Not that I'm aware of.
9      Q.  If you were aware or if --
10          Or let me ask it this way:  If the FOP had
11  determined that Jessica's separation was for an individual
12  discreet, minor policy or procedural violation, would it
13  have filed a grievance or challenged the separation in some
14  way?
15      A.  I mean, it's speculative, but --
16      Q.  Sure.  I'm totally asking you to speculate.
17      A.  Possibly.  Should have, yeah.
18      Q.  Okay.  But that didn't happen here, correct?
19      A.  Not that I'm aware of.
20      Q.  Okay.  Were you aware of a meeting --
21          Let me ask you this:  Based upon the Last Chance
22  Agreement and the Settlement Agreement, when the City -- if
23  the City or when the City wanted to implement the Letter of
24  Resignation, was it required -- was the City required to
25  conduct an investigation or do any type of interview with

31

1  Jessica prior to implementing the Letter of Resignation that
2  you're aware of?
3      A.  I don't know how I can answer that question.
4          MR. BUSCHEL:  Yeah, start that question again.
5          MR. ELKINS:  You know what?  I'll withdraw the
6      question.
7          MR. BUSCHEL:  It calls for a lot of legal
8      conclusion.
9  BY MR. ELKINS:
10      Q.  Yeah, I'm certainly not asking you to do that.
11          MR. ELKINS:  So Bob, I appreciate the objections
12      and I'll just withdraw that question.
13          Give me a minute.  I might be done.  Or give me
14      five minutes, if you can.  I might be done.  So we
15      can -- can we go off the record, let me take five and
16      just go through my notes and make sure I covered what I
17      wanted to cover.
18          THE REPORTER:  Off the record.
19          (Recess was taken.)
20          MR. ELKINS:  I have nothing further.
21          MR. BUSCHEL:  Okay.
22          MR. BARROUKH:  I have nothing further either.
23          THE REPORTER:  Read or waive?
24          Robert, you have questions?
25          MR. BUSCHEL:  We'll reserve -- we'll reserve the

32

1  right to read the deposition.
2          MR. ELKINS:  I'm ordering, Tim.  Mini only.  Same
3      as all the others.  Oh, and let me drop the exhibits in
4      the chat.
5          THE REPORTER:  Okay.
6          MR. BARROUKH:  I'll hold off for now as well.
7          THE REPORTER:  Okay.
8          (Deposition concluded at 9:41 a.m.)
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

## 33

1              CERTIFICATE OF OATH
2  STATE OF FLORIDA
3  COUNTY OF BROWARD
4      I, TIMOFEY GARBUZ, Notary Public, State of Florida,
5  certify that EUGENE GIBBONS, ESQ. personally appeared before
6  me via Zoom on the 18th day of April 2024 and was duly
7  sworn.
8      Signed this 18th day of April 2024.
9
10     _____
        TIMOFEY GARBUZ
11      Notary Public
        State of Florida
12      My Commission #HH 284028
        Expires July 5, 2026
13
14
15
16
17
18
19
20
21
22
23
24
25

## 34

1          REPORTER'S DEPOSITION CERTIFICATE
2
   STATE OF FLORIDA   )
3
   COUNTY OF PALM BEACH )
4
5      I, TIMOFEY GARBUZ, Court Reporter, certify that I was
   authorized to and did report the Deposition of EUGENE
6  GIBBONS, ESQ.; that a review of the transcript was
   requested; and that the foregoing transcript, pages 1-32, is
7  a true and complete record of my stenographic notes.
8      I FURTHER CERTIFY that I am not a relative,
   employee, attorney or counsel of any of the parties,
9  nor am I a relative or employee of any of the parties'
   attorney or counsel connected with the action, nor am I
10 financially interested in the action.
11     DATED this 4th day of May 2024.
12
13
14
   _____
15     TIMOFEY GARBUZ
        COURT REPORTER
16
17
18
19
20
21
22
23
24
25

## 35

1      E R R A T A  S H E E T
2  DO NOT WRITE ON THE TRANSCRIPT - ENTER CHANGES
3  IN RE:    GUASTO V CITY OF MIAMI BEACH
   CASE NO:   1:22-cv-21004-DPG
4  DATE:      APRIL 18, 2024
   DEPONENT NAME: EUGENE GIBBONS, ESQ.
5
6  PAGE/LINE    CORRECTION      REASON
7  _____
8  _____
9  _____
10 _____
11 _____
12 _____
13 _____
14 _____
15 _____
16 _____
17     (Use other side if necessary)
18     Under penalties of perjury, I declare that I have read
   the foregoing document and that the facts stated are true.
19
20 _____     _____
   EUGENE GIBBONS, ESQ.             DATE
21
22
23
24
25

## 36

1  DATE:  MAY 4, 2024
2  EUGENE GIBBONS, ESQ.
   C/O BUSCHEL@BGLAW-PA.COM.GOV
3
   IN RE:  GUASTO V CITY OF MIAMI BEACH
4      Deposition of Eugene Gibbons
5      This letter is to advise you that the transcript
   taken in the above-referenced deposition has been
6  transcribed.  Please contact our office at (954)523-5326 to
   make arrangements to read and sign or sign below to waive
7  review of the transcript.
8      It is suggested that the review of this transcript
   be completed within 30 days of your receipt of this letter
9  as considered reasonable under Federal Rules*; however,
   there is no Florida Statute to this regard.
10
11     The original of this transcript has been forwarded
   to the ordering party and your errata, once received, will
11 be forwarded to all ordering parties for inclusion in the
12 transcript.
13 Very truly yours,
14
15 Timofey Garbuz, Court Reporter
16 Waiver:
17 I, _____, hereby waive the reading and signing
18 of my deposition transcript.
19 _____
   DEPONENT             DATE
20
   *Federal Civil Procedure Rule 30(e)Florida Civil Procedure
21 Rule 1.310(e).
22
23
24
25

**A**

**A.J** 19:12
**a.m** 1:14,14 32:8
**ability** 15:10
  27:9
**able** 18:19 29:16
**above-referen...**
  36:5
**absolutely** 9:13
**accurate** 5:7
  18:16 20:13
  26:24,24
**acting** 17:4
**action** 34:9,10
**Additionally**
  26:13
**additions** 26:17
**addressed** 12:9
**addresses** 26:11
**admitted** 6:22
**advise** 36:5
**affairs** 8:5,10
  9:9 13:5,16
  14:4 20:12
**affirm** 4:11
**agencies** 15:3
**agency** 15:8,9
  21:14
**agency/the**
  14:17
**ago** 14:12
**agree** 15:17
  18:21 28:11,15
  29:5,5
**agreed** 2:21 14:3
**agreement** 3:8,8
  9:12 10:14,22
  10:25 11:6,10
  11:14,23 12:1
  12:4,4,7,8,14
  12:14 17:10,11
  18:2 22:13,20
  22:23 23:7,8
  23:10,12,14,19
  24:20,24 25:1

  25:1,7,13,19
  25:21,23 26:3
  26:11,21 27:4
  27:5,10,17
  28:2,18,24
  29:3,12 30:22
  30:22
**agreements**
  12:11 25:16,18
  29:1
**akin** 18:14
**alleged** 24:2
**amendments**
  26:17
**and/or** 8:19 27:5
  27:6
**answer** 7:18
  13:25 23:17
  31:3
**anticipate** 5:24
**anybody** 12:6
  19:5,12
**anymore** 14:13
**appeal** 28:16
**APPEARANC...**
  2:1
**appeared** 33:5
**APPEARING**
  2:5,11,17
**apply** 15:16
  18:15
**appreciate** 31:11
**appropriate**
  29:25
**approximately**
  9:8
**April** 1:13 33:6
  33:8 35:4
**April/May** 9:8
**arbitration**
  22:17
**arrangements**
  36:6
**asking** 7:9,11,13
  7:14,18 22:3,5

  27:12 30:16
  31:10
**assess** 27:3
**assign** 8:23 9:5
**assigned** 9:18
**assignment** 6:8
**assisting** 8:16
**attached** 28:6,9
  28:14
**attempt** 12:24
  16:16
**attempting**
  20:12
**attorney** 6:6,25
  8:19,23,25
  13:2 34:8,9
**attorney-client**
  7:11,14
**attorneys** 8:20
**authority** 13:19
**authorization**
  26:2,7
**authorized** 34:5
**available** 28:16
**avoid** 22:14
**avoidance** 26:2
**aware** 12:6
  16:19 17:8
  30:8,9,19,20
  31:2

  **B**

**B** 2:2 3:6
**back** 6:10 18:4
  22:17
**background** 6:5
**bad** 15:2
**bargaining** 6:18
  24:20 25:7,19
  26:21 28:18
**barking** 11:20
**Barroukh** 2:2
  4:5,5 13:22
  16:20 31:22
  32:6

**Based** 30:21
**basically** 14:17
  15:9 16:2 27:8
**Beach** 1:8 4:8
  8:13,16 9:3
  10:15 34:3
  35:3 36:3
**Beach's** 10:17
**beginning** 17:20
  18:10
**behalf** 2:5,11,17
  4:7,9 17:4 23:2
**behavior** 24:10
**believe** 6:11 8:9
  8:12 9:20 12:5
  12:23 14:1
  23:13 29:14
**best** 24:10 29:8
**better** 16:9
**big** 20:1 21:2
**Bill** 14:15 21:12
**bit** 10:8 16:7
  17:15 19:25
**blows** 15:9
**Bob** 31:11
**BOULEVARD**
  2:15
**boyfriend** 9:23
**break** 19:24
**BRICKELL** 2:3
**brief** 6:4
**bring** 5:16 14:23
  14:25
**broad-based**
  20:21
**broke** 19:22
  20:14,14,17
**BROWARD**
  33:3
**bunch** 15:14
**Buschel** 2:14,14
  4:9,9 8:14,20
  27:11 29:23
  30:3 31:4,7,21
  31:25

**BUSCHEL@...**
  36:2
**BUSCHEL@...**
  2:16
**business** 7:2
  13:10,13

  **C**

**C** 4:1
**C/O** 36:2
**call** 4:21 18:8,10
  29:13
**calling** 4:24
**calls** 29:24 31:7
**career** 6:7
**case** 1:5 10:20
  18:18 23:24
  35:3
**cases** 5:2
**caucus** 20:20
**caucuses** 19:2
**caucusing** 20:23
**caution** 7:12
**certain** 25:8
**certainly** 9:14
  23:17,24 31:10
**certainty** 17:3
**CERTIFICATE**
  33:1 34:1
**certify** 33:5 34:5
  34:8
**chain** 3:9
**challenge** 23:11
  30:6
**challenged**
  23:10 30:13
**Chance** 3:8 9:12
  11:10,14,23
  12:1,4,7,14
  17:10 22:13,19
  22:23 23:7,8
  23:10,12,14
  24:9 25:13,16
  25:17 26:10
  28:24 29:1,3

29:12 30:21
**CHANGES** 35:2
**Chapter** 14:16
  17:25 21:11
  22:4
**charge** 13:1,16
  16:16 20:13
**chat** 32:4
**Chief** 19:13,21
  20:1 21:2 27:2
  27:9 29:12
**Chief's** 27:4
**city** 1:8 4:7 6:8,9
  6:13 8:13 9:3
  10:15 12:16
  13:6 16:15
  17:11 18:13,18
  18:21 19:6,12
  21:4 22:1,4,22
  23:8 25:9,25
  26:4,5,6,14,18
  26:21 27:8,9
  28:3 29:4,4
  30:22,23,23,24
  35:3 36:3
**City's** 13:9
  27:17
**citywide** 6:9
**Civil** 36:20,20
**claim** 13:20
  20:13 21:25
**claims** 13:8 22:1
**clarify** 19:11
  22:2 24:12
**clear** 7:8 18:11
**Clements** 19:13
**close** 18:25
**closure** 14:24,25
**collective** 6:17
  24:20 25:7,19
  26:21 28:18
**come** 12:24,24
  13:8 18:7
**Commission**
  33:12

**communicatio...**
  7:13,15,19
  18:6 20:10
**complaint** 14:19
  14:19
**complete** 34:7
**completed** 36:8
**completely**
  28:25
**compliance** 27:3
  27:4
**comply** 28:1
**component** 13:5
**concerned** 16:5
**concluded** 32:8
**conclusion** 31:8
**conduct** 30:25
**conference** 20:1
  21:2
**CONFEREN...**
  1:15
**confidential**
  17:21 18:4,14
  19:17 20:9
  21:8,13,22
**confidentiality**
  18:15 20:11
**confirm** 20:9
**conflict** 26:20
**confusion** 26:2
**connected** 34:9
**considered** 36:9
**constitution**
  25:4
**contact** 36:6
**contemplated**
  28:9
**contract** 27:13
  27:14
**contracted** 8:14
**convert** 23:15
**Coral** 6:8,10,19
**correct** 9:5,5,22
  9:24 13:14
  15:18,19 17:5

17:12,14 20:3
  20:4 24:23
  25:10,11,14
  26:11,12 30:18
**CORRECTION**
  35:6
**counsel** 2:5,11
  2:22 4:3 13:3
  34:8,9
**COUNTY** 33:3
  34:3
**couple** 14:12
**course** 5:22 7:9
  15:11 16:8,8
  23:21
**court** 1:2,16
  5:22 34:5,15
  36:15
**cover** 31:17
**covered** 31:16
**criminal** 15:13

**D**

**D** 3:1 4:1
**Daniel** 2:2 4:5
**DANIELB@D...**
  2:5
**date** 1:13 6:12
  9:17 35:4,20
  36:1,19
**DATED** 34:11
**day** 33:6,8 34:11
**days** 14:18 15:5
  15:7,9,15,18
  16:14 36:8
**decision** 27:4,17
**declare** 35:18
**DEFENDANT**
  1:10 2:11
**defended** 5:13
**defined** 21:11
**department** 9:1
  9:4 14:18
  26:14,19,22
  28:3

**Depending**
  25:21
**deponent** 2:23
  35:4 36:19
**deposition** 1:12
  2:23 3:7 5:12
  5:18 11:2
  15:22 16:4
  32:1,8 34:1,5
  36:4,5,18
**depositions** 5:7
**DEREK** 2:2
**DESCRIPTION**
  3:7
**designed** 22:13
**determination**
  15:6
**determine** 27:3
**determined**
  30:11
**differ** 26:19
**different** 23:6
  28:25 30:5
**digest** 28:20
**Direct** 3:4 4:19
**directly** 21:4
**disciplinary** 9:2
  13:5
**discipline** 8:8
  14:20,23 15:8
  15:10 21:25
  22:19 24:23
  25:9 30:1
**discreet** 28:10
  28:12 30:12
**discussing** 20:20
**discussion** 18:14
  19:23 21:22
**discussions** 18:3
  19:18 20:16
  29:15
**DISTRICT** 1:2
  1:3
**DIVISION** 1:4
**document** 10:7

10:18 35:18
**dog** 11:20
**DRIVE** 2:3
**drop** 32:3
**due** 24:22 25:8
  25:18
**duly** 4:18 33:6
**duties** 8:6
**duty** 25:25 26:4
  26:5

**E**

**E** 2:15 3:1,6 4:1
  4:1 35:1,1,1
**earlier** 17:10
**early** 12:15
**easier** 4:25 5:22
  10:6
**EEOC** 13:1,15
  13:19 16:16
  20:13 21:25
**either** 12:7 18:5
  31:22
**Elkins** 2:8 3:4
  3:10 4:7,7,20
  11:4 13:24
  15:24 16:21
  27:15,16 30:2
  30:4 31:5,9,11
  31:20 32:2
**email** 3:9 14:8
  16:5,13
**emails** 15:25
  16:2
**employee** 24:6
  24:21 28:14
  34:8,9
**employee's** 27:3
**employee-at-w...**
  23:15 24:13
**employees** 25:5
**employer/emp...**
  13:13
**employment** 6:6
  6:25 17:17

22:9,10,23
23:2 30:7
**employment-a...**
24:14
**enforcement**
14:15 23:10,11
**enlarge** 10:8
16:7
**enter** 12:3 35:2
**entered** 10:14
29:11
**entering** 12:7,13
**enters** 25:12
**entire** 17:21
**entitled** 24:22
25:8
**errata** 36:11
**ESQ** 1:12 2:2,8
2:14,17 3:3
4:17 33:5 34:6
35:4,20 36:2
**essentially** 8:18
23:15 25:13
**Eugene** 1:12
2:17 3:3 4:17
33:5 34:5 35:4
35:20 36:2,4
**event** 28:13,14
**everybody** 11:21
18:7,11,12
19:21 20:1,8
20:25
**ex-husband** 9:24
**Examination** 3:4
4:19
**example** 25:20
**exceptions** 15:12
15:15
**exclusively** 27:3
**Exhibit** 3:8,9
11:2 15:21,22
15:25
**exhibits** 32:3
**Expires** 33:12
**explain** 8:11

14:10 27:10
**explanation**
27:7,18
**extending** 16:15
**extent** 7:18

**F**
**fact** 24:19
**facts** 35:18
**Failure** 28:1
**fair** 7:1 8:18
10:2 13:11,17
19:11 25:20
27:15 30:2
**fall** 15:15 20:11
**familiar** 5:15,20
22:10,21
**family** 13:10,12
**far** 9:16
**fast-forward**
17:16
**faster** 9:15
**federal** 28:17
36:9,20
**felt** 23:8
**file** 30:5
**filed** 23:1,4,6
30:13
**financially**
34:10
**find** 22:25
**fine** 4:23
**finish** 6:1
**finished** 18:25
**fired** 29:11,13
**firing** 24:4
**firm** 8:14
**first** 4:18 6:8
14:7 16:5 20:1
28:23
**five** 31:14,15
**FL** 1:8
**FLOOR** 2:15
**Florida** 1:3,9,16
2:4,9,15 6:22

25:3 33:2,4,11
34:2 36:9
**follows** 4:18
**FOP** 8:19 10:16
14:2 23:1,4,11
30:5,10
**forced** 12:6
**foregoing** 34:6
35:18
**forever** 24:9
**form** 13:22
16:20 28:19
**formally** 17:20
**formerly** 4:6 7:6
**FORT** 2:9,15
**forth** 18:4 26:20
**forwarded**
36:10,11
**four** 6:16
**Fraternal** 6:18
7:3,15 8:12,15
**front** 23:19
**further** 31:20,22
34:8

**G**
**G** 4:1
**Gables** 6:8,10,19
**Garbuz** 1:16
33:4,10 34:5
34:15 36:15
**Gene** 4:9,22,24
5:5 27:12
**general** 5:17
13:7 24:21
29:19,22 30:3
**generally** 12:20
14:13 15:11
24:3 25:3,12
25:17
**generic** 24:13
**getting** 25:23
**Gibbons** 1:12
2:14,17 3:3,9
4:10,11,17,22

8:14 33:5 34:6
35:4,20 36:2,4
**gist** 14:25 24:11
**give** 4:12 5:18
6:1,4 8:22 10:6
29:25 31:13,13
**given** 26:1,7
**glasses** 10:10
**global** 12:24
13:8 16:17
**go** 5:22 9:14
25:1 31:15,16
**God** 4:14
**goes** 29:13
**going** 5:4,5,17
5:24 7:5 10:5
10:24 11:16,17
13:1 14:7,20
14:23 15:20
17:16 18:8,9
20:10,18 21:21
22:8,16 23:24
24:25 25:16,23
27:11,11,23,24
29:23
**good** 4:21 9:16
**government**
25:5
**grievance** 9:2
23:1,3 27:5
28:16 30:6,13
**grieve** 23:2
**group** 2:2 19:1,3
19:5,16,19,20
21:10
**guaranteed**
25:19
**Guasto** 1:6 4:6
7:7 9:20,21,21
35:3 36:3

**H**
**H** 3:6 35:1
**handle** 13:15
**happen** 30:18

**happened** 19:2
20:24 21:10
22:24,25
**hard** 6:1 23:16
29:2
**head** 9:11
**hear** 11:21
**held** 12:15
**help** 4:14
**HH** 33:12
**history** 6:5
**hold** 10:10,18
20:15,17 24:16
32:6
**honestly** 14:12
21:5
**How's** 10:11
16:8
**hundred** 5:25
17:23
**husband** 9:24

**I**
**IA** 10:20
**identification**
11:3 15:23
**iguanas** 11:21
**immediate** 28:5
**implement** 27:9
30:23
**implementation**
28:6,9,13
**implementing**
31:1
**implicate** 7:11
7:17
**important** 27:25
**improper** 21:17
**improperly** 23:9
**including** 26:16
28:2
**inclusion** 36:11
**incorporated**
26:17
**individual** 28:10

30:11
**initials** 10:18
   11:16
**inside** 18:6
**instance** 26:18
**intent** 28:7
   29:18
**interest** 25:6
**interested** 34:10
**internal** 8:5,9
   9:9 13:5,16
   14:4 20:12
**interpretation**
   27:13
**interrogate** 19:6
**interrogating**
   21:15
**interrogation**
   17:25 19:9
   21:11,18,21
**interview** 30:25
**investigated** 8:7
   9:19
**investigation** 8:8
   9:10 13:17
   14:4,22 15:2
   15:13 21:15
   30:25
**investigations**
   15:4
**invoked** 22:22
   23:8
**involved** 5:6,18
   10:21 13:20
   29:1
**involving** 9:3
   10:20
**irrevocable**
   23:18
**issue** 9:2 10:21
**issues** 8:3 16:17

**J**

**J.D** 6:20
**January** 22:21

**Jessica** 1:6 4:6,6
   7:6,6,9,22 9:9
   10:16,19,21
   11:5,13,25
   12:3,17 13:2
   13:21 14:2
   16:19,23 17:11
   18:12,20 19:6
   19:13 21:4
   22:3,23 23:15
   31:1
**Jessica's** 17:16
   22:9,10 23:2
   25:23 30:6,11
**job** 8:6 9:3 22:17
   25:6
**July** 33:12
**jump** 7:12
**June** 6:11

**K**

**keeping** 11:20
**Kevin** 11:1
**KEY** 2:3
**kind** 15:3 19:22
   23:16 24:10,14
   27:6
**know** 6:25 7:8
   7:22,24 9:11
   9:17 11:8 13:3
   13:12,21 14:5
   14:5,13 15:1
   15:14 16:6,22
   16:23,24 17:1
   17:19 19:9,15
   20:6 21:6
   22:18,18,24
   23:1,3,4,9,22
   24:6,14,18
   29:14,14,16,17
   31:3,5
**known** 5:1 7:6
**knows** 24:6

**L**

**L** 2:8,19

**labor** 6:6,24
   24:21 25:3
**language** 28:23
   28:25 29:7
**LAS** 2:15
**late** 24:4 29:13
**LAUDERDA...**
   2:9,15
**law** 2:2,8 6:22
   6:22 14:14
   24:21 25:3,4
**lawsuit** 22:3
**lawyer** 5:9 23:6
   29:24
**lawyers** 20:18
   20:23
**lead** 8:8 13:3
**leading** 9:14
**leave** 26:6
**led** 9:12
**legal** 8:16 23:16
   27:12 30:6
   31:7
**LEOBR** 14:15
**let's** 19:24 24:16
**letter** 22:22
   23:18 28:6,10
   28:14 30:23
   31:1 36:5,8
**level** 22:19 24:22
   25:8
**light** 15:2
**limitations**
   15:10
**limited** 28:2
**limits** 26:1,4,6
**lion's** 7:2
**little** 5:22 10:6,8
   16:7 17:15
   19:25
**local** 28:17
**location** 29:21
**lodge** 6:18 8:12
   8:13,15 10:16
   10:17

**long** 5:1,11
**longer** 15:2
**loose** 23:25 24:5
**lot** 5:1,5 31:7

**M**

**marked** 11:2
   15:22
**marking** 15:20
**matter** 4:12 8:22
   9:19 13:4 17:5
**matters** 8:10,25
   18:2
**mean** 5:16 8:24
   9:14 16:12
   17:19 18:12
   19:15 21:5
   23:7,16,23
   24:13 27:8
   29:2 30:15
**means** 19:9 26:3
**meant** 5:13
**mediation** 18:14
   18:15 20:11
**meet** 15:7
**meeting** 12:15
   12:19,22,24
   13:7,10,15,21
   16:3 17:16,18
   17:20,21,22,24
   18:6,11,24
   19:4,16,19,20
   20:9 21:10,11
   21:16,24 22:5
   30:20
**MELKINS@...**
   2:10
**members** 8:17
   8:19 9:6
**memory** 12:23
**met** 19:15,21
   20:1
**Miami** 1:4,8 2:4
   4:8 6:9 8:13,16
   9:3 10:15 35:3

36:3
**Michael** 2:8 4:7
   12:17 13:2
   16:1 18:12
   19:13
**Mike** 16:7
**Milan** 11:1
**Mini** 32:2
**minor** 28:11,12
   29:16,22 30:12
**minute** 16:5
   28:20 31:13
**minutes** 31:14
**misconduct** 24:2
   24:7
**MLE** 2:8
**month** 9:17
**months** 14:12
   15:5
**morning** 4:21
**move** 10:13
   18:24 22:8
   29:5
**MUNICIPAL...**
   1:9

**N**

**N** 2:19 3:1 4:1
**name** 10:3 35:4
**names** 4:4
**necessary** 15:2
   35:17
**need** 16:6
**needed** 8:17
**negotiate** 29:3
**negotiating** 11:6
   11:22,25
**negotiation**
   11:13 29:4,6
**negotiations**
   11:9 14:4
**never** 5:18 23:24
**Nicholas** 9:21
**normal** 11:24
**NORTHEAST**

2:9
**Notary** 1:16
  33:4,11
**notes** 31:16 34:7
**notify** 14:18
**Nova** 6:21
**November** 12:15
  12:15 16:3
  17:15,18 18:23
  19:4 22:5
**number** 3:8,9
  5:6 6:19 8:15
  10:16,18,20
  11:2 15:22

**O**

**O** 2:19 4:1
**O-301** 2:3
**OATH** 33:1
**object** 17:7
  21:16 27:11,12
  29:23
**objection** 13:22
  16:20 21:17
**objections** 31:11
**objective** 22:15
**observed** 5:13
**obtain** 18:2
**obtained** 6:20
**obviously** 4:22
  4:25 5:4 13:18
  15:12 24:20
  29:3
**occurred** 24:2
**office** 36:6
**officer** 5:8 6:5,7
  6:11,14 14:11
  14:18,22 15:1
  15:8,13,17
  17:24 21:12
  24:3,22 25:12
  29:19,20
**Officer's** 14:15
**officers** 7:3 8:7
  14:20 24:22

25:4,5
**oh** 5:10 24:3
  29:13 32:3
**okay** 4:3,24 5:10
  5:15 6:2,4 7:5
  7:22 10:12,13
  10:14,24 11:16
  12:3,10,13
  13:14 14:2,7
  15:20 16:9,14
  17:2,9,9,24
  18:23 19:8,11
  20:23 21:1,23
  22:8 23:5
  25:22,24 27:2
  27:15,20 30:18
  30:20 31:21
  32:5,7
**OLAS** 2:15
**once** 8:2 36:11
**open** 22:11
**Operating** 26:15
  28:4
**opinion** 18:1
  29:24
**opinions** 27:13
  29:25
**opportunity** 9:9
  9:15
**opposing** 5:2
**Order** 6:18 7:3
  7:15 8:12,15
**ordering** 32:2
  36:11,11
**ordinance** 28:18
**original** 36:10
**outside** 26:4,5
**overall** 24:11

**P**

**P** 2:19 4:1
**P.A** 2:14
**page** 3:2,7 11:17
**PAGE/LINE**
  35:6

**pages** 34:6
**PALM** 34:3
**Pancier** 3:10
  12:17 13:3,20
  16:1 17:13,14
  18:12,17 20:6
**paragraph**
  25:24 27:23,24
  28:5,7
**part** 6:14,14 8:6
  8:6 22:8,22
**parties** 2:22
  16:16 28:8,11
  34:8 36:11
**parties'** 34:9
**party** 18:5 36:11
**patrol** 6:9
**paycheck** 22:16
**penalties** 35:18
**pending** 13:16
**people** 5:23
**percent** 5:24,25
  17:23
**Perfect** 6:3
  25:22
**period** 9:7 16:11
  24:8 25:25
**perjury** 35:18
**personally** 33:5
**personnel** 26:16
  26:19,22 28:4
**place** 1:15 18:4
**plaintiff** 1:7 2:5
  4:5
**please** 4:3 36:6
**PLLC** 2:2
**point** 7:8,25
  17:7,24 19:11
  21:16
**police** 5:8 6:5,7
  6:10,13,18 7:3
  7:4,16 8:12,15
  9:1,3 14:11,17
  21:12 24:21,22
  25:4,5 26:14

26:18,21 27:2
  28:3 29:19,20
**policies** 26:15,19
  26:22 28:4
**policy** 28:11,12
  30:12
**portion** 21:3
  28:1
**position** 22:3
**possible** 23:5
**Possibly** 30:17
**potential** 21:24
  22:16
**practice** 6:22 7:1
**practicing** 6:21
**preamble** 5:5
**prefer** 4:23
**preference** 4:21
**present** 2:13
  14:22
**President** 6:15
  6:16 11:1
**presume** 5:6
**pretty** 22:11
**prevail** 26:23
**Prieto** 19:13
**primarily** 6:24
**primary** 7:1
**prior** 12:13 25:9
  26:2,7 31:1
**private** 24:18
**privilege** 7:11
**privileged** 7:13
  7:19
**probably** 5:24
**procedural**
  25:18 28:11
  30:12
**procedure** 28:19
  36:20,20
**procedures** 25:8
  26:16,19,22
  28:4
**proceed** 4:16
**process** 5:15,20

24:23 25:8,18
  28:17,19
**prompt** 15:5
**property** 25:6
**proposed** 14:19
**protect** 29:8
**protected** 18:6
**provided** 8:21
**provides** 8:19
**provision** 14:14
**provisions** 25:14
**public** 1:16
  24:21 33:4,11
**purpose** 12:21
  12:23 13:7,21
  16:14 18:7
**purposes** 16:4
  21:14
**pursuant** 28:16
**put** 14:14 22:13

**Q**

**question** 6:1
  7:10,17 22:11
  23:17 24:12
  31:3,4,6,12
**questioned** 21:4
**questions** 5:24
  5:25 7:5 9:14
  18:23 19:3,14
  20:24 22:6
  31:24

**R**

**R** 4:1 35:1,1
**raise** 21:17
**reach** 16:17
  17:12
**read** 16:6 27:21
  27:23,24 28:24
  31:23 32:1
  35:18 36:6
**reading** 2:23
  16:12 24:24
  36:17
**really** 5:8 16:4

**reason** 15:14 23:23 35:6
**reasonable** 36:9
**recall** 13:7 17:18 19:7,8
**receipt** 36:8
**receive** 14:19
**received** 36:11
**receiving** 22:16
**Recess** 31:19
**recollection** 14:9 16:10
**record** 4:4 31:15 31:18 34:7
**recourse** 28:15
**reference** 26:18
**referenced** 28:5 28:7
**referring** 9:7 10:19 20:18,23 24:19
**refrain** 26:14
**refresh** 14:8 16:10
**regard** 22:18 36:9
**regarding** 7:6
**regards** 9:19 22:12
**regulations** 26:15
**relate** 19:3 20:24
**related** 8:25
**relation** 9:12 14:11
**relationship** 8:11
**relative** 34:8,9
**remember** 9:25 10:20 12:19,21 14:2,6 17:22 21:3,5,6 26:8 28:22
**remind** 5:21
**REMOTE** 1:15

**rep** 6:15
**repeated** 28:12
**rephrase** 27:15
**report** 34:5
**REPORTED** 1:16
**reporter** 1:16 4:3,11,16 5:22 31:18,23 32:5 32:7 34:5,15 36:15
**REPORTER'S** 34:1
**represent** 4:4 8:7,15 9:6,9,18 9:18 11:5,13 11:22,25 16:2
**representation** 7:10 8:23 10:4 10:19 21:7 26:24
**representative** 13:4
**representatives** 12:16 18:13
**represented** 6:17 7:25 8:2,4 8:9
**representing** 7:3 8:17 10:21 13:2,6
**reps** 9:6
**requested** 34:6
**required** 30:24 30:24
**requirement** 28:1,3
**reserve** 31:25,25
**reserved** 2:24
**Resignation** 22:22 23:18 28:6,10,14 30:24 31:1
**resolution** 12:25 13:8 16:17

17:12 18:7 20:21 22:19
**resolve** 18:2 20:12 21:24
**respective** 2:22
**respond** 16:15
**rest** 27:21
**result** 28:5,13
**retirement** 6:12
**reveal** 7:12
**revealing** 7:19
**review** 12:10 27:6,7,18 28:16,17 34:6 36:7,8
**right** 5:4 10:2,5 15:12 16:10,13 19:17,18 20:5 20:14 22:24 23:11,14 24:15 29:6 32:1
**rights** 14:15 21:12 22:4 25:18
**Rob** 7:12 8:19
**Robert** 2:14 4:9 31:24
**role** 9:1
**roll** 29:13
**room** 17:21 18:11 19:15,16 19:21,23 20:2 20:6,20,24 21:2
**roughly** 6:10
**rule** 5:21 14:3,10 14:14 36:20,21
**rules** 5:17 18:15 20:11 26:15,16 26:19,22 28:4 36:9

─────────
**S**
**S** 2:19,19 3:6 4:1 35:1

**safe** 11:21
**sake** 24:17
**Salabarria** 4:6 7:6,22 10:3,16 25:25 26:3,13 27:6
**sat** 5:12,16
**saw** 23:3
**saying** 17:22
**says** 14:17 25:24 26:13,25 27:2 27:19
**scheduled** 26:1,7
**scheduling** 16:2
**scroll** 10:17,24 11:17 25:24 27:21
**second** 10:6,19
**secret** 13:14
**section** 19:5
**sector** 24:18,21
**see** 10:7,12,15 10:24 11:11,16 11:17 24:7 29:1
**seek** 14:20
**seeking** 14:23
**sense** 5:19
**separate** 20:20
**separated** 22:23
**separation** 17:17 22:9,10 23:2 30:7,11,13
**series** 15:25
**services** 8:16
**session** 19:3
**set** 26:20
**settle** 13:10,13 13:19,19
**settlement** 3:8 10:14,22,25 11:6 12:4,7,13 14:3 17:10,22 18:2,14 19:17 19:22 20:9

21:14,22,22 30:22
**share** 7:2
**sharing** 10:7 20:10
**shift** 26:7
**shifts** 26:1
**short-circuit** 5:4
**show** 10:5 14:7,8 15:20
**showed** 17:9 24:3
**side** 35:17
**sign** 36:6,6
**signed** 10:25 11:18 33:8
**signing** 2:23 36:17
**sir** 11:12
**sit** 5:11 15:4
**sitting** 15:1
**six** 15:5
**skip** 5:17
**Smith** 2:2 19:13
**sole** 18:6
**solely** 19:3
**somebody** 23:4 23:5
**soon-to-be** 9:23
**sorry** 11:20 21:2
**Sort** 13:10
**sounds** 16:13
**Southeastern** 6:21
**SOUTHERN** 1:3
**speaking** 14:13 25:3,12
**speaks** 27:14
**specific** 14:23 26:10
**specifically** 16:23 18:3 25:17
**specifics** 11:8

speculate 30:16
speculative 30:15
speech 18:9,9,10 20:8
speed 15:3
spoke 16:23 20:5
spoken 16:24,25
Standard 26:15 28:4
standpoint 29:8
start 20:20 31:4
started 6:7,21
starting 29:25
state 1:16 4:3 25:3 27:17 28:17 33:2,4 33:11 34:2
stated 35:18
statement 17:19 17:19
statements 4:12
STATES 1:2
statute 28:17 36:9
stenographic 34:7
stipulated 2:21
stipulations 26:20
stuff 5:14 6:25
subject 15:10 27:5,7,18
submitted 23:18
suggested 36:8
SUITE 2:3
supervisor 29:20
sure 5:3 7:12 8:3 10:9 18:3,17 30:16 31:16
swear 4:11
sworn 4:18 33:7

**T**

T 2:19,19 3:6

35:1,1
tailor 24:5
take 5:23 16:5 28:20 31:15
taken 5:12,13 22:3 31:19 36:5
talk 17:15 24:16
talked 7:9
talking 5:23 19:1,19
tell 16:1 17:3 26:5
telling 29:19
tells 29:20
tend 25:18
terminate 23:23
terminated 22:15 29:16
termination 22:14
terms 6:16,17 20:21 23:25 25:21 26:3
TERRACE 2:9
testified 4:18
Thank 11:9
thing 26:10
things 12:25
think 4:25 9:23 12:25 14:8 18:24 20:5 23:3,17 27:12 27:14 29:23
tied 24:1
Tim 6:1 32:2
Tim's 24:17
time 1:14 5:1,11 5:23 6:1 9:7 15:5 16:15 24:8
timeline 9:16
timing 9:25
Timofey 1:16 33:4,10 34:5

34:15 36:15
today 5:25 24:4
toll 14:3 15:15 15:17
tolled 16:11
tolling 16:14
top 9:11 10:16
total 6:13
totally 30:16
transcribed 36:6
transcript 34:6 34:6 35:2 36:5 36:7,8,10,12 36:18
transferred 6:9
trigger 28:9
triggering 28:13
true 34:7 35:18
truly 36:13
truth 4:13,13,13
try 13:7 18:1 22:17 24:1,5 29:3,8
trying 9:13 18:7 19:20
two 5:23 6:16 12:25
two-year 6:17
type 24:23 25:9 30:6,25
types 28:25

**U**

U 2:19
ultimately 17:9 17:11
unavailable 15:13
uncertainties 22:17
understand 7:20 22:2,6,7 28:15
understanding 21:7 28:8
Understood 9:7

undertaking 25:9
undertook 10:4
unemployed 22:15
Union 6:15,15 6:15 7:4 9:6,18 10:25 11:5,18 11:22 16:24 17:4,11 27:6 28:15 29:24
unit 6:18
UNITED 1:2
University 6:8 6:21
untold 5:6
unusual 28:24
use 18:19 35:17
usually 24:1,1,5
uttered 18:19

**V**

V 35:3 36:3
various 12:16
view 21:10
violate 28:3
violated 22:4
violating 26:14
violation 28:12 30:12
violations 28:8 28:11
voluntarily 12:3
VS 1:7

**W**

wait 5:25
waive 15:10 25:18 31:23 36:6,17
waiver 25:13 36:16
walk 24:25
want 7:8 8:3 11:8 17:15 24:7 28:20

29:15,24
wanted 18:3,17 30:23 31:17
wasn't 13:1 29:11,17
way 30:5,10,14
we'll 31:25,25
we're 24:4
week 29:12
went 19:16,22
whimsical 24:5
willing 29:5
withdraw 31:5 31:12
witness 2:17 3:2 4:15 5:18 13:23
word 18:9
work 24:4
worked 5:1
working 6:14
wrap 14:21
WRITE 35:2
wrong 13:15 18:9

**X**

X 3:1,6

**Y**

yeah 5:15,15 7:2 9:25 11:1,1 13:12,12,18 16:9,9,13 24:25 26:9 27:23 28:22 30:17 31:4,10
years 6:13,16

**Z**

Zoom 1:15 33:6

**0**

**1**

1 3:8 11:2

Eugene Gibbons, Esq.

| | |
|---|---|
| **1-32** 34:6 | **4** 3:4 36:1 |
| **1.310(e)** 36:21 | **4th** 34:11 |
| **1:22-cv-21004...** | |
|   1:5 35:3 | **5** |
| **11** 3:8 | **5** 27:23 33:12 |
| **112** 17:25 21:12 | **501** 2:15 |
|   21:17,21 22:4 | **520** 2:3 |
| **112.532** 14:16 | **530-5748** 2:16 |
| **1212** 2:9 | |
| **15** 3:9 | **6** |
| **16** 6:13 | **688-2335** 2:4 |
| **16TH** 2:9 | |
| **18** 1:13 35:4 | **7** |
| **180** 14:18 15:5,7 | **7** 6:19 |
|   15:9,15,17 | **786** 2:4 |
|   16:14 | |
| **180-day** 14:3,10 | **8** |
|   14:14 16:11 | **8** 8:12,15 10:16 |
| **18th** 33:6,8 | |
| **1996** 6:10 | **9** |
| | **9** 28:7 |
| **2** | **9:00** 1:14 |
| **2** 3:9 15:21,22 | **9:41** 1:14 32:8 |
|   15:25 25:24 | **954** 2:16 |
| **2004** 6:23 | **954)401-2608** |
| **2009** 6:11,11 |   2:10 |
| **2020** 9:8 12:15 | **954)523-5326** |
|   19:4 |   36:6 |
| **2020-010** 10:20 | **98** 5:24 |
| **2021** 22:21 | |
| **2024** 1:13 33:6,8 | |
|   34:11 35:4 | |
|   36:1 | |
| **2026** 33:12 | |
| **284028** 33:12 | |
| | |
| **3** | |
| **3** 2:15 28:5 | |
| **30** 36:8 | |
| **30(e)Florida** | |
|   36:20 | |
| **33131-2433** 2:4 | |
| **33301-2881** 2:15 | |
| **33304** 2:9 | |
| | |
| **4** | |



EXHIBIT
1
04.18.24 GIBBONS TG

## SETTLEMENT AGREEMENT

The SETTLEMENT AGREEMENT ("Agreement") is entered into, by, and between the CITY OF MIAMI BEACH, its elected and appointed officials, its employees, and its insurers, attorneys, or agents of any kind (collectively, the "City"); JESSICA SALABARRIA ("Salabarria") and the FRATERNAL ORDER OF POLICE, WILLIAM NICHOLS LODGE NO. 8 ("FOP") (all collectively, the "Parties").

WHEREAS, Salabarria is employed by the City in its Police Department; and

WHEREAS, the FOP is the exclusive bargaining representative for a bargaining unit of City police employees, including Salabarria; and

WHEREAS, Salabarria is the subject of an on-going Internal Affairs investigation, I.A. Case No. 2020-010 ("the Investigation"); and

WHEREAS, Salabarria has filed an EEOC Charge, EEOC Charge No. 510-2020-04794 ("EEOC Charge"); and

WHEREAS, the Investigation and EEOC charge are all pending and constitute all the charges, investigations and grievances by or on behalf of Salabarria that have been or may be filed as of the Effective Date of this Agreement that have not otherwise been resolved or otherwise achieved finality; and

WHEREAS, the Parties, wish to avoid the burdens of further investigation, litigation and to resolve the disputes between them.

NOW, THEREFORE, intending to be legally bound but without setting precedent, do hereby agree as follows:

1. <u>Recitals</u>. The Parties acknowledge and agree that the Recitals above are true to the best of their knowledge and belief and incorporate them as if fully set forth here and that the Recitals are a material inducement for the Parties to enter into this Agreement.

2. <u>EEOC Charge Withdrawn With Prejudice and Discipline</u>. Salabarria and the FOP agree that, by executing this Agreement, they will simultaneously withdraw the Charge with prejudice by executing the attached Notice of Withdrawal with Prejudice and immediately filing same with the EEOC. Additionally, as discipline for the matters that are the subject of the Investigation, Salabarria agrees to accept the following:

    a. A One Hundred and Sixty (160) hour suspension,

    b. Payback of Eighty-Six (86) total hours, of which Forty-Four (44) Hours is regular time and Twenty-Four (24) hour is overtime. The regular rate is Forty-Four Dollars and 14/100 ($44.14) for a total of One Thousand Nine Hundred Forty-Two Dollars and 00/100 ($1,942.16) of regular time. The overtime hourly rate is Sixty-Six Dollars and 21/100 ($66.21), for a total amount of One

1

DocuSign Envelope ID: CC3C60A4-9486-4907-B5EB-8735D7C895E5

Thousand Five Hundred Eighty-Nine Dollars and 04/100 ($1,589.04). **Accordingly, the Total Amount due to the City is Three Thousand Five Hundred Thirty-One Dollars and 20/100 ($3,531.20) ("the Total Amount")**. Salabarria can pay the Total Amount via a cashier's check made payable to the City of Miami Beach on or before January 4, 2021. If the City does not receive full payment on or before 5:00 p.m. on January 4, 2021, then the City is authorized to deduct the remaining amounts due from Salabarria's vacation leave bank.

c.  Salabarria will execute the attached Last Chance Agreement, which contains additional provisions. The Last Chance Agreement is incorporated by reference into this Agreement.

d.  Permanent deletion, from all platforms (platforms includes but is not limited to: Apple Podcasts, Stitcher, Spotify, Spotify Podcasts, Google Play Music, Google Podcasts, iHeart Radio, and any other social media and/or electronic platform) the podcast titled: "Cafecitos y Chisme with Nick & Jess."

e.  Salabarria will immediately have a meeting with the Chief of Police wherein she will address the claims made in the Charge, including but not limited to identifying the names of all persons who allegedly engaged in the conduct addressed in the Charge. The refusal to name the persons who have allegedly engaged in the conduct in the Charge shall be grounds for immediate termination, as discussed in the attached Last Chance Agreement. Salabarria shall be entitled to have a Union Representative with her during this meeting.

f.  <u>Release Of Claims, Covenant Not To Sue</u>. Salabarria hereby releases and waives any and all claims of any kind whatsoever against the City that she had, has or may have from the beginning of the world through the date of this Agreement. The claims released include, but are not limited to, any and all claims arising under any federal, state, local or foreign statute or regulation, including, without limitation, those relating to any and all unfair or discriminatory employment practices (for example, employment discrimination based on race, national origin, sex, religion, age, disability or handicap, and harassment of any kind) under the federal Civil Rights Acts of 1866, 1871, 1964 and 1991 (including Title VII), the federal Age Discrimination in Employment Act ("ADEA"), including the Older Workers Benefits Protection Act, the Florida Civil Rights Act, the federal Americans With Disabilities Act, the federal Employee Retirement Income Security Act of 1974, the Internal Revenue Code of 1986, the federal Fair Labor Standards Act of 1938, the Florida Wage Discrimination Law, the Florida Wage and Hour laws, Florida and federal statutes regarding "whistleblower" activities, the federal Family and Medical Leave Act of 1993, the federal Rehabilitation Act of 1973, the Consolidated Omnibus Budget Reconciliation Act of 1985 (known as "COBRA"), the Federal Fair Credit Reporting Act, any other federal and state employment-related statutes and regulations, and any other employment-related local ordinance up to the date of this Agreement. The claims released also include any claims under the United States Constitution, including but not limited to claims arising under the First Amendment or any other claims whatsoever.

City 001236

The disputes released by Salabarria also include any and all disputes she had, has or may believe to have against the City in contract or at common law, including, but not limited to: breach of oral, written and/or implied contract, breach of an implied covenant of good faith and fair dealing, wrongful discharge under any theory (including for lack of good cause) in violation of public policy and constructive discharge, intentional and/or negligent infliction of emotional distress, negligent retention and/or supervision, assault, battery, negligence, misrepresentation or fraud of any kind, duress, unfair dealing, breach of fiduciary or other duty, invasion of privacy, defamation, and interference with contract and/or prospective economic advantage up to the date of this Agreement.

Salabarria further covenants and agrees that she will not file a lawsuit or claim of any kind asserting the claims released herein. Salabarria understands that this Agreement does not prohibit participating in an investigation or the filing of a charge with the EEOC or like administrative agency, but she does understand and agree that, not only is she releasing the stated claims, but also is releasing the right to any monetary damages or any relief of any kind from those claims, whether brought by her or on her behalf. Salabarria hereby represents that she has not assigned to any person or entity any rights to the claims released herein.

     g.    Effect; Precedent. The Parties agree that Salabarria remains subject to all applicable rules, policies, orders, procedures or regulations of whatever kind, except as may be expressly otherwise provided herein. The Parties agree that the facts underlying this Agreement are unique and that this Agreement does not establish precedent of any kind whatsoever and may not be used in any manner whatsoever in any proceeding, including but not limited to any labor proceeding of any kind, with the exception of any labor proceeding involving Salabarria. The parties further agree that Salabarria's prior settlement agreement may also be used in any labor proceeding involving Salabarria.

     h.    Consideration. The consideration for this Agreement is the City's early conclusion of the Investigation. The parties acknowledge that the City could continue the Investigation. The parties further acknowledge that continuing the Investigation would likely be detrimental to Salabarria. Therefore, the City is giving up its right to continue the Investigation in exchange fro Salabarria's agreement to the provisions and terms of this Agreement. The mutual promises, releases, and forbearances recited herein, the adequacy of which is hereby affirmed by the Parties.

     i.    Miscellaneous. This Agreement (which includes the exhibits attached hereto that are incorporated by reference), is the entire agreement between the Parties on its subject matter and supersedes any other agreement or understanding whatsoever, whether written or oral. The Parties have entered into this Agreement solely on the basis of the language, representations, and understandings expressed in this Agreement and not on the basis of any other representation or understanding whatsoever. This Agreement shall be construed and applied according to its express language and not strictly against any Party, regardless of authorship. This Agreement shall be governed by and construed according to the laws of the State of Florida. Any dispute arising from this Agreement, its application, or its breach shall be heard by a judge and not a jury. The Parties agree that venue shall be proper in Miami-Dade County, Florida, and agree that they shall not challenge such venue, regardless of convenience. If any provision or part thereof of this Agreement shall be found invalid or unenforceable by a court of competent jurisdiction, the remainder of the Agreement shall remain valid and enforceable, provided, however, that if Paragraph 3, "Release,"

3

City 001237

is found invalid or unenforceable, the entire Agreement shall fail and be null and void and shall be treated as if it were never made. The prevailing party in any action of or relating to this Agreement shall be entitled to an award of reasonable attorney's fees and costs.

IN WITNESS WHEREOF, having read and fully understood this Agreement in its entirety, having duly considered the same, and intending to enjoy the benefits and undertake the obligations established herein, the Parties do hereby enter into and execute this Agreement as set forth below.

**CITY OF MIAMI BEACH**

By _____
City Manager

DocuSigned by:
Paul J. Aguila
2B3D6240F92B45D...

DATE _____
12/23/2020 | 1:34 EST

**JESSICA SALABARRIA**

_____
JESSICA SALABARRIA

DATE _12/18/2020_

**FRATERNAL ORDER OF POLICE, LODGE 8**

By _____
KEVIN MILLAN
President

DATE _12/18/2020_

**CHIEF OF POLICE**

_____
RICK CLEMENTS
Chief of Police

4

City 001238

## LAST CHANCE AGREEMENT

THIS LAST CHANCE AGREEMENT is entered into between the CITY OF MIAMI BEACH, FLORIDA (hereinafter, the "City"), FRATERNAL ORDER OF POLICE, (hereinafter, "the Union") and JESSICA SALABARRIA (hereinafter, "SALABARRIA" or "Employee").

WHEREAS, SALABARRIA is employed by the City as a Police Officer in the City's Police Department.

WHEREAS, SALABARRIA is subject to the terms and conditions of employment contained in the Collective Bargaining Agreement between the Union and the City effective October 1, 2018 through September 30, 2021;

WHEREAS, SALABARRIA is the subject of an Internal Affairs ("IA") Investigation, IA Case Number 2020-010, which arose from SALABARRIA's involvement in not being on-duty when she was supposed to be, and from SALABARRIA's claims of being on-duty in the City when she was actually outside the City;

WHEREAS, the City wishes to continue to employ Employee, Employee wishes to continue to be employed by the City, and the FOP desires for Employee to continue to be employed under the terms and conditions described herein; and

WHEREAS, the Employee admits that she committed misconduct in association with IA Case Number 2020-010 and was in violation of numerous City and Police Department policies and the City Personnel Rules for the Classified Service; and

WHEREAS, the purposes of this Agreement, with which all the Parties concur, include: to protect and preserve the integrity of the Police Department and all its officers and to give Employee the opportunity to further and support that purpose; and to give Employee the

CITY

Page 1 of 7

UNION          JESSICA

City 001240

opportunity to rehabilitate herself personally and as a police sergeant for the City and this Department; and to give Employee an opportunity to preserve her career.

NOW, THEREFORE, without establishing precedent for any purpose and intending to be bound, the Parties agree as follows:

1. All of the above statements are true and correct to the best of the Parties' belief and knowledge and for a five (5) year period beginning with the execution of this Agreement by all parties, SALABARRIA will be subject to the provisions of this Agreement.

2. During this period, SALABARRIA must be on-duty and in the City limits during all of her scheduled shifts unless given prior authorization. For the avoidance of confusion, this means that, during the terms of this Agreement, SALABARRIA shall not be outside the City limits when she is on-duty, shall not tell the City she's on-duty when she is outside the City's limits, and shall not leave before the end of her scheduled shift, unless given prior authorization.

3. Additionally, SALABARRIA shall refrain from violating any City or Police Department policies, rules or regulations; Standard Operating Procedures ("SOPs") or Personnel Rules, all of which (including any amendments or additions) are incorporated herein by reference. In any instance during which City or Police Department policies, procedures or Personnel Rules differ from or conflict with the stipulations set forth in the applicable collective bargaining agreement, the City or Police Department policies, procedures or Personnel Rules shall prevail.

4. The Chief of Police shall exclusively assess and determine Employee's compliance with this Agreement. The Chief's decision as to compliance with this Agreement shall not be subject to any grievance and/or review of any kind by SALABARRIA and/or the Union and is not subject to explanation or review.

CITY

Page 2 of 7

UNION     JESSICA

City 001241

5.      Failure to comply with any portion or requirement of this Agreement (including but not limited to the requirement not to violate any City or Police Department policies, Standard Operating Procedures ("SOPs") or Personnel Rules, as referenced in paragraph 3 above) may result in the immediate implementation of the attached letter of resignation as referenced in paragraph 9 below. It is the intent and understanding of the parties that the violations contemplated to trigger the implementation of the attached letter of resignation shall not be for individual, discreet minor policy and procedural violations. The parties agree that repeated violation of the same, discreet minor policy may result in an event triggering the implementation of the attached letter of resignation. In that event, the Employee and the Union understand and agree there will be no recourse or review available pursuant to any grievance, appeal or review process under any federal, state or local statute, ordinance, collective bargaining agreement, or in any other forum or under any other process or procedure.

6.      SALABARRIA shall serve a four-week (160 hour) suspension without pay and waive any and all rights to grieve or appeal that suspension. Employee shall also be subject to the additional provisions of the Settlement Agreement to which this Agreement is attached and is made part of via incorporation by reference.

7.      Further, for the same five (5) year period described above, the Chief of Police shall have full discretion regarding Employee's assignments, including, without limitation, duties, supervisor and chain of command.  Employee shall have the ability to bid for shift and days off, if the employee is reassigned her duty hours and days off shall remain the same.

8.      For a period of one (1) year from the date of execution of this Agreement, Employee is not eligible for any promotional opportunities.

CITY                                Page 3 of 7                    UNION          JESSICA

City 001242

9.      Employee shall sign an irrevocable letter of resignation which shall take effect immediately upon her violation of this Agreement or any part of it at any time during the term of this Last Chance Agreement. .

10.     Employee shall attend and cooperate with any training required by the Chief of Police.

11.     If during the above-referenced five (5) year period, SALABARRIA violates any provisions of this agreement or any City or Police Department policies, Standard Operating Procedures ("SOPs") or Personnel Rules and/or regulations as previously referenced in paragraph #4 , her resignation shall be effective , without the right to grieve or otherwise contest, in any manner, her separation. .

12.     In the event that SALABARRIA is separated pursuant to the terms and conditions of this Last Chance Agreement, she and the Union understand that her separation is not subject to appeal pursuant to the contractual grievance/arbitration procedure, or otherwise. In other words, SALABARRIA agrees that should she be separated pursuant to the terms of this agreement  that she waives her right to utilize the contractual grievance and arbitration procedure and she further waives the right to challenge or appeal her separation pursuant to any administrative or statutory avenue that may exist.

13.     The City retains the right to rely upon the facts and circumstances of the events from which this Last Chance Agreement arose in any future proceeding in the event the Employee successfully meets the terms and conditions referred to in this Agreement but thereafter has deficiencies in conduct or performance, and such deficiencies shall be sufficient to warrant discipline, including dismissal.

CITY                                Page 4 of 7                          UNION          JESSICA

City 001243

14.     It is understood and agreed by all parties hereto that this Last Chance Agreement is executed based on the particular circumstances of this case and does not establish precedent for the resolution of other cases.

15.     SALABARRIA acknowledges that she could be terminated from her employment from the City as a result of her conduct as referenced above and that remaining employed by the City is adequate consideration for entering into this Last Chance Agreement, serving the suspension without pay and waiving the rights described herein and in the Settlement Agreement.

16.     SALABARRIA being of lawful age, for and in consideration of the above-action agreed to by the City, and other valuable consideration received from or on behalf of the City, receipt whereof is hereby acknowledged, does hereby release, acquit, satisfy and forever discharge the City, as well as each and everyone of the City's former and current officers, agents, attorneys, employees and officials -- in both their official and individual capacities -- and their successors and assigns, from any and all claims, cause and causes of action, grievances, unfair labor practice charges, lawsuits, claims of employment discrimination (including, but not limited to claims under the Americans With Disabilities Act), and any and all other claims and demands whatsoever, in law or in equity, tort or contract, which SALABARRIA has or may have against the above-named individuals in both their individual and official capacities, from the beginning of the world until today, including, but not limited to, all matters concerning or arising out of her employment with the CITY, her discipline stemming from the incidents described in this Last Chance Agreement and the execution of this Last Chance Agreement.

17.     It is understood and agreed that this Last Chance Agreement does not constitute an admission by the City or SALABARRIA of any violation of the collective bargaining

CITY                                  Page 5 of 7                    UNION          JESSICA

City 001244

DocuSign Envelope ID: CC3660AA-8185-4907-85EB-8735D7C895EF

agreement. This Last Chance Agreement is being entered into by the parties solely for the purpose of avoiding the expense and inconvenience of further administrative proceedings.

18.    SALABARRIA has received and reviewed this Last Chance Agreement prior to executing it and she agrees to be bound by its terms and conditions.

19.    Prior to signing this Last Chance Agreement, SALABARRIA had the opportunity, and did, in fact, consult with her attorney and/or with the Union.

20.    This Last Chance Agreement, and the Settlement Agreement which is attached constitutes the entire understanding and agreement of the parties hereto, and can be modified, amended or revoked only by express written consent of all parties.

21.    This Last Chance Agreement shall be governed by and construed in accordance with the laws of the State of Florida, and where applicable, federal laws. The language of this Last Chance Agreement shall be construed as a whole, according to its fair meaning, and not strictly construed for or against either party.

22.    In the event that any party to this Last Chance Agreement institutes legal proceedings regarding the terms of this Last Chance Agreement, it is stipulated and agreed that such a claim shall be heard and determined by the court, and not by a jury, in Miami-Dade County, Florida.  **SALABARRIA AGREES AND UNDERSTANDS THAT SHE IS WAIVING THE RIGHT TO A JURY TRIAL, IF ONE EXISTS, AS TO ANY CLAIM REGARDING THE TERMS OF THIS AGREEMENT.**

CITY                                    Page 6 of 7                          UNION            JESSICA

City 001245

This Agreement is dated the _____ day of December 2020, in Miami-Dade County, Florida.

DocuSigned by:

Paul J. Aguila

2B3D6240F92B45D...

**JESSICA SALABARRIA**

**CITY MANAGER**
**CITY OF MIAMI BEACH**

Date: __12/18/2020__

Date: __12/23/2020 | 1:34 EST__

**FRATERNAL ORDER OF POLICE**

_____ President
Signature & Title

Kevin Millan    President
Print Name & Title

__12/18/2020__
Date

_____
**CHIEF OF POLICE**

__12/18/2020__
Date

City 001246

**Thursday, April 11, 2024 at 21:53:11 Eastern Daylight Time**

**Subject:** Sallabarria - Tolling Period for IA Investigation
**Date:** Wednesday, September 23, 2020 at 11:21:09 PM Eastern Daylight Time
**From:** Michael Elkins
**To:** Eugene Gibbons, Michael Pancier

EXHIBIT
**2**
04.18.24  GIBBONS  TG

Gene/Michael,

This email confirms that today I spoke to Gene about tolling the 180 day period for Sergeant Sallabarria's pending IA investigation and the FOP has no objection.

This email further confirms that yesterday I spoke with Michael Pancier and he represented that Sergeant Sallabarria agreed to toll the 180 day period.

Accordingly, the 180 day period is tolled as of the date of this email.

Michael and I further discussed Sergeant Sallabarria's agreement to an extension of time for the City to respond to the pending EEOC Charge.

This tolling and extension are pursuant to the parties' agreement to engage in settlement discussions to possibly resolve the pending IA investigation and pending EEOC Charge.

I will touch base early next week to coordinate scheduling a meeting between the parties for purposes of discussing settlement.

Kind regards,



**Michael L. Elkins**
Founder | Partner
**MLE Law**
A modern, 21st century law firm

m.  +1 954 401 2608
e.  melkins@mlelawfirm.com
w.  mlelawfirm.com
s.  633 South Andrews Avenue
    Suite 500
    Fort Lauderdale, Florida 33301
    United States of America

    

This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosing, copying, distributing

City 001394    1 of 2

or taking any action in reliance on the contents of this information is strictly prohibited. **Read more**

**Thursday, April 11, 2024 at 21:53:48 Eastern Daylight Time**

**Subject:** Re: Jessica Sallabarria vs. City of Miami Beach Police Dept 510-2020-04794
**Date:** Tuesday, October 6, 2020 at 8:23:00 PM Eastern Daylight Time
**From:** Michael Elkins
**To:** SUSAN DIAZ
**CC:** Michael Pancier

Ms. Diaz,

I have copied Charging Party's counsel on this email. Charging Party and the City have entered into settlement discussions to resolve the matter pending before the EEOC as well as other matters relating to Charging Party's employment.

As part of an agreement to enter into those discussions, and due to the possibility that the discussions may take some time given the number of persons involved, Charging Party agreed to an unopposed extension of time of 60 days for the City to file its position statement. This will allow the parties sufficient time to work to resolve all matters, will save attorney's fees for the City in having to file a position statement, and will allow the City to devote its resources to working towards resolution of Charging Party's claim.

Please let me know if the EEOC is agreeable to this unopposed extension of time.

Kind regards,



**Michael L. Elkins**
Founder | Partner
**MLE Law**
A modern, 21st century law firm

m.  +1 954 401 2608
e.  melkins@mlelawfirm.com
w.  mlelawfirm.com
s.  633 South Andrews Avenue
    Suite 500
    Fort Lauderdale, Florida 33301
    United States of America

  

This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited. Read more

**From:** SUSAN DIAZ <SUSAN.DIAZ@EEOC.GOV>
**Date:** Tuesday, October 6, 2020 at 1:05 PM
**To:** Michael Elkins <melkins@mlelawfirm.com>
**Subject:** RE: Jessica Sallabarria vs. City of Miami Beach Police Dept 510-2020-04794

Dear Mr. Elkins:

Just a reminder that your response is due on or before 10/14/20. Please upload your response via portal system and send me a courtesy email once it has been uploaded.

Sincerely,
Susan Diaz
Federal Investigator
U. S. EEOC Miami District Office
100 SE 2nd Street, Suite 1500
Miami, FL 33131
☎ 786-648-5870
🖨 305-808-1758
Email: susan.diaz@eeoc.gov

**Warning:** This email may contain Privacy Act Data/Sensitive Data which is intended only for the use of the individual to which it is addressed. It may contain information that is privileged, confidential, or otherwise protected from disclosure under applicable laws.

**From:** Michael Elkins <melkins@mlelawfirm.com>
**Sent:** Thursday, August 06, 2020 1:19 PM
**To:** SUSAN DIAZ <SUSAN.DIAZ@EEOC.GOV>
**Subject:** Re: Jessica Sallabarria vs. City of Miami Beach Police Dept 510-2020-04794

Thank you Ms. Diaz.

I appreciate the professional courtesy.


Kind regards,


**Michael L. Elkins**
Founder | Partner
**MLE Law**
A modern, 21st century law firm



m.  +1 954 401 2608
e.  melkins@mlelawfirm.com
w.  mlelawfirm.com
s.  633 South Andrews Avenue
Suite 500
Fort Lauderdale, Florida 33301
United States of America

   

This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited. **Read more**

**From:** SUSAN DIAZ <SUSAN.DIAZ@EEOC.GOV>
**Date:** Thursday, August 6, 2020 at 10:34 AM
**To:** Michael Elkins <MELKINS@mlelawfirm.com>
**Subject:** Re: Jessica Sallabarria vs. City of Miami Beach Police Dept 510-2020-04794

Dear Mr. Elkins:

I am the assigned investigator in the matter.  I will grant you an extension to October 14, 2020 to submit your response.

Sincerely,
Susan Diaz
Federal Investigator
U. S. EEOC Miami District Office
100 SE 2nd Street, Suite 1500
Miami, FL 33131
☎ 786-648-5870
📠 305-808-1758
Email: susan.diaz@eeoc.gov

**Warning:** This email may contain Privacy Act Data/Sensitive Data which is intended only for the use of the individual to which it is addressed. It may contain information that is privileged, confidential, or otherwise protected from disclosure under applicable laws.

City 001399

**Thursday, April 11, 2024 at 21:54:12 Eastern Daylight Time**

**Subject:** Sallabarria Meeting
**Date:** Tuesday, October 6, 2020 at 8:24:41 PM Eastern Daylight Time
**From:** Michael Elkins
**To:** Michael Pancier, Eugene Gibbons

All,

I am looking to set the meeting for the Sallabarria settlement discussions. I thought it would be easiest to get your best dates and then I will work around those with the City.

My suggestion is you both give me dates for Oct., Nov. and Dec.

I have a packed Oct. and Nov., but I will try to make this happen then, but give me Dec. dates just in case.

Thank you.


Kind regards,



**Michael L. Elkins**
Founder | Partner
**MLE Law**
A modern, 21st century law firm

m. +1 954 401 2608
e. melkins@mlelawfirm.com
w. mlelawfirm.com
s. 633 South Andrews Avenue
   Suite 500
   Fort Lauderdale, Florida 33301
   United States of America

    

This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited. Read more

**Thursday, April 11, 2024 at 21:54:32 Eastern Daylight Time**

**Subject:** Re: Sallabarria Meeting
**Date:** Tuesday, October 6, 2020 at 11:49:45 PM Eastern Daylight Time
**From:** Michael Pancier
**To:** Michael Elkins, Eugene Gibbons

Last week in October and 1st week in November are good for me; 3rd week in November good

**From:** Michael Elkins <melkins@mlelawfirm.com>
**Date:** Tuesday, October 6, 2020 at 20:24
**To:** Michael Pancier <mpancier@pancierlaw.com>, Eugene Gibbons <gibbons@bglaw-pa.com>
**Subject:** Sallabarria Meeting

All,

I am looking to set the meeting for the Sallabarria settlement discussions. I thought it would be easiest to get your best dates and then I will work around those with the City.

My suggestion is you both give me dates for Oct., Nov. and Dec.

I have a packed Oct. and Nov., but I will try to make this happen then, but give me Dec. dates just in case.

Thank you.

Kind regards,



**Michael L. Elkins**
Founder | Partner
**MLE Law**
A modern, 21st century law firm

m.   +1 954 401 2608
e.   melkins@mlelawfirm.com
w.   mlelawfirm.com
s.   633 South Andrews Avenue
     Suite 500
     Fort Lauderdale, Florida 33301
     United States of America

   

**Thursday, April 11, 2024 at 21:55:02 Eastern Daylight Time**

**Subject:** Re: Sallabarria Meeting
**Date:** Wednesday, October 7, 2020 at 7:31:41 AM Eastern Daylight Time
**From:** Eugene Gibbons
**To:** Michael Pancier
**CC:** Michael Elkins

Mike P's schedule works for me as well.  Let's set asap as my schedule fills sporadically.

Thx,

Gene

On Tue, Oct 6, 2020, 23:49 Michael Pancier <mpancier@pancierlaw.com> wrote:

> Last week in October and 1st week in November are good for me; 3rd week in November good
>
> ---
>
> **From:** Michael Elkins <melkins@mlelawfirm.com>
> **Date:** Tuesday, October 6, 2020 at 20:24
> **To:** Michael Pancier <mpancier@pancierlaw.com>, Eugene Gibbons <gibbons@bglaw-pa.com>
> **Subject:** Sallabarria Meeting
>
>
> All,
>
>
> I am looking to set the meeting for the Sallabarria settlement discussions. I thought it would be easiest to get your best dates and then I will work around those with the City.
>
>
> My suggestion is you both give me dates for Oct., Nov. and Dec.
>
>
> I have a packed Oct. and Nov., but I will try to make this happen then, but give me Dec. dates just in case.

Thank you.

Kind regards,



**Michael L. Elkins**
Founder | Partner
**MLE Law**
A modern, 21st century law firm

m.  +1 954 401 2608
e.  melkins@mlelawfirm.com
w.  mlelawfirm.com
s.  633 South Andrews Avenue
    Suite 500
    Fort Lauderdale, Florida 33301
    United States of America

   

This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited. Read more

**Thursday, April 11, 2024 at 21:55:47 Eastern Daylight Time**

**Subject:** Re: Sallabarria Meeting
**Date:** Friday, October 30, 2020 at 3:22:10 PM Eastern Daylight Time
**From:** Michael Pancier
**To:** Michael Elkins, Eugene Gibbons

Michael

Confirming our meeting on Monday at 10:00am

Please confirm the location and the parking situation.

Thanks

Michael

---

**From:** Michael Elkins <melkins@mlelawfirm.com>
**Date:** Tuesday, October 6, 2020 at 8:24 PM
**To:** Michael Pancier <mpancier@pancierlaw.com>, Eugene Gibbons <gibbons@bglaw-pa.com>
**Subject:** Sallabarria Meeting

All,

I am looking to set the meeting for the Sallabarria settlement discussions. I thought it would be easiest to get your best dates and then I will work around those with the City.

My suggestion is you both give me dates for Oct., Nov. and Dec.

I have a packed Oct. and Nov., but I will try to make this happen then, but give me Dec. dates just in case.

Thank you.

Kind regards,

**Michael L. Elkins**
Founder | Partner
**MLE Law**



A modern, 21st century law firm

m.  +1 954 401 2608

e.  melkins@mlelawfirm.com

w.  mlelawfirm.com

s.  633 South Andrews Avenue
    Suite 500
    Fort Lauderdale, Florida 33301
    United States of America

    

This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited. Read more

City 001405

**Thursday, April 11, 2024 at 21:56:06 Eastern Daylight Time**

**Subject:** Re: Sallabarria Meeting
**Date:** Friday, October 30, 2020 at 3:52:16 PM Eastern Daylight Time
**From:** Michael Elkins
**To:** Michael Pancier
**CC:** Eugene Gibbons

Confirmed.

Location is the police department.

There's a parking garage near the station.

Sent from my iPhone

**Michael L. Elkins | MLE LAW**
**633 S. Andrews Ave. Suite 500 | Fort Lauderdale, FL 33301 | (954) 401-2608 (C)**
**melkins@mlelawfirm.com | www.mlelawfirm.com**

**NOTICE: This email message is intended only for the addressee and may contain
confidential information that is legally privileged. If you are not the intended
recipient, you may not review, use, disseminate, or copy this message. If you have
received this message in error, please notify us immediately by return e-mail or by
telephone and delete this message.**

On Oct 30, 2020, at 3:22 PM, Michael Pancier <mpancier@pancierlaw.com> wrote:

Michael

Confirming our meeting on Monday at 10:00am

Please confirm the location and the parking situation.

Thanks

Michael

**From:** Michael Elkins <melkins@mlelawfirm.com>

**Date:** Tuesday, October 6, 2020 at 8:24 PM
**To:** Michael Pancier <mpancier@pancierlaw.com>, Eugene Gibbons
<gibbons@bglaw-pa.com>
**Subject:** Sallabarria Meeting

All,

I am looking to set the meeting for the Sallabarria settlement discussions. I thought it would be easiest to get your best dates and then I will work around those with the City.

My suggestion is you both give me dates for Oct., Nov. and Dec.

I have a packed Oct. and Nov., but I will try to make this happen then, but give me Dec. dates just in case.

Thank you.


Kind regards,



**Michael L. Elkins**
Founder | Partner
**MLE Law**
A modern, 21st century law firm

m.  +1 954 401 2608
e.  melkins@mlelawfirm.com
w.  mlelawfirm.com
s.  633 South Andrews Avenue
    Suite 500
    Fort Lauderdale, Florida 33301
    United States of America

    

This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited. **Read more**

**Subject:** Re: Sallabarria Meeting
**Date:** Friday, October 30, 2020 at 4:00:34 PM Eastern Daylight Time
**From:** Michael Pancier
**To:** Michael Elkins
**CC:** Eugene Gibbons

Mike

What is the city going to do with her time? i.e.,  time off or admin day? She is scheduled to work Monday 2pm to Midnight

---

**From:** Michael Elkins <melkins@mlelawfirm.com>
**Date:** Friday, October 30, 2020 at 3:52 PM
**To:** Michael Pancier <mpancier@pancierlaw.com>
**Cc:** Eugene Gibbons <gibbons@bglaw-pa.com>
**Subject:** Re: Sallabarria Meeting

Confirmed.

Location is the police department.

There's a parking garage near the station.

Sent from my iPhone

**Michael L. Elkins | MLE LAW**
**633 S. Andrews Ave. Suite 500 | Fort Lauderdale, FL 33301 | (954) 401-2608 (C)**
**melkins@mlelawfirm.com | www.mlelawfirm.com**

**NOTICE: This email message is intended only for the addressee and may contain confidential information that is legally privileged. If you are not the intended recipient, you may not review, use, disseminate, or copy this message. If you have received this message in error, please notify us immediately by return e-mail or by telephone and delete this message.**

On Oct 30, 2020, at 3:22 PM, Michael Pancier <mpancier@pancierlaw.com> wrote:

Michael

City 001408

Confirming our meeting on Monday at 10:00am

Please confirm the location and the parking situation.

Thanks

Michael

---

**From:** Michael Elkins <melkins@mlelawfirm.com>
**Date:** Tuesday, October 6, 2020 at 8:24 PM
**To:** Michael Pancier <mpancier@pancierlaw.com>, Eugene Gibbons
<gibbons@bglaw-pa.com>
**Subject:** Sallabarria Meeting

All,

I am looking to set the meeting for the Sallabarria settlement discussions. I thought it
would be easiest to get your best dates and then I will work around those with the City.

My suggestion is you both give me dates for Oct., Nov. and Dec.

I have a packed Oct. and Nov., but I will try to make this happen then, but give me Dec.
dates just in case.

Thank you.


Kind regards,



**Michael L. Elkins**
Founder | Partner
**MLE Law**
A modern, 21st century law firm

m.  +1 954 401 2608
e.  melkins@mlelawfirm.com
w.  mlelawfirm.com
s.  633 South Andrews Avenue
    Suite 500
    Fort Lauderdale, Florida 33301
    United States of America



This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited. **Read more**

**Thursday, April 11, 2024 at 21:56:48 Eastern Daylight Time**

**Subject:** Re: Sallabarria Meeting
**Date:** Friday, October 30, 2020 at 4:03:51 PM Eastern Daylight Time
**From:** Michael Elkins
**To:** Michael Pancier
**CC:** Eugene Gibbons

Our meeting is at 10:00 am, I'm not sure what you're asking.

Sent from my iPhone

**Michael L. Elkins | MLE LAW**
**633 S. Andrews Ave. Suite 500 | Fort Lauderdale, FL 33301 | (954) 401-2608 (C)**
**melkins@mlelawfirm.com | www.mlelawfirm.com**

**NOTICE: This email message is intended only for the addressee and may contain confidential information that is legally privileged. If you are not the intended recipient, you may not review, use, disseminate, or copy this message. If you have received this message in error, please notify us immediately by return e-mail or by telephone and delete this message.**

On Oct 30, 2020, at 4:00 PM, Michael Pancier <mpancier@pancierlaw.com> wrote:

Mike

What is the city going to do with her time? i.e.,  time off or admin day? She is scheduled to work Monday 2pm to Midnight

**From:** Michael Elkins <melkins@mlelawfirm.com>
**Date:** Friday, October 30, 2020 at 3:52 PM
**To:** Michael Pancier <mpancier@pancierlaw.com>
**Cc:** Eugene Gibbons <gibbons@bglaw-pa.com>
**Subject:** Re: Sallabarria Meeting

Confirmed.

Location is the police department.

There's a parking garage near the station.

Sent from my iPhone

**Michael L. Elkins | MLE LAW**
**633 S. Andrews Ave. Suite 500 | Fort Lauderdale, FL 33301 | (954) 401-2608 (C)**
**melkins@mlelawfirm.com | www.mlelawfirm.com**

**NOTICE: This email message is intended only for the addressee and may contain confidential information that is legally privileged. If you are not the intended recipient, you may not review, use, disseminate, or copy this message. If you have received this message in error, please notify us immediately by return e-mail or by telephone and delete this message.**

On Oct 30, 2020, at 3:22 PM, Michael Pancier <mpancier@pancierlaw.com> wrote:

Michael

Confirming our meeting on Monday at 10:00am

Please confirm the location and the parking situation.

Thanks

Michael

**From:** Michael Elkins <melkins@mlelawfirm.com>
**Date:** Tuesday, October 6, 2020 at 8:24 PM
**To:** Michael Pancier <mpancier@pancierlaw.com>, Eugene Gibbons <gibbons@bglaw-pa.com>
**Subject:** Sallabarria Meeting

All,

I am looking to set the meeting for the Sallabarria settlement discussions. I thought it would be easiest to get your best dates and then I will work around those with the City.

My suggestion is you both give me dates for Oct., Nov. and Dec.

I have a packed Oct. and Nov., but I will try to make this happen then, but give

me Dec. dates just in case.

Thank you.

Kind regards,



**Michael L. Elkins**
Founder | Partner
**MLE Law**
A modern, 21st century law firm

m.  +1 954 401 2608
e.  melkins@mlelawfirm.com
w.  mlelawfirm.com
s.  633 South Andrews Avenue
    Suite 500
Fort Lauderdale, Florida 33301
    United States of America

    

This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited. **Read more**

**Thursday, April 11, 2024 at 21:57:06 Eastern Daylight Time**

**Subject:** Re: Sallabarria Meeting
**Date:** Friday, October 30, 2020 at 4:19:35 PM Eastern Daylight Time
**From:** Michael Pancier
**To:** Michael Elkins
**CC:** Eugene Gibbons

In the event that the meeting runs into the time she is scheduled to work.

**From:** Michael Elkins <melkins@mlelawfirm.com>
**Date:** Friday, October 30, 2020 at 4:03 PM
**To:** Michael Pancier <mpancier@pancierlaw.com>
**Cc:** Eugene Gibbons <gibbons@bglaw-pa.com>
**Subject:** Re: Sallabarria Meeting

Our meeting is at 10:00 am, I'm not sure what you're asking.

Sent from my iPhone

**Michael L. Elkins | MLE LAW**
**633 S. Andrews Ave. Suite 500 | Fort Lauderdale, FL 33301 | (954) 401-2608 (C)**
**melkins@mlelawfirm.com | www.mlelawfirm.com**

**NOTICE: This email message is intended only for the addressee and may contain confidential information that is legally privileged. If you are not the intended recipient, you may not review, use, disseminate, or copy this message. If you have received this message in error, please notify us immediately by return e-mail or by telephone and delete this message.**

On Oct 30, 2020, at 4:00 PM, Michael Pancier <mpancier@pancierlaw.com> wrote:

Mike

What is the city going to do with her time? i.e.,  time off or admin day? She is scheduled to work Monday 2pm to Midnight

**From:** Michael Elkins <melkins@mlelawfirm.com>
**Date:** Friday, October 30, 2020 at 3:52 PM

City 001414   1 of 3

**To:** Michael Pancier <mpancier@pancierlaw.com>
**Cc:** Eugene Gibbons <gibbons@bglaw-pa.com>
**Subject:** Re: Sallabarria Meeting

Confirmed.

Location is the police department.

There's a parking garage near the station.

Sent from my iPhone

**Michael L. Elkins | MLE LAW**
**633 S. Andrews Ave. Suite 500 | Fort Lauderdale, FL 33301 | (954) 401-2608 (C)**
**melkins@mlelawfirm.com | www.mlelawfirm.com**

**NOTICE: This email message is intended only for the addressee and may contain confidential information that is legally privileged. If you are not the intended recipient, you may not review, use, disseminate, or copy this message. If you have received this message in error, please notify us immediately by return e-mail or by telephone and delete this message.**

> On Oct 30, 2020, at 3:22 PM, Michael Pancier <mpancier@pancierlaw.com> wrote:
>
> Michael
>
> Confirming our meeting on Monday at 10:00am
>
> Please confirm the location and the parking situation.
>
> Thanks
>
> Michael

**From:** Michael Elkins <melkins@mlelawfirm.com>
**Date:** Tuesday, October 6, 2020 at 8:24 PM
**To:** Michael Pancier <mpancier@pancierlaw.com>, Eugene Gibbons

<[gibbons@bglaw-pa.com](mailto:gibbons@bglaw-pa.com)>
**Subject:** Sallabarria Meeting

All,

I am looking to set the meeting for the Sallabarria settlement discussions. I thought it would be easiest to get your best dates and then I will work around those with the City.

My suggestion is you both give me dates for Oct., Nov. and Dec.

I have a packed Oct. and Nov., but I will try to make this happen then, but give me Dec. dates just in case.

Thank you.


Kind regards,



**Michael L. Elkins**
Founder | Partner
**MLE Law**
A modern, 21st century law firm

m.  +1 954 401 2608
e.  [melkins@mlelawfirm.com](mailto:melkins@mlelawfirm.com)
w.  [mlelawfirm.com](http://mlelawfirm.com)
s.  633 South Andrews Avenue
    Suite 500
 Fort Lauderdale, Florida 33301
    United States of America

    

This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited. Read more

**Thursday, April 11, 2024 at 21:57:25 Eastern Daylight Time**

**Subject:** Re: Sallabarria Meeting
**Date:** Friday, October 30, 2020 at 4:31:46 PM Eastern Daylight Time
**From:** Michael Elkins
**To:** Michael Pancier
**CC:** Eugene Gibbons

I don't see that happening.

Sent from my iPhone

**Michael L. Elkins | MLE LAW**
**633 S. Andrews Ave. Suite 500 | Fort Lauderdale, FL 33301 | (954) 401-2608** (C)
**melkins@mlelawfirm.com** | www.mlelawfirm.com

**NOTICE: This email message is intended only for the addressee and may contain confidential information that is legally privileged. If you are not the intended recipient, you may not review, use, disseminate, or copy this message. If you have received this message in error, please notify us immediately by return e-mail or by telephone and delete this message.**

On Oct 30, 2020, at 4:19 PM, Michael Pancier <mpancier@pancierlaw.com> wrote:

In the event that the meeting runs into the time she is scheduled to work.

**From:** Michael Elkins <melkins@mlelawfirm.com>
**Date:** Friday, October 30, 2020 at 4:03 PM
**To:** Michael Pancier <mpancier@pancierlaw.com>
**Cc:** Eugene Gibbons <gibbons@bglaw-pa.com>
**Subject:** Re: Sallabarria Meeting

Our meeting is at 10:00 am, I'm not sure what you're asking.

Sent from my iPhone

**Michael L. Elkins | MLE LAW**
**633 S. Andrews Ave. Suite 500 | Fort Lauderdale, FL 33301 | (954) 401-2608** (C)
**melkins@mlelawfirm.com** | www.mlelawfirm.com

**NOTICE: This email message is intended only for the addressee and may contain confidential information that is legally privileged. If you are not the intended recipient, you may not review, use, disseminate, or copy this message. If you have received this message in error, please notify us immediately by return e-mail or by telephone and delete this message.**

On Oct 30, 2020, at 4:00 PM, Michael Pancier <mpancier@pancierlaw.com> wrote:

Mike

What is the city going to do with her time? i.e.,  time off or admin day? She is scheduled to work Monday 2pm to Midnight

---

**From:** Michael Elkins <melkins@mlelawfirm.com>
**Date:** Friday, October 30, 2020 at 3:52 PM
**To:** Michael Pancier <mpancier@pancierlaw.com>
**Cc:** Eugene Gibbons <gibbons@bglaw-pa.com>
**Subject:** Re: Sallabarria Meeting

Confirmed.

Location is the police department.

There's a parking garage near the station.

Sent from my iPhone

**Michael L. Elkins | MLE LAW**
**633 S. Andrews Ave. Suite 500 | Fort Lauderdale, FL 33301 | (954) 401-2608 (C)**
**melkins@mlelawfirm.com | www.mlelawfirm.com**

**NOTICE: This email message is intended only for the addressee and may contain confidential information that is legally privileged. If you are not the intended recipient, you may not review, use, disseminate, or copy this message. If you have received this message in error, please notify us immediately by return e-mail or by telephone and delete this message.**

On Oct 30, 2020, at 3:22 PM, Michael Pancier <mpancier@pancierlaw.com> wrote:

Michael

Confirming our meeting on Monday at 10:00am

Please confirm the location and the parking situation.

Thanks

Michael

---

**From:** Michael Elkins <melkins@mlelawfirm.com>
**Date:** Tuesday, October 6, 2020 at 8:24 PM
**To:** Michael Pancier <mpancier@pancierlaw.com>, Eugene Gibbons <gibbons@bglaw-pa.com>
**Subject:** Sallabarria Meeting

All,

I am looking to set the meeting for the Sallabarria settlement discussions. I thought it would be easiest to get your best dates and then I will work around those with the City.

My suggestion is you both give me dates for Oct., Nov. and Dec.

I have a packed Oct. and Nov., but I will try to make this happen then, but give me Dec. dates just in case.

Thank you.


Kind regards,


Michael L. Elkins



Founder | Partner
**MLE Law**
A modern, 21st century law firm

m.  +1 954 401 2608
e.  melkins@mlelawfirm.com
w.  mlelawfirm.com
s.  633 South Andrews Avenue
    Suite 500
Fort Lauderdale, Florida 33301
    United States of America

    

This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited. Read more