

# MEMORANDUM

TO: Sergeant, Jessica Salabarria

FROM: Rick Clements, Chief of Police

DATE: January 25, 2021

RE: Implementing Letter of Resignation

---

On December 18, 2020, you entered into a Last Chance Agreement ("Agreement"). A copy of that Agreement is attached as Exhibit A. Additionally, as part of the Agreement, on that same date you signed a Letter of Resignation ("Resignation"). A copy of that Resignation is attached as Exhibit B.

Based on the violations outlined below, and per the Agreement, I am implementing the Resignation, effective immediately and as of the date indicated on Resignation attached as Exhibit B.

Specifically, on December 30, 2020, Lieutenant, Steven Cosner submitted an Allegation of Employee Misconduct ("AEM"). A copy of the AEM is attached as Exhibit C. The allegations of the AEM are incorporated in full herein.

On January 19, 2021, I held a meeting with you to discuss the allegations in the AEM. In addition to you and I, also present at that meeting was:

- Wayne Jones, Deputy Chief
- Paul Ozaeta, Lieutenant (FOP President)
- Arley Flaherty, Sergeant (FOP First Vice President)
- Reggie Lester, Sergeant (FOP Second Vice President)
- Delvin Brown, Lieutenant (FOP Grievance Chairman)
- Steven Cosner, Lieutenant
- A.J. Prieto, Captain Internal Affairs.

During the meeting, you were provided a copy of the "AEM" and given the opportunity to review the "AEM" in full. After your review, you informed me that, despite being assigned to the North District, you did not report to the North District. Instead, you remained in your assigned City vehicle, stationary at the City's main police station. You further informed me that while in your vehicle at the police station (for what was at or around four (4) plus hours) you worked on administrative issues (an employee evaluation

City 001253

for Police Officer Vincent Stella) and worked on your "school work." The "school work" at issue is not work assigned by the City. You informed me that, independent from the City, you are working toward a Master's Degree.

Further, you acknowledged that you missed two radio calls specifically to you from Lieutenant Cosner and a phone call from Lieutenant Cosner to your personal cell phone. Ultimately, you did not respond to the North End Sub-Station (in the North District) until approximately 4:20 a.m., and only after being told to do so by Lieutenant Cosner. You further acknowledged that despite receiving an email from Lieutenant Cosner at approximately 3:20 a.m. directing you to have certain officers perform certain assignments, you did not issue the assignments until after 4:20 a.m., and only after speaking with Lieutenant Cosner. You again indicated to me that prior to speaking to Lieutenant Cosner at 4:20 a.m., you were focused on the employee evaluation and your independent school work.

In speaking with Lieutenant Cosner during this meeting, he indicated, among other things that you informed him that you had conveyed the assignment details, when in fact, you had not. You conveyed the assignment details after speaking to Lieutenant Cosner despite telling him you had already done so.

Moreover, Lieutenant Cosner indicated in this meeting that you did not leave the main police station during most of your shift and only left the police station when instructed to do so by Lieutenant Cosner.

The above is only a summary of the events of the January 19, 2021 meeting.

After the meeting, the City reviewed your City issued laptop computer, which is the computer that you would have used to work on Officer Stella's evaluation. A review of the laptop shows that Officer Stella's evaluation was not created until January 10, 2021. The City's Information Technology Department confirmed that Officer Stella's evaluation was not created or saved anywhere else on the City's system.

Pursuant to paragraph 4 of the Agreement, I determine that you have not complied with the Agreement and engaged in conduct that is beyond an individual, discreet or minor policy violation. Pursuant to paragraph 4 of the Agreement, my decision in this regard is not subject to review or explanation. Accordingly, as stated above, I am implementing your Resignation.

City 001254

# EXHIBIT A

City 001255

## LAST CHANCE AGREEMENT

THIS LAST CHANCE AGREEMENT is entered into between the CITY OF MIAMI BEACH, FLORIDA (hereinafter, the "City"), FRATERNAL ORDER OF POLICE, (hereinafter, "the Union") and JESSICA SALABARRIA (hereinafter, "SALABARRIA" or "Employee").

WHEREAS, SALABARRIA is employed by the City as a Police Officer in the City's Police Department.

WHEREAS, SALABARRIA is subject to the terms and conditions of employment contained in the Collective Bargaining Agreement between the Union and the City effective October 1, 2018 through September 30, 2021;

WHEREAS, SALABARRIA is the subject of an Internal Affairs ("IA") Investigation, IA Case Number 2020-010, which arose from SALABARRIA's involvement in not being on-duty when she was supposed to be, and from SALABARRIA's claims of being on-duty in the City when she was actually outside the City;

WHEREAS, the City wishes to continue to employ Employee, Employee wishes to continue to be employed by the City, and the FOP desires for Employee to continue to be employed under the terms and conditions described herein; and

WHEREAS, the Employee admits that she committed misconduct in association with IA Case Number 2020-010 and was in violation of numerous City and Police Department policies and the City Personnel Rules for the Classified Service; and

WHEREAS, the purposes of this Agreement, with which all the Parties concur, include: to protect and preserve the integrity of the Police Department and all its officers and to give Employee the opportunity to further and support that purpose; and to give Employee the

_____
CITY

Page 1 of 7

_____
UNION

_____
JESSICA

City 001256

opportunity to rehabilitate herself personally and as a police sergeant for the City and this Department; and to give Employee an opportunity to preserve her career.

NOW, THEREFORE, without establishing precedent for any purpose and intending to be bound, the Parties agree as follows:

1. All of the above statements are true and correct to the best of the Parties' belief and knowledge and for a five (5) year period beginning with the execution of this Agreement by all parties, SALABARRIA will be subject to the provisions of this Agreement.

2. During this period, SALABARRIA must be on-duty and in the City limits during all of her scheduled shifts unless given prior authorization. For the avoidance of confusion, this means that, during the terms of this Agreement, SALABARRIA shall not be outside the City limits when she is on-duty, shall not tell the City she's on-duty when she is outside the City's limits, and shall not leave before the end of her scheduled shift, unless given prior authorization.

3. Additionally, SALABARRIA shall refrain from violating any City or Police Department policies, rules or regulations; Standard Operating Procedures ("SOPs") or Personnel Rules, all of which (including any amendments or additions) are incorporated herein by reference. In any instance during which City or Police Department policies, procedures or Personnel Rules differ from or conflict with the stipulations set forth in the applicable collective bargaining agreement, the City or Police Department policies, procedures or Personnel Rules shall prevail.

4. The Chief of Police shall exclusively assess and determine Employee's compliance with this Agreement. The Chief's decision as to compliance with this Agreement shall not be subject to any grievance and/or review of any kind by SALABARRIA and/or the Union and is not subject to explanation or review.

5. Failure to comply with any portion or requirement of this Agreement (including but not limited to the requirement not to violate any City or Police Department policies, Standard Operating Procedures ("SOPs") or Personnel Rules, as referenced in paragraph 3 above) may result in the immediate implementation of the attached letter of resignation as referenced in paragraph 9 below. It is the intent and understanding of the parties that the violations contemplated to trigger the implementation of the attached letter of resignation shall not be for individual, discreet minor policy and procedural violations. The parties agree that repeated violation of the same, discreet minor policy may result in an event triggering the implementation of the attached letter of resignation. In that event, the Employee and the Union understand and agree there will be no recourse or review available pursuant to any grievance, appeal or review process under any federal, state or local statute, ordinance, collective bargaining agreement, or in any other forum or under any other process or procedure.

6. SALABARRIA shall serve a four-week (160 hour) suspension without pay and waive any and all rights to grieve or appeal that suspension. Employee shall also be subject to the additional provisions of the Settlement Agreement to which this Agreement is attached and is made part of via incorporation by reference.

7. Further, for the same five (5) year period described above, the Chief of Police shall have full discretion regarding Employee's assignments, including, without limitation, duties, supervisor and chain of command. Employee shall have the ability to bid for shift and days off, if the employee is reassigned her duty hours and days off shall remain the same.

8. For a period of one (1) year from the date of execution of this Agreement, Employee is not eligible for any promotional opportunities.

9. Employee shall sign an irrevocable letter of resignation which shall take effect immediately upon her violation of this Agreement or any part of it at any time during the term of this Last Chance Agreement. .

10. Employee shall attend and cooperate with any training required by the Chief of Police.

11. If during the above-referenced five (5) year period, SALABARRIA violates any provisions of this agreement or any City or Police Department policies, Standard Operating Procedures ("SOPs") or Personnel Rules and/or regulations as previously referenced in paragraph #4 , her resignation shall be effective , without the right to grieve or otherwise contest, in any manner, her separation. .

12. In the event that SALABARRIA is separated pursuant to the terms and conditions of this Last Chance Agreement, she and the Union understand that her separation is not subject to appeal pursuant to the contractual grievance/arbitration procedure, or otherwise. In other words, SALABARRIA agrees that should she be separated pursuant to the terms of this agreement that she waives her right to utilize the contractual grievance and arbitration procedure and she further waives the right to challenge or appeal her separation pursuant to any administrative or statutory avenue that may exist.

13. The City retains the right to rely upon the facts and circumstances of the events from which this Last Chance Agreement arose in any future proceeding in the event the Employee successfully meets the terms and conditions referred to in this Agreement but thereafter has deficiencies in conduct or performance, and such deficiencies shall be sufficient to warrant discipline, including dismissal.

14. It is understood and agreed by all parties hereto that this Last Chance Agreement is executed based on the particular circumstances of this case and does not establish precedent for the resolution of other cases.

15. SALABARRIA acknowledges that she could be terminated from her employment from the City as a result of her conduct as referenced above and that remaining employed by the City is adequate consideration for entering into this Last Chance Agreement, serving the suspension without pay and waiving the rights described herein and in the Settlement Agreement.

16. SALABARRIA being of lawful age, for and in consideration of the above-action agreed to by the City, and other valuable consideration received from or on behalf of the City, receipt whereof is hereby acknowledged, does hereby release, acquit, satisfy and forever discharge the City, as well as each and everyone of the City's former and current officers, agents, attorneys, employees and officials -- in both their official and individual capacities -- and their successors and assigns, from any and all claims, cause and causes of action, grievances, unfair labor practice charges, lawsuits, claims of employment discrimination (including, but not limited to claims under the Americans With Disabilities Act), and any and all other claims and demands whatsoever, in law or in equity, tort or contract, which SALABARRIA has or may have against the above-named individuals in both their individual and official capacities, from the beginning of the world until today, including, but not limited to, all matters concerning or arising out of her employment with the CITY, her discipline stemming from the incidents described in this Last Chance Agreement and the execution of this Last Chance Agreement.

17. It is understood and agreed that this Last Chance Agreement does not constitute an admission by the City or SALABARRIA of any violation of the collective bargaining

CITY                    Page 5 of 7                    UNION        JESSICA

City 001260

agreement. This Last Chance Agreement is being entered into by the parties solely for the purpose of avoiding the expense and inconvenience of further administrative proceedings.

18. SALABARRIA has received and reviewed this Last Chance Agreement prior to executing it and she agrees to be bound by its terms and conditions.

19. Prior to signing this Last Chance Agreement, SALABARRIA had the opportunity, and did, in fact, consult with her attorney and/or with the Union.

20. This Last Chance Agreement, and the Settlement Agreement which is attached constitutes the entire understanding and agreement of the parties hereto, and can be modified, amended or revoked only by express written consent of all parties.

21. This Last Chance Agreement shall be governed by and construed in accordance with the laws of the State of Florida, and where applicable, federal laws. The language of this Last Chance Agreement shall be construed as a whole, according to its fair meaning, and not strictly construed for or against either party.

22. In the event that any party to this Last Chance Agreement institutes legal proceedings regarding the terms of this Last Chance Agreement, it is stipulated and agreed that such a claim shall be heard and determined by the court, and not by a jury, in Miami-Dade County, Florida. **SALABARRIA AGREES AND UNDERSTANDS THAT SHE IS WAIVING THE RIGHT TO A JURY TRIAL, IF ONE EXISTS, AS TO ANY CLAIM REGARDING THE TERMS OF THIS AGREEMENT.**

This Agreement is dated the ____ day of December 2020, in Miami-Dade County, Florida.

_____  
JESSICA SALABARRIA

DocuSigned by:  
*Paul J. Aguila*  
—2B3D6240F92B45D...  
_____  
CITY MANAGER  
CITY OF MIAMI BEACH

Date: 12/18/2020

Date: 12/23/2020 | 1:34 EST

**FRATERNAL ORDER OF POLICE**

_____ President  
Signature & Title

Kevin Millan    President  
Print Name & Title

12/18/2020  
Date

_____  
CHIEF OF POLICE

12/15/2020  
Date

Page 7 of 7

City 001262

# EXHIBIT B

City 001263

December 18, 2020

City of Miami Beach
Human Resources Department
Miami Beach City Hall
1700 Convention Center Drive
Miami Beach, FL 33139

Re:   *Letter of Resignation as Part of Settlement Agreement and Last Chance Agreement*

To Whom It May Concern:

Pursuant to the Settlement Agreement and Last Chance Agreement to which this Letter of Resignation is attached, I resign my employment with the City of Miami Beach, effective January 25, 2021.

Very Truly Yours,

Jessica Salabarria.

# EXHIBIT C

City 001265

# MIAMI BEACH POLICE DEPARTMENT
## Initial Report Concerning a Police Employee - Allegation of Employee Misconduct

| Date and Time Reported 12/30/2020 2345 hours | Received By (Employee Name) Lieutenant Steven Cosner | (X) In Person ( ) By Phone ( ) Other _____ |
|---|---|---|
| Date and Time Occurred 12/28/2020 0000-0600 hours | Location of Occurrence MBPD | |
| Reporting Party's Name Lieutenant Steven Cosner | Race/Sex W/M | D.O.B | Address: 1100 Washigton Ave., Miami Beach, Florida 33139 | Telephone # |

**Specific Allegation (In Brief):** Failure to Supervise, Conduct Unbecoming, Insubordination, Neglect of Duty, Untruthfulness (lying/false statements), Performance of Duties, Failure to Monitor Radio

| Employee (s) Name | |
|---|---|
| 1. Sergeant Jessica Salabarria | 3. |
| 2. | 4. |

### Witnesses

| Name | Race/Sex | D.O.B | Address | Telephone |
|---|---|---|---|---|
| Lieutenant Steven Cosner | W/M | | Resident: MBPD | |
| Officer Werner Baumer | W/M | | Business: 1100 Washington Ave., Miami Beach, FL 33139 | |
| Officer Richard Ocejo | W/M | | | |
| Officer Steven Serrano | W/M | | | |
| Officer Christopher Garrido | W/M | | | |
| Officer Hansel Romero | W/M | | | |
| Officer Rodolfo Albaladejo | W/M | | | |
| | | | Resident Business | |

### Details of Allegation

On Sunday night, 12/27/2020 at approximately 2200 hours, I advised Sergeant Jessica Salabarria that we needed a Sergeant on overtime for the midnight shift. I told her that she was the next supervisor to be forced to work over since we did not have any volunteers for the position. She was told that she would be assigned to Area 3 and would be working from 0000-0600 hours. She acknowledged the order and within several minutes she provided me with an overtime slip completed by her in which she documented in her own handwriting that she was working in Area 3. She left the sergeant's office shortly thereafter. At approximately 0355 hours, I forwarded an email to Sergeant Salabarria with the details and watch orders that needed to be assigned to the Area 3 officers for completion prior to the end of their shift. I then sent a text message to her cellular phone advising her to check her email at 0359 hours. After a few minutes I did not receive an acknowledgement of the text message, so I tried to call her phone at 0404 hours. Then phone rang repeatedly and went to voicemail. I tried to raise her via the police radio immediately afterwards. The dispatcher raised her multiple times with no response. Sergeant Wilson Romero advised via radio that he would try to call her. He called me at 0411 hours to advise that he could not reach her and that her phone rang through to voicemail. I again tried to have the dispatcher raise her, and after several attempts by name and unit

C:\WPWIN60\WPDOCS\FORMS\MISCOND.FRM

City 001266

number, she finally responded. The tone of her voice sounded as if she was just waking up. I spoke with her via the supervisor channel and asked her where she was. She told me that she was "05". I responded by asking if she meant, "05 at the NESS". She said no and that she was at the main station. I asked if she was aware that she was assigned to Area 3 and she answered affirmatively. I then ordered her to respond to Area 3 and to check her email.

I became involved in a vehicle stop along 71 street that resulted in an arrest at 0416. Officer Ocejo was one of the officers who responded as back-up. After the subject was transported, I waited on scene with Officer Ocejo as he waited for a tow truck. I asked Officer Ocejo to check his email to see if the details had been forwarded by Sergeant Salabarria. He told me that he did not have any emails from her. This was at approximately 0520 hours. At 0543 hours, I received an unsolicited text message from Sergeant Salabarria advising that she had emailed me the squad stats and the detail assignments. She claimed that she had told the officers via landline and email of their detail assignments. The email that she sent me was sent at 0536 hours. It included the squad stats and detail assignments. I called Officer Hansel Romero and asked him if he had received any emails, texts, or phone calls from Sergeant Salabarria advising him of detail assignments. He said that he did not and that she had only asked for stats in an email that was sent at 0521 hours. That email was forwarded to me by Officer Ocejo. I began calling all the officers assigned to Area 3 and inquired the same of each of them. Every one of the officers advised that they had not received a call or text advising of the details. Officer Romero then forwarded an email that he received from Sergeant Salabarria at 0542 hours. The email had been sent to each of the Area 3 officers. It was the detail assignments and began with a highlighted line stating, "squad per our conversation please note the below details for our shift". I found this very concerning because it was now the second time that she had claimed to have had a conversation with the officers about their assignments when all six of them claimed that never happened and they did not report to any assigned details during the shift.

I sent an email to Lieutenant Jorge Garcia asking for a Detail Report for Sergeant Salabarria's assigned marked vehicle via the AVL system. My inquiry was for her vehicle movement from 2200 hours on 12/27/2020 through 0600 hours on 12/28/2020. The Detail Report showed that her vehicle had been parked at the station from 2200 hours on 12/27/2020 until 0423 hours on 12/28/2020 which was a few minutes after we spoke on the supervisor channel. For a total of 6 hours and 23 minutes. It is unknown how long the vehicle had been parked prior to that. The report indicated that she left the station and drove directly to 73rd Street and Ocean Terrace where she again parked her vehicle at 0440 hours. The vehicle remained in that position until 0533 hours for a total of 53 minutes. She then left that location and drove directly to the MBPD headquarters.

Note that of the six officers assigned to Area 3 on the shift in question 4 of them have 2 years of experience or less.

Sergeant Salabarria's actions show a willful effort to deceive a supervisor and a failure to obey a direct order from said supervisor. She failed to report to her assigned zone and failed to supervise the officers under her watch. She failed on multiple occasions to respond to the police radio and showed extreme neglect in the performance of her duties.

City 001267