Page 178

```
 1           UNITED STATES DISTRICT COURT
 2           SOUTHERN DISTRICT OF FLORIDA
 3                   MIAMI DIVISION
 4           CASE NO.:1:22-cv-21004-DPG
 5  JESSICA GUASTO,
 6           PLAINTIFF,
 7  VS.
 8  THE CITY OF MIAMI BEACH, FL,
    A FLORIDA MUNICIPALITY,
 9           DEFENDANT.
10  _____/
11              VOLUME 3 (PAGES 178-244)
12  CONTINUED VIDEO
    DEPOSITION OF:      JESSICA (GUASTO) SALABARRIA
13
    DATE:               MARCH 15, 2024
14
    TIME:               10:01 A.M. - 11:45 A.M.
15
    PLACE:              VIA ZOOM REMOTE CONFERENCING
16
    REPORTED BY:        TAMARA MASCI TANNEN, RPR, FPR-C
17                      STENOGRAPHIC COURT REPORTER
                        NOTARY PUBLIC, STATE OF FLORIDA
18
19
20
21
22
23
24
25
```

COASTAL REPORTING, INC. (954) 523-5326

Page 179

```
 1  APPEARANCES:
 2  DANIEL B. BARROUKH, ESQ.
    DEREK SMITH LAW GROUP, PLLC
 3  520 BRICKELL KEY DRIVE
    SUITE O-301
 4  MIAMI, FLORIDA  33131-2433
    (786) 688-2335
 5  DANIELB@DEREKSMITHLAW.COM
        COUNSEL APPEARING ON BEHALF OF THE PLAINTIFF.
 6
 7
 8  MICHAEL L. ELKINS, ESQ.
    MLE LAW
 9  1212 NORTHEAST 16TH TERRACE
    FORT LAUDERDALE, FLORIDA  33304
10  (954) 401-2608
    MELKINS@MLELAWFIRM.COM
11      COUNSEL APPEARING ON BEHALF OF THE DEFENDANT.
12
13  ALSO PRESENT:
14  MATTHEW LEIVA, VIDEOGRAPHER, COASTAL VIDEO
15
16           * * * * * * * *
17           S T I P U L A T I O N S
18
19        It is hereby stipulated and agreed by and
20  between counsel for the respective parties, and the
21  deponent, that the reading and signing of the deposition
22  are hereby reserved.
23
24
25
```

COASTAL REPORTING, INC. (954) 523-5326

Page 180

```
 1                    I N D E X
 2  WITNESS                                      PAGE
 3  JESSICA SALABARRIA
 4  Direct Examination by Mr. Elkins             182
 5
 6                  E X H I B I T S
 7  DEPOSITION       DESCRIPTION              PAGE
```

```
 8  Exhibit Number 9   Allegation of Employee Misconduct   189
                       Form
 9
    Exhibit Number 10  Memorandum dated 1/25/21            214
10
    Exhibit Number 11  Declaration of Nicholas Guasto      225
11
    Exhibit Number 12  Letter dated 12/4/20 from Michael   230
12                     Pancier to EEOC
13  Exhibit Number 13  Letter from U.S. Equal Employment   232
                       Opportunity Commission to Elkins
14
    Exhibit Number 14  Receipt of Employee Handbook        233
15
    Exhibit Number 15  Letter of Resignation dated         234
16                     12/18/20
```

```
17
18
19
20
21
22
23
24
25
```

COASTAL REPORTING, INC. (954) 523-5326

Page 181

```
 1                  P R O C E E D I N G S
 2                       * * * *
 3        THE VIDEOGRAPHER:  Good morning.  We are now on
 4  the record.  This is Matthew Leiva, the videographer.
 5  Are we ready to begin?
 6        MR. ELKINS:  We are.
 7        MR. BARROUKH:  Yes.
 8        THE VIDEOGRAPHER:  Stand by.  One moment.  Okay.
 9  Good morning.  We're now on the video record.  The time
10  is 10:01 A.M Eastern time.  Today's date is March 15th,
11  2024.  And the video deposition of Jessica Guasto in
12  the matter of Jessica Guasto versus the City of Miami
13  Beach, Florida, a Florida municipality.
14        MR. ELKINS:  Municipality.
15        THE VIDEOGRAPHER:  There we go.  I apologize.
16  Case Number 122-CV-21004-DPG.  My name is Matthew
17  Leiva.  I'm your videographer for today.  Tamara Masci
18  Tannen is your court reporter for today.  We're both
19  representing Coastal Services.
20        And counsel, please introduce yourselves and
21  thereupon the witness will be sworn in.
22        MR. BARROUKH:  Daniel Barroukh, Counsel for
23  Plaintiff, Jessica Guasto.
24        MR. ELKINS:  Michael Elkins on behalf of
25  Defendant, City of Miami Beach.
```

COASTAL REPORTING, INC. (954) 523-5326

Page 182

1    THE REPORTER:  Jessica, raise your right hand,
2    please.  Do you swear that the testimony you are about
3    to give will be the truth, the whole truth, and nothing
4    but the truth, so help you God?
5    THE WITNESS:  I do.
6    THE REPORTER:  Thank you.  You may proceed.
7    **JESSICA SALABARRIA,**
8    **Having been first duly sworn, testified as follows:**
9    **DIRECT EXAMINATION**
10   BY MR. ELKINS:
11   Q.   All right.  Ms. Salabarria, did you do anything to
12   prepare for this day three of your deposition, understanding
13   that this is a continue -- continuation of your original
14   depo from back in February?
15   A.   **Yes.**
16   Q.   Okay.  What did you do?
17   A.   **Spoke to my attorney.**
18   Q.   When did you speak to your attorney?
19   A.   **I don't have the date right now.  Can't recollect**
20   **which date exactly.**
21   Q.   For how long did you speak to your attorney about
22   this deposition?
23   A.   **I don't know.**
24   Q.   Okay.  And did you go over questions and answers
25   from your earlier in this testimony?

Page 183

1    A.   **Yes.**
2    Q.   You understand that you're not allowed to discuss
3    your deposition testimony with your lawyer while the
4    deposition's pending?
5    A.   **Can you rephrase that question because I didn't**
6    **understand what you were saying.  Like, if I prepared for my**
7    **case; is that what you asked?**
8    Q.   No, this is a continuation of your deposition.
9    Your deposition was suspended on two prior occasions.  You
10   remember that, right?
11   A.   **Yes.**
12   Q.   And so, in your first deposition, and in the
13   second one, we discussed the fact that while your deposition
14   is pending, you cannot discuss questions, you cannot discuss
15   the deposition with your lawyer.  Did you understand that?
16   A.   **Yes.**
17   Q.   But you have in fact discussed the deposition with
18   your counsel; is that correct?
19   A.   **That is not correct.**
20   MR. BARROUKH:  Objection.  Yeah.  Objection.  You
21   -- you can't ask her questions about what we spoke
22   about.
23   MR. ELKINS:  Well, she already answered that she
24   did discuss it with you.  And if she's discussing the
25   depo with you while it's pending, it's actually not

Page 184

1    privileged because if --
2    MR. BARROUKH:  She -- she already -- she already
3    said she did not understand the question.  Can we move
4    on, please?
5    MR. ELKINS:  I'm going to move on.  But I'll
6    definitely raise the issue with the judge, for sure.
7    Because she shouldn't --
8    THE WITNESS:  Yes, I didn't understand what you
9    were asking me.  I thought you said if I discussed my
10   case with my counsel.
11   BY MR. ELKINS:
12   Q.   Well, that's a nice way to clean it up.  But I
13   clearly asked if you discussed this deposition, and you said
14   yes.  So that's fine.  We'll take it to Judge Gayles and see
15   what he says about it.
16   Okay.  I'm going to show you what I've marked as
17   -- previously as Exhibit 5.  Can you see the document?
18   A.   **Yes.**
19   Q.   Okay.  This is the EEOC charge you filed on
20   June -- yeah -- June 22nd, 2021.  And we've gone over this
21   before, right?
22   A.   **Yes.**
23   Q.   Okay.  I just want to make sure I understand what
24   this case is about.  Can you see the second page here that
25   I'm looking at?

Page 185

1    A.   **Yes.**
2    Q.   Okay.  It says, "CP -- "
3    That's you, correct?  Charging Party?
4    A.   **Yes.**
5    Q.   -- was terminated for engaging in a -- in a
6    protected activity, filing the 2020 charge.  That's
7    referring to your 2020 EEOC charge I think from July or June
8    of 2020, correct?  Is that correct?
9    A.   **That is correct.**
10   Q.   Okay.  So that's the protected activity at issue
11   as per your EEOC charge; is that right?
12   A.   **That is correct.**
13   Q.   Okay.  And then, there's the second part to the
14   sentence that says, "and retaliation against RP."
15   RP is Responding Parties, right?
16   A.   **Yes.**
17   Q.   Okay.  And I think if we look up here, it talks
18   about additional respondents responsible for discriminatory
19   conduct.  And it says you were employed by the Responding
20   Party.  That's the City of Miami Beach, correct?
21   A.   **That is correct.**
22   Q.   Okay.  What do you mean -- I understand that the
23   protected activity triggering the supposed retaliation is
24   the 2020 EEOC charge of discrimination.  But then it says,
25   "and retaliation against Responding Party," which is City of

Page 186

1  Miami Beach.  What does that mean, and retaliation against
2  City of Miami Beach?
3      A.   At this moment, I don't know what that means.
4      Q.   Okay.  Who wrote this charge?
5      A.   Can you go up to the author of the charge, please?
6  Can you scroll down?
7      Q.   Sure.
8      A.   That was my previous counsel.
9      Q.   Paul?
10     A.   I believe so, yes.
11     Q.   Okay.  But you signed it, right?  That's your
12  signature?
13     A.   Yes.
14     Q.   And you read it before you signed it, right?
15     A.   Yes.
16     Q.   Okay.  Going forward to the December -- I think
17  it's 27 or 28 incident involving Lieutenant Cosner.  In this
18  charge you say that Cosner accused you of further violation
19  of workplace rules.  Do you see that?
20     A.   Can you point to where it says it?
21     Q.   Yeah.  Right here.  "Respondent Cosner, who was
22  previously involved in the conduct leading to the 2020
23  charge, accused Charging Party of further violation of
24  workplace rules."
25     A.   Okay.

Page 187

1      Q.   Do you see that?
2      A.   Yes.
3      Q.   And the conduct that you're referring to from
4  Lieutenant Cosner that was part of that 2020 charge or that
5  led to the 2020 charge, that was the issues that you had had
6  with him six or seven years prior, right?
7      A.   At this time, I don't recall.  I do know that I
8  had issues with Cosner from previous years leading up to
9  this EEOC charge.
10     Q.   Well, I think you had told me that Cosner had, you
11  know, asked you out or tried to take your relationship
12  further than just friendship back in 2014 or '15; and then,
13  you rejected him; and then, from that point forward, in '14
14  or '15 -- we can call it '15 -- he just wouldn't speak to
15  you.  Do you remember that testimony?
16     A.   I remember.  And I remember having issues with
17  Cosner, like -- like I explained from 20 -- around the time
18  of 2020, 2013, 2014.  All the way till 2021.
19     Q.   Well, that's not what you told me before.  What
20  you told me before was you had issues with him in '13, '14
21  or '15 whenever that was, correct?
22     A.   Yes.
23     Q.   And you rejected him, correct?
24     A.   Yes.
25     Q.   And then, from that moment forward, you didn't

Page 188

1  work with him, you didn't speak to him, he wouldn't speak to
2  you.  I think you told me that you'd pass him in the hallway
3  and he would ignore you.
4          So what other -- are you referring to the fact
5  that he just ignored you for six years, or five years, as
6  issues?
7      A.   I'm respond -- I'm responding to the fact that he
8  held this animosity and this -- this animosity and this
9  hatred towards me from the moment that I rejected him till
10  2021, which is evident by him making false allegations
11  against me.  So he held that with him all these years --
12     Q.   Right.
13     A.   -- and retaliated against me for filing my EEOC
14  complaint.
15     Q.   Right.  So that -- that's what I was getting at.
16  Your point about the issues that you're talking about after
17  you rejected him, whenever that -- that date was.  I know
18  you don't remember it off the top of your head.  I don't
19  either.  But it's in the record.
20          The issues that you're referring to after that, go
21  to his what you call animosity and anger towards your
22  rejection.  So he ignored you for six or seven years.  And
23  your position in this lawsuit is he essentially finally took
24  it out on you when he made these allegations against you in
25  December of 2020, correct?

Page 189

1      A.   Yes.
2      Q.   Okay.  Got it.
3          So let's go to -- bear with me as I get another
4  document.  Okay.
5          I'm showing you what I'm going to mark as
6  Exhibit 9.  Do you see the document?
7      A.   Yes.
8               (Deposition Exhibit Number 9 marked for
9  identification.)
10 BY MR. ELKINS:
11     Q.   Okay.  This is the Allegation of Employee
12  Misconduct form that Cosner submitted to the City against
13  you.  This has been produced I think by both parties in this
14  case.
15     A.   Is that the original signed copy that I can refer
16  to?
17     Q.   This is the copy that the City produced.
18     A.   Okay.  Would you happen to have the signed copy --
19  a signed copy?
20     Q.   I might.  But there's only a difference I believe
21  in the heading.  I don't think there's any substantive
22  difference.  So we can go through this document.
23     A.   I just don't know who wrote this document.  It's
24  not signed by anybody, so I would like to refer to a
25  document that's signed.

Page 190

1    Q.   Well, you're going to refer to the documents that
2  I put in front of you.  I understand what you're saying.
3  But this is the document the City produced.
4         MR. BARROUKH:  You can answer, Jessica.  It's all
5    right.
6         THE WITNESS:  Okay.  I just want to state for the
7    record that it's an unsigned copy.
8  BY MR. ELKINS:
9    Q.   That's fine.  The document speaks for itself.
10        So I'm going to give you a moment to read this.
11 I'll scroll when you need me to scroll because I'm going to
12 ask you some questions about it.  But I want you to have an
13 opportunity to read it first.
14   A.   It moved.
15   Q.   Sorry.
16   A.   Can you scroll down?
17   Q.   Tell me when you want me to stop.
18   A.   You can stop.  Okay.
19   Q.   All right.  You alleged in this lawsuit that the
20 allegations are false -- that Cosner made false allegations
21 against you, right?
22   A.   Yes.
23   Q.   Okay.  So tell me the allegations in this document
24 that are false.
25   A.   All of it.

Page 191

1    Q.   The entire thing's false?
2    A.   His allegations, what did he charge me with?  Can
3  you --
4    Q.   Well, he says that -- he says that on Sunday night
5  at 2200 hours, he told you that they needed a sergeant for
6  overtime for the midnight shift.  Is that true or false?
7    A.   That is false.  I never spoke to Cosner.  He never
8  gave me any directives and I never gave him my overtime
9  slip.  He never spoke to me at the beginning of the shift.
10   Q.   And so, Cosner did not tell you that you were the
11 next supervisor to be forced to work since they didn't have
12 any volunteers for the overtime.  That next sentence is
13 false too?
14   A.   That is correct, it is false.
15   Q.   Okay.  And then, were you assigned to Area 3?
16   A.   I was assigned to Area 3.
17   Q.   Okay.  Who told you you'd be assigned to Area 3?
18   A.   Lieutenant Brown at the time.
19   Q.   And who told you you'd be working overtime?
20   A.   Lieutenant Brown at the time.
21   Q.   Okay.  And were you told you'd be working midnight
22 till 6:00 A.M.?
23   A.   Yes.
24   Q.   Cosner says that you acknowledged the order within
25 several minutes provided him with an overtime slip completed

Page 192

1  by you, which you documented in your own handwriting that
2  you were working Area 3.  Is that true or false?
3    A.   That is also false.  I did not give him my
4  overtime slip.  I turned in my overtime slip to Lieutenant
5  Brown.
6    Q.   Okay.  And then, it says, at approximately 3:55,
7  which is A.M., he forwarded an email to you with the details
8  of the watch orders that needed to be assigned to Area 3
9  offices for completion prior to the end of the shift.  Is
10 that true or false?
11   A.   He sent me an email saying I forgot to send you
12 this at 3:55 A.M.
13   Q.   And you have a copy of that email?
14   A.   Yes.
15   Q.   So he did send you an email at 3:55?
16   A.   Yes.  He sent me an email saying I forgot to send
17 you these details at 3:55.
18   Q.   Okay.  I understand it says he forgot.  But does
19 the email say -- did the email have the details and watch
20 orders that needed to be assigned to the Area 3 officers?
21   A.   Yes.
22   Q.   Okay.  Area 3?
23   A.   That is correct.
24   Q.   What is Area 3?
25   A.   Area 3 is the north end -- the north end area of

Page 193

1  the -- Miami Beach.
2    Q.   Okay.  And the beach is split up into three areas,
3  right:  Entertainment District, Mid Beach and North Beach,
4  correct?
5    A.   It's split into several areas.  I don't know what
6  those areas are now.
7    Q.   Well, what was it when you were working there?
8    A.   I know that Area 3 was in the north end.
9    Q.   Okay.  Well, what were the other areas when you
10 were employed there?
11   A.   I don't recall at this moment.
12   Q.   Okay.  And then it says he sent you a text message
13 to your cellphone advising you to check your email.  That
14 was at 3:59.  Is that true or false?
15   A.   At this time, since it happened so long ago, I
16 don't recall the exact time that he sent me anything or the
17 text message.
18   Q.   Okay.  And then it says, he says he called you
19 repeatedly, but your phone went to voicemail.  Is that true
20 or false?
21   A.   Again, I don't remember at this time.  I don't
22 recall.  It happened so many years ago.
23   Q.   And then it says he tried to raise you via the
24 police radio immediately afterwards.  Is that true or false?
25   A.   Since it happened three years ago, I -- I don't

Page 194

1  remember at this time.
2     Q.  And then it says the dispatcher raised you
3  multiple times, and you didn't respond.  Is that true or
4  false?
5     A.  Again, I don't -- I don't remember exactly how
6  everything happened.
7     Q.  Okay.  And then it says, Sergeant Wilson Romero
8  told -- advised via radio that he would try to call you.  Is
9  that true or false?
10    A.  I don't remember.
11    Q.  And then it says, "he," referring to Wilson
12  Romero, called me, Cosner, at 4:11 hours to advise that he
13  couldn't reach you and that your phone rang through your
14  voicemail.  Do you know if that's true or false?
15    A.  I can't attest to what he says he did with Wilson
16  Romero.
17    Q.  So have you spoken to Wilson Romero about that?
18    A.  No.
19    Q.  And then, Cosner says he again tried to have the
20  dispatcher raise you.  And after several attempts by name
21  and unit, you finally responded.  Is that true or false?
22    A.  Again, it happened three years ago.  I don't
23  remember the exact -- what happened that night.
24    Q.  Okay.  But you remembered it enough to allege in a
25  federal lawsuit that he made false allegations; now today

Page 195

1  you don't remember?
2    A.  That is correct.  I remember -- yeah, I remember
3  what happened in the sense of his allegations are not
4  correct, are not true.
5    Q.  All right.  We'll just keep going through this
6  then.  Then it says the tone of your voice sounded as if you
7  were just waking up.  Do you remember that?
8    A.  Again, I -- I can't attest to what he perceives my
9  voice sounded like.  I think that's adjusted.  So I don't --
10  I don't know how somebody's tone sounds like they're just
11  waking up.
12    Q.  Okay.  Then it says he spoke with you via the
13  supervisor channel, which is the specific radio channel,
14  correct?
15    A.  Can you point to that again where it says that?
16    Q.  Yeah.  Right at the top here it says, I spoke with
17  her via the supervisor channel.
18      So what I'm asking you is:  The supervisor channel
19  is a specific channel for sergeants, lieutenants and
20  captains that regular officers don't hear, correct?
21    A.  Yes.  So I remember --
22    Q.  Well, hold on.  That was my question.  And it says
23  he asked you where you were and you told him that you were
24  05.  So first, what does "05" mean?
25    A.  05 means at the station.

Page 196

1    Q.  Okay.  Do you remember that happening?
2    A.  I don't remember the exact words that I told him.
3  So I -- I don't remember what I spoke to him.  If I had a
4  recorded copy, I would be able to recall what I said to him
5  exactly.
6    Q.  If you had what?
7    A.  If I had a copy of that recording of what I said
8  to him, I could attest to it, but I don't remember exactly
9  verbatim what I said to him.
10    Q.  Okay.  And 05 is the main station?
11    A.  Yes.
12    Q.  And that's the one on Washington, correct?
13    A.  Yes.
14    Q.  And it says Cosner responded by asking you if you
15  meant 05 at the NESS.
16      What is NESS -- what does NESS, N-e-s-s mean?
17    A.  I don't know the abbreviation for that.
18    Q.  You've never heard of that abbreviation?
19    A.  I know the abbreviation.  I just don't know what
20  it stands for.
21    Q.  Okay.  And then it says you said no, and that you
22  were at the main station.  Do you remember telling Cosner
23  that?
24    A.  I, again, I don't remember my exact words, so I
25  can't attest to what he said he -- what he said I said.

Page 197

1    Q.  Well --
2    A.  So --
3    Q.  What do you remember --
4    A.  I know that the main station is 05.
5    Q.  I'm not asking you what he says you said.  I'm
6  asking you if you remember what you said.  Do you remember
7  what you said?
8    A.  No, I don't remember.
9    Q.  Well, how do you know it's false if you don't
10  remember?
11    A.  Because I know that his allegations are false.
12    Q.  Okay.  Which allegations are false?
13    A.  Can you go up to his charges?  Keep going.  The
14  specific allegations, what he's specifically saying are the
15  allegations, those are all false.
16    Q.  Okay.  But the details of those allegations are
17  contained in the narrative; isn't that true?
18    A.  That's what it looks like.
19    Q.  Okay.  So what in this narrative -- I mean, I can
20  go through every sentence with you.  I'm happy to do that.
21  But if you're saying, for example, failure to supervise is a
22  false allegation, then tell me in this narrative what facts
23  here are false that would establish that failure to
24  supervise is a false allegation.
25    A.  I just know that his allegations of -- that are in

Page 198

1  the top are all false and this was never investigated.
2     Q.   Okay.  Well, I've given you the opportunity to
3  read this.  You can read it again.
4          But what I'm asking you, and I'll ask you again:
5  What specific facts in this document, if any, do you know to
6  be false or are you --
7     A.   You have --
8     Q.   -- are you testifying that you can't -- you don't
9  remember what's true or false in this narrative?
10    A.   I -- I just know that his allegations are false.
11 If you have a specific question, I can answer it.  But his
12 allegations are false.
13    Q.   We'll just keep going sentence by sentence then.
14    A.   Okay.  Before you answer the question, I need to
15 use the restroom.
16    Q.   Okay.
17    A.   Ask your question.  I need to use the restroom.
18    Q.   Okay.  Okay.  We can go off the record.
19         THE VIDEOGRAPHER:  Stand --
20         MR. ELKINS:  You're --
21         THE VIDEOGRAPHER:  Standby -- I'm sorry.
22         MR. ELKINS:  You're advised not to talk about your
23 deposition while you step away.
24         THE WITNESS:  Okay.
25         THE VIDEOGRAPHER:  Okay.  Stand by.  Going off the

COASTAL REPORTING, INC. (954) 523-5326

Page 199

1  video record.  The time is 10:27 A.M.
2          (Recess was taken.)
3          THE VIDEOGRAPHER:  Okay.  Stand by.  Going back on
4  video record.  The time is 10:33 A.M.
5  BY MR. ELKINS:
6     Q.   Okay.  Going back to this document, Cosner says
7  that after you told him you were 05 at the NESS, you told
8  him that you were at the main station, he asked you if you
9  were aware that you were assigned to Area 3, and you
10 answered affirmatively.  Do you remember that?
11    A.   I don't remember.
12    Q.   He then says he ordered you to respond to
13 Area 3 and check your email; do you remember that?
14    A.   I also don't remember.
15    Q.   Okay.  And then Cosner says he became involved in
16 a vehicle stop along 71st Street that resulted in an arrest
17 at 4:16.  And he says, Officer Ocejo -- I think I'm
18 pronouncing that right.
19         MR. ELKINS:  O-c-e-j-o, Tammy.
20 BY MR. ELKINS:
21    Q.   -- was one of the officers who responded as
22 backup.
23         Cosner says after the subject was transported, I
24 waited on scene with Officer Ocejo and he waited for a tow
25 truck.  I asked Officer Ocejo to check his email and see

COASTAL REPORTING, INC. (954) 523-5326

Page 200

1  if -- Ms. Salabarria.  He told me he did not have any emails
2  from her.  This was at approximately 520 hours.
3          Now, I know you weren't there for all of that, so
4  you certainly can't tell me what did or did not happen
5  there.  But have you spoken to Officer Ocejo about this
6  everything and what he may have told Cosner?
7     A.   No.
8     Q.   Okay.  So sitting here today, you do not know if
9  this interaction between Cosner and Officer Ocejo is true or
10 false?
11    A.   I don't know.  I do know that they did not provide
12 me with any witness statements, any witness testimony, any
13 recordings or any documentation to prove these allegations
14 specific what you're speaking on.  Anything that pertains to
15 that I was not presented with any information or statements.
16    Q.   I know -- I know you're talking about Chapter 112.
17 And we'll get to that.
18         But what I'm asking you is:  Sitting here today
19 you don't know if this instance with Officer Ocejo and
20 Cosner, if it's true or false?  You didn't speak to Officer
21 Ocejo, correct?
22    A.   I did not speak to Officer Ocejo.  What I'm
23 telling you is that I did not receive anything pertaining to
24 any witness statements --
25    Q.   I know.

COASTAL REPORTING, INC. (954) 523-5326

Page 201

1     A.   -- that he's stating here.  That's what I'm
2  talking about.
3     Q.   I understand that.  But that's not my question.
4  And you've made that abundantly clear.
5     A.   Okay.
6     Q.   I'll ask the question one more time:  Sitting here
7  today, you did not speak with Officer Ocejo before filing
8  your lawsuit or during the pendency of this lawsuit to ask
9  him if this interaction referred to in this document
10 occurred with him and Cosner.  True or false?
11    A.   My answer to that is that as any other
12 investigation, I was not afforded the opportunity to speak
13 with Officer Ocejo, how it's supposed be procedurally.
14 Therefore, the City did not give me the opportunity to speak
15 to Officer Ocejo or to read any of his -- or any witness
16 statements.
17    Q.   Well, my question didn't ask you that.  My
18 question specifically asked:  After filing your lawsuit or
19 during the pendency of this lawsuit, have you spoken to
20 Officer Ocejo?
21    A.   I believe I answered that question with my
22 previous answer.
23    Q.   You didn't, actually.  You said that during the
24 investigation, you weren't provided witness statements.
25 That was before your lawsuit.  So I'm going to ask it again.

COASTAL REPORTING, INC. (954) 523-5326

Page 202

```
 1          During the pendency of this lawsuit, and right
 2   when you filed it, have you spoken to Officer Ocejo?
 3      A.   I have not spoken to Officer Ocejo.
 4      Q.   Okay.  Okay.  That's all I wanted to know.  Then
 5   it says, at 543 hours, I, Cosner, received an unsolicited
 6   text message from Sergeant Salabarria advising me that she
 7   had emailed the squad stats and detail assignment.  Is that
 8   true or false?
 9      A.   I don't remember at this time.
10      Q.   Then it says she claimed that she had told
11   officers via landline and email of their detailed
12   assignments.  Is that true or false?
13      A.   Can you point to that, what you're referring to?
14      Q.   Yep, right here.  She claimed that she had told
15   officers via landline and email of their detail assignments.
16   Is that true or false?
17      A.   So what I do remember doing is at the beginning of
18   my shift, I spoke to Steven Serrano and I let him know to
19   make sure that all officers, including myself complete the
20   details for the north if there's any.  Because at the
21   beginning of my shift, I was never given any directives by
22   any lieutenants.
23      Q.   Okay.  And it says the email that she sent me was
24   sent at 536 hours.  Is that true or false?
25      A.   I don't have a copy of that email, so I don't
```

Page 203

```
 1   recall.
 2      Q.   Okay.  And you said you spoke with Serrano.
 3   You've listed him as a witness in this case, correct?
 4      A.   Yes.
 5      Q.   And when's the last time you spoke with Serrano
 6   about this case?
 7      A.   That same night when I gave him the details.
 8      Q.   So the last time you've spoken to Serrano was
 9   the -- this evening.  You haven't talked to him about your
10   lawsuit?
11      A.   That is correct.
12      Q.   You haven't spoken to him about listing him as a
13   witness?
14      A.   No.
15      Q.   And has your lawyer or anybody obtained any
16   written statements from him?
17           MR. BARROUKH:  Objection.
18           MR. ELKINS:  What's the objection?
19           MR. BARROUKH:  Asking --
20           MR. ELKINS:  If you've obtained written statements
21           from a witness, I've asked for them.  And he's not your
22           client.  There's no privilege.
23           MR. BARROUKH:  Everything -- everything that he's
24           given us we've provided.
25           MR. ELKINS:  Okay.  Then she can answer the
```

Page 204

```
 1   question.
 2           MR. BARROUKH:  Okay.
 3   BY MR. ELKINS:
 4      Q.   Is there a written statement from Serrano; yes or
 5   no?
 6           MR. ELKINS:  I'm asking your client.  He's not
 7           your client.  If you've talked to him, I'm allowed to
 8           know about that.
 9   BY MR. ELKINS:
10      Q.   It's a simple question.  Has anybody obtained a
11   written statement from Serrano?
12      A.   Are you asking him that question or asking me?
13           MR. BARROUKH:  He's asking you.  You can answer.
14           THE WITNESS:  Okay.  Can you -- can you ask me the
15           question again?
16   BY MR. ELKINS:
17      Q.   Have you or any of your agents, your lawyers,
18   anybody obtained a written statement from Mr. Serrano?
19      A.   You would have to ask my lawyer about that.
20      Q.   You can't refer to your lawyer.  You would know if
21   there's a written statement.  It's a yes or no question.  Is
22   there a written statement from Serrano or not?
23      A.   I don't know.
24           MR. BARROUKH:  Objection.  Form.  She's telling
25           you she doesn't know.
```

Page 205

```
 1   BY MR. ELKINS:
 2      Q.   Well, did you review the documents produced in
 3   this case, Ms. Salabarria?
 4      A.   I have reviewed documents.
 5      Q.   Did you produce a written statement from
 6   Mr. Serrano?
 7           MR. BARROUKH:  Objection.  Form.
 8   BY MR. ELKINS:
 9      Q.   You can answer.
10      A.   Can you rephrase your question?
11      Q.   Yeah.  In the documents that you've produced in
12   this case, are you aware of whether or not a written
13   statement from Serrano was produced?
14      A.   I don't know --
15           MR. BARROUKH:  Objection.  Form.
16           THE WITNESS:  I'm not --
17   BY MR. ELKINS:
18      Q.   You don't know is that your answer?
19      A.   I don't know.  I'm not aware.  I don't know.
20      Q.   Okay.  And you don't know sitting here today if
21   anyone's obtained a written statement from him?
22           MR. BARROUKH:  Objection.  Form.
23   BY MR. ELKINS:
24      Q.   You can answer.
25      A.   I don't know.
```

Page 206

1    MR. ELKINS:  And Danny, you're telling me if you
2  have a written statement from him, you would have
3  produced it?
4    MR. BARROUKH:  Yes, that's what I'm telling you.
5    MR. ELKINS:  So you're saying there's no written
6  statement then?  Because none has been produced.
7    MR. BARROUKH:  I've told you if I had a written
8  statement from him, I would have produced it.
9    MR. ELKINS:  Okay.  And I'm telling you, none has
10  been produced.  So can you affirmatively tell me if one
11  exists or not?  I mean, are we hiding the ball here on
12  the written statement you obtained from a witness?
13    MR. BARROUKH:  To my knowledge, at this time,
14  there is no statement from Serrano.
15    MR. ELKINS:  Okay.
16  BY MR. ELKINS:
17    Q.  And Ms. Salabarria, I think you told me this
18  already, but you told me you haven't spoken to him since
19  this evening -- the evening of these allegations when you
20  told him to, you know, provide the duty assignments?
21    A.  I remember speaking to him on that day.  And I
22  don't remember if I spoke to him after.  But I do know that
23  I spoke to him that day.
24    Q.  Do you know if he knows that you've listed him as
25  a witness in this case?

Page 207

1    MR. BARROUKH:  Objection.  Form.
2    THE WITNESS:  I don't know.
3    MR. ELKINS:  I'm asking her if she knows what he
4  knows.  She can answer that.
5    THE WITNESS:  What was your question?
6  BY MR. ELKINS:
7    Q.  Do you know if Serrano knows that you've listed
8  him as a witness in this case?
9    A.  I don't know.
10    MR. BARROUKH:  Form.
11  BY MR. ELKINS:
12    Q.  Okay.  It says -- going back to the document here,
13  it says -- we're talking about the email you sent -- or
14  Cosner is talking about the email you sent at 536 hours.  It
15  says it included the squad stats and detail assignments.  Do
16  you remember if that email included that or not?
17    A.  Can you point to it one more time, please?  I want
18  to make sure what you're referring to.
19    Q.  This is what we were talking about earlier.  The
20  email that she sent me was sent at 536 hours.  And then, it
21  says, "it," referring to the email, included the squad stats
22  and detail assignments.
23    A.  What was your question?
24    Q.  Do you know if the email included the squad stats
25  and detail assignments?  Is that a true or false allegation

Page 208

1  in this document?
2    A.  What's the allegation?
3    Q.  Cosner wrote in referring to the email, it says,
4  it included the squad stats and detail assignments.  I'm
5  just asking you if that's true or false?
6    A.  I don't remember at this point.  I -- I do know
7  that at some point, I sent an email with all the squad stats
8  as you're supposed to do.  But I don't remember specifically
9  what you're referring to or what he's referring to.
10    Q.  Okay.  Then it says, I, Cosner, called Officer
11  Hansel Romero and asked him if he had received any emails,
12  texts or phone calls from Sergeant Salabarria advising him
13  of detail assignments.  He said he did not and that she had
14  only asked for stats in an email that was sent at 521 hours.
15  That email was forwarded to me by Officer Ocejo.
16    Have you spoken with Officer Hansel Romero since
17  you filed this lawsuit?
18    A.  Not that I recall.
19    Q.  And then it says I began calling all the officers
20  assigned to Area 3 and inquired the same of each of them.
21    Do you know if Cosner did or did not do that?
22    A.  I don't know.
23    Q.  Every one of the officers advised that they had
24  not received a call or text.
25    Do you know if that's a true or false statement?

Page 209

1    A.  I don't know.  Again, I was never provided with an
2  investigation or --
3    Q.  I understand.
4    A.  -- or anything -- anything to support his
5  allegations.
6    Q.  Understood.
7    Officer Romero then forwarded an email that he
8  received from Sergeant Salabarria at 542 hours.
9    Do you know if that's true or false?
10    A.  I can't see where you're pointing.  Can you --
11    Q.  Right here.  Officer Romero then forwarded an
12  email that he received from Sergeant Salabarria at 542
13  hours.
14    Do you know if that's true or false?
15    A.  I don't know.  I don't have any -- anything to
16  refer to --
17    Q.  Okay.
18    A.  -- at this time.
19    Q.  The email had been sent to each of the Area 3
20  officers.  Do you know if that's true or false?
21    A.  What was the question?
22    Q.  Do you know if when Cosner writes the email had
23  been sent to each of the Area 3 officers, do you know if
24  that's true or false?
25    A.  I don't know.  Again, I don't -- I wasn't provided

Page 210

1   with any -- any documentation to support his allegations.
2       Q.   Understood.
3            It was the detail assignments and began with a
4   highlighted line saying squad -- quote, "squad per our
5   conversation, please note the below details for our shift,"
6   end quote.
7            Do you know if an email exists that says that?  Is
8   that true or false?
9       A.   If you have something that I can refer to.  But
10  I -- at this moment, I don't-- I don't know.
11      Q.   Well, you're the one that's alleged everything in
12  here is false, so that's why we're going through it sentence
13  by sentence.  So you obviously know what is or is not false.
14  Or at least you've made that claim in your lawsuit.  So
15  that's why we're walking through this sentence by sentence.
16           So Cosner writes, I found this very concerning
17  because it was now the second time she had claimed to have
18  had a conversation with the officers about their
19  assignments, when all six of them claim that had never
20  happened and they did not report to any assigned details
21  during the shift.
22           Do you know if the officers had told Cosner that
23  that never happened and they did not report to any assigned
24  details during the shift; do you know if that's true or
25  false?

Page 211

1       A.   I don't know.  Like I said, I wasn't provided with
2   any testimony or any -- anything to support what he's
3   alleging that they said.
4       Q.   Right.  And since the filing of your lawsuit, did
5   you do any investigation on your own to determine if what
6   Cosner said these officers told him was true or false?
7            MR. BARROUKH:  Objection.  Form.
8   BY MR. ELKINS:
9       Q.   You can answer.
10      A.   I know that my counsel has.  So you can ask them.
11      Q.   Your counsel's done an investigation into these
12  officers.  I don't understand what that means.
13      A.   I don't understand your question.  Can you
14  rephrase it, please?
15      Q.   It's a very simple question.
16           Since you filed this lawsuit alleging that all
17  these allegations are false, have you done any investigation
18  with these officers, spoken to them, asked them if what they
19  told Cosner was true or false; did you do that?
20      A.   I don't know.  I know that if I would have been
21  given the opportunity to do so, like they normally do and
22  procedurally, I would have been -- I would have had an
23  opportunity to do so.
24      Q.   I'm not asking you about what happened when you --
25  when you were terminated.  My question is about since you

Page 212

1   filed your lawsuit.  I know you want to just keep going back
2   to that moment.  But that's -- that's not how this works.
3            You filed a federal lawsuit alleging everything in
4   here is false.  I want to know either right before or after
5   you filed that lawsuit, did you talk to any of these six
6   officers that Cosner is referring to.  I believe their names
7   are Baumer, Ocejo, Serrano, Garrido, Romero, Albaladejo.
8            MR. ELKINS:  I'll spell that, Tammy.
9   A-l-b-a-l-a-d-e-j-o.
10  BY MR. ELKINS:
11      Q.   Did you speak to any of them to flesh out, find
12  out, if what Cosner said in here is true?  You personally,
13  after or right before you filed your lawsuit.  That's all I
14  want to know.  If the answer is no, that's fine.
15      A.   That I personally speak to them?  No.
16      Q.   You.  Did anybody on your behalf speak to them?
17      A.   I don't know.
18      Q.   Okay.  Did -- did your lawyer speak to them?
19      A.   I don't know.
20      Q.   Okay.  Did any other agent of yours speak to them?
21      A.   I don't know.
22      Q.   Okay.  Did you or anyone on your behalf obtain any
23  written statements from any of these six officers?
24      A.   I don't know.
25      Q.   Okay.  Cosner puts in here that the AVL Detail

Page 213

1   Report shows that your vehicle had been parked at the
2   station from 2200 hours -- that's 10:00 -- on 12/27 until
3   4:23 in the morning on 12/28.
4            You have produced that AVL report in your
5   discovery.  You've seen the AVL report.  Is the AVL
6   report -- is that true what the AVL report says, that your
7   vehicle was parked from 2200 till 10:00 P.M. on 12/27 until
8   4:23 in the morning on -- on 12/28?
9       A.   I don't know.
10      Q.   Do you have any reason to believe that the AVL
11  report was doctored in any way?
12      A.   I don't know.
13      Q.   Okay.
14      A.   Again, if this would have been provided to me in
15  realtime, I would have been able to answer that question,
16  but I don't know.
17      Q.   But sitting here today after you filed your
18  lawsuit in federal court claiming it's all false, you don't
19  know?
20      A.   I don't know.
21           MR. BARROUKH:  Objection to form.
22           MR. ELKINS:  Okay.  I just need to mark this.
23  Give me one second.
24  BY MR. ELKINS:
25      Q.   I'm going to show you what I'm going to mark as

Page 214

1  Exhibit 10.  One second.  Okay.
2           (Deposition Exhibit Number 10 marked for
3  identification.)
4  BY MR. ELKINS:
5       Q.   This is Exhibit 10.  This is the letter from
6  former, at the time Chief Clements -- now former Chief
7  Clements to you implementing your letter of resignation.
8  You've seen this document before, correct?
9       A.   **Yes.**
10      Q.   Okay.  And on January 19th, you were brought into
11 the Chief's office for a meeting to discuss Cosner's
12 allegations; is that correct?
13      A.   **What was your question again?**
14      Q.   On January 19th, 2021 there was a meeting that you
15 were present at and that meeting was to discuss the
16 allegations from Lieutenant Cosner, correct?
17      A.   **That is not correct.  I was sent an email**
18 **invitation to attend an unknown meeting that I had no idea**
19 **what the meeting was about.**
20      Q.   Okay.  And this document says that present at that
21 meeting was Wayne Jones, Paul Ozaeta, who at the time was
22 the FOP President; Arley Flaherty, who at the time was the
23 FOB First Vice President; Reggie Lester, who at the time was
24 the FOP Second Vice President, Delvin Brown, the FOB
25 Grievance Chair, Cosner and A.J. Prieto.

Page 215

1       MR. ELKINS:  Tammy, do you need any of those
2  spellings?
3       THE REPORTER:  (Nodding.)
4  BY MR. ELKINS:
5       Q.   Were those people -- these people that are listed
6  here, were they present at this meeting?
7       A.   **From my recollection, I believe so.**
8       Q.   Okay.  Now I understand that you are taking the
9  position that this meeting was an improper interrogation
10 under the Police Officer Bill of Rights; is that true?
11      A.   **Yes.**
12      Q.   So do you know under Chapter 112 what the remedy
13 is if a municipality or an investigator violates 112?  Do
14 you know what the consequences of that are?
15      A.   **I don't know off the top of my head.**
16      Q.   Okay.  And did anybody, any one of Paul Ozaeta,
17 the FOP president; Arley Flaherty, the FOP First Vice
18 President; Reggie Lester, the FOP Second Vice President, or
19 Delvin Brown, the FOP Grievance Chairman, did any of them
20 file anything on your behalf taking advantage of the
21 administrative remedies in Chapter 112 in the Police Officer
22 Bill of Rights?  Did they file anything alleging a
23 violation?
24      A.   **I don't know.  I do know that the FOP was already**
25 **there and was summoned by the Chief of Police without my**

Page 216

1  **knowledge.**
2       Q.   Okay.
3       A.   **So they were already there when I was told to come**
4  **into this unknown meeting, unknown nature, and the FOP was**
5  **already there conjuring with the Chief behind closed doors.**
6  **And not once did they speak to me to tell me what this**
7  **meeting was about or what was the nature of this meeting.**
8       Q.   Well, what is the significance of the FOP being at
9  the meeting before you arrived in your mind?
10      A.   **They were summoned by the Chief of Police.  And**
11 **the FOP is supposed to represent me.  And they were already**
12 **there summoned by the Chief of Police, not the Member.**
13      Q.   Okay.  And -- and why is that a problem for you?
14      A.   **They were summoned by the Chief of Police.  That's**
15 **the problem.**
16      Q.   Why is that -- I'm asking you why that's a
17 problem?
18      A.   **Because the FOP represents the Members, not the**
19 **Police Chief.**
20      Q.   How is -- how is it -- how is the fact that the
21 Chief wanted the FOP to be at a meeting where he's going to
22 have -- he's going to have with one of his Members a
23 problem?
24      A.   **At this time, I don't know.**
25      Q.   You would agree with me, though, it would be more

Page 217

1  of a problem if the Chief met with you without the FOP
2  there; isn't that true?
3       A.   **Rephrase that question.**
4       Q.   It would be more of a problem if the Chief met
5  with you or tried to meet with you without a representative
6  from your union; that would be a problem, wouldn't it?
7       A.   **Those were not my representatives of choice.  And**
8  **I was denied my representation of choice.  And that's the**
9  **problem.**
10      Q.   Who denied you representation of choice?
11      A.   **The Chief of Police, Richard Clements.**
12      Q.   Okay.  And did any one of Paul Ozaeta, the FOP
13 President; Arley Flaherty, the FOP First Vice President;
14 Reggie Lester, the FOP Second Vice President, or Delvin
15 Brown, FOP Grievance Chair, did any one of them at any point
16 in this meeting stop the meeting and say, no, you can't
17 continue, Chief, we're going to get her someone else to
18 represent her?  Did that happen?
19      A.   **Reggie Lester told the Chief of Police that I was**
20 **requesting representation of my choice.  And the Chief of**
21 **Police stated that that was going to be denied and that I**
22 **would be terminated if I didn't continue with this meeting.**
23      Q.   And you -- have you spoken to Reggie Lester about
24 that since this meeting?
25      A.   **Before I was terminated, yes, I did speak to him.**

Page 218

1   But after I was terminated, no.

2       Q.  And you understand, though, that your Last Chance

3   Agreement converted you to an employee at-will.  I think we

4   talked about that earlier, right?

5       **A.  So if I was at-will, why was the FOP there?**

6       Q.  This is my opportunity to ask you questions, so

7   you have to answer my question.  You understand that your

8   Last Chance Agreement converted you to an employee at-will,

9   correct?

10      **A.  I understand that the FOP -- I'm sorry.  So I was**

11  **not at-will.  I was under the Officer Bill of Rights, which**

12  **is statutory and it is afforded to all sworn police**

13  **officers.  So no, I did not understand or knew that I was**

14  **at-will.**

15      Q.  So you think that the Police Officer Bill of

16  Rights guarantees you employment; is that what you're

17  telling me?

18      **A.  I understand that the Officer Bill of Rights**

19  **guarantees that I'm not at-will.**

20      Q.  Okay.  That's interesting.  Okay.  Tell me -- tell

21  me what happened in this meeting, the January 19th, 2021

22  meeting; what happened?

23      **A.  Is there a specific question that you have?**

24      Q.  Yeah.  What happened in this meeting?  What do you

25  remember happening?  That's the specific question.

Page 219

1       **A.  That's too much of a broad question.  So I -- I**

2   **don't know.  I can't give you an answer to that.**

3       Q.  You don't get to not answer.  It's not a broad

4   question.  It's very simple.  There was a meeting on

5   January 19th, 2021.  I am asking you very specifically what

6   do you remember that happened in the meeting?  If you say

7   you don't remember, that's fine, but you don't get to tell

8   me that that's too broad.  What happened?  It's a very

9   specific question, actually.  What happened in this meeting?

10          MR. BARROUKH:  You can answer him, Jessica.

11          THE WITNESS:  Okay.  So I remember that I was

12      invited to this unknown meeting, unknown in nature.

13      When I got there, my accuser, Steven Cosner, was there,

14      along with the Internal Affairs Commander, so

15      immediately that raised a red flag to me because it --

16      it seemed to be discipline in nature.

17          And the fact that the FOP was already there

18      summoned by the Chief of Police was also concerning to

19      me.  And it was also concerning to me that I was not

20      afforded my representation of my choice.  I also asked

21      for Arley Flaherty to be removed from this meeting, as

22      I did not want her to be a part of this meeting.  That

23      was also denied.

24          And I do remember that this meeting was not taped,

25      was not recorded.  And I wasn't given any documentation

Page 220

1       as far as witness statements, nor was I given a copy of

2       any supplementation to support these allegations.  And

3       that's as much as I remember at this moment.

4   BY MR. ELKINS:

5       Q.  Okay.  Do you remember during the meeting being

6   given a copy of the Allegation of Employee Misconduct?

7       **A.  I don't remember.**

8       Q.  Do you recall the meeting --

9       **A.  I don't --**

10      Q.  Okay.  If you don't remember, you don't remember.

11          Do you remember informing the Chief that despite

12  being assigned to the North District, you didn't report to

13  the North District?

14      **A.  I don't remember.  And I don't -- I don't remember**

15  **even the questions that he asked, that the Chief of Police**

16  **asked me, as they weren't recorded.  And I don't -- I don't**

17  **remember what questions he asked me.**

18      Q.  Okay.  So I presume then if I was to walk through

19  each of the allegations in here, you're going to tell me

20  that you don't remember because the meeting wasn't recorded?

21      **A.  That is correct.  I don't remember.**

22      Q.  Do you remember telling the City that you were

23  working on Officer Stella's evaluation while you were in

24  your police vehicle at the station on December 27th through

25  to the morning of December 28th; do you remember that?

Page 221

1       **A.  I don't remember that.  If I can be provided a**

2   **copy of what I said, maybe it could recollect my memory.**

3       Q.  Understood.  Understood.

4           And -- and the City implemented your Letter of

5   Resignation on January 25th, which was six days after the

6   meeting, correct?

7       **A.  If that's what it says there, then that's correct.**

8       Q.  Well, do you recall that happening?

9       **A.  I just know that I was brought into January 25th,**

10  **another meeting, and I was presented this document.**

11      Q.  And in this document, the City implements your

12  Letter of Resignation, correct?

13      **A.  That is correct.**

14      Q.  So connect for me the 2020 EEOC charge that was

15  June or July of 2020, which you say in your 2021 charge is

16  the protected activity, connect that to me with your

17  January 2021 termination.

18          MR. BARROUKH:  Objection.  Form.

19  BY MR. ELKINS:

20      Q.  Okay.  You can answer.  I'll ask the question a

21  different way.

22          How are you connecting your 20 -- your filing of

23  your 2020 EEOC charge, which you say in your 2021 charge was

24  your protected activity, and we've talked about at length,

25  how are you connecting that to your termination?

Page 222

1     **A.**  So again --

2        MR. BARROUKH:  Objection.  Form.

3  BY MR. ELKINS:

4     Q.  You can answer.

5     **A.**  **Okay.  So I know that I filed a EEOC charge.  And**

6  **then, I was retaliated against for filing that EEOC charge.**

7  **And then, I was retaliated against for filing that EEOC --**

8  **EEOC charge.  And then, I suffered an adverse employment**

9  **action by being terminated for filing that EEOC charge.**

10     Q.  Well, what was the retaliation for filing the EEOC

11  charge?  The termination is the retaliation, correct?

12     **A.**  **Yes.  I was -- I was retaliated against by the**

13  **City --**

14     Q.  Right.

15     **A.**  **-- by being falsely accused of these allegations**

16  **that led to this adverse employment action.  And I was**

17  **terminated.**

18     Q.  I understand that that is your legal claim.

19        What I'm asking you is:  How or what evidence do

20  you have that connects what happened in December of 2020

21  with Cosner and these allegations to the filing of the 2020

22  EEOC charge in June or July of 2020?  Like, what facts do

23  you have that connect for you the City did this because I

24  filed that charge?

25        MR. BARROUKH:  Objection.  Form.

Page 223

1  BY MR. ELKINS:

2     Q.  You can answer.

3     **A.**  **I -- I don't understand your question.  I -- all I**

4  **know is that the way I answered it, that's my answer.  And**

5  **that's as good of an answer that I have right now.  I'm**

6  **sorry.**

7     Q.  No problem.  That's fine.

8        And at no point -- I think we talked about this

9  before.  I just want to clarify.  At no point did your prior

10  attorneys, Michael Pancier, Gene Gibbons, or Mr. Cunill --

11        MR. ELKINS:  C-u-n-i-l-l, Tammy.

12  BY MR. ELKINS:

13     Q.  -- did any of those lawyers file anything under

14  the administrative procedure in Chapter 112 on your behalf,

15  correct?

16     **A.**  **I -- I don't know.**

17     Q.  Okay.  And in the -- just going back -- and I

18  don't mean to jump around, it's not a tactic.  I just have

19  some other things I want to get to.

20        You remember the November 2nd, 2020 meeting where

21  you were represented by both Mr. Pancier, who was your

22  privately-hired EEOC attorney, and Mr. Gibbons, who was FOP

23  counsel.  And I believe Kevin Milano was present as well.

24  You remember that meeting, correct?

25     **A.**  **Yes.**

Page 224

1     Q.  And I believe you've alleged that that meeting

2  also was a violation of Chapter 112, correct?

3     **A.**  **Yes.**

4     Q.  Okay.  Were you interrogated in that meeting?

5     **A.**  **Yes.**

6     Q.  Okay.  Who interrogated you and what did they say,

7  if you remember?

8     **A.**  **I don't remember.**

9     Q.  Okay.  So if your lawyers, either Mr. Pancier or

10  Mr. Gibbons, if they testify that you were not interrogated

11  in that meeting, are they lying?

12        MR. BARROUKH:  Objection.  Form.

13  BY MR. ELKINS:

14     Q.  You can answer.

15     **A.**  **I don't -- I don't know.**

16     Q.  Okay.  And you under -- and you are aware that

17  that meeting was -- was set up by your counsel with the City

18  as a confidential settlement meeting, correct?

19        MR. BARROUKH:  Objection.  Form.

20  BY MR. ELKINS:

21     Q.  You can answer.

22     **A.**  **I remember that this meeting was to discuss my**

23  **EEOC.**

24        MR. ELKINS:  Give me one second.  So I'm going to

25  show you what I'm going to mark as Exhibit 10 -- no,

Page 225

1  I'm sorry -- Exhibit 11.  I'm sorry for the delay.  I

2  just label the documents as I go.

3        *(Deposition Exhibit Number 11 marked for*

4  *identification.)*

5  BY MR. ELKINS:

6     Q.  Okay.  All right.  I'm showing you a copy of what

7  I've marked as Exhibit 11.  Do you recognize this document?

8     **A.**  **Yes.**

9     Q.  What is this document?

10     **A.**  **Declaration of Nicholas Guasto.**

11     Q.  Have you seen it before?

12     **A.**  **Yes.**

13     Q.  When was the last time you saw it?

14     **A.**  **I don't remember.**

15     Q.  Were you involved in the preparation of this

16  Declaration?

17     **A.**  **No.**

18     Q.  Who prepared it?

19     **A.**  **I don't remember at this time.**

20        MR. BARROUKH:  Objection to form.

21  BY MR. ELKINS:

22     Q.  You can answer.

23     **A.**  **Yeah, I -- I don't remember.  I wasn't involved in**

24  **it.**

25     Q.  Was this Declaration -- I believe it was signed

Page 226

1  on -- hold on -- November 5th, 2021. Were you still married
2  to Mr. Guasto then?
3      A.   I don't remember the exact date we separated.
4      Q.   I didn't ask you when you separated. I asked if
5  you were still married?
6      A.   Still married. I think so. I don't -- I don't
7  remember.
8      Q.   Well, when was your divorce finalized?
9      A.   I -- I don't remember that. I would have to look
10 at -- I would have to look at the documents to refer to
11 which date it was finalized.
12     Q.   Had you filed for divorce by November of 2021?
13 You're telling me you don't remember when you filed for
14 divorce, even approximately?
15     A.   I didn't file for divorce, so I don't know.
16     Q.   You don't remember when Nick filed for divorce?
17     A.   I don't remember.
18     Q.   Okay. And you don't remember who prepared this
19 Declaration?
20          MR. BARROUKH: Objection.
21          THE WITNESS: No, I wasn't --
22          MR. BARROUKH: Form.
23 BY MR. ELKINS:
24     Q.   You can -- you don't remember, Ms. Salabarria?
25     A.   I wasn't involved in the preparation of this, so I

Page 227

1  don't know.
2      Q.   Who was?
3          MR. BARROUKH: Objection. She already -- she
4  already answered that she didn't know.
5          MR. ELKINS: Okay. I can ask her multiple times.
6  You can object to form. Your objection's -- your asked
7  and answered objection is preserved. Don't coach the
8  witness.
9  BY MR. ELKINS:
10     Q.   Answer, please.
11     A.   You would have to ask Nicholas Guasto. I don't
12 know.
13     Q.   Okay. This was submitted to the EEOC I believe as
14 part of your response to the City's position statement to
15 your 2021 EEOC charge; is that correct?
16     A.   Say that again.
17     Q.   This Declaration was submitted to the EEOC,
18 correct?
19     A.   Okay. Yes.
20     Q.   Is that true?
21     A.   Yeah, I believe so.
22     Q.   Okay. And that was done in response to the City's
23 position statement to your 2021 EEOC charge, correct?
24     A.   Yes.
25     Q.   Okay. Did you submit anything else to the EEOC

Page 228

1  besides this Declaration in response to the City's position
2  statement?
3      A.   I don't know.
4      Q.   You don't remember if you submitted a rebuttal
5  statement or if your lawyer submitted a rebuttal statement?
6      A.   I don't know. You would have to ask my lawyer.
7      Q.   And you understand that we asked for everything
8  that you submitted to the EEOC; are you aware of that?
9      A.   I -- I don't know.
10     Q.   You didn't review the request for production that
11 we had sent you previous?
12     A.   I reviewed documentations, but I don't know what
13 you're referring to. I -- I don't know.
14     Q.   You don't know what I'm referring to when I ask
15 you if you've provided us everything that you submitted to
16 the EEOC? What about that do you not understand?
17     A.   I don't understand because I'm not a lawyer, so I
18 don't know what my counsel did.
19     Q.   Okay. So sitting here today, you can't tell me if
20 you submitted anything else to the EEOC besides this
21 Declaration from Mr. Guasto?
22     A.   I don't know.
23          MR. ELKINS: All right. Let's -- Dan, do you
24 prefer Daniel or Dan, by the way?
25          MR. BARROUKH: We can do Danny, actually.

Page 229

1          MR. ELKINS: Danny. Okay. Danny, let's take 15
2  so I can go through some things. I might be done. If
3  not, I'm probably very, very, very close to being done.
4  I just want to take a little bit of time to
5  double-check so we don't have to keep breaking, if
6  that's okay.
7          MR. BARROUKH: Absolutely. Take your time.
8  Fifteen minutes or do you want 20?
9          MR. ELKINS: No, let's just come back at 11:00.
10 Let's come back at 11:40. No, I'm sorry. 11 -- 11:30.
11 11:30.
12          MR. BARROUKH: All right. That works for me.
13          MR. ELKINS: All right. Thank you.
14          MR. BARROUKH: Thank you. Yeah, no problem.
15          THE REPORTER: Is this off the record?
16          THE VIDEOGRAPHER: I apologize. Going off the
17 video record. The time is 11:13. A.M.
18          MR. ELKINS: Thank you.
19          (Recess was taken.)
20          THE VIDEOGRAPHER: Okay. Stand by. Going back on
21 video record. The time is 11:30 A.M.
22 BY MR. ELKINS:
23     Q.   All right. I'm going to show you what I've marked
24 as Exhibit 12.
25          (Deposition Exhibit Number 12 marked for

1  identification.)
2  BY MR. ELKINS:
3      Q.  Have you ever seen this document before?
4      A.  At this moment, I don't -- I don't know.  I've
5  seen a lot of documents, so I don't know which one
6  specifically this one is.
7      Q.  Okay.  Well, I'll give you a minute to take a look
8  at it.  Just tell me when you want me to scroll if you need
9  me to.
10      A.  Okay.  Thank you.  Can you go down?  Okay.
11      Q.  Okay.  This is a letter from your prior counsel to
12  the EEOC, correct?
13      A.  That's what it looks like.
14      Q.  Well, is Michael Pancier your prior counsel?
15      A.  Yes.
16      Q.  Is he writing this letter to the EEOC?
17      A.  Again, that's what it looks like to me.
18      Q.  Okay.  So the answer is, yes, this is a letter
19  from your prior counsel to the EEOC?
20      A.  That is a prior letter, yes.
21      Q.  Okay.  And this was your counsel informing the
22  EEOC that the June or July 2020 EEOC charge, the charge that
23  you say is your protected activity, that charge was
24  resolved and the parties just need some additional time to
25  work out the settlement paperwork.  Is that essentially what

1  this letter says?
2      A.  Yes.
3      Q.  Okay.  And your counsel provided a copy of this
4  letter to you, didn't he?
5      A.  I believe so.
6      Q.  Okay.  Because it says at the bottom, CP, Charging
7  Party.
8          Charging Party is you, correct?
9      A.  Yes.
10      Q.  And this was a resolution that resulted in the
11  Settlement Agreement and the Last Chance Agreement that you
12  signed later in December, correct?
13      MR. BARROUKH:  Objection.  Form.
14  BY MR. ELKINS:
15      Q.  You can answer.
16      A.  I believe so.
17      Q.  I think he references in here that the settlement
18  between the parties which will be final when the parties
19  complete the settlement paperwork does not involve a
20  monetary payment to Charging Party.  Do you see that?
21      A.  And the Settlement Agreement you ultimately
22  signed, like, a week or two or a couple weeks after
23  December 2020, which had the Settlement Agreement involved
24  you paying the City, not the City paying you, correct?

1      A.  Where does it say that?
2      Q.  Right here.
3      A.  Okay.
4      Q.  Right?
5      A.  What was your question?
6      Q.  The Settlement Agreement that you ultimately
7  signed later in December involved you paying the City, not
8  the City paying you, correct?
9      A.  Yes.
10      Q.  And that's what he's referring to here, correct?
11      A.  That's what it looks like.
12      Q.  I'm showing you what I'm marking as Exhibit 13.
13          (Deposition Exhibit Number 13 marked for
14  identification.)
15  BY MR. ELKINS:
16      Q.  Have you seen this document before?
17      A.  Can you lower it?  Okay.  I don't remember if I've
18  seen it.  There was a lot of paperwork that I've seen, so I
19  can't tell you specifically I've seen this one before.
20      Q.  Okay.  Well, this says --
21      A.  It's possible.
22      Q.  Sure.  That's fair.
23          Your name doesn't show on here that you received
24  it.  This is from the U.S. Equal Employment Opportunity
25  Commission, correct?

1      A.  Yes.
2      Q.  Okay.  And this says, that this is to inform
3  you -- it's written to me -- that the charge cited above,
4  which is this 5D-2020-04794, which is your 2020 EEOC
5  charge, has been withdrawn at the request of the Charging
6  Party.  Do you see that?
7      A.  Okay.
8      Q.  You're the Charging Party, correct?
9      A.  Yes.
10      Q.  And this document is dated February 9th, 2021,
11  correct?
12      A.  Yes.
13      Q.  I'm going to show you what I'm going to mark as
14  Exhibit 14.
15          (Deposition Exhibit Number 14 marked for
16  identification.)
17  BY MR. ELKINS:
18      Q.  Okay.  This is a document from 2012.  I'm going to
19  ask you if you've seen it.  You may not remember, which is
20  fine.  It's your, it's your receipt of the Employee
21  Handbook.
22      A.  Okay.
23      Q.  Do you remember signing a bunch of documents when
24  you first became employed at the City?
25      A.  Yes.

Page 234

1      Q.    And is that your signature?
2      A.    Yes.
3      Q.    And it says here, "Employee Handbook Receipt." Do
4  you see that?
5      A.    Yes.
6      Q.    It says you're acknowledging you received a copy
7  of the City of Miami Beach Employee Guide?
8      A.    Yes.
9      Q.    And that you're responsible for reading it and
10 following the guidelines contained therein?
11     A.    Yes.
12     Q.    You understand that a violation of the guidelines
13 may result in disciplinary action up to and including
14 termination; do you see that?
15     A.    Yes.
16     Q.    Almost there.
17           MR. ELKINS:  I'm going to show you what I'm
18     marking as Exhibit 15.
19           (Deposition Exhibit Number 15 marked for
20     identification.)
21 BY MR. ELKINS:
22     Q.    Okay.  This is the Letter of Resignation prepared
23 on December 18th that was attached to your Settlement
24 Agreement and Last Chance Agreement.  Is that your
25 signature?

COASTAL REPORTING, INC. (954) 523-5326

Page 235

1      A.    Yes.
2      Q.    All right.  Just a few more questions and then I'm
3  done.
4           You're familiar with your former union's or any
5  union's duty of fair representation?
6      A.    No.  I have not -- I don't know exactly what
7  you're referring to.  Like, I -- I just don't understand
8  that.  So if you can rephrase it or --
9      Q.    No problem.  I'll withdraw it.
10           Sitting here today, have you filed a lawsuit
11 against the FOP?
12     A.    No.
13     Q.    Have you filed an Unfair Labor Practice charge
14 against them?
15     A.    No.
16     Q.    Have you filed anything against the FOP relating
17 to their conduct with you as it relates to your separation
18 from employment with the City of Miami Beach?
19     A.    No.
20           MR. BARROUKH:  Objection.  Form.
21 BY MR. ELKINS:
22     Q.    You can answer.
23     A.    No.
24     Q.    Okay.  And one final point: When we talked about
25 your prior employers the first day that you were deposed,

COASTAL REPORTING, INC. (954) 523-5326

Page 236

1  you referenced working security at Brickell City Centre.  To
2  date, I haven't received any documents from Brickell City
3  Centre.
4           So my question is:  What -- what's the name of the
5  company that you actually worked for?  Like, who is --
6  what's the name of that actual company?  I know you
7  worked --
8      A.    So.
9      Q.    -- at Brickell City Centre, but it was -- and I'll
10 tell you why I'm asking.  It's not a trick.  It was unclear
11 to me if you were part of, like, a company that was hired as
12 a third-party vendor to provide security at Brickell City
13 Centre or did you work directly for Brickell City Centre?  I
14 just don't think we ever got that clarified.  That's what
15 I'm trying to figure out.
16     A.    Okay.  So I was contracted by Brickell City
17 Centre.  I had to interview with them and make sure that the
18 property manager and whatnot agreed to have me as their
19 account manager, security manager.  And the security
20 officers are contracted by Allied Universal.
21     Q.    Okay.  But you didn't work for Allied or you did
22 work for Allied?
23     A.    I believe it was both.  So Brickell City Centre
24 and Allied Universal.
25     Q.    Do you know if Brickell City Centre had a contract

COASTAL REPORTING, INC. (954) 523-5326

Page 237

1  with Allied Universal for Allied to provide security?
2      A.    I believe so.  I don't know the exact contracts or
3  what they have in place.
4      Q.    When you got paid, what was on your paystub?
5      A.    I believe it was Universal.  I -- I don't have the
6  exact name.  Universal Corp. or something to that effect.
7      Q.    So it wasn't Brickell City Centre on your paystub?
8      A.    No.
9      Q.    And who was your -- go ahead.
10          MR. BARROUKH:  I was just going to say we provided
11     you with these documents recently actually, within the
12     past two weeks with her W-2s, paystubs, things of that
13     nature, which can speak to the employment record a lot
14     more accurately.
15          MR. ELKINS:  Well, is there records from Allied
16     Universal and Brickell City Centre?
17          MR. BARROUKH:  All of the W-2s that I received
18     I've given to you.  If it doesn't clarify, then I don't
19     believe there are any documents in existence which
20     could clarify further.
21          MR. ELKINS:  Hold on one second.  So I got the
22     Indeed reports, which I think David sent me.
23          MR. BARROUKH:  Yes.
24          MR. ELKINS:  And I did get the payroll stuff.  I'm
25     trying to go to your email where I think you sent that

COASTAL REPORTING, INC. (954) 523-5326

Page 238

1   over.
2       MR. BARROUKH: Yes. Would you like this to stay
3   on the record or do you want to go off the record?
4       MR. ELKINS: We -- we can go off the record. I
5   don't want to waste the time if you sent it. I just
6   don't remember it being there. It was 10 pages that
7   you sent me.
8       THE VIDEOGRAPHER: Counsel, do you want to go off
9   record?
10      MR. ELKINS: Yeah, we can go off record.
11      THE VIDEOGRAPHER: Stand by. Going off record.
12  The time is 11:42 A.M.
13      (Discussion was held off the record.)
14      THE VIDEOGRAPHER: Okay. Going back on video
15  record. The time is 11:43 A.M.
16  BY MR. ELKINS:
17      Q.  Okay. So just to clarify from earlier your --
18  when you worked at Brickell City Centre, you were -- the
19  company you worked for was Universal Protection Service,
20  LLC, correct?
21      A.  **I believe so. If that's what it says on there,**
22  **then that's who was providing the -- the funds for my**
23  **employment.**
24      Q.  Okay. And then, with respect to damages, it's my
25  understanding that you are only requesting backpay; is that

Page 239

1   correct? You're not -- you've waived your compensatory
2   damages, correct?
3       A.  **I'm not sure. You would have to ask my attorney.**
4       Q.  I can't ask your attorney. You're the plaintiff.
5   You have to answer that question.
6       A.  **I - I don't know. I don't -- I'm not familiar**
7   **with legal jargon, so I don't know.**
8       Q.  You're not familiar with the damages you're
9   requesting in your own lawsuit; is that your answer?
10      MR. BARROUKH: Objection. Form.
11      THE WITNESS: No.
12  BY MR. ELKINS:
13      Q.  You can answer.
14      A.  **I -- I don't know.**
15      Q.  Okay. Fair enough.
16      MR. ELKINS: I don't have anything further.
17  Read or waive?
18      MR. BARROUKH: Let's go off the record. We're
19  going to read.
20      MR. ELKINS: Tammy, I'm going to order.
21      THE VIDEOGRAPHER: Before going off video record,
22  counsel, will you be ordering the video?
23      MR. ELKINS: Not ordering the video. I'm ordering
24  the transcript. Tammy, I only need a mini. Don't --
25  don't send me the whole thing. And then the exhibits,

Page 240

1   I can drop them into the chat right now, if that will
2   work.
3       THE VIDEOGRAPHER: Counsel, Daniel?
4       MR. BARROUKH: Yeah, we don't need a video. We're
5   -- Ms. Court Reporter, we're going to read as well.
6       THE VIDEOGRAPHER: Okay. Understood. Stand by.
7   Going off video record. The time is 11:45 A.M.
8       THE REPORTER: Daniel, are you ordering a copy?
9       MR. BARROUKH: Yeah, is the mini the four pages on
10  one page?
11      THE REPORTER: Yes.
12      MR. BARROUKH: All right. We'll -- we'll do that
13  as well.
14      THE REPORTER: Do you want her entire deposition?
15  Because I'm not sure if you guys have --
16      MR. BARROUKH: We'll just do this deposition.
17      THE REPORTER: Okay.
18      MR. BARROUKH: I appreciate it.
19      (Deposition concluded at 11:45 A.M.)
20
21
22
23
24
25

Page 241

1           CERTIFICATE OF OATH
2   STATE OF FLORIDA
3   COUNTY OF BROWARD
4       I, TAMARA MASCI TANNEN, RPR, Notary Public, State of
5   Florida, certify that JESSICA SALABARRIA personally appeared
6   before me via Zoom on the 15th day of March 2024 and was
7   duly sworn.
8       Signed this 15th day of March 2024.
9
10
11      TAMARA MASCI TANNEN, RPR, FPR-C
        Notary Public
12      State of Florida
        My Commission #HH 93523
13      Expires March 7, 2025
14
15
16
17
18
19
20
21
22
23
24
25

Page 242

## REPORTER'S DEPOSITION CERTIFICATE

STATE OF FLORIDA )

COUNTY OF PALM BEACH )

I, TAMARA MASCI TANNEN, Registered Professional Reporter, certify that I was authorized to and did stenographically report the Continued Video Deposition of JESSICA SALABARRIA; that a review of the transcript was requested; and that the foregoing transcript, pages 178-240, is a true and complete record of my stenographic notes.

I FURTHER CERTIFY that I am not a relative, employee, attorney or counsel of any of the parties, nor am I a relative or employee of any of the parties' attorney or counsel connected with the action, nor am I financially interested in the action.

DATED this 27th day of March 2024.

_Tamara Masci Tannen_
TAMARA MASCI TANNEN, RPR, FPR-C

---

Page 243

# E R R A T A   S H E E T

DO NOT WRITE ON THE TRANSCRIPT - ENTER CHANGES

IN RE:          GUASTO V CITY OF MIAMI BEACH
CASE NO:        1:22-cv-21004-DPG
DATE:           MARCH 15, 2024
DEPONENT NAME:  JESSICA SALABARRIA

PAGE/LINE          CORRECTION                    REASON

_____

(Use other side if necessary)

Under penalties of perjury, I declare that I have read the foregoing document and that the facts stated are true.

_____                    _____
JESSICA SALABARRIA                              DATE

---

Page 244

DATE:  MARCH 27, 2024

JESSICA SALABARRIA
C/O DANIEL B. BARROUKH, ESQ.
DEREK SMITH LAW GROUP, PLLC
520 BRICKELL KEY DRIVE
SUITE O-301
MIAMI, FLORIDA  33131-2433
DANIELB@DEREKSMITHLAW.COM

IN RE:  GUASTO V CITY OF MIAMI BEACH
        Continued Video Deposition of Jessica Salabarria

        This letter is to advise you that the transcript taken in the above-referenced deposition has been transcribed.  Please contact our office at (954)523-5326 to make arrangements to read and sign or sign below to waive review of the transcript.

        It is suggested that the review of this transcript be completed within 30 days of your receipt of this letter as considered reasonable under Federal Rules*; however, there is no Florida Statute to this regard.

        The original of this transcript has been forwarded to the ordering party and your errata, once received, will be forwarded to all ordering parties for inclusion in the transcript.

Very truly yours,

_Tamara Masci Tannen_
Tamara Masci Tannen, RPR

Waiver:

I, _____, hereby waive the reading and signing

of my deposition transcript.

_____          _____
DEPONENT                              DATE

*Federal Civil Procedure Rule 30(e) Florida Civil Procedure Rule 1.310(e).

**BY MR. ELKINS: [34]**
182/10 190/8 199/5
199/20 204/3 204/16
205/1 205/8 205/17
205/23 206/16 207/6
207/11 211/8 212/10
215/4 220/4 221/19
222/3 223/1 223/12
224/13 224/20 225/21
226/23 227/9 229/22
230/2 231/14 232/15
234/21 235/21 238/16
239/12

**MR. BARROUKH: [48]**
181/7 181/22 183/20
184/2 190/4 203/17
203/19 203/23 204/2
204/13 204/24 205/7
205/15 205/22 206/4
206/7 206/13 207/1
207/10 211/7 213/21
219/10 221/18 222/2
222/25 224/12 224/19
225/20 226/20 226/22
227/3 228/25 229/7
229/12 229/14 231/13
235/20 237/10 237/17
237/23 238/2 239/10
239/18 240/4 240/9
240/12 240/16 240/18

**MR. ELKINS: [37]**
181/6 181/14 181/24
183/23 184/5 198/20
198/22 199/19 203/18
203/20 203/25 204/6
206/1 206/5 206/9
206/15 207/3 212/8
213/22 215/1 223/11
224/24 227/5 228/23
229/1 229/9 229/13
229/18 234/17 237/15
237/21 237/24 238/4
238/10 239/16 239/20
239/23

**THE REPORTER: [8]**
182/1 182/6 215/3
229/15 240/8 240/11
240/14 240/17

**THE**
**VIDEOGRAPHER: [15]**
181/3 181/8 181/15
198/19 198/21 198/25
199/3 229/16 229/20
238/8 238/11 238/14
239/21 240/3 240/6

**THE WITNESS: [10]**
184/8 190/6 198/24
204/14 205/16 207/2
207/5 219/11 226/21
239/11

**'**
**'13 [1]** 187/20
**'14 [2]** 187/13 187/20
**'15 [4]** 187/12 187/14
187/14 187/21

**0**
**04794 [1]** 233/4
**05 [7]** 195/24 195/24
195/25 196/10 196/15
197/4 199/7

**1**
**1.310 [1]** 244/25
**1/25/21 [1]** 180/9
**10 [5]** 214/1 214/2
214/5 224/25 238/6
**10:00 [2]** 213/2 213/7
**10:01 [2]** 178/14
181/10
**10:27 [1]** 199/1
**10:33 [1]** 199/4
**11 [4]** 225/1 225/3
225/7 229/10
**112 [6]** 200/16 215/12
215/13 215/21 223/14
224/2
**11:00 [1]** 229/9
**11:13 [1]** 229/17
**11:30 [3]** 229/10
229/11 229/21
**11:40 [1]** 229/10
**11:42 [1]** 238/12
**11:43 [1]** 238/15
**11:45 [3]** 178/14 240/7
240/19
**12 [2]** 229/24 229/25
**12/18/20 [1]** 180/16
**12/27 [2]** 213/2 213/7
**12/28 [2]** 213/3 213/8
**12/4/20 [1]** 180/11
**1212 [1]** 179/9
**122-CV-21004-DPG [1]**
181/16
**13 [2]** 232/12 232/13
**14 [2]** 233/14 233/15
**15 [5]** 178/13 229/1
234/18 234/19 243/4
**15th [3]** 181/10 241/6
241/8
**16TH [1]** 179/9
**178-240 [1]** 242/7
**178-244 [1]** 178/11
**18th [1]** 234/23
**19th [4]** 214/10 214/14
218/21 219/5
**1:22-cv-21004-DPG [1]**
243/3

**2**
**20 [5]** 180/11 180/16
187/17 221/22 229/8
**2012 [1]** 233/18
**2013 [1]** 187/18
**2014 [2]** 187/12 187/18
**2020 [19]** 185/6 185/7
185/8 185/24 186/22
187/4 187/5 187/18
188/25 221/14 221/15
221/23 222/20 222/21
222/22 223/20 230/22
231/24 233/4
**2021 [14]** 184/20
187/18 188/10 214/14
218/21 219/5 221/15

**0**
**04794 [1]** 233/4
**05 [7]** 195/24 195/24
195/25 196/10 196/15
197/4 199/7

**221/17 221/23 226/1**
**526/4 243/9** 51 SD
233/10
**2024 [7]** 178/13 181/11
241/6 241/8 242/12
243/4 244/1
**2025 [1]** 241/12
**21 [1]** 180/9
**2200 [3]** 191/5 213/2
213/7
**22nd [1]** 184/20
**2335 [1]** 179/4
**240 [1]** 242/7
**2433 [2]** 179/4 244/4
**244 [1]** 178/11
**25th [2]** 221/5 221/9
**2608 [1]** 179/10
**27 [4]** 186/17 213/2
213/7 244/1
**27th [2]** 220/24 242/12
**28 [3]** 186/17 213/3
213/8
**28th [1]** 220/25
**2nd [1]** 223/20
**2s [2]** 237/12 237/17

**3**
**30 [2]** 244/12 244/24
**301 [2]** 179/3 244/4
**33131-2433 [2]** 179/4
244/4
**33304 [1]** 179/9
**3:55 [4]** 192/6 192/12
192/15 192/17
**3:59 [1]** 193/14

**4**
**401-2608 [1]** 179/10
**4:11 [1]** 194/12
**4:16 [1]** 199/17
**4:23 [2]** 213/3 213/8

**5**
**510-2020-04794 [1]**
233/4
**520 [3]** 179/3 200/2
244/3
**521 [1]** 208/14
**523-5326 [1]** 244/9
**5326 [1]** 244/9
**536 [3]** 202/24 207/14
207/20
**542 [2]** 209/8 209/12
**543 [1]** 202/5
**5th [1]** 226/1

**6**
**688-2335 [1]** 179/4
**6:00 [1]** 191/22

**7**
**71st [1]** 199/16
**786 [1]** 179/4

**9**
**93523 [1]** 241/12
**954 [2]** 179/10 244/9
**9th [1]** 233/10

**A**
**A.J [1]** 214/25
**A.M [14]** 178/14 178/14
181/10 191/22 192/7
192/12 199/1 199/4
229/17 229/21 238/12
238/15 240/7 240/19
**abbreviation [3]**
196/17 196/18 196/19
**able [2]** 196/4 213/15
**about [34]** 182/2
182/21 183/21 183/22
184/15 184/24 185/18
188/16 188/16 190/12
194/17 198/22 200/5
200/16 201/2 203/6
203/9 203/12 204/8
204/19 207/13 207/14
207/19 210/18 211/24
211/25 214/19 216/7
217/23 218/4 221/24
223/8 228/16 235/24
**above [2]** 233/3 244/9
**above-referenced [1]**
244/9
**Absolutely [1]** 229/7
**abundantly [1]** 201/4
**account [1]** 236/19
**accurately [1]** 237/14
**accused [3]** 186/18
186/23 222/15
**accuser [1]** 219/13
**acknowledged [1]**
191/24
**acknowledging [1]**
234/6
**action [5]** 222/9 222/16
234/13 242/10 242/10
**activity [6]** 185/6
185/10 185/23 221/16
221/24 230/23
**actual [1]** 236/6
**actually [6]** 183/25
201/23 219/9 228/25
236/5 237/11
**additional [2]** 185/18
230/24
**adjusted [1]** 195/9
**administrative [2]**
215/21 223/14
**advantage [1]** 215/20
**adverse [2]** 222/8
222/16
**advise [2]** 194/12
244/8
**advised [3]** 194/8
198/22 208/23
**advising [3]** 193/13
202/6 208/12
**Affairs [1]** 219/14
**affirmatively [2]**
199/10 206/10
**afforded [3]** 201/12
218/12 219/20
**after [13]** 188/16
188/20 194/20 199/7
199/23 201/18 206/22
212/4 212/13 213/17

**218/1 221/5 231/23**
**afterwards [1]** 193/24
**again [18]** 193/21
194/5 194/19 194/22
195/8 195/15 196/24
198/3 198/4 201/25
204/15 209/1 209/25
213/14 214/13 222/1
227/16 230/17
**against [14]** 185/14
185/25 186/1 188/11
188/13 188/24 189/12
190/21 222/6 222/7
222/12 235/11 235/14
235/25
**agent [1]** 212/20
**agents [1]** 204/17
**ago [4]** 193/15 193/22
193/25 194/22
**agree [1]** 216/25
**agreed [2]** 179/13
236/18
**Agreement [9]** 218/3
218/8 231/11 231/11
231/22 231/24 232/6
234/24 234/24
**ahead [1]** 237/9
**Albaladejo [1]** 212/7
**all [29]** 182/11 187/18
188/11 190/4 190/19
190/25 195/5 197/15
198/1 200/3 202/4
202/19 208/7 208/19
210/19 211/16 212/13
213/18 218/12 223/3
225/6 228/23 229/12
229/13 229/23 235/2
235/17 240/12 244/15
**allegation [7]** 180/8
189/11 197/22 197/24
207/25 208/2 220/6
**allegations [27]** 188/10
188/24 190/20 190/20
190/23 191/2 194/25
195/3 197/11 197/12
197/14 197/15 197/16
197/25 198/10 198/12
200/13 206/19 209/5
210/1 211/17 214/12
214/16 220/2 220/19
222/15 222/21
**allege [1]** 194/24
**alleged [3]** 190/19
210/11 224/1
**alleging [4]** 211/3
211/16 212/3 215/22
**Allied [7]** 236/20
236/21 236/22 236/24
237/1 237/1 237/15
**allowed [2]** 183/2
204/7
**Almost [1]** 234/16
**along [2]** 199/16
219/14
**already [11]** 183/23
184/2 184/22 206/18
215/24 216/3 216/5
216/11 219/17 227/3
227/4

**A**

also [8] 179/13 192/3 199/14 219/18 219/19 219/20 219/23 224/2
am [4] 219/5 242/8 242/9 242/10
anger [1] 188/21
animosity [3] 188/8 188/8 188/21
another [2] 189/3 221/10
answer [33] 190/4 198/11 198/14 201/11 201/22 203/25 204/13 205/9 205/18 205/24 207/4 211/9 212/14 213/15 218/7 219/2 219/3 219/10 221/20 222/4 223/2 223/4 223/5 224/14 224/21 225/22 227/10 230/18 231/15 235/22 239/5 239/9 239/13
answered [6] 183/23 199/10 201/21 223/4 227/4 227/7
answers [1] 182/24
any [50] 189/21 191/8 191/12 198/5 200/1 200/12 200/12 200/12 200/13 200/15 200/24 201/11 201/15 201/15 202/20 202/21 202/22 203/15 204/17 208/11 209/15 210/1 210/1 210/20 210/23 211/2 211/2 211/5 211/17 212/5 212/11 212/20 212/22 212/23 213/10 213/11 215/1 215/16 215/19 217/12 217/15 217/15 219/22 220/2 223/13 235/4 236/2 237/19 242/9 242/9
anybody [6] 189/24 203/15 204/10 204/18 212/16 215/16
anyone [1] 212/22
anyone's [1] 182/16
anything [15] 182/11 193/16 200/14 200/23 209/4 209/4 209/15 211/2 215/20 215/22 223/13 227/25 228/20 235/16 239/16
apologize [2] 181/15 229/16
APPEARANCES [1] 178/18
appeared [1] 241/5
APPEARING [2] 179/5 179/11
appreciate [1] 240/18
approximately [3] 192/6 200/2 226/14
are [41] 179/22 181/3 181/5 181/6 182/2 188/4 190/20 190/24

193/6 195/3 195/4 197/11 197/12 197/14 197/15 197/16 197/23 197/25 198/1 198/6 198/8 198/10 198/12 204/12 205/12 206/11 211/17 212/7 215/5 215/8 215/14 221/22 221/25 224/11 224/16 228/8 236/20 237/19 238/25 240/8 243/18
area [16] 191/15 191/16 191/17 192/2 192/8 192/20 192/22 192/24 192/25 192/25 193/8 199/9 199/13 208/20 209/19 209/23
areas [4] 193/2 193/5 193/6 193/9
Arley [4] 214/22 215/17 217/13 219/21
around [2] 187/17 223/18
arrangements [1] 244/10
arrest [1] 199/16
arrived [1] 216/9
as [39] 182/8 184/16 184/17 185/11 188/5 189/3 189/5 195/6 199/21 201/11 203/3 203/12 206/24 207/8 208/8 213/25 219/21 220/1 220/1 220/3 220/3 220/16 223/5 223/23 224/18 224/25 225/2 225/7 227/13 229/24 232/12 233/13 234/18 235/17 236/11 236/18 240/5 240/13 244/12
ask [21] 183/21 190/12 198/4 198/17 201/6 201/8 201/17 201/25 204/14 204/19 211/10 218/6 221/20 226/4 227/5 227/11 228/6 228/14 233/19 239/3 239/4
asked [18] 183/7 184/13 187/11 195/23 199/8 199/25 201/18 203/21 208/11 208/14 211/18 219/20 220/15 220/16 220/17 226/4 227/6 228/7
asking [19] 184/9 195/18 196/14 197/5 197/6 198/4 200/18 203/19 204/6 204/12 204/12 204/13 207/3 208/5 211/24 216/16 219/5 222/19 236/10
assigned [10] 191/15 191/16 191/17 192/8 192/20 199/9 208/20 210/20 210/23 220/12
assignment [1] 202/7
assignments [10]

202/12 202/15 206/20 207/15 207/22 207/23 208/4 208/13 210/3 210/19
attached [1] 234/23
attempts [1] 194/20
attend [1] 214/18
attest [4] 194/15 195/8 196/8 196/25
attorney [8] 182/17 182/18 182/21 223/22 239/3 239/4 242/9 242/10
attorneys [1] 223/10
author [1] 186/5
authorized [1] 242/5
AVL [6] 212/25 213/4 213/5 213/5 213/6 213/10
aware [5] 199/9 205/12 205/19 224/16 228/8
away [1] 198/23

**B**

back [11] 182/14 187/12 199/3 199/6 207/12 212/1 223/17 229/9 229/10 229/20 238/14
backpay [1] 238/25
backup [1] 199/22
ball [1] 206/11
BARROUKH [3] 179/2 181/22 244/2
Baumer [1] 212/7
be [26] 181/21 182/3 191/11 191/17 191/19 191/21 192/8 192/20 196/4 198/6 201/13 216/21 216/25 217/4 217/6 217/21 217/22 219/16 219/21 219/22 221/1 229/2 231/18 239/22 244/12 244/15
beach [15] 178/7 181/13 181/25 185/20 186/1 186/2 193/1 193/2 193/3 193/3 234/7 235/18 242/3 243/3 244/7
bear [1] 189/3
became [2] 199/15 233/24
because [15] 183/5 184/1 184/7 190/11 197/11 202/20 206/6 210/17 216/18 219/15 220/20 222/23 228/17 231/6 240/15
been [14] 182/8 189/13 206/6 206/10 209/19 209/23 211/20 211/22 213/1 213/14 213/15 233/5 244/9 244/14
before [19] 184/21 186/14 187/19 187/20 198/14 201/7 201/25 212/4 212/13 214/8 216/9 217/25 223/9

225/1 230/17 232/4 235/23 238/12 241/24
began [2] 208/19 210/3
begin [1] 181/5
beginning [3] 191/9 202/17 202/21
behalf [7] 179/5 179/11 181/24 212/16 212/22 215/20 223/14
behind [1] 216/5
being [7] 216/8 220/5 220/12 222/9 222/15 229/3 238/6
believe [18] 186/10 189/20 201/21 212/6 213/10 215/7 223/23 224/1 225/25 227/13 224/1 225/25 231/16 236/23 237/2 237/5 237/19 238/21
below [2] 210/5 244/10
besides [1] 228/1 228/20
between [3] 179/20 200/9 231/18
Bill [2] 215/10 215/22 218/11 218/15 218/18
bit [1] 229/4
both [4] 181/18 189/13 223/21 236/23
bottom [1] 231/6
breaking [1] 229/5
BRICKELL [13] 179/3 236/1 236/2 236/9 236/12 236/13 236/16 236/23 236/25 237/7 237/16 238/18 244/3
broad [3] 219/1 219/3 219/8
brought [2] 214/10 221/9
BROWARD [1] 241/3
Brown [6] 191/18 191/20 192/5 214/24 215/19 217/15
bunch [1] 233/23

**C**

C-u-n-i-l-l [1] 223/11
C/O [1] 244/2
call [4] 187/14 188/21 194/8 208/24
called [3] 193/18 194/12 208/10
calling [1] 194/22
calls [1] 208/12
can [59] 183/5 184/3 184/17 184/24 186/5 186/6 186/20 187/14 189/15 189/22 190/4 190/16 190/18 191/2 195/15 197/13 197/19 198/3 198/11 198/18 202/13 203/25 204/13 204/14 204/14 205/9 205/10 205/24 206/10 207/4 207/17 209/10 210/9 211/9 211/10 211/13 219/10 221/1

225/11 230/3 232/22 232/22 238/7 238/19 241/2
began [2] 208/19 210/3
begin [1] 181/5
beginning [3] 191/9
can't [14] 182/19 183/21 194/15 195/8 196/25 198/8 200/4 204/20 209/10 217/16 219/2 228/19 232/19 239/4
cannot [2] 183/14 183/14
captains [1] 195/20
case [13] 178/4 181/16 183/7 184/10 184/24 189/14 203/3 203/6 205/3 205/12 206/25 207/8 243/3
cellphone [1] 193/13
Centre [11] 236/1 236/3 236/9 236/13 236/13 236/17 236/23 236/25 237/7 237/16 238/18
certainly [1] 200/4
CERTIFICATE [2] 240/20 242/1
certify [1] 241/5 242/5 242/8
Chair [2] 214/25 217/15
Chairman [1] 215/19
Chance [4] 218/2 218/8 231/11 234/24
CHANGES [1] 243/2
channel [5] 195/13 195/13 195/17 195/18 195/19
Chapter [5] 200/16 215/12 215/21 223/14 224/2
charge [2] 184/19 185/6 185/7 185/11 185/24 186/4 186/5 186/18 186/23 187/4 187/5 187/9 191/2 221/14 221/15 221/23 221/23 222/5 222/6 222/8 222/9 222/11 222/22 222/24 227/15 227/23 230/22 230/22 230/23 233/3 233/5 235/13
charges [1] 197/13
Charging [7] 185/3 186/23 231/6 231/8 231/20 233/5 233/8
chat [1] 240/1
check [3] 193/13 199/13 199/25 229/5
Chief [18] 214/6 214/6 215/25 216/5 216/10 216/12 216/14 216/19 216/21 217/1 217/4 217/11 217/17 217/19 217/20 219/18 220/12

**C**

Chief... [1] 220/15
Chief's [1] 214/11
choice [5] 217/7 217/8
217/10 217/20 219/20
cited [1] 233/3
CITY [36] 178/7 181/12
181/25 185/20 185/25
186/2 189/12 189/17
190/3 201/14 220/22
221/4 221/11 222/13
222/23 224/17 231/25
231/25 232/7 232/8
233/24 234/7 235/18
236/1 236/2 236/9
236/12 236/13 236/16
236/23 236/25 237/7
237/16 238/18 243/3
244/7
City's [3] 227/14
227/22 228/1
Civil [2] 244/24 244/24
claim [3] 210/14
210/19 222/18
claimed [3] 202/10
202/14 210/17
claiming [1] 213/18
clarified [1] 236/14
clarify [4] 223/9 237/18
237/20 238/17
clean [1] 184/12
clear [1] 201/4
clearly [1] 184/13
Clements [3] 214/6
214/7 217/11
client [3] 203/22 204/6
204/7
close [1] 229/3
closed [1] 216/5
coach [1] 227/7
COASTAL [2] 179/14
181/19
come [3] 216/3 229/9
229/10
Commander [1]
219/14
Commission [3]
180/13 232/25 241/12
company [4] 236/5
236/6 236/11 238/19
compensatory [1]
239/1
complaint [1] 188/14
complete [3] 202/19
231/19 242/7
completed [2] 191/25
244/12
completion [1] 192/9
concerning [3] 210/16
219/18 219/19
concluded [1] 240/19
conduct [4] 185/19
186/22 187/3 235/17
CONFERENCING [1]
178/15
confidential [1] 224/18
conjuring [1] 216/5
connect [3] 221/14

221/16 222/23
connected [1] 242/10
connecting [2] 221/22
221/25
connects [1] 222/20
consequences [1]
215/14
considered [1] 244/12
contact [1] 244/9
contained [2] 197/17
234/10
continuation [2]
182/13 183/8
continue [3] 182/13
217/17 217/22
CONTINUED [3]
178/12 242/6 244/7
contract [1] 236/25
contracted [2] 236/16
236/20
contracts [1] 237/2
conversation [2] 210/5
210/18
converted [2] 218/3
218/8
copy [16] 189/15
189/17 189/18 189/19
190/7 192/13 196/4
196/7 202/25 220/1
220/6 221/2 225/6
231/3 234/6 240/8
Corp [1] 237/6
correct [53] 183/18
183/19 185/3 185/8
185/8 185/9 185/12
185/20 185/21 187/21
187/23 188/25 191/14
192/23 193/4 195/2
195/4 195/14 195/20
196/12 200/21 200/3
203/11 214/8 214/12
214/16 214/17 218/9
220/21 221/6 221/7
221/12 221/13 222/11
223/15 223/24 224/2
224/18 227/15 227/18
227/23 230/12 231/8
231/12 231/25 232/8
232/10 232/25 233/8
233/11 238/20 239/1
239/2
CORRECTION [1]
243/6
Cosner [40] 186/17
186/18 186/21 187/4
187/8 187/10 187/17
189/12 190/20 191/7
191/10 191/24 194/12
194/19 196/14 196/22
199/6 199/15 199/23
200/6 200/9 200/20
201/10 202/5 207/14
208/3 208/10 208/21
209/22 210/16 210/22
211/6 211/19 212/6
212/12 212/25 214/16
214/25 219/13 222/21
Cosner's [1] 214/11
could [3] 196/8 221/2

237/20
couldn't [1] 242/10
counsel [22] 179/5
179/11 179/20 181/20
181/22 183/18 184/10
186/8 211/10 223/23
224/17 228/18 230/11
230/14 230/19 230/21
231/3 238/8 239/22
240/3 242/9 242/10
counsel's [1] 211/11
COUNTY [2] 241/3
242/3
couple [1] 231/23
court [5] 178/1 178/17
181/18 213/18 240/5
CP [2] 185/2 231/6
Cunill [1] 223/10
cv [3] 178/4 181/16
243/3

**D**

damages [3] 238/24
239/2 239/8
Dan [2] 228/23 228/24
DANIEL [6] 179/2
181/22 228/24 240/3
240/8 244/2
DANIELB [2] 179/5
244/5
Danny [4] 206/1
228/25 229/1 229/1
date [12] 178/13
181/10 182/19 182/20
188/17 226/3 226/11
236/2 243/4 243/20
243/21 244/23
dated [5] 180/9 180/11
180/15 233/10 242/12
David [1] 237/22
day [7] 182/12 206/21
206/23 235/25 241/6
241/8 242/12
days [2] 221/5 244/12
December [9] 186/16
188/25 220/24 220/25
222/20 231/12 231/24
232/7 234/23
declare [1] 243/18
DEFENDANT [3] 178/9
179/11 181/25
definitely [1] 184/6
delay [1] 225/1
Delvin [3] 214/24
215/19 217/14
denied [4] 217/8
217/10 217/21 219/23

depo [2] 182/11 183/25
243/4 244/23
deposed [1] 235/25
deposition [30] 178/12
179/21 180/7 181/11
182/12 182/22 183/3
183/8 183/9 183/12
183/13 183/15 183/17
184/13 189/8 198/23
214/2 225/3 229/25
232/13 233/15 234/19
240/14 240/16 240/19
242/1 242/6 244/7
244/9 244/22
deposition's [1] 183/4
DEREK [2] 179/2 244/3
DEREKSMITHLAW.CO
M [2] 179/5 244/5
DESCRIPTION [1]
180/7
despite [1] 220/11
detail [9] 202/7 202/15
207/15 207/22 207/25
208/4 208/13 210/3
212/25
detailed [1] 202/11
details [9] 192/7
192/17 192/19 197/16
202/20 203/7 210/5
210/20 210/24
determine [1] 211/5
did [58] 182/11 182/16
182/18 182/21 182/24
183/15 183/24 184/3
191/2 191/10 192/3
192/15 192/19 194/15
200/1 200/4 200/4
200/11 200/22 200/23
201/7 201/14 205/2
205/5 208/13 208/21
208/21 210/20 210/23
211/4 211/19 212/5
212/11 212/16 212/18
212/18 212/20 212/22
215/16 215/19 215/22
216/6 217/12 217/15
217/18 217/25 218/13
219/22 222/23 223/9
223/13 224/6 227/25
228/18 236/13 236/21
237/24 242/5
didn't [17] 183/5 184/8
187/25 188/1 191/11
194/3 200/20 201/17
201/23 217/22 220/12
226/4 226/15 227/4
228/10 231/4 236/21
difference [2] 189/20
189/22
different [1] 221/21
DIRECT [1] 182/9
directives [2] 191/8
202/21
directly [1] 236/13
disciplinary [1] 234/13
discipline [1] 219/16
discovery [1] 213/5
discrimination [1]

185/24
discriminatory [1]
185/18
discuss [7] 183/2
183/14 183/14 183/24
214/11 214/15 224/22
discussed [4] 183/13
183/17 184/9 184/13
discussing [1] 183/24
Discussion [1] 238/13
dispatcher [2] 194/2
194/20
DISTRICT [5] 178/1
178/2 193/3 220/12
220/13
DIVISION [1] 178/3
divorce [5] 226/8
226/12 226/14 226/15
226/16
do [80]
doctored [1] 213/11
document [25] 184/17
189/4 189/6 189/22
189/23 189/25 190/3
190/9 190/23 198/5
199/6 201/9 207/12
208/1 214/8 214/20
221/10 221/11 225/7
225/9 230/3 232/16
233/10 233/18 243/18
documentation [3]
200/13 210/1 219/25
documentations [1]
228/12
documented [1] 192/1
documents [11] 190/1
205/2 205/4 205/11
225/2 226/10 230/5
233/23 236/2 237/11
237/19
does [6] 186/1 192/18
195/24 196/16 231/19
232/1
doesn't [3] 204/25
232/23 237/18
doing [1] 202/17
don't [143]
done [6] 211/11 211/17
227/22 229/2 229/3
235/3
doors [1] 216/5
double [1] 229/5
double-check [1]
229/5
down [3] 186/6 190/16
230/10
DPG [3] 178/4 181/16
243/3
DRIVE [2] 179/3 244/3
drop [1] 240/1
duly [2] 182/8 241/7
during [7] 201/8
201/19 201/23 202/1
210/21 210/24 220/5
duty [2] 206/20 235/5

**E**

each [4] 208/20 209/19
209/23 220/19

**E**

earlier [4] 182/25
207/19 218/4 238/17
Eastern [1] 181/10
EEOC [32] 180/12
184/19 185/7 185/11
185/24 187/9 188/13
221/14 221/23 222/5
222/6 222/7 222/8
222/9 222/10 222/22
223/22 224/23 227/13
227/15 227/17 227/23
227/25 228/8 228/16
228/20 230/12 230/16
230/19 230/22 230/22
233/4
effect [1] 237/6
either [3] 188/19 212/4
224/9
ELKINS [10] 179/8
180/13 181/24 184/11
189/10 204/9 213/24
214/4 225/5 233/17
else [3] 217/17 227/25
228/20
email [31] 192/7
192/11 192/13 192/15
192/16 192/19 192/19
193/13 199/13 199/25
202/11 202/15 202/23
202/25 207/13 207/14
207/16 207/20 207/21
207/24 208/3 208/7
208/14 208/15 209/7
209/12 209/19 209/22
210/7 214/17 237/25
emailed [1] 202/7
emails [2] 200/1
208/11
employed [3] 185/19
193/10 233/24
employee [11] 180/8
180/14 189/11 218/3
218/8 220/6 233/20
234/3 234/7 242/9
242/9
employers [1] 235/25
employment [8]
180/13 218/16 222/8
222/16 232/24 235/18
237/13 238/23
end [5] 192/9 192/25
192/25 193/8 210/6
engaging [1] 185/5
enough [2] 194/24
239/15
ENTER [1] 243/2
Entertainment [1]
193/3
entire [2] 191/1 240/14
Equal [2] 180/13
232/24
errata [1] 244/14
ESQ [3] 179/2 179/8
244/2
essentially [2] 188/23
230/25
establish [1] 197/23

evaluation [1] 220/23
even [2] 190/15 226/14
evening [3] 203/9
206/19 206/19
ever [2] 230/3 236/14
every [2] 197/20
208/23
everything [8] 194/6
200/6 203/23 203/23
210/11 212/3 228/7
228/15
evidence [1] 222/19
evident [1] 188/10
exact [7] 193/16
194/23 196/2 196/24
226/3 237/2 237/6
exactly [5] 182/20
194/5 196/5 196/8
235/6
EXAMINATION [1]
182/9
example [1] 197/21
Exhibit [18] 184/17
189/6 189/8 214/1
214/2 214/5 224/25
225/1 225/3 225/7
229/24 229/25 232/12
232/13 233/14 233/15
234/18 234/19
Exhibit 12 [1] 229/24
Exhibit 13 [1] 232/12
Exhibit 14 [1] 233/14
Exhibit 15 [1] 234/18
Exhibit 5 [1] 184/17
Exhibit 9 [1] 189/6
exhibits [1] 239/25
existence [1] 237/19
exists [2] 206/11 210/7
Expires [1] 241/12
explained [1] 187/17

**F**

fact [6] 183/13 183/17
188/4 188/7 216/20
219/17
facts [4] 197/22 198/5
222/22 243/18
failure [2] 197/21
197/23
fair [3] 232/22 235/5
239/15
false [55] 188/10
190/20 190/20 190/24
191/1 191/6 191/7
191/13 191/14 192/2
192/3 192/10 193/14
193/20 193/24 194/4
194/9 194/14 194/21
194/25 197/9 197/11
197/12 197/15 197/22
197/23 197/24 198/1
198/6 198/9 198/10
198/12 200/10 200/20
201/10 202/8 202/12
202/16 202/24 207/25
208/5 208/25 209/9
209/14 209/20 209/24
210/8 210/12 210/13
210/25 211/6 211/17

evaluation [1] 211/19 212/4 213/16
falsely [1] 206/13
familiar [3] 235/4 239/6
239/8
far [1] 220/1
February [2] 182/14
233/10
February 9th [1]
233/10
federal [5] 194/25
212/3 213/18 244/12
244/24
few [1] 235/2
Fifteen [1] 229/8
figure [1] 236/15
file [4] 215/20 215/22
223/13 226/15
filed [17] 184/19 202/2
208/17 211/16 212/1
212/3 212/5 212/13
213/17 222/5 222/24
226/12 226/13 226/16
235/10 235/13 235/16
filing [11] 185/6 188/13
201/7 201/18 211/4
221/22 222/6 222/7
222/9 222/10 222/21
final [2] 231/18 235/24
finalized [2] 226/8
226/11
finally [2] 188/23
194/21
financially [1] 242/10
find [1] 212/11
fine [6] 184/14 190/9
212/14 219/7 223/7
233/20
first [9] 182/8 183/12
190/13 195/24 214/23
215/17 217/13 233/24
235/25
five [1] 188/5
FL [1] 178/7
flag [1] 219/15
Flaherty [4] 214/22
215/17 217/13 219/21
flesh [1] 212/11
FLORIDA [14] 178/2
178/8 178/17 179/4
179/9 181/13 181/13
241/2 241/5 241/11
242/2 244/4 244/13
244/24
FOB [2] 214/23 214/24
following [1] 234/10
follows [1] 182/8
FOP [23] 214/22
214/24 215/17 215/17
215/18 215/19 215/24
216/4 216/8 216/11
216/18 216/21 217/1
217/12 217/13 217/14
217/15 218/5 218/10
219/17 223/22 235/11
235/16
forced [1] 191/11
foregoing [2] 242/7
243/18
forgot [3] 192/11

193/16 192/18
204/24 205/7 205/15
205/22 207/1 207/10
211/7 213/21 221/18
222/2 222/25 224/12
224/19 225/20 226/22
227/6 231/13 235/20
239/10
former [3] 214/6 214/6
235/4
FORT [1] 179/9
forward [3] 186/16
187/13 187/25
forwarded [6] 192/7
208/15 209/7 209/11
244/14 244/15
found [1] 210/16
four [1] 240/9
FPR [3] 178/16 241/10
242/16
FPR-C [3] 178/16
241/10 242/16
friendship [1] 187/12
front [1] 190/2
funds [2] 238/22
further [6] 186/18
186/23 187/12 237/20
239/16 242/8

**G**

Garrido [1] 212/7
gave [3] 191/8 191/8
203/7
Gayles [1] 184/14
Gene [1] 223/10
get [7] 189/3 200/17
217/17 219/3 219/7
223/19 237/24
getting [1] 188/15
Gibbons [3] 223/10
223/22 224/10
give [8] 182/3 190/10
192/3 201/14 213/23
219/2 224/24 230/7
given [8] 198/2 202/21
203/24 211/21 219/25
220/1 220/6 237/18
go [19] 181/15 182/24
186/5 188/20 189/3
189/22 197/13 197/20
198/18 225/2 229/2
230/10 237/9 237/25
238/3 238/4 238/8
238/10 239/18
God [1] 182/4
going [42] 184/5
184/16 186/16 189/5
190/1 190/10 190/11
195/5 197/13 198/13
198/25 199/3 199/6
201/25 207/12 210/12
212/1 213/25 213/25
216/21 216/22 217/17
217/21 220/19 223/17
224/24 224/25 229/16
229/20 229/23 233/13
233/13 233/18 234/17
237/10 238/11 238/14

193/16 192/18
204/24 205/7 205/15
form [21] 178/8 189/12
...
239/19 239/20 239/21
240/5 240/7
gone [1] 184/20
good [3] 181/3 181/9
223/5
got [5] 189/2 219/13
236/14 237/4 237/21
Grievance [3] 214/25
215/19 217/15
GROUP [2] 179/2
244/3
guarantees [2] 218/16
218/19
GUASTO [12] 178/5
178/12 180/10 181/11
181/12 181/23 225/10
226/2 227/11 228/21
243/3 244/7
Guide [1] 234/7
guidelines [2] 234/10
234/12
guys [1] 240/15

**H**

had [30] 187/5 187/5
187/8 187/10 187/10
187/20 196/3 196/6
196/7 202/7 202/10
202/14 206/7 208/11
208/13 208/23 209/19
209/22 210/17 210/18
210/19 210/22 211/22
213/1 214/18 226/12
228/11 231/24 236/17
236/25
hallway [1] 188/2
hand [1] 182/1
Handbook [3] 180/14
233/21 234/3
handwriting [1] 192/1
Hansel [2] 208/11
208/16
happen [3] 189/18
200/4 217/18
happened [17] 193/15
193/22 193/25 194/6
194/22 194/23 195/3
210/20 210/23 211/24
218/21 218/22 218/24
219/6 219/8 219/9
220/20
happening [3] 196/1
218/25 221/8
happy [1] 197/20
has [5] 189/13 203/15
204/10 206/6 206/9
211/10 233/5 244/9
244/14
hatred [1] 188/9
have [65] 182/19
183/17 189/18 190/12
191/11 192/13 192/19
194/17 194/19 198/7
198/11 200/1 200/5
200/6 201/19 202/2
202/3 202/25 204/17
204/19 205/4 206/2
206/2 206/8 208/16
209/15 210/9 210/17

## H

have... [37] 211/17
211/20 211/22 211/22
213/4 213/10 213/14
213/15 216/22 216/22
217/23 218/7 218/23
222/20 222/23 223/5
223/18 225/11 226/9
226/10 227/11 228/6
229/5 230/3 232/16
235/6 235/10 235/13
235/16 236/18 237/3
237/5 239/3 239/5
239/16 240/15 243/18
haven't [4] 203/9
203/12 206/18 236/12
having [2] 182/8
187/16
he [61] 184/15 187/14
188/1 188/3 188/5
188/7 188/11 188/22
188/23 188/24 191/2
191/4 191/4 191/5
191/7 191/9 192/7
192/11 192/15 192/16
192/18 193/12 193/16
193/18 193/18 193/23
194/8 194/11 194/12
194/15 194/15 194/19
194/25 195/8 195/12
195/23 196/25 196/25
196/25 197/5 199/8
199/12 199/12 199/15
199/17 199/24 200/1
200/1 200/6 206/24
207/3 208/11 208/13
208/13 209/7 209/12
220/15 220/17 230/16
231/4 231/17
he's [11] 197/14 201/1
203/21 203/23 204/6
204/13 208/9 211/2
216/21 216/22 232/10
head [2] 188/18 215/15
heading [1] 189/21
hear [1] 195/20
heard [1] 196/18
held [3] 188/8 188/11
238/13
help [1] 182/4
her [10] 183/21 195/17
200/2 207/3 217/17
217/18 219/22 227/5
237/12 240/14
here [28] 184/24
185/17 186/21 195/16
197/23 200/8 200/18
201/1 201/6 202/14
205/20 206/11 207/12
209/11 210/12 212/4
212/12 212/25 213/17
215/6 220/19 228/19
231/17 232/2 232/10
232/23 234/3 235/10
hereby [3] 179/19
179/22 244/21
HH [1] 241/12
hiding [1] 206/11

## highlighted [1] 210/4

highlighted [1] 210/4
him [48] 187/6 187/13
187/20 187/23 188/1
188/1 188/2 188/9
188/10 188/11 188/17
191/8 191/25 192/3
195/23 196/2 196/3
196/4 196/8 196/9
199/7 199/8 201/9
201/10 202/18 203/3
203/7 203/9 203/12
203/12 203/16 204/7
204/12 205/21 206/2
206/8 206/18 206/20
206/21 206/22 206/23
206/24 207/8 208/11
208/12 211/6 217/25
219/10
hired [2] 223/22 236/11
his [13] 188/21 191/2
195/3 197/11 197/13
197/25 198/10 198/11
199/25 201/15 209/4
210/1 216/22
hold [3] 195/22 226/1
237/21
hours [11] 191/5
194/12 200/2 202/5
202/24 207/14 207/20
208/14 209/8 209/13
213/2
how [12] 182/21 194/5
195/10 197/9 201/13
212/2 216/20 216/20
216/20 221/22 221/25
222/19
however [1] 244/12

## I

I'll [9] 184/5 190/11
198/4 201/6 212/8
221/20 230/7 235/9
236/9
I'm [63] 181/17 184/5
184/16 184/25 188/7
188/7 189/5 189/5
190/10 190/11 195/18
197/5 197/5 197/20
198/4 198/21 199/17
200/18 200/22 201/1
201/25 204/6 204/7
205/16 205/19 206/4
206/9 207/3 208/4
211/24 213/25 213/25
216/16 218/10 218/19
222/19 223/5 224/24
224/25 225/1 225/1
225/6 228/14 228/17
229/3 229/10 229/23
232/12 232/12 233/13
233/13 233/18 234/17
234/17 235/2 236/10
236/15 237/24 239/3
239/6 239/20 239/23
240/15
I've [11] 184/16 198/2
203/21 206/7 225/7
229/23 230/4 232/17
232/18 232/19 237/18

## idea [1] 214/18

idea [1] 214/18
identification [7] 189/9
214/3 225/4 230/1
232/14 233/16 234/20
ignore [1] 188/3
ignored [2] 188/5
188/22
immediately [2] 193/24
219/15
implemented [1] 221/4
implementing [1]
214/7
implements [1] 221/11
improper [1] 215/9
incident [1] 186/17
included [5] 207/15
207/16 207/21 207/24
208/4
including [2] 202/19
234/13
inclusion [1] 244/15
Indeed [1] 237/22
inform [1] 233/2
information [2] 200/15
informing [2] 220/11
230/21
inquired [1] 208/20
instance [1] 200/19
interaction [2] 200/9
201/9
interested [1] 242/10
interesting [1] 218/20
Internal [1] 219/14
interrogated [3] 224/4
224/6 224/10
interrogation [1] 215/9
interview [1] 236/17
introduce [1] 181/20
investigated [1] 198/1
investigation [6]
201/12 201/24 209/2
211/5 211/11 211/17
investigator [1] 215/13
invitation [1] 214/18
invited [1] 219/12
involve [1] 231/19
involved [7] 186/22
199/15 225/15 225/23
226/25 231/24 232/7
involving [1] 186/17
is [151]
isn't [2] 197/17 217/2
issue [2] 184/6 185/10
issues [7] 187/5 187/8
187/16 187/20 188/6
188/16 188/20
it [116]
it's [25] 183/25 183/25
186/17 188/19 189/23
190/4 190/7 193/5
197/9 200/20 201/15
204/10 204/21 211/15
213/18 219/3 219/4
219/8 223/18 232/21
233/3 233/20 233/20
236/10 238/24
itself [1] 190/9

## J

January [7] 214/10
214/14 218/21 219/5
221/5 221/9 221/17
January 19th [4]
214/10 214/14 218/21
219/5
January 2021 [1]
221/17
January 25th [2] 221/5
221/9
jargon [1] 239/7
JESSICA [15] 178/5
178/12 181/11 181/12
181/23 182/1 182/7
190/4 219/10 241/5
242/6 243/4 243/20
244/2 244/7
Jones [1] 214/21
judge [2] 184/6 184/14
July [4] 185/7 221/15
222/22 230/22
July 2020 [1] 230/22
jump [1] 223/18
June [6] 184/20 184/20
185/7 221/15 222/22
230/22
June 22nd [1] 184/20
just [32] 184/23 187/12
187/14 188/5 189/23
190/6 195/5 195/7
195/10 196/19 197/25
198/10 198/13 208/5
212/1 213/22 221/9
223/9 223/17 223/18
225/2 229/4 229/9
230/8 230/24 235/2
235/7 236/14 237/10
238/5 238/17 240/16

## K

keep [5] 195/5 197/13
198/13 212/1 229/5
Kevin [1] 223/23
KEY [2] 179/3 244/3
knew [1] 218/13
know [112]
knowledge [2] 206/13
216/1
knows [4] 206/24
207/3 207/4 207/7

## L

label [1] 225/2
Labor [1] 235/13
landline [2] 202/11
202/15
last [7] 203/5 203/8
218/2 218/8 225/13
231/11 234/24
later [2] 231/12 232/7
LAUDERDALE [1]
179/9
LAW [3] 179/2 179/8
244/3
lawsuit [21] 188/23
190/19 194/25 201/8
201/8 201/18 201/19
201/25 202/1 203/10

## 208/17 210/14 211/4

208/17 210/14 211/4
211/6 212/1 212/3
212/5 212/13 213/18
235/10 239/9
lawyer [9] 183/3
183/15 203/15 204/19
204/20 212/18 228/5
228/6 228/17
lawyers [3] 204/14
223/13 224/9
leading [2] 186/22
187/8
least [1] 210/14
led [2] 187/5 222/16
legal [2] 222/18 239/7
LEIVA [3] 179/14 181/4
181/17
length [1] 221/24
Lester [5] 214/23
215/18 217/14 217/19
217/23
let [1] 202/18
let's [6] 189/3 228/23
229/1 229/9 229/10
229/15
letter [16] 180/11
180/13 180/15 214/5
214/7 221/4 221/12
230/11 230/16 230/18
230/20 231/1 231/4
234/22 244/8 244/12
Lieutenant [6] 186/17
187/4 191/18 191/20
192/4 214/16
lieutenants [2] 195/19
202/22
like [18] 183/6 187/17
187/17 189/24 195/9
195/10 197/18 211/1
211/21 222/22 230/13
230/17 231/23 232/11
235/7 236/5 236/11
238/2
line [2] 210/4 243/6
listed [4] 203/3 206/24
207/7 215/5
listing [1] 203/12
little [1] 229/4
LLC [1] 238/20
long [2] 182/21 193/15
look [4] 185/17 226/9
226/10 230/7
looking [1] 184/25
looks [4] 197/18
230/13 230/17 232/11
lot [3] 230/5 232/18
237/13
lower [1] 232/17
lying [1] 224/11

## M

made [5] 188/24
190/20 194/25 201/4
210/14
main [4] 196/10 196/22
197/4 199/8
make [5] 184/23
202/19 207/18 236/17
244/10

**M**

**making** [1] 188/10
**manager** [3] 236/18 236/19 236/19
**many** [1] 193/22
**MARCH** [8] 178/13 181/10 241/6 241/8 241/12 242/12 243/4 244/1
**March 15th** [1] 181/10
**mark** [5] 189/5 213/22 213/25 224/25 233/13
**marked** [10] 184/16 189/8 214/2 225/3 225/7 229/23 229/25 232/13 233/15 234/19
**marking** [2] 232/12 234/18
**married** [3] 226/1 226/5 226/6
**MASCI** [7] 178/16 181/17 241/4 241/10 242/5 242/16 244/19
**matter** [1] 181/12
**MATTHEW** [3] 179/14 181/4 181/16
**may** [4] 182/6 200/6 233/19 234/13
**maybe** [1] 221/2
**me** [68]
**mean** [7] 185/22 186/1 195/24 196/16 197/19 206/11 223/18
**means** [3] 186/3 195/25 211/12
**meant** [1] 196/15
**meet** [1] 217/5
**meeting** [39] 214/11 214/14 214/15 214/18 214/19 214/21 215/6 215/9 216/4 216/7 216/7 216/9 216/21 217/16 217/16 217/22 217/24 218/21 218/22 218/24 219/4 219/6 219/9 219/12 219/21 219/22 219/24 220/5 220/20 221/6 221/10 223/20 223/24 224/1 224/4 224/11 224/17 224/18 224/22
**MELKINS** [1] 179/10
**Member** [1] 216/12
**Members** [2] 216/18 216/22
**Memorandum** [1] 180/9
**memory** [1] 221/2
**message** [3] 193/12 193/17 202/6
**met** [2] 217/1 217/4
**MIAMI** [14] 178/3 178/7 179/4 181/12 181/25 185/20 186/1 186/2 193/1 234/7 235/18 243/3 244/4 244/7
**MICHAEL** [5] 179/8 180/11 181/24 223/10

**230/14**

**Mld** [1] 195/8
**midnight** [2] 191/6 191/21
**might** [2] 189/20 229/2
**Milano** [1] 223/23
**mind** [1] 216/9
**mini** [2] 239/24 240/9
**minute** [1] 230/7
**minutes** [2] 191/25 229/8
**Misconduct** [3] 180/8 189/12 220/6
**MLE** [1] 179/8
**MLELAWFIRM.COM** [1] 179/10
**moment** [10] 181/8 186/3 187/25 188/9 190/10 193/11 210/10 212/2 220/3 230/4
**monetary** [1] 231/20
**more** [6] 201/6 207/17 216/25 217/4 235/2 237/14
**morning** [5] 181/3 181/9 213/3 213/8 220/25
**move** [2] 184/3 184/5
**moved** [1] 190/14
**MR** [8] 184/11 189/10 204/9 213/24 214/4 223/10 225/5 233/17
**Mr.** [8] 204/18 205/6 223/21 223/22 224/9 224/10 226/2 228/21
**Mr. Gibbons** [2] 223/22 224/10
**Mr. Guasto** [2] 226/2 228/21
**Mr. Pancier** [2] 223/21 224/9
**Mr. Serrano** [2] 204/18 205/6
**Ms** [1] 200/1
**Ms.** [5] 182/11 205/3 206/17 226/24 240/5
**Ms. Court** [1] 240/5
**Ms. Salabarria** [4] 182/11 205/3 206/17 226/24
**much** [2] 219/1 220/3
**multiple** [2] 194/3 227/5
**municipality** [4] 178/8 181/13 181/14 215/13
**my** [47] 181/16 182/17 183/6 184/9 184/10 186/8 188/13 191/8 192/3 192/4 195/8 195/22 196/24 201/3 201/11 201/17 201/17 201/21 202/18 202/21 204/19 206/13 211/10 211/25 215/7 215/15 215/25 217/7 217/8 217/20 218/6 218/7 219/13 219/20 219/20 221/2 223/4 224/22 228/6 228/18 236/4

**238/22 238/24 239/3 241/6 242/7 244/22**

**myself** [1] 202/19

**N**

**N-e-s-s** [1] 196/16
**name** [7] 181/16 194/20 232/23 236/4 236/6 237/6 243/4
**names** [1] 212/6
**narrative** [4] 197/17 197/19 197/22 198/9
**nature** [5] 216/4 216/7 219/12 219/16 237/13
**necessary** [1] 243/17
**need** [9] 190/11 198/14 198/17 213/22 215/1 230/8 230/24 239/24 240/4
**needed** [3] 191/5 192/8 192/20
**NESS** [4] 196/15 196/16 196/16 199/7
**never** [10] 191/7 191/7 191/8 191/9 196/18 198/1 202/21 209/1 210/19 210/23
**next** [2] 191/11 191/12
**nice** [1] 184/12
**Nicholas** [3] 180/10 225/10 227/11
**Nick** [1] 226/16
**night** [3] 191/4 194/23 203/7
**no** [36] 183/8 194/18 196/21 197/8 200/7 203/14 203/22 204/5 204/21 206/5 206/14 212/14 212/15 214/18 217/16 218/1 218/13 223/7 223/8 223/9 224/25 225/17 226/21 229/9 229/10 229/14 235/6 235/9 235/12 235/15 235/19 235/23 237/8 239/11 243/3 244/13
**NO.:1:22** [1] 178/4
**NO.:1:22-cv-21004-DPG** [1] 178/4
**Nodding** [1] 215/3
**none** [2] 206/6 206/9
**normally** [1] 211/21
**north** [7] 192/25 192/25 193/3 193/8 202/20 220/12 220/13
**NORTHEAST** [1] 179/9
**not** [74]
**NOTARY** [3] 178/17 241/4 241/11
**note** [1] 210/5
**notes** [1] 242/7
**nothing** [1] 182/3
**November** [3] 223/20 226/1 226/12
**November 2nd** [1] 223/20
**November 5th** [1] 226/1

**now** [11] 181/3 181/9 185/15 185/16 191/22 191/9 193/6 194/6 200/3 210/17 214/6 215/8 223/5 240/1
**Number** [8] 181/16 189/8 214/2 225/3 229/25 232/13 233/15 234/19

**O**

**O-301** [2] 179/3 244/4
**O-c-e-j-o** [1] 199/19
**OATH** [1] 241/1
**object** [1] 227/6
**objection** [23] 183/20 183/20 203/17 203/18 204/24 205/7 205/15 205/22 207/1 211/7 213/21 221/18 222/2 222/25 224/12 224/19 225/20 226/20 227/3 227/7 231/13 235/20 239/10
**objection's** [1] 227/6
**obtain** [1] 212/22
**obtained** [6] 203/15 203/20 204/10 204/18 205/21 206/12
**obviously** [1] 210/13
**occasions** [1] 183/9
**occurred** [1] 201/10
**Ocejo** [16] 199/17 199/24 199/25 200/5 200/9 200/19 200/21 200/22 201/7 201/13 201/15 201/20 202/2 202/3 208/15 212/7
**off** [15] 188/18 198/18 198/25 215/15 229/15 229/16 238/3 238/4 238/8 238/10 238/11 238/13 239/18 239/21 240/7
**office** [2] 214/11 244/9
**Officer** [25] 199/17 199/24 199/25 200/5 200/9 200/19 200/20 200/22 201/7 201/13 201/15 201/20 202/2 202/3 208/10 208/15 208/16 208/17 208/18 208/23 209/20 209/23 210/18 210/22 211/6 211/12 211/18 212/6 212/23 218/13 236/20
**offices** [1] 192/9
**okay** [130]
**once** [2] 216/6 244/14
**one** [22] 181/8 183/13 196/12 199/21 201/6 206/10 207/17 208/23 210/11 213/23 214/1 215/16 216/22 217/12 217/15 224/24 230/5

**230/6 232/19 235/24 237/21 240/10**

**only** [4] 189/20 208/14 238/25 239/24
**opportunity** [9] 180/13 190/13 198/2 201/12 201/14 211/21 211/23 218/6 232/24
**order** [2] 191/24 239/20
**ordered** [1] 199/12
**ordering** [6] 239/22 239/23 239/23 240/8 244/14 244/15
**orders** [2] 192/8 192/20
**original** [3] 182/13 189/15 244/14
**other** [6] 188/4 193/9 201/11 212/20 223/19 243/17
**our** [3] 210/4 210/5 244/9
**out** [6] 187/11 188/24 212/11 212/12 230/25 236/15
**over** [3] 182/24 184/20 238/1
**overtime** [7] 191/6 191/8 191/12 191/19 191/25 192/4 192/4
**own** [3] 192/1 211/5 239/9
**Ozaeta** [2] 214/21 217/12
**Ozeata** [1] 215/16

**P**

**P.M** [1] 213/7
**page** [5] 180/2 180/7 184/24 240/10 243/6
**PAGE/LINE** [1] 243/6
**pages** [4] 178/11 238/6 240/9 242/7
**paid** [1] 237/4
**PALM** [1] 242/3
**Pancier** [5] 180/12 223/10 223/21 224/9 230/14
**paperwork** [3] 230/25 231/19 232/18
**parked** [2] 213/1 213/7
**part** [5] 185/13 187/4 219/22 227/14 236/11
**parties** [8] 179/20 185/15 189/13 230/24 231/18 231/18 242/9 244/15
**parties'** [1] 242/9
**party** [11] 185/3 185/20 185/25 186/23 231/7 231/8 231/20 233/6 233/8 236/12 244/14
**pass** [1] 188/2
**past** [1] 237/12
**Paul** [4] 186/9 214/21 215/16 217/12
**paying** [4] 231/25 231/25 232/7 232/8

**P**

payment [1] 231/20
payroll [1] 237/24
paystub [2] 237/4
237/7
paystubs [1] 237/12
penalties [1] 243/18
pendency [2] 201/8
201/19 202/1
pending [2] 183/4
183/14 183/25
people [2] 215/5 215/5
per [2] 185/11 210/4
perceives [1] 195/8
perjury [1] 243/18
personally [2] 212/12
212/15 241/5
pertaining [1] 200/23
pertains [1] 200/14
phone [3] 193/19
194/13 208/12
place [2] 178/15 237/3
plaintiff [4] 178/6
179/5 181/23 239/4
please [9] 181/20
182/2 184/4 186/5
207/17 210/5 211/14
227/10 244/9
PLLC [2] 179/2 244/3
point [12] 186/20
187/13 188/16 195/15
202/13 207/17 208/6
208/7 217/15 223/8
223/9 235/24
pointing [1] 209/10
police [16] 193/24
215/10 215/21 215/25
216/10 216/12 216/14
216/19 217/11 217/19
217/21 218/12 218/15
219/18 220/15 220/24
position [5] 188/23
215/9 227/14 227/23
228/1
possible [1] 232/21
Practice [1] 235/13
prefer [1] 228/24
preparation [2] 225/15
226/25
prepare [1] 182/12
prepared [4] 183/6
225/18 226/18 234/22
present [5] 179/13
214/15 214/20 215/6
223/23
presented [2] 200/15
221/10
preserved [1] 227/7
president [9] 214/22
214/23 214/24 215/17
215/18 215/18 217/13
217/13 217/14
presume [1] 220/18
previous [4] 186/8
187/8 201/22 228/11
previously [2] 184/17
186/22
Prieto [1] 214/25

prior [9] 183/9 187/6
192/9 229/5 230/11
230/14 230/19 230/20
235/25
privately [1] 223/22
privately-hired [1]
223/22
privilege [1] 203/22
privileged [1] 184/1
probably [1] 229/3
problem [11] 216/13
216/15 216/17 216/23
217/1 217/4 217/6
217/9 223/7 229/14
235/9
procedurally [2]
201/13 211/22
procedure [3] 223/14
244/24 244/24
proceed [1] 182/6
produce [1] 205/5
produced [11] 189/13
189/17 190/3 205/2
205/11 205/13 206/3
206/6 206/8 206/10
213/4
production [1] 228/10
Professional [1] 242/5
pronouncing [1]
199/18
property [1] 236/18
protected [6] 185/6
185/10 185/23 221/16
221/24 230/23
Protection [1] 238/19
prove [1] 200/13
provide [4] 200/11
206/20 236/12 237/1
provided [11] 191/25
201/24 203/24 209/1
209/25 211/1 213/14
221/1 228/15 231/3
237/10
providing [1] 238/22
PUBLIC [3] 178/17
241/4 241/11
put [1] 190/2
puts [1] 212/25

**Q**

question [37] 183/5
184/3 195/22 198/11
198/14 198/17 201/3
201/6 201/17 201/18
201/21 204/1 204/10
204/12 204/15 204/21
205/10 207/5 207/23
209/21 211/13 211/15
211/25 213/15 214/13
217/3 218/7 218/23
218/25 219/1 219/4
219/9 221/20 223/3
232/5 236/4 239/5
questions [8] 182/24
183/14 183/21 190/12
218/6 220/15 220/17
235/2
quote [2] 210/4 210/6

**R**

radio [3] 193/4 194/8
195/13
raise [4] 182/1 184/6
193/23 194/20
raised [2] 194/2 219/15
rang [1] 194/13
RE [2] 243/3 244/7
reach [1] 194/13
read [11] 186/14
190/10 190/13 198/3
198/3 201/15 239/17
239/19 240/5 243/18
244/10
reading [3] 179/21
234/9 244/21
ready [1] 181/5
realtime [1] 213/15
reason [2] 213/10
243/6
reasonable [1] 244/12
rebuttal [2] 228/4
228/5
recall [8] 187/7 193/11
193/16 193/22 196/4
203/1 208/18 221/8
receipt [1] 180/14
233/20 234/3 244/12
receive [1] 200/23
received [10] 202/5
208/11 208/24 209/8
209/12 232/23 234/6
236/2 237/17 244/14
recently [1] 237/11
Recess [2] 199/2
229/19
recognize [1] 225/7
recollect [2] 182/19
221/2
recollection [1] 215/7
record [23] 181/4
181/9 188/19 190/7
198/18 199/1 199/4
229/15 229/17 229/21
237/13 238/3 238/3
238/4 238/9 238/10
238/11 238/13 238/15
239/18 239/21 240/7
242/7
recorded [4] 196/4
219/25 220/16 220/20
recording [1] 196/7
recordings [1] 200/13
records [1] 237/15
red [1] 219/15
refer [7] 189/15 189/24
190/1 204/20 209/16
210/9 226/10
referenced [2] 236/1
244/9
references [1] 231/17
referred [1] 201/9
referring [16] 185/7
187/3 188/4 188/20
194/11 202/13 207/18
207/21 208/3 208/9
208/9 212/6 228/13
228/14 232/10 235/7

regard [1] 244/13
Reggie [5] 214/23
215/18 217/14 217/19
217/23
Registered [1] 242/5
regular [1] 195/20
rejected [4] 187/13
187/23 188/9 188/17
rejection [1] 188/22
relates [1] 235/17
relating [1] 235/16
relationship [1] 187/11
relative [2] 242/8 242/9
remedies [1] 215/21
remedy [1] 215/12
remember [79]
remembered [1]
194/24
REMOTE [1] 178/15
removed [1] 219/21
repeatedly [1] 193/19
rephrase [5] 183/5
205/10 211/14 217/3
235/8
report [10] 210/20
210/23 213/1 213/4
213/5 213/6 213/6
213/11 220/12 242/6
REPORTED [1] 178/16
reporter [4] 178/17
181/18 240/5 242/5
REPORTER'S [1]
241/13
reports [1] 237/22
represent [2] 216/11
217/18
representation [5]
217/8 217/10 217/20
219/20 235/5
representative [1]
217/5
representatives [1]
217/7
represented [1] 223/21
representing [1]
181/19
represents [1] 216/18
request [2] 228/10
233/5
requested [1] 242/7
requesting [3] 217/20
238/25 239/9
reserved [1] 179/22
resignation [5] 180/15
214/7 221/5 221/12
234/22
resolution [1] 231/10
resolved [1] 230/24
respect [1] 238/24
respective [1] 179/20
respond [3] 188/7
194/3 199/12
responded [3] 194/21
196/14 199/21
Respondent [1] 186/21
respondents [1]
185/18
responding [4] 185/15
185/19 185/25 188/7

response [3] 227/14
237/22 238/17
responsible [2] 185/18
234/9
restroom [2] 198/15
198/17
result [1] 234/13
resulted [2] 199/16
231/10
retaliated [4] 188/13
222/6 222/7 222/12
retaliation [6] 185/14
185/23 185/25 186/1
222/10 222/11
review [5] 205/2
228/10 242/6 244/10
244/11
reviewed [2] 205/4
228/12
Richard [1] 217/11
right [39] 182/1 182/11
182/19 183/10 184/21
185/11 185/15 186/11
186/14 186/21 187/6
188/12 188/15 190/5
190/19 190/21 193/3
195/5 195/16 199/18
202/1 202/14 209/11
211/4 212/4 212/13
218/4 222/14 223/5
225/6 228/23 229/12
229/13 229/23 232/2
232/4 235/2 240/1
240/12
Rights [5] 215/10
215/22 218/11 218/16
218/18
Romero [9] 194/7
194/12 194/16 194/17
208/11 208/16 209/7
209/11 212/7
RP [2] 185/14 185/15
RPR [5] 178/16 241/4
241/10 242/16 244/19
Rule [2] 244/24 244/25
rules [3] 186/19 186/24
244/12

**S**

said [21] 184/3 184/9
184/13 196/4 196/7
196/9 196/21 196/25
196/25 196/25 197/1
197/6 197/7 201/23
203/2 208/13 211/1
211/3 211/6 212/12
221/2
SALABARRIA [17]
178/12 182/7 182/11
200/1 202/6 205/3
206/17 208/12 209/8
209/12 226/24 241/5
242/6 243/4 243/20
244/2 244/7
same [2] 203/7 208/20
saw [1] 225/13
say [11] 186/18 192/19
217/16 219/6 221/15
221/23 224/6 227/16

## S

say... [3] 230/23 232/1 237/10
saying [8] 183/6 190/2 192/11 192/16 197/14 197/21 206/5 210/4
says [54] 184/15 185/2 185/14 185/19 185/24 186/20 191/4 191/4 191/24 192/6 192/18 193/12 193/18 193/18 193/23 194/2 194/7 194/11 194/15 194/19 195/6 195/12 195/15 195/16 195/22 196/14 196/21 197/5 199/6 199/12 199/15 199/17 199/23 202/5 202/10 202/23 207/12 207/13 207/15 207/21 208/3 208/10 208/19 210/7 213/6 214/20 221/7 231/1 231/6 232/20 233/2 234/3 234/6 238/21
scene [1] 199/24
scroll [5] 186/6 190/11 190/11 190/16 230/8
second [11] 183/13 184/24 185/13 210/17 213/23 214/1 214/24 215/18 217/14 224/24 237/21
security [5] 236/1 236/12 236/19 236/19 237/1
see [12] 184/14 184/17 184/24 186/19 187/1 189/6 199/25 209/10 231/20 233/6 234/4 234/14
seemed [1] 219/16
seen [10] 213/5 214/8 225/11 230/3 230/5 232/16 232/18 232/18 232/19 233/19
send [4] 192/11 192/15 192/16 239/25
sense [1] 195/3
sent [20] 192/11 192/16 193/12 193/16 202/23 202/24 207/13 207/14 207/20 207/20 208/7 208/14 209/19 209/23 214/17 228/11 237/22 237/25 238/5 238/7
sentence [9] 185/14 191/12 197/20 198/13 198/13 210/12 210/13 210/15 210/15
separated [2] 226/3 226/4
separation [1] 235/17
sergeant [6] 191/5 194/7 202/6 208/12 209/8 209/12
sergeants [1] 195/19

Serrano [13] 202/18 203/3 203/5 203/8 204/4 204/11 204/18 204/22 205/6 205/13 206/14 207/7 212/7
Service [1] 238/19
Services [1] 181/19
set [1] 224/17
settlement [9] 224/18 230/25 231/11 231/17 231/19 231/22 231/24 232/6 234/23
seven [2] 187/6 188/22
several [3] 191/25 193/5 194/20
she [23] 183/23 183/23 184/2 184/2 184/2 184/3 184/7 202/6 202/10 202/10 202/14 202/14 202/23 203/25 204/25 207/3 207/4 207/20 208/13 210/17 227/3 227/3 227/4
she's [2] 183/24 204/24
shift [8] 191/6 191/9 192/9 202/18 202/21 210/5 210/21 210/24
shouldn't [1] 184/7
show [7] 184/16 213/25 224/25 229/23 232/23 233/13 234/17
showing [3] 189/5 225/6 232/12
shows [1] 213/1
side [1] 243/17
sign [2] 244/10 244/10
signature [3] 186/12 234/1 234/25
signed [12] 186/11 186/14 189/15 189/18 189/19 189/24 189/25 225/25 231/12 231/23 232/7 241/8
significance [1] 216/8
signing [3] 179/21 233/23 244/21
simple [3] 204/10 211/15 219/4
since [9] 191/11 193/15 193/25 206/18 208/16 211/4 211/16 211/25 217/24
sitting [7] 200/8 200/18 201/6 205/20 213/17 228/19 235/10
six [7] 187/6 188/5 188/22 210/19 212/5 212/23 221/5
slip [4] 191/9 191/25 192/4 192/4
SMITH [2] 179/2 244/3
so [83]
some [5] 190/12 208/7 223/19 229/2 230/24
somebody's [1] 195/10
someone [1] 217/17
something [2] 210/9 237/6

sorry [7] 190/15 182/21 188/10 223/8 225/1 225/1 229/10
sounded [2] 195/6 195/9
sounds [1] 195/10
SOUTHERN [1] 178/2
speak [18] 182/18 182/21 187/14 188/1 188/1 200/20 200/22 201/7 201/12 201/14 212/11 212/15 212/16 212/18 212/20 216/6 217/25 237/13
speaking [2] 200/14 206/21
speaks [1] 191/6
specific [9] 195/13 195/19 197/14 198/5 198/11 200/14 218/23 218/25 219/9
specifically [6] 197/14 201/18 208/8 219/5 230/6 232/19
spell [1] 212/8
spellings [1] 215/2
split [2] 193/2 193/5
spoke [12] 182/17 183/21 191/7 191/9 195/12 195/16 196/3 202/18 203/2 203/5 206/22 206/23
spoken [11] 194/17 200/5 201/19 202/2 202/3 203/8 203/12 206/18 208/16 211/18 217/23
squad [8] 202/7 207/15 207/21 207/24 208/4 208/7 210/4 210/4
Stand [7] 181/8 198/19 198/25 199/3 229/20 238/11 240/6
Standby [1] 198/21
stands [1] 196/20
state [6] 178/17 190/6 241/2 241/4 241/11 242/2
stated [2] 217/21 243/18
statement [19] 204/4 204/11 204/18 204/21 204/22 205/5 205/13 205/21 206/2 206/6 206/8 206/12 206/14 208/25 227/14 227/23 228/2 228/5 228/5
statements [2] 200/12 200/15 200/24 201/16 201/24 203/16 203/20 212/23 220/1
STATES [1] 178/1
stating [1] 201/1
station [7] 195/25 196/10 196/22 197/4 198/9 198/18 213/2 220/24
stats [7] 202/7 207/15 207/21 207/24 208/4 208/7 208/14

Statute [1] 244/13
statutory [1] 218/12
stay [1] 238/2
Stella's [1] 220/23
stenographic [2] 178/17 242/7
stenographically [1] 242/6
step [1] 198/23
Steven [2] 202/18 219/13
still [3] 226/1 226/5 226/6
stipulated [1] 179/19
stop [4] 190/17 190/18 199/16 217/16
Street [1] 199/16
stuff [1] 237/24
subject [1] 199/23
submit [1] 227/25
submitted [8] 189/12 227/13 227/17 228/4 228/5 228/8 228/15 228/20
substantive [1] 189/21
suffered [1] 222/8
suggested [1] 244/11
SUITE [2] 179/3 244/4
summoned [2] 215/25 216/10 216/12 216/14 219/18
Sunday [1] 191/4
supervise [2] 197/21 197/24
supervisor [4] 191/11 195/13 195/17 195/18
supplementation [1] 220/2
support [4] 209/4 210/1 211/2 220/2
supposed [4] 185/23 201/13 208/8 216/11
sure [9] 184/6 184/23 186/7 202/19 207/18 232/22 236/17 239/3 240/15
suspended [1] 183/9
swear [1] 182/2
sworn [4] 181/21 182/8 218/12 241/7

## T

tactic [1] 223/18
take [6] 184/14 187/11 229/1 229/4 229/7 230/7
taken [3] 199/2 229/19 244/9
taking [2] 215/8 215/20
talk [2] 198/22 212/5
talked [6] 203/9 204/7 218/4 221/24 223/8 235/24
talking [6] 188/16 200/16 201/2 207/13 207/14 207/19
talks [1] 185/17
TAMARA [7] 178/16 181/17 241/4 241/10

242/5 242/16 244/19
Tammy [7] 199/19 212/8 215/1 223/11 239/20 239/24
TANNEN [7] 178/16 181/18 241/4 241/10 242/5 242/16 244/19
taped [2] 219/24
tell [15] 190/17 190/23 191/10 197/22 200/4 206/10 216/6 218/20 218/20 219/7 220/19 228/19 230/9 232/19 236/10
telling [9] 196/22 200/23 204/24 206/1 206/4 206/9 218/17 220/22 226/13
terminated [7] 185/5 211/25 217/22 217/25 218/1 222/9 222/17
termination [4] 221/17 221/25 222/11 234/14
TERRACE [1] 179/9
testified [1] 182/8
testify [1] 224/10
testifying [1] 198/8
testimony [6] 182/2 182/25 183/3 187/15 200/12 211/2
text [4] 193/12 193/17 202/6 208/24
texts [1] 208/12
than [1] 187/12
Thank [5] 182/6 229/13 229/14 229/18 230/10
that [342]
that's [57] 184/12 184/14 185/3 185/6 185/10 185/20 186/11 187/19 188/15 189/25 190/9 194/14 195/9 196/12 197/18 201/1 201/3 202/4 206/4 208/5 208/25 209/9 209/14 209/20 209/24 210/11 210/12 210/15 210/24 212/2 212/12 212/13 212/13 212/14 213/2 214/16 216/16 217/8 218/20 218/25 219/1 219/7 219/8 220/3 221/7 221/7 223/4 223/5 223/7 229/6 230/13 230/17 232/10 232/11 232/22 236/14 238/21 238/22
their [6] 202/11 202/15 210/18 212/6 235/17 236/18
them [16] 203/21 208/20 210/19 211/10 211/18 211/18 212/11 212/15 212/16 212/18 212/20 215/19 217/15 235/14 236/17 240/1
then [42] 185/13 185/24 187/12 187/13 187/25 191/15 192/6

**T**

**then... [35]** 193/12
193/18 193/23 194/2
194/7 194/11 194/19
195/6 195/6 195/12
196/21 197/22 198/13
199/12 199/15 202/4
202/10 203/25 206/6
207/20 208/10 208/19
209/7 209/11 220/18
221/7 222/6 222/7
222/8 226/2 235/2
237/18 238/22 238/24
239/25
**there [28]** 181/15 193/7
193/10 200/3 200/5
204/4 204/22 206/14
214/14 215/25 216/3
216/5 216/12 217/2
218/5 218/23 219/4
219/13 219/13 219/17
221/7 232/18 234/16
237/15 237/19 238/6
238/21 244/13
**there's [7]** 185/13
189/20 189/21 202/20
203/22 204/21 206/5
**Therefore [1]** 201/14
**therein [1]** 234/10
**thereupon [1]** 181/21
**these [16]** 188/11
188/24 192/17 200/13
206/19 211/6 211/11
211/17 211/18 212/5
212/23 215/5 220/2
222/15 222/21 237/11
**they [21]** 191/5 191/11
200/11 208/23 210/20
210/23 211/3 211/18
211/21 215/6 215/22
216/3 216/6 216/10
216/11 216/14 220/16
224/6 224/10 224/11
237/3
**they're [1]** 195/10
**thing [1]** 239/25
**thing's [1]** 191/1
**things [3]** 223/19 229/2
237/12
**think [18]** 185/7 185/17
186/16 187/10 188/2
189/13 189/21 195/9
199/17 206/17 218/3
218/15 223/8 226/6
231/17 236/14 237/22
237/25
**third [1]** 236/12
**third-party [1]** 236/12
**this [144]**
**those [7]** 193/6 197/15
197/16 215/1 215/5
217/7 223/13
**though [2]** 216/25
218/2
**thought [1]** 184/9
**three [4]** 182/12 193/2
193/25 194/22
**through [9]** 189/22

194/13 195/5 197/20
210/12 216/15 220/18
220/24 229/2
**till [4]** 187/18 188/9
191/22 213/7
**time [37]** 178/14 181/9
181/10 187/17 187/17
191/18 191/20 193/15
193/16 193/21 194/1
199/1 199/4 201/6
202/9 203/5 203/8
206/13 207/17 209/18
210/17 214/6 214/21
214/22 214/23 216/24
225/13 225/19 229/4
229/7 229/17 229/21
230/24 238/5 238/12
238/15 240/7
**times [2]** 194/3 227/5
**today [10]** 181/17
181/18 194/25 200/8
200/18 201/7 205/20
213/17 228/19 235/10
**Today's [1]** 181/10
**told [26]** 187/10 187/19
187/20 188/2 191/5
191/17 191/19 191/21
194/8 195/23 196/2
199/7 199/7 200/1
200/6 202/10 202/14
206/7 206/17 206/18
206/20 210/22 211/6
211/19 216/3 217/19
**tone [2]** 195/6 195/10
**too [3]** 191/13 219/1
219/8
**took [1]** 188/23
**top [4]** 188/18 195/16
198/1 215/15
**tow [1]** 199/24
**towards [2]** 188/9
188/21
**transcribed [1]** 244/9
**transcript [10]** 239/24
242/6 242/7 243/2
244/8 244/10 244/11
244/14 244/15 244/22
**transported [1]** 199/23
**trick [1]** 236/10
**tried [4]** 187/11 193/23
194/19 217/5
**triggering [1]** 185/23
**truck [1]** 199/25
**true [38]** 191/6 192/2
192/10 193/14 193/19
193/24 194/3 194/9
194/14 194/21 195/4
197/17 198/9 200/9
200/20 201/10 202/8
202/12 202/16 202/24
207/25 208/5 208/25
209/9 209/14 209/20
209/24 210/8 210/24
211/6 211/19 212/12
213/6 215/10 217/2
227/20 242/7 243/18
**truly [1]** 244/17
**truth [3]** 182/3 182/3
182/4

**try [1]** 194/8
**trying [2]** 236/15
237/25
**turned [1]** 192/4
**two [3]** 183/9 231/23
237/12

**U**

**U.S [2]** 180/13 232/24
**ultimately [2]** 231/22
232/6
**unclear [1]** 236/10
**under [7]** 215/10
215/12 218/11 223/13
224/16 243/18 244/12
**understand [26]** 183/2
183/6 183/15 184/3
184/8 184/23 185/22
190/2 192/18 201/3
209/3 211/12 211/13
215/8 218/2 218/7
218/10 218/13 218/18
222/18 223/3 228/7
228/16 228/17 234/12
235/7
**understanding [2]**
182/12 238/25
**Understood [5]** 209/6
210/2 221/3 221/3
240/6
**Unfair [1]** 235/13
**union [1]** 217/6
**union's [2]** 235/4 235/5
**unit [1]** 194/21
**UNITED [1]** 178/1
**Universal [7]** 236/20
236/24 237/1 237/5
237/6 237/16 238/19
**unknown [5]** 214/18
216/4 216/4 219/12
219/12
**unsigned [1]** 190/7
**unsolicited [1]** 202/5
**until [2]** 213/2 213/7
**up [10]** 184/12 185/17
186/5 187/8 193/2
195/7 195/11 197/13
224/17 234/13
**us [3]** 203/24 228/15
**use [3]** 198/15 198/17
243/17

**V**

**vehicle [4]** 199/16
213/1 213/7 220/24
**vendor [1]** 236/12
**verbatim [1]** 196/9
**versus [1]** 181/12
**very [9]** 210/16 211/15
219/4 219/5 219/8
229/3 229/3 229/3
244/17
**via [8]** 178/15 193/23
194/8 195/12 195/17
202/11 202/15 241/6
**Vice [6]** 214/23 214/24
215/17 215/18 217/13
217/14
**video [16]** 178/12

179/14 180/13 181/11
191/1 199/4 229/11
229/21 218/14 239/21
239/22 239/23 240/4
240/7 242/6 244/7
**videographer [3]**
179/14 181/4 181/17
**violates [1]** 215/13
**violation [5]** 186/18
186/23 215/23 224/2
234/12
**voice [2]** 195/6 195/9
**voicemail [2]** 193/19
194/14
**VOLUME [1]** 178/11
**volunteers [1]** 191/12
**VS [1]** 178/6

**W**

**W-2s [2]** 237/12 237/17
**waited [2]** 199/24
199/24
**waive [3]** 239/17
244/10 244/21
**waived [1]** 239/1
**Waiver [1]** 244/20
**waking [2]** 195/7
195/11
**walk [1]** 220/18
**walking [1]** 210/15
**want [18]** 184/23 190/6
190/12 190/17 207/17
212/1 212/4 212/14
219/22 223/9 223/19
229/4 229/8 230/8
238/3 238/5 238/8
240/14
**wanted [2]** 202/4
216/21
**was [128]**
**Washington [1]** 196/12
**wasn't [8]** 209/25
211/1 219/25 220/20
225/23 226/21 226/25
237/7
**waste [1]** 238/5
**watch [2]** 192/8 192/19
**way [6]** 184/12 187/18
213/11 221/21 223/4
228/24
**Wayne [1]** 214/21
**we [27]** 181/3 181/5
181/6 181/15 183/13
183/21 184/3 185/17
187/14 189/22 198/18
206/11 207/19 218/3
223/8 226/3 228/7
228/11 228/25 229/5
235/24 236/14 237/10
238/4 238/4 238/10
240/4
**we'll [7]** 184/14 195/5
198/13 200/17 240/12
240/12 240/16
**we're [9]** 181/9 181/18
207/13 210/12 210/15
217/17 239/18 240/4
240/5
**we've [2]** 184/20

**week [1]** 231/23
**weeks [2]** 231/23
237/12
**well [26]** 183/23
184/12 187/10 187/19
190/1 191/4 193/7
193/9 195/22 197/1
197/9 198/2 201/17
205/2 210/11 216/8
221/8 222/10 223/23
226/8 230/7 230/14
232/20 237/15 240/5
240/13
**went [1]** 193/19
**were [40]** 183/6 184/9
185/19 191/10 191/15
191/21 192/2 193/7
193/9 193/10 195/7
195/23 195/23 196/22
199/7 199/8 199/9
199/9 207/19 211/25
214/10 214/15 215/5
215/6 216/3 216/10
216/11 216/14 217/7
220/22 220/23 223/21
224/4 224/10 225/15
226/1 226/5 235/25
236/11 238/18
**weren't [3]** 200/3
201/24 220/16
**what [122]**
**what's [5]** 198/9
203/18 208/2 236/4
236/6
**whatnot [1]** 236/18
**when [27]** 182/18
188/24 190/11 190/17
193/7 193/9 202/2
203/7 206/19 209/22
210/19 211/24 211/25
216/3 219/13 225/13
226/4 226/8 226/13
226/16 228/14 230/8
231/18 233/23 235/24
237/4 238/18
**when's [1]** 203/5
**whenever [2]** 187/21
188/17
**where [8]** 186/20
195/15 195/23 209/10
216/21 223/20 232/1
237/25
**whether [1]** 205/12
**which [21]** 182/20
185/25 188/10 192/1
192/7 195/13 197/12
218/11 221/5 221/15
221/23 226/11 230/5
231/18 231/24 233/4
233/4 233/19 237/13
237/19 237/22
**while [5]** 183/3 183/13
183/25 198/23 220/23
**who [19]** 186/4 186/21
189/23 191/17 191/19
199/21 214/21 214/22
214/23 217/10 223/21
223/22 224/6 225/18

**W**

**who...** [5] 226/18 227/2
236/5 237/9 238/22
**whole** [2] 182/3 239/25
**why** [7] 210/12 210/15
216/13 216/16 216/16
218/5 236/10
**will** [12] 181/21 182/3
218/3 218/5 218/8
218/11 218/14 218/19
231/18 239/22 240/1
244/14
**Wilson** [4] 194/7
194/11 194/15 194/17
**withdraw** [1] 235/9
**withdrawn** [1] 233/5
**within** [3] 191/24
237/11 244/12
**without** [3] 215/25
217/1 217/5
**witness** [16] 180/2
181/21 182/5 200/12
200/12 200/24 201/15
201/24 203/3 203/13
203/21 206/12 206/25
207/8 220/1 227/8
**words** [2] 196/2 196/24
**work** [7] 188/1 191/11
230/25 236/13 236/21
236/22 240/2
**worked** [4] 236/5 236/7
238/18 238/19
**working** [6] 191/19
191/21 192/2 193/7
220/23 236/1
**workplace** [2] 186/19
186/24
**works** [2] 212/2 229/12
**would** [26] 188/3
189/18 189/24 194/8
196/4 197/23 204/19
204/20 206/2 206/8
211/20 211/22 211/22
213/14 213/15 216/25
216/25 217/4 217/6
217/22 226/9 226/10
227/11 228/6 238/2
239/3
**wouldn't** [3] 187/14
188/1 217/6
**WRITE** [1] 243/2
**writes** [2] 209/22
210/16
**writing** [1] 230/16
**written** [16] 203/16
203/20 204/4 204/11
204/18 204/21 204/22
205/5 205/12 205/21
206/2 206/5 206/7
206/12 212/23 233/3
**wrote** [3] 186/4 189/23
208/3

**Y**

**yeah** [13] 183/20
184/20 186/21 195/2
195/16 205/11 218/24
225/23 227/21 229/14

238/10 240/4 240/9
**years** [9] 187/8 187/8
188/5 188/5 188/11
188/22 193/22 193/25
194/22
**Yep** [1] 202/14
**yes** [63] 181/7 182/15
183/1 183/11 183/16
184/8 184/14 184/18
184/22 185/1 185/4
185/16 186/10 186/13
186/15 187/2 187/22
187/24 189/1 189/7
190/22 191/23 192/14
192/16 192/21 195/21
196/11 196/13 203/4
204/4 204/21 206/4
214/9 215/11 217/25
222/12 223/25 224/3
224/5 225/8 225/12
227/19 227/24 230/15
230/18 230/20 231/2
231/9 231/21 232/9
233/1 233/9 233/12
233/25 234/2 234/5
234/8 234/11 234/15
235/1 237/23 238/2
240/11
**you** [451]
**you'd** [4] 188/2 191/17
191/19 191/21
**you're** [32] 183/2 187/3
188/16 188/20 190/1
190/2 197/21 198/20
198/22 200/14 200/16
202/13 206/1 206/5
207/18 208/8 208/9
209/10 210/11 218/16
220/19 226/13 228/13
233/8 234/6 234/9
235/4 235/7 239/1
239/4 239/8 239/8
**you've** [16] 196/18
201/4 203/3 203/8
203/20 204/7 205/11
206/24 207/7 210/14
213/5 214/8 224/1
228/15 233/19 239/1
**your** [124]
**yours** [2] 212/20
244/17
**yourselves** [1] 181/20

**Z**

**ZOOM** [2] 178/15 241/6

**EXHIBIT**

**9**

03.15.24 SALABARRIA  TMT

## MIAMI BEACH POLICE DEPARTMENT
### Initial Report Concerning a Police Employee - Allegation of Employee Misconduct

| Date and Time Reported<br>12/30/2020    2345 hours | Received By (Employee Name)<br>Lieutenant Steven Cosner | ( X ) In Person  (  ) By Phone<br>(   ) Other _____ |
|---|---|---|
| Date and Time Occurred<br>12/28/2020   0000-0600 hours | Location of Occurrence<br>MBPD | |

| Reporting Party's Name<br>Lieutenant Steven Cosner | Race/Sex<br>W/M | D.O.B | Address: 1100 Washigton Ave., Miami Beach, Florida 33139 | Telephone # |
|---|---|---|---|---|

**Specific Allegation (In Brief):** Failure to Supervise, Conduct Unbecoming, Insubordination, Neglect of Duty, Untruthfulness (lying/false statements), Performance of Duties, Failure to Monitor Radio

| Employee (s) Name | |
|---|---|
| 1. Sergeant Jessica Salabarria | 3. |
| 2. | 4. |

### Witnesses

| Name | Race/Sex | D.O.B | Address | Telephone |
|---|---|---|---|---|
| Lieutenant Steven Cosner | W/M | | Resident: MBPD | |
| Officer Werner Baumer | W/M | | Business: 1100 Washington Ave., Miami Beach, FL 33139 | |
| Officer Richard Ocejo | W/M | | | |
| Officer Steven Serrano | W/M | | | |
| Officer Christopher Garrido | W/M | | | |
| Officer Hansel Romero | W/M | | | |
| Officer Rodolfo Albaladejo | W/M | | | |
| | | | Resident<br>Business | |

### Details of Allegation

On Sunday night, 12/27/2020 at approximately 2200 hours, I advised Sergeant Jessica Salabarria that we needed a Sergeant on overtime for the midnight shift.  I told her that she was the next supervisor to be forced to work over since we did not have any volunteers for the position.  She was told that she would be assigned to Area 3 and would be working from 0000-0600 hours.  She acknowledged the order and within several minutes she provided me with an overtime slip completed by her in which she documented in her own handwriting that she was working in Area 3. She left the sergeant's office shortly thereafter.  At approximately 0355 hours, I forwarded an email to Sergeant Salabarria with the details and watch orders that needed to be assigned to the Area 3 officers for completion prior to the end of their shift.  I then sent a text message to her cellular phone advising her to check her email at 0359 hours. After a few minutes I did not receive an acknowledgement of the text message, so I tried to call her phone at 0404 hours.  Then phone rang repeatedly and went to voicemail.  I tried to raise her via the police radio immediately afterwards.  The dispatcher raised her multiple times with no response.  Sergeant Wilson Romero advised via radio that he would try to call her.  He called me at 0411 hours to advise that he could not reach her and that her phone rang through to voicemail.  I again tried to have the dispatcher raise her, and after several attempts by name and unit

City 001250

number, she finally responded. The tone of her voice sounded as if she was just waking up. I spoke with her via the supervisor channel and asked her where she was. She told me that she was "05". I responded by asking if she meant, "05 at the NESS". She said no and that she was at the main station. I asked if she was aware that she was assigned to Area 3 and she answered affirmatively. I then ordered her to respond to Area 3 and to check her email.

I became involved in a vehicle stop along 71 street that resulted in an arrest at 0416. Officer Ocejo was one of the officers who responded as back-up. After the subject was transported, I waited on scene with Officer Ocejo as he waited for a tow truck. I asked Officer Ocejo to check his email to see if the details had been forwarded by Sergeant Salabarria. He told me that he did not have any emails from her. This was at approximately 0520 hours. At 0543 hours, I received an unsolicited text message from Sergeant Salabarria advising that she had emailed me the squad stats and the detail assignments. She claimed that she had told the officers via landline and email of their detail assignments. The email that she sent me was sent at 0536 hours. It included the squad stats and detail assignments. I called Officer Hansel Romero and asked him if he had received any emails, texts, or phone calls from Sergeant Salabarria advising him of detail assignments. He said that he did not and that she had only asked for stats in an email that was sent at 0521 hours. That email was forwarded to me by Officer Ocejo. I began calling all the officers assigned to Area 3 and inquired the same of each of them. Every one of the officers advised that they had not received a call or text advising of the details. Officer Romero then forwarded an email that he received from Sergeant Salabarria at 0542 hours. The email had been sent to each of the Area 3 officers. It was the detail assignments and began with a highlighted line stating, "squad per our conversation please note the below details for our shift". I found this very concerning because it was now the second time that she had claimed to have had a conversation with the officers about their assignments when all six of them claimed that never happened and they did not report to any assigned details during the shift.

I sent an email to Lieutenant Jorge Garcia asking for a Detail Report for Sergeant Salabarria's assigned marked vehicle via the AVL system. My inquiry was for her vehicle movement from 2200 hours on 12/27/2020 through 0600 hours on 12/28/2020. The Detail Report showed that her vehicle had been parked at the station from 2200 hours on 12/27/2020 until 0423 hours on 12/28/2020 which was a few minutes after we spoke on the supervisor channel. For a total of 6 hours and 23 minutes. It is unknown how long the vehicle had been parked prior to that. The report indicated that she left the station and drove directly to 73rd Street and Ocean Terrace where she again parked her vehicle at 0440 hours. The vehicle remained in that position until 0533 hours for a total of 53 minutes. She then left that location and drove directly to the MBPD headquarters.

Note that of the six officers assigned to Area 3 on the shift in question 4 of them have 2 years of experience or less.

Sergeant Salabarria's actions show a willful effort to deceive a supervisor and a failure to obey a direct order from said supervisor. She failed to report to her assigned zone and failed to supervise the officers under her watch. She failed on multiple occasions to respond to the police radio and showed extreme neglect in the performance of her duties.

City 001251



## MEMORANDUM

**EXHIBIT**

**10**

03.15.24 SALABARRIA  TMT

TO:        Sergeant, Jessica Salabarria

FROM:      Rick Clements, Chief of Police

DATE:      January 25, 2021

RE:        Implementing Letter of Resignation

---

On December 18, 2020, you entered into a Last Chance Agreement ("Agreement"). A copy of that Agreement is attached as Exhibit A. Additionally, as part of the Agreement, on that same date you signed a Letter of Resignation ("Resignation"). A copy of that Resignation is attached as Exhibit B.

Based on the violations outlined below, and per the Agreement, I am implementing the Resignation, effective immediately and as of the date indicated on Resignation attached as Exhibit B.

Specifically, on December 30, 2020, Lieutenant, Steven Cosner submitted an Allegation of Employee Misconduct ("AEM"). A copy of the AEM is attached as Exhibit C. The allegations of the AEM are incorporated in full herein.

On January 19, 2021, I held a meeting with you to discuss the allegations in the AEM. In addition to you and I, also present at that meeting was:

- Wayne Jones, Deputy Chief
- Paul Ozaeta, Lieutenant (FOP President)
- Arley Flaherty, Sergeant (FOP First Vice President)
- Reggie Lester, Sergeant (FOP Second Vice President)
- Delvin Brown, Lieutenant (FOP Grievance Chairman)
- Steven Cosner, Lieutenant
- A.J. Prieto, Captain Internal Affairs.

During the meeting, you were provided a copy of the "AEM" and given the opportunity to review the "AEM" in full. After your review, you informed me that, despite being assigned to the North District, you did not report to the North District. Instead, you remained in your assigned City vehicle, stationary at the City's main police station. You further informed me that while in your vehicle at the police station (for what was at or around four (4) plus hours) you worked on administrative issues (an employee evaluation

City 001253

for Police Officer Vincent Stella) and worked on your "school work." The "school work" at issue is not work assigned by the City. You informed me that, independent from the City, you are working toward a Master's Degree.

Further, you acknowledged that you missed two radio calls specifically to you from Lieutenant Cosner and a phone call from Lieutenant Cosner to your personal cell phone. Ultimately, you did not respond to the North End Sub-Station (in the North District) until approximately 4:20 a.m., and only after being told to do so by Lieutenant Cosner. You further acknowledged that despite receiving an email from Lieutenant Cosner at approximately 3:20 a.m. directing you to have certain officers perform certain assignments, you did not issue the assignments until after 4:20 a.m., and only after speaking with Lieutenant Cosner. You again indicated to me that prior to speaking to Lieutenant Cosner at 4:20 a.m., you were focused on the employee evaluation and your independent school work.

In speaking with Lieutenant Cosner during this meeting, he indicated, among other things that you informed him that you had conveyed the assignment details, when in fact, you had not. You conveyed the assignment details after speaking to Lieutenant Cosner despite telling him you had already done so.

Moreover, Lieutenant Cosner indicated in this meeting that you did not leave the main police station during most of your shift and only left the police station when instructed to do so by Lieutenant Cosner.

The above is only a summary of the events of the January 19, 2021 meeting.

After the meeting, the City reviewed your City issued laptop computer, which is the computer that you would have used to work on Officer Stella's evaluation. A review of the laptop shows that Officer Stella's evaluation was not created until January 10, 2021. The City's Information Technology Department confirmed that Officer Stella's evaluation was not created or saved anywhere else on the City's system.

Pursuant to paragraph 4 of the Agreement, I determine that you have not complied with the Agreement and engaged in conduct that is beyond an individual, discreet or minor policy violation. Pursuant to paragraph 4 of the Agreement, my decision in this regard is not subject to review or explanation. Accordingly, as stated above, I am implementing your Resignation.

# EXHIBIT A

City 001255

## LAST CHANCE AGREEMENT

THIS LAST CHANCE AGREEMENT is entered into between the CITY OF MIAMI BEACH, FLORIDA (hereinafter, the "City"), FRATERNAL ORDER OF POLICE, (hereinafter, "the Union") and JESSICA SALABARRIA (hereinafter, "SALABARRIA" or "Employee").

WHEREAS, SALABARRIA is employed by the City as a Police Officer in the City's Police Department.

WHEREAS, SALABARRIA is subject to the terms and conditions of employment contained in the Collective Bargaining Agreement between the Union and the City effective October 1, 2018 through September 30, 2021;

WHEREAS, SALABARRIA is the subject of an Internal Affairs ("IA") Investigation, IA Case Number 2020-010, which arose from SALABARRIA's involvement in not being on-duty when she was supposed to be, and from SALABARRIA's claims of being on-duty in the City when she was actually outside the City;

WHEREAS, the City wishes to continue to employ Employee, Employee wishes to continue to be employed by the City, and the FOP desires for Employee to continue to be employed under the terms and conditions described herein; and

WHEREAS, the Employee admits that she committed misconduct in association with IA Case Number 2020-010 and was in violation of numerous City and Police Department policies and the City Personnel Rules for the Classified Service; and

WHEREAS, the purposes of this Agreement, with which all the Parties concur, include: to protect and preserve the integrity of the Police Department and all its officers and to give Employee the opportunity to further and support that purpose; and to give Employee the

City 001256

DocuSign Envelope ID: CC3C604A-8185-4007-95EB-8735D7C89FEF

opportunity to rehabilitate herself personally and as a police sergeant for  the City and this Department; and to give Employee an opportunity to preserve her career.

NOW, THEREFORE, without establishing precedent for any purpose and intending to be bound, the Parties agree as follows:

1.      All of the above statements are true and correct to the best of the Parties' belief and knowledge and for a five (5) year period beginning with the execution of this Agreement by all parties, SALABARRIA will be subject to the provisions of this Agreement.

2.      During this period, SALABARRIA must be on-duty and in the City limits during all of her scheduled shifts unless given prior authorization. For the avoidance of confusion, this means that, during the terms of this Agreement, SALABARRIA shall not be outside the City limits when she is on-duty, shall not tell the City she's on-duty when she is outside the City's limits, and shall not leave before the end of her scheduled shift, unless given prior authorization.

3.      Additionally, SALABARRIA shall refrain from violating any City or Police Department policies, rules or regulations; Standard Operating Procedures ("SOPs") or Personnel Rules, all of which (including any amendments or additions) are incorporated herein by reference.  In any instance during which City or Police Department policies, procedures or Personnel Rules differ from or conflict with the stipulations set forth in the applicable collective bargaining agreement, the City or Police Department policies, procedures or Personnel Rules shall prevail.

4.      The Chief of Police shall exclusively assess and determine Employee's compliance with this Agreement. The Chief's decision as to compliance with this Agreement shall not be subject to any grievance and/or review of any kind by SALABARRIA and/or the Union and is not subject to explanation or review.

CITY                                  Page 2 of 7              UNION              JESSICA

City 001257

DocuSign Envelope ID: CC3C604A-8185-4007-95EB-8735D7C89FEF

5.      Failure to comply with any portion or requirement of this Agreement (including but not limited to the requirement not to violate any City or Police Department policies, Standard Operating Procedures ("SOPs") or Personnel Rules, as referenced in paragraph 3 above) may result in the immediate implementation of the attached letter of resignation as referenced in paragraph 9 below. It is the intent and understanding of the parties that the violations contemplated to trigger the implementation of the attached letter of resignation shall not be for individual, discreet minor policy and procedural violations. The parties agree that repeated violation of the same, discreet minor policy may result in an event triggering the implementation of the attached letter of resignation. In that event, the Employee and the Union understand and agree there will be no recourse or review available pursuant to any grievance, appeal or review process under any federal, state or local statute, ordinance, collective bargaining agreement, or in any other forum or under any other process or procedure.

6.      SALABARRIA shall serve a four-week (160 hour) suspension without pay and waive any and all rights to grieve or appeal that suspension. Employee shall also be subject to the additional provisions of the Settlement Agreement to which this Agreement is attached and is made part of via incorporation by reference.

7.      Further, for the same five (5) year period described above, the Chief of Police shall have full discretion regarding Employee's assignments, including, without limitation, duties, supervisor and chain of command.  Employee shall have the ability to bid for shift and days off, if the employee is reassigned her duty hours and days off shall remain the same.

8.      For a period of one (1) year from the date of execution of this Agreement, Employee is not eligible for any promotional opportunities.

_____
CITY

_____
UNION

_____
JESSICA

City 001258

DocuSign Envelope ID: CC3C604A-8185-4007-95EB-8735D7C89FEF

9.      Employee shall sign an irrevocable letter of resignation which shall take effect immediately upon her violation of this Agreement or any part of it at any time during the term of this Last Chance Agreement. .

10.      Employee shall attend and cooperate with any training required by the Chief of Police.

11.      If during the above-referenced five (5) year period, SALABARRIA violates any provisions of this agreement or any City or Police Department policies, Standard Operating Procedures ("SOPs") or Personnel Rules and/or regulations as previously referenced in paragraph #4 , her resignation shall be effective , without the right to grieve or otherwise contest, in any manner, her separation. .

12.      In the event that SALABARRIA is separated pursuant to the terms and conditions of this Last Chance Agreement, she and the Union understand that her separation is not subject to appeal pursuant to the contractual grievance/arbitration procedure, or otherwise. In other words, SALABARRIA agrees that should she be separated pursuant to the terms of this agreement  that she waives her right to utilize the contractual grievance and arbitration procedure and she further waives the right to challenge or appeal her separation pursuant to any administrative or statutory avenue that may exist.

13.      The City retains the right to rely upon the facts and circumstances of the events from which this Last Chance Agreement arose in any future proceeding in the event the Employee successfully meets the terms and conditions referred to in this Agreement but thereafter has deficiencies in conduct or performance, and such deficiencies shall be sufficient to warrant discipline, including dismissal.

CITY

UNION          JESSICA

City 001259

DocuSign Envelope ID: CC3C604A-8185-4007-95EB-8735D7C89FEF

14.     It is understood and agreed by all parties hereto that this Last Chance Agreement is executed based on the particular circumstances of this case and does not establish precedent for the resolution of other cases.

15.     SALABARRIA acknowledges that she could be terminated from her employment from the City as a result of her conduct as referenced above and that remaining employed by the City is adequate consideration for entering into this Last Chance Agreement, serving the suspension without pay and waiving the rights described herein and in the Settlement Agreement.

16.     SALABARRIA being of lawful age, for and in consideration of the above-action agreed to by the City, and other valuable consideration received from or on behalf of the City, receipt whereof is hereby acknowledged, does hereby release, acquit, satisfy and forever discharge the City, as well as each and everyone of the City's former and current officers, agents, attorneys, employees and officials -- in both their official and individual capacities -- and their successors and assigns, from any and all claims, cause and causes of action, grievances, unfair labor practice charges, lawsuits, claims of employment discrimination (including, but not limited to claims under the Americans With Disabilities Act), and any and all other claims and demands whatsoever, in law or in equity, tort or contract, which SALABARRIA has or may have against the above-named individuals in both their individual and official capacities, from the beginning of the world until today, including, but not limited to, all matters concerning or arising out of her employment with the CITY, her discipline stemming from the incidents described in this Last Chance Agreement and the execution of this Last Chance Agreement.

17.     It is understood and agreed that this Last Chance Agreement does not constitute an admission by the City or SALABARRIA of any violation of the collective bargaining

CITY                            Page 5 of 7              UNION            JESSICA

City 001260

agreement. This Last Chance Agreement is being entered into by the parties solely for the purpose of avoiding the expense and inconvenience of further administrative proceedings.

18.     SALABARRIA has received and reviewed this Last Chance Agreement prior to executing it and she agrees to be bound by its terms and conditions.

19.     Prior to signing this Last Chance Agreement, SALABARRIA had the opportunity, and did, in fact, consult with her attorney and/or with the Union.

20.     This Last Chance Agreement, and the Settlement Agreement which is attached constitutes the entire understanding and agreement of the parties hereto, and can be modified, amended or revoked only by express written consent of all parties.

21.     This Last Chance Agreement shall be governed by and construed in accordance with the laws of the State of Florida, and where applicable, federal laws. The language of this Last Chance Agreement shall be construed as a whole, according to its fair meaning, and not strictly construed for or against either party.

22.     In the event that any party to this Last Chance Agreement institutes legal proceedings regarding the terms of this Last Chance Agreement, it is stipulated and agreed that such a claim shall be heard and determined by the court, and not by a jury, in Miami-Dade County, Florida.    **SALABARRIA AGREES AND UNDERSTANDS THAT SHE IS WAIVING THE RIGHT TO A JURY TRIAL, IF ONE EXISTS, AS TO ANY CLAIM REGARDING THE TERMS OF THIS AGREEMENT.**

CITY                                    Page 6 of 7                          UNION          JESSICA

City 001261

This Agreement is dated the _____ day of December 2020, in Miami-Dade County, Florida.

**JESSICA SALABARRIA**

DocuSigned by:

Paul J. Aguila

2B3D6240F92B45D...

**CITY MANAGER**
**CITY OF MIAMI BEACH**

Date: _12/18/2020_

Date: _12/23/2020 | 1:34 EST_

**FRATERNAL ORDER OF POLICE**

_____ President
Signature & Title

Kevin Millan    President
Print Name & Title

_12/18/2020_
Date

**CHIEF OF POLICE**

_12/15/2020_
Date

City 001262

# EXHIBIT B

City 001263

December 18, 2020

City of Miami Beach
Human Resources Department
Miami Beach City Hall
1700 Convention Center Drive
Miami Beach, FL 33139

Re:    *Letter of Resignation as Part of Settlement Agreement and Last Chance Agreement*

To Whom It May Concern:

Pursuant to the Settlement Agreement and Last Chance Agreement to which this Letter of Resignation is attached, I resign my employment with the City of Miami Beach, effective January 25, 2021.

Very Truly Yours,

Jessica Salabarria.

City 001264

# EXHIBIT C

City 001265

## MIAMI BEACH POLICE DEPARTMENT
### Initial Report Concerning a Police Employee - Allegation of Employee Misconduct

| Date and Time Reported 12/30/2020   2345 hours | Received By (Employee Name) Lieutenant Steven Cosner | ( X ) In Person  (  ) By Phone (  ) Other _____ |
|---|---|---|
| Date and Time Occurred 12/28/2020   0000-0600 hours | Location of Occurrence MBPD | |

| Reporting Party's Name Lieutenant Steven Cosner | Race/Sex W/M | D.O.B | Address: 1100 Washigton Ave., Miami Beach, Florida 33139 | Telephone # |
|---|---|---|---|---|

**Specific Allegation (In Brief):** Failure to Supervise, Conduct Unbecoming, Insubordination, Neglect of Duty, Untruthfulness (lying/false statements), Performance of Duties, Failure to Monitor Radio

| Employee (s) Name | |
|---|---|
| 1. Sergeant Jessica Salabarria | 3. |
| 2. | 4. |

### Witnesses

| Name | Race/Sex | D.O.B | Address | Telephone |
|---|---|---|---|---|
| Lieutenant Steven Cosner | W/M | | Resident: MBPD | |
| Officer Werner Baumer | W/M | | Business: 1100 Washington Ave., Miami Beach, | |
| Officer Richard Ocejo | W/M | | Fl. 33139 | |
| Officer Steven Serrano | W/M | | | |
| Officer Christopher Garrido | W/M | | | |
| Officer Hansel Romero | W/M | | | |
| Officer Rodolfo Albaladejo | W/M | | | |
| | | | Resident | |
| | | | Business | |

### Details of Allegation

On Sunday night, 12/27/2020 at approximately 2200 hours, I advised Sergeant Jessica Salabarria that we needed a Sergeant on overtime for the midnight shift. I told her that she was the next supervisor to be forced to work over since we did not have any volunteers for the position. She was told that she would be assigned to Area 3 and would be working from 0000-0600 hours. She acknowledged the order and within several minutes she provided me with an overtime slip completed by her in which she documented in her own handwriting that she was working in Area 3. She left the sergeant's office shortly thereafter. At approximately 0355 hours, I forwarded an email to Sergeant Salabarria with the details and watch orders that needed to be assigned to the Area 3 officers for completion prior to the end of their shift. I then sent a text message to her cellular phone advising her to check her email at 0359 hours. After a few minutes I did not receive an acknowledgement of the text message, so I tried to call her phone at 0404 hours. Then phone rang repeatedly and went to voicemail. I tried to raise her via the police radio immediately afterwards. The dispatcher raised her multiple times with no response. Sergeant Wilson Romero advised via radio that he would try to call her. He called me at 0411 hours to advise that he could not reach her and that her phone rang through to voicemail. I again tried to have the dispatcher raise her, and after several attempts by name and unit

City 001266

number, she finally responded. The tone of her voice sounded as if she was just waking up. I spoke with her via the supervisor channel and asked her where she was. She told me that she was "05". I responded by asking if she meant, "05 at the NESS". She said no and that she was at the main station. I asked if she was aware that she was assigned to Area 3 and she answered affirmatively. I then ordered her to respond to Area 3 and to check her email.

I became involved in a vehicle stop along 71 street that resulted in an arrest at 0416. Officer Ocejo was one of the officers who responded as back-up. After the subject was transported, I waited on scene with Officer Ocejo as he waited for a tow truck. I asked Officer Ocejo to check his email to see if the details had been forwarded by Sergeant Salabarria. He told me that he did not have any emails from her. This was at approximately 0520 hours. At 0543 hours, I received an unsolicited text message from Sergeant Salabarria advising that she had emailed me the squad stats and the detail assignments. She claimed that she had told the officers via landline and email of their detail assignments. The email that she sent me was sent at 0536 hours. It included the squad stats and detail assignments. I called Officer Hansel Romero and asked him if he had received any emails, texts, or phone calls from Sergeant Salabarria advising him of detail assignments. He said that he did not and that she had only asked for stats in an email that was sent at 0521 hours. That email was forwarded to me by Officer Ocejo. I began calling all the officers assigned to Area 3 and inquired the same of each of them. Every one of the officers advised that they had not received a call or text advising of the details. Officer Romero then forwarded an email that he received from Sergeant Salabarria at 0542 hours. The email had been sent to each of the Area 3 officers. It was the detail assignments and began with a highlighted line stating, "squad per our conversation please note the below details for our shift". I found this very concerning because it was now the second time that she had claimed to have had a conversation with the officers about their assignments when all six of them claimed that never happened and they did not report to any assigned details during the shift.

I sent an email to Lieutenant Jorge Garcia asking for a Detail Report for Sergeant Salabarria's assigned marked vehicle via the AVL system. My inquiry was for her vehicle movement from 2200 hours on 12/27/2020 through 0600 hours on 12/28/2020. The Detail Report showed that her vehicle had been parked at the station from 2200 hours on 12/27/2020 until 0423 hours on 12/28/2020 which was a few minutes after we spoke on the supervisor channel. For a total of 6 hours and 23 minutes. It is unknown how long the vehicle had been parked prior to that. The report indicated that she left the station and drove directly to 73rd Street and Ocean Terrace where she again parked her vehicle at 0440 hours. The vehicle remained in that position until 0533 hours for a total of 53 minutes. She then left that location and drove directly to the MBPD headquarters.

Note that of the six officers assigned to Area 3 on the shift in question 4 of them have 2 years of experience or less.

Sergeant Salabarria's actions show a willful effort to deceive a supervisor and a failure to obey a direct order from said supervisor. She failed to report to her assigned zone and failed to supervise the officers under her watch. She failed on multiple occasions to respond to the police radio and showed extreme neglect in the performance of her duties.

City 001267

**EXHIBIT**

**11**

03.15.24 SALABARRIA  TMT

## DECLARATION OF NICHOLAS GUASTO

NICHOLAS GUASTO does hereby submit this declaration pursuant to Florida Statute 92.525(2), and states as follows:

1.    I am over the age of twenty-one (21). I am offering this declaration voluntarily and based on my own personal knowledge.

2.    I am married to the Charging Party in EEOC Charge No. 510-2021-05270, Jessica Guasto.

3.    I am employed by the City of Miami Beach as a police officer.

4.    Prior to Jessica Guasto signing the settlement agreement referenced by the City of Miami Beach in their position statement to EEOC Charge No. 510-2021-05270, I had a series of meetings concerning the disposition of Internal Affairs investigation 2020-10 and the EEOC Charge that Jessica Guasto filed in 2020 (EEOC Charge No. 510-2020-04794).

### Meeting – September 15, 2020

5.    On September 15th, 2020, I attended a meeting with Chief Richard Clements, Miami Beach Police Department, at the police station, 1100 Washington Ave.

6.    I initiated this meeting with the intention of thanking the Chief for bringing me back to work prior to the IA case (2020-10) being completed. We have a long relationship/history, and I thought it appropriate to show my appreciation and to advise him that both Jessica and I wanted to take responsibility for some culpability in the IA case. After a few minutes, Chief Clements steered the conversation towards how he wanted to resolve the case. Chief Clements told me he wanted Jessica and I to go to our IA statements and to say that we were sorry for our actions, that we had both been going through significant challenges personally and professionally, and that we had been seeking shelter with one another. He said he understood the issues that Jessica has faced and that he wanted to help. He said if we go into IA and give statements as he described that he would be able to work with that and to reduce the punishment significantly. He stated he thought this case was similar to the "Motor Unit case" and that he wanted to resolve it with a minor suspension and a repayment of some hours. He said that City Hall wanted to terminate both of us, but that he could help us if we worked with him.

### Meeting – September 22, 2020

7.    On September 22nd, 2020, at 0550 hours, I attended a meeting with Chief Richard Clements at the police station.

8.    The Chief again asked for Jessica's 2020 EEOC charge to be dropped in return for lesser punishment. My understanding is that under EEOC guidelines this is illegal for the Chief to have interfered in an open investigation and promise something in return for it to be dropped. He said he wanted to resolve the case with minor discipline and a repayment of hours and would figure out the best way to do that when we spoke again. He said he didn't have a problem structuring the discipline so that Jessica and I

1

would both be able to take the upcoming promotional test. He also said he wanted to resolve the case without giving a statement but would only be able to do that if Jessica dropped the EEOC charge.

9.      Later that day (09-22-2020), while I was working as a patrolman in the afternoon, I was contacted by a third party and asked if I could respond to the station to meet with him and the Chief. He told me that Chief Clements requested that he contact me and have me respond to the station so we could meet. At this meeting, the Chief again insisted that Jessica's 2020 EEOC charge be dropped and that he would be able to reduce discipline and resolve the case amicably for both Jessica and me. He told me that we should not even be meeting, and that he will deny it if anyone asks, but that he had figured out a way to resolve the case. He told me he wanted to address all of Jessica's concerns about harassment because he understands what she has been through and wanted to help. He echoed the concerns that Deputy Chief Wayne Jones made to me during a previous meeting, that the department had failed Jessica and that the treatment she has received is disgusting and despicable.

10.     Chief Clements told me that Jessica and I needed to contact her attorney, Michael Pancier, and tell him that she wanted to dismiss the 2020 EEOC charge and handle the case internally. Chief Clements said we needed to tell Pancier that we thought there was an opportunity to resolve the IA case and the EEOC charge simultaneously but that we hadn't spoken to the Chief yet. He anticipated Pancier would call Miami Beach City Attorney Michael Elkins and advise of such, and Elkins would call Clements who would then agree to the meeting to resolve the cases. During that meeting, Clements stated he wanted to address all of Jessica's concerns, and that she could have anyone there that she felt comfortable speaking in front of. As Jessica's harassment and treatment is sensitive and uncomfortable to speak about, she has always maintained she wanted people to be present as witnesses. Again, Clements stressed the importance of dismissing the EEOC charge, in exchange for this consideration.

11.     The third party that requested the meeting on Chief Clements' behalf brought up the topic of the discipline for both Jessica and I and suggested that Clements decide on discipline over the next day or two and close the case out quickly with what he thought was appropriate. Clements stated that he thought it appropriate to start with the Motor Unit investigation as a basis for discipline (10 hour suspension and repayment of hours). He further stated that he wanted to still convene the Discipline Panel but that he would speak to the members prior to the hearing so they knew exactly what he wanted to do so he could implement the discipline with their recommendation.

12.     Prior to ending the meeting, Clements said we were getting close to the 180 day limit on the case, but that he would need more time to set up the meeting to resolve Jessica's complaint and stated that the only way we would be able to move forward is for

2

Scanned with CamScanner

Jessica and I to agree to toll the case.[1] He assured me that everything would be resolved favorably if we tolled the case to give him the time he needed. I reluctantly agreed, as I felt that Clements was insinuating that if we did not toll the case, he would continue the case and I would be facing termination and Jessica facing at least demotion, if not termination.

### Telephonic Meeting – September 24, 2020

13.     On September 24th, 2020, at 1800 hours, while celebrating my birthday with family, I received a text message from the same third party stating that Clements was angry and wanted to speak to me. However, he would be calling me with the Chief on the line, as Chief Clements did not want his number showing up on my call history. He said he was called into Clements' office and told, "get your boy on the phone!"

14.     When I answered the phone, I was immediately attacked and yelled at by Chief Clements, accusing me of getting him in trouble with Michael Elkins because Elkins thought we had spoken about the case, which we had. Chief Clements said that either Jessica or I had told Pancier the wrong thing and that Pancier told Elkins I had spoken to the Chief and that the Chief wanted to resolve the case.

15.     Chief Clements was highly upset and demanded that either Jessica or I speak to Pancier and insist that Chief Clements and I had not spoken, but that I had been approached by a "proxy" to discuss the case.

16.     Chief Clements told me he would not be able to help me if I didn't do things as he said to do them.

17.     I also received phone calls from FOP executives Hector Fernandez and Kevin Millan, advising that the Chief had called them furious that I had said we had meetings to resolve the case, and he insisted that he had not spoken to me about anything.

**Under penalties of perjury, I declare that I have read the foregoing and that the facts stated in it are true.**

Dated this _5th_ day of November 2021.

_N. G_

NICHOLAS GUASTO

---

[1] Under Florida Statute § 112.532(6), internal investigations of police officers must be completed within 180 days, unless the time is tolled pursuant to one of the enumerated reasons or by agreement between the officer and the agency.

3

Scanned with CamScanner



## PANCIER LAW
### LABOR & EMPLOYMENT SPECIALISTS

Law Offices of Michael A. Pancier, P.A.



**Florida Bar Board Certified In Labor & Employment Law**

9000 Sheridan Street, Suite 93
Pembroke Pines, Florida 33024
www.pancierlaw.com

EMAIL: MPANCIER@PANCIERLAW.COM

TEL (954) 862-2217
FAX (954) 862-2287

December 4, 2020

**EXHIBIT**
**12**
03.15.24 SALABARRIA  TMT

VIA E-MAIL - SUSAN.DIAZ@EEOC.GOV
Susan Diaz
Federal Investigator
U. S. EEOC Miami District Office
100 SE 2nd Street, Suite 1500
Miami, FL 33131

    RE: Re: Jessica Salabarria vs. City of Miami Beach Police Dept 510-2020-04794

Dear Ms. Diaz:

This correspondence is on behalf of Charging Party, Jessica Salabarria and Respondent, the City of Miami Beach.

The parties have reached a preliminary resolution of all issues. The parties are in the process of drafting settlement documents. The resolution resolves not just Charging Party's EEOC Charge, but other matters between Charging Party, the City, and the Union. The parties require additional time to draft and finalize the settlement documents.

The City's position statement is currently due on December 7, 2020. The parties are aware that you have informed the City that you will not grant any further extensions to the City.

Respectfully, the parties jointly request that the EEOC allow the parties an additional 10 days (until December 17, 2020) to complete the settlement documents and bring finality to this matter. Given that Charging Party is a police officer, and the nature of resolution of matters with public entities, there are additional considerations that are unique and require some additional time for the parties to bring this matter to finality.

City 001369

Friday, December 4, 2020
Page 2 of 2

The parties both agree that their time is better served finalizing this matter, as opposed to the City spending further time and resources on a position statement.

The settlement between the parties (which will be final when the parties complete the settlement paperwork) does not involve a monetary payment to Charging Party. Upon completion of the settlement paperwork, Charging Party will withdraw her charge.

The parties respectfully and jointly request that the EEOC allow this additional time to bring final resolution to this matter, and find that the City does not have to file a position statement on December 7.

Thank you for your anticipated cooperation and understanding.

Sincerely,

Michael A. Pancier, Esquire
For the Firm
Florida Bar Board Certified
in Labor & Employment Law

cc:    Charging Party; Michael Elkins, Esq. (via email)

CIty 001370



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Miami District Office**

Miami Tower
100 SE 2nd Street, Suite 1500
Miami, FL  33131
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
Miami Status Line: (866) 408-8075
Miami Direct Dial: (305) 808-1740
TTY (305) 808-1742
FAX (305) 808-1855
Website:  www.eeoc.gov

City of Miami Beach Police Department
c/o Michael Elkins, Esq.
633 S. Andrews Avenue, Ste 500
Ft. Lauderdale, FL 33301

> **EXHIBIT**
> **13**
> 03.15.24 SALABARRIA  TMT

**RE:  Jessica Sallabarria vs. City of Miami Beach Police Department**
**EEOC# 510-2020-04794**

Dear Mr. Elkins:

This is to inform you that the Charge cited above has been withdrawn at the request of the Charging Party.

The Commission's acceptance of this withdrawal terminates processing of this charge.  This withdrawal does not affect the processing of any other charge.

On Behalf of the Commission;

02/09/2021                          *Jacqueline Gabriel for*
_____          _____
Date                                Bradley A. Anderson
                                    Acting District Director

 

**EXHIBIT 14**
03.15.24 SALABARRIA TMT

# REPORT TO WORK

**To:** _Police / Patrol_
**Department/Division**

_Salabarria, Jessica_
**Employee name (Last, First)**

_19928_
**Employee ID Number**

_Police Officer_
**Classification**

**Will report on** _01/31/12_
**Date**

**at** _7 am_
**Time**

**At the rate of $** _23.55_ **/hour**

_Full-time / Probationary_
**Status**

**Human Resources Department**
**By:** _Galyna Kurylov_

**City of Miami Beach Loyalty Oath:** I, the undersigned, being employed by or an officer of the City of Miami Beach, Florida, and a recipient of public funds as such employee or officer, do hereby solemnly swear or affirm that I will support the Constitution of the United States and of the State of Florida.

**Employee Handbook Receipt:** I, the undersigned, acknowledge that I have received a copy of the City of Miami Beach Employee Guide. I understand that I am responsible for reading, knowing and following the guidelines contained therein. I understand that a violation of the guidelines may result in disciplinary action, up to and including termination.

I further understand that I must furnish and wear recommended safety-type clothing and shoes, and obey all regulations regarding my personal safety and that of my fellow workers.

**I declare that I have read the foregoing and that I agree to everything stated.**

**Signature of Employee**

_01/27/2012_
**Date**

**New Hire Orientation Session:**

**Date:** _____   **Time:** _____   **Location:** _____

Rev. 11/08 - F:\huma\$all\HUMATECH\FORMS\Report to Work 03-31-10 USE THIS ONE.docx

City 001220

EXHIBIT

**15**

03.15.24 SALABARRIA  TMT

December 18, 2020

City of Miami Beach
Human Resources Department
Miami Beach City Hall
1700 Convention Center Drive
Miami Beach, FL 33139

      Re:    *Letter of Resignation as Part of Settlement Agreement and Last Chance Agreement*

To Whom It May Concern:

      Pursuant to the Settlement Agreement and Last Chance Agreement to which this Letter of Resignation is attached, I resign my employment with the City of Miami Beach, effective _____.

                          Very Truly Yours,

                          Jessica Salabarria.

City 001248