UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:22-cv-21004-MD

**JESSICA GUASTO**,

Plaintiff,

vs.

**THE CITY OF MIAMI BEACH, FL**,
a Florida municipality,

Defendant.

_____/

## DEFENDANT'S FULLY DISPOSITIVE MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Defendant, THE CITY OF MIAMI BEACH, FL, (the "City"), through its counsel and pursuant to Federal Rule of Civil Procedure 56 moves for Summary Judgment against Plaintiff, JESSICA GUASTO, f/k/a JESSICA SALABARRIA ("Plaintiff") on all remaining counts in the Complaint [DE 1] and states:[1]

## PRELIMINARY STATEMENT

1.      This is an employment discrimination case brought by Plaintiff, a former Sergeant with the City's Police Department.

2.      On April 2, 2022, Plaintiff filed a ten (10) count Complaint [DE 1].

---

[1]      Pursuant to S.D. Fla. L.R. 56.1(a), the City incorporates herein its contemporaneously filed Local Rule 56.1(a)(1) Statement of Material Facts ("Facts"), cited herein as "Facts ¶ __." Additionally, in compliance with the Court's May 9, 2024, Order Setting Trial and Pre-Trial Schedule, Requiring Mediation, and Referring Certain Matters to Magistrate Judge [DE 59], the City has contemporaneously filed the Parties' Joint Statement of Undisputed Facts ("Joint Facts") which are cited herein as "J. Facts ¶ _."

3.      On July 10, 2023, this Court issued its order dismissing eight (8) of the ten (10) counts [DE 32][2] leaving only Counts III and IV, which are claims for retaliation under Title VII and the Florida Civil Rights Act ("FCRA") respectively.[3]

4.      Plaintiff, now on her fifth lawyer, alleges that she was retaliated against by both Lieutenant Steven Cosner ("Lieutenant Cosner") and then-Chief of Police Richard Clements ("Chief Clements") for filing her second EEOC charge of discrimination against the City on July 13, 2020 ("2020 Charge"). *See* Facts ¶¶ 12-13.

5.      Importantly, Plaintiff's 2020 Charge came after she was placed under investigation by the City's Internal Affairs Department ("IA") on April 23, 2020 (the "IA Case"). *See* Facts ¶¶ 9-10, 13.

6.      On or about December 18, 2023, Plaintiff, the Fraternal Order of Police ("FOP" or "Union"), and the City entered into a Settlement Agreement and a Last Chance Agreement. As part of the Last Chance Agreement, Plaintiff executed an Irrevocable Letter of Resignation ("Resignation"). *See* Facts ¶ 24. The Last Chance Agreement made Plaintiff an employee at will. *See* Facts ¶ 27, *see also* DE 1, ¶ 27, 41.

7.      On or about January 8, 2021, Lieutenant Cosner, who supervised Plaintiff during a shift that spanned December 27-28, 2020, made allegations against Plaintiff via an Administrative Action Form ("AAF"). *See* Facts ¶ 40.[4]

---

[2]      The remaining counts are only against the City. Therefore, former Defendants Richard Clements ("Clements") and Steven Cosner ("Cosner") were dismissed as part of the Court's Order. *See* DE 32 (dismissing all counts against Clements and Cosner).

[3]      Courts in the Southern District of Florida apply the same legal analysis to claims brought under Title VII and the FCRA. *See Su v. Broward County, Florida*, Case No. 0:23-CV-61385-CIV-DIMITROULEAS, 2024 WL 1236243, at *3 (S.D. Fla. Mar. 1, 2024) (*citing Wilbur v. Corr. Servs. Corp.*, 393 F.3d 1192, 1195 n.1 (11th Cir. 2004) ("The [FCRA] was patterned after Title VII, and Florida courts have construed the act in accordance with decisions of federal courts interpreting Title VII.")).

[4]      Lieutenant Cosner used the wrong form, and the City corrected the administrative error by putting Lieutenant Cosner's allegations against Plaintiff on an Allegation of Employee Misconduct Form ("AEM"). *See* Facts ¶¶ 42, 45-46.

8.      On January 25, 2021, the City implemented Plaintiff's Resignation.

## SUMMARY OF THE ARGUMENT

The Court should grant summary judgment because Plaintiff cannot establish her *prima facie* case of retaliation. Specifically, and is detailed more fully below, there is no causal connection between Plaintiff's protected activity (her 2020 Charge) and the City implementing her resignation. At the time Lieutenant Cosner made his allegations against Plaintiff, he did not know about Plaintiff's 2020 Charge or her Last Chance Agreement. More to the point, Lieutenant Cosner was not a decision-maker, and he did not influence the decision-maker, Chief Clements. As to the decision-maker, Chief Clements, there is no evidence that his decision to implement Plaintiff's Resignation was motivated, in any way, by her protected activity.

Even if Plaintiff could establish her *prima facie* case, the City has more than articulated legitimate, non-retaliatory reasons for implementing Plaintiff's Resignation and Plaintiff cannot establish pretext. Based on the foregoing, and the detailed arguments below, the Court should grant this Motion in its entirety and issue summary judgment in favor of the City.

## STANDARD FOR SUMMARY JUDGMENT

"'A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought.'" *Nesbitt v. Miami-Dade County, Florida*, Case No. 23-20345-CIV-ALTONAGA/Damian, 2024 WL 36054, at *2 (S.D. Fla. Jan. 3, 2024) (*citing* Fed. R. Civ. P. 56(a)). "Summary judgment may be rendered if the pleadings, discovery and disclosure materials on file, and any affidavits show there is no genuine dispute of any material fact and the movant is entitled to judgment as a matter of law." *Nesbitt*, 2024 WL 36054, at *2 (*citing* Fed. R. Civ. P. 56(a), (c)).

"An issue of fact is 'material' if it might affect the outcome of the case under the governing law." *Id*. (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute of fact is 'genuine' if the evidence could lead a reasonable jury to find for the non-moving party. *Id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"If the non-moving party bears the burden of proof at trial, the moving party may obtain summary judgment simply by: (1) establishing the nonexistence of a genuine issue of material fact as to any essential element of a non-moving party's claim and (2) showing the Court there is insufficient evidence to support the non-moving party's case." *Id*. (*citing Blackhawk Yachting, LLC v. Tognum Am., Inc.*, Case No. 12-Civ-14209, 2015 WL 11176299, at *2 (S.D. Fla. June 30, 2015)). "'Once the moving party discharges its initial burden, a non-moving party who bears the burden of proof must cite to ... materials in the record or show that the materials cited do not establish the absence or presence of a genuine dispute.'" *Id*. (*citing* Fed. R. Civ. P. 56(c)(1)).

The party opposing the motion may not rest on mere allegations or denials. *See MacKenzie v. City of Miami Beach*, Case No. 07-21357-CIV-UNGARO, 2008 WL 11331842, at *6 (S.D. Fla. Apr. 16, 2008). Rather, the opposing party must make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *See id*. (*citing Celotex Corp. v. Catrell*, 477 U.S. 317 (1986); *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997); *Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir. 1989)).

<u>**ARGUMENT AND CITATION OF AUTHORITY**</u>

**PLAINTIFF'S CLAIMS FOR RETALIATION UNDER TITLE VII AND THE FCRA FAIL AS A MATTER OF LAW.**

Counts III and IV of Plaintiff's Complaint assert claims for retaliation under Title VII and the FCRA. *See* DE 1, ¶¶ 67-82. Plaintiff alleges that she was retaliated against for filing her 2-2020 Charge. *See* Facts ¶¶ 78-82; *see also* DE 1, ¶¶ 69, 77.

Plaintiff's claims for retaliation fail as a matter for law for several reasons. First, there is no causal connection between her alleged protected activity and the City implementing her Resignation. Second, the City had legitimate, nonretaliatory reasons for implementing Plaintiff's Resignation, and there is no evidence of pretext. Each of these are independently fatal to Plaintiff's retaliation claims.

**A.**     <u>**Plaintiff Does Not Establish a Prima Facie Case of Retaliation Under Title VII and the FCRA**</u>

With no direct evidence of any retaliatory action, Plaintiff's claims under Title VII and the FCRA are analyzed under the same burden-shifting framework for circumstantial evidence established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Small v. City of Hollywood*, 661 F.Supp.3d 1187, 1201-02 (S.D. Fla. 2023) (*citing Smelter v. S. Home Care Servs.*, 904 F.3d 1276, 1293 (11th Cir. 2018)); *see also Ypsilantis v. Yellen*, Case No. 22-cv-61514-BLOOM/Valle, 2023 WL 7524107, at *17 (S.D. Fla. Nov. 14, 2023) (*citing Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010)).

"First, the plaintiff must establish a *prima facie* case of retaliation by demonstrating (1) she 'engaged in a statutorily protected activity'; (2) she 'suffered an adverse employment action'; and (3) there is 'a causal link between the protected activity and the adverse action.'" *Small*, 661 F.Supp.3d at 1202 (*citing Bryant v. Jones*, 575 F.3d 1281, 1307–08 (11th Cir. 2009)).

Once the plaintiff establishes a *prima facie* case, the employer must articulate a legitimate, nondiscriminatory reason for the adverse action. *See Small*, 661 F.Supp.3d at 1202 (*citing Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1312 (11th Cir. 2016)). "If an employer offers a sufficient nondiscriminatory reason, the burden shifts back to the plaintiff, who must put forward evidence that the employer's given reason was a pretext for discrimination." *Small*, 661 F.Supp.3d at 1202 (*citing Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1174 (11th Cir. 2010)).

"It is at this point that 'the plaintiff's burden merges with the ultimate burden of persuading the court that the plaintiff has been the victim of intentional discrimination.'" *Small*, 661 F.Supp.3d at 1202 (*citing Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1311 (11th Cir. 2016) (*quoting Smith v. Lockheed–Martin Corp.*, 644 F.3d 1321, 1326 (11th Cir. 2011))). "This framework serves to 'filter out particularly obvious cases and works to frame more clearly the specific issues to be litigated,' and the 'critical decision' for the court to make is 'whether the plaintiff has created a triable issue concerning the employer's discriminatory intent.'" *Small*, 661 F.Supp.3d at 1202 (*citing Flowers v. Troup Cnty., Ga., Sch. Dist.*, 803 F.3d 1327, 1336 (11th Cir. 2015)).

Significantly, Plaintiff always retains the ultimate burden of proving that "the desire to retaliate was the but–for cause of the challenged employment action." *Univ. of Texas SW Med. Cent. v. Nassar*, 570 U.S. 338, 339 (2013); *see also Beach v. JP Morgan Chase Bank, N.A.*, 218 F.Supp.3d 1367, 1374 (S.D. Fla. 2016) (referring to the United States Supreme Court in holding that the Title VII retaliation claims require proof that the protected activity was a but-for cause of the alleged adverse action) (*citing Trask v. Sec'y, Dep't of Veterans Affairs,* 822 F.3d 1179, 1194 (11th Cir. 2016)).

1. **Plaintiff Does Not Establish Her Prima Facie Case Because There Is No Causal Connection Between Plaintiff's Protected Activity and the City Implementing Her Letter of Resignation. Accordingly, Plaintiff's Claims for Retaliation Fail As A Matter of Law.**

"[T]o establish a causal connection between protected activity and an adverse employment action, a plaintiff must show 'the protected activity and the adverse action are not completely unrelated.'" *Thompson v. City of Miami Beach, Fla.*, 990 F.Supp.2d 1335, 1341 (S.D. Fla. 2014) (*citing Davis v. Coca–Cola Bottling Co. Consol.,* 516 F.3d 955, 978 n. 52 (11th Cir.2008)).

"A plaintiff satisfies this burden 'by showing close temporal proximity between the statutorily protected activity and the adverse employment action.'" *Thompson*, 990 F.Supp.2d at 1341-42 (*citing Thomas v. Cooper Lighting, Inc.,* 506 F.3d 1361, 1364 (11th Cir.2007)). "And if there is no other evidence showing causation, the temporal proximity must be 'very close.'" *Id.*; *see also Drago v. Jenne,* 453 F.3d 1301, 1308 (11th Cir. 2006) ("[I]n the absence of any other evidence of causation, a three- and one-half-month proximity between a protected activity and an adverse employment action is insufficient to create a jury issue on causation.").

The case law is clear that even a three-month gap between statutorily protected activity and adverse employment action is insufficient to establish retaliation based on close temporal proximity. *See Henderson v. City of Birmingham, Alabama*, 826 F. App'x 736, 742 (11th Cir. 2020) (*citing Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007); *see also Reed v. Forney Indus., Inc.*, 800 F. App'x 782, 789 (11th Cir. 2020) (*citing Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006) (holding that a three-month gap between the protected action and alleged retaliation was not sufficiently proximate to show causation); *Criswell v. Intellirisk Mgmt. Corp., Inc.*, 286 F. App'x 660, 664 (11th Cir. 2008).

There is zero relationship between Plaintiff's protected activity (her 2020 Charge) and the City implementing her Resignation. First, there is a gap of six (6) months and twelve (12) days between Plaintiff's protected activity (the 2020 Charge filed on July 13, 2020) and the adverse action (implementing Plaintiff's Resignation on January 25, 2021). *See* Facts ¶¶ 12, 63. Accordingly, there is no causal connection based on temporal proximity.

Second, Plaintiff's tries to link her protected activity and the implementation of her resignation to what she describes as "false allegations" from Lieutenant Cosner. *See* Facts ¶¶ 78-83; *see also* DE 1, 41-45. Essentially, Plaintiff argues that Cosner knew about her 2020 Charge and Last Chance Agreement, was angry about her romantically rejecting him back in 2014-15 and pounced in December 2020 by creating false allegations. *See* Facts ¶ 83. In this regard, Plaintiff testified as follows:

> Q:    Well, I think you had told me that Cosner had, you know, asked you out or tried to take your relationship further than just friendship back in 2014 or '15; and then, you rejected him; and then, from that point forward, in '14 or '15 -- we can call it '15 -- he just wouldn't speak to you. Do you remember that testimony?
>
> A:    I remember. And I remember having issues with Cosner, like -- like I explained from 20 -- around the time of 2020, 2013, 2014. All the way till 2021.
>
> Q:    Well, that's not what you told me before. What you told me before was you had issues with him in '13, '14 or '15 whenever that was, correct?
>
> A:    Yes.
>
> Q:    And you rejected him, correct?
>
> A:    Yes.
>
> Q:    And then, from that moment forward, you didn't work with him, you didn't speak to him, he wouldn't speak to you. I think you told me that you'd pass him in the hallway and he

would ignore you. So what other -- are you referring to the fact hat he just ignored you for six years, or five years, as issues?

A: I'm respond -- I'm responding to the fact that he held this animosity and this – this animosity and this hatred towards me from the moment that I rejected him till 2021, which is evident by him making false allegations against me. So he held that with him all these years –

Q. Right.

A: -- and retaliated against me for filing my EEOC complaint.

Q: Right. So that -- that's what I was getting at. Your point about the issues that you're talking about after you rejected him, whenever that -- that date was. I know you don't remember it off the top of your head. I don't either. But it's in the record. The issues that you're referring to after that, go to his what you call animosity and anger towards your rejection. So he ignored you for six or seven years. And your position in this lawsuit is he essentially finally took it out on you when he made these allegations against you in December of 2020, correct?

A: Yes.

*See* Facts, ¶ 83; Exh. 32 to Facts, Plaint. Vol. III TR:187-189:10-1.

Plaintiff's argument fails for several reasons.

### a. <u>Lieutenant Cosner Did Not Know About the 2020 Charge or the Last Chance Agreement at the Time He Made His allegations Against Plaintiff</u>

False, or not, at the time Lieutenant Cosner made his allegations against Plaintiff, he did not know about her 2020 Charge or her Last Chance Agreement. *See* Facts ¶ 14, 50. Plaintiff tries to get around Cosner's lack of knowledge by implying knowledge to Lieutenant Cosner. Specifically, Plaintiff testified that he must've known about her 2020 Charge and Last Chance Agreement because it was "common knowledge throughout the entire station." *See* Facts ¶ 51;

*see also* Exh. 17 to Facts, Plaint. Vol. I TR:109-110:7-1. Plaintiff also testified that Cosner must've known because:

> he sat right in back of me in the sergeants' office, and it was common knowledge of my EEOC charge, as well as my LCA that was implemented. And so he sat behind me. It was a common occurrence where sergeants in the sergeants' office were talking about my EEOC charge, as well as my LCA, where they would openly make comments about my EEOC charge and my LCA. And he sat right in back of me, and he was privy to a lot of this information.

*See* Facts ¶ 51; *see also* Exh. 17 to Facts, Plaint. Vol. I TR:109:12-20.

Plaintiff was clear that her basis for claiming that Lieutenant Cosner knew about the 2020 Charge and the Last Chance Agreement at the time he made his allegations is an assumption. *See* Facts ¶ 51; *see also* Exh. 17 to Facts, Plaint. Vol. I TR:110:6-13; 11:10-14.[5] Plaintiff did not tell Lieutenant Cosner about her 2020 Charge or Last Chance Agreement, no one told Plaintiff that Lieutenant Cosner knew about her 2020 Charge or Last Chance Agreement, and Plaintiff never heard Lieutenant Cosner discussing her 2020 Charge or Last Chance Agreement. *See* Facts ¶ 51; *see also* Exh. 17 to Facts, Plaint. Vol. I TR:110-111:2-1. In short, Plaintiff's basis for Lieutenant Cosner's knowledge is a complete guess. This is not sufficient to survive summary judgment.

More to the point, Cosner testified unequivocally that when he made his allegations against Plaintiff, he was not aware of: (1) the 2018 Charge; (2) the 2020 Charge; (3) the fact that Plaintiff signed a Settlement Agreement and Last Chance Agreement in December 2020; and (4) the fact that Plaintiff was on a Last Chance Agreement. *See* Facts ¶ 50.

---

[5] In making her "assumption" about Lieutenant Cosner's knowledge of her 2020 Charge and Last Chance Agreement, Plaintiff admits that in all her conversations with other Sergeants, and in hearing conversations from other Sergeants, she never personally had any interaction with Lieutenant Cosner. *See* Facts ¶ 51; *see also* Exh. 17 to Facts, Plaint. Vol. I TR:110-111:24-18.

Additionally, Plaintiff's argument becomes more absurd when one considers that her entire theory is that Lieutenant Cosner harbored anger and resentment dating back to 2014-2015, carried that anger and resentment through December 2020 and then struck when the opportunity arose. *See* Facts, ¶ 83; Exh. 32 to Facts, Plaint. Vol. III TR:187-189:10-1.

Other than Plaintiff's subjective belief as to Lieutenant Cosner's knowledge and motives (his supposed 5-6 years of pent-up resentment) there is no evidence to support Plaintiff's theory. Plaintiff cannot rest on the mere allegation that Lieutenant Cosner had knowledge of her 2020 Charge and Last Chance Agreement at the time he made his allegations. *See MacKenzie*, 2008 WL 11331842, at *6. Plaintiff must make a sufficient showing to establish the existence of Lieutenant Cosner's knowledge. *See id.* Her "assumption" as to Lieutenant Cosner's knowledge is not admissible evidence and therefore, not sufficient to survive summary judgment. *See Aldabblan v. Festive Pizza, Ltd.*, 380 F.Supp.2d 1345, 1353 (S.D. Fla. 2005) ("Plaintiff's mere belief, speculation, or conclusory allegations that Defendant discriminated against [her], therefore, are insufficient to withstand summary judgment.") (*citing Coutu v. Martin County Bd. of County Comm'rs,* 47 F.3d 1068, 1073–74 (11th Cir.1995)); *see also Univ. of Texas SW Med. Cent.*, 570 U.S. at 339; *Beach*, 218 F.Supp.3d at 1374 (referring to the United States Supreme Court in holding that the Title VII retaliation claims require proof that the protected activity was a but-for cause of the alleged adverse action); *Trask,* 822 F.3d at 1194.

In short, there is no evidence, circumstantial or otherwise, to refute or even call into questions Lieutenant Cosner's unequivocal testimony that when he made his allegations against Plaintiff, he was not aware of: (1) the 2018 Charge; (2) the 2020 Charge; (3) the fact that Plaintiff signed a Settlement Agreement and Last Chance Agreement in December 2020; and (4) the fact that Plaintiff was on a Last Chance Agreement. *See* Facts ¶ 50.

Plaintiff cannot establish her *prima facie* case, entitling the City to judgment as a matter of law.

### b. <u>Lieutenant Cosner Was Not a Decision-Maker and He Did Not Influence the Decision Maker</u>

Although not pled, Plaintiff seems to argue that there is liability under a "cat's paw" theory.[6] "[T]he cat's-paw theory of liability 'provides that a plaintiff may establish causation by showing that the decisionmaker followed a biased recommendation without independently investigating the complaint against the employee.'" *Lucas v. City of Delray Beach*, Case No. 21-cv-80469-ALTMAN/Matthewman, 2023 WL 6037456, at *15 (S.D. Fla. Sept. 15, 2023) (*citing Gilroy v. Baldwin*, 843 F. App'x 194, 196 (11th Cir. 2021)); *see also Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999) ("One way of proving that the discriminatory animus behind the recommendation caused the discharge is under the 'cat's paw' theory. This theory provides that causation may be established if the plaintiff shows that the decisionmaker followed the biased recommendation without independently investigating the complaint against the employee. In such a case, the recommender is using the decisionmaker as a mere conduit, or 'cat's paw' to give effect to the recommender's discriminatory animus." (cleaned up)).

"In other words, cat's paw kicks in when the relevant decisionmaker imposes an adverse employment action on an employee *only because of* the biased (and negative) recommendation of the non-decisionmaker." *Lucas*, 2023 WL 6037456, at *15.

Chief Clements was the decision-maker. *See* Facts ¶ 63. Additionally, Lieutenant Cosner, in addition to not being a decision-maker, was not consulted about implementing

---

[6] Plaintiff's Complaint makes no mention of the cat's paw theory or even the notion that Lieutenant Cosner used Chief Clements as a conduit to retaliate against Plaintiff. *See* DE 1. More to the point, and as is discussed more fully herein below, Plaintiff also alleges that Chief Clements had his own retaliatory animus against Plaintiff absent Lieutenant Cosner. The City addresses the cat's paw theory argument for completeness purposes only. To that end, the Court should reject this argument because it was never pled by Plaintiff.

Plaintiff's Resignation. *See* Facts ¶ 66. The fact that Chief Clements did not consult Lieutenant Cosner in deciding to implement Plaintiff's Resignation is corroborated by then-Director of Human Resources, Mike Smith; then-Commander of Internal Affairs, A.J. Prieto; then-Assistant Chief of Police, Wayne Jones; and Lieutenant Cosner. *See id.* In short, Lieutenant Cosner did not recommend an adverse action to Chief Clements because he was never consulted about any discipline for Plaintiff. *See id.* Accordingly, to the extent Plaintiff is arguing the cat's paw theory, the argument fails because there was no recommendation for the decision-maker, in this case Chief Clements, to consider. *See id*; *see also* Facts ¶¶ 63-64.

Moreover, Chief Clements independently investigated Lieutenant Cosner's allegations. Specifically, Commander Prieto investigated all of Lieutenant Cosner's allegations and Plaintiff's explanations. *See* Facts ¶¶ 60-62. Commander Prieto then provided his findings to Chief Clements. *See id.* Thus, Plaintiff's cat's paw theory fails in this regard as well.

### c. <u>There Is No Evidence That Chief Clements' Decision To Implement Plaintiff's Resignation Was Based On Her Protected Activity</u>

Chief Clements did not consider Plaintiff's 2020 Charge or any complaints of harassment when implementing Plaintiff's Resignation. *See* Facts ¶¶ 63-65. There is not a single witness in this case, including Plaintiff, that has any information, circumstantial or otherwise, that Plaintiff's 2020 Charge or complaints of harassment played any role in Chief Clements' decision. *See id*; *see also* Facts ¶¶ 78-83. Indeed, when asked to connect her 2020 Charge with her January 2021 termination, all Plaintiff could muster was generally repeating that she filed her 2020 Charge, and was retaliated against for filing her 2020 Charge by being terminated based on false allegations. *See* Facts ¶¶ 78-83. Plaintiff does not provide a single piece of evidence connecting Chief Clements' decision to her 2020 Charge or any complaints of harassment.

The reality is the evidence is the opposite. Plaintiff's employment ended when Chief Clements implemented her Resignation. *See* Facts ¶ 63. The Resignation derives from Plaintiff's Last Chance Agreement, which made Plaintiff an employee at will. *See* Facts ¶¶ 24-27. The Last Chance Agreement relates exclusively to Plaintiff's IA Case, not her 2020 Charge. *See* Facts ¶¶ 29-31. Specifically, the Last Chance Agreement does not reference the 2020 Charge because the 2020 Charge was not the basis for the Last Chance Agreement, or any future performance of Plaintiff or any future discipline pursuant to the Last Chance Agreement. *See* Facts ¶ 31. Thus, it was specifically omitted from reference in the Last Chance Agreement. *See id.*

Further, Plaintiff's own Union members, including her then-President, testified that there was no evidence that Chief Clements' decision was based on the 2020 Charge or any complaints of harassment. *See* Facts ¶¶ 65. Sergeant Flaherty and then-FOP President Ozaeta both testified that there was no information to indicate that Chief Clements' decision was based on the 2020 Charge or any complaints of harassment. *See id.* The foregoing is further buttressed by the fact that Plaintiff's own Union did nothing to try and get her job back after the City implemented her Resignation. *See* Facts ¶ 70.

Plaintiff will undoubtedly argue that the conversations between Chief Clements and her then-boyfriend, now ex-husband Nicholas Guasto ("N. Guasto") establish circumstantial evidence that Chief Clements implemented Plaintiff's Resignation because of her 2020 Charge. This argument is unavailing.

N. Guasto was also under investigation during the IA Case. *See* Facts ¶ 9, Exh. B to Exh. 8 of Facts, Bates No. City 001572 – 001575 (notifying N. Guasto that he is a subject-officer). N. Guasto testified that throughout his dealings with Chief Clements regarding Plaintiff's 2020 Charge, Chief Clements repeatedly stated that he wanted a resolution that included dismissal of

the 2020 Charge. *See* Facts ¶ 75. Indeed, Chief Clements got exactly what he told N. Guasto he wanted. Ultimately, after the alleged conversations between Chief Clements and N. Guasto, Plaintiff entered into a Settlement Agreement wherein she dismissed her 2020 Charge. *See* Facts ¶¶ 24, 75. Indeed, N. Guasto acknowledged that, based on his conversations with Chief Clements regarding the 2020 Charge, Chief Clements got exactly what he wanted, a dismissal. *See* Facts ¶ 75.

Further, N. Guasto testified that Chief Clements never told him that he was going to fire Plaintiff because of her 2020 Charge. *See* Facts ¶ 74. Significantly, N. Guasto never had any conversation with Chief Clements or any other decision-maker at the City about Plaintiff after Plaintiff entered into her December 2020 Settlement Agreement and Last Chance Agreement. *See* Facts ¶¶ 76-77. Further, he was not involved, in any way, in the decision to implement Plaintiff's Resignation. *See id*. Importantly, N. Guasto does not have firsthand knowledge of why the City implemented Plaintiff's Resignation. *See* Facts ¶ 77.

In short, other than Plaintiff's own mis-guided belief, there is not one piece of evidence connecting Chief Clements' decision to implement Plaintiff's Resignation to her 2020 Charge or any complaints of harassment. To allow this case to go forward, this Court must ignore the testimony of everyone in this case, including Plaintiff's own former lawyer and Union President in favor of Plaintiff's unsupported, subjective beliefs, guesses and assumptions. That is not even close to enough to overcome summary judgment.

To that end, there is no causal connection between Plaintiff's protected activity and her separation from employment. Thus, the City is entitled to judgment as a matter of law. The Court should grant the City's Motion and enter summary judgment in favor of the City.

## 2. The City Has Met Its Burden of Producing Legitimate, Non-Retaliatory Reasons for Implementing Plaintiff's Letter of Resignation

Even if Plaintiff could establish a prima facie case of retaliation, which she cannot, the City has clearly met its burden to produce legitimate non-discriminatory reasons for implementing Plaintiff's Resignation. Importantly, the City's burden is "exceedingly light" because it "need only produce, not prove, a non-discriminatory reason." *Walker v. NationsBank of Florida, N.A.*, 53 F.3d 1548, 1556 (11th Cir. 1995) (internal quotations omitted).

In evaluating an employer's proffered explanation, it is not the court's role to act as a super-personnel department and second-guess or quarrel with the wisdom of the employer's decision; rather, the court's inquiry is limited to whether the employer gave an honest, non-retaliatory explanation that might motivate a reasonable employer. *See Chapman v. AI Transport*, 229 F. 3d 1012, 1030 (11th Cir. 2000); *see also Elrod v. Sears, Roebuck & Co.*, 939 F. 2d 1466, 1470 (11th Cir. 1991) An employer may lawfully fire an employee "for a good reason, a bad reason, ***a reason based on erroneous facts***, or no reason at all, as long as its action is not for discriminatory reasons." *Id*. (emphasis added)

Here, the legitimate non-retaliatory reasons for implementing Plaintiff's Resignation are detailed both in the January 25, 2021, Memorandum from Chief Clements to Plaintiff and in Chief Clements' testimony. *See* Facts ¶¶ 63-65; *see also* Exh. 27 to Facts. Specifically, Chief Clements testified that, among other things, he wanted a truthful explanation from Plaintiff as to why she didn't follow the directive from her Shift Commander. *See* Facts ¶ 65; *see also* Exh. 16 to Facts, Clements TR:99:16-22. Chief Clements also testified that the falsity of Plaintiff's explanation as to why she was not in her assigned zone was one of the reasons he implemented her Resignation, a reason that is also in the January 25, 2021, Memorandum. *See* Facts ¶¶ 63-65; *see also* Exh. 16 to Facts, Clements TR:97-98:16-4.

In that regard, Commander Prieto provided Chief Clements evidence that showed that the evaluation that Plaintiff claimed she was working on in December 2020, was not even created until January 10, 2021. *See* Facts ¶¶ 59-61. Moreover, Commander Prieto investigated the veracity of Lieutenant Cosner's remaining allegations and provided further information to Chief Clements. *See* Facts ¶ 62.[7]

In short, there is no question that the City has produced extensive, legitimate non-retaliatory reasons for implementing Plaintiff's Resignation.

### 3. **Plaintiff Cannot Establish Pretext**

In satisfying its burden of producing legitimate, non-retaliatory reasons for implementing Plaintiff's Resignation, Plaintiff bears the burden of persuasion that the proffered reason is pretextual, that is, she must prove "both that the reason articulated was false, and that discrimination was the real reason" for the employment action. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515-17 (1993).

To establish pretext, Plaintiff must show more than a mistake on the part of the City. *See Silvera v. Orange Cty. Sch. Bd.*, 244 F. 3d 1253, 1261 (11th Cir. 2001). She must show that the City lied – a standard she cannot meet. *See id.*; *Alvarez*, 610 F. 3d at 1265.

"In conducting a pretext analysis, the court should focus on the perception of the decision-maker." *Aldabblan*, 380 F.Supp. 2d at 1353 (*citing Chapman v. AI Transp.*, 229 F.3d 1012, 1034 (11th Cir.2000)). "Plaintiff's mere belief, speculation, or conclusory allegations that Defendant discriminated against [her], therefore, are insufficient to withstand summary judgment." *Aldabblan*, 380 F.Supp. 2d at 1353 (*citing Coutu v. Martin County Bd. of County Comm'rs*, 47 F.3d 1068, 1073–74 (11th Cir.1995)). "Further, Plaintiff may not establish that

---

[7] Notably, then-FOP First Vice President, Sergeant Arley Flaherty testified that she too reviewed Lieutenant Cosner's allegations against Plaintiff and she determined that Lieutenant Cosner had "done his homework," and had "all of is backing." *See* Exh. 20 to Facts Flaherty TR:38-39:20-1.

Defendant's proffered reasons are pretextual 'merely by questioning the wisdom of the employer's reasons, at least not where ... the reason is one that might motivate a reasonable employer.'" *Aldabblan*, 380 F.Supp. 2d at 1353 (*citing Combs v. Plantation Patterns,* 106 F.3d 1519, 1543 (11th Cir.1997)); *see also Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1361 (11th Cir.1999). Said another way, Plaintiff can't recast the City's proffered nonretaliatory reasons or substitute her business judgment for that of the City. *See Aldabblan*, 380 F.Supp. 2d at 1353 (*citing Chapman,* 229 F.3d at 1030).

Plaintiff will undoubtedly argue that Lieutenant Cosner's allegations are false, and thus, that establishes retaliation. This argument fails for two reasons: (1) the truth of Lieutenant Cosner's allegations doesn't matter; and (2) even if it did matter, Plaintiff has no evidence of their falsity.

### a. <u>Whether Lieutenant Cosner's Allegations Are True or False Is Immaterial</u>

Title VII does not require the City to have good cause for its decision. *See Whitehurst v. Liquid Environmental Solutions, Inc.*, 45 F.Supp.3d 1328, 1348 (M.D. Fla. 2014). The City can fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason. *See Whitehurst*, 45 F.Supp.3d at 1348. An employer that fires an employee under a mistaken but honest impression that an employee violated a work rule is not liable for discriminatory conduct. *See id.* (*citing Hudson v. Blue Cross Blue Shield of Ala.,* 431 Fed.Appx. 868, 869 (11th Cir.2011)); *see also Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1363 (11th Cir.1999). The sole concern is whether unlawful discriminatory animus motivated the termination. *See Whitehurst*, 45 F.Supp.3d at 1348 (*citing Alvarez.*, 610 F.3d at). The relevant inquiry is whether the employer made its decision with a discriminatory motive or not. *See Whitehurst*, 45 F.Supp.3d at 1348.

Plaintiff devotes an inordinate amount of time in this litigation quarreling with the basis of Lieutenant Cosner's allegations. The veracity of Lieutenant Cosner's allegations is almost the entire basis of Plaintiff's claim for retaliation. *See* Facts ¶¶ 78-83. Specifically, when asked to connect her 2020 Charge with her January 2021 separation, Plaintiff testified that the false allegations from Cosner led to her adverse employment action. *See* Facts ¶¶ 81-83. Plaintiff's reliance on the merits of Lieutenant Cosner's allegations is also present in Plaintiff's Complaint and her 2021 Charge. *See* DE 1, ¶¶ 43-45; DE 1-1, p. 2.

Whether Plaintiff engaged in the conduct alleged by Lieutenant Cosner is immaterial. To establish pretext, Plaintiff needs to demonstrate that Chief Clements was motivated by retaliatory animus. Plaintiff does not have any evidence to carry her burden. As is articulated in Section I.A.1.c above, aside from Lieutenant Cosner's allegations, Chief Clements relied on additional information from Commander Prieto in making his decision. More to the point, and as articulated above, the documentary evidence clearly establishes that the Last Chance Agreement, and anything flowing from the Last Chance Agreement had nothing to do with the 2020 Charge. *See* Facts ¶¶ 29-31; *see also* Exh. 16 to Facts, Clements TR:146:11-24; 79-80:12-1 (Last Chance Agreement was because of the IA Case, not the 2020 Charge).

Importantly, Plaintiff has not presented a single piece of evidence that casts doubt on Chief Clements' motivations. In short, the entirety of her case is based solely on what she believes, not evidence or reality. There is no pretext. Thus, the Court should grant the City's Motion and enter summary judgment in favor of the City.

### b. **Plaintiff Cannot Establish The Falsity of Lieutenant Cosner's Allegations.**

Even if the veracity of Lieutenant Cosner's was relevant, which it is not, the Court should still grant summary judgment in favor of the City because Plaintiff does not know what allegations against her are true or false.

Specifically, during her deposition, Plaintiff was asked about each specific allegation made by Lieutenant Cosner. *See* Facts ¶¶ 84-85. In addressing whether each allegation is true or false, the only specific allegations that Plaintiff testified to as being false were that she never spoke to Lieutenant Cosner at the beginning of her overtime shift, and that she never provided Lieutenant Cosner with an overtime slip. *See* Facts ¶¶ 83-84; *see also* Exh. 32 to Facts Plaint. Vol. III TR:191-192:4-5. Notably, these facts are not material in any way to whether Plaintiff engaged in misconduct.

As to almost the entirety of the remaining allegations against Plaintiff, which span almost two, single-spaced pages (*see* AEM which is Exh. 19 to Facts, Bates Nos. City 001250-001251) Plaintiff responded that either she didn't know, didn't remember, or didn't recall as to whether the allegations were true or false. Facts ¶¶ 83-85. Incredibly, when asked about each specific sentence in the AEM, and whether the allegation was true or false, Plaintiff responded thirty-one (31) times that she either didn't know, didn't recall, or didn't remember. *See id.*

Instead of addressing each allegation, Plaintiff would continually just repeat, in general terms that Lieutenant Cosner's allegations were false. Examples of this are as follows:

> Q: And then it says the dispatcher raised you multiple times, and you didn't respond. Is that true or false?
>
> A: Again, I don't -- I don't remember exactly how everything happened.

*See* Facts ¶ 84, *see also* Exh. 32 to Facts Plaint. Vol. III TR:194:2-6.

***

Q:      And then, Cosner says he again tried to have the dispatcher raise you. And after several attempts by name and unit, you finally responded. Is that true or false?

A:      Again, it happened three years ago. I don't remember the exact -- what happened that night.

Q:      Okay. But you remembered it enough to allege in a federal lawsuit that he made false allegations; now today you don't remember?

A:      That is correct. I remember -- yeah, I remember what happened in the sense of his allegations are not correct, are not true.

*See* Facts ¶ 84, *see also* Exh. 32 to Facts Plaint. Vol. III TR:194-195:19-4.

***

Q:      I'm not asking you what he says you said. I'm asking you if you remember what you said. Do you remember what you said?

A:      No, I don't remember.

Q:      Well, how do you know it's false if you don't remember?

A:      Because I know that his allegations are false.

Q:      Okay. Which allegations are false?

A:      Can you go up to his charges? Keep going. The specific allegations, what he's specifically saying are the allegations, those are all false.[8]

Q:      Okay. But the details of those allegations are contained in the narrative; isn't that true?

A:      That's what it looks like.

---

[8]     Plaintiff was referring to the specific policies procedures listed at the top of the AEM. *See* AEM which is Exh. 19 to Facts, Bates Nos. City 001250-001251.

Q: Okay. So what in this narrative -- I mean, I can go through every sentence with you. I'm happy to do that. But if you're saying, for example, failure to supervise is a false allegation, then tell me in this narrative what facts here are false that would establish that failure to supervise is a false allegation.

A: I just know that his allegations of -- that are in the top are all false and this was never investigated.

Q: Okay. Well, I've given you the opportunity to read this. You can read it again. But what I'm asking you, and I'll ask you again: What specific facts in this document, if any, do you know to be false or are you –

A: You have –

Q: -- are you testifying that you can't -- you don't remember what's true or false in this narrative?

A: I -- I just know that his allegations are false. If you have a specific question, I can answer it. But his allegations are false.

Q: We'll just keep going sentence by sentence then.

*See* Facts ¶ 84, *see also* Exh. 32 to Facts Plaint. Vol. III TR:197-198:5-13.

Plaintiff's lack of memory is incredible considering her entire lawsuit is based on the notion that Lieutenant Cosner's allegations against her are false. *See* DE 1, ¶ 45.

When specifically asked "[b]ut sitting here today after you filed your lawsuit in federal court claiming it's all false, you don't know?" Plaintiff testified: "I don't' know." What's evident from Plaintiff's testimony is that, like every other component of this Lawsuit, her allegations are based on nothing more than her own personal beliefs. Accordingly, the Court should grant this Motion and enter summary judgment in favor of the City.

### c. **Plaintiff Fails to Establish Pretext.**

There is no evidence of "lies" or a "phony reason for some action." *See Silvera*, 244 F. 3d at 1261. The record contains no evidence of "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the City's proffered legitimate reasons for its action that a reasonable fact finder could find them unworthy of credence. *See Alvarez*, 610 F. 3d at 1265. It is irrelevant whether Plaintiff believes that Lieutenant Cosner's allegations are false, or that she was terminated for engaging in protected activity—what matters is what was in the mind of the decisionmaker.

Accordingly, the Court should not now reexamine the City's business decision. As Plaintiff cannot prove a *prima facie* case of retaliation, Plaintiff's Title VII and FCRA retaliation claims fail as a matter of law and the Court should enter summary judgment in favor of the City.

### CONCLUSION

For all the reasons set forth herein, the City respectfully requests that the Court grant this Motion for Summary Judgment, disposing of Plaintiff's case in its entirety and entering any other relief the Court deems appropriate.

Dated: June 3, 2024.

Respectfully submitted,

By: /s/*Michael L. Elkins*
Michael L. Elkins, Esq.
Florida Bar No. 523781
melkins@mlelawfirm.com
**MLE LAW**
1212 NE 16th Terrace
Fort Lauderdale, FL 33304
Telephone: 954.401.2608
*Co-Counsel for Defendant*

By: /s/*Henry J. Hunnefeld*
Henry J. Hunnefeld, Esq.
Florida Bar No. 343811
henryhunnefeld@miamibeachfl.gov

By: /s/*Benjamin J. Braun*
Benjamin J. Braun, Esq.
Florida Bar No. 1017937
benjaminbraun@miamibeachfl.gov

**CITY OF MIAMI BEACH**
**CITY ATTORNEY**
City Attorney's Office
1700 Convention Center Drive
Fourth Floor- Legal Department
Miami Beach, FL 33139
Telephone: 305.673.7470
*Co-Counsel for Defendant*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on June 3, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/Michael L. Elkins*
Michael L. Elkins

## SERVICE LIST

CASE NO.: 1:22-cv-21004-MD

Daniel J. Barroukh, Esq.
danielb@dereksmithlaw.com
**DEREK SMITH LAW GROUP, PLLC**
520 Brickell Key Drive
Suite O-301
Miami, FL 33131
*Counsel for Plaintiff*