**Page 1**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO: 1:22-CV-21004-DPG

JESSICA GUASTO,

        Plaintiff,

vs.

THE CITY OF MIAMI BEACH FLORIDA,
a Florida municipality,

        Defendant.

------------------------------------/

DEPOSITION OF:      PAUL M. MASON, PhD
DATE:               APRIL 19, 2024
TIME:               10:13 A.M. - 11:36 A.M.
PLACE:              VIA REMOTE CONFERENCING

REPORTED BY:        SUSAN BARNARD,
                    PROFESSIONAL COURT STENOGRAPHER
                    NOTARY PUBLIC, STATE OF FLORIDA

**Page 2**

1 APPEARANCES:
2
  DANIEL BARROUKH, ESQ.
3 Derek Smith Law Group, PLLC
  520 Brickell Key Drive
4 Suite O-301
  Miami, Florida 33131-2433
5 Office:  786-688-2335
  E-mail:  Danielb@dereksmithlaw.com
6           COUNSEL APPEARING ON BEHALF OF THE PLAINTIFF.
7
  MICHAEL ELKINS, ESQ.
8 MLE Law
  1212 Northeast 16th Terrace
9 Fort Lauderdale, Florida 33304-2323
  Office:  954-401-2608
10 E-mail:  Melkins@mlelawfirm.com
           COUNSEL APPEARING ON BEHALF OF THE DEFENDANT.
11
12
13
14           *  *  *  *  *  *  *  *
15
16
17
18
19
20
21
22
23
24
25

**Page 3**

1                 I N D E X
2
3 WITNESS:
4 Paul M. Mason, PhD
5
  DIRECT EXAMINATION                          4
6 By Mr. Elkins
7
  CROSS EXAMINATION                          53
8 By Mr. Barroukh
9
10
                    -  -  -
11
12          INDEX TO EXHIBITS
13 DEFENDANT'S
14 Exhibit         Description            Page
15    1            case list                8
16    2            updated report          25
17    3            FRS documents           38
18    4            03-26-2024 e-mail       48
19    5            estimates               51
20
21
22
23
24
25

**Page 4**

1 Thereupon,
2           PAUL M. MASON, PhD,
3 having been first duly sworn remotely, was examined and
4 testified as follows:
5           DIRECT EXAMINATION
6 BY MR. ELKINS:
7 Q.    All right.  Good morning, Mr. Mason.
8 A.    Good morning.
9 Q.    Can you hear me okay?
10 A.    Yes.
11 Q.    There is a little motion in the background.
12 Someone in my office is making espresso, so that noise
13 will go away very quickly.
14 A.    I can't hear it.
15 Q.    Perfect.  My name is Michael Elkins.  I
16 represent the City of Miami Beach from the lawsuit of
17 Jessica Guasto, also known as Jessica Salabarria.
18        Are you familiar with the lawsuit?
19 A.    Yes.
20 Q.    Are you familiar with the allegations in the
21 lawsuit?
22 A.    I don't know a whole lot about what transpired,
23 but I know that she was dismissed.
24 Q.    Did you read the Complaint in this lawsuit?
25 A.    I never saw the Complaint.

5

1 Q.    Have you read any of the papers filed in this
2 lawsuit?
3 A.    I have documents related to Ms. Salabarria, but
4 I don't have any depositions or any court filings or
5 anything like that.
6 Q.    So just to be clear, you haven't read any
7 deposition transcripts.  You have not read any court
8 filings in formulating your opinion in this case,
9 correct?
10 A.    That is correct.
11 Q.    Okay.  Have you been deposed before?
12 A.    Yes, probably somewhere between 500 and 1,000
13 times.
14 Q.    So not many.
15 A.    Well, I don't know, I guess relative to
16 attorneys; probably not relative to other expert
17 witnesses.  It is probably a lot.
18 Q.    Part of me just wants to see can you go through
19 every one of the thousand depositions you have been in.
20     MR. BARROUKH:  Objection.
21 Q.    Right.  Obviously then, do you understand the
22 rules of a deposition?  So I am not going to get into
23 the nitty-gritty rules that I would normally go over
24 with someone that hasn't been deposed.  I will remind
25 you of the most important rule that we have.

6

1     There is a court reporter here.  And as great as
2 she is, she just can't take down two people talking at
3 the same time.  I am sure you have been told this as
4 many times as you have been in depos.  So we need to
5 follow this rule and make sure that we don't talk over
6 each other.
7     Do you understand that?
8 A.    I do.
9 Q.    Okay.  And did you do anything to prepare for
10 this deposition?
11 A.    Yes, I looked over the file again yesterday
12 morning, and they were -- I had a brief call with Mr.
13 Barroukh yesterday afternoon.
14     MR. BARROUKH:  I am going to interrupt and tell
15 Dr. Mason not to discuss anything on the phone call.
16 Thank you.
17     MR. ELKINS:  Well, hold on.  He can certainly
18 discuss anything that would be covered under Rule 26 as
19 exempt from the attorney-client privilege.
20     MR. BARROUKH:  Absolutely.  Absolutely.
21 Q.    First of all, how long was your phone call?
22 A.    About 15 minutes.
23 Q.    Did you, during that phone call, did your
24 attorney or did the attorney give you any additional
25 facts or assumptions for you to use either in this

7

1 deposition in formulating your opinion?
2 A.    No.
3 Q.    Okay.  Okay.  Perfect.  Can you tell me your
4 educational background, please?
5 A.    Yes, I have a Bachelor's degree in Math and
6 Economics from the University of Delaware.  The first
7 two years were in Villanova.  And I finished a year and
8 a half at Delaware, and then I got a Master's degree at
9 the University of Delaware in Economics.  And then I got
10 a PhD in Economics at the University of Texas in Austin.
11 Q.    Got it.  How many times have you been qualified
12 as an expert either in a court of law or in some other
13 proceeding like an administrative proceeding or
14 arbitration before any tribunal?
15 A.    I would say around a thousand times.
16 Q.    Okay.  I want to make sure I got this as to how
17 many times you have been qualified as an expert either
18 in a court of law or through some other tribunal.
19 A.    Yeah, maybe it is somewhere between 500 and
20 1,000.
21 Q.    Okay.
22 A.    I have been doing this since 1985.
23 Q.    I am certainly not trying to impugn or I am not
24 saying that there is some problem here, but I am a
25 little concerned about something.  So I am going to show

8

1 you what I will mark as Exhibit 1.
2     (Exhibit is marked for identification.)
3 Q.    This is the case list.  Can you see this
4 document, sir?
5 A.    Correct, yes.  I remember creating it.
6 Q.    This is the case list that lists all cases that
7 we asked for where you have been qualified as an expert.
8 And you have only listed one, two, three, four, five --
9 So where are the other 995?
10 A.    This is only for the last three years.
11 Q.    Okay.  So your testimony is in the last three
12 years, you have been qualified as an expert five times.
13 And then in all the years prior to that, there is
14 another 995 cases in which you actually have been
15 qualified as an expert?
16 A.    I believe so, yes.  I lived in Jacksonville,
17 Florida for 31 years.  I began as an expert witness in
18 the Fall of 1985.  Some years in the Nineties and the
19 2000's, I was doing 80 to 100 cases a year.  When I came
20 to Abilene where I presently am, I became the Dean of
21 the Johnson School at the university.  I cut back
22 considerably on my expert witness work in part because I
23 was further away and that made it more difficult for
24 them to use me and because my duties as dean took up too
25 much of my time.

PAUL MASON, PH.D.

9

1  Q.    Give me just one minute, please.
2  A.    Yup.
3  Q.    Why did you only provide a list for the previous
4  three years?
5  A.    Because that was what was requested.
6  Q.    Are you familiar with the requirement of Federal
7  Rule of Civil Procedure 26 regarding disclosures?
8  A.    Yes.
9        MR. BARROUKH:  Objection.  Calls for a legal
10  conclusion.
11        MR. ELKINS:  I am not asking him to interpret.
12  I am asking if he is familiar with the rule.  There is
13  no legal conclusion there.
14        You can answer, sir.
15  A.    Yeah, ordinarily the request is for five years.
16  But the request I received was for three, so that's what
17  I provided.
18        MR. ELKINS:  One second.  Let's take a
19  two-minute break.
20        (Off the record.)
21        BY MR. ELKINS:
22  Q.    All right.  Sir, Federal Rule of Civil Procedure
23  26-A to B-5 concerns disclosures of an expert witness
24  irrespective of what a law asks for.  In other words,
25  these disclosures are required at the time you file your

10

1  report.  And it requires, excuse me, a list of all other
2  cases in which during the previous four years the
3  witness testified as an expert at trial or by
4  deposition.
5        So the list that you provided, is it for three
6  years or for four years?
7  A.    It is for three.
8  Q.    Okay.  Are there other cases not listed from
9  that additional year that is missing?
10  A.    Yes.
11  Q.    Okay.  And are there additional items not on the
12  list for the three-year period such as when you
13  testified in deposition?
14  A.    No.
15  Q.    So at least for the three-year period, this is a
16  list of all cases in which you testified as an expert at
17  trial or by deposition; is that correct?
18  A.    That is correct.
19  Q.    Okay.  And then there are cases that are missing
20  that you did not disclose for the one-year prior,
21  correct?
22  A.    Correct.
23  Q.    Why didn't you comply with the rule, seeing as
24  you have been an expert thousands of times as you told
25  me?

11

1        MR. BARROUKH:  Objection.
2        MR. ELKINS:  You can answer.
3  A.    I complied with what I was requested to do.  I
4  don't recall being requested to provide Rule 26
5  information.
6  Q.    Well, you understand that you have been retained
7  as an expert in a lawsuit that is in Federal Court,
8  right?
9  A.    Yes.
10  Q.    You have done that before I presume, correct?
11  A.    Yes.
12  Q.    And I presume since you have done that, you are
13  familiar with your expert disclosure requirement,
14  correct?
15  A.    Yes.
16  Q.    But in this case, you did not comply with them.
17  Correct?
18  A.    Yeah, I believe it is because I missed noting
19  that it was in Federal Court.
20  Q.    Okay.  Where did you think this case was
21  pending?
22  A.    Well, since I never received any document
23  stating so, other than the original letter that said
24  U.S. District Court, Southern District of Florida, I
25  just missed that that was Federal.

12

1  Q.    What original letter are you referring to?
2  A.    The letter I received on Friday, January the
3  19th, In Re:  Retainer fee in this case.  Whereby, Mr.
4  Daragjati provided me with your original retainer.
5  Q.    Have you produced that letter in this case?
6  A.    I tried to send it to Mr. Barroukh.  I scanned
7  it in and sent it.  But he said he never got it.
8  Q.    Okay.  Hold on a second.  Let's just -- This is
9  not going to be as short as I originally intended.  Let
10  me unpack this.  It sounds like you are holding the
11  letter right there?
12  A.    I am.
13  Q.    Okay.  Are you telling me that there is a letter
14  between you and the plaintiff's prior counsel, Paul
15  Daragjati, which discusses your engagement; and this
16  letter, as sitting here today in this deposition, has
17  not been produced?  Is that accurate?
18  A.    I recall Mr. Barroukh asking me to send it.  I
19  recall sending it in an e-mail with an attachment, but
20  he didn't get it.
21  Q.    Okay.  But so my question is:  Sitting here
22  today right now, that letter has not been produced; is
23  that not accurate?
24  A.    I would say that is fair, yes.
25  Q.    Okay.  What other documents do you have

PAUL MASON, PH.D.

---

13

1  discussing your engagement, any assumptions or facts
2  provided to you that you haven't already produced in
3  this case?
4      Are there other documents?
5      MR. BARROUKH: Objection on the grounds of
6  privilege with prior counsel. Mr. Daragjati is not
7  here. I don't know that Mr. Daragjati is involved
8  himself. I have already provided --
9      MR. ELKINS: Daniel, I didn't ask him for a
10 broad-based disclosure. I asked him for a document, any
11 facts or data that were provided to him by the lawyer,
12 any documents relating to those things that is exempt
13 under Rule 26 from privilege.
14     You can answer.
15 A.     The only other thing I have is the letter that
16 came with the check for subsequent work that I give
17 after the deposition to actually excuse me after the
18 initial letter to produce my report.
19 Q.    Is that another letter from Mr. Daragjati?
20 A.     Yes.
21 Q.    And that letter came with a check for your
22 compensation?
23 A.     Correct.
24 Q.    And you haven't produced that letter in this
25 case either, have you?

---

14

1  A.    No, I wasn't requested to.
2  Q.    Under Rule 26, you are required to produce all
3  documents and your initial disclosures relating to your
4  compensation.
5  A.     Yes.
6  Q.    But why didn't you do that?
7  A.     Because as I indicated before, I didn't note
8  that this was in Federal Court.
9  Q.    Okay. Are there any other documents relating to
10 your compensation or anything like that that you haven't
11 produced, anything that we haven't covered yet?
12 A.     No.
13 Q.    Okay. Let's go back to your case list. First
14 of all, tell me the cases that are in missing from this
15 list. And remember, you had to disclose depositions
16 and/or trial testimony.
17     MR. BARROUKH: Mike, I am going to object. Your
18 interrogatory asks for three years explicitly.
19     MR. ELKINS: It doesn't matter. The rule says
20 four. My interrogatory doesn't override the rule. And
21 to be clear, the rule required all of this at the time
22 he gave his report. So I can ask for three, one or two
23 but the federal rule requires four.
24     MR. BARROUKH: And I can provide you with four;
25 however, the interrogatory requested three.

---

15

1      MR. ELKINS: Daniel, you are confused. The rule
2  required the disclosure at the time he produced the
3  report. The interrogatories are for followup if stuff
4  isn't produced, which none of it was. So you guys have
5  violated the rule on the initial disclosure which the
6  rule already granted a Motion to Strike once. And then
7  when I followed up, you still didn't follow the rule.
8      So you can object, but he needs to answer this
9  question. I am entitled to know under the rule four
10 years. That's what the rule says. Does the rule say
11 something different that I am not aware of?
12     MR. BARROUKH: I don't believe so. I am just
13 letting you know under the interrogatory, we have
14 provided what was requested specifically.
15     MR. ELKINS: I am not suggesting that there is a
16 problem with the interrogatory response. I have made it
17 very clear that the problem is with the initial
18 disclosure. Under the rule, this information was not -
19 was supposed to have been disclosed as part of the
20 original disclosure and it wasn't. So --
21     MR. BARROUKH: The initial disclosure was prior
22 counsel and we have since sought to amend these
23 responses.
24     MR. ELKINS: Daniel, I don't care if it was
25 prior counsel. You guys took the case. You took it

---

16

1  with all the awards that come with it. The Judge
2  awarded an amended report, which was under your watch.
3  And it still wasn't disclosed properly.
4      MR. BARROUKH: Absolutely. If you have a
5  problem with not wanting us to provide that fourth
6  additional year of deposition and trials, then I am not
7  sure --
8      MR. ELKINS: I want your expert to answer these
9  questions. You are instructing him not to answer. Are
10 you serious right now?
11     MR. BARROUKH: That's not what I am doing. I
12 don't think I have instructed him not to answer.
13     MR. ELKINS: Then I will continue my deposition
14 because this conversation right now is pointless.
15     BY MR. ELKINS:
16 Q.    Sir, please provide to me the missing cases for
17 that additional year that are not on this list. And
18 remember, you are required to provide trials and
19 depositions.
20 A.    Okay. Well, let's define the year, first all.
21 Does that go back to April of 2020? All of 2020? I
22 have a list in front of me that goes back to 2016.
23 Q.    The rule says you have to provide: "A list of
24 all other cases in which during the previous four years
25 the witness testified as an expert at trial or by

---

PAUL MASON, PH.D.

17

1  deposition."  That's what the rule says.
2  A.    Yes.
3  Q.    It says:  "This disclosure must be accompanied
4  by the written report."  So you were disclosed in, I
5  believe, late 2023.  And then your amended report was
6  in, I think, January or February 2024.  So I think we
7  can run the date back from, let's say, February 2024
8  backwards.
9  A.    Okay.  Then there is a case.  It was a medical
10 malpractice case in February where I was deposed.
11 Q.    February 2020?
12 A.    Correct.
13 Q.    What is the style of the case?
14 A.    I am sorry.  Say it again.
15 Q.    What is the style of the case?
16 A.    It was a deposition in a medical malpractice
17 case.  I can give you the case number, if you want.
18 Q.    Give me the case number and the tribunal.
19 A.    It is 2020, 17-CA-001347.  The plaintiff's name
20 is Vahle, V-A-H-L-E.
21     MR. BARROUKH:  Michael, I believe that is on the
22 list.  It says trial, but I believe, to make it faster,
23 it is on the list.  He also performed a deposition, if I
24 am understanding correctly.
25     MR. ELKINS:  Hold on a second.  Let him testify.

18

1  I don't see it on the list.  I see a medical
2  malpractice.
3  A.    It is May of 2022, V-A-H-L-E.
4  Q.    You also testified in that case?
5  A.    I did.
6  Q.    Were you qualified as an expert?
7  A.    Yes.
8  Q.    Any other cases for the extra year that is
9  missing?
10 A.    Yeah, there is a case in June of 2020.  The
11 plaintiff's name was Rullo.  It was a Title IX case.
12 Q.    What is the spelling of the name of the
13 plaintiff, please?
14 A.    R-U-L-L-O.
15 Q.    What was the name of the defendant?
16 A.    I don't report that information.
17 Q.    You don't record the full name of the case in
18 which you are hired as an expert?
19 A.    Only the person I represent or company I
20 represent and the attorney that I worked for.
21 Q.    Who was the attorney?
22 A.    H-E-N-R-I-C-H-S-O-N.
23 Q.    In which tribunal was this case?
24 A.    Federal Court, Title IX.
25 Q.    What Federal Court?

19

1  A.    I don't report that information, just Federal.
2  Q.    Let me make sure.  In providing information on
3  the cases that you allege that you have previously been
4  qualified in as an expert or been deposed, you are
5  telling me that you don't keep track of the defendant
6  and you do not keep track of the specific court?
7  A.    That's correct.
8  Q.    So how then if I wan to research your history
9  would I look up this rule location?
10     How would I find it if you don't give me the
11 information to do so?
12 A.    By the case number.
13 Q.    What is the case number?
14 A.    2:17-CV-01380-MPK.
15 Q.    And you understand that a Federal case number
16 doesn't really tell me which Federal Court it is in?
17 A.    I didn't know that.
18 Q.    Okay.  Any other cases?
19 A.    Yeah, there was the Davis case in August of
20 2020.
21 Q.    Okay.  What was the case number for that?
22 A.    2013-CA-007673-0.
23 Q.    I am assume you don't know the tribunal for this
24 case either?
25 A.    It was circuit court in Florida.

20

1  Q.    But you don't know what County?
2  A.    I don't recall.
3  Q.    Did you testify or were you deposed or both?
4  What happened?
5  A.    I was deposed.
6  Q.    What was this case about?
7  A.    It was --
8      MR. BARROUKH:  Objection.  Calls for
9  speculation.
10 Q.    Okay.  What was the case about?  You can answer.
11 A.    It was a child that was purported to have been
12 harmed at birth when the doctor used forceps to deliver
13 the baby.
14 Q.    Was it a Med/Mal case?
15 A.    Yes.
16 Q.    Okay.  Any other cases that I am missing?
17 A.    Yeah, there was one which was in March of 2021.
18     MR. BARROUKH:  That is on the list.
19 Q.    Anything that is not on the list that I am
20 missing?
21 A.    The rest of the ones on my list, I don't know
22 any that --
23 Q.    So no cases that are not on the list that I am
24 missing?
25 A.    I believe that's it.

PAUL MASON, PH.D.

21

1  Q.    Okay. All right. Thank you for that. Have you
2  ever been an expert in a case involving a municipality
3  or governmental entity?
4  A.    I am sure I have been, but I don't recall any
5  details.
6  Q.    Well, sitting here today, do you remember
7  specifically any case where there was a governmental
8  entity or municipality involved?
9       Sir?
10      MR. BARROUKH: I am going to object to form.
11      MR. ELKINS: You can answer, sir.
12 A.    I don't recall off the top of my head.
13 Q.    Sir, if you are not -- Sir, you are not allowed
14 to look at documents during the deposition to try to
15 answer my questions. So what I need you to do is put
16 the computer aside and answer my questions. I want to
17 note for the record when I asked this question, the
18 witness attempted to find his answer on his computer.
19      So sitting here today, do you recall any cases
20 that involve a municipality or government entity without
21 looking at your computer or whatever documents you have,
22 unless you want to produce those to me?
23 A.    I don't recall.
24 Q.    Okay. How about any cases involving public
25 sector pension plans prior to this case?

22

1  A.    Yes, I have.
2  Q.    Okay. So you remember cases involving public
3  sector pension plans?
4  A.    I am pretty confident that I have had cases
5  involving municipalities too. I just can't remember the
6  details. One of the things that throughout my career I
7  believe has worked in my favor is that once a case is
8  over, I forget about it; otherwise, they would all run
9  together.
10 Q.    Okay. So sitting here today then, what you are
11 telling me then is you are pretty sure you worked with
12 public sector pension plans and municipalities at some
13 point; but because of this, what you consider to be an
14 advantage that you forget about your cases, you just
15 can't give me any information on those sitting here at
16 your deposition today. Is that accurate?
17 A.    That's accurate.
18      MR. BARROUKH: Objection.
19 Q.    And certainly within the last four years, you
20 have not worked on a case involving a municipality or a
21 public sector pension plan excluding this case?
22 A.    That's correct.
23 Q.    Okay. Have you ever in the last four years
24 worked on any cases or been an expert in any case
25 involving employment discrimination claims?

23

1  A.    Yes. I am sorry, the last four years?
2  Q.    Correct.
3  A.    There was -- Let's see. Can you ask me that
4  question again, please?
5  Q.    In the last four years -- Well, let me do it
6  this way: On your list here that I have in front of
7  you, it looks like the four cases that aren't this case
8  under type that says personal injury, personal injury,
9  medical malpractice and personal injury, correct?
10 A.    Yes.
11 Q.    So certainly those four cases did not involve
12 employment discrimination, correct?
13 A.    Correct.
14 Q.    Okay. And then for the three cases that you
15 listed for me just now additionally, one was a med/mal
16 case, which is I think also on the list. Then there was
17 a Title IX case. And then the August 2020 case, the
18 Davis case, do you remember what that was about?
19 A.    Yeah, that was a medical malpractice case.
20 Q.    Okay. So we just talked about all the cases
21 that you've disclosed that you've been a part of in the
22 last four years and none of them were employment
23 discrimination cases, correct?
24 A.    I believe that is correct. The Rullo case is
25 kind of confusing in that it was a case of a woman who

24

1  had an issue with another student in law school; and as
2  a result, she had to change law schools, and that
3  impacted on her employability. And that's why I'm
4  wavering because that case may be within the realm.
5  Q.    Okay. But other than the Title IX case that you
6  just talked about, no other employment discrimination,
7  correct?
8  A.    Not in the last four years, no.
9  Q.    How about prior to the last four years?
10 A.    Yeah, I had a lot of them.
11 Q.    Under Title VII?
12      MR. BARROUKH: Objection. I am going to say it
13 calls for legal conclusion and speculation, if it is
14 Title VII.
15      MR. ELKINS: If he knows, he can answer.
16 Q.    Were you involved in a case that involved Title
17 VII?
18 A.    I don't know what Title VII is, but I have had
19 cases where employment has been adversely affected. And
20 I testified at either deposition or trial or both in
21 those cases.
22 Q.    So I am going to make sure I heard you
23 correctly. You said you don't know what Title VII is,
24 correct?
25 A.    That's what I said.

25

1  Q.    Okay.  All right.  Do you know what the Florida
2  Civil Rights Act is?
3        MR. BARROUKH:  Objection.
4        MR. ELKINS:  You can answer.
5  A.    I don't know the details, but I am aware of it.
6  Q.    Okay.  What are you aware of about it?
7        MR. BARROUKH:  Objection.
8  A.    In the State of Florida, that people cannot be
9  discriminated against based on race, ethnicity, gender,
10 et cetera.
11       MR. BARROUKH:  We couldn't hear you.
12       MR. ELKINS:  Sorry.
13 Q.    Anything else?
14 A.    No.
15 Q.    Have you ever been involved or an expert in a
16 case involving the Florida Civil Rights Act?
17       MR. BARROUKH:  Objection.
18       MR. ELKINS:  You can answer.
19 A.    I don't know.
20 Q.    Okay.  Okay.  Let's talk a minute about your
21 report or your updated report, which I will mark as
22 Exhibit 2.
23       (Exhibit is marked for identification.)
24 Q.    Can you see the screen?
25 A.    I can.

26

1  Q.    The case list will be Exhibit 1.  The report is
2  Exhibit 2, your updated report.
3  A.    Yes.
4  Q.    Do you know why you were required to file an
5  updated expert report?
6        MR. BARROUKH:  Objection.
7        MR. ELKINS:  You can answer.
8  A.    Well, I was asked to.  But now that I recognize
9  that this is Federal Court, it should have been produced
10 anyway.
11 Q.    Are you familiar with the Judge's order striking
12 your initial report?
13       MR. BARROUKH:  Objection.  I am going to
14 instruct you not to talk about our conversation.
15       THE WITNESS:  Okay.
16 Q.    If you can answer the question without talking
17 about what you and your counsel talked about, then you
18 are free to answer it.
19       So I will re-ask the question:  Are you familiar
20 with the judge's order striking your initial expert
21 report?
22 A.    Not independently of conversations with Mr.
23 Barroukh.
24 Q.    Stop right there.  We will leave it at that.  So
25 I presume you are familiar with this report, correct?

27

1  A.    Yes.
2  Q.    Okay.  I just want to go over a couple of things
3  in here.  I don't want to spend too much time on it.
4  A.    Okay.
5  Q.    Initially in the report, you say that:  "This is
6  at the request of Daniel Barroukh" --
7        MR. ELKINS:  Am I pronouncing your name
8  correctly?
9        MR. BARROUKH:  It is Barroukh.
10       MR. ELKINS:  Thank you.
11 Q.    "At the request of Daniel Barroukh, I am
12 providing the written report with the spreadsheet
13 document in the case of Jessica Salabarria Guasto."
14       Now just to reiterate, I want to make sure I
15 understand this.  In producing this report, you do not
16 know what Ms. Salabarria's claims are against the City
17 of Miami Beach, correct?
18       MR. BARROUKH:  Objection.
19       MR. ELKINS:  You can answer.
20 A.    All I know is that she was dismissed.
21 Q.    Understood.  And you didn't read the Complaint,
22 correct, in formulating your opinion?
23       MR. BARROUKH:  Objection.
24 A.    No, it was never provided to me.
25 Q.    Did you ask for it?

28

1        MR. BARROUKH:  Objection.  I will instruct you
2  not to answer.
3        MR. ELKINS:  Well, if he wanted the Complaint as
4  part of forming his opinion, that is fair game.
5        MR. BARROUKH:  You can ask if he was given the
6  Complaint or read the Complaint.  But if he asked for
7  the Complaint, I don't think he should answer that
8  question.
9        MR. ELKINS:  Okay.  Fair enough.
10 Q.    And you say here that the result was her
11 dismissal from Miami-Dade County Police Department.
12       Do you see that?
13 A.    Yup.
14 Q.    Okay.  And I presume the statements in your
15 report are accurate to the best of your knowledge,
16 correct?
17 A.    Well, subsequent to the report, I note that the
18 W2's indicated different municipality.
19 Q.    What municipality?
20 A.    Miami Beach, although it wasn't even called that
21 in some of the documents.
22 Q.    Okay.  So are you aware which municipality Ms.
23 Salabarria worked for, sir?  You can't -- Sir, you
24 cannot -- Sir --
25       I want the record to reflect that the witness is

29

1  again looking at documents when he has been instructed
2  not to do that, and I have no idea what these documents
3  are.
4       So without looking at your document, sir, as you
5  have been previously instructed not to look at the
6  documents, but looking at what I provided and marked as
7  Exhibit 2, which is your report, sitting here today, are
8  you aware what municipality Ms. Salabarria worked for?
9  A.   Yes.
10 Q.   And what municipality is that?
11 A.   Miami Beach Police Department.
12 Q.   Is the Miami Beach Police Department a
13 municipality?
14      MR. BARROUKH:  Objection.
15      MR. ELKINS:  You can answer.
16 A.   No, that was the employer.  The municipality is
17 Miami-Dade, I believe.
18 Q.   Okay.  In your report you talk about the Florida
19 DROP Program.  You see where I highlighted it?  Do you
20 see that on the document?
21 A.   Yes.
22 Q.   Are you referring to the Florida DROP Program
23 that is associated with the Florida Retirement System?
24 A.   Yes.
25 Q.   Okay.  What is your understanding of the Florida

30

1  Retirement System?
2  A.   If you enter the Florida Retirement System, not
3  the optional plan, you are eligible for DROP in the last
4  eight years of employment.  It used to be less than
5  that.  And what it does is increase your income, but you
6  continue to get your retirement which is held in an
7  account that pays interest, and you receive it when you
8  actually retire.
9  Q.   Do you know what the acronym DROP stands for?
10 A.   I know I have seen it recently, but I forgot.
11 Q.   Okay.  How many cases besides this one have you
12 been retained in that involve DROP programs?
13      MR. BARROUKH:  Objection.
14 A.   I would say 10 to 15.
15 Q.   Okay.  Do you remember the names of those?
16 A.   No.
17 Q.   And what is your understanding of what a DROP
18 program is?
19 A.   I was still in Florida when the DROP program was
20 created.  It was a way to bolster the retirement of
21 state employees but at the same time motivate those
22 employees to retire earlier than they might otherwise.
23 Q.   And by entering the DROP program, there are
24 certain calculations that essentially give the employee
25 retiring earlier than they would otherwise bumps to

31

1  their pension, significant bumps.  So they get basically
2  a benefit, a significant benefit, financially for
3  retiring early.  Is that a fair statement of a DROP
4  program?
5       MR. BARROUKH:  Objection.
6  A.   That's my --
7       MR. ELKINS:  You can answer.
8  A.   That's my understanding, yes.
9  Q.   And then different DROP programs, correct me if
10 I am wrong, have different calculations, correct?
11 A.   Yes.
12 Q.   So like Florida is the Florida Retirement System
13 DROP program, by way of example, would be different than
14 if a particular city or let's say another state than say
15 the state of Tennessee's DROP program, correct?
16      MR. BARROUKH:  Objection.
17      MR' ELKINS:  Hypothetically.
18      MR. BARROUKH:  Incomplete hypothetical.
19      MR. ELKINS:  That's fine.  You can answer.
20 A.   I don't know that I have done any cases
21 involving DROP outside the State of Florida.
22 Q.   Okay.  Well then within the State of Florida, if
23 a municipality, for example, had its own DROP program
24 outside the Florida Retirement System, that would be
25 based on a different calculation than how the Florida

32

1  Retirement System does it, correct?
2       MR. BARROUKH:  Objection.
3       MR. ELKINS:  You can answer.
4  A.   I really don't know the answer to that.
5  Q.   Okay.  That's fair.  That's fair.  And you were
6  using the Florida Retirement System DROP program and the
7  calculations that went with that DROP program, correct?
8  A.   Yes.
9  Q.   Okay.  Perfect.  You see number nine where it
10 says various data sources?
11 A.   Yes.
12 Q.   What are the various data sources?
13 A.   I have a document that I have created over the
14 years and added to each year that looks at interest
15 rates, inflation rates, growth rates of earnings and
16 other things like that that help me determine the gross
17 growth rates used in certain cases.  I indicated to Mr.
18 Barroukh that --
19      MR. BARROUKH:  Objection on this.  Yeah, I am
20 going to instruct you not to talk about our discussions
21 and please focus on answering the question if possible.
22      Michael, I am also going to object on privilege
23 and instruct the client not to answer this question.
24      MR. ELKINS:  Wait a minute.  Wait a minute.
25 Hold on.  I asked --

PAUL MASON, PH.D.

33

1      MR. BARROUKH:  Could you repeat the question,
2  please, actually?
3      MR. ELKINS:  Yeah, he wasn't done answering.  I
4  mean, I don't want him to reveal privileged
5  communication, but he has put in his report that he
6  relied on.  In fact, it says:  "The following represents
7  all the materials I considered in developing my opinions
8  in the above referenced case."
9      In number nine, he says various data sources.
10  So there is no privilege relating to those various data
11  sources.  I am entitled.  And he has to tell me what
12  they are.  And if he talked about those various data
13  sources with you, that's not privileged.
14      MR. BARROUKH:  I understand.
15      MR. ELKINS:  Okay.  So continue, sir, with your
16  answer.  You were telling me about this document you
17  created.
18  A.   Yes.  But I determined after I submitted the
19  report that given the nature of this case and the facts
20  that I used in this case, that I didn't really use that
21  document.
22  **Q.   You mean you determined that after you submitted**
23  **your amended report?  You independently then decided,**
24  **oh, wait a minute, I didn't really use that document?**
25  A.   I did.

34

1      MR. BARROUKH:  Objection.
2      MR. ELKINS:  That's fine.
3  **Q.   But you didn't amend the report to reflect that,**
4  **did you?**
5  A.   I did not.
6  **Q.   And when you say you didn't really use it, does**
7  **that mean you didn't use it at all, or you only used it**
8  **a little bit?**
9      MR. BARROUKH:  Objection.
10      MR. ELKINS:  You can answer.
11  A.   To the extent I identified earnings based on the
12  average growth rates of earnings for hourly workers in
13  my pretermination potential salary earnings column, I
14  used it; but otherwise not, because my discount rate and
15  my growth rates in the future were not predicated on
16  that document.
17  **Q.   But you did use it?  I think you just told me**
18  **you used it in this report.**
19      MR. BARROUKH:  Objection.
20      MR. ELKINS:  You can answer.
21  A.   I used one or two numbers from that report for
22  the growth rates of earnings in 2020, 2021, but that was
23  it.
24  **Q.   So why didn't you produce these various, this**
25  **document, as one of the documents that you used?**

35

1      MR. BARROUKH:  Objection.
2      MR. ELKINS:  You can answer.  I will withdraw
3  the question.
4  **Q.   You have not produced this document that you are**
5  **referring to that you created, correct?**
6  A.   That is correct.
7  **Q.   Okay.  That's fine.  And your report, that**
8  **reports earnings all the way through 2073; is that**
9  **correct?**
10  A.   Yes.
11  **Q.   And that is when Ms. Salabarria is 81 or 82**
12  **years old, correct?**
13  A.   Yes, but those earnings in the later part of her
14  life are pension earned.
15  **Q.   When do you stop?  Is it 2047 where the work**
16  **place earnings stop?  That is when she is 56; is that**
17  **right?**
18  A.   That is correct.
19  **Q.   So you have earnings running from an additional**
20  **20 plus years, correct?**
21  A.   Give or take.  I mean, from like when she is 30
22  something, 33 something to 36, right --
23      MR. BARROUKH:  Objection.
24  A.   -- yes.
25  **Q.   Are you familiar with what front pay is?**

36

1      MR. BARROUKH:  Objection.
2      MR. ELKINS:  You can answer.
3  A.   I have heard the term.  Off the top of my head,
4  I can't recall what it is.
5  **Q.   Okay.  So you didn't consider issues related to**
6  **front pay in formulating your report, did you?**
7      MR. BARROUKH:  Objection.
8      MR. ELKINS:  You can answer.
9  A.   No.
10  **Q.   Okay.  And you didn't consider anything**
11  **involving mitigation of damages in creating your report,**
12  **did you?**
13      MR. BARROUKH:  Objection.
14      MR. ELKINS:  You can answer.
15  A.   In a sense that -- Well, I took into account
16  what she earned after her dismissal and the years
17  involved and use that to project into the future.  I did
18  take into account mitigation of damages.
19  **Q.   Okay.  Fair enough.  And your report going**
20  **forward presumes that Ms. Salabarria or Guasto would**
21  **have remained employed all the way through age 56 and**
22  **inability to DROP, correct?**
23      MR. BARROUKH:  Objection.
24  A.   In the previous termination case, yes.
25  **Q.   I am sorry.  Say that again.**

37

1  A.    In the pretermination case, yes.
2  Q.    What do you mean by the pretermination case?
3  A.    Well, the assumption of what she would have
4  earned pretermination.
5  Q.    Had she not been terminated?
6  A.    Yes.
7  Q.    Right.  But you would agree with me that there
8  is no guarantee that she would have remained employed
9  all the way through to age 56?
10       MR. BARROUKH:  Objection.
11       MR. ELKINS:  I am not done.
12  Q.    She could have been terminated for some other
13  reason.  Your report presumes she makes it all the way
14  to age 56, correct?
15       MR. BARROUKH:  Objection.
16       MR. ELKINS:  You can answer.
17  A.    Yes.  And the reason is that my responsibility
18  is to produce numbers related to loss during capacity,
19  and that seemed like the reasonable lost earning
20  capacity.
21  Q.    Right.  And then the pension and retirement
22  numbers are based on the calculation from I think the
23  DROP program through the Florida Retirement System
24  assuming she enters DROP?
25  A.    Correct.

38

1  Q.    Okay.  Perfect.  One second.  All right.  I am
2  showing you what I am going to mark as Exhibit 3.
3        (Exhibit is marked for identification.)
4  Q.    You see this document?
5  A.    I do.
6  Q.    This is part of the documents that were produced
7  in this case.  You can see it is Bates stamped at the
8  bottom?
9  A.    Yes.
10  Q.    I am going to scroll down and show it to you
11  because it seems like there may be overlaps with the
12  document.  This is the order in which this portion was
13  produced.  So the first one talks about FRS, Florida
14  Retirement System retirement eligibility?
15  A.    Yes.
16  Q.    Okay.  Then the next page looks like a
17  continuation of that.  You can see at the top Florida
18  Retirement System Retirement Eligibility, correct?
19  A.    Yes.
20  Q.    Okay.  Then there is this document that looks
21  like it is from Asset that says:  "Have questions about
22  your taxes?"  And then we will come back to that.  Then
23  again, we have the next document is a Florida Retirement
24  System document entitled:  "For Investment Plan Members,
25  When Your Florida Retirement System Employment Ends,

39

1  Your Florida Retirement system Investment Plan
2  Distribution Options and Special Tax Notice from July
3  2023."
4        Do you see that?
5  A.    Yes.
6  Q.    And then there is an additional page.  It looks
7  like it is a cover page of a larger document.  And then
8  it looks like the next page is Page 16.
9        Do you see that?
10  A.    Yes.
11  Q.    Okay.  So let's back up.  This document in the
12  middle of what I am going to call the FRS documents,
13  what is this document?
14  A.    Can I look at my copy?
15  Q.    You can as long as you are only going to look at
16  this document.  You are free to do that, yes.
17  A.    Okay.  It was stapled to the back of something
18  else.
19  Q.    Fair.  As long as you are only looking at this
20  document, I am okay with it.
21  A.    I am looking at just this document.
22  Q.    Okay.  What is this document?
23  A.    This is a document where I looked at what the
24  tax liability would be for an income equivalent to what
25  I estimated for 2023 for Ms. Salabarria.

40

1  Q.    Okay.  So you plugged in.  You used this online
2  tool, I am assuming, from the web site asset and plugged
3  in the information?
4  A.    Correct.
5  Q.    And is this all, is this everything that you got
6  when you did that?  Is this a full and complete
7  production of everything you got or used from the web
8  site Smartasset.com?
9        MR. BARROUKH:  Objection.
10       MR. ELKINS:  You can answer.
11  A.    Do you have a page that says "Overview of
12  Federal Income Tax."
13  Q.    Well, hold on.  We will get to that.  I just
14  wanted to know sitting here today.  You are not allowed
15  -- You have to stop taking documents and looking at them
16  during the deposition.  It is completely inappropriate.
17  This is the third time you have done it.
18       MR. BARROUKH:  Dr. Mason, I am going to ask you
19  to stay only on the document Mr. Elkins is asking you to
20  look at and no other documents unless he instructs
21  otherwise.  Thank you.
22  A.    Okay.  The reason I looked at that is it is Page
23  1 of the two pages from a set of 15 pages that I used to
24  estimate Ms. Salabarria's tax liability for the year
25  2023.

PAUL MASON, PH.D.

41

1  Q.    All I am asking about is the documents from this
2  web site Smartasset.com as it is known in the lower
3  left-hand corner.  It is like Page 2 of 15, but it was
4  produced in the middle of these other Florida Retirement
5  System documents.  You can see the Bates number runs 31,
6  32, 33.
7      So it is unclear to me how this document, Bates
8  No. 000032 fits with the other documents.  Are you
9  saying the other 14 documents were produced?
10     MR. BARROUKH:  Objection.
11     MR. ELKINS:  You can answer.
12 A.    Yeah, I scanned in the documents.  I didn't pay
13 much attention to the order in which they were scanned
14 in, but this document was used to determine the tax rate
15 for the year 2023.
16 Q.    Okay.  And it looks like nobody else paid
17 attention to the order either.  All right.
18     So for now, going back to the FRS Retirement
19 Eligibility document, at the bottom of this document it
20 says Page 1 of 3.  It looks like you got this off the
21 Miami-Dade County web site, right, from Human Resources,
22 correct?
23 A.    Yes.
24 Q.    And then I have Page 2 of 3.  You see that?
25 A.    Yes.

42

1  Q.    Then we have mixed in the middle, the production
2  from SmartAsset.com, which is not related to the Florida
3  Retirement System, correct?
4  A.    Correct.
5      MR. BARROUKH:  Objection.
6      MR. ELKINS:  Whatever.
7  Q.    And then I have this cover page to the Florida
8  Retirement System, which does not relate to the earlier
9  document, that looks to be three pages, you would agree
10 with me, correct?
11 A.    Yes.
12 Q.    Then I have Page 16 from a document from
13 MyFRS.com.  Did you produce Page 3 of this first set of
14 documents?
15     MR. BARROUKH:  Objection.
16     MR. ELKINS:  You can answer.
17 A.    I did not because the information that was used
18 that was required was on that Page 2.
19 Q.    So whatever Page 3 -- So, first of all, the
20 document FRS Retirement Eligibility, Bates number ending
21 in 30, it is a three-page document.  You only produced
22 Pages 1 and 2.  You omitted Page 3 on purpose, correct?
23     MR. BARROUKH:  Objection.
24     MR. ELKINS:  You can answer.
25 A.    I didn't omit it on purpose.  I just didn't find

43

1  anything on that page that was useful, so I didn't
2  submit it.
3  Q.    Okay.  So you purposely intentionally did not
4  submit Page 3, correct?
5      MR. BARROUKH:  Objection.  You are
6  mischaracterizing the testimony.
7      MR. ELKINS:  I'm not impugning his character the
8  reason why he purposely omitted is one thing, but I
9  think it is crystal clear you intentionally did not
10 produce Page 3.  That you want to read that in as bad,
11 that is fine, but it wasn't an accident, correct?
12 A.    No, it was unnecessary.
13 Q.    Okay.  But again, it was not an oversight that
14 it wasn't produced, right?
15 A.    No.
16 Q.    It wasn't an accident that two wasn't produced,
17 was it?
18 A.    No.
19 Q.    It was consciously not produced, correct?
20 A.    Yes.
21 Q.    Okay.  Also going now to this handbook, it looks
22 like it is some sort for investment plan negotiations
23 within your employment and dated July 23rd, Bates number
24 ending in Plaintiff's 33.  It looks like this is the
25 corresponding page.  Then you only produced Page 16 of

44

1  this what I am going to call a handbook; is that
2  accurate?
3  A.    Yes.
4  Q.    And you got that information from MyFRS.com
5  which is a web site relating to the Florida Retirement
6  System, correct?
7  A.    Yes.
8  Q.    Okay.  And these Florida Retirement System
9  documents, just so I understand - and I understand what
10 you are telling me, this is the only information you
11 used from them - these helped form the basis and are
12 considered as part of your expert opinion as to Ms.
13 Salabarria's potential future earnings, correct?
14     MR. BARROUKH:  Objection.
15     MR. ELKINS:  You can answer.
16 A.    This actually refers to future fringe benefits
17 after retirement.
18 Q.    Okay.  But you considered that as part of your
19 opinion, correct --
20 A.    Yes.
21 Q.    -- future fringe benefits under Florida
22 Retirement System?
23 A.    Yes.
24 Q.    Okay.  That's all I am trying to conform.
25 A.    Okay.

PAUL MASON, PH.D.

---

45

1  Q.    And then for the incomplete three-page document,
2  FRS Retirement Eligibility, you considered that in
3  calculating Ms. Salabarria's eligibility for retirement
4  going forward, correct?
5  A.    Yes.
6  Q.    And did you also use the Florida Retirement
7  System pension calculations for calculating her earnings
8  going forward through when she DROP's and is getting her
9  pension?
10       MR. BARROUKH:  Objection.
11       MR. ELKINS:  You can answer.
12  A.    I am sorry.  Ask that question again, please.
13  Q.    Yeah.  Did you -- I am just confirming what I
14  think happened:  You used the calculations that the
15  Florida Retirement System used for pension in your
16  calculations, right?
17  A.    Yes.
18       MR. BARROUKH:  Objection.
19  Q.    And there is a formula for calculating pension.
20  Everybody has a different formula, right?
21  A.    Yes.
22  Q.    Okay.  So you used the Florida Retirement System
23  as a basis for calculating Ms. Salabarria's pension?
24       MR. BARROUKH:  Objection.
25       MR. ELKINS:  You can answer.

---

46

1  A.    Yes.
2       MR. ELKINS:  Let's take five.  I might be close
3  to being finished.
4       (Off the record.)
5          BY MR. ELKINS:
6  Q.    A couple more things:  What is your hourly rate
7  in this case?
8  A.    $400 an hour.
9  Q.    One second.  Sorry.  I am just attempting to
10  share my screen here.  One minute.  Okay.  Going back to
11  your report or updated report which was marked as
12  Exhibit 2, where it says here:  "I billed Mr. Barroukh
13  for my report" -- Do you see it is blank there?
14  A.    Yes.
15  Q.    So did you fill out this report before you
16  submitted it?
17  A.    I didn't get -- I knew the deposition was coming
18  up, so I never sent him a bill yet.
19  Q.    How much have you been paid so far for your
20  services?  Don't look at documents, sir.
21  A.    How can I not look at documents to find out how
22  much I have been paid?
23  Q.    I am going to answer that question for you.  As
24  somebody that has been deposed a thousand times, as you
25  told me before, that is a pretty basic rule for

---

47

1  depositions.  Listen to me carefully:  You were supposed
2  to prepare for this deposition.  You were supposed to
3  come here with basic information.  And any expert
4  witness who has testified as how many times you have
5  told me, you would know that you are going to be asked
6  about your compensation.
7       So the answer to your question, sir, is that you
8  should have been prepared.  You are not allowed to look
9  at documents during your deposition.  So I will ask you
10  again.  If you don't know, you can just tell me you
11  don't know?
12       How much have you been paid to this point for
13  your services?
14       MR. BARROUKH:  Michael, I am going to object on
15  being argumentative with the witness.
16       MR. ELKINS:  That's fine.  The witness is
17  engaging in unethical conduct.  I want it on the record
18  so I can bring it to the Judge's attention.  My question
19  stands:  How much have you been paid to this point for
20  your services?
21       THE WITNESS:  And I will also --
22       MR. BARROUKH:  I am going --
23       MR. ELKINS:  The witness is arguing with me
24  about it.  He has given a cockamamie statement.
25       THE WITNESS:  How am I supposed to get the

---

48

1  answer without looking at --
2       MR. BARROUKH:  I understand.  Let's continue the
3  questioning in a civil manner and let's continue.
4       MR. ELKINS:  I am being very civil.  Answer the
5  question.
6  A.    $2,100.
7  Q.    Are you sure?
8  A.    Yes.
9  Q.    Okay.  And how much do you anticipate billing
10  going forward including today's deposition?
11       MR. BARROUKH:  Objection.
12       MR. ELKINS:  You can answer.
13  A.    Another $2,000 or so.
14  Q.    How much are you charging for this deposition
15  today?
16  A.    $800, if it lasts less than two hours.
17  Q.    Okay.
18  A.    Which that's three --
19  Q.    That's what?
20  A.    Well, that's a half hour from now, so we should
21  be good.
22  Q.    We will see.
23  A.    Okay.
24  Q.    I am showing you what I am going to mark as
25  Exhibit 4.

---

PAUL MASON, PH.D.

49

1        (Exhibit is marked for identification.)
2   Q.    This is an e-mail between you and Mr. Barroukh's
3   office.  I believe Mr. Rodriguez is a paralegal there.
4   And then this second page is a letter from you to Mr.
5   Barroukh.  It says: "This letter constitutes my bill in
6   the Salabarria case for the time spent on this case
7   since I took over.  I spent four hours on the case
8   including time to review additional documents, revise my
9   previous spreadsheet as a result and write attached
10  report at my hourly rate of $400.  And the total amount
11  due for this portion is $1,600."
12       Do you see that?
13  A.   I do.
14  Q.   Have you been paid that $1,600 yet?
15  A.   No.
16  Q.   Okay.  So the $2,100 you just told me about
17  earlier does not include this $1,600, correct?
18  A.   Yes, it does.
19  Q.   Okay.  I think you just testified earlier that
20  you have been paid $2,100 in this case up to this point,
21  correct?
22  A.   That is correct, but that was paid by the
23  previous attorney.
24  Q.   Okay.  And I just asked you if that $2,100
25  includes this $1,600, and you just said it does.

50

1   A.   Yes.
2   Q.   But I also asked you if you had been paid this
3   $1,600 and you said --
4   A.   No, I hadn't gotten it yet, no.
5   Q.   Let's back up.
6   A.   Okay.
7   Q.   How much have you actually been paid up to this
8   point, if you remember or know?
9   A.   $2,100.
10  Q.   You physically received $2,100, correct?
11  A.   I did receive a retainer of $800 and another
12  $1,300 for writing the report.
13  Q.   Okay.  So you have, you physically received, the
14  $1,600 that I am referencing in this Exhibit 4?
15  A.   No.
16  Q.   Okay.  So logically, correct me if I am wrong,
17  the $2,100 does not include this $1,600, correct?
18  A.   That is correct.
19  Q.   Okay.
20  A.   I am sorry.  I misunderstood the question.
21  Q.   Okay.
22  A.   And the reason is because the amount that I am
23  still owed is also close to $2,100.
24  Q.   That's fine.  One more thing --
25       MR. BARROUKH:  There are also two reports which

51

1   may contribute to the confusion.
2        MR. ELKINS:  I think the issue is clarified.
3        MR. BARROUKH all right.
4   Q.   All right.  I am showing you what I am marking
5   as Exhibit 5.
6        (Exhibit is marked for identification.)
7   Q.   Do you see this document?  It is five pages.
8   A.   Yes.
9   Q.   These are what I believe are estimates of
10  statements of retirement benefits.  You see this?
11  A.   Yes.
12  Q.   Okay.  How did you get these documents?
13  A.   They were provided to me.
14  Q.   Okay.  And how did these documents assist you in
15  forming your opinion in this case?
16  A.   I use those documents to identify Ms.
17  Salabarria's retirement income post dismissal.
18  Q.   For the estimates?  You mean, through -- Hold
19  on.  I am sorry.  You said her retirement income post
20  dismissal?
21  A.   Correct.  Since she was vested in the retirement
22  plan, she will receive some retirement income in the
23  future, just not nearly as much as if she had not been
24  dismissed.
25  Q.   But your calculations are based upon her having

52

1   not been dismissed, right?  Your report is had she not
2   been dismissed, this is what she would have earned going
3   forward, and this is what she would have gotten through
4   the pension.  Correct?
5        MR. BARROUKH:  Objection.
6        MR. ELKINS:  You can answer.
7   A.   That is the part which is predismissal earnings,
8   that projected predismissal.  But it also projected post
9   dismissal earnings which included this much smaller
10  amount of pension based on her being vested at the time
11  of dismissal.
12  Q.   I see.  So the document I just showed you in
13  Exhibit 5 were used for that limited category that I
14  think you just said, right?  What is it again?
15  A.   The retirement that's post dismissal as a result
16  of her being vested.
17  Q.   Okay.  I see.  So that's what the document in
18  Exhibit 5 were used for?
19  A.   Yes.
20  Q.   Okay.  And then the Florida Retirement System
21  and the DROP calculation, that is all used to calculate
22  the bigger number which is the future earnings and then
23  the DROP earnings; is that correct?
24  A.   That is correct.
25       MR. ELKINS:  Perfect.  Okay.  I don't have any

53

1  further questions.
2      MR. BARROUKH I just have one question.
3          CROSS-EXAMINATION
4          BY MR. BARROUKH:
5  Q.    On the previous document Mr. Elkins showed you -
6  I don't have the exhibit at this time - did you access
7  any public web sites to obtain the information where Mr.
8  Elkins showed you Page 1 and Page 2, but Page 3 was not
9  produced?
10      Was that a public web site, if you remember?
11  A.   I believe so, yes.
12  Q.   And does anyone have access to that public web
13  site?
14      MR. ELKINS:  Form.
15  A.   Yes.
16      MR. BARROUKH:  All right.  Thank you.  That's
17  it.  I have nothing else.  Okay.  Wait.  I left out a
18  few things.  First of all, I am going to put the
19  exhibits in the chat.  We are ordering.  I am actually
20  going to order it expedite and mini only.
21      COURT REPORTER:  When do you need it?
22      MR. ELKINS:  Next week.
23      COURT REPORTER:  Do you need a copy, Daniel?
24      MR. BARROUKH:  I am going to hold off for now.
25  I will get in touch with you if I want to order.

54

1      COURT REPORTER:  Would the witness like to read
2  or waive?
3      THE WITNESS:  Read.
4      (The deposition concluded at 11:36 a.m.)
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

55

1          CERTIFICATE OF OATH
2
3
4
5
6  STATE OF FLORIDA  )
7
8  COUNTY OF BROWARD )
9
10      I, the undersigned authority, certify that
11  PAUL M. MASON, PhD, remotely appeared before me and was
12  duly sworn.
13
14
15      WITNESS my hand and official seal this 23rd day of
16  April, 2024.
17
18
19
20
21          SUSAN BARNARD
            Notary Public,
22          State of Florida
            My Commission No. HH 408027
23          Expires:  June 16, 2027
24
25

56

1          REPORTER'S DEPOSITION CERTIFICATE
2
3  STATE OF FLORIDA  )
4  COUNTY OF BROWARD )
5
6      I, SUSAN BARNARD, Professional Shorthand Court
7  Reporter, certify that I was authorized to and did
8  stenographically report the remote deposition of
9  PAUL M. MASON, PhD, that a review of the transcript was
10  requested; and that the transcript is a true and
11  complete record of my stenographic notes.
12      I further certify that I am not a relative,
13  employee, attorney, or counsel of any of the parties,
14  nor am I a relative or employee of any of the parties'
15  attorney or counsel connected with the action, nor am I
16  financially interested in the action.
17
18      Dated this 23rd day of April, 2024.
19
20
21
22
23          SUSAN BARNARD
            Notary Public, State of Florida
            My Commission No. HH 408027
24          Expires:  June 16, 2027
25

PAUL MASON, PH.D.

---

**57**

1          E R R A T A S H E E T
2    DO NOT WRITE ON THE TRANSCRIPT - ENTER CHANGES
3    IN RE:        GUASTO VS. THE CITY OF MIAMI BEACH
     CASE NO:      1:22-CV-21004-DPG
4    DATE:         APRIL 19, 2024
     DEPONENT NAME:    PAUL M. MASON, PhD
5
6    PAGE/LINE      CORRECTION       REASON
7
8
9
10
11
12
13
14
15
16
17          (Use other side if necessary)
18    Under penalties of perjury, I declare that I have
     read the foregoing document and that the facts stated
19   are true.
20
21
     PAUL M. MASON, PhD            DATE
22
23
24
25

---

**58**

1    APRIL 23, 2024
2    PAUL M. MASON, PhD
     C/O DANIEL BARROUKH, ESQ.
3    Derek Smith Law Group, PLLC
     520 Brickell Key Drive
4    Suite O-301
     Miami, Florida 33131-2433
5
6    IN RE:   GUASTO VS. THE CITY OF MIAMI BEACH
             Deposition of DR. PAUL M. MASON
7
         This letter is to advise you that the transcript
8    taken in the above-referenced deposition has been
     transcribed.  Please contact our office at (954)523-5326
9    to make arrangements to read and sign or sign below to
     waive review of the transcript,
10
         It is suggested that the review of this transcript
11   be completed within 30 days of your receipt of this
     letter as considered reasonable under Federal Rules*;
12   however, there is no Florida Statute to this regard.
13       The original of this transcript has been forwarded
     to the ordering party and your errata, once received,
14   will be forwarded to all ordering parties for inclusion
     in the transcript.
15
16   Very truly yours,
17
18   Susan Barnard, Professional Court Stenographer
19
20
     Waiver:
21
     I,                , hereby waive the reading and
22   signing of my deposition transcript.
23
24   DEPONENT                  DATE
25   *Federal Civil Procedure Rule 30(e)Florida Civil

---

Coastal Reporting, Inc.
(954) 523-5326

PAUL MASON, PH.D.

| A |
|---|
| **a.m** 1:16,16 54:4 |
| **Abilene** 8:20 |
| **above-referen...** 58:8 |
| **Absolutely** 6:20 6:20 16:4 |
| **access** 53:6,12 |
| **accident** 43:11 43:16 |
| **accompanied** 17:3 |
| **account** 30:7 36:15,18 |
| **accurate** 12:17 12:23 22:16,17 28:15 44:2 |
| **acronym** 30:9 |
| **Act** 25:2,16 |
| **action** 56:15,16 |
| **added** 32:14 |
| **additional** 6:24 10:9,11 16:6 16:17 35:19 39:6 49:8 |
| **additionally** 23:15 |
| **administrative** 7:13 |
| **advantage** 22:14 |
| **adversely** 24:19 |
| **advise** 58:7 |
| **afternoon** 6:13 |
| **age** 36:21 37:9 37:14 |
| **agree** 37:7 42:9 |
| **allegations** 4:20 |
| **allege** 19:3 |
| **allowed** 21:13 40:14 47:8 |
| **amend** 15:22 34:3 |
| **amended** 16:2 17:5 33:23 |
| **amount** 49:10 |

50:22 52:10
**and/or** 14:16
**answer** 9:14 11:2 13:14 15:8 16:8,9,12 20:10 21:11,15 21:16,18 24:15 25:4,18 26:7 26:16,18 27:19 28:2,7 29:15 31:7,19 32:3,4 32:23 33:16 34:10,20 35:2 36:2,8,14 37:16 40:10 41:11 42:16,24 44:15 45:11,25 46:23 47:7 48:1,4,12 52:6
**answering** 32:21 33:3
**anticipate** 48:9
**anyway** 26:10
**APPEARANC...** 2:1
**appeared** 55:11
**APPEARING** 2:6,10
**April** 1:15 16:21 55:16 56:18 57:4 58:1
**arbitration** 7:14
**arguing** 47:23
**argumentative** 47:15
**arrangements** 58:9
**aside** 21:16
**asked** 8:7 13:10 21:17 26:8 28:6 32:25 47:5 49:24 50:2
**asking** 9:11,12 12:18 40:19

41:1
**asks** 9:24 14:18
**asset** 38:21 40:2
**assist** 51:14
**associated** 29:23
**assume** 19:23
**assuming** 37:24 40:2
**assumption** 37:3
**assumptions** 6:25 13:1
**attached** 49:9
**attachment** 12:19
**attempted** 21:18
**attempting** 46:9
**attention** 41:13 41:17 47:18
**attorney** 6:24,24 18:20,21 49:23 56:13,15
**attorney-client** 6:19
**attorneys** 5:16
**August** 19:19 23:17
**Austin** 7:10
**authority** 55:10
**authorized** 56:7
**average** 34:12
**awarded** 16:2
**awards** 16:1
**aware** 15:11 25:5,6 28:22 29:8

| B |
|---|
| **B-5** 9:23 |
| **baby** 20:13 |
| **Bachelor's** 7:5 |
| **back** 8:21 14:13 16:21,22 17:7 38:22 39:11,17 41:18 46:10 50:5 |

**background** 4:11 7:4
**backwards** 17:8
**bad** 43:10
**Barnard** 1:24 55:21 56:6,22 58:18
**Barroukh** 2:2 3:8 5:20 6:13 6:14,20 9:9 11:1 12:6,18 13:5 14:17,24 15:12,21 16:4 16:11 17:21 20:8,18 21:10 22:18 24:12 25:3,7,11,17 26:6,13,23 27:6,9,9,11,18 27:23 28:1,5 29:14 30:13 31:5,16,18 32:2,18,19 33:1,14 34:1,9 34:19 35:1,23 36:1,7,13,23 37:10,15 40:9 40:18 41:10 42:5,15,23 43:5 44:14 45:10,18,24 46:12 47:14,22 48:2,11 49:5 50:25 51:3 52:5 53:2,4,16 53:24 58:2
**Barroukh's** 49:2
**based** 25:9 31:25 34:11 37:22 51:25 52:10
**basic** 46:25 47:3
**basically** 31:1
**basis** 44:11 45:23
**Bates** 38:7 41:5

41:7 42:20 43:23
**Beach** 1:8 4:16 27:17 28:20 29:11,12 57:3 58:6
**began** 8:17
**BEHALF** 2:6,10
**believe** 8:16 11:18 15:12 17:5,21,22 20:25 22:7 23:24 29:17 49:3 51:9 53:11
**benefit** 31:2,2
**benefits** 44:16 44:21 51:10
**best** 28:15
**bigger** 52:22
**bill** 46:18 49:5
**billed** 46:12
**billing** 48:9
**birth** 20:12
**bit** 34:8
**blank** 46:13
**bolster** 30:20
**bottom** 38:8 41:19
**break** 9:19
**Brickell** 2:3 58:3
**brief** 6:12
**bring** 47:18
**broad-based** 13:10
**BROWARD** 55:8 56:4
**bumps** 30:25 31:1

| C |
|---|
| **C/O** 58:2 |
| **calculate** 52:21 |
| **calculating** 45:3 45:7,19,23 |

calculation 31:25 37:22 52:21
calculations 30:24 31:10 32:7 45:7,14 45:16 51:25
call 6:12,15,21 6:23 39:12 44:1
called 28:20
calls 9:9 20:8 24:13
capacity 37:18 37:20
care 15:24
career 22:6
carefully 47:1
case 1:3 3:15 5:8 8:3,6 11:16,20 12:3,5 13:3,25 14:13 15:25 17:9,10,13,15 17:17,17,18 18:4,10,11,17 18:23 19:12,13 19:15,19,21,24 20:6,10,14 21:2,7,25 22:7 22:20,21,24 23:7,16,17,17 23:18,19,24,25 24:4,5,16 25:16 26:1 27:13 33:8,19 33:20 36:24 37:1,2 38:7 46:7 49:6,6,7 49:20 51:15 57:3
cases 8:6,14,19 10:2,8,16,19 14:14 16:16,24 18:8 19:3,18 20:16,23 21:19

21:24 22:2,4 22:14,24 23:7 23:11,14,20,23 24:19,21 30:11 31:20 32:17
category 52:13
certain 30:24 32:17
certainly 6:17 7:23 22:19 23:11
CERTIFICATE 55:1 56:1
certify 55:10 56:7,12
cetera 25:10
change 24:2
CHANGES 57:2
character 43:7
charging 48:14
chat 53:19
check 13:16,21
child 20:11
circuit 19:25
city 3:8 4:16 27:16 31:14 57:3 58:6
civil 9:7,22 25:2 25:16 48:3,4 58:25,25
claims 22:25 27:16
clarified 51:2
clear 5:6 14:21 15:17 43:9
client 32:23
close 46:2 50:23
cockamamie 47:24
column 34:13
come 16:1 38:22 47:3
coming 46:17
Commission 55:22 56:23

communication 33:5
company 18:19
compensation 13:22 14:4,10 47:6
Complaint 4:24 4:25 27:21 28:3,6,6,7
complete 40:6 56:11
completed 58:11
completely 40:16
complied 11:3
comply 10:23 11:16
computer 21:16 21:18,21
concerned 7:25
concerns 9:23
concluded 54:4
conclusion 9:10 9:13 24:13
conduct 47:17
CONFEREN... 1:17
confident 22:4
confirming 45:13
conform 44:24
confused 15:1
confusing 23:25
confusion 51:1
connected 56:15
consciously 43:19
consider 22:13 36:5,10
considerably 8:22
considered 33:7 44:12,18 45:2 58:11
constitutes 49:5

contact 58:8
continuation 38:17
continue 16:13 30:6 33:15 48:2,3
contribute 51:1
conversation 16:14 26:14
conversations 26:22
copy 39:14 53:23
corner 41:3
correct 5:9,10 8:5 10:17,18 10:21,22 11:10 11:14,17 13:23 17:12 19:7 22:22 23:2,9 23:12,13,23,24 24:7,24 26:25 27:17,22 28:16 31:9,10,15 32:1,7 35:5,6,9 35:12,18,20 36:22 37:14,25 38:18 40:4 41:22 42:3,4 42:10,22 43:4 43:11,19 44:6 44:13,19 45:4 49:17,21,22 50:10,16,17,18 51:21 52:4,23 52:24
CORRECTION 57:6
correctly 17:24 24:23 27:8
corresponding 43:25
counsel 2:6,10 12:14 13:6 15:22,25 26:17

56:13,15
County 20:1 28:11 41:21 55:8 56:4
couple 27:2 46:6
court 1:1,24 5:4 5:7 6:1 7:12,18 11:7,19,24 14:8 18:24,25 19:6,16,25 26:9 53:21,23 54:1 56:6 58:18
cover 39:7 42:7
covered 6:18 14:11
created 30:20 32:13 33:17 35:5
creating 8:5 36:11
CROSS 3:7
CROSS-EXA... 53:3
crystal 43:9
cut 8:21

D

D 3:1
damages 36:11 36:18
Daniel 2:2 13:9 15:1,24 27:6 27:11 53:23 58:2
Danielb@dere... 2:5
Daragjati 12:4 12:15 13:6,7 13:19
data 13:11 32:10 32:12 33:9,10 33:12
date 1:15 17:7 57:4,21 58:24

PAUL MASON, PH.D.

dated 43:23
  56:18
**Davis** 19:19
  23:18
day 55:15 56:18
days 58:11
dean 8:20,24
decided 33:23
declare 57:18
defendant 1:9
  2:10 18:15
  19:5
**DEFENDANT...**
  3:13
define 16:20
degree 7:5,8
**Delaware** 7:6,8
  7:9
deliver 20:12
**Department**
  28:11 29:11,12
**DEPONENT**
  57:4 58:24
depos 6:4
deposed 5:11,24
  17:10 19:4
  20:3,5 46:24
deposition 1:14
  5:7,22 6:10 7:1
  10:4,13,17
  12:16 13:17
  16:6,13 17:1
  17:16,23 21:14
  22:16 24:20
  40:16 46:17
  47:2,9 48:10
  48:14 54:4
  56:1,8 58:6,8
  58:22
depositions 5:4
  5:19 14:15
  16:19 47:1
**Derek** 2:3 58:3
**Description** 3:14
details 21:5 22:6

25:5
**determine** 32:16
  41:14
**determined**
  33:18,22
**developing** 33:7
**different** 15:11
  28:18 31:9,10
  31:13,25 45:20
**difficult** 8:23
**DIRECT** 3:5 4:5
**disclose** 10:20
  14:15
**disclosed** 15:19
  16:3 17:4
  23:21
**disclosure** 11:13
  13:10 15:2,5
  15:18,20,21
  17:3
**disclosures** 9:7
  9:23,25 14:3
**discount** 34:14
**discriminated**
  25:9
**discrimination**
  22:25 23:12,23
  24:6
**discuss** 6:15,18
**discusses** 12:15
**discussing** 13:1
**discussions**
  32:20
**dismissal** 28:11
  36:16 51:17,20
  52:9,11,15
**dismissed** 4:23
  27:20 51:24
  52:1,2
**Distribution**
  39:2
**District** 1:1,1
  11:24,24
**DIVISION** 1:2
**doctor** 20:12

**document** 8:4
  11:22 13:10
  27:13 29:4,20
  32:13 33:16,21
  33:24 34:16,25
  35:4 38:4,12
  38:20,23,24
  39:7,11,13,16
  39:20,21,22,23
  40:19 41:7,14
  41:19,19 42:9
  42:12,20,21
  45:1 51:7
  52:12,17 53:5
  57:18
**documents** 3:17
  5:3 12:25 13:4
  13:12 14:3,9
  21:14,21 28:21
  29:1,2,6 34:25
  38:6 39:12
  40:15,20 41:1
  41:5,8,9,12
  42:14 44:9
  46:20,21 47:9
  49:8 51:12,14
  51:16
**doing** 7:22 8:19
  16:11
**Dr** 6:15 40:18
  58:6
**Drive** 2:3 58:3
**DROP** 29:19,22
  30:3,9,12,17
  30:19,23 31:3
  31:9,13,15,21
  31:23 32:6,7
  36:22 37:23,24
  52:21,23
**DROP's** 45:8
**due** 49:11
**duly** 4:3 55:12
**duties** 8:24

—————
**E**
—————

**E** 3:1 57:1,1,1
**e-mail** 2:5,10
  3:18 12:19
  49:2
**earlier** 30:22,25
  42:8 49:17,19
**early** 31:3
**earned** 35:14
  36:16 37:4
  52:2
**earning** 37:19
**earnings** 32:15
  34:11,12,13,22
  35:8,13,16,19
  44:13 45:7
  52:7,9,22,23
**Economics** 7:6,9
  7:10
**educational** 7:4
**eight** 30:4
**either** 6:25 7:12
  7:17 13:25
  19:24 24:20
  41:17
**eligibility** 38:14
  38:18 41:19
  42:20 45:2,3
**eligible** 30:3
**Elkins** 2:7 3:6
  4:6,15 6:17
  9:11,18,21
  11:2 13:9
  14:19 15:1,15
  15:24 16:8,13
  16:15 17:25
  21:11 24:15
  25:4,12,18
  26:7 27:7,10
  27:19 28:3,9
  29:15 31:7,17
  31:19 32:3,24
  33:3,15 34:2
  34:10,20 35:2
  36:2,8,14
  37:11,16 40:10

40:19 41:11
  42:6,16,24
  43:7 44:15
  45:11,25 46:2
  46:5 47:16,23
  48:4,12 51:2
  52:6,25 53:5,8
  53:14,22
**employability**
  24:3
**employed** 36:21
  37:8
**employee** 30:24
  56:13,14
**employees** 30:21
  30:22
**employer** 29:16
**employment**
  22:25 23:12,22
  24:6,19 30:4
  38:25 43:23
**Ends** 38:25
**engagement**
  12:15 13:1
**engaging** 47:17
**enter** 30:2 57:2
**entering** 30:23
**enters** 37:24
**entitled** 15:9
  33:11 38:24
**entity** 21:3,8,20
**equivalent** 39:24
**errata** 58:13
**espresso** 4:12
**ESQ** 2:2,7 58:2
**essentially** 30:24
**estimate** 40:24
**estimated** 39:25
**estimates** 3:19
  51:9,18
**et** 25:10
**ethnicity** 25:9
**Everybody**
  45:20
**EXAMINATI...**

3:5,7 4:5
**examined** 4:3
**example** 31:13
  31:23
**excluding** 22:21
**excuse** 10:1
  13:17
**exempt** 6:19
  13:12
**exhibit** 3:14 8:1
  8:2 25:22,23
  26:1,2 29:7
  38:2,3 46:12
  48:25 49:1
  50:14 51:5,6
  52:13,18 53:6
**exhibits** 3:12
  53:19
**expedite** 53:20
**expert** 5:16 7:12
  7:17 8:7,12,15
  8:17,22 9:23
  10:3,16,24
  11:7,13 16:8
  16:25 18:6,18
  19:4 21:2
  22:24 25:15
  26:5,20 44:12
  47:3
**Expires** 55:23
  56:24
**explicitly** 14:18
**extent** 34:11
**extra** 18:8

**F**

**fact** 33:6
**facts** 6:25 13:1
  13:11 33:19
  57:18
**fair** 12:24 28:4,9
  31:3 32:5,5
  36:19 39:19
**Fall** 8:18
**familiar** 4:18,20

9:6,12 11:13
  26:11,19,25
  35:25
**far** 46:19
**faster** 17:22
**favor** 22:7
**February** 17:6,7
  17:10,11
**federal** 9:6,22
  11:7,19,25
  14:8,23 18:24
  18:25 19:1,15
  19:16 26:9
  40:12 58:11,25
**fee** 12:3
**file** 6:11 9:25
  26:4
**filed** 5:1
**filings** 5:4,8
**fill** 46:15
**financially** 31:2
  56:16
**find** 19:10 21:18
  42:25 46:21
**fine** 31:19 34:2
  35:7 43:11
  47:16 50:24
**finished** 7:7 46:3
**first** 4:3 6:21 7:6
  14:13 16:20
  38:13 42:13,19
  53:18
**fits** 41:8
**five** 8:8,12 9:15
  46:2 51:7
**Florida** 1:1,8,8
  1:25 2:4,9 8:17
  11:24 19:25
  25:1,8,16
  29:18,22,23,25
  30:2,19 31:12
  31:12,21,22,24
  31:25 32:6
  37:23 38:13,17
  38:23,25 39:1

41:4 42:2,7
  44:5,8,21 45:6
  45:15,22 52:20
  55:6,22 56:3
  56:23 58:4,12
**focus** 32:21
**follow** 6:5 15:7
**followed** 15:7
**following** 33:6
**follows** 4:4
**followup** 15:3
**forceps** 20:12
**foregoing** 57:18
**forget** 22:8,14
**forgot** 30:10
**form** 21:10
  44:11 53:14
**forming** 28:4
  51:15
**formula** 45:19
  45:20
**formulating** 5:8
  7:1 27:22 36:6
**Fort** 2:9
**forward** 36:20
  45:4,8 48:10
  52:3
**forwarded**
  58:13,14
**four** 8:8 10:2,6
  14:20,23,24
  15:9 16:24
  22:19,23 23:1
  23:5,7,11,22
  24:8,9 49:7
**fourth** 16:5
**free** 26:18 39:16
**Friday** 12:2
**fringe** 44:16,21
**front** 16:22 23:6
  35:25 36:6
**FRS** 3:17 38:13
  39:12 41:18
  42:20 45:2
**full** 18:17 40:6

**further** 8:23
  53:1 56:12
**future** 34:15
  36:17 44:13,16
  44:21 51:23
  52:22

**G**

**game** 28:4
**gender** 25:9
**getting** 45:8
**give** 6:24 9:1
  13:16 17:17,18
  19:10 22:15
  30:24 35:21
**given** 28:5 33:19
  47:24
**go** 4:13 5:18,23
  14:13 16:21
  27:2
**goes** 16:22
**going** 5:22 6:14
  7:25 12:9
  14:17 21:10
  24:12,22 26:13
  32:20,22 36:19
  38:2,10 39:12
  39:15 40:18
  41:18 43:21
  44:1 45:4,8
  46:10,23 47:5
  47:14,22 48:10
  48:24 52:2
  53:18,20,24
**good** 4:7,8 48:21
**gotten** 50:4 52:3
**government**
  21:20
**governmental**
  21:3,7
**granted** 15:6
**great** 6:1
**gross** 32:16
**grounds** 13:5
**Group** 2:3 58:3

**growth** 32:15,17
  34:12,15,22
**guarantee** 37:8
**Guasto** 1:5 4:17
  27:13 36:20
  57:3 58:6
**guess** 5:15
**guys** 15:4,25

**H**

**H** 57:1
**H-E-N-R-I-C-...**
  18:22
**half** 7:8 48:20
**hand** 55:15
**handbook** 43:21
  44:1
**happened** 20:4
  45:14
**harmed** 20:12
**head** 21:12 36:3
**hear** 4:9,14
  25:11
**heard** 24:22
  36:3
**held** 30:6
**help** 32:16
**helped** 44:11
**HH** 55:22 56:23
**highlighted**
  29:19
**hired** 18:18
**history** 19:8
**hold** 6:17 12:8
  17:25 32:25
  40:13 51:18
  53:24
**holding** 12:10
**hour** 46:8 48:20
  46:6 49:10
**hourly** 34:12
**hours** 48:16 49:7
**Human** 41:21
**hypothetical**
  31:18

**Hypothetically** 31:17

**I**

**idea** 29:2
**identification** 8:2 25:23 38:3 49:1 51:6
**identified** 34:11
**identify** 51:16
**impacted** 24:3
**important** 5:25
**impugn** 7:23
**impugning** 43:7
**inability** 36:22
**inappropriate** 40:16
**include** 49:17 50:17
**included** 52:9
**includes** 49:25
**including** 48:10 49:8
**inclusion** 58:14
**income** 30:5 39:24 40:12 51:17,19,22
**incomplete** 31:18 45:1
**increase** 30:5
**independently** 26:22 33:23
**INDEX** 3:12
**indicated** 14:7 28:18 32:17
**inflation** 32:15
**information** 11:5 15:18 18:16 19:1,2 19:11 22:15 40:3 42:17 44:4,10 47:3 53:7
**initial** 13:18 14:3 15:5,17

15:21 26:12,20
**Initially** 27:5
**injury** 23:8,8,9
**instruct** 26:14 28:1 32:20,23
**instructed** 16:12 29:1,5
**instructing** 16:9
**instructs** 40:20
**intended** 12:9
**intentionally** 43:3,9
**interest** 30:7 32:14
**interested** 56:16
**interpret** 9:11
**interrogatories** 15:3
**interrogatory** 14:18,20,25 15:13,16
**interrupt** 6:14
**investment** 38:24 39:1 43:22
**involve** 21:20 23:11 30:12
**involved** 13:7 21:8 24:16,16 25:15 36:17
**involving** 21:2 21:24 22:2,5 22:20,25 25:16 31:21 36:11
**irrespective** 9:24
**issue** 24:1 51:2
**issues** 36:5
**items** 10:11
**IX** 18:11,24 23:17 24:5

**J**

**Jacksonville** 8:16
**January** 12:2

17:6
**Jessica** 1:5 4:17 4:17 27:13
**Johnson** 8:21
**Judge** 16:1
**judge's** 26:11,20 47:18
**July** 39:2 43:23
**June** 18:10 55:23 56:24

**K**

**keep** 19:5,6
**Key** 2:3 58:3
**kind** 23:25
**knew** 46:17
**know** 4:22,23 5:15 13:7 15:9 15:13 19:17,23 20:1,21 24:18 24:23 25:1,5 25:19 26:4 27:16,20 30:9 30:10 31:20 32:4 40:14 47:5,10,11 50:8
**knowledge** 28:15
**known** 4:17 41:2
**knows** 24:15

**L**

**larger** 39:7
**lasts** 48:16
**late** 17:5
**Lauderdale** 2:9
**law** 2:3,8 7:12 7:18 9:24 24:1 24:2 58:3
**lawsuit** 4:16,18 4:21,24 5:2 11:7
**lawyer** 13:11
**leave** 26:24
**left** 53:17

**left-hand** 41:3
**legal** 9:9,13 24:13
**let's** 9:18 12:8 14:13 16:20 17:7 23:3 25:20 31:14 39:11 46:2 48:2,3 50:5
**letter** 11:23 12:1 12:2,5,11,13 12:16,22 13:15 13:18,19,21,24 49:4,5 58:7,11
**letting** 15:13
**liability** 39:24 40:24
**life** 35:14
**limited** 52:13
**list** 3:15 8:3,6 9:3 10:1,5,12 10:16 14:13,15 16:17,22,23 17:22,23 18:1 20:18,19,21,23 23:6,16 26:1
**listed** 8:8 10:8 23:15
**Listen** 47:1
**lists** 8:6
**little** 4:11 7:25 34:8
**lived** 8:16
**location** 19:9
**logically** 50:16
**long** 6:21 39:15 39:19
**look** 19:9 21:14 29:5 39:14,15 40:20 46:20,21 47:8
**looked** 6:11 39:23 40:22
**looking** 21:21 29:1,4,6 39:19

39:21 40:15 48:1
**looks** 23:7 32:14 38:16,20 39:6 39:8 41:16,20 42:9 43:21,24
**loss** 37:18
**lost** 37:19
**lot** 4:22 5:17 24:10
**lower** 41:2

**M**

**M** 1:14 3:4 4:2 55:11 56:9 57:4,21 58:2,6
**making** 4:12
**malpractice** 17:10,16 18:2 23:9,19
**manner** 48:3
**March** 20:17
**mark** 8:1 25:21 38:2 48:24
**marked** 8:2 25:23 29:6 38:3 46:11 49:1 51:6
**marking** 51:4
**Mason** 1:14 3:4 4:2,7 6:15 40:18 55:11 56:9 57:4,21 58:2,6
**Master's** 7:8
**materials** 33:7
**Math** 7:5
**matter** 14:19
**mean** 33:4,22 34:7 35:21 37:2 51:18
**med/mal** 20:14 23:15
**medical** 17:9,16 18:1 23:9,19

Melkins@mlel... 2:10
Members 38:24
Miami 1:2,8 2:4
4:16 27:17
28:20 29:11,12
57:3 58:4,6
Miami-Dade
28:11 29:17
41:21
Michael 2:7 4:15
17:21 32:22
47:14
middle 39:12
41:4 42:1
Mike 14:17
mini 53:20
minute 9:1
25:20 32:24,24
33:24 46:10
minutes 6:22
mischaracteri... 43:6
missed 11:18,25
missing 10:9,19
14:14 16:16
18:9 20:16,20
20:24
misunderstood 50:20
mitigation 36:11
36:18
mixed 42:1
MLE 2:8
morning 4:7,8
6:12
motion 4:11
15:6
motivate 30:21
MR' 31:17
municipalities
22:5,12
municipality 1:8
21:2,8,20
22:20 28:18,19

28:22 29:8,10
29:13,16 31:23
MyFRS.com
42:13 44:4

**N**

N 3:1
name 4:15 17:19
18:11,12,15,17
27:7 57:4
names 30:15
nature 33:19
nearly 51:23
necessary 57:17
need 6:4 21:15
53:21,23
needs 15:8
negotiations
43:22
never 4:25 11:22
12:7 27:24
46:18
nine 32:9 33:9
Nineties 8:18
nitty-gritty 5:23
noise 4:12
normally 5:23
Northeast 2:8
Notary 1:25
55:21 56:23
note 14:7 21:17
28:17
notes 56:11
Notice 39:2
noting 11:18
number 17:17
17:18 19:12,13
19:15,21 32:9
33:9 41:5
42:20 43:23
52:22
numbers 34:21
37:18,22

**O**

O-301 2:4 58:4

OATH 55:1
object 14:17
15:8 21:10
32:22 47:14
Objection 5:20
9:9 11:1 13:5
20:8 22:18
24:12 25:3,7
25:17 26:6,13
27:18,23 28:1
29:14 30:13
31:5,16 32:2
32:19 34:1,9
34:19 35:1,23
36:1,7,13,23
37:10,15 40:9
41:10 42:5,15
42:23 43:5
44:14 45:10,18
45:24 48:11
52:5
obtain 53:7
Obviously 5:21
office 2:5,9 4:12
49:3 58:8
official 55:15
oh 33:24
okay 4:9 5:11
6:9 7:3,3,16,21
8:11 10:8,11
10:19 11:20
12:8,13,21,25
14:9,13 16:20
17:9 19:18,21
20:10,16 21:1
21:24 22:2,10
22:23 23:14,20
24:5 25:1,6,20
25:20 26:15
27:2,4 28:9,14
28:22 29:18,25
30:11,15 31:22
32:5,9 33:15
35:7 36:5,10
36:19 38:1,16

38:20 39:11,17
39:20,22 40:1
40:22 41:16
43:3,13,21
44:8,18,24,25
45:22 46:10
48:9,17,23
49:16,19,24
50:6,13,16,19
50:21 51:12,14
52:17,20,25
53:17
old 35:12
omit 42:25
omitted 42:22
43:8
once 15:6 22:7
58:13
one-year 10:20
ones 20:21
online 40:1
opinion 5:8 7:1
27:22 28:4
44:12,19 51:15
opinions 33:7
optional 30:3
Options 39:2
order 26:11,20
38:12 41:13,17
53:20,25
ordering 53:19
58:13,14
ordinarily 9:15
original 11:23
12:1,4 15:20
58:13
originally 12:9
outside 31:21,24
overlaps 38:11
override 14:20
oversight 43:13
Overview 40:11
owed 50:23

**P**

page 3:14 38:16
39:6,7,8,8
40:11,22 41:3
41:20,24 42:7
42:12,13,18,19
42:22 43:1,4
43:10,25,25
49:4 53:8,8,8
PAGE/LINE
57:6
pages 40:23,23
42:9,22 51:7
paid 41:16 46:19
46:22 47:12,19
49:14,20,22
50:2,7
papers 5:1
paralegal 49:3
part 5:18 8:22
15:19 23:21
28:4 35:13
38:6 44:12,18
52:7
particular 31:14
parties 56:13
58:14
parties' 56:14
party 58:13
Paul 1:14 3:4 4:2
12:14 55:11
56:9 57:4,21
58:2,6
pay 35:25 36:6
41:12
pays 30:7
penalties 57:18
pending 11:21
pension 21:25
22:3,12,21
31:1 35:14
37:21 45:7,9
45:15,19,23
52:4,10
people 6:2 25:8
Perfect 4:15 7:3

32:9 38:1
52:25
**performed**
17:23
**period** 10:12,15
**perjury** 57:18
**person** 18:19
**personal** 23:8,8
23:9
**PhD** 1:14 3:4 4:2
7:10 55:11
56:9 57:4,21
58:2
**phone** 6:15,21
6:23
**physically** 50:10
50:13
**place** 1:17 35:16
**plaintiff** 1:6 2:6
18:13
**plaintiff's** 12:14
17:19 18:11
43:24
**plan** 22:21 30:3
38:24 39:1
43:22 51:22
**plans** 21:25 22:3
22:12
**please** 7:4 9:1
16:16 18:13
23:4 32:21
33:2 45:12
58:8
**PLLC** 2:3 58:3
**plugged** 40:1,2
**plus** 35:20
**point** 22:13
47:12,19 49:20
50:8
**pointless** 16:14
**Police** 28:11
29:11,12
**portion** 38:12
49:11
**possible** 32:21

**post** 51:17,19
52:8,15
**potential** 34:13
44:13
**predicated**
34:15
**predismissal**
52:7,8
**prepare** 6:9 47:2
**prepared** 47:8
**presently** 8:20
**presume** 11:10
11:12 26:25
28:14
**presumes** 36:20
37:13
**pretermination**
34:13 37:1,2,4
**pretty** 22:4,11
46:25
**previous** 9:3
10:2 16:24
36:24 49:9,23
53:5
**previously** 19:3
29:5
**prior** 8:13 10:20
12:14 13:6
15:21,25 21:25
24:9
**privilege** 6:19
13:6,13 32:22
33:10
**privileged** 33:4
33:13
**probably** 5:12
5:16,17
**problem** 7:24
15:16,17 16:5
**Procedure** 9:7
9:22 58:25
**proceeding** 7:13
7:13
**produce** 13:18
14:2 21:22

34:24 37:18
42:13 43:10
**produced** 12:5
12:17,22 13:2
13:24 14:11
15:2,4 26:9
35:4 38:6,13
41:4,9 42:21
43:14,16,19,25
53:9
**producing** 27:15
**production** 40:7
42:1
**Professional**
1:24 56:6
58:18
**program** 29:19
29:22 30:18,19
30:23 31:4,13
31:15,23 32:6
32:7 37:23
**programs** 30:12
31:9
**project** 36:17
**projected** 52:8,8
**pronouncing**
27:7
**properly** 16:3
**provide** 9:3 11:4
14:24 16:5,16
16:18,23
**provided** 9:17
10:5 12:4 13:2
13:8,11 15:14
27:24 29:6
51:13
**providing** 19:2
27:12
**public** 1:25
21:24 22:2,12
22:21 53:7,10
53:12 55:21
56:23
**purported** 20:11
**purpose** 42:22

42:25
**purposely** 43:3,8
**put** 21:15 33:5
53:18

**Q**
**qualified** 7:11
7:17 8:7,12,15
18:6 19:4
**question** 12:21
15:9 21:17
23:4 26:16,19
28:8 32:21,23
33:1 35:3
45:12 46:23
47:7,18 48:5
50:20 53:2
**questioning** 48:3
**questions** 16:9
21:15,16 38:21
53:1
**quickly** 4:13

**R**
**R** 57:1,1
**R-U-L-L-O**
18:14
**race** 25:9
**rate** 34:14 41:14
46:6 49:10
**rates** 32:15,15
32:15,17 34:12
34:15,22
**re-ask** 26:19
**read** 4:24 5:1,6,7
27:21 28:6
43:10 54:1,3
57:18 58:9
**reading** 58:21
**really** 19:16 32:4
33:20,24 34:6
**realm** 24:4
**reason** 37:13,17
40:22 43:8
50:22 57:6
**reasonable**

37:19 58:11
**recall** 11:4 12:18
12:19 20:2
21:4,12,19,23
36:4
**receipt** 58:11
**receive** 30:7
50:11 51:22
**received** 9:16
11:22 12:2
50:10,13 58:13
**recognize** 26:8
**record** 9:20
18:17 21:17
28:25 46:4
47:17 56:11
**referenced** 33:8
**referencing**
50:14
**referring** 12:1
29:22 35:5
**refers** 44:16
**reflect** 28:25
34:3
**regard** 58:12
**regarding** 9:7
**reiterate** 27:14
**relate** 42:8
**related** 5:3 36:5
37:18 42:2
**relating** 13:12
14:3,9 33:10
44:5
**relative** 5:15,16
56:12,14
**relied** 33:6
**remained** 36:21
37:8
**remember** 8:5
14:15 16:18
21:6 22:2,5
23:18 30:15
50:8 53:10
**remind** 5:24
**remote** 1:17 56:8

remotely 4:3
55:11
repeat 33:1
report 3:16 10:1
13:18 14:22
15:3 16:2 17:4
17:5 18:16
19:1 25:21,21
26:1,2,5,12,21
26:25 27:5,12
27:15 28:15,17
29:7,18 33:5
33:19,23 34:3
34:18,21 35:7
36:6,11,19
37:13 46:11,11
46:13,15 49:10
50:12 52:1
56:8
REPORTED
1:24
reporter 6:1
53:21,23 54:1
56:7
REPORTER'S
56:1
reports 35:8
50:25
represent 4:16
18:19,20
represents 33:6
request 9:15,16
27:6,11
requested 9:5
11:3,4 14:1,25
15:14 56:10
required 9:25
14:2,21 15:2
16:18 26:4
42:18
requirement 9:6
11:13
requires 10:1
14:23
research 19:8

Resources 41:21
response 15:16
responses 15:23
responsibility
37:17
rest 20:21
result 24:2 28:10
49:9 52:15
retained 11:6
30:12
retainer 12:3,4
50:11
retire 30:8,22
retirement
29:23 30:1,2,6
30:20 31:12,24
32:1,6 37:21
37:23 38:14,14
38:18,18,23,25
39:1 41:4,18
42:3,8,20 44:5
44:8,17,22
45:2,3,6,15,22
51:10,17,19,21
51:22 52:15,20
retiring 30:25
31:3
reveal 33:4
review 49:8 56:9
58:9,10
revise 49:8
right 4:7 5:21
9:22 11:8
12:11,22 16:10
16:14 21:1
25:1 26:24
35:17,22 37:7
37:21 38:1
41:17,21 43:14
45:16,20 51:3
51:4 52:1,14
53:16
Rights 25:2,16
Rodriguez 49:3
rule 5:25 6:5,18

9:7,12,22
10:23 11:4
13:13 14:2,19
14:20,21,23
15:1,5,6,7,9,10
15:10,18 16:23
17:1 19:9
46:25 58:25
rules 5:22,23
58:11
Rullo 18:11
23:24
run 17:7 22:8
running 35:19
runs 41:5

S

S 57:1
Salabarria 4:17
5:3 27:13
28:23 29:8
35:11 36:20
39:25 49:6
Salabarria's
27:16 40:24
44:13 45:3,23
51:17
salary 34:13
saw 4:25
saying 7:24 41:9
says 14:19 15:10
16:23 17:1,3
17:22 23:8
32:10 33:6,9
38:21 40:11
41:20 46:12
49:5
scanned 12:6
41:12,13
school 8:21 24:1
schools 24:2
screen 25:24
46:10
scroll 38:10
seal 55:15

second 9:18 12:8
17:25 38:1
46:9 49:4
sector 21:25
22:3,12,21
see 5:18 8:3 18:1
18:1 23:3
25:24 28:12
29:19,20 32:9
38:4,7,17 39:4
39:9 41:5,24
46:13 48:22
49:12 51:7,10
52:12,17
seeing 10:23
seeked 15:22
seen 30:10
send 12:6,18
sending 12:19
sense 36:15
sent 12:7 46:18
serious 16:10
services 46:20
47:13,20
set 40:23 42:13
share 46:10
short 12:9
Shorthand 56:6
show 7:25 38:10
showed 52:12
53:5,8
showing 38:2
48:24 51:4
side 57:17
sign 58:9,9
significant 31:1
31:2
signing 58:22
sir 8:4 9:14,22
16:16 21:9,11
21:13,13 28:23
28:23,24 29:4
33:15 46:20
47:7
site 40:2,8 41:2

41:21 44:5
53:10,13
sites 53:7
sitting 12:16,21
21:6,19 22:10
22:15 29:7
40:14
smaller 52:9
Smartasset.com
40:8 41:2 42:2
Smith 2:3 58:3
somebody 46:24
sorry 17:14 23:1
25:12 36:25
45:12 46:9
50:20 51:19
sort 43:22
sounds 12:10
sources 32:10,12
33:9,11,13
Southern 1:1
11:24
Special 39:2
specific 19:6
specifically
15:14 21:7
speculation 20:9
24:13
spelling 18:12
spend 27:3
spent 49:6,7
spreadsheet
27:12 49:9
stamped 38:7
stands 30:9
47:19
stapled 39:17
state 1:25 25:8
30:21 31:14,15
31:21,22 55:6
55:22 56:3,23
stated 57:18
statement 31:3
47:24
statements

PAUL MASON, PH.D.

28:14 51:10
**STATES** 1:1
**stating** 11:23
**Statute** 58:12
**stay** 40:19
**Stenographer**
  1:24 58:18
**stenographic**
  56:11
**stenographica...**
  56:8
**stop** 26:24 35:15
  35:16 40:15
**Strike** 15:6
**striking** 26:11
  26:20
**student** 24:1
**stuff** 15:3
**style** 17:13,15
**submit** 43:2,4
**submitted** 33:18
  33:22 46:16
**subsequent**
  13:16 28:17
**suggested** 58:10
**suggesting** 15:15
**Suite** 2:4 58:4
**supposed** 15:19
  47:1,2,25
**sure** 6:3,5 7:16
  16:7 19:2 21:4
  22:11 24:22
  27:14 48:7
**Susan** 1:24
  55:21 56:6,22
  58:18
**sworn** 4:3 55:12
**system** 29:23
  30:1,2 31:12
  31:24 32:1,6
  37:23 38:14,18
  38:24,25 39:1
  41:5 42:3,8
  44:6,8,22 45:7
  45:15,22 52:20

---

**T**

**T** 57:1,1
**take** 6:2 9:18
  35:21 36:18
  46:2
**taken** 58:8
**talk** 6:5 25:20
  26:14 29:18
  32:20
**talked** 23:20
  24:6 26:17
  33:12
**talking** 6:2
  26:16
**talks** 38:13
**tax** 39:2,24
  40:12,24 41:14
**taxes** 38:22
**tell** 6:14 7:3
  14:14 19:16
  33:11 47:10
**telling** 12:13
  19:5 22:11
  33:16 44:10
**Tennessee's**
  31:15
**term** 36:3
**terminated** 37:5
  37:12
**termination**
  36:24
**Terrace** 2:8
**testified** 4:4 10:3
  10:13,16 16:25
  18:4 24:20
  47:4 49:19
**testify** 17:25
  20:3
**testimony** 8:11
  14:16 43:6
**Texas** 7:10
**Thank** 6:16 21:1
  27:10 40:21
  53:16
**thing** 13:15 43:8

---

50:24
**things** 13:12
  22:6 27:2
  32:16 46:6
  53:18
**think** 11:20
  16:12 17:6,6
  23:16 28:7
  34:17 37:22
  43:9 45:14
  49:19 51:2
  52:14
**third** 40:17
**thousand** 5:19
  7:15 46:24
**thousands** 10:24
**three** 8:8,10,11
  9:4,16 10:5,7
  14:18,22,25
  23:14 42:9
  48:18
**three-page**
  42:21 45:1
**three-year** 10:12
  10:15
**time** 1:16 6:3
  8:25 9:25
  14:21 15:2
  27:3 30:21
  40:17 49:6,8
  52:10 53:6
**times** 5:13 6:4
  7:11,15,17
  8:12 10:24
  46:24 47:4
**Title** 18:11,24
  23:17 24:5,11
  24:14,16,18,23
**today** 12:16,22
  21:6,19 22:10
  22:16 29:7
  40:14 48:15
**today's** 48:10
**told** 6:3 10:24
  34:17 46:25

---

47:5 49:16
**tool** 40:2
**top** 21:12 36:3
  38:17
**total** 49:10
**touch** 53:25
**track** 19:5,6
**transcribed** 58:8
**transcript** 56:9
  56:10 57:2
  58:7,9,10,13
  58:14,22
**transcripts** 5:7
**transpired** 4:22
**trial** 10:3,17
  14:16 16:25
  17:22 24:20
**trials** 16:6,18
**tribunal** 7:14,18
  17:18 18:23
  19:23
**tried** 12:6
**true** 56:10 57:19
**truly** 58:16
**try** 21:14
**trying** 7:23
  44:24
**two** 6:2 7:7 8:8
  14:22 34:21
  40:23 43:16
  48:16 50:25
**two-minute** 9:19
**type** 23:8

---

**U**

**U.S** 11:24
**unclear** 41:7
**undersigned**
  55:10
**understand** 5:21
  6:7 11:6 19:15
  27:15 33:14
  44:9,9 48:2
**understanding**
  17:24 29:25

---

30:17 31:8
**Understood**
  27:21
**unethical** 47:17
**UNITED** 1:1
**university** 7:6,9
  7:10 8:21
**unnecessary**
  43:12
**unpack** 12:10
**updated** 3:16
  25:21 26:2,5
  46:11
**use** 6:25 8:24
  33:20,24 34:6
  34:7,17 36:17
  45:6 51:16
  57:17
**useful** 43:1

---

**V**

**V-A-H-L-E**
  17:20 18:3
**Vahle** 17:20
**various** 32:10,12
  33:9,10,12
  34:24
**vested** 51:21
  52:10,16
**VII** 24:11,14,17
  24:18,23
**Villanova** 7:7
**violated** 15:5
**vs** 1:7 57:3 58:6

---

**W**

**W2's** 28:18
**wait** 32:24,24
  33:24 53:17
**waive** 54:2 58:9
  58:21
**Waiver** 58:20
**wan** 19:8
**want** 7:16 16:8
  17:17 21:16,22
  27:2,3,14

---

PAUL MASON, PH.D.

28:25 33:4
43:10 47:17
53:25
**wanted** 28:3
40:14
**wanting** 16:5
**wants** 5:18
**wasn't** 14:1
15:20 16:3
28:20 33:3
43:11,14,16,16
**watch** 16:2
**wavering** 24:4
**way** 23:6 30:20
31:13 35:8
36:21 37:9,13
**web** 40:2,7 41:2
41:21 44:5
53:7,10,12
**week** 53:22
**went** 32:7
**withdraw** 35:2
**witness** 3:3 8:17
8:22 9:23 10:3
16:25 21:18
26:15 28:25
47:4,15,16,21
47:23,25 54:1
54:3 55:15
**witnesses** 5:17
**woman** 23:25
**words** 9:24
**work** 8:22 13:16
35:15
**worked** 18:20
22:7,11,20,24
28:23 29:8
**workers** 34:12
**write** 49:9 57:2
**writing** 50:12
**written** 17:4
27:12
**wrong** 31:10
50:16

| **X** |
| --- |

**X** 3:1

| **Y** |
| --- |

**Yeah** 7:19 9:15
11:18 18:10
19:19 20:17
23:19 24:10
32:19 33:3
41:12 45:13
**year** 7:7 8:19
10:9 16:6,17
16:20 18:8
32:14 40:24
41:15
**years** 7:7 8:10
8:12,13,17,18
9:4,15 10:2,6,6
14:18 15:10
16:24 22:19,23
23:1,5,22 24:8
24:9 30:4
32:14 35:12,20
36:16
**yesterday** 6:11
6:13
**Yup** 9:2 28:13

| **Z** |
| --- |

| **0** |
| --- |

**000032** 41:8
**03-26-2024** 3:18

| **1** |
| --- |

**1** 3:15 8:1 26:1
40:23 41:20
42:22 53:8
**1,000** 5:12 7:20
**1,300** 50:12
**1,600** 49:11,14
49:17,25 50:3
50:14,17
**1:22-CV-2100...**
1:3 57:3
**10** 30:14

**10:13** 1:16
**100** 8:19
**11:36** 1:16 54:4
**1212** 2:8
**14** 41:9
**15** 6:22 30:14
40:23 41:3
**16** 39:8 42:12
43:25 55:23
56:24
**16th** 2:8
**17-CA-001347**
17:19
**19** 1:15 57:4
**1985** 7:22 8:18
**19th** 12:3

| **2** |
| --- |

**2** 3:16 25:22
26:2 29:7 41:3
41:24 42:18,22
46:12 53:8
**2,000** 48:13
**2,100** 48:6 49:16
49:20,24 50:9
50:10,17,23
**2:17-CV-0138...**
19:14
**20** 35:20
**2000's** 8:19
**2013-CA-0076...**
19:22
**2016** 16:22
**2020** 16:21,21
17:11,19 18:10
19:20 23:17
34:22
**2021** 20:17
34:22
**2022** 18:3
**2023** 17:5 39:3
39:25 40:25
41:15
**2024** 1:15 17:6,7
55:16 56:18

57:4 58:1
**2027** 55:23
56:24
**2047** 35:15
**2073** 35:8
**23** 58:1
**23rd** 43:23
55:15 56:18
**25** 3:16
**26** 6:18 9:7 11:4
13:13 14:2
**26-A** 9:23

| **3** |
| --- |

**3** 3:17 38:2
41:20,24 42:13
42:19,22 43:4
43:10 53:8
**30** 35:21 42:21
58:11
**30(e)Florida**
58:25
**31** 8:17 41:5
**32** 41:6
**33** 35:22 41:6
43:24
**33131-2433** 2:4
58:4
**33304-2323** 2:9
**36** 35:22
**38** 3:17

| **4** |
| --- |

**4** 3:5,18 48:25
50:14
**400** 46:8 49:10
**408027** 55:22
56:23
**48** 3:18

| **5** |
| --- |

**5** 3:19 51:5
52:13,18
**500** 5:12 7:19
**51** 3:19
**520** 2:3 58:3

**53** 3:7
**56** 35:16 36:21
37:9,14

| **6** |
| --- |

| **7** |
| --- |

**786-688-2335**
2:5

| **8** |
| --- |

**8** 3:15
**80** 8:19
**800** 48:16 50:11
**81** 35:11
**82** 35:11

| **9** |
| --- |

**954-401-2608**
2:9
**954)523-5326**
58:8
**995** 8:9,14