UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:22-cv-21004-MD

**JESSICA GUASTO**,

      Plaintiff,

vs.

**THE CITY OF MIAMI BEACH, FL**,
a Florida municipality,

      Defendant.
_____/

**<u>DECLARATION OF MARLA ALPIZAR PURSUANT TO
28 U.S.C. § 1746 IN SUPPORT OF DEFENDANT'S FULLY
DISPOSITIVE MOTION FOR SUMMARY JUDGMENT
AND MOTION TO STRIKE PLAINTIFF'S EXPERT WITNESS</u>**

      1.      My name is Marla Alpizar.

      2.      I make this Declaration pursuant to 28 U.S.C. § 1746, and in Support of the City of

Miami Beach's ("City") Fully Dispositive Motion for Summary Judgment and Motion to Strike

Plaintiff's Expert Witness.

      3.      Pursuant to 28 U.S.C. § 1746(2), I executed this Declaration in the United States of

America.

      4.      The information herein is based on my personal knowledge.

**<u>Public Sector Employment Background</u>**

      5.      On November 30, 2021, I was made the Interim Director of Human Resources for

the City of Miami Beach ("Interim Director").

      6.      On January 30, 2022, I was appointed as the permanent Director of Human

Resources for the City of Miami Beach.

7.      I am currently the Director of Human Resources ("Director") for the City of Miami Beach.

8.      From August 2016 until November 30, 2021, I was the Assistant Director of Human Resources ("Assistant Director") for the City of Miami Beach.

9.      From January 2007 until August 2016, I worked for the City of Hialeah.

10.     At the City of Hialeah, I held the following positions: Director of Education and Community Services, Director of Communications and Special Events, and Library Director.

11.     A complete and accurate copy of my Curriculum Vitae is attached as **Exhibit A** and is incorporated by reference in full herein.

**General Job Duties As Director and Assistant Director**

12.     The City has approximately 2,200 employees.

13.     The City has five (5) unions which represent five (5) bargaining units.

14.     As both Director and Assistant Director, my duties were/are as follows:

    i.   Assist with supervision of the entire Human Resources Department which is comprised of approximately twenty-nine (29) employees.

    ii.  Focus primarily in the areas of Employee and Labor Relations, Recruitment, and Compensation.

    iii. Participate in disciplinary matters with employees and unions.

    iv.  Represent management in collective bargaining negotiations and all labor relations matters.

    v.   Work closely with the City's Pension Department.

**The City's Pension Fund for Firefighters and Police Officers at the City of Miami Beach**

15.     The City of Miami Beach is **NOT** part of the Florida Retirement System ("FRS").

16.     The City Pension Fund for Firefighters and Police Officers in the City of Miami Beach is a defined benefit plan (the "Plan").

17.     The Plan was created under Chapter 23414 Laws of Florida, Special Acts of 1945, as amended through October 14, 2020

18.     As to Police Officers at the City of Miami Beach, the Police Officers' Relief and Pension Fund ("Police Pension Fund") is codified in the Code of the City of Miami Beach, Subpart B – Related Special Acts, Article VIII, §§ 49 – 61.

19.     The Code of the City of Miami Beach is a public record and easily obtainable on the internet via:

https://library.municode.com/fl/miami_beach/codes/code_of_ordinances?nodeId=SPBRE SPAC_ARTVIIIPOOFREPEFU_S55INACPOOF&showChanges=true

20.     The Police Pension Fund is not part of the FRS.

21.     The Police Pension Fund does not utilize any of the calculations from the FRS.

22.     The Police Pension Fund and the City of Miami have no affiliation whatsoever with the FRS.

**Calculation of Police Officer Pension Benefits and Police Offices' Deferred Retirement Option Plan ("DROP")**

23.     Police Officers at the City of Miami Beach are represented by The Fraternal Order of Police, William Nichols Lodge No. 8 ("FOP").

24.     The FOP is the exclusive bargaining representative for a bargaining unit of City police employees.

25.     The City police employees that are part of the FOP's bargaining unit (the "Bargaining Unit") are police employees who have the ranks of:

      i.   Police Officer

      ii.  Sergeant; and

iii.  Lieutenant.[1]

26.     Police employees who have the rank of Captain and above are considered "management employees" and therefore are not part of the FOP's Bargaining Unit, but are part of the Police Pension Fund.

27.     At the time the City implemented Plaintiff's Irrevocable Letter of Resignation, Plaintiff was a Sergeant and thus part of the FOP's Bargaining Unit.

28.     The City implemented Plaintiff's Irrevocable Letter of Resignation in January 2021.

29.     In January 2021, the City and the FOP were parties to a Collective Bargaining Agreement which covered the period October 1, 2018 through September 30, 2021 ("CBA").

30.     A true and correct copy of the CBA (Bates Nos. City 001694 – 001766) is attached as **Exhibit B** to this Declaration and incorporated by reference herein.

31.     The CBA is a public record.

32.     The City maintains the collective bargaining agreements with each of its unions on the City's website at:

https://www.miamibeachfl.gov/city-hall/human-resources/employee-labor-relations/

33.     Plaintiff's pension benefits were governed by Section 8.23 of the CBA which is titled "Pension." *See* Exh. B, § 8.23, Bates Nos. City 001723 – 001731.

34.     The City and the FOP have agreed on a DROP.

35.     The qualifications and calculations for DROP are contained in Section 8.23.C.1-12 of the CBA.[2] *See* Exh. B, § 8.23.C.1-12, Bates Nos. City 001725 – 001729.

---

[1]     Police Trainees and Detention Officers are also part of the Bargaining Unit.

[2]     The DROP is also codified in the Code of the City of Miami Beach, Subpart B – Related Special Acts, Article VIII, §§ 49 – 61

36.     At the time the City implemented Plaintiff's Irrevocable Letter of Resignation, Plaintiff was governed by the above-referenced DROP and pension calculations.

37.     During her employment with the City, Plaintiff was not governed by the FRS.

**Last Chance Agreements**

38.     As both Director and Assistant Director I am very familiar with "Last Chance Agreements."

39.     A Last Chance Agreement is just as the name identifies, it is an agreement between the City, an employee and an employee's union that provides an employee a chance to avoid separation from employment.

40.     The City does not "place" employees on Last Chance Agreements. It cannot do that.

41.     All Last Chance Agreements are the product of negotiation between the City, the employee and the employee's union.

42.     If an employee or the employee's union do not agree to a Last Chance Agreement, then the City cannot impose the agreement on the employee.

43.     Last Chance Agreements are not rare.

44.     The City frequently uses Last Chance Agreements.

45.     Attached as **Exhibit C** to this Declaration (Bates Nos. City 001955 – 001956) are two lists: (1) a list of non-active Last Chance Agreements from the time-period 2015 – 2024; and (2) active Last Chance Agreements.[3]

46.     I personally directed my assistant to create the lists at Exhibit C and reviewed them for completeness and accuracy.

---

[3]     The redactions are for employee medical information.

47.     Between 2015 and 2024, there have been forty-two (42) Last Chance Agreements. *See* Exh. C.


Pursuant to 28 U.S.C. Section 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

Executed on May __, 2024

05/29/24

_____
MARLA ALPIZAR

# EXHIBIT A
# TO DECLARATION OF
# MARLA ALPIZAR

# Marla Stevens Alpízar

## EXPERIENCE:

Interim Director, Department of Human Resources, November 2021 - present

Assistant Director, Department of Human Resources, August 2016 - present

*The City of Miami Beach, Florida has 2200 employees and five (5) bargaining units.  It is a world-class city with a population of over 90,000 and over 3.5 million visitors per year.*

- Assist with supervision of the Human Resources Department of 29 employees in support of the mission of the City of Miami Beach, with a focus primarily in the areas of Employee and Labor Relations, Recruitment, and Compensation.
- Represent the Director as needed in Commission meetings, labor relations and negotiation meetings, and staff meetings.
- Consult with departments and employees on a myriad of employee relations matters.

Director, Education & Community Services Department, January 2007-August 2016

*The City of Hialeah is the sixth largest city in Florida, with a population of 230,000.  Over 90% of the residents are Hispanic and many are recent immigrants to this country.*

- Planned and created the Education & Community Services Department to bring together, expand, enhance and showcase educational services around the City.
- Supervised department of 200 employees and 8 budgets totaling $5.2 million.
- Supervised Office of Communications and Special Events which plans, coordinates, and executes City events; produces content for the City website, TV station and social media; negotiates and maintains all City sponsorship agreements; and coordinates all publicity and marketing for City events and services.
- Supervised the City's Adult Centers and Therapeutics program for disabled adults.
- Supervised Milander Center for Arts & Entertainment and was responsible for culture programming, including musical concerts such as *Opera in Hialeah* and art exhibits such as the innovative and educational *CLIMA* exhibit in 2015.
- Oversaw the Hialeah Public Libraries Division.
- Coordinated and supervised all of the Mayor's education initiatives, and was the Oversight Committee liaison and advisor to the City of Hialeah Educational Academy Charter School.
- Led department in efforts to design and implement major grant-funded programming, approximately $2.5 million annually, which accounted for over half of the Department's budget.
- Created *Creative Learning & Play*, academic and enriching after school programs and summer camps for children, and the *Young Leaders with Character Programs*, 21st Century after school and summer camp programs focused on character and leadership development for middle and high school youth.
- Led team which wrote and implemented The Children's Trust multiyear grants in excess of $1 million per year for new after school and summer programs and for a new youth with disabilities employment program; the Department of Education *21 Century Learning Communities* multiyear grants in excess of $1.3 million per year for new after school and summer programs for middle and high school; and a multiyear grant for The Blue Foundation's *Embrace A Healthy Florida* initiative in excess of $1 million to combat childhood obesity; as well as many smaller grants.

- Was responsible for formation of many partnerships between the City and other government, cultural and educational entities, non-profits and business and community leaders with an annual value to the City and its programs of over $250,000 annually.

Library Director, Hialeah Public Libraries, March 1999-January 2007

*Along with many other services, the City maintains 6 municipal public libraries in order to provide high quality, local library and literacy services to its residents.*

- Planned and managed $2 million budget.
- Supervised and evaluated over 54 library staff in 5 municipal public libraries.
- Represented Library at City Council meetings, at all official functions, and with local media.
- Planned and opened 5 new e-Libraries in 7 years to serve city residents.
- Wrote and implemented Gates Grant for 26 additional computers, training, and software worth over $100,000, doubling the JFK Library's public access computers and bringing the Internet and computers to the Curtiss Branch for the first time to bring the total computers from 15 to over 70 computers in the LAN.
- Wrote and implemented State of Florida Literacy Grant and obtained $25,000 towards the hiring of a Literacy Program Director.
- Wrote and implemented Federal Library Services and Technology Grant of over $83,000 in order to develop and implement a new Family Literacy program *Hialeah Reads* to begin to address Hialeah's 59% low level literacy rate.
- Planned and wrote application for a State of Florida Literacy Grant of $25,000 towards an early childhood Literacy program *The Hialeah Reading Train.*
- Planned a Community and Technology Partnership Grant application of $25,000 to set up a mini-library and technology center in a densely populated, remote area of Hialeah.
- Wrote and implemented long-range and annual plans, Collection Development Plan, and Technology Plan.
- Responsible for enhancing Library-wide programming for all ages.
- Founded a *Friends of the Hialeah Public Libraries* group.

Librarian II, Hialeah Public Library, July 1996- March 1999.
- Implemented initial library LAN network.
- Completed Universal Service fund paperwork to purchase network equipment and telecommunication services valued at over $300,000 for only 28% of cost.
- Was a key planner for implementation of Internet access for the Library and the City.
- Held key role in the planning and development of City's and Library's first Web site.
- Set up and maintained Library Network Security and Firewall for the City.
- Developed and conducted computer classes for over 300 City employees and trained Librarians as additional trainers.

Field Support/Trainer, Gaylord Information Systems
Syracuse, New York, August 1994-June 1996.

- Trained academic and public libraries in the use of Galaxy library automation system including OPAC, Circulation, Cataloging, Acquisitions, Serials, Reports, System Administration, and Community Information modules.
- Trained over 30 libraries.  Most training trips were 3-4 days in length. Traveled 50% of my time.

- Acted as project manager for new *Galaxy* libraries coordinating timing for installation, data conversion, and training.  Ultimately responsible for assigned sites to make sure no detail was overlooked in the implementation of a new system.
- Consulted with libraries on workflow and system integration.
- Developed training documentation and presentation materials.
- Worked closely with Software Support Group Programming, Marketing, and Sales to meet the needs of over 100 academic, special, and public libraries.

EDUCATION AND CERTIFICATIONS:

**Master of Library and Information Science**:  August 1994 - GPA: 4.0
University of Texas at Austin - Emphasis on Special Libraries and Archives

**Bachelor of Science in Mathematics and French**:  August 1991 - GPA: 3.5 Louisiana State University, Baton Rouge

**SHRM Certified Professional (SHRM-CP):**  Internationally-recognized certification as a Human Resources professional from the Society for Human Resource Management, July 2018

**Certified Labor Relations Professional (FCLRP):** Florida Public Employer Labor Relations Association (FPELRA) November 2017

HONORS:

Mary E. Cleveland Centennial Endowed Presidential Scholarship, UT
LSU Top 100 Scholarship
CODOFIL Scholarship at l'Université Catholique de l'Ouest, Angers, France.
T.H. Harris Scholarship, Louisiana State Scholarship
Dean's List, UT and LSU

MEMBERSHIPS & VOLUNTEER WORK:

Society for Human Resources Management (SHRM), 2016 to present
South Florida Chapter of IPMA-HR, 2017 to present
Florida Public Employer Labor Relations Association (FPELRA) – 2017-2018

City of Hialeah Delegate to the Mayor's Blue Ribbon Task Force for the Miami Dade County Public Library System, October 2013 - March 2014

EESAC Committee, City of Hialeah Educational Academy, 2008 – 2013
Chair, Curriculum Advisory Committee, City of Hialeah Educational Academy, 2008 - 2013
Board of Directors, South Florida Autism Charter School, September 2009 – June 2013
Board of Directors, Take Stock in Children, Spring 2011 – June 2013

Vestry member, All Angels Episcopal Church, Miami Springs, FL, 2015 to present
Board of Trustees member, All Angels Academy, Miami Springs, FL, 2016 to 2018
Co-Chair of Silver Ball fundraising event, All Angels Academy, 2009-2013
Volunteer Librarian, All Angels Academy, 2005 – 2006;  2017-2018
Chorister, Anglican Chorale of Southeast Florida, Trinity Cathedral, Miami, 2012 to 2020

Member of Hialeah Woman's Club, 2005-2015

# EXHIBIT B
# TO DECLARATION OF
# MARLA ALPIZAR

**AGREEMENT**

**BETWEEN**


**CITY OF MIAMI BEACH, FLORIDA**


**and**


**MIAMI BEACH FRATERNAL ORDER OF POLICE**

**WILLIAM NICHOLS LODGE NO. 8**



**Period Covered**

**October 1, 2018 through September 30, 2021**

City 001694

## TABLE OF CONTENT

**PAGE NUMBER**

**AGREEMENT & PREAMBLE**................................................................................1

**ARTICLE 1.   RECOGNITION** ........................................................................ 2

**ARTICLE 2.   DEDUCTION OF DUES** ........................................................... 3
Section 2.1.   Check-off ............................................................................... 3
Section 2.2.   Legal Services Trust Fund .................................................... 3
Section 2.3.   Indemnification. ..................................................................... 4

**ARTICLE 3.   GRIEVANCE PROCEDURE** ..................................................... 5

Section 3.1.   Definition of Grievance and Time Limit for Filing ................. 5
Section 3.2.   Grievance Procedure ............................................................ 5
    Step 1............................................................................................ 5
    Step 2............................................................................................ 5
    Step 3............................................................................................ 6
Section 3.3.   Binding Arbitration ................................................................ 6
Section 3.4.   Authority of Arbitrator ........................................................... 6
Section 3.5.   Expenses of Arbitration ........................................................ 7
Section 3.6.   Processing Grievances ......................................................... 7
Section 3.7.   Election of Remedies. ........................................................... 7
Section 3.8.   Probationary Period .............................................................. 7
Section 3.9.   FOP Grievance Committee .................................................... 8
Section 3.10. Waiver of Time Limitations or Steps ..................................... 8

**ARTICLE 4.   NO STRIKE AND NO LOCKOUT** ............................................. 9
Section 4.1.   No Strike................................................................................ 9
Section 4.2.   No Lockout ............................................................................ 9

**ARTICLE 5.   MANAGEMENT RIGHTS** ........................................................ 10

**ARTICLE 6.   POLICE EQUIPMENT** ............................................................ 11

**ARTICLE 7.   HOURS OF WORK AND OVERTIME**....................................... 12
Section 7.1.   Purpose ............................................................................... 12
Section 7.2.   Normal Workweek ............................................................... 12
Section 7.3.   Four-Day Workweek ............................................................ 12
Section 7.4.   Weekly Overtime ................................................................. 12
Section 7.5.   Distribution of Overtime Opportunity ................................... 13
Section 7.6.   No Pyramiding. .................................................................... 14

City 001695

## TABLE OF CONTENT

**PAGE NUMBER**

**ARTICLE 8.   WAGES AND FRINGE BENEFITS**……………………………………… 15
  Section 8.1.   Across-the-Board Wage Increases ...……………………………………15
  Section 8.2.   Police Vehicle Policy.............................................................................. 15
  Section 8.3.   Compensation Plan ................................................................................ 17
  Section 8.4.   Step and Longevity Increases ................................................................18
  Section 8.5.   Shift Differential .....................................................................................18
  Section 8.6.   Hazardous Duty Pay ............................................................................. 19
  Section 8.7.   Holidays................................................................................................ 19
  Section 8.8.   Vacation Benefits...................................................................................19
  Section 8.9.   Sick and Vacation Leave Accrual and Payment on Termination ...............20
  Section 8.10.  Sick Leave Sell Back Program...............................................................20
  Section 8.11   Bereavement ........................................................................................ 21
  Section 8.12.  Court Time Compensation .....................................................................21
  Section 8.13.  Out-Of-Classification Pay.......................................................................22
  Section 8.14.  Standby Pay ......................................................................................... 22
  Section 8.15. Call-In Pay, On-Call Pay and Telephone Calls ……………………………… 22
  Section 8.16.  Sunglasses and Prescription Glasses....................................................23
  Section 8.17.  Field Training Officer ............................................................................ 23
  Section 8.18.  Injury Service Connected (ISC).............................................................. 23
  Section 8.19.  Special Assignment Allowance .............................................................. 24
  Section 8.20.  Extra Weapon ...................................................................................... 24
  Section 8.21.  Quality of Life....................................................................................... 25
  Section 8.22.  Forced Holdover ................................................................................... 25
  Section 8.23.  Pension  .............................................................................................. 25
  Section 8.24.  Premium Pay Supplement Contingent Upon the Department Obtaining and
                 Maintaining Certain Accreditations ...........................................................33
  Section 8.25.  Buyback of Probationary Time ...............................................................33
  Section 8.26.  "Me Too" with the IAFF ........................................................................ 34
  Section 8.27.  CJSTC Police Instructor Incentive Pay ................................................... 34
  Section 8.28   Second Language Pay ...........................................................................35
  Section 8.29   Arson Investigator (Certified) .................................................................35
  Section 8.30   Arson Investigator (Trainee) ..................................................................35
  Section 8.31   Drug Recognition Expert (DRE) ..............................................................36
  Section 8.32   CJIS Pay ..............................................................................................36
  Section 8.33   Crisis Intervention Team (CIT) ...............................................................36
  Section 8.34   Marine Pay ...........................................................................................36

**ARTICLE 9.   FOP HEALTH TRUST** ....................................................................... 37
  Section 9.1. ....................................................................................................................37
  Section 9.2. ...................................................................................................................38

City 001696

# TABLE OF CONTENT

**PAGE NUMBER**

Section 9.3. ..............................................................................................................38
Section 9.4   Health Trust Plan.........................................................................................39
Section 9.5   Indemnification ...........................................................................................39
Section 9.6   Employment Eligibility.................................................................................39
Section 9.7   Post Employment Coverage ........................................................................39
Section 9.8   Voluntary Benefits Plan ...............................................................................39
Section 9.9   Post Employment Health Program (PEHP)...................................................39

**ARTICLE 10.  EDUCATIONAL LEAVE AND TUITION REFUND**............................................41

**ARTICLE 11.  GENERAL PROVISIONS**
Section 11.1.   Safety and Health ......................................................................................42
Section 11.2.   FOP Activity and Non-Discrimination ........................................................42
Section 11.3.   Reduction In Work Force ...........................................................................42
Section 11.4.   Uniforms and Clothing Allowance .............................................................43
Section 11.5.   Disclosure of Records ...............................................................................43
Section 11.6.   Transfers ...................................................................................................44
Section 11.7.   Meeting Between Parties ...........................................................................44
Section 11.8.   Negotiating Sessions ................................................................................44
Section 11.9.   Job Descriptions .......................................................................................44
Section 11.10.  Defense of Members .................................................................................44
Section 11.11.  Personnel Rules and Departmental Manual................................................45
Section 11.12.  Incorporation of Personnel Rules ..............................................................45
Section 11.13.  Medical Leave of Absence .........................................................................45

**ARTICLE 12.  SEPARABILITY** ...........................................................................................46

**ARTICLE 13.  TIME BANK**...............................................................................................47

**ARTICLE 14.  DRUG TESTING** ........................................................................................49

**ARTICLE 15.  DISEASE PRESUMPTION** ......................................................................... 51

**ARTICLE 16.  PROMOTIONS** ......................................................................................... 53
Section 16.1. ...................................................................................................................53
Section 16.2. ...................................................................................................................53
Section 16.3. ...................................................................................................................53
Section 16.4. ...................................................................................................................54
Section 16.5.   Seniority Points.........................................................................................54
Section 16.6.   Education Points........................................................................................54

City 001697

## TABLE OF CONTENT

**PAGE NUMBER**

Section 16.7.   Book Committee ......................................................... 55
Section 16.8.   Written Test Scoring ...................................................55
Section 16.9.   Assessment Center Test Challenges ....................................... 56
Section 16.10. ......................................................................56
Section 16.11. ......................................................................56
Section 16.12  Promotional Eligibility for Employees Under Investigation ..........................57

**ARTICLE 17.  FOP PRESIDENT** ......................................................... 58
Section 17.1. ......................................................................58
Section 17.2. ......................................................................58
Section 17.3. ......................................................................59

**ARTICLE 18.  COMPENSATORY TIME** ............................................... 60

**ARTICLE 19.  ENTIRE AGREEMENT** .................................................61

**ARTICLE 20.  TERM OF AGREEMENT** ................................................62

**ELECTION OF REMEDY FORM** ........................................................ 63

**HEARING EXAMINER RULES** …….................................................... 64

**APPENDIX A – COMPENSATION PLAN** …….................................……...... 66

City 001698

## **AGREEMENT**

THIS AGREEMENT, made and entered into this __ day of _____, 2019, by and between the CITY OF MIAMI BEACH, FLORIDA (herein called the "City"), and the MIAMI BEACH FRATERNAL ORDER OF POLICE, WILLIAM NICHOLS LODGE NO. 8 (herein called the "FOP").

## **PREAMBLE**

WHEREAS, the FOP has been selected as the sole and exclusive bargaining representative by a majority of employees in the certified bargaining unit set forth in Article 1, and has been recognized by the City pursuant to the laws of the State of Florida as the sole and exclusive bargaining representative for said employees; and

WHEREAS, it is the intention of the parties to this Agreement to provide in manner which is binding and superior to ordinances and personnel rules of the City, for a salary schedule, fringe benefits, and conditions of employment of the employees covered by this Agreement, and to provide for the continued and efficient operation of the City's Police Department; and to provide for an orderly and prompt method of handling and processing grievances; and

WHEREAS, the FOP and the City agree to seek and maintain high standards for the operation of the Police Department;

NOW, THEREFORE, the parties agree as follows:

City 001699

**ARTICLE 1**
**RECOGNITION**

The City recognizes the FOP as the sole and exclusive bargaining representative for the purpose of wages, hours, and other terms and conditions of employment for employees in the following classifications in the Police Department (hereafter "employees"):

Trainees

Police Officers

Sergeants of Police

Lieutenant of Police

Detention Officers

All other employees in other existing classifications are specially excluded.

City 001700

**ARTICLE 2**
**DEDUCTION OF DUES**

**Section 2.1 – Check-off**

Upon receipt of a lawfully executed written authorization from an employee which is presented to the City by an official designated by the FOP in writing, the City agrees during the term of this Agreement to deduct biweekly FOP dues of such employees from their pay and remit such deductions to the FOP Treasurer within fourteen (14) calendar days however, such authorization is revocable at the employee's will upon thirty (30) days' written notice to the City and the FOP. The City shall deduct the dues from the FOP members who have authorized such a deduction in the following manner:  Each member's biweekly wages shall be reduced by the amount equal to one and one half percent (1.5%) of the annual minimum of the pay range of the Police Officer Classification, divided by twenty-six (26) pay periods.

For example:
The current annual minimum for the Police Officer Classification is $53,309.01.
$53,309.01 x .015=$799.64 / 26 = $30.76
$30.76 shall be deducted biweekly from the member's paycheck.

The FOP shall be responsible for advising the City of any change in the percentage of dues calculation in writing.  The City shall revise the calculation for each authorized deduction whenever a change to the annual minimum of the pay range of the Police Officer Classification is made, or whenever so notified in writing by the FOP of a change in the percentage.

The City agrees to use diligence in making prompt delivery of monies owed to the FOP.  The charge for dues deductions shall be calculated by multiplying one average run of check-offs by four (4) and multiplying the product by seven cents ($0.07).  The City shall notify the FOP of the amount owed no later than September 1 of each year.  The FOP shall make payment to the City no later than September 30 of each year.  The FOP will notify the City in writing of the exact amount of such uniform membership dues to be deducted.  The FOP will notify the City thirty (30) days prior to any change in its dues structure or if there are additions or deletions to the established check-off list.

**Section 2.2 – Legal Services Trust Fund**

If the FOP establishes a Legal Services Trust Fund, upon receipt of a lawfully executed written authorization from an employee which is presented to the City by an official designated by the FOP in writing, the City agrees during the term of this Agreement to take biweekly deductions from such employees from their pay and remit such deductions to the Trustee within fourteen (14) calendar days; however, such authorization is revocable at the employee's will upon thirty (30)

FOP - 3

City 001701

days' written notice to the City and the FOP. There will be no charge to the FOP for Legal Services Trust Fund deductions.

The FOP will notify the City in writing of the exact amount of such uniform Legal Services Trust Fund deductions.  The FOP will notify the City thirty (30) days prior to any change in the deduction structure or if there are additions or deletions to the established Legal Services Trust Fund deduction structure.

### Section 2.3 – Indemnification

The FOP agrees to indemnify and to hold the City harmless against any and all claims, suits, orders, or judgments brought or issued against the City as a result of any action taken or not taken by the City under the provisions of this Article; provided, that the City will not be indemnified or held harmless for any intentional tort.  This indemnification is not intended to cover claims made by, or on behalf of the FOP.

City 001702

**ARTICLE 3**
**GRIEVANCE PROCEDURE**

**Section 3.1 – Definition of Grievance and Time Limit for Filing**

A grievance is a dispute involving the interpretation or application of the express terms of this Agreement, excluding matters not covered by this Agreement; or where Personnel Board rules and regulations are involved; provided that disciplinary actions, including discharges, may be grieved under this Article, as provided herein.  See Section 3.7 (Election of Remedies) for procedures to be utilized in particular circumstances.  No grievance shall be entertained or processed unless it is submitted within twenty (20) workdays (excluding Saturday, Sunday, or holidays recognized by the City) after the occurrence of the first event giving rise to the grievance or within  twenty (20) workdays after the employee, through the use of reasonable diligence, should have obtained knowledge of the occurrence of the first event giving rise to the grievance.

**Section 3.2 – Grievance Procedure**

The FOP shall have the right to initiate and process grievances on its own behalf or on behalf of named members of the bargaining unit.  However, the FOP shall have the right in its sole discretion not to process grievances on behalf of bargaining unit members who are not members of the FOP, provided it notifies said employee of its decision not to proceed.  Grievances shall be processed, individually, as follows:

> **Step 1**: The grievance shall be presented, in writing on the Grievance Form supplied by the City, to the employee's unit or division commander or a designated representative, who shall answer within five (5) workdays after such receipt. The employee will also provide the FOP with a copy of said grievance.

> **Step 2**: If the grievance is brought by the FOP on its own behalf, or if the grievance is brought on behalf of an individual(s) and is not settled in Step 1 and an appeal is desired, it shall be referred in writing to the Police Chief or his designee.  The Election of Remedy Form shall be completed and signed by the FOP and/or the grievant, and attached to the Step 2 grievance.  The Police Chief shall discuss the grievance within ten (10) workdays with the employee and the FOP grievance committee at a time designated by the Police Chief.  If no settlement is reached, the Police Chief shall give the City's written answer to the employee and the FOP grievance committee within five (5) workdays following their meeting.

> **Step 3**: If the grievance is not settled in Step 2 and both the employee and FOP grievance committee desire to appeal, or if it is a class grievance filed by the

City 001703

FOP and at least one employee of the named class and FOP grievance committee desire to appeal, it shall be appealed in writing to the City Manager or his designee for Labor Relations within fifteen (15) workdays after the City's answer in Step 2.   Within fifteen (15) workdays after the grievance is submitted is to HR, the parties shall confer to pick a neutral third-party as a mediator. After the mediator is selected, the parties shall schedule a mediation, which shall happen within thirty (30) workdays after the selection of the mediator. The parties can agree to extend this deadline, and it is understood that the selected mediator's schedule may require an extension. The parties shall evenly split the costs of the mediator. The rules of mediation that are applicable in the Florida Courts shall apply, in full. For the avoidance of confusion, this means that anything and everything discussed during mediation is confidential and may not be introduced in any other proceeding, ever. This confidentiality provision shall be interpreted as inclusive. Both parties must have a decision-maker present at the mediation. If the parties are unable to resolve the matter at mediation the mediator shall declare an impasse.

## Section 3.3 – Binding Arbitration

If the grievance is not resolved in Step 3 of the grievance procedure, the FOP grievance committee may refer the grievance to binding arbitration within fifteen (15) workdays after the declaration of impasse from Step 3. The parties may select an arbitrator by mutual agreement. Nonetheless, the parties shall jointly request the Federal Mediation and Conciliation Service to submit a panel of five (5) arbitrators.  Both the City and the FOP shall have the right to strike two names.  The name remaining after the last party strikes shall be the arbitrator.  The parties shall notify the arbitrator of their selection and request the arbitrator's availability for a hear.

Written reprimands shall be settled at Step III.

## Section 3.4 – Authority of Arbitrator

The arbitrator shall have no right to amend, modify, ignore, add to, or subtract from the provisions of this Agreement.  He shall consider and decide only the specific issue submitted to him in writing by the City and the FOP and shall have no authority to make a decision on any other issue not so submitted to him.  The arbitrator shall submit in writing his decision within thirty (30) days following the submission of briefs by the parties. Either party may elect to make a closing argument at the hearing. A party can BOTH make a closing argument and submit a written brief. Written briefs shall be due on a date agreed to by the parties. The parties may agree to extend the deadline for submission of written briefs, and the deadline for the decision from the arbitrator.

City 001704

The decision shall be based solely upon his interpretation of the meaning or application of the express terms of this Agreement to the facts of the grievance presented.  If the arbitrator acts in accordance with this Section, the decision of the arbitrator shall be final and binding.

## Section 3.5 – Expenses of Arbitration

The fee and expenses of the arbitrator and the cost of a court reporter's attendance and written transcript shall be divided equally between the City and the FOP; provided, however, each party shall be responsible for compensating its own representatives or witnesses.

## Section 3.6 – Processing Grievances

All grievance discussions and investigations shall take place in a manner which does not interfere with the operation of the Police Department.  Any time spent by the Grievance Committee of the FOP in discussions or processing grievances at Step 1, 2, or 3 during their working hours shall not result in a loss of earnings or benefits.

## Section 3.7 – Election of Remedies

Disciplinary actions may be grieved (1) under the grievance/arbitration provisions contained in this Article or (2) to a Hearing Examiner, who shall be selected by utilizing the procedures outlined in Section 3.3 of this Article.   A grievance involving the interpretation or application of this Agreement may be grieved solely under the grievance/arbitration provisions contained in this Article.  Grievances regarding certain non-disciplinary matters, such as disagreements as to the waiving or application of changes to personnel rules or other work rules or policies may be filed via the Personnel Board procedures.

The decision of the hearing officer shall be final & binding.  The cost of a Hearing Examiner shall be borne by the City.  Any proceedings before the Hearing Examiner shall be conducted pursuant to the attached Hearing Examiner Rules.

## Section 3.8 – Probationary Period

Nothing herein shall in any way affect the discretion presently accorded the Police Chief with respect to employees in their probationary period following hire or in their probationary period following promotion.  It is specifically understood by the parties that the exercise of the Police Chief's discretion in this regard shall not in any way be subject to the grievance procedure set forth herein. Newly hired employees shall remain in probationary status for twelve (12) months after completion of the Field Training Officer (FTO) program and have no right to utilize the

City 001705

grievance procedure for any matter concerning discharge, suspension or other discipline during such period.

Employees promoted to the rank of Sergeant of Police or Lieutenant of Police shall remain in probationary status for nine (9) months after completion of the Supervisor FTO program designed by the Chief of Police, with input from the Union. In no event will the Supervisor FTO program be longer than eight (8) weeks.

## Section 3.9 – FOP Grievance Committee

The FOP shall appoint a Grievance Committee of not more than three (3) members, and shall notify in writing the Police Chief and the City Manager's designee for Labor Relations of the name or names of the employee or employees serving on this committee and of any changes in the numbers of this committee.  The members of this committee may not conduct any investigation while on duty without receiving the permission of the Police Chief, or in his absence, the duly authorized representative acting in his behalf; however, such permission shall not be unreasonably withheld.   Department clerical personnel will not be used by the grievance committee in grievance matters.   The grievance committee shall not unreasonably use other departmental resources for the purpose of conducting grievance-related work.

## Section 3.10 – Waiver of Time Limitations or Steps

The parties may mutually agree in writing to extend any of the time limitations set forth above for the processing of grievances and may also waive any of the intermediate steps of the grievance procedure in writing.

City 001706

**ARTICLE 4**
**NO STRIKE AND NO LOCKOUT**

**Section 4.1 – No Strike**

The parties hereby recognize the provisions of Chapter 447, Florida Statutes, which define strikes, prohibit strikes, and establish penalties in the case of a strike, and incorporate those statutory provisions herein by reference.

**Section 4.2 – No Lockout**

The City will not lockout any employees during the term of this Agreement as a result of a labor dispute with the FOP.

City 001707

**ARTICLE 5**
**MANAGEMENT RIGHTS**

It is recognized that except as stated herein, the City shall retain all rights and authority necessary for it to operate and direct the affairs of the City and the Police Department in all of its various aspects, including, but not limited to, the right to direct the work force; to plan, direct, and control all the operations and services of the Police Department; to determine the methods, means, organizations, and personnel by which such operations and services are to be conducted; to assign and transfer employees; to schedule the working hours; to hire and promote; to demote, suspend, discipline or discharge for just cause, or relieve employees due to lack of work or for other legitimate reasons; to make and enforce reasonable rules and regulations; to change or eliminate existing methods, equipment, or facilities; provided, however, that the exercise of any of the above rights shall not conflict with any of the expressed written provisions of this Agreement and that a grievance may be filed alleging such a conflict.

The City shall not employ more than eighty (80) Reserve Police Officers.  No Reserve Police Officers will be authorized to perform off-duty work as a police officer, unless reasonable efforts to fill an off-duty job with bargaining unit member fails.  Reserve Officers shall be compensated one dollar ($1.00) per fiscal year. The cap on reserve officers can be adjusted by mutual agreement of the City Manager or designee and FOP President.

Should the Department determine, in the discretion of the Chief with the concurrence of the FOP President, to utilize reserve officers to staff special events or other circumstances, such reserve officers will be compensated by the City at the prevailing off-duty rate.

City 001708

**ARTICLE 6**
**POLICE EQUIPMENT**

The City agrees to issue equipment which includes four sets of class B and E uniform shirts and pants or shorts on annual basis. Footwear, duty gear, department issued weapons, ammunition, handcuffs, expandable batons, light and heavy jackets, rain gear and traffic templates, shall be issued as needed.  Additionally, the City will supply an initial issue whistle to all patrol officers. To the extent that a flashlight is a required article of equipment, the City shall provide it.  The City will reimburse employees for the cost of replacement of protective vests up to a maximum of $750.00, when needed. However, as long as the City is a recipient of the U.S. Department of Justice Bulletproof Vest Partnership (BVP) Grant, the City will reimburse employees for the cost of replacement of protective vests up to a maximum of $1,000.00, when needed.  If the City is no longer a recipient of the BVP Grant, then the reimbursement rate shall be $750.00.

If the Department transitions to new or different types of equipment, all employees shall receive the equipment and applicable training within one (1) year of the transition or within a reasonable timeframe.

Necessary ammunition will be issued to each employee every twelve (12) months to guarantee reliability of the ammunition.

**Retiree Service Weapon**

A bargaining unit member who retires in good standing from the City shall receive his/her service firearm upon retirement or upon separation from the Police Officer Reserve Program, provided that the member does not retire in lieu of termination.  The Police Chief (or designee) shall have the right to deny this benefit for any justifiable reason to be approved in conjunctions with the Human Resources Director (or designee).

All bargaining unit members who retire due to in-service connected injuries/disabilities regardless of creditable years of service with the City's Police Department shall be eligible to receive their service firearm.  Any sworn employee who retires and remains as a reserve police officer shall receive his or her retiree weapon when they separate from the Police Officer Reserve Program.

Note:  The Chief of Police may require the wearing of body armor at any time in response to specific events or threats. When the Chief directs that it be worn, members will wear only body armor authorized or approved by the Department. Members who do not have body armor will not be required to wear any, until the Department either supplies it to them or reimburses their purchased and approved body armor.

City 001709

**ARTICLE 7**
**HOURS OF WORK AND OVERTIME**

**Section 7.1 – Purpose**

This Article is intended to define the normal hours of work and to provide the basis for the calculation and payment of overtime.  It shall not be construed as a guarantee of hours of work per day or per week, or of days of work per week.

**Section 7.2 – Normal Workweek**

The normal workweek shall consist of forty (40) hours per week and such additional time (subject to Section 7.4 and 7.5 below) as may, from time to time, be required in the judgment of the City to serve the citizens of the City.  The workweek shall begin with the employee's first regular shift each week.  All hours scheduled in the normal workday will be consecutive.  An employee called in early in advance of his normal shift starting time will not be sent home early on such day for the purpose of avoiding overtime unless such employee is in agreement with the request to leave early; provided, however, that except as limited by Section 7.3 below, the City shall retain its right to establish and modify normal work schedules.

**Section 7.3 – Four-Day Workweek**

The City shall extend the present policy of a four (4) day workweek to all employees in the bargaining unit except employees on light duty because of injuries or illness which are not service connected.  Employees who suffered a service connected injury or illness and who are permitted to work light duty may work up to thirty-two (32) weeks, measured non-consecutively from the date of injury, on light duty on a 4-10 schedule, or to receive ISC payments for thirty-two (32) weeks, or a combination of both.  Thereafter, the officer may be assigned to work a 5-8's shift in a light duty assignment during the pendency of his/her light duty.

Positions occupied by employees who are permitted to elect either a 4-10 or a 5-8 work schedule shall continue on that basis.

Detention Officers shall continue to work a 5-8 work schedule.

**Section 7.4 – Weekly Overtime**

Any member of the bargaining unit required to perform work outside of his/her regularly assigned shift shall receive pay at time-and-one-half their current hourly rate, subject to the provisions of the following paragraph.

City 001710

The parties understand and agree that Section 207(k) of the Fair Labor Standards Act Regulations shall apply to hours of work for employees covered under this agreement. Accordingly, the normal biweekly work period shall consist of eighty (80) hours in a fourteen (14) day period.  Hours worked in excess of the eighty (80) hour biweekly work period shall be compensated at the rate of one and one-half times the employee's regular rate of pay; however, sick leave, excluding sick leave taken under the Family and Medical Leave Act (FMLA) and court sick leave (only after having worked at least sixteen (16) consecutive hours), shall not count as hours worked for purposes of overtime calculation.  Leave without pay, excluding leave taken under the Family and Medical Leave Act (FMLA), shall not count as hours worked for purposes of overtime calculation.  Hours worked on an off-duty assignment shall not count as hours worked for purposes of overtime calculation.  All other hours in paid status shall count as hours worked for the purposes of overtime calculation.

### Section 7.5 – Distribution of Overtime Opportunity

a)      Overtime is recognized as being of three (3) general types within the Police Department:

1.      **Carry-over Overtime –** Overtime for work carried over from an employee's regular duty assignment (e.g., uniform officer on arrest; detectives' on-going investigations).  "Carry-over Overtime" shall not be subject to equal distribution rules.

**2.**      **Staffing Overtime** – Overtime due to staffing needs.  Staffing Overtime shall be distributed on a rotating basis, as equally as practicably possible, among employees in the particular work unit who are qualified to perform the particular overtime work, by departmental seniority. The Staffing Overtime list must be exhausted before returning to the top of the list.

Employees who are not in the particular work unit or division will not be assigned to Staffing Overtime unless reasonable attempts to assign employees from within the work unit or division have failed.

3.      **Special Event Overtime** – Overtime for planned events or assignments.  Special Event Overtime shall be distributed on a rotating basis, as equally as practicably possible, among all sworn employees in the Department who are qualified to perform the particular overtime work, by departmental seniority. The Chief of Police will develop and maintain a list of recurring special events.  The

FOP - 13

City 001711

Union President will be notified of special event pre-action and post-action meetings; his or her attendance is optional

b) Records for Staffing Overtime will be maintained at the Platoon or work section level. Records for Special Event Overtime will be maintained at the Department level.

c) Pay for overtime work will be paid no later than two (2) full pay periods following the pay period in which the overtime/court attendance slip is submitted and approved by the employee's supervisor.

**Section 7.6 – No Pyramiding**

Compensation shall not be paid more than once for the same hours with the exception of the assignment of "guaranteed minimum hours" provided for in Section 8.12, entitled Court Time Compensation, when the court time does not fall completely within the employee's regular shift or assigned overtime shift. In contrast, if the court time completely falls within the employee's regular or overtime shift, no guaranteed minimum court time hours shall be paid.

City 001712

**ARTICLE 8**
**WAGES AND FRINGE BENEFITS**

**Section 8.1 – Across-the-Board Wage Increases**

a) Effective with the first pay period ending in October 2018, there shall be a zero percent (0%) across-the-board wage increase.
b) Effective with the first pay period ending in April 1, 2020, there shall be a one percent (1%) across-the-board wage increase. This across-the-board wage increase shall increase the minimums and maximums of the pay ranges for those classifications covered by this Agreement.
c) Effective with the first pay period ending in April 1, 2021, there shall be a one percent (1%) across-the-board wage increase.  This across-the-board wage increase shall increase the minimums and maximums of the pay ranges for those classifications covered by this Agreement.

**Section 8.2 – Police Vehicle Policy**

In an effort to reduce the long-term costs to the City in maintenance, repairs and liability, a take-home vehicle program will continue on a phased-in process to the extent that funds are available in compliance with State and Federal law from the Police Confiscated Fund.

Bargaining unit members who are participants in the Take-Home Vehicle Program as of October 1, 1997, shall continue in the Take-Home Vehicle Program as prescribed by the City Commission approved Policy and the Department S.O.P.  Thereafter, priority for allocation of take-home cars shall be given to all eligible personnel by Departmental seniority.

To defray the operating expense incurred by the City as a result of the non-official use of take-home vehicles, employees shall be assessed a user fee.  The fee shall be based on the location of their primary residence as shown below:

| LOCATION | BIWEEKLY FEE |
|---|---|
| Miami Beach | -0- |
| Dade County (other than Miami Beach) | $25.00 |
| Broward County | $30.00 |
| Palm Beach County (as limited below) | $45.00 or $75.00 |

The take-home vehicle program shall be available to any sworn officer who was hired before July 18th, 2001 [the ratification date of 2000-2003 Agreement] who resides in Miami-Dade or Broward County.  Except as stated in this section, the take-home vehicle program shall not be available to any sworn officer who is hired on or after July 18th, 2001 [the ratification date of the 2000-2003

City 001713

Agreement] (except police applicants in the background process) and resides outside of Miami-Dade County but is available to a sworn officer who is living outside Miami-Dade County and moves back to Miami-Dade County.

As of July 2010, there were one hundred ten (110) cars allocated in the take home vehicle program for Broward County. Going forward, a number of vehicles to be determined (but no less than one hundred ten (110) vehicles) by the mutual agreement of the Police Chief and the FOP will be allocated for Broward County.

The four (4) police officers currently residing in Palm Beach County will be allowed to retain their take home cars and will continue to pay at their current rates (i.e., the $45.00 or $75.00 that applied to each of them respectively per the terms of the 2003-2006 Agreement) for their vehicles. When each one of these four (4) employees separate from City employment, the number of Palm Beach cars will be reduced as each employee leaves.  Whenever one (1) of the four (4) Palm Beach County cars is eliminated, the number of Broward County take home cars will be increased by that same number.

Employees may not park their cars in a location so as to circumvent the restrictions outlined in this section.

The Union agrees that each bargaining unit employee who is assigned a take-home vehicle will purchase at his or her expense an extended non-owner coverage endorsement or non-owner auto insurance coverage in the amount of at least $100,000, within 30 days of this effective date of this agreement. In addition, the employee must maintain an extended non-owner coverage endorsement or non-owner auto insurance coverage in the amount of at least $100,000, for so long as he or she is assigned a take-home vehicle. Employees who are initially assigned a take-home vehicle, subsequent to date of ratification of this agreement, shall be required to obtain and maintain an extended non-owner coverage endorsement or non-owner auto insurance coverage in the amount of at least $100,000, prior to vehicle assignment. Any employee without the required insurance coverage, as stipulated herein, may have the take-home vehicle privilege revoked at the City's discretion. If the insurance industry no longer provides the extended non-owner coverage endorsement or non-owner auto insurance coverage, there will be a re-opener in order for the City and Union to discuss the provisions set forth in this section only.

City 001714

**Section 8.3 – Compensation Plan**

a)      **Entry Level Pay - Hired on or after October 1, 1997**

     1.   <u>Police Officer</u>

         a)   Non-Certified Hire - A newly hired, non-certified Police Officer will be placed in the Police Officer Trainee Step 1 rate of pay while attending the Police Academy and until he/she receives notification of passing the State Certification examination.  The pay period following the notification of passing the State Certification examination the bargaining unit employee will be placed in Police Officer Trainee Step 2 rate of pay for the duration of his/her first year of service. Upon completing his/her first year of service, in accordance with Section 5 below, the bargaining unit employee shall be placed in Step A.

         b)   Non-Florida Certified Hire Academy Required - A newly hired, Non-Florida certified Police Officer who is required to attend the Police Academy will be placed in the Police Officer Trainee Step 2 rate of pay while attending the Academy and until he/she receives notification of passing the State Certification examination.  The pay period following the notification of passing the State Certification examination, the bargaining unit employee will be placed in Police Officer Trainee Step 3 rate of pay for the duration of his/her first year of service.  Upon completing his/her first year of service, in accordance with Section 5 below, the bargaining unit employee shall be placed in Step A.

         c)   Certified Hire with less than one (1) year of experience - A newly hired Police Officer with less than one (1) year of experience who is not required to attend the Police Academy shall be placed in the Police Officer Trainee Step 3 rate of pay for his/her first six (6) months of service and Step A for the duration of his/her first year of service.

         d)   Certified Hire with or greater than one (1) year but less than three (3) years of experience - A newly hired Police Officer with or greater than one (1) year but less than three (3) years of experience shall be placed in Step A for the duration of his/her first year of service.

City 001715

e) Certified Hire with or greater than three (3) years of experience - A newly hired Police Officer with or greater than three (3) years of experience shall be placed in Step B for the duration of his/her first year of service.

2. <u>Detention Officer</u>
A newly hired Detention Officer will be placed in Step A of the pay scale for the duration of his/her first year of service.

b) **<u>State Certification Re-examination</u> –** In the event a newly hired Police Officer who is required to take the State Certification examination fails to pass said examination, he/she shall be placed on a leave of absence without pay until such time as he/she passes the State Certification examination.  Said bargaining unit employee shall sign up for the next scheduled examination in the State of Florida and take the examination at his/her expense.  In the event the bargaining unit employee fails the re-examination, his/her employment with the City shall terminate.

## Section 8.4 – Step and Longevity Increases

All step and longevity increases shall become effective on the payroll period commencing nearest the employee's anniversary date, as per current practice.  A step increase shall be awarded based upon the employee receiving a satisfactory evaluation during that rating period, as per current practice.

Effective October 1, 2015, one (1) additional step (Step I) shall be added to the maximum pay range for the classification of Detention Officer.  The additional step will increase the maximum of the range for the aforementioned classification by five percent (5%). The minimum pay range shall remain as is and there shall be no immediate pay increase for any employees. Those employees at the maximum of the range (Step H) as of October 1, 2015, will move into the new step (Step I) on October 1, 2015, with their anniversary date remaining unchanged. Thereafter, any employee in the aforementioned classification who is at the maximum step of the range, (Step H), shall be eligible to proceed to Step I upon reaching his or her next anniversary date.

## Section 8.5 – Shift Differential

At the time this Agreement was executed, the City maintained three standard shifts of work to-wit: a first shift starting at approximately 11:00 p.m.; a second shift (also called "Day Shift") starting at approximately 7:00 a.m.; and a third shift (also called "Afternoon Shift") starting at approximately 3:00 p.m.

If the City rearranges the shift scheduling or establishes any new shift, shift differential pay shall follow the below formula based on the time period in which a majority of hours are worked by the

City 001716

employee. If a majority of the non-standard shift hours are after 3:00 p.m., all the shift differential pay for all post 3:00 p.m. hours, effective October 1, 2006, shall be seventy-five cents ($.75) per hour. If a majority of the non-standard hours are after 11:00 p.m., all the shift differential pay for all post 11:00 p.m. hours, effective October 1, 2006 shall be one dollar ($1.00) per hour. However, effective September 30, 2015, if a majority of the non-standard shift hours are after 3:00 p.m., the shift differential pay for all post 3:00 p.m. hours shall be fifty cents ($.50) per hour, which shall be added the employee's hourly rate; and if a majority of the non-standard hours are after 11:00 p.m., the shift differential pay for all post 11:00 p.m. hours shall be seventy-five cents ($.75) per hour, which shall be added to the employee's hourly rate.

## Section 8.6 – Hazardous Duty Pay

All employees covered by this Agreement, shall receive hazardous duty pay in the amount of one hundred twenty-five dollars ($125) per pay period. Hazardous Duty Pay shall not be considered as pensionable earnings.

## Section 8.7 – Holidays

Consistent with the City Commission holiday resolution and current department practices, the holiday benefits presently enjoyed by the employees covered by this Agreement shall continue. Employees shall be paid double time for all hours worked on a holiday. Employees whose regularly scheduled day off falls on a holiday shall be given another day off.

**The following holidays shall be recognized as follows:**

| Holidays | Recognized Date |
|---|---|
| New Year's Day* | January 1 |
| Independence Day | July 4 |
| Veterans Day | November 11 |
| Christmas Day* | December 25 |

**<u>*Effective the first full pay period upon ratification, members working midnight shift on Christmas Eve and New Year's Eve shall also be paid double time for all hours worked.</u>**

## Section 8.8 – Vacation Benefits

Consistent with applicable ordinances, the vacation benefits presently enjoyed by the employees covered by this Agreement shall continue. Employees shall be allowed to take vacation time off upon completion of their entry FTO program.

City 001717

In the event an employee is not allowed to take a vacation because of scheduling by the City, he will, at the option of the City, either be paid in lieu of vacation time not used, or be allowed to accumulate into the next calendar year pursuant to existing rules governing accumulation. However, in no event shall an employee be penalized by losing accumulated vacation time because he was unable to use it because of departmental needs. This Section shall not apply to sick leave accumulation.

## Section 8.9 – Sick and Vacation Leave Accrual and Payment on Termination

Effective upon ratification of this agreement, all employees covered by this Agreement shall, under applicable ordinances, rules, and regulations, be allowed to accrue no more than 500 hours on an annual basis, and, except in accordance with provisions for postponement of vacation leave as set forth in Article 8, Section 7, of this Agreement; be permitted to transfer sick leave in excess of 360 hours to vacation leave at the rate of two days' sick leave to one day vacation leave to be used in the pay period year when transferred; be permitted a maximum payment at time of termination, death, or retirement of, no more than 620 hours vacation leave and seventy-five percent (75%) of sick leave to a maximum of 620 hours.  Employees shall be permitted to carry vacation hours over the five hundred (500) hour cap until March 31st of the following year.

## Section 8.10 – Sick Leave Sell Back Program

An annual sick leave sell back program, payable on a dollar for dollar basis, has been established and implemented as stated in this section.  The annual sick leave sell back period shall cover each fiscal year, from October 1st to September 30th.  Payments for each annual sick leave sell back period will be made in the last pay period in November after the closing of the applicable sell back period.

The sick leave sell back program will allow qualified employees to sell back their annual sick leave accrual during the sell back period, minus any sick and emergency vacation leave utilized during the same period, to be reduced on an hour for hour basis., Employees who have completed twenty (20) years of service or more, before the start of the applicable sell back period, may sell back up to 136 hours minus any sick and emergency vacation leave utilized during the same period, to be reduced on an hour for hour basis.  Leave utilized under the Family and Medical Leave Act (FMLA) shall not reduce the sick leave sell back amount.

In order to qualify for participation in the sick leave sell back program, employees must: (1) Have been employed by the City throughout the entire sick leave sell back period being measured; and (2) Maintain at least three hundred (300) hours of combined accumulated sick and vacation leave, after each sell back date. Employees who have completed five (5) years of service or less, before the start of the applicable sell back period, must maintain at least two hundred (200) hours of combined accumulated sick and vacation leave, after each sell back date. The sick leave hours

City 001718

sold back as part of this program cannot cause the employee's accumulated sick and vacation leave to fall below the aforementioned minimum established thresholds.

### Section 8.11 – Bereavement

When there is a death in the immediate family (mother, father, grandparents, grandchildren, current spouse's parents, brother, sister, current spouse, children or stepchildren or domestic partner as defined in the Domestic Partner Leave Ordinance of an employee), he or she shall be allowed four (4) days off for each death for the purpose of making arrangements and/or attending the funeral, without loss of pay and without charge to accrued sick leave or vacation days of said employee. At his or her request, the employee shall be provided two (2) additional work days off, which shall be charged to the employee's accrued sick or vacation leave bank.   In such circumstances, additional time off may be granted at the discretion of the Police Chief and shall be chargeable to the accrued sick or vacation leave of such employee.  Requests for additional time off shall be submitted in writing to the Police Chief.

The City shall be responsible for funeral expenses for any employee killed in the line of duty, up to a maximum of $20,000.

### Section 8.12 – Court Time Compensation

For attendance at court during off-duty hours for purposes related to employment with the City, employees shall be provided with time and one-half pay for such time spent at court with the following minimum hourly guarantees:

a) During an employee's off-duty hours, a minimum of four (4) hours per day shall be guaranteed until September 30, 2015, at which time the minimum hours per day shall decrease to three and one-half (3 ½) hours. However, if an employee's first court appearance begins within one (1) hour of the start of his/her regularly assigned shift or ends within one (1) hour after the end of his/her regularly assigned shift, a minimum of two (2) hours per day shall be guaranteed.

b) For the employee's second off-duty appearance in the same day, an additional two (2) hour minimum shall apply after the expiration of four hours (or two hours if the initial two-hour minimum was in effect).

c) For the employee's third off-duty appearance in the same day, an additional one (1) hour minimum shall apply after the expiration of six hours (or four hours if the initial two-hour minimum was in effect).

d) No Pyramiding.  Compensation shall not be paid more than once for the same hours.

City 001719

**Section 8.13 – Out-of-Classification Pay**

When an employee is assigned by the shift commander to perform at the level of a higher rank, he shall be paid for the duration of the assignment at an hourly rate of pay of three dollars ($3.00) higher than his/her regular rate; provided that this shall in no way constitute an obligation to assign an employee to a higher classification under any circumstances and it is recognized that the City retains the right to determine when and for how long an employee will be temporarily assigned to a higher classification.

**Section 8.14 – Standby Pay**

When an employee is placed on standby during off-duty hours by order of the shift commander for the purpose of being available to return to duty to handle emergency crowd control or natural disasters, he will be paid one-half (1/2) of his regular base rate for all standby time up to a maximum of eight (8) full-time hours in a twenty-four (24) hour period, starting with the time he is notified to stand by. Standby remuneration shall cease at the earlier of sixteen (16) hours in a twenty-four (24) hour period or when the employee is notified by order of the shift commander that the standby order is rescinded. Standby hours shall not be considered as hours worked for purposes of overtime.

**Section 8.15 – Call-In Pay, On Call Pay, and Telephone Calls**

a. Call-In Pay

An employee who is called to perform work outside of his regularly assigned shift will be paid a minimum of two (2) hours' compensation at the straight time hourly rate or time and one-half the regular hourly rate, subject to the provisions of Article 7.4, Weekly Overtime, except when contiguous to the employee's regular schedule.

b. On Call Pay

Effective the first full pay period upon ratification, employees who are designated as on call status will receive a two and half percent (2.5%) supplement pay per pay period on a monthly basis.

Those designated as on call status include the following:
- Criminal Investigations Division
- Hostage Negotiations Team
- SWAT Techs
- Special Weapons and Tactics Team
- Tech Services
- PEU
- Homeless Resource Officers (HRO)
- Intelligence Unit
- PIO

City 001720

- IA
- FOP President
- Traffic Homicide Investigators
- K-9
- Neighborhood Resource Officers

Members receiving this benefit must be available to the Department when called. Unreasonable failure to respond when called may result in removal of this benefit for up to one year, at the discretion of the Chief.

Investigative Supervisor Availability Pay is eliminated effective upon ratification of this Agreement.

c. Telephone Calls

Any off-duty employee who receives a telephone call from a supervisor regarding a matter that pertains to an investigation or incident arising from his/her most recent (last) work shift, shall be paid a 30-minute minimum at straight time or time and one half the regular hourly rate, subject to the provisions of Article 7.4, Weekly Overtime, for the first off duty call on a given day. Subsequent calls that occur after the initial 30 minutes will be compensated in 30-minute increments not to exceed two hours for all matters.

## Section 8.16 – Sunglasses and Prescription Glasses

The City agrees to reimburse employees for the purchase or repair of sunglasses and prescription eyeglasses with a maximum allowable reimbursement of one hundred fifty ($150.00) dollars per employee in a twelve (12) month period, when they are lost or damaged while the employee is engaged in active police work such as arrests, pursuit, physical conflict or vehicular accidents.

## Section 8.17 – Field Training Officer

Bargaining unit employees who are assigned to the Field Training Officer (FTO) program by the Police Chief shall receive five percent (5%) of their base rate of pay on a biweekly basis, for as long as they are assigned to the program. The Chief of Police will assign, reassign, or remove FTOs at least annually.  The Police Chief, or his/her designee, in his/her sole discretion, may assign Officers to Field Training Officer (FTO) assignment.

## Section 8.18 – Injury Service Connected (ISC)

For two (2) sixteen (16) week periods, the City agrees to compensate any member of the bargaining unit with the difference between the weekly disability workers' compensation benefit received or which the employee is entitled to receive, and his or her regular rate of pay for any time lost from work due to injuries sustained under the following circumstances:

City 001721

a) While on duty and entitled to be paid by the City; or

b) While reasonably exercising police officer functions within the City limits of Miami Beach while off duty; or while working a departmentally sanctioned off-duty job; or

c) While exercising police officer functions when there is a physical danger to a person and the employee takes reasonable action off duty in the state of Florida; or

d) When operating a City vehicle, being duly authorized to do so by the City; or while on a reasonably direct travel route to or from work and home in their private vehicle while within the City limits.

e) In the circumstances described above (subparagraphs 1 through 4), the City agrees that it is and will consider itself the employer and the employee the City's employee.

After the advice and comments of the Police Chief and the FOP President, the City Manager, at his sole discretion, may extend the above described ISC payments beyond thirty-two (32) weeks. This decision is not subject to grievance or arbitration.   The approvals for receipt of this compensation as presently required shall be continued.

## Section 8.19 – Special Assignment Allowance

Employees assigned on a permanent basis to motorcycles or the training unit shall receive a special assignment pay of five percent (5%) of their base pay.

Employees assigned to work a 5-8 shift shall receive a special assignment pay of two and one-half percent (2 ½%).  Employees who are on 5-8 light duty because of non-service connected injury or illness shall not receive the special assignment pay. Employees who are on 5-8 light duty because of service-connected injury or illness, where the City doctor approves a 40-hour work schedule, and who have demonstrated the ability to work a 40-hour workweek, shall receive the special assignment pay for all hours worked on 5-8's.  If the injury service connected light duty employee takes off work and receives ISC payments, the employee will not receive the two and one-half percent (2-1/2%) special assignment pay for time not worked.

## Section 8.20 – Extra Weapon

Employees will be allowed to carry a concealed, extra weapon while on duty, as approved by the range master.

City 001722

## Section 8.21 – Quality of Life

The City agrees to continue a Quality of Life Program. The Quality of Life supplement pay shall be $26.00 per pay period for those employees participating in the program.

The Police Chief or his designee shall develop certification requirements which employees must meet to be eligible for any Quality of Life supplement payments. The Quality of Life supplement will be made available to all qualifying Bargaining Unit Members.

## Section 8.22 – Forced Holdover

If an employee is forced to stay beyond the hours of his/her shift such additional hours will be paid at double the regular rate. This provision applies to minimum staffing or mandatory overtime as a result of being forced to stay beyond the hours of a pre-planned shift due to a special event. This provision does not include unexpected occurrences such as natural or manmade disasters. The City will give a fourteen (14) calendar day notice whenever practical for planned overtime events. This does not apply to unplanned overtime or extensions of regular shifts. Forced Holdover will not be subject to the provisions contained in Article 7.4 Weekly Overtime calculations.

## Section 8.23 – Pension

The pension benefits as they currently exist shall continue, except that the City shall amend the pension plan upon ratification of this Agreement, to provide the following benefits for plan members who retire on or after September 30, 2013 (except as otherwise specified below):

A. Military Buy Back: Upon completion of five (5) years of creditable service under the pension system, (ten years for members hired after ratification of this agreement), members may purchase additional creditable service under the system for up to two (2) years of prior military service, in increments of up to three percent (3%) per year of service for a maximum additional multiplier of six percent (6%), purchased at ten percent (10%) or ten and one half percent (10.5%), (for new hires required to contribute 10.5% to the plan as set forth in sections G and H herein), of pensionable salary during the 12 calendar months immediately preceding the date of such purchase; for each year of military service purchased, with the cost prorated for fractional years of service. For purposes of this purchase, an employee may use the value of accrued sick and/or annual leave, valued at the employee's hourly rate at the time of purchase. Such purchased creditable service will be available for use as a benefit, including for purposes of reaching normal retirement eligibility. In no event may the purchased service be used for purposes of vesting credits.

The purchase of additional military service must be completed within twenty- four (24) months following a member's completion of five years of creditable service under the pension plan (ten years for members hired after ratification of this agreement). If a member does not complete the purchase within the twenty-four (24) month period, he/she shall not be eligible for the purchase in the future. These

City 001723

provisions shall be applicable upon attaining ten (10) years of creditable service under the Miami Beach Police/Fire Pension plan for employees hired on or after ratification of this agreement.

**Prior Police Service Buy Back**: Upon ratification, all bargaining unit employees shall have a window between July 1, 2021 and September 30, 2021 in which to purchase up to two years creditable service in increments of up to three percent per year of service for up to two years of prior service. For purposes of determining credit for prior service, in addition to service as a police officer in this state, credit may be given for federal, other state, or county service as long as such service is recognized by the Criminal Justice Standards and Training Commission within the Department of Law Enforcement as provided in chapter 943 or the police officer provides proof to the board of trustees that such service is equivalent to the service required to meet the definition of a police officer. The creditable service shall be purchased at 10% or 10.5% (for employees required to contribute 10.5% to the plan as set forth in sections G and H herein) of pensionable salary during the 12 calendar months immediately preceding the date of such purchase; for each year purchased. For purposes of this purchase, an employee may use the value of accrued sick and/or annual leave valued at the employee's hourly rate at the time of purchase, with the cost prorated for fractional years of service. In the event the employee separates from employment after purchase of such creditable service but prior reaching 10 years of creditable service, the employee shall be reimbursed amounts paid in. Such purchased creditable service will be available for use as a benefit, including for purposes of reaching normal retirement eligibility, upon completion of 10 years of creditable service under the pension system. In no event may the purchased service be used for purposes of vesting credits.

**Non Prior Service Buy Back**: Upon ratification, all bargaining unit employees shall have a window between July 1, 2021 and September 30, 2021 in which to purchase up to two years creditable service in increments of up to three percent per year of service for a maximum additional multiplier of six percent (6%), purchased at 10% or 10.5% (for employees required to contribute 10.5% to the plan as set forth in sections G and H herein) of pensionable salary during the 12 calendar months immediately preceding the date of such purchase; for each year purchased. For purposes of this purchase, an employee may use the value of accrued sick and/or annual leave valued at the employee's hourly rate at the time of purchase. Such purchased creditable service will be available for use as a benefit upon completion of 10 years of creditable service under the pension system. In the event the employee separates from employment after purchase of such creditable service but prior reaching 10 years of creditable service, the employee shall be reimbursed amounts paid in. In no event may the purchased service be used for purposes of vesting credits.

The total amount of creditable service available for purchase shall not exceed a total two years (6%) for any combination of the above buy back options, or when an employee has participated in a prior by-back in the Miami Beach Police/Fire Pension system of six percent (6%) or more.

B.   All compensation for work performed pursuant to Off-Duty Assignments, as outlined in the Department's Standard Operating Procedures (SOP's), shall be included in a member's salary for pension purposes, and shall be used in the

City 001724

calculation of member contributions and benefits. Provided, in no event shall overtime pay and/or off-duty pay, exceed the caps presently specified in the Miami Beach Police and Fire Pension Ordinance. Overtime in excess of 300 hours per year or payments for unused sick and and/or vacation leave may not be included in compensation for pension purposes.

C.      DEFERRED RETIREMENT OPTION PLAN (DROP)

    **1.**      **Eligibility** – Any active employee member of the Miami Beach Police and Firefighters Pension Plan may enter into the DROP on the first day of any month following the date upon which the employee first became eligible for a normal service retirement, subject to the conditions expressed herein or as modified from time to time.

    **2.**      **Conditions of Eligibility** – Upon becoming eligible to participate in the DROP, an employee may elect to enter that program for a period not to exceed sixty (60) months; however, employees who entered the DROP on or before September 30, 2015, may extend their DROP participation period by twelve (12) months, for a total maximum DROP participation period not to exceed seventy-two (72) months. Employees who entered the DROP on or after October 1, 2015, but prior to the date of ratification of this Agreement, may extend their DROP participation period by up to thirty-six (36) months, for a total maximum DROP participation period not to exceed ninety-six (96) months. Employees who enter the DROP on or after the date of ratification of this Agreement will be subject to a total maximum DROP participation period not to exceed ninety-six (96) months. Notwithstanding, participation may not continue beyond that date when the employee's combined years of creditable service and time in the DROP equals four hundred and fifty-six (456) months. Provided also that participation in DROP shall require the employee to complete and submit the following prior to start of DROP payments.

    a. Such forms as may be required by the Pension Board of Trustee's Plan Administrator. Election in the DROP is irrevocable once DROP payments begin.

    b. A waiver and an irrevocable resignation from employment with the actual date of termination being the date designated by the employee as the end of his/her DROP participation. The administration and timing of execution and delivery of the waiver and resignation forms shall meet the requirements of the Age Discrimination in Employment Act and the Older Worker's Benefits Protection Act, as same may be amended from time to time.

    c. Employees currently in the DROP, who meet the requirements set forth in Sections 1 and 2 above, and elect to extend their DROP participation period, must sign such forms as may be required by the Pension Board by no later than September 1, 2019.

    **3.**      **Conditions of Employment for DROP Participants** – Employees shall be subject to termination of employment while in DROP to the same extent as they were in their pre-DROP status. A person who has elected the DROP remains an employee during the DROP period and receives all the

City 001725

benefits of being an employee during the DROP period, except any form of pension contribution.

**4.      Effect of DROP Participation**

a. An employee's credited service and his/her accrued benefit under the Pension Plan shall be determined on the date of his/her election to participate in the DROP first becomes effective.

b. The employee shall not accrue any additional credited service while he/she is a participant in the DROP, or after termination of participation in the DROP.

c. A DROP participant is not eligible for disability benefits from the Plan.

d. An employee may participate in the DROP only once.

e. Effective with the start date of an employee's DROP participation, contribution to the Pension Plan by the employee and the normal cost contribution to the Pension Plan by the City, on behalf of the employee, shall cease.

**5.      Payments to DROP Account**. A DROP account shall be created for each member who elects to participate in the DROP. A DROP account shall consist of amounts transferred to the DROP from the Plan, which include the monthly retirement benefits, including any future cost of living increases, that would have been payable had the member elected to cease employment and receive a normal retirement benefit upon commencing participation in the DROP, and earnings on those amounts. With the exception of those employees who enter the DROP on or after September 1, 2012, through September 29, 2013, shall continue to receive a zero (0%) cost of living adjustment for the third (3rd) and fourth (4th) annual adjustment dates, regardless of whether the employee remains in the DROP for the applicable maximum participation period.

a. Employees who entered the DROP on or before September 30, 2015, and who choose to extend their DROP participation period by up to twelve (12) months, shall receive a zero (0%) retiree cost of living adjustment (COLA) for their sixth (6th) annual adjustment date. If these employees choose to extend their DROP participation period and separate from employment with the City at any time within the sixth (6th) year, they will not receive a retiree COLA on the sixth (6th) annual adjustment date, but will receive a retiree COLA on the seventh (7th) annual adjustment date and all annual retiree COLAs thereafter.

b. Employees who entered the DROP on or after October 1, 2015, but prior to the date of ratification of this Agreement, who choose to extend their DROP participation period by up to thirty-six (36) months shall receive a zero (0%) retiree COLA for their sixth (6th), seventh (7th), and eighth (8th) annual adjustment dates. If these employees separate from employment with the City at any time within the sixth (6th), seventh (7th), or eighth (8th) year in DROP, they will not receive a retiree COLA on the annual adjustment date following their separation of employment with the City, but will receive all annual retiree COLAs thereafter.

FOP - 28

City 001726

c. Employees entering the eight (8) year DROP on or after the date of ratification of this Agreement shall receive a zero (0%) retiree COLA for their sixth (6th), seventh (7th), and eighth (8th) annual adjustment dates. If these employees separate from employment with the City at any time within the sixth (6th), seventh (7th), or eighth (8th) year in DROP, they will not receive a retiree COLA on the annual adjustment date following their separation of employment with the City, but will receive all annual retiree COLAs thereafter.

d. Employees hired after the date of ratification of this Agreement who enter the DROP shall receive a zero (0%) retiree COLA for their first (1st), second (2nd), third (3rd), and fourth (4th) annual adjustment dates. If these employees separate from employment with the City at any time within the first (1st), second (2nd), third (3rd), or fourth (4th) year in DROP, they will not receive a retiree COLA on the annual adjustment date following their separation of employment with the City, but will receive all annual retiree COLAs thereafter.

6.   **DROP Account Earnings**

a. Members may direct their DROP money to any of the investment options offered and approved by the Board. Any losses incurred by the participant shall not be made up by the City or the Pension Plan. The selection of these programs shall be made by the participant on forms provided by the Board. Any and all interest and or earnings shall be credited to the participant's DROP account.

b. A member's DROP account shall only be credited or debited with earnings while the member is a participant in the DROP and, depending on the DROP Account Payment Options selected, after the member dies, retires, or terminates employment with the City of Miami Beach.

7.   **Payment of DROP Account Funds**

Upon termination of a member's employment (for any reason, whether by retirement, resignation, discharge, disability, or death), the retirement benefits payable to the member or to the member's beneficiary shall be paid to the member or beneficiary and shall no longer be paid to the member's DROP account. In the event of the member's death, payment shall be made directly to the member's beneficiary. No payments will be made from the DROP account until the member terminates employment.

8.   **DROP Account Payment Options** – Following the termination of a participant's employment, the participant shall select one of the following options to begin to receive payment from his/her DROP account. Said selection shall occur no later than 30 days prior to the end of the DROP participation period or within 30 days following the termination of a participant's employment if said termination of employment occurs prior to the end of the DROP participation period:

a.   **Lump Sum** – All accrued DROP benefits, plus interest, shall be paid from the DROP in a single lump sum payment.

City 001727

    b.    **Partial Lump Sum** – A member designated portion of accrued DROP benefits, plus interest, shall be paid from the DROP in a partial lump sum payment with the remainder being directly rolled over into an eligible retirement plan.

    c.    **Direct Rollover** – All accrued DROP benefits, plus interest, shall be paid from the DROP directly to the custodian of an eligible retirement plan.

    d.    Other method(s) of payment that are in compliance with the Internal Revenue Code and adopted by the Pension Board of Trustees.

**9.**    **Death of DROP Participant** – If a DROP member dies before his/her account balances are paid out in full, the participant member's designated beneficiary shall have the same rights as the member to elect and receive the pay-out options set forth in Paragraph 8, above. DROP payments to a beneficiary shall be in addition to any other retirement benefits payable to the beneficiary.

**10.**    **Administration of DROP Accounts**

    a.    The Pension Board of Trustees shall make such administrative rules as are necessary for the efficient operation of DROP but shall neither create any rule that is inconsistent with the legislation creating the DROP, nor any rule that would be a mandatory subject of collective bargaining.

    b.    At all times, the DROP will be administered so that the Plan remains qualified under the Internal Revenue Code and is in compliance with the Internal Revenue Code and applicable laws and regulations.

11.    If any provision of this DROP should be found invalid, unlawful, or not enforceable by reason of any existing or subsequently enacted legislation, or by judicial authority, or by an IRS regulation/ruling, the City and the Union agree to meet within 30 days of such determination for the purpose of negotiating a resolution to the invalid provision(s).

In the event that provisions of the Internal Revenue Code operate to limit the benefit amount of employee coverage by the pension provision incorporated in this Agreement to an amount less than set forth in the pension Plan then the City and the Union shall negotiate a method to compensate the affected employee for the difference between the normal pension benefit and the limits allowed by the Internal Revenue Code provided that no such resolution shall jeopardize the exempt status of the Plan under the Internal Revenue Code.

12.    A member who elects to participate in the DROP shall retain the earned balance of accrued sick and vacation leave as of date of entry into the DROP, and shall continue to earn sick and vacation leave during the DROP period, in accordance with the stipulations set forth in the collective bargaining agreement between the City and FOP. While in the DROP, the member shall have the one-time option of receiving payment for accrued sick and/or vacation leave, up to the maximum payout upon separation of

City 001728

employment allowed by the collective bargaining agreement between the City and FOP, provided that the employee shall retain at least one hundred twenty (120) hours of accrued sick leave after such payment. The one-time election to receive payment of leave balances shall be made in any one year of the DROP, by notifying the City no later than August 31 of that year. Employees may request such payment prior to entry into the DROP, but must be in the DROP at the time of payout. Payment will be made on the second pay period of February of the following year. Upon final separation from employment with the City, a member who has participated in the DROP shall be eligible to receive payment for the balance of all accrued sick and vacation leave as of the date of final separation, up to the maximum provided in the collective bargaining agreement, as reduced by the prior payout, if any. In no event shall payments for accrued sick or vacation leave be included in a member's earnings for the purposes of the plan.

D.   Pension benefits for employees hired prior to July 14, 2010; all changes effective September 30, 2013, unless otherwise specified:

   1.   The benefit multiplier shall be three percent (3%) for each year of creditable service for the first twenty (20) years of service, and four percent (4%) for each year of creditable service after twenty (20) years of creditable service.

   2.   The normal retirement date shall be as provided in the current pension plan, except that a member must attain the age of 47 to be eligible for "Rule of 70" retirement or reach the 85% benefit cap, regardless of age.

   3.   The final average monthly earnings (FAME) shall be based on the member's two (2) highest paid years of creditable service, prior to retirement or separation from employment. Effective September 30, 2015, the final average monthly earnings (FAME) shall be based on the member's three (3) highest paid years of creditable service, prior to retirement or separation from employment.

   4.   The retiree cost of living adjustment (COLA) shall be two and one half percent (2.5%) annually.

   5.   The maximum pension benefit shall be 85% of pensionable income, with the exception that any member who attains a benefit of 85% of pensionable income or higher as of September 30, 2013, retains the maximum benefit of 90% of pensionable income.

   6.   An employee shall be vested after completion of five (5) years of creditable service.

   7.   Ten percent (10%) employee pension contribution.

E.   Pension benefits for employees hired on or after July 14, 2010, but prior to September 30, 2013; all changes effective September 30, 2013, unless otherwise specified:

   1.   The benefit multiplier shall be three percent (3%) for each year of creditable service for the first twenty (20) years of service, and four percent (4%) for each year of creditable service after twenty (20) years of creditable service.

City 001729

2.    The normal retirement date shall be as provided in the current pension plan, except that a member must attain the age of 48 to be eligible for "Rule of 70" retirement or reach the 85% benefit cap regardless of age.

3.    The final average monthly earnings (FAME) shall be based on the Member's three (3) highest paid years of creditable service, prior to retirement or separation from employment.

4.    The retiree cost of living adjustment (COLA) shall be one and one half percent (1.5%) annually.

5.    The maximum pension benefit shall be 85% of pensionable income.

6.    An employee shall be vested after completion of five (5) years of creditable service.

7.    Ten percent (10%) employee pension contribution.

F.    Pension benefits for employees hired on or after September 30, 2013, but prior to the date of ratification of this collective bargaining agreement:

1.    The benefit multiplier shall be three percent (3%) for each year of creditable service for the first twenty (20) years of service, and four percent (4%) for each year of creditable service after twenty (20) years of creditable service.

2.    The normal retirement date shall be as provided in the current pension plan, except that a member must attain the age of 48 to be eligible for "Rule of 70" retirement or reach the 85% benefit cap regardless of age.

3.    The final average monthly earnings (FAME) shall be based on the Member's five (5) highest paid years of creditable service, prior to retirement or separation from employment.

4.    The retiree cost of living adjustment (COLA) shall be one and one half percent (1.5%) annually.

5.    The maximum pension benefit shall be 85% of pensionable income.

6.    An employee shall be vested after completion of five (5) years of creditable service.

7.    Ten and one half percent (10.5%) employee pension contribution.

G.    Pension benefits for employees hired after the date of ratification of this collective bargaining agreement:

1.    The benefit multiplier shall be three percent (3%) for each year of creditable service for the first twenty (20) years of service, and four percent (4%) for each year of creditable service after twenty (20) years of creditable service.

2.    The normal retirement age shall be 52; however, under "Rule of 70" retirement, a member must attain a minimum age of 48 or reach the 85% benefit cap regardless of age.

3.    The final average monthly earnings (FAME) shall be based on the Member's five (5) highest paid years of creditable service, prior to retirement or separation from employment.

City 001730

4. The retiree cost of living adjustment (COLA) shall be one- and one-half percent (1.5%) annually.

5. The maximum pension benefit shall be 85% of pensionable income.

6. An employee shall be vested after completion of five (5) years of creditable service. Employees hired after the date of ratification of this agreement shall become vested after completion of ten (10) years of creditable service.

7. Ten- and one-half percent (10.5%) employee pension contribution.

8. Employees hired after the date of ratification of this agreement shall not be credited with any prior creditable time in the Miami Beach General Employee Pension Plan.

The pension breakdowns above are for illustrative purposes and do not encompass all pension benefits afforded to respective members. The full itemization of pension benefits is available in the plan summary for the Fire and Police Pension Plan, as well as the Fire and Police Pension Ordinance.

### Section 8.24 – Premium Pay Supplement Contingent Upon the Department Obtaining and Maintaining Certain Accreditations.

In recognition for obtaining and maintaining the accreditation described below, the following premium pay supplement will be paid under the following terms:

a) All bargaining unit members shall be paid a premium pay supplement of $20.00 per pay period for as long as the Police Department maintains Accreditation by the Commission on Accreditation for Law Enforcement Agencies (CALEA).

If the accreditation provided for above is discontinued for reasons unrelated to the action or inaction of bargaining unit members, then the supplement shall continue.

### Section 8.25.  Buyback of Probationary Time.  Employees hired prior to ratification of this agreement may elect, by written notice served on the Board of Trustees, to receive creditable pension service time for any or all of their time served as probationary police officers.  In order to receive such creditable pension service time, employees should be allowed to purchase any or all of such time through the use of accrued annual leave, sick leave, cash or any combination thereof.  In the event such purchase is not made within six months of successful completion of probationary period, the amount paid shall include interest at the rate of three percent (3%) per annum excluding first six (6) months. Effective upon ratification, all newly hired employees shall participate in the pension plan upon date of hire.

City 001731

**Section 8.26 – "Me Too" with the IAFF**

The FOP reserves the right to a "me too" agreement with the IAFF should the City modify the IAFF agreement on parallel issues, with the exception of Court time and Alternate Holiday Pay.

**Section 8.27 – CJSTC Police Instructor Incentive Pay**

The City will pay, under the terms stated in this section, an incentive pay of two and one-half percent (2.5%) of the officer's base pay (as stated below) for up to a maximum of seventy-five (75) police officers who obtain and maintain certification from the Criminal Justice Standards and Training Council (CJSTC) as Police Instructors:

a) Effective upon ratification of this Agreement, no more than seventy-five (75) FOP employees will be eligible to receive the two and one-half percent (2.5%) Police Instructor Certification pay.

b) Additional FOP employees (up to the seventy-five(75) employees maximum) must be qualified for the incentive pay by meeting all of the following requirements: (1) a minimum of six (6) years of full-time experience as a certified law enforcement officer employed by a State, County or Municipal Police Department; and (2) passing the required CJSTC Police Instructor Training Course; and (3) have no record of disciplinary action during the twelve (12) month preceding the date of application for the benefit. (4) Employees must teach a minimum of two classes per calendar year. FOP employees will qualify (not to exceed the seventy-five (75) employee cap) on a first come basis, based on the date of each employee's submission of the completed written request to the Police Chief or designee.

c) Newly qualified FOP employees (up to the seventy-five (75) maximum limit), shall start receiving their two and one-half percent (2.5%) pay on the next payroll period beginning after the FOP employee has submitted to the Police Chief (or designee) a written request that includes a copy of the CJSTC Instructor Certification, and proof that he/she has met all other requirements as set forth in this section.

d) Employees shall remain solely responsible for obtaining and maintaining a State Certified CJSTC Certificate. All costs involved in obtaining and/or maintaining the certification shall remain the responsibility of the employee. Failure to have a current certification shall constitute an automatic disqualification from the two and one-half percent (2.5%) incentive pay.

e) The Chief of Police may remove an employee from the CJSTC certified police instructor roster after two (2) incidents wherein the employee refuses or fails to train when requested or exhibits poor performance as a trainer. Such removal from the roster shall

City 001732

constitute an automatic termination of the two and one-half percent (2.5%) instructor incentive pay.  After the first incident wherein the employee refuses or fails to train when requested or exhibits poor performance as a trainer, the Chief of Police shall provide notice to the employee, with a copy to the Union, advising that the second incident will result in his or her removal from the CJSTC certified police instructor roster and the cessation of the concomitant incentive pay.  After the second incident, the employee shall be removed from the CJSTC certified police instructor roster and the concomitant incentive pay shall be terminated, effective on the date of the second incident.

f) The value of the two and one-half percent (2.5%) incentive pay shall be determined based upon only the base wage of the officer, i.e. no additional incentives or other extra payments or benefits are included in the two and one-half percent (2.5%) pay. The total incentive pay for the Police Instructor Certification benefit will remain at two and one-half percent (2.5%) regardless of any additional certifications that the FOP employee may receive through the CJSTC.

## Section 8.28 – Second Language Pay

Employees who are conversationally proficient in a second of the following languages:  Spanish, Creole, Portuguese, Hebrew, French, Russian, German, Cantonese, Mandarin, Italian, Czech, Korean, or American Sign Language; shall be eligible to receive second language pay equal to two and one-half percent (2.5%) of their biweekly base pay. Proficiency will be determined by an employee obtaining a minimum rating of level 9 on the "Speaking and Listening Assessment" test administered by ALTA Language Services, Inc. via telephone and proctored by the Police Administration. The test may be scheduled with at least seven (7) work days' notice to the Police Administration. The employee will bear the cost of paying for the test.  The employee will be subject to requalification for the pay supplement every five (5) years.  Second language pay shall not be considered as pensionable earnings. If ALTA Language Services, Inc., no longer administers the aforementioned types of tests, there will be a re-opener in order for the City, with Union input, to select a new testing services provider.

## Section 8.29 – Arson Investigator (Certified)

Employees who perform arson investigation work, as designated by the Chief of Police, and are certified by the State of Florida as arson investigators, shall receive an additional five percent (5%) of their biweekly base pay, whenever assigned to perform arson investigation work.

## Section 8.30 – Arson Investigator (Trainee)

Employees who perform arson investigation work, as designated by the Chief of Police, and are in the process of obtaining their certification from the State of Florida as arson investigators,

City 001733

shall receive an additional two- and one-half percent (2.5%) of their base pay whenever assigned to perform arson investigation work.

### Section 8.31 – Drug Recognition Expert (DRE)

Employees certified as drug recognition experts (DRE), as designated by the Chief of Police, shall receive an additional five percent (5%) of their base pay upon receipt of their drug recognition expert certification.

### Section 8.32 – CJIS Pay

Effective the first full pay period upon ratification, employees who maintain their Criminal Justice Information Systems (CJIS) certification shall have an additional two percent (2%) of their base pay. Effective April 1, 2020, employees who maintain their Criminal Justice Information Systems (CJIS) certification shall have an additional two percent (2%) of their base pay for a total of four percent (4%).

### Section 8.33 – Crisis Intervention Team (CIT)

Effective the first full pay period upon ratification, employees who have already attended and passed the 40-hour crisis intervention team (CIT) training shall receive an additional two and a half percent (2.5%) of their base pay (non-pensionable).  Employees who attend this training after ratification of this Agreement must be vested in order to qualify for this pay. Employees who qualify for this pay will have to attend refresher training as directed by the Chief of Police to maintain their qualification for CIT pay.

### Section 8.34 – Marine Pay

Effective the first full pay period upon ratification, any employee who is assigned to the marine patrol unit on a full-time basis shall receive assignment pay equal to five percent (5%) of their biweekly base pay.

City 001734

**ARTICLE 9**
**FOP HEALTH TRUST**

**Section 9.1 –**

The City will continue to fund the current contribution amount for health care.     As of January 1, 2019, the City's contributions shall be:

Single:                                                    $662.19

Family:                                                   $1623.23

Future annual increases to the City monthly contributions will be made based upon the Annual Segal Health Plan Cost Trend Survey for Open Access PPOs/POS Plans. The increases shall be effective January 1 of each year beginning January 1, 2020. In no event shall the City monthly contributions be less than the prior year, even if the trend rate is negative.

Audited financial disclosure reports are to be presented from the Trust to the City Manager's designee for Labor Relations no later than March 1st of each year.

The City will make payments to the TRUST by the 15th of the month for the previous month.

In addition:

   a) For all current retirees and active employees on the payroll as of the date of ratification of this Agreement, all employees presently in the DROP, and all eligible dependents under the current eligibility rules, the City contribution for those current retirees and current employees who become future retirees for health coverage shall be equal to the City's Health Trust contribution formula for active employees. Furthermore, the contributions for those current retirees and current employees who become future retirees and their eligible dependents shall be no less than the current value of the contributions for active employees and their eligible dependents.  This Agreement shall be reduced to writing and made individual contracts and shall be vested benefit throughout retirement.

   b) Employees hired after July 14, 2010, who elect to be covered by the Miami Beach Fraternal Order of Police Insurance Trust Fund Plan, to the extent they choose to have medical benefits provided to them and their dependents during retirement, shall

City 001735

receive a health insurance stipend in lieu of a City contribution to the Trust on behalf of those employees after their retirement. As of September 30, 2018,the stipend shall be a monthly payment equal to $29.77 per each year of creditable service, subject to an annual increase based on the Miami-Ft. Lauderdale All Urban Consumer Price Index (U-CPI) as of September 30th of each fiscal year thereafter.  Additionally, upon separation of employment with the City, the individual's stipend shall continue to be adjusted annually every September 30th thereafter.

## Section 9.2 –

a) All eligible employees and their dependents described in Section 7 shall be eligible to enroll in the FOP Health Trust Plan and shall not be eligible to participate in the City Plan during their employ or retirement for so long as the FOP Trust exists.

b) A non-bargaining unit sworn police officer who elects to enroll in the FOP Health Plan may apply to the Trust and will be enrolled upon leave of the Trustees, and thereafter will be deemed to be a covered employee provided he or she meets the following criteria:

   1. Must be on the City Police Department Payroll at the time of enrollment;

   2. Must be an FOP member for two years (or length of time in Department if less than two years) prior to enrollment, and must maintain membership throughout the period of coverage;

   3. Must meet insurability criteria satisfactory to Trustees; and

   4. Must make the election within thirty (30) days after appointment out of the bargaining unit.

## Section 9.3 –

a) All covered employees and covered retirees shall be allowed to continue under the City's Dental Plan as it may exist.

b) The City shall also contribute to the Trust the amount of premium it is paying for term life insurance for covered employees and covered retirees.

FOP - 38

City 001736

**Section 9.4 Health Trust Plan  –**

The City shall be provided with a copy of the FOP Health Trust Plan booklet and the Trust Agreement, and any other information required by law.

**Section 9.5 Indemnification –**

The FOP shall indemnify and hold the City harmless against any claim, demand, suit, or liability, and for all legal costs arising in relation to the implementation or administration of the FOP Health Insurance Trust and Plan, except if the City's acts or omission give rise to its own liability.

**Section 9.6 Employment Eligibility –**

Employees in the bargaining unit eligible for inclusion in the Health Trust Plan must be employed at least ninety (90) days and be on the City Police Department payroll.

**Section 9.7 Post Employment Coverage –**

Employees covered by this Agreement who retire, resign, or are terminated by the City must be vested in the Police pension plan at the time of such retirement, resignation or termination in order to receive a contribution by the City towards his/her health insurance premium after such retirement, resignation or retirement.

**Section 9.8 Voluntary Benefits Plan –**

Employees in the bargaining unit shall be eligible to participate in the City's voluntary benefits plan, which may be modified by the City from time to time.  The voluntary benefits plan shall be administered by the City.

**Section 9.9 –  Post Employment Health Program (PEHP)**

Effective the first pay period ending in October 2013, all employees covered by this agreement shall contribute twenty-five dollars ($25.00) biweekly to the Post Employment Health Program (PEHP). Upon separation of employment from the City, or when participating in DROP, employees covered by this agreement shall contribute ten percent (10%) of their accrued leave payouts toward the PEHP.  Any and all fees/costs associated with administering the PEHP shall be incurred by the FOP. In no event will the City incur any costs associated with this program. Effective upon ratification of this Agreement, the Union shall determine the required employee contribution to the PEHP.  The Union will notify the City, in writing, when it desires to change the

City 001737

required employee contribution amounts, including the effective date of the change.  The Union will provide the City with at least thirty (30) days' notice prior to making such changes.

City 001738

**ARTICLE 10**
**EDUCATIONAL LEAVE AND TUITION REFUND**

Subject to applicable Personnel Rules, leave ordinances and tuition practice administrative procedures, an employee may request an educational leave of absence without pay to take a course or courses in a field related to the work assignment of said employee.

Upon ratification of this Agreement, employees covered by the bargaining unit are eligible for the tuition assistance program set forth in Resolution No. 2015-28891, adopted January 14, 2015, which provides the following levels of benefit:

Six Credit hours per semester for a total of twelve credits per calendar year will be reimbursed, as follows:

- Approved undergraduate, community college courses and non-credit/certificate courses will be reimbursed as follows:

  o 80% for courses in which the employee earns an A
  o 60% for courses in which the employee earns a B
  o 40% for courses in which the employee earns a C

- Approved graduate courses will be reimbursed as follows:

  o 80% for courses in which the employee earns an A
  o 60% for courses in which the employee earns a B

The levels of benefit identified above may be subject to change by the City Commission, but in no event shall be less than the levels of benefit identified below:

One course per semester/trimester/quarter equivalent to three credits for a total of twelve credits per calendar year will be reimbursed, as follows:

- Approved undergraduate community college courses and non-credit/certificate courses will be reimbursed at an amount not exceeding $158.25

- Approved undergraduate university courses will be reimbursed at an amount not exceeding $251.16

- Approved graduate courses will be reimbursed at an amount not exceeding $531.15

City 001739

## ARTICLE 11
## GENERAL PROVISIONS

### Section 11.1 – Safety and Health

The City and the FOP shall cooperate in matters of safety and health affecting the employees covered by this Agreement.

A voluntary law enforcement physical fitness assessment shall be established, the components of which will be mutually agreed upon between the Police Chief and the FOP President. Any employee covered by this Agreement who completes and passes the challenge shall receive a supplement of $75 per pay period effective upon ratification of this Agreement.  The challenge will be administered by the Police Department.  It will be administered on an annual basis. An employee will have thirty (30) days from the anniversary of his completion of the assessment to schedule the next assessment (for that year).  Employees must complete and pass the assessment each year in order to be eligible for continued receipt of the supplement.  Physical fitness assessment pay shall not be considered as pensionable earnings.

### Section 11.2 – FOP Activity and Non-Discrimination

Neither the City nor the FOP shall discriminate against any employee due to that employee's membership, non-membership participation, lack of participation, or activities on behalf of, or his refraining from activity on behalf of the FOP.

No employee covered by this Agreement shall be discriminated against because of race, creed, national origin, religion, sex, sexual orientation, ethnic background or age in accordance with applicable State and Federal laws.  The FOP agrees to cooperate with the City in complying with Federal, State and local laws requiring affirmative action to assure equal employment opportunity. The parties will comply with the Americans with Disabilities Act.

### Section 11.3 – Reduction In Work Force

When there is a reduction in the work force, employees will be laid off in accordance with their length of time in grade service and their ability to perform the work available and applicable veteran's preference laws.  When two or more employees have equal ability, the employee with the least amount of service will be the first one to be laid off.  When the working force is increased after a layoff, employees will be recalled in the order of seniority, with employees with greater seniority recalled first.  Notice of recall shall be sent to the employee at the last known address by registered mail or certified mail.  If an employee fails to report to work within thirty (30) days

City 001740

from date of receiving notice of recall, he shall be considered to have quit.  No new employee will be hired into the bargaining unit as long as any bargaining unit employee remains on lay-off status.

During the course of this Agreement, no employee will be laid off and no employee will be demoted (except for disciplinary demotions).

## Section 11.4 – Uniforms and Clothing Allowance

The City will continue its present policy concerning uniforms. The uniformed personnel's monthly maintenance allowance shall be sixty dollars ($60.00) per month for a total of $720.00 per year to be paid out in twenty-six (26) biweekly payments.

For those sworn employees assigned to work in civilian clothes, they shall receive a monthly allowance of eighty-five dollars ($85.00) per month for a total of $1,020.00 per year to be paid out in twenty-six (26) biweekly payments.

When transferred into the Criminal Investigation Unit or other unit requiring civilian clothes, the City will advance the employee, at his/her request, the sum of four hundred twenty five dollars ($425.00) for the purchase of clothing.  The employee affected shall agree to relinquish the eighty-five dollar ($85.00) per month clothing allowance for the following five months, and shall also agree to reimburse the City for any pro-rata amount in the event of transfer, termination, resignation, or retirement prior to completion of five (5) months in the civilian clothes assignment. If the reimbursement is caused by a transfer, the reimbursable amount shall be collected at the rate of eighty-five dollars ($85.00) per month.

## Section 11.5 – Disclosure of Records

Employees will not have information contained within any of their files, including an Internal Affairs file, disclosed to persons other than managerial and supervisory employees unless the person requesting such information (including home telephone number, address, etc.) shall complete and sign a "Request for Information" form and present proper identification, provided, however, that information which is made confidential by State or Federal Statute shall not be disclosed except in accordance with the requirements of law. The request form shall have provision for the name, address, and telephone number of the person requesting the information and the reason for the request.  A copy of any such request form completed shall be left in the employee's personnel file and the employee shall be notified in writing via the City's electronic mail system.

City 001741

## Section 11.6 – Transfers

It shall be the sole right of the Police Chief or his designee to transfer employees of the Department.  When a transfer is a change in an employee's unit assignment, reasonable advance notice as is practicable under the circumstances shall be given.  If a transfer is a permanent change in an employee's shift or days off schedule, the employee shall be notified no less than five (5) workdays prior to the transfer in order that the employee may arrange for an orderly change.

The five (5) day notice may be waived by the employee and it need not be given when unforeseen needs of the Department or emergency conditions require that temporary changes be made with little or no advance notice.

## Section 11.7 – Meeting Between Parties

At the reasonable request of either party, the FOP President, or his representative, and the City Manager, or his designee for Labor Relations, shall meet at a mutually agreed upon time and place to discuss matters that require immediate discussion.

## Section 11.8 – Negotiating Sessions

Time and dates for negotiating sessions shall be mutually agreed upon.  Up to six (6) on-duty FOP representatives shall be permitted to attend negotiating sessions without loss of pay or benefits if they were otherwise scheduled to work.

## Section 11.9 – Job Descriptions

It is understood by the parties that the duties enumerated in the job description promulgated by the City are not always specifically described and are to be construed liberally.  The City agrees to notify the FOP President via electronic mail of any change in the job description of any classification in this bargaining unit.

## Section 11.10 – Defense of Members

In the event any action for civil damages is brought against a member of the bargaining unit hereunder individually, and the City is not made a party to any such action, and if the employee hereunder is found liable and a judgment for damages is rendered against him, the City will itself or through insurance pay such damages and counsel fees for the employee providing the employee's liability results from action of the employee arising out of and in the course of his

City 001742

employment hereunder, and further providing that such judgment against the employee does not result from the wanton and willful action of the employee.

**Section 11.11 – Personnel Rules and Departmental Manual**

Copies of the Personnel Rules and Regulations will be kept by Majors and Captains whose copies will be available to members of the bargaining unit upon request.

The manual of the Police Department is provided and available to all employees in the department electronically through PowerDMS and proposed changes in said manual will be supplied to the President of the FOP or his designated representative before implementation and an opportunity to discuss the changes will be afforded.  Any changes to SOP's shall contain a detailed legislative style description of the proposed changes.

**Section 11.12 – Incorporation of Personnel Rules**

The parties agree that the City's Personnel Rules are incorporated by reference in this Agreement and made a part hereof, except where a specific Rule is in conflict with the express language of this Agreement, the language of the Agreement shall prevail.

**Section 11.13 – Medical Leave of Absence**

After this Agreement is ratified, any employee requesting time off without pay as a Medical Leave will be granted the time requested up to one (1) month, or longer at the Police Chief's discretion. Employees may use any accumulated leave time or comp time during this leave.

City 001743

**ARTICLE 12**
**SEPARABILITY**

If any provision of this Agreement is held to be in conflict with any law as finally determined by a court of competent jurisdiction, that portion of the Agreement in conflict with said law shall be inoperative and subject to immediate renegotiation for a replacement provision, but the remainder of the Agreement shall continue in full force and in effect.

City 001744

## ARTICLE 13
## TIME BANK

A Time Bank shall be authorized by the City of Miami Beach, whereby members of the bargaining unit may voluntarily donate accrued annual leave and sick leave to an FOP Time Bank  to be used as follows: (a) the President, or his designee(s), may draw from such Time Bank, thereby detaching said person(s) from the normal course of their City assigned duties in order that they may be permitted to perform duties in keeping with the obligations of the FOP to its membership, and/or (b) by FOP members pursuant to Ordinance No. 1335, and pursuant to rules and regulations to be established by the FOP that is not otherwise inconsistent with this article or Ordinance No. 1335.  The FOP President, along with the Police Chief (or designee) will establish a committee of three (3) members whose purpose is to create the rules and regulations mentioned in subpart b herein. The composition of the Time Bank Committee shall be determined as follows: the FOP President shall appoint one (1) individual to serve on the Time Bank Committee; the Police Chief (or designee) shall appoint one (1) individual that shall serve on the Time Bank Committee and both the FOP President and the Police Chief shall jointly appoint one (1) active FOP bargaining unit member to serve on the Time Bank Committee.  The Time Bank shall not be utilized for the purpose of attending collective bargaining sessions between the FOP and the City of Miami Beach.

Time will be deposited into the Time Bank only after the contributor voluntarily signs an authorization card detailing the type and amount of time to be donated.  After review by the FOP President or his representative, these cards are to be forwarded on a quarterly basis to the Police Chief for his review, and if appropriate, approval.  If approved, the Police Chief will then forward this material to the Support Services Division, who shall take appropriate action to implement the provisions of this section.

Time deposits shall be in hourly increments, with three (3) hours being the minimum amount accepted.

The President, in his own behalf or on behalf of his designee(s), shall fill out the appropriate form to be supplied by the city for each employee authorized to draw from the Time Bank.  Said form shall be submitted by the President at least five (5) days in advance of anticipated use.  This form shall also include the statement that:

"Upon deduction of time by the City, the undersigned officer agrees to hold the City harmless for any error or omissions in making said deduction or allocating the deducted time to the time pool."

This request shall be reviewed by the Police Chief, or his designee, and approved subject to the manning requirements of the department.  Such approval shall not be arbitrarily withheld.  Such approval, once having been authorized, may be rescinded subject to the manning requirements of the department.

City 001745

Time donated to the Time Bank shall be converted to the salary dollar equivalent of the donor(s), and time used shall be in salary dollar equivalents of the employee(s) using the pool time.  Time donations shall not increase in value.  For purposes of computation, only base pay and longevity will be used.  Time donated but not used will not be retrievable and will remain in the Time Bank for so long as this provision is effective.  In the event the Time Bank is discontinued, the FOP shall be entitled to use the hours remaining pursuant to the provisions of this section.

Any injury received or any accident incurred by an employee whose time is being compensated by the FOP Time Bank, shall not be considered a line-of-duty injury, nor shall such injury or accident be considered to have been incurred in the course and scope of the employee(s) employment by the City of Miami Beach within the meaning of Chapter 440, Florida Statutes, as amended.

City 001746

**ARTICLE 14**
**DRUG TESTING**

a) All employees are subject to random, unannounced testing for use of substances as set forth below. The use of legal controlled substances is permitted only when prescribed to the employee by a licensed health care provider and is properly used by the employee.

b) Upon reasonable suspicion by a lieutenant or higher ranking officer, that an employee has used a drug as defined in Florida Statutes Section 440.102(1)(c), as that section may be amended or renumbered, and as listed herein; or has used alcohol in violation of any rule, order, policy, procedure, or law; or has intentionally misused a legal controlled substance to the extent that his or her job performance is affected, shall be directed and required to submit to drug and alcohol testing.

c) Testing is subject to the following conditions:

  1. An accredited, State licensed clinical testing laboratory will be selected by the City. A split specimen will be taken. If the results are positive, and the employee challenges the results, the second portion of the split specimen will be tested at another accredited, State licensed clinical laboratory of the employee's choice and at the employee's expense. One portion will be tested by each laboratory. All positive tests for illegal or controlled substances shall be confirmed by Gas Chromatography Mass Spectrometry (GC/MS) or equivalent testing method.

  2. Testing for alcohol shall be by breath-testing unless the employee is or claims to be unable to provide an adequate sample. In such a case, a blood test will be performed. Any refusal by an employee to consent to the blood test will result in a positive result.

  3. A breath alcohol level of 0.04 or higher and it's equivalent blood test outcome shall constitute a positive result. Below are the substance categories tested for.

  4. In all cases, the employee shall fully cooperate with testing, including executing any release or authorization necessary for the City to obtain the tests results.

  5. The employee must provide a usable specimen/sample.

City 001747

| Drug | Initial Test Level | GC/MS Confirmation Test Level |
|---|---|---|
| Amphetamine | 1000 ng/ml | 500 ng/ml |
| Barbiturates | 300 ng/ml | 150 ng/ml |
| Benzodiazepines | 300 ng/ml | 150 ng/ml |
| Cocaine metabolites | 300 ng/ml | 150 ng/ml |
| Marijuana metabolites | 50 ng/ml | 15 ng/ml |
| Methadone | 300 ng/ml | 150 ng/ml |
| Methaqualone | 300 ng/ml | 150 ng/ml |
| Methylenedioxyamphetamine (MDA) Analogues | 500 ng/ml | 250 ng/ml |
| Opiates | 2000 ng/ml | 2000 ng/ml |
| Phencyclidine | 25 ng/ml | 25 ng/ml |
| Propoxyphene | 300 ng/ml | 150 ng/ml |

d) Any positive test or any refusal to submit to testing or to cooperate with testing, including executing releases or authorizations and providing multiple specimens if needed, may be grounds for termination of employment.

e) This Article supersedes any agreement, memorandum of understanding, rule, procedure, or order to the extent of any conflict therewith.

**f) Last Chance Agreement**

In the event an employee tests positive for either drugs or alcohol as the result of a random or reasonable suspicion drug/alcohol test, the following shall apply:

At the sole discretion of the City Manager, in consultation with the Police Chief, the employee may be offered a last chance agreement; said agreement does not preclude concurrent disciplinary action. If a last chance agreement is extended to the employee, after he/she is cleared to return to work by a Substance Abuse Professional (SAP) to be selected by the City, the employee shall be subject to unannounced testing administered by the City's Human Resources Department, for a period of no longer than two (2) years. An employee may only be eligible for one last chance agreement during his/her employment with the City. Employees who test positive a second time for drugs or alcohol as the result of an unannounced, random or reasonable suspicion drug/alcohol test, shall be terminated from employment with the City. A Substance Abuse Professional is a licensed physician, psychologist, social worker, employee assistance professional or certified addiction counselor with knowledge of and clinical experience in the diagnosis and treatment of alcohol and controlled substance-related disorders.

If an employee who is offered a last chance agreement has his/her certification revoked through the Florida Department of Law Enforcement, he/she shall immediately be terminated from employment with the Miami Beach Police Department and shall have no right to grieve, oppose the termination, and no right to any other position with the City.

City 001748

**ARTICLE 15**
**DISEASE PRESUMPTION**

A.  **Heart Disease Presumption**

Any condition or impairment of health of any detention or sworn officer caused by heart disease resulting in total or partial disability or death shall be presumed to have been accidental and to have been suffered in the line of duty unless the contrary be shown by satisfactory evidence; provided, however, that such detention or sworn officer shall have successfully passed a physical examination upon entering into such service as a detention or sworn officer, which examination failed to reveal any evidence of heart disease.  If at any time this Section is placed before an arbitrator for interpretation or application, what is "satisfactory evidence" shall be determined by the arbitrator.  If rights of detention or sworn officers are placed before the Bureau of Workers Compensation, then what is "satisfactory evidence" will be determined by the Bureau in accordance with Workers Compensation law.  Nothing herein shall be construed to be a waiver or limitation of any benefit provided under Florida Statute 112.18.

B.  **Infectious Disease Presumption**

Any documented post-exposure condition or impairment of health caused by Human Immunodeficiency Virus/ Acquired Immune Deficiency Syndrome (HIV/AIDS), Hepatitis C, Pulmonary Tuberculosis or Meningococcal Meningitis shall be presumed to have been accidental and to have been suffered in the line of duty, subject to the following conditions, unless the contrary be shown by competent evidence.

To qualify for the presumption, the following criteria must be met:

There must be an on-the-job documented exposure that meets scientific standards or criteria, and the significant on-the-job exposure must be stated, in writing, by a licensed medical doctor.  For example, contact with blood is not an exposure unless the employee's skin, where the contact occurred, is not intact. Additionally, the person whose blood came into contact with the employee's broken skin must have one of the blood borne infectious diseases considered herein.

Current Employees:

1.  Current employees must undergo a post-employment medical examination, administered by a qualified medical doctor to be selected by the City. The results must reveal no evidence of HIV, AIDS, Hepatitis C, Pulmonary Tuberculosis or Meningococcal Meningitis. Employees who refuse to comply with this post-employment examination requirement shall not be eligible for the presumption.

City 001749

2. Current employees shall be required to sign a City-approved medical release form authorizing the physician to provide the examination results directly to the City.

New Employees

3. New employees, hired after ratification of this agreement, must complete a pre-employment medical examination, administered by a qualified medical doctor to be selected by the City, and the results must reveal no evidence of HIV, AIDS, Hepatitis C, Pulmonary Tuberculosis or Meningococcal Meningitis.

4. New employees, whose test results reveal evidence of any of the aforementioned infectious diseases, shall not be eligible for the presumption for the disease for which they tested positive.

All current and new employees shall be tested at a health facility selected by the City.  The FOP Health Trust shall incur the cost associated with testing all current employees who are members of the Health Trust; those employees who are not members of the Health Trust shall incur the cost of their testing.  The City shall incur the cost of testing all employees hired after the ratification of this agreement.

All medical examination results, for both current and new employees, shall be released to the City's Risk Manager.

City 001750

**ARTICLE 16**
**PROMOTIONS**

**Section 16.1 –**

Advancement to the ranks of Sergeant and Lieutenant shall be by examinations that measure the knowledge, skills, and ability of personnel and by seniority.  A promotional examination will be given every two (2) years, unless the FOP President and the City Manager or his designee for Labor Relations mutually agrees to some other schedule.  Effective with the first test given after ratification, the following revisions to Article 16 shall apply.

The City agrees to a reopener with the FOP on the testing process for promotions to Sergeant and Lieutenant.

**Section 16.2 –**

Eligible applicants for the promotional examination for Sergeant and Lieutenant shall be given a two-part examination, consisting of a validated, written test, which shall comprise fifty percent (50%) of the final examination score, and an Assessment Center. The Assessment levels shall have a weight of fifty percent (50%) of the total score.  The written portion shall be given first and applicants for Sergeant or Lieutenant positions must successfully pass the written test with a raw score of seventy percent (70%) to be eligible, at a later date, to take the Assessment Center portion of the examination.  Passing scores for the Assessment Center shall be set only by the test developer.  If there are not a significant number of minorities promoted after the next round of promotional testing after the effective date of this Agreement, the parties will meet to review the respective weights and re-negotiate the Article, if necessary.

**Section 16.3 –**

All police officers who on the written test date have four (4) years of seniority from date of appointment to Police Officer or Police Officer Trainee, and performance evaluations of satisfactory or above for the preceding twenty-four (24) month period shall be eligible to take the Sergeant's test.  All Sergeants who on the written test date have two (2) years seniority from the date of appointment as Sergeant and performance evaluations of satisfactory or above for the preceding twenty-four (24) month period shall be eligible to take the Lieutenant's test.  Applicants must, in both cases, apply on or before the application cutoff date and time in accordance with Personnel Rules.

The City Manager or his designee for Human Resources may refuse to permit an applicant to take the examination on the grounds of conduct disgraceful to the Department and his/her officer

City 001751

status; or refused advancement from probationary status.  In the latter case, if at least three (3) years have elapsed since such failure of probationary advancement, such candidate will be considered qualified.  Should any applicant, so disqualified for any of these alleged reasons, contest such disqualification, he shall have access to the grievance procedure under this contract.

## Section 16.4 –

The City Manager or his designee for Human Resources shall cause to be developed validated examinations which closely measure the knowledge, skills, and abilities of a Miami Beach Sergeant of Police and a Miami Beach Lieutenant of Police, administer such examinations, and prepare a promotional register, one for Sergeants and one for Lieutenants, containing the names of persons who have passed the test, ranked in the order of such examination scores.  Promotions shall be by rank order.

The FOP shall facilitate participation of bargaining unit employees in providing information in order to conduct the job analyses and develop the tests within the time frames requested by the process; provided that such participation shall be on duty time.

## Section 16.5 – Seniority Points

   a)  0.2 point shall be added to an employee's Sergeant's passing examination score for each completed year of service, to a maximum of 25 years.

   b)  0.25 points shall be added to an employee's Lieutenant's passing examination score for each completed year in grade as a Sergeant.

## Section 16.6 – Education Points

   a)  0.02 points shall be added to an employee's Sergeants passing examination score for each completed credit of post-secondary education from an accredited institution of higher learning.

   b)  0.02 points shall be added to an employee's Lieutenants passing examination score for each completed credit of post-secondary education from an accredited institution of higher learning.

No combination of seniority and/or education points shall exceed six (6) points per employee. Seniority and education points, in accordance with the above specifications, will be added to the combined score after the candidate has successfully passed all components for the promotional

City 001752

examination.  Veteran's Preference points will be added after the addition of seniority and education points, in accordance with state law.

Example:

> (Written Examination Raw Score *0.50) + (Assessment Center Score *0.50) + Education points + Seniority points + Veterans Preference points = Final Score

## Section 16.7 – Book Committee

A committee consisting of the Human Resources Director, Police Chief, the FOP President and the test developer or their designees, along with two incumbents, one designated by the Police Chief and one designated by the FOP President,  shall select the books and test material from which technical knowledge questions on the written test and Assessment Center will be drawn. Final selection shall be made after consultation with the test developer.  Without exception, no member of the Book Committee shall be a candidate for the promotional examination for which the list is compiled.

Such selection or changes therein, shall only be made after a representative of the FOP shall have a reasonable opportunity to meet and provide input on the selection process.

The test material chosen for the written test and for the Assessment Center shall be described and announced by the City to the FOP and its members at least three (3) months before such test.

The provisions of the 2012-2015 collective bargaining agreement between the City and FOP shall remain in effect solely as it pertains to the book committee for the 2016/2017 Police Sergeant and Police Lieutenant promotional process.

Overview, Orientation, and Preparation sessions for the written test and for the Assessment Center test or the behavioral assessment test shall be given at least thirty (30) days prior to each test.

## Section 16.8 – Written Test Scoring

Within 24 hours after the administration of the written test, an applicant scoring session will be conducted.  Each examinee will be able to review a copy of his/her own answer sheet and the scoring key (for his/her use during the review session only), with the correct response, the name of the reading source and location from which each written test question was drawn.

City 001753

Challenges will be written and submitted to the test developer during a minimum of two (2) post-test review sessions occurring on separate days and conducted within ten (10) calendar days of test completion.  The Human Resources Director, FOP President and the test developer or their designees shall conclusively decide all challenges by a majority vote.

### Section 16.9 – Assessment Center Test Challenges

Upon completion of the determination of a score for the Assessment Center Test, each examinee shall be furnished with his/her test result.  Human Resources shall establish a reasonable time period within which each examinee may review his/her examination at a post-test review appointment. Challenges regarding the components of this portion of the examination must be made in writing to the test developer within ten (10) calendar days after the post-test review appointment.  The Human Resources Director, FOP President and the test developer, or their designees, shall conclusively decide all challenges by a majority vote.  For each examinee who submitted a challenge, each examinee's own challenge and response will be available no later than eight (8) weeks after the date of the last examinee's submission of challenges.

### Section 16.10 –

Promotional examinations for the position of Sergeant of Police and Lieutenant of Police will be given at least once every twenty-four (24) months, so as to provide continuous active promotional lists.  The City agrees to begin the promotional process no later than nine (9) months prior to expiration of a certified promotional list. Formal examination scores and a promotional list shall be certified and posted within two (2) weeks after completion of all challenges in Section 16.8 above.  Promotional lists shall expire twenty-four (24) months after the certification and posting of the results of the promotional examination.

### Section 16.11 –

In the event of same day promotions, seniority rank in the new position shall be determined, in the order of standing on the promotional list.  If there is a tie in the final scores that places more than one examinee in the same position on the promotional list, these examinee's ranking order on the promotional list shall be determined in the order of the examinee's seniority in the rank that they presently hold (i.e., a tie score between two (2) sergeants will be determined by awarding the highest ranking to the examinee with the most seniority as a sergeant, and a tie score between two (2) officers will be determined by awarding the higher ranking to the examinee with the most seniority as an officer, etc.).

City 001754

**Section 16.12 – Promotional Eligibility for Employees Under Investigation**

An employee under any type of investigation who has been relieved of duty, with or without pay, shall be removed from any promotional eligibility list and will be bypassed for promotion.  Upon conclusion of the investigation:

1(a).     If an employee is bypassed for promotion pursuant to this article, and the charge(s) leading to the investigation are found to be anything other than substantiated, or, if the employee receives discipline less than a one (1) day suspension without pay, he or she shall be made whole in every respect, including promotion, compensation and seniority, irrespective of whether an active eligibility list is in effect upon conclusion of the investigation.

1(b).   If an employee is removed from the eligibility list pursuant to this article, and the charge(s) leading to the investigation are found to be anything other than substantiated, or, if the employee receives discipline less than a one (1) day suspension without pay, he or she shall be returned to their position on the eligibility list, provided the list is still in effect (active) upon conclusion of the investigation.

2.       If the charge(s) leading to the investigation are found to be substantiated and result in discipline consisting of a one (1) day suspension without pay or greater, the employee shall continue to be removed from any promotional eligibility list and will be bypassed for promotion. In such case, the employee will be eligible to apply and compete for promotion in subsequent testing cycles without limitation.

City 001755

**ARTICLE 17**
**FOP PRESIDENT**

**Section 17.1 –**

The Miami Beach Fraternal Order of Police, William Nichols Lodge No. 8, Lodge President shall have the option, for each fiscal year, of closed "D.D." (Detached Duty), as outlined in Section 17.2 below, or to conduct union business (under the conditions described in Section 17.2 below), through the use of a time bank.  The FOP President shall notify the Police Chief in writing by September 15 of each contract year, whether he or she elects to utilize the 1500 hour time back provision or the D.D. provisions contained in Section 17.2 below, during the following contract year.  Unused time bank hours from one contract year shall rollover to the next contract year, not to exceed a total maximum of 3000 hours per contract year.  Time for attendance at negotiations for a successor agreement is addressed in Article 11.8 of this Agreement.

**Section 17.2 –**

The Miami Beach Fraternal Order of Police, Lodge No. 8, Lodge President shall be released and detached from full time duties as a sworn law enforcement officer while serving as Lodge President and shall be carried full-time in a pay status to be shown on the payroll as "D.D." (Detached Duty).  The following conditions shall apply:

a)  For the purpose of recording time, the Lodge President will notify the Police Chief of all absences, including vacations, sick leave, meeting attendances, out of town trips, etc. The Lodge President shall be required to work a 40-hour workweek.

b)  The Lodge President will be available at the FOP office currently located at 999 11th Street, Miami Beach, Florida 33139, for consultation with the Police Department Management or the City Administrators between normal working hours.

c)  Should the Lodge President wish to change offices, (s)he will notify the Police Chief, in writing, at least five (5) working days prior to the proposed change.  Said notice will include the address and the telephone number of the new office for the FOP Lodge President.

d)  In the absence of the Lodge President, the Lodge President's designee may represent the Fraternal Order of Police.

City 001756

e)   The FOP will not send additional employees in a pay status to attend City Commission or Personnel Board meetings without approval of the Police Chief or his designee.

f)   All applicable Miami Beach Police Department rules, regulations and order shall apply to the person who is the President of the Lodge and on D.D.

**Section 17.3 –**

The Management of the Miami Beach Police Department or the City Administration reserves the right to rescind the provisions of this Article in the event that it is found to be illegal.  Canceling the Article shall not preclude further discussions of any Lodge Presidents' release for Union business.

FOP - 59

City 001757

**ARTICLE 18**
**COMPENSATORY TIME**

Employees shall no longer accrue more than 150 hours of compensatory time in a calendar year. Employees will not be permitted to have more than 240 hours of compensatory time in their time bank. Employees assigned to the Motor Unit will continue to be able to accrue 320 hours of compensatory time as per the Settlement Agreement.

City 001758

**ARTICLE 19**
**ENTIRE AGREEMENT**

The parties acknowledge that during the negotiations which resulted in this Agreement, each had the unlimited right and opportunity to make demands and proposals with respect to any subject or matter not removed by law from the area of collective bargaining, and that the understandings and agreements arrived at by the parties after the exercise of that right and opportunity are set forth in this Agreement.  Therefore, the City and the FOP, for the duration of this Agreement, except as provided in the Florida Statutes, or as specifically excepted by provisions of this Agreement, each voluntarily and unqualifiedly waives the right, and each agrees that the other shall not be obligated to bargain collectively with respect to any subject or matter referred to, or covered in this Agreement, or with respect to any subject or matter referred to, or with respect to any subject or matter not specifically referred to, or covered in this Agreement, even though such subject or matters may not have been within the knowledge or contemplation of either or both of the parties at the time they negotiated or signed this Agreement.  This Article shall not be construed to in any way limit or restrict the parties from negotiating, as provided in the Florida Laws, or any succeeding agreement to take effect upon the termination of this Agreement or any succeeding term of this Agreement.

City 001759

**ARTICLE 20**
**TERM OF AGREEMENT**

This Agreement shall be effective as of the 1st day of October 2018 and shall remain in full force and effect until the 30th day of September, 2021.

It shall be automatically renewed from year to year thereafter unless either party shall notify the other in writing at least thirty (30) days prior to the anniversary date it desire to modify this Agreement.

EXECUTED by the parties hereto on this_____ day of _____2019.

MIAMI BEACH FRATERNAL ORDER                CITY OF MIAMI BEACH, FLORIDA
OF POLICE, LODGE NO. 8


By: _____                By: _____

    Kevin Milan                              Jimmy Morales
    FOP President                            City Manager


By: _____                By: _____

    Alejandro Bello                          Dan Gelber
    FOP Secretary                            Mayor


_____          By: _____

Approved by Vote of the City Commission        Richard Clements
    Police Chief

on the _____day of _____, 2019.


ATTEST:


_____          Date _____

Rafael E. Granado
City Clerk

FOP - 62

## <u>FRATERNAL ORDER OF POLICE</u>
## <u>FOP LODGE NO. 8</u>
## <u>ELECTION  OF  REMEDY  FORM</u>

Grievance No. _____

1._____   I/We elect to utilize the Grievance Procedure contained in the current Contract between the City of Miami Beach, Florida, and the FOP.  In making this election, I/we understand that selection of another forum, as defined by the FOP Contract, shall bar any consideration of the Grievance under the FOP collective bargaining agreement.

2._____   I/We elect to utilize another forum for my/our grievance, and in doing so, I/we understand that this election shall bar any consideration of this matter under the FOP collective bargaining agreement.

_____        _____
Signature                                                               Date

Subject of Grievance/Appeal: _____

FOP - 63

City 001761

**Addendum:  Hearing Examiner Rules**

**HEARING EXAMINER RULES**

**SECTION 1:   REQUEST FOR HEARING:**  Any member of the bargaining unit may appeal from disciplinary action within ten (10) days after the delivery or mailing to him/her of such written notice, by filing a written request for a hearing to the Hearing Examiner or his/her designee.  If the tenth day falls on a Saturday or Sunday, he/she will have the ability to file for an appeal on the following Monday.

**SECTION 2:   DISCIPLINARY HEARINGS:**

(a)   The City Manager or his/her designee not later than ten (10) days after receipt of such appeal, shall fix a place and time for holding a public hearing within a reasonable time thereafter.  Written notice of such time and place shall be delivered or mailed promptly to both the Appellant and the Appointing Officer.

Only the Hearing Examiner may grant a continuance to either party for good and sufficient cause.  No continuance shall be granted to either party unless such request for continuance is received in writing by the City Manager or his designee at least ten (10) days prior to the date of said scheduled hearing of appeal.

(b)   The Hearing Examiner may, at the request of the Appointing Officer or the Appellant, call or request any person or records for the purpose of ascertaining the facts.

(c)   The Appointing Officer or a representative designated by him/her, shall have the right to be present at such hearing and to be represented by the City Attorney.

(d)   The Appellant shall have the right to be present at such hearing and to be represented by an attorney of his/her choice.

Said attorney shall be an attorney duly admitted and licensed to practice in the State of Florida.  In the event that the Appellant does not retain an attorney, said Appellant may have an advisor of his/her choice present. Such advisor shall not have the right to interrogate any witnesses or to enter objections to any testimony or evidence presented to the Hearing Examiner, nor may such advisor speak in the Appellant's behalf.

FOP - 64

City 001762

(e)     The findings of the Hearing Examiner shall be based upon competent substantial evidence of record.

(f)     The Appointing Officer shall have the burden of presenting evidence to support the truth of the charges as contained in the written notice.

(g)     The Appellant shall have the right to present evidence to refute the charges brought against him/her.

(h)     The Appellant shall have the right to be confronted by his/her accuser, and the Appellant and the Appointing Officer shall each have the right to cross-examine the witnesses of the other.

(i)     After both the Appointing Officer and the Appellant shall have presented their testimony and evidence, the Hearing Examiner shall receive argument in summation. The Appointing Officer shall have both the opening and closing argument.

(j)     After the completion of closing oral argument, the Hearing Examiner shall consider the testimony and evidence presented before the Hearing Examiner to determine the truth or untruth of the charges.

(k)     Within five (5) working days after the completion of the hearing, the Hearing Examiner shall issue his or her findings as to the truth or untruth of the charges in writing. The City Manager or his/her designee shall promptly deliver or mail a copy of such findings to the Appointing Officer and to the Appellant.

(l)     A copy of the written statement given the officer or employee, a copy of any reply thereto, and a copy of the findings of the Hearing Examiner shall be filed as a Public Record in the Human Resources Department.

City 001763

| Job Classification (Range) | | | | Effective First Pay Period Ending in October 2018 | | | | | | | | |
| | | | | Longevity 1=2.5% | 2=5.0% | 3=7.5% | 4=10% | 5=11% | | | | |
| | | | | 7 years | 10 years | 15 years | 20 years | 25 years | | | | |
| STEP | | 1 | 2 | 3 | A | B | C | D | E | F | G | H | I |
| 5305 | Detention Officer | | | | 45,631.56 | 48,954.62 | 52,520.26 | 56,344.86 | 60,448.70 | 64,851.28 | 69,574.18 | 74,641.32 | 78,373.36 |
| | | | | | 1,755.06 | 1,882.87 | 2,020.01 | 2,167.11 | 2,324.95 | 2,494.28 | 2,675.93 | 2,870.82 | 3,014.36 |
| | | | | | 21.94 | 23.54 | 25.25 | 27.09 | 29.06 | 31.18 | 33.45 | 35.89 | 37.68 |
| 8001 | Police Officer Trainee | 49,817.82 | 52,748.28 | 55,679.00 | | | | | | | | | |
| | | 1,916.07 | 2,028.78 | 2,141.50 | | | | | | | | | |
| | | 23.95 | 25.36 | 26.77 | | | | | | | | | |
| 5011 | Police Officer | | | | 58,609.20 | 61,541.18 | 64,606.36 | 67,949.44 | 71,290.96 | 74,880.78 | 78,531.18 | 82,493.58 | 86,618.22 |
| | | | | | 2,254.20 | 2,366.97 | 2,484.86 | 2,613.44 | 2,741.96 | 2,880.03 | 3,020.43 | 3,172.83 | 3,331.47 |
| | | | | | 28.18 | 29.59 | 31.06 | 32.67 | 34.27 | 36.00 | 37.76 | 39.66 | 41.64 |
| 5010 | Sergeant of Police | | | | | | | | | 86,577.92 | 90,907.70 | 95,488.12 | 100,262.50 |
| | | | | | | | | | | 3,329.92 | 3,496.45 | 3,672.62 | 3,856.25 |
| | | | | | | | | | | 41.62 | 43.71 | 45.91 | 48.20 |
| 5009 | Lieutenant of Police | | | | | | | | 95,488.12 | 100,193.08 | 105,266.72 | 110,527.56 | 116,054.12 |
| | | | | | | | | | 3,672.62 | 3,853.58 | 4,048.72 | 4,251.06 | 4,463.62 |
| | | | | | | | | | 45.91 | 48.17 | 50.61 | 53.14 | 55.80 |

FOP - 66

City 001764

**City of Miami Beach**
**Compensation Plan**

**Effective First Pay Period Ending in October 2020**

| Job Classification (Range) STEP | | 1 | 2 | 3 | A | B | C | D Longevity 1=2.5% 7 years | E 2=5.0% 10 years | F 3=7.5% 15 years | G 4=10% 20 years | H 5=11% 25 years | I |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5305 | Detention Officer | | | | 46,087.88 | 49,444.17 | 53,045.46 | 56,908.31 | 61,053.19 | 65,499.79 | 70,269.92 | 75,387.73 | 79,157.09 |
| | | | | | 1,772.61 | 1,901.70 | 2,040.21 | 2,188.78 | 2,348.20 | 2,519.22 | 2,702.69 | 2,899.53 | 3,044.50 |
| | | | | | 22.16 | 23.77 | 25.50 | 27.36 | 29.35 | 31.49 | 33.78 | 36.24 | 38.06 |
| 8001 | Police Officer Trainee | 50,316.00 | 53,275.76 | 56,235.79 | | | | | | | | | |
| | | 1,935.23 | 2,049.07 | 2,162.92 | | | | | | | | | |
| | | 24.19 | 25.61 | 27.04 | | | | | | | | | |
| 5011 | Police Officer | | | | 59,195.29 | 62,156.59 | 65,252.42 | 68,628.93 | 72,003.87 | 75,629.59 | 79,316.49 | 83,318.52 | 87,484.40 |
| | | | | | 2,276.74 | 2,390.64 | 2,509.71 | 2,639.57 | 2,769.38 | 2,908.83 | 3,050.63 | 3,204.56 | 3,364.78 |
| | | | | | 28.46 | 29.88 | 31.37 | 32.99 | 34.62 | 36.36 | 38.13 | 40.06 | 42.06 |
| 5010 | Sergeant of Police | | | | | | | | 87,443.70 | 91,816.78 | 96,443.00 | 101,265.13 | |
| | | | | | | | | | 3,363.22 | 3,531.41 | 3,709.35 | 3,894.81 | |
| | | | | | | | | | 42.04 | 44.14 | 46.37 | 48.69 | |
| 5009 | Lieutenant of Police | | | | | | | | 96,443.00 | 101,195.01 | 106,319.39 | 111,632.84 | 117,214.66 |
| | | | | | | | | | 3,709.35 | 3,892.12 | 4,089.21 | 4,293.57 | 4,508.26 |
| | | | | | | | | | 46.37 | 48.65 | 51.12 | 53.67 | 56.35 |

FOP - 67

City 001765

**City of Miami Beach**
**Compensation Plan**

**Effective First Pay Period Ending in October 2021**

| Job Classification (Range) | | | | | | Longevity 1=2.5% | 2=5.0% | 3=7.5% | 4=10% | 5=11% | | | | |
| STEP | | 1 | 2 | 3 | | 7 years | 10 years | 15 years | 20 years | 25 years | | | | |
| | | | | | A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5305 | Detention Officer | | | | 46,548.76 | 49,938.61 | 53,575.91 | 57,477.39 | 61,663.72 | 66,154.79 | 70,972.62 | 76,141.61 | 79,948.66 |
| | | | | | 1,790.34 | 1,920.72 | 2,060.61 | 2,210.67 | 2,371.68 | 2,544.42 | 2,729.72 | 2,928.52 | 3,074.95 |
| | | | | | 22.38 | 24.01 | 25.76 | 27.63 | 29.65 | 31.81 | 34.12 | 36.61 | 38.44 |
| 8001 | Police Officer Trainee | 50,819.16 | 53,808.52 | 56,798.15 | | | | | | | | | |
| | | 1,954.58 | 2,069.56 | 2,184.54 | | | | | | | | | |
| | | 24.43 | 25.87 | 27.31 | | | | | | | | | |
| 5011 | Police Officer | | | | 59,787.24 | 62,778.16 | 65,904.94 | 69,315.22 | 72,723.91 | 76,385.89 | 80,109.65 | 84,151.71 | 88,359.24 |
| | | | | | 2,299.51 | 2,414.54 | 2,534.81 | 2,665.97 | 2,797.07 | 2,937.92 | 3,081.14 | 3,236.60 | 3,398.43 |
| | | | | | 28.74 | 30.18 | 31.69 | 33.32 | 34.96 | 36.72 | 38.51 | 40.46 | 42.48 |
| 5010 | Sergeant of Police | | | | | | | | | 88,318.14 | 92,734.95 | 97,407.43 | 102,277.78 |
| | | | | | | | | | | 3,396.85 | 3,566.73 | 3,746.44 | 3,933.76 |
| | | | | | | | | | | 42.46 | 44.58 | 46.83 | 49.17 |
| 5009 | Lieutenant of Police | | | | | | | | 97,407.43 | 102,206.96 | 107,382.58 | 112,749.17 | 118,386.81 |
| | | | | | | | | | 3,746.44 | 3,931.04 | 4,130.10 | 4,336.51 | 4,553.34 |
| | | | | | | | | | 46.83 | 49.14 | 51.63 | 54.21 | 56.92 |

FOP - 68

City 001766

# EXHIBIT C
# TO DECLARATION OF
# MARLA ALPIZAR

| ID # | Name | Position Title | Department | Union | LCA Signed Date | Program Completion Date | LCA Start Date | LCA End Date | LCA Repeat | Fiscal Year | Comments | LCA Status |
|------|------|----------------|------------|-------|-----------------|-------------------------|----------------|-------------|------------|-------------|----------|------------|

Non-Active Last Chance Agreements

| ID # | Name | Position Title | Department | Union | LCA Signed Date | EAP | Program Completion Date | LCA Start Date | LCA End Date | LCA Reason | Fiscal Year | Comments | LCA Status |
|------|------|---------------|------------|-------|-----------------|-----|------------------------|----------------|-------------|------------|-------------|----------|------------|
| 22543 | BEN? AUDREY | CONTROL ROOM OPERATOR | PUBLIC WORKS WATER | AFSCME | 4/14/23 | ■ | ■ | 4/19/23 | 4/19/25 | | 2022-2023 | | ACTIVE |
| 24298 | CORTINA, ENRIQUE | LIFEGUARD I | FIRE OCEAN RESCUE | CWA | 11/9/23 | | | 12/18/23 | 12/18/25 | Discipline | 2022-2023 | | ACTIVE |
| 24639 | MICHAUD, ALAIN | PARKING ENFORCEMENT SPC I | PARKING ON STREET | CWA | 11/15/23 | | ■ | 2/8/24 | 2/8/26 | ■■■ | 2023-2024 | | ACTIVE |
| 19549 | CABALLERO, LESTER | LIFEGUARD I | FIRE OCEAN RESCUE | CWA | 1/24/24 | | | 3/7/24 | 3/7/26 | | 2023-2024 | | ACTIVE |

Active Last Chance Agreements

City 001956

# Final Marla Declaration

**Final Audit Report** 2024-05-29

| | |
|---|---|
| Created: | 2024-05-29 |
| By: | Michael Elkins (melkins@mlelawfirm.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAALaOT9HoCJAQ-owJpe86EXbN08R_LhVuC |

## "Final Marla Declaration" History

📄 Document created by Michael Elkins (melkins@mlelawfirm.com)
2024-05-29 - 5:52:24 PM GMT- IP address: 108.252.74.124

📧 Document emailed to Marla Alpizar (marlaalpizar@miamibeachfl.gov) for signature
2024-05-29 - 5:52:40 PM GMT

📄 Email viewed by Marla Alpizar (marlaalpizar@miamibeachfl.gov)
2024-05-29 - 11:34:54 PM GMT- IP address: 170.55.10.178

✍️ Document e-signed by Marla Alpizar (marlaalpizar@miamibeachfl.gov)
Signature Date: 2024-05-29 - 11:36:32 PM GMT - Time Source: server- IP address: 170.55.10.178

✅ Agreement completed.
2024-05-29 - 11:36:32 PM GMT

**Adobe Acrobat Sign**