UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

JESSICA GUASTO,

       Plaintiff,                                        CASE NO.: 1:22-cv-21004-MD

vs.

THE CITY OF MIAMI BEACH, FL,
a Florida municipality,

       Defendant.

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO
STRIKE PLAINTIFF'S EXPERT WITNESS AND AMENDED EXPERT REPORT AND
INCORPORATED MEMORANDUM OF LAW**

Plaintiff, JESSICA GUASTO, by and through her counsel, hereby files her Response in

Opposition to Defendant's Motion to Strike Plaintiff's Expert Witness and Amended Expert

Report and Incorporated Memorandum of Law [D.E. 72] ("Defendant's Motion") and in support

states the following:

**PRELIMINARY STATEMENT**

1.      On February 2, 2024, Plaintiff disclosed her Expert Witness, Paul M. Mason, Ph.D.

("Dr. Mason").

2.      On March 19, 2024, this Court struck Plaintiff's initial Expert Report, and provided

ten (10) days for Plaintiff to produce an amended expert report. [D.E. 52]

3.      On March 27, 2024, Plaintiff served her Amended Expert Report. [D.E. 72-1]

4.      On April 19, 2024, Defendant conducted Dr. Mason's deposition.

5.      On June 3, 2024, Defendant moved to strike Dr. Mason and his report. [D.E.72]

1

## LEGAL STANDARD

The decision to admit or exclude expert testimony is within the trial court's discretion and the court enjoys "considerable leeway" when determining the admissibility of this testimony. *See Cook v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1103 (11th Cir. 2005). As explained in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the admissibility of expert testimony is governed by Fed. R. Evid. 702. The party offering the expert testimony carries the burden of laying the proper foundation for its admission, and admissibility must be shown by a preponderance of the evidence. *See Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999); *see also United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) ("The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion, whether the proponent is the plaintiff or the defendant in a civil suit, or the government or the accused in a criminal case.").

"Under Rule 702 and Daubert, district courts must act as 'gate keepers' which admit expert testimony only if it is both reliable and relevant." *Jetaire Aero., LLC. v. Aersale, Inc.*, 2024 U.S. Dist. LEXIS 81655 at *5 (S.D. Fla. Jan. 8, 2024) (denying defendant's motion to strike two expert witnesses) (citing *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005)). The purpose of this role is "to ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). Also, in its role as "gatekeeper," its duty is not "to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003).

To facilitate this process, district courts engage in a three part inquiry to determine the admissibility of expert testimony: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is

sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *Jetaire*, 2024 U.S. Dist. LEXIS 81655 at *6-7 (citing *Hendrix ex rel. G.P. v. Evenflow Co., Inc.*, 609 F.3d 1183, 1194 (11th Cir. 2010)). The Eleventh Circuit refers to the aforementioned requirements as the "qualification," "reliability," and "helpfulness" prongs and while they "remain distinct concepts"; "the courts must take care not to conflate them." *Id*. at *7 (citing *Frazier*, 387 F.3d at 1260).

With regard to whether the methodology an expert applied to procure their testimony was valid, the court examines the following factors: "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." *Munoz v. Williams*, 2022 U.S. Dist. LEXIS 197822 at * 5 (S.D. Fla. 2022) (citing *Quiet Tech*, 326 F.3d at 1341). Notably, however, these factors do not exhaust the universe of considerations that may bear on the reliability of a given expert opinion, and a federal court should consider any additional factors that may advance its Rule 702 analysis. *Quiet Tech*, 326 F.3d at 1341 (citations omitted).

The aforementioned factors are not "a definitive checklist or test," *Daubert*, 509 U.S. at 593, but are "applied in case-specific evidentiary circumstances," *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005). While this inquiry is flexible, the Court must focus "solely on principles and methodology, not on conclusions that they generate." *Daubert*, 509 U.S. at 594-95. It is also important to note that a "district court's gatekeeper role under Daubert 'is not intended to supplant the adversary system or the role of the jury.'" *Quiet Tech*, 326 F.3d at 1341 (quoting *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001)). Rather, "[v]igorous cross-examination, presentation

of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking but admissible evidence." *Daubert*, 509 U.S. at 580; see also *Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1306 (11th Cir. 2014) ("As gatekeeper for the expert evidence presented to the jury, the judge 'must do a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'") (quoting *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010)).

## LEGAL ARGUMENT

### I.   Dr. Mason's Testimony is Admissible Under the Daubert Analysis

### A.  Dr. Mason is Qualified as an Expert Witness

"To determine whether a witness is qualified to testify as an expert regarding the matters he intends to address, a witness who possesses general knowledge of a subject may qualify as an expert despite lacking specialized training or experience, so long as his testimony would likely assist a trier of fact." *Whelan v. Royal Caribbean Cruises, Ltd.*, 976 F.Supp. 2d 1322, 1326 (S.D. Fla. 2013). Dr. Mason is qualified as an expert by "knowledge, skill, experience, training, or education" as required by Rule 702, and has a distinguished background in both the field of economics and as an expert witness. *See* D.E. 43-1; Fed. R. Evid. 702.

Dr. Mason earned a bachelor's degree in mathematics and economics, a master's degree in economics, and a Ph.D. in economics. *See* D.E. 43-1. Since embarking upon his professional career, Dr. Mason was a professor in twelve (12) subjects in the field of economics, served as the Chairman of various educational institutions' economics department, served as the Dean of multiple Universities, successfully published over 50 books and articles in the field of economics, contributed to numerous economic impact studies, and has consulted on or been an expert witness

in thousands of cases. *Id*. In fact, Dr. Mason has been qualified as an expert either in a court of law or through another tribunal "between 500 and 1,000" times during a forty (40) year period and has never failed to qualify as an expert. *See* D.E. 72-2, TR:7:19-22. Thus, Dr. Mason is qualified to testify as an expert witness.

**B.  Dr. Mason's Testimony is Helpful**

The helpfulness of expert testimony turns on "whether the proffered testimony 'concern[s] matters that are beyond the understanding of the average lay person." *Bahr* at \*5 (citing *Edwards v. Shanley*, 580 F.App'x 816, 823 (11th Cir. 2014)). Expert testimony is further considered helpful when offering something "more than what lawyers for the parties can argue in closing arguments." *Frazier*, 387 F.3d at 1262-63.

In this case, Dr. Mason is testifying to the Plaintiff's economic damages which are comprised of past lost wages, future lost wages, past lost fringe benefits, future lost fringe benefits, past lost household services, and future lost household services. *See D.E. 72-1* Calculating Plaintiff's economic losses is simply beyond the understanding of the average lay person and requires expert assistance. Thus, Dr. Mason's proffered testimony and report are necessary to evaluate Plaintiff's economic damages and explain the calculations for Plaintiff's economic loss.

As stated in Dr. Mason's report, the calculation of Plaintiff's economic loss incorporates a plethora of materials, factors, relevant information and data. *Id*. Dr. Mason and his report are helpful as Plaintiff's economic loss is sufficiently calculated and summarized. *Id*. As such, two of the three-part inquiry have been satisfied.

**C.  Dr. Mason and His Report are Reliable**

Federal Rule of Evidence 702 requires that expert testimony be based on "sufficient facts or data" and be "the product of reliable principles and methods" that have been "reliably applied…

to the facts of the case." *Riley v. Tesla, Inc.*, 603 F.Supp.3d 1259 (S.D. Fla. 2022) (citing Fed. R.

Evid. 702).

### i.    Methodology

As stated above, the Court examines four factors with regard to whether the methodology

an expert applied to procure their testimony was valid. Dr. Mason's theory has been tested. Dr.

Mason applies standard theories of economics in sorting the data provided to him, such as adjusting

salary for inflation, discounting Plaintiff's losses to present value, applying interest rates and

earning growth rates, and incorporating an average life expectancy. *See D.E. 72-1*. Further, Dr.

Mason's theory has been peer-reviewed, there is an understood rate of error in his theory, and  the

techniques Dr. Mason used are generally accepted in the community of economics.

Although Defendant's Motion states that the "methodology underlying [Dr. Mason's]

opinion [is] unreliable," Defendant failed to conduct the four-factor methodology analysis

prescribed by the Eleventh Circuit. Rather, Defendant focuses solely on the sufficiency of the facts

and data utilized by Dr. Mason. Defendant's inability to substantiate its claim that Dr. Mason's

methods were unreliable undermines their argument. Therefore, after evaluating Dr. Mason's

methodology using the relevant factors, it is evident that his methods are reliable and a non-issue.

### ii.    Sufficient Facts or Data

The next question is whether the expert considered sufficient facts or data to make the

proffered opinion reliable; however, the word "sufficient" signifies the expert may properly base

their opinion on something less than all facts and data.

Dr. Mason considered a list of materials in developing his opinions: 1) The 2020 Life

Table, National Vital Statistics Reports, Vol. 71, No. 1, August 8, 2022; 2) A document from the

FRS related to retirement eligibility for Miami-Dade County employees; 3) The July 11, 2022

estimates of Ms. Salabarria's pension post-dismissal; 4) Two documents reflecting headline inflation rates for the United States for 2019-2023; 5) W-2 and/or tax documents for 2018 through 2022; 6) A July 2023 document from FRS regarding post-retirement HIS; 7) A document from FRS regarding whether or not overtime pay counts towards retirement and DROP; 8) My coauthored Article; 9) Various data sources to compute the discount rate and earnings growth rates including www.bls.gov and Determining Economic Damages by Stephenson, MacPherson, and Martin, 2016. *See* D.E. 72-1 at p. 3.

Defendant criticized Dr. Mason's utilization of an alternative retirement system to base his calculations, however, does not successfully establish that the utilized facts and data are insufficient to produce a reliable opinion. Defendant fails to indicate any failure in considering the Florida Retirement System rather than the City Code or the CBA except for noting that the retirement plans are distinct. Dr. Mason incorporated an extensive list of facts and data, including calculations based on a State-verified retirement system and years of Plaintiff's tax records, that allowed him to generate his testimony, opinions, and reports. Therefore, the final prong of the Daubert analysis, reliability, is satisfied.

## II.     Defendant Fails to Address the Admissibility of Dr. Mason's Testimony

Dr. Mason's testimony and report are, at minimum, admissible. In *Jetaire*, the Honorable Magistrate Torres considered whether "shaky" evidence is admissible. The Honorable Magistrate Torres continued to opine that "[t]his Court will 'be careful not to conflate questions of admissibility of expert testimony with the weight appropriately to be accorded to such testimony by the fact finder.'" *Jetaire* at *12 (citing *Icarideo v. Whet Travel Inc.*, 2018 U.S. Dist. LEXIS 43356 at *31 (S.D. Fla. 2018) (denying in part a defendant's motion to strike an expert witness)).

Further, "[t]he Eleventh Circuit has determined that an objection based upon an expert

opinion's reliance on incorrect assumptions attacks the weight and persuasiveness of the testimony, not its admissibility." *Bahr v. NCL (Bah.) Ltd.*, 2021 U.S. Dist. LEXIS 199658 (S.D. Fla. 2021) (denying in part both plaintiff's motion to strike experts and defendant's motion to strike experts) (citing *Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1194 (11th Cir. 2011)).

In *Rosenfeld*, the District Court struck Plaintiff's "qualified expert who use[d] reliable testing methodology," because Defendant labelled the expert's conclusions as "imprecise and unspecific" and based on "incorrect assumption[s]." *Rosenfeld* at 1194. However, on appeal to the Eleventh Circuit, the Appeals Court overturned the District Court, determining that an expert's opinion based on incorrect assumptions was nonetheless admissible and only its "weight and persuasiveness" could be attacked. *Id*.

In Defendant's Motion, Defendant states that "Dr. Mason's incorrect assumption renders his Report utterly useless, as it's based on the wrong retirement system… therefore, the Court should strike Dr. Mason and his unreliable report." D.E. 72 at p. 7. Defendant's recognition of Dr. Mason's incorrect assumption, that Plaintiff fell under the Florida Retirement System, does not grant Defendant the right to strike Dr. Mason or his report. Instead, Defendant can challenge the weight and persuasiveness of the testimony during "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof..." *Jetaire*, 2024 U.S. Dist. LEXIS 81655 at *8.

Defendant further argues that Dr. Mason did not use sufficient facts or data in generating his testimony or report because he based certain assumptions on the Florida Retirement System instead of the City Code or the CBA. However, Dr. Mason is not required to incorporate the City Code or the CBA to provide admissible testimony on the issue of economic loss, as it is well established that alleged miscalculations, erroneous assumptions, and inconsistencies fall within

the purview of the fact-finding deliberation and are not grounds for exclusion of expert testimony.

*Mizrahi v. Yamaha Motor Corp., USA*, 2019 U.S. Dist. LEXIS 125294 at \*12 (S.D. Fla. 2019)

(citing *Quiet Tech.*, 326 F.3d at 1343-46 (affirming district court's admission of challenged expert

testimony notwithstanding alleged incorrect assumptions and calculations used by expert, failure

to consider all variables, and failure to adequately test his conclusion.)). As previously stated, Dr.

Mason based his testimony and report on sufficient facts and data, and substantiated his report

with a multitude of sources.

Therefore, Defendant's objections to Dr. Mason's reliability do not justify the exclusion of

his testimony. Instead, these objections pertain to the credibility and weight of the testimony,

which should be evaluated by the fact-finder during deliberation. Consequently, the Court should

deem Dr. Mason's testimony and report admissible.

**WHEREFORE**, Plaintiff respectfully moves this Honorable Court to Deny Defendant's

Motion in its entirety.

Dated:  Miami, Florida
        June 17, 2024

**DEREK SMITH LAW GROUP, PLLC**
*Counsel for Plaintiff*

*/s/ Daniel J. Barroukh*
Daniel J. Barroukh, Esq.
Florida Bar No.: 1049271
Derek Smith Law Group, PLLC
520 Brickell Key Drive, Suite O-301
Miami, FL 33131
Tel: (305) 946-1884
Fax: (305) 503-6741
Danielb@dereksmithlaw.com

9

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document is being

served on June 17, 2024, on all counsel of record on the service list below via e-email.


By: */s/ Daniel J. Barroukh*
Daniel J. Barroukh, Esq.


## SERVICE LIST

**CITY ATTORNEY'S OFFICE OF MIAMI BEACH**
Benjamin Z. Braun
benjaminbraun@miamibeachfl.gov
Florida Bar No.: 1017937
Henry Joseph Hunnefeld
henryhunnefeld@miamibeachfl.gov
Florida Bar No. 343811
1700 Convention Center Drive
Miami Beach, Florida 33139
Telephone: (305) 673-7470
Facsimile: (877) 673-7002

**MLE LAW**
Michael Lewis Elkins
melkins@mlelawfirm.com
Florida Bar No.: 523781
1212 NE 16th Terrace
Fort Lauderdale, FL 33304
Telephone: (954) 401-2608


*Counsel for Defendants*