**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

JESSICA GUASTO,

      Plaintiff,                              CASE NO.: 1:22-cv-21004-MD

vs.

THE CITY OF MIAMI BEACH, FL,
a Florida municipality,

      Defendant.
_____/

**PLAINTIFF'S LOCAL RULE 56(a)(2) STATEMENT OF MATERIAL FACTS AND**
**ADDITIONAL FACTS IN SUPPORT OF HER RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED**
**MEMORANDUM OF LAW**

## MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1(a)(2)

1.      Disputed. Defendant terminated Plaintiff for filing an EEOC Charge of Discrimination. *See* D.E. 69-32, Plaint. Vol. III TR:222:8-9.

2.      Undisputed.

3.      Undisputed.

4.      Undisputed.

5.      Undisputed.

6.      Undisputed.

7.      Disputed. Plaintiff did not enter into a Settlement Agreement that released all of her claims against Defendant "from the beginning of the world through the date of the First Settlement Agreement." *See* D.E. 71-4.

8.      Undisputed.

9.      Disputed. The Allegation of Employee Misconduct ("AEM") involves Plaintiff, but she is not the only individual regarded in the allegations. *See* D.E. 69-8, Exh. B to Exh. 8, Bates No City 001575. In fact, Defendant does not provide the actual AEM form, they allege a summary of the AEM form. *Id*.

10.     Disputed. Plaintiff and Nicholas Guasto ("N. Guasto") were both sent notifications, they were not notified explicitly that they were under investigation by IA in IA Case No. 2020-010. *Id*.

11.     Undisputed.

12.     Undisputed.

13.     Undisputed.

14.     Undisputed.

15.     Undisputed.

16.     Undisputed

17.     Undisputed.

18.     Undisputed.

19.     Undisputed

20.     Undisputed.

21.     Undisputed.

22.     Dispute. "Stealing time from the City" is a mischaracterization of the events that occurred.

23.     Undisputed.

24.     Undisputed.

25.     Undisputed.

26.     Undisputed.

27.     Undisputed.

28.     Undisputed.

29.     Undisputed.

30.     Undisputed.

31.     Disputed. The Last Chance Agreement is directly linked to Plaintiff's 2020 EEOC Charge via the Settlement Agreement [D.E. 71-4]. Section 2 of the Settlement Agreement is titled "EEOC Charge Withdrawn With Prejudice and Discipline." *Id*. Subsection c of the "EEOC Charge Withdrawn With Prejudice and Discipline" section states as follows: "Salabarria will execute the attached Last Chance Agreement, which contains additional provisions. The Last Chance Agreement is incorporated by reference into this agreement." [D.E. 71-4 at p.2].

32.     Disputed. Plaintiff and Steven Cosner ("Lieutenant Cosner" and/or "Cosner") worked together in the same squad, and she tried to build a rapport with all of her squad members and maintain a good working relationship with each of them. D.E. 69-17, Plaint. Vol. I TR:51:3-15.

33.     Disputed. Plaintiff and Cosner were friendly at times prior to 2015, but Cosner made unsolicited romantic gestures towards Plaintiff that she vehemently opposed, diminishing any friendship that had formed. *See* Exh. 1, Exh. 2.

34.     Disputed. Plaintiff and Cosner did not socialize outside of work and Cosner never met Plaintiff's family. D.E. 69-17, Plaint. Vol. I TR:60, 61:22-9.

35.     Disputed. Cosner never met anyone in Plaintiff's family. D.E. 69-17, Plaint. Vol. I TR:61:8-9.

36.     Disputed. Defendant takes Cosner's testimony as fact with no evidence to support his statement. Plaintiff and Cosner did not socialize outside of work. D.E. 69-17, Plaint. Vol. I TR:60:22-23.

37.     Disputed. Plaintiff and Cosner did not have a relationship. They had a friendship based on working together in a squad but did not socialize outside of work. D.E. 69-17, Plaint. Vol. I TR:51:3-15, TR:60:22-23.

38.     Disputed. Plaintiff and Cosner would pass by each other at work and he would ignore her and intentionally not acknowledge her. D.E. 69-17, Plaint. Vol. I TR:53:18-24.

39.     Undisputed.

40.     Disputed. There is no January 21, 2021 email included in Exhibit 18.

41.     Undisputed.

42.      Disputed. Both forms were available to Cosner and he intentionally selected the AAF. *See* D.E. 69-6, Cosner TR:57:6-20.

43.      Disputed. The veracity of Defendant's allegation is not a material fact, and Cosner based his violations on the same rules and regulations that he would have considered for an allegation of employee misconduct form. *See* D.E. 69-6, Cosner TR:57:18-20.

44.      Disputed. The Administrative Action Form is normally signed and completed by the individual submitting the form in addition to several others. D.E. 69-24, Lester TR:60:9-12.

45.      Disputed. Employees for Defendant "advised" Cosner to email AJ Prieto, commander of internal affairs for Defendant, his AAF. *See* Exh. 9.

46.      Disputed. The forms are not identical, as they are distinct forms, but Cosner's inscriptions were uniform on each form. *See* D.E. 71-5 at pp. 14-15; *see* Exh. 9 at pp. 2-4.

47.      Undisputed.

48.      Disputed. The Allegation of Employee Misconduct Form is normally signed and completed by the individual submitting the form. D.E. 69-24, Lester TR:60:9-12.

49.      Disputed. Cosner alleged Plaintiff violated twelve (12) Department Rules and Regulations ("DRRs"). Exh. 6. Otherwise, Plaintiff denies the brief summary provided in ¶ 49, but does not dispute it was alleged. [D.E. 69-19].

50.      Disputed. Defendant takes Cosner's testimony as fact with no evidence to support his statement.

51.      Disputed. Plaintiff clearly states that Cosner falsely accused her of allegations in retaliation for filing the EEOC Charge. D.E. 69-32, Plaint. Vol. III TR:222:5-17.

52.      Undisputed. However, Clements' implementation of Plaintiff's resignation without speaking to Plaintiff would also have been retaliatory. D.E. 69-32, Plaint. Vol. III TR:222:5-17.

53.     Undisputed. In fact, Clements forced the meeting to proceed despite denying Plaintiff an attorney. D.E. 69-24, Lester TR:35:19-20; D.E. 69-23, Ozaeta TR:49:2-14.

54.     Undisputed.

55.     Disputed. Although several FOP members were there, they did not believe they had the power to stop the meeting. D.E. 69-23, Ozaeta TR:49:15-19; TR:50-2-10. Further, President Ozaeta stated that Clements "did not want the Union attorney present." D.E. 69-23, Ozaeta TR:49:14.

56.     Disputed. Plaintiff stated that the meeting was being held in violation of Florida Statute §112.532. D.E. 69-22, Plaint. Vol. II TR:170:17-18.

57.     Disputed. Ozaeta stated that Clements would have fired Plaintiff on the spot if any Union member objected to the January 19, 2021, meeting from going forward. D.E. 69-23, Ozaeta TR:49:15-19; TR:50-2-10.

58.     Disputed. Clements denied Plaintiff an attorney at the January 19, 2021, meeting. D.E. 69-24, Lester TR:35:19-20; D.E. 69-23, Ozaeta TR:49:2-14. In fact, Clements stated that "he was going to have this meeting, but he didn't want the FOP attorney present... He did not want the Union attorney present." D.E. 69-23, Ozaeta TR:49:7-14.

59.     Disputed. Plaintiff was working on several administrative assignments, including Officer Stella's evaluation, and other work. D.E. 69-27.

60.     Disputed. Defendant's IT department checked only Plaintiff's "city issued laptop," not any personal device or handwritten notes. D.E. 69-27.

61.     Undisputed. However, this investigation was not a formal investigation, there was a brief review of Plaintiff's work laptop and nothing else. D.E. 69-16, Clements TR:97:20-24; D.E. 71-5.

6

62.     Undisputed. However, this investigation was not a formal investigation, there was a brief review of Plaintiff's work laptop and nothing else. D.E. 69-16, Clements TR:97:20-24; D.E. 71-5.

63.     Undisputed.

64.     Disputed. There is no audio or visual recording of the January 19, 2021, meeting and the memorialization was "only a summary of the events" by Chief Clements following the conclusion of the meeting. D.E. 69-27.

65.     Disputed. Defendant takes Clements' testimony as fact with no evidence to support his statement.

66.     Undisputed. However, Cosner made the decision to submit an AAF against Plaintiff, knowing that she would likely face discipline. D.E. 69-6, Cosner TR:97:13-24

67.     Undisputed. Although, the Last Chance Agreement was not intended to allow Plaintiff to be terminated for something minor, and was not intended to allow the City to implement Plaintiff's resignation for non-serious reasons. D.E. 69-13, Gibbons TR:29:2-18.

68.     Undisputed. Although, the Last Chance Agreement was not intended to allow Plaintiff to be terminated for something minor, and was not intended to allow the City to implement Plaintiff's resignation for non-serious reasons. D.E. 69-13, Gibbons TR:29:2-18.

69.     Undisputed.

70.     Disputed. The FOP did not challenge the City's decision, but there were grounds to do so. Clements denied Plaintiff an attorney at the January 19, 2021, meeting, but the FOP took no action. The FOP also did not believe they had the power to stop the January 19, 2021, meeting from taking place. D.E. 69-24, Lester TR:35:19-20; D.E. 69-23, Ozaeta TR:49:2-14.

71.     Disputed. Plaintiff is the only former FOP member who has a non-active Last Chance Agreement. Bates No. 001955. Further, there is no active Last Chance Agreement for an FOP member. Bates No. 001956.

72.     Undisputed.

73.     Undisputed.

74.     Undisputed. However, Nicholas Guasto testified that Richard Clements was going to fire Plaintiff if she did not withdraw or settle her EEOC Charge. Exh. 3 at ¶¶ 7-8.

75.     Undisputed. Chief Clements even threatened Nicholas Guasto with his and Plaintiff's termination if Plaintiff did not settle her 2020 EEOC Charge of Discrimination. Exh. 3.

76.     Undisputed.

77.     Undisputed.

78.     Undisputed.

79.     Undisputed

80.     Disputed. Defendant did not include an accurate representation of her testimony, as she stated, "[a]t this moment, I don't know what that means." D.E. 69-32, Plaint. Vol. III TR:186:1-3.

81.     Disputed. Plaintiff was asked a compound, ambiguous question that called for a legal conclusion in other words than Defendant states in fact 81. D.E. 69-32, Plaint. Vol. III TR:221:14-25.

82.     Disputed. Plaintiff was not asked to clarify, she was asked additional compound and ambiguous questions. D.E. 69-32, Plaint. Vol. III TR:222:10-24.

83.     Undisputed. However, Plaintiff was being asked a to reach a legal conclusion via compound and ambiguous questions. D.E. 69-32, Plaint. Vol. III TR:222:10-24.

84.     Disputed. This generalizes Plaintiff's testimony as she clearly stated that Cosner's allegations are false. D.E. 69-32, Plaint. Vol. III TR:198:10-12.

85.     Undisputed. Plaintiff stated that Cosner's allegations were false, and she was responding to an ambiguous question that called for speculation. D.E. 69-32, Plaint. Vol. III TR:198:10-12, TR:213:17-21.

## ADDITIONAL FACTS PURSUANT TO LOCAL RULE 56.1(b)(2)(d)

**Plaintiff Rejects Steven Cosner's Romantic Advances**

86.     On or about February 14, 2014, Cosner gave Plaintiff a Valentine's Day card that depicted a man with a box of chocolate in his lap, with an outline of a chocolate penis, telling the woman beside him to "try the one in the center, it's cream filled." Exh. 1; D.E. 69-6, Cosner TR:28:16-17. Cosner wrote "Love you Sweetie!! xxoo" on the card and left his initial next to the message. Exh. 1; D.E. 69-6, Cosner TR:28:12.

87.     Plaintiff told Cosner that she did not want any type of romantic relationship with him, but he provided the grotesque card to her. D.E. 69-18, Plaint. Vol. I TR:52:15-18. At the time, Plaintiff was 22 years old and Cosner was in his 40s, and Cosner's romantic gestures were unwelcomed and unwanted. D.E. 69-18, Plaint. Vol. I TR:52:18, 21-23.

88.     Cosner's romantic gestures continued as he ordered Plaintiff a card in or around April of 2014 that states, "Jessica, I hope this is the best birthday yet. I love you with all my heart and am so happy you have come into my life. You are my princess. I love you babydoll. Love Steve." Exh. 2; D.E. 69-6, Cosner TR:31:17-18, 25; D.E. 69-6, Cosner TR:32:1-2.

89.     Cosner testified that Plaintiff meant a lot to him. D.E. 69-6, Cosner TR:32:7-11. In fact, Cosner stated that although Plaintiff was not the reason for his divorce, she was a catalyst that helped him take the step in separating from his ex-wife. D.E. 69-6, Cosner TR:34:11-14. When Cosner saw Plaintiff with another man, he got fed up with it and frustrated with Plaintiff. D.E. 69-6, Cosner TR:33:3, 22.

90.     Plaintiff continued to reject Cosner's advances, but he could not take no for an answer. D.E. 69-18, Plaint. Vol. I TR:53:17-18. Finally, Plaintiff made it clear that she was not welcoming his advances, and Cosner did not take the rejection well. D.E. 69-18, Plaint. Vol. I

TR:53:20. As a result of the rejection, Plaintiff and Cosner stopped talking, and Cosner intentionally ignored Plaintiff and would not even acknowledge her. D.E. 69-18, Plaint. Vol. I TR:53:22-24.

**Nicholas Guasto Declaration**

91.     Nicholas Guasto ("N. Guasto") and Plaintiff started dating in or around August of 2019, got married in or around January of 2021, and got divorced in or around June of 2023. D.E. 69-31, N. Guasto TR:9:6-11.

92.     N. Guasto met with Clements on or around September 15, 2020, to discuss internal affairs ("IA") case 2020-10 that both he and Plaintiff were subjects of. Exh. 3. Clements steered the conversation towards how he wanted to resolve the case, including the withdrawal of Plaintiff's 2020 EEOC Charge in exchange for a reduction in punishment. Exh. 3. at ¶ 6.

93.     On or around September 22, 2020, N. Guasto met with Clements, where "[t]he [Clements] again asked for Jessica's 2020 EEOC charge to be dropped in return for lesser punishment," including the possibility of avoiding termination. Exh. 3 at ¶¶ 7-8. In fact, Clements told N. Guasto that "he wanted to resolve the [IA] case without giving a statement but would only be able to do that if Jessica dropped the EEOC Charge." Exh. 3 at ¶ 8.

94.     Later that same day, Clements had a third-party call N. Guasto and loop Clements into the call to avoid any record of a direct phone call. Exh. 3 at ¶ 9. Clements again insisted that Plaintiff drop her 2020 EEOC Charge and stated that he would deny having this meeting. Exh. 3 at ¶¶ 8-9. "Again, Clements stressed the importance of dismissing the EEOC charge, in exchange for consideration." Exh. 3 at ¶ 10.

95.     On or around September 24, 2020, Clements again called N. Guasto via an intermediate third-party to avoid any record of a direct phone call. Exh. 3 at ¶ 13. On this phone

call, Clements "attacked and yelled at" N. Guasto for "getting him in trouble with Michael Elkins because Elkins thought we had spoken about the case, which we had." Exh. 3 at ¶ 14. Clements again told N. Guasto that he would not be able to help N. Guasto if he did not "do things as [Clements] said to do them." Exh. 3 at ¶ 16.

**<u>Steven Cosner Improperly Alleges Plaintiff Committed Twelve (12) Department Violations</u>**

96.     On or around December 27, 2020, Plaintiff worked her first shift for Defendant following the settlement of her 2020 EEOC Charge. Plaintiff was assigned an additional overtime shift that night to be supervised by Cosner on December 28, 2020 from 0000-0600 (12:00 A.M until 6:00 A.M.). D.E. 69-19. This was the very first time that Cosner supervised Plaintiff. D.E. 69-6, Cosner TR:39:2-12.

97.     During the shift, Cosner was nearly four (4) hours late in assigning Plaintiff her work, as he "forgot" to send it to her. Exh. 4. Cosner was supposed to send Plaintiff instructions to pass along to her subordinates. Exh. 4. Plaintiff could not have sent the assignments to her subordinates prior to 3:55 A.M. D.E. 69-6, Cosner TR:67:14-15. Cosner agrees that he could have sent Plaintiff the instructions earlier. *Id*., TR:68:7-9.

98.     Regardless, following receipt of Cosner's email, Plaintiff completed the tasks assigned to her. Exh. 5. Plaintiff contacted her officers, sent Cosner the midnight shift statistics and the details of the officers' location, and went to Area 3, all of which were assigned tasks. D.E. 69-6, Cosner TR:101:8-15.

99.     However, on or around December 30, 2020, Cosner wrote an Administrative Action Form ("AAF"), claiming Plaintiff violated twelve (12) Department Rules and Regulations ("DRRs") during her shift. Exh. 6. Cosner knew that filing an AAF would likely lead to Plaintiff being disciplined. D.E. 69-6, Cosner TR:97:13-24.

100.    Cosner was never trained in interpreting any DRRs. D.E. 69-6, Cosner TR:58:22-24. Cosner never reviewed the DRRs with anybody. D.E. 69-6, Cosner TR:57:10-15. Cosner believed that the DRRs were "simple English." D.E. 69-6, Cosner TR:59:6.

101.    In Cosner's AAF, he cited Plaintiff for violating DRR 6.5.4, which states, in relevant part, that "no employee shall intentionally make false reports." Exh. 6, Exh. 7. However, Cosner admitted to never asking Plaintiff if she intentionally made a false report. D.E. 69-6, Cosner TR:64:15-24.

102.    In Cosner's AAF, he cited Plaintiff for violating DRR 6.15.6. Exh. 6. Cosner explained that Plaintiff violated DRR 6.15.6 for "the fact that she was at the station and not in the zone that she was assigned at to supervise the officers as they were handling the calls and details in that zone, she's failing to supervise." D.E. 69-6, Cosner TR:75:6-10. Yet, when Cosner was asked to list other Sergeants, not Plaintiff, who were assigned to go to an area and failed to appear in that area, Cosner stated, "I'd estimate somewhere around 75, 80 names right now, I can't do that." D.E. 69-6, Cosner TR:76:5-6. Cosner admitted to accusing Plaintiff of violating a DRR for standard and routine behavior that almost every Sergeant commits. *Id*.

103.    In Cosner's AAF, he cited Plaintiff for violating DRR 6.15.9. Exh. 6. Cosner explained that Plaintiff violated DRR 6.15.9 "because she was at the station, was unable to get ahold of her on the radio or by the phone, inattentive to the duties that she was supposed to be taking care of." D.E. 69-6, Cosner TR:83:3-7. However, Cosner then stated he never asked her if she was working while at the station, and she could have been working, which would have explained her unavailability. D.E. 69-6, Cosner TR:83:8-14.

104.    In Cosner's AAF, he cited Plaintiff for violating DRR 6.34.1, "employees will not knowingly make untrue statements, except as authorized in the performance of duties." Exh. 6;

Exh 7. Cosner admits that he never asked Plaintiff if she knowingly made an untrue statement. D.E. 69-6, Cosner TR:120:20-22.

105.     Cosner further admitted to including an incorrect DRR, 6.28.3.6, on his AAF form, which was never corrected, "that's obviously an error on the DRR that was chosen for the AAF." Exh. 6; D.E. 69-6, Cosner TR:115:16-17.

106.     Cosner ultimately admits that DRR violations can be alleged based on a subjective analysis or general interpretation. D.E. 69-6, Cosner TR:130:10-20.

107.     Cosner sent his AAF directly to Michael Elkins and AJ Prieto instead of the chain of command, which is not standard procedure. Exh. 8; Exh. 9; D.E. 69-24, Lester TR:60:15-21.

108.     There was no internal affairs investigation into Cosner's AAF, which is not standard procedure. D.E. 69-16, Clements TR:98:19-24; 69-23, Ozaeta TR:24-2.

**January 19, 2021 Meeting**

109.     Clements denied Plaintiff an attorney at the January 19, 2021, meeting. D.E. 69-24, Lester TR:35:19-20; D.E. 69-23, Ozaeta TR:49:2-14. In fact, Clements stated that "he was going to have this meeting, but he didn't want the FOP attorney present... He did not want the Union attorney present." D.E. 69-23, Ozaeta TR:49:7-14.

110.     Clements said he would have fired Plaintiff on the spot if any Union member objected to the January 19, 2021, meeting from going forward. D.E. 69-23, Ozaeta TR:49:15-19; TR:50-2-10.

**Clements Invokes Plaintiff's Letter of Resignation**

111.     Clements specifically cites to Cosner's unverified, inaccurate, and subjective accusation that Plaintiff violated twelve (12) DRRs when implementing her letter of resignation. D.E. 69-27.

Dated:  Miami, Florida
       July 8, 2024

**DEREK SMITH LAW GROUP, PLLC**
*Counsel for Plaintiff*


*/s/ Daniel J. Barroukh*
Daniel J. Barroukh, Esq.
Florida Bar No.: 1049271
Derek Smith Law Group, PLLC
520 Brickell Key Drive, Suite O-301
Miami, FL 33131
Tel: (305) 946-1884
Fax: (305) 503-6741
Danielb@dereksmithlaw.com

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing document is being

served on July 8, 2024, on all counsel of record on the service list below via e-mail.


By: <u>*/s/ Daniel J. Barroukh*</u>
          Daniel J. Barroukh, Esq.


## <u>SERVICE LIST</u>

**CITY ATTORNEY'S OFFICE OF MIAMI BEACH**
Benjamin Z. Braun
benjaminbraun@miamibeachfl.gov
Florida Bar No.: 1017937
Henry Joseph Hunnefeld
henryhunnefeld@miamibeachfl.gov
Florida Bar No. 343811
1700 Convention Center Drive
Miami Beach, Florida 33139
Telephone: (305) 673-7470
Facsimile: (877) 673-7002

**MLE LAW**
Michael Lewis Elkins
melkins@mlelawfirm.com
Florida Bar No.: 523781
1212 NE 16th Terrace
Fort Lauderdale, FL 33304
Telephone: (954) 401-2608


*Counsel for Defendants*