# EXHIBIT 3

## DECLARATION OF NICHOLAS GUASTO

NICHOLAS GUASTO does hereby submit this declaration pursuant to Florida Statute 92.525(2), and states as follows:

1. I am over the age of twenty-one (21). I am offering this declaration voluntarily and based on my own personal knowledge.

2. I am married to the Charging Party in EEOC Charge No. 510-2021-05270, Jessica Guasto.

3. I am employed by the City of Miami Beach as a police officer.

4. Prior to Jessica Guasto signing the settlement agreement referenced by the City of Miami Beach in their position statement to EEOC Charge No. 510-2021-05270, I had a series of meetings concerning the disposition of Internal Affairs investigation 2020-10 and the EEOC Charge that Jessica Guasto filed in 2020 (EEOC Charge No. 510-2020-04794).

### Meeting – September 15, 2020

5. On September 15th, 2020, I attended a meeting with Chief Richard Clements, Miami Beach Police Department, at the police station, 1100 Washington Ave.

6. I initiated this meeting with the intention of thanking the Chief for bringing me back to work prior to the IA case (2020-10) being completed. We have a long relationship/history, and I thought it appropriate to show my appreciation and to advise him that both Jessica and I wanted to take responsibility for some culpability in the IA case. After a few minutes, Chief Clements steered the conversation towards how he wanted to resolve the case. Chief Clements told me he wanted Jessica and I to go to our IA statements and to say that we were sorry for our actions, that we had both been going through significant challenges personally and professionally, and that we had been seeking shelter with one another. He said he understood the issues that Jessica has faced and that he wanted to help. He said if we go into IA and give statements as he described that he would be able to work with that and to reduce the punishment significantly. He stated he thought this case was similar to the "Motor Unit case" and that he wanted to resolve it with a minor suspension and a repayment of some hours. He said that City Hall wanted to terminate both of us, but that he could help us if we worked with him.

### Meeting – September 22, 2020

7. On September 22nd, 2020, at 0550 hours, I attended a meeting with Chief Richard Clements at the police station.

8. The Chief again asked for Jessica's 2020 EEOC charge to be dropped in return for lesser punishment. My understanding is that under EEOC guidelines this is illegal for the Chief to have interfered in an open investigation and promise something in return for it to be dropped. He said he wanted to resolve the case with minor discipline and a repayment of hours and would figure out the best way to do that when we spoke again. He said he didn't have a problem structuring the discipline so that Jessica and I

1

would both be able to take the upcoming promotional test. He also said he wanted to resolve the case without giving a statement but would only be able to do that if Jessica dropped the EEOC charge.

9. Later that day (09-22-2020), while I was working as a patrolman in the afternoon, I was contacted by a third party and asked if I could respond to the station to meet with him and the Chief. He told me that Chief Clements requested that he contact me and have me respond to the station so we could meet. At this meeting, the Chief again insisted that Jessica's 2020 EEOC charge be dropped and that he would be able to reduce discipline and resolve the case amicably for both Jessica and me. He told me that we should not even be meeting, and that he will deny it if anyone asks, but that he had figured out a way to resolve the case. He told me he wanted to address all of Jessica's concerns about harassment because he understands what she has been through and wanted to help. He echoed the concerns that Deputy Chief Wayne Jones made to me during a previous meeting, that the department had failed Jessica and that the treatment she has received is disgusting and despicable.

10. Chief Clements told me that Jessica and I needed to contact her attorney, Michael Pancier, and tell him that she wanted to dismiss the 2020 EEOC charge and handle the case internally. Chief Clements said we needed to tell Pancier that we thought there was an opportunity to resolve the IA case and the EEOC charge simultaneously but that we hadn't spoken to the Chief yet. He anticipated Pancier would call Miami Beach City Attorney Michael Elkins and advise of such, and Elkins would call Clements who would then agree to the meeting to resolve the cases. During that meeting, Clements stated he wanted to address all of Jessica's concerns, and that she could have anyone there that she felt comfortable speaking in front of. As Jessica's harassment and treatment is sensitive and uncomfortable to speak about, she has always maintained she wanted people to be present as witnesses. Again, Clements stressed the importance of dismissing the EEOC charge, in exchange for this consideration.

11. The third party that requested the meeting on Chief Clements' behalf brought up the topic of the discipline for both Jessica and I and suggested that Clements decide on discipline over the next day or two and close the case out quickly with what he thought was appropriate. Clements stated that he thought it appropriate to start with the Motor Unit investigation as a basis for discipline (10 hour suspension and repayment of hours). He further stated that he wanted to still convene the Discipline Panel but that he would speak to the members prior to the hearing so they knew exactly what he wanted to do so he could implement the discipline with their recommendation.

12. Prior to ending the meeting, Clements said we were getting close to the 180 day limit on the case, but that he would need more time to set up the meeting to resolve Jessica's complaint and stated that the only way we would be able to move forward is for

Jessica and I to agree to toll the case.[1] He assured me that everything would be resolved favorably if we tolled the case to give him the time he needed. I reluctantly agreed, as I felt that Clements was insinuating that if we did not toll the case, he would continue the case and I would be facing termination and Jessica facing at least demotion, if not termination.

### Telephonic Meeting – September 24, 2020

13. On September 24th, 2020, at 1800 hours, while celebrating my birthday with family, I received a text message from the same third party stating that Clements was angry and wanted to speak to me. However, he would be calling me with the Chief on the line, as Chief Clements did not want his number showing up on my call history. He said he was called into Clements' office and told, "get your boy on the phone!"

14. When I answered the phone, I was immediately attacked and yelled at by Chief Clements, accusing me of getting him in trouble with Michael Elkins because Elkins thought we had spoken about the case, which we had. Chief Clements said that either Jessica or I had told Pancier the wrong thing and that Pancier told Elkins I had spoken to the Chief and that the Chief wanted to resolve the case.

15. Chief Clements was highly upset and demanded that either Jessica or I speak to Pancier and insist that Chief Clements and I had not spoken, but that I had been approached by a "proxy" to discuss the case.

16. Chief Clements told me he would not be able to help me if I didn't do things as he said to do them.

17. I also received phone calls from FOP executives Hector Fernandez and Kevin Millan, advising that the Chief had called them furious that I had said we had meetings to resolve the case, and he insisted that he had not spoken to me about anything.

Under penalties of perjury, I declare that I have read the foregoing and that the facts stated in it are true.

Dated this 5TH day of November 2021.

*N. G.*

NICHOLAS GUASTO

---

[1] Under Florida Statute § 112.532(6), internal investigations of police officers must be completed within 180 days, unless the time is tolled pursuant to one of the enumerated reasons or by agreement between the officer and the agency.