UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

JESSICA GUASTO,

       Plaintiff,                         CASE NO.: 1:22-cv-21004-MD

vs.

THE CITY OF MIAMI BEACH, FL,
a Florida municipality,

       Defendant.

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW**

      Plaintiff, JESSICA GUASTO, by and through her counsel and pursuant to Federal Rule of

Civil Procedure 56, hereby files her Response in Opposition to Defendant's Fully Dispositive

Motion for Summary Judgement and Incorporated Memorandum of Law [D.E. 70] ("Defendant's

Motion") and in support states the following:

**INTRODUCTION**

      In this action, Plaintiff seeks redress for Defendant's violations of Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e-3 ("Title VII"), and the Florida Civil Rights Act of 1992,

Fla. Stat. § 760.10 ("FCRA"). Plaintiff dedicated more than nine (9) years of exemplary service to

Defendant as a police officer, quickly rising up the ranks and eventually reaching the rank of police

sergeant in 2017, only to be unlawfully terminated in an act of unlawful retaliation by the

Defendant. Plaintiff was retaliated against by the Defendant for doing the unthinkable as a police

officer in the Miami Beach Police Department– speaking up about blatant sexism and

discrimination within the Department and filing Charges of Discrimination with the Equal

1

Employment Opportunity Commission ("EEOC"). Defendant terminated Plaintiff by forcing her resignation under the false guise of failing to adhere to a Last Chance Agreement ("LCA"). As described in further detail herein, the record evidence compellingly demonstrates that Defendant's purported rationale for Plaintiff's termination is rife with inconsistencies, lacks credibility, and was intended to mask Defendant's retaliatory intent.

Defendant's Motion seeks to obfuscate these critical issues, disregarding substantial evidence that establishes genuine material issues of fact regarding the Plaintiff's claims for retaliation under Title VII and the FCRA. Defendant has failed to provide the Court with any meaningful factual or legal evidence that would support the entry of summary judgment in its favor. For these reasons and those set forth in further detail below, Defendant's Motion for Summary Judgement must be denied.

## STATEMENT OF MATERIAL FACTS

Plaintiff hereby incorporates by reference Plaintiff's Local Rule 56(a)(2) Statement of Material Facts and Additional Facts in Opposition to Defendant's Motion for Summary Judgment [D.E. 78] ("PSOMF").

## LEGAL STANDARD

"Summary judgment is appropriate if the record shows no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. When deciding whether summary judgment is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party." *Bass v. Bd. of County Comm'rs*, 256 F.3d 1095, 1102 (11th Cir. 2001) (citing *Witter v. Delta Air Lines, Inc.*, 138 F.3d 1366, 1369 (11th Cir. 1998)).

While the Court must  review the record as a whole in deciding a motion for summary judgment, "it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing*, 530 U.S. 133, 150 (2000). Further, the Court "must disregard all evidence favorable to the moving party that the jury is not required to believe… That is, the court should give credence to the evidence favoring the non-movant as well as that evidence supporting the moving party that is un-contradicted and un-impeached, at least to the extent that that evidence comes from disinterested witnesses." *Id*. at 151.

Summary judgment is particularly unsuitable in employment cases, such as this one, where the ultimate issue to be tried is the quintessential factual question of intent. Indeed, federal courts have time and again refused to grant summary judgment in employment discrimination cases because the very question of unlawful motive is for the jury to decide. *See, e.g., Brice-Northard v. Sports Auth.*, 1998 U.S. Dist. LEXIS 20408, (S.D. Fla. 1998); *Sweat v. Miller Brewing Co.*, 708 F.2d 655, 657 (11th Cir. 1983) (holding that summary judgment is inappropriate where employer's intent is clearly disputed in discrimination cases; citing *Hayden v. First National Bank*, 595 F.2d 994, 997 (5th Cir. 1979) ("[w]hen dealing with employment discrimination cases, which usually necessarily involve examining motive and intent… granting of summary judgment is especially questionable.")); *Pullman-Standard v. Swint*, 456 U.S. 273, 288-89 (1982) (holding that intent is the ultimate issue of fact to be determined in an employment discrimination suit); *Hairston v. Gainesville Son*, 9 F.3d 913, 931 (11th Cir. 1993).

## LEGAL ARGUMENT

### I.    Plaintiff Has Established a *Prima Facie* Case of Retaliation and Demonstrated Genuine Issues of Material Fact

In a retaliation case brought under both Title VII and the FCRA, a Plaintiff must show (1) she participated in a statutorily protected activity; (2) she suffered a materially adverse action; and

(3) there was some causal connection between the two events. The causal link element is construed "broadly so that a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Goldsmith v. Bagsby Elevator Co.*, 513 F.3d 1261, 1278 (11th Cir. 2008) (citing *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998)). The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action. *See Brungart v. BellSouth Telecomm., Inc.*, 231 F.3d 791, 798–99 (11th Cir. 2000).

### a. Plaintiff Engaged in a Statutorily Protected Activity in Filing an EEOC Charge and Suffered a Materially Adverse Action as a Result

Plaintiff engaged in statutorily protected activity when she filed her EEOC charge of discrimination on July 13, 2020, and suffered an adverse action when she was terminated on January 25, 2021. As to the first element, the Eleventh Circuit has maintained that the filing of an EEOC Complaint is protected activity. *Bass*, 256 F.3d at 1117 (citing *Berman v. Orkin Extermination Co.*, 160 F.3d 697, 702 (11th Cir. 1998)). Here, Plaintiff filed an EEOC Charge against Defendant on July 13, 2020, alleging discrimination on the basis of her sex and national origin and retaliation, thus satisfying the first prong of the prima facie case of participating in a statutorily protected activity. *See* D.E. 71-2; D.E. 71-3.

Plaintiff suffered an adverse employment action when Defendant implemented her letter of resignation, effectively terminating her. It is well-established that "[a]n adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that 'alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.'" *Gupta v Florida Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000) (citing *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3rd Cir. 1997)). "Conduct that falls short of an ultimate

employment decision must meet 'some threshold level of substantiality … to be cognizable under the anti-retaliation clause.' *Id.* (citing *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998)). The question of whether an employee has suffered a materially adverse employment action will normally depend on the facts of each individual case. *Bass*, 256 F.3d at 1118 (citing *Gupta*, 212 F.3d at 587).

Again, there is no dispute that Plaintiff suffered a materially adverse action. Defendant implemented Plaintiff's letter of resignation, effectively terminating her employment. [D.E. 71-5, pp. 1-2]. Thus, Plaintiff suffered a materially adverse action and the second prong of Plaintiff's prima facie case is satisfied.

### b. There Is a Clear Causal Connection Between Plaintiff's Protected Activity and the Materially Adverse Action that Plaintiff Suffered

Plaintiff has established a clear causal connection between her 2020 EEOC Charge and Defendant's implementation of her letter of resignation, effectively terminating her employment. "To establish a causal connection, a plaintiff must show that the relevant decisionmaker was 'aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated.'" *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1211 (11th Cir. 2013) (citing *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002)). "Generally, a plaintiff can show the two events are not wholly unrelated if the plaintiff shows that the decision maker was aware of the protected conduct at the time of the adverse employment action." *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1234 (11th Cir. 2010) (citing *Brungart v. BellSouth Telecomm.'s, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000)). Typically, "close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." *Brungart* 231 F.3d at 799 (11th Cir. 2000).

Plaintiff filed her second EEOC Charge of Discrimination ("2020 EEOC Charge") against Defendant on or about July 13, 2020. *See* D.E. 71-3. In or around September 15, 2020, while Plaintiff and Nicholas Guasto ("Mr. Guasto") were dating, prior to being married, Mr. Guasto spoke to Richard Clements ("Chief Clements" and/or "Clements"), employed by Defendant as Chief of Police. *See PSOMF* ¶¶ 91-92. During this discussion, Clements told Mr. Guasto that he wanted Plaintiff to withdraw her 2020 EEOC Charge in exchange for a reduction in punishment. *See PSOMF* ¶ 92.

Again, under penalty of perjury, Mr. Guasto stated that "[o]n September 22nd, 2020, at 0550 hours, I attended a meeting with Chief Richard Clements at the police station. The Chief again asked for Jessica's 2020 EEOC charge to be dropped in return for lesser punishment." *See PSOMF* ¶93. Additionally, Mr. Guasto stated that there was a second meeting on September 22, 2020, where "the Chief again insisted that Jessica's 2020 EEOC charge be dropped and that he would be able to reduce discipline and resolve the case amicably for both Jessica and me. He told me that we should not even be meeting, and that he will deny it if anyone asks, but that he had figured out a way to resolve the case." *See PSOMF* ¶ 94.

Not only did Chief Clements have knowledge of Plaintiff's 2020 EEOC Charge in September of 2020, but he threatened to terminate both Mr. Guasto and Plaintiff in the event that Plaintiff did not withdraw her 2020 EEOC Charge. *See PSOMF* ¶¶ 92-95.

Several days later, on or around September 24, 2020, Chief Clements wiggled his way onto a call with Mr. Guasto[1] before Clements "attacked and yelled at [Mr. Guasto]... accusing [Mr. Guasto] of getting [Chief Clements] in trouble with Michael Elkins…" *See PSOMF* ¶ 95. Mr. Guasto makes it abundantly clear that after Clements threatened retaliatory action against Plaintiff

---

[1] Chief Clements had a third-party call Mr. Guasto, then add Chief Clements into the call to avoid a record of Mr. Guasto and Chief Clements speaking over the phone that day. *See PSOMF* ¶95.

on September 15 and September 22 because of her EEOC Charge, Clements consulted the Miami Beach Police Department attorney, Michael Elkins, who understood the unlawful nature of Chief Clements' actions. *Id*. Again, Clements reiterated a desire to have Plaintiff withdraw her EEOC Charge on this call. *Id*.

Plaintiff's refusal to withdraw her 2020 EEOC Charge resulted in negotiations to settle both her pending internal affairs ("IA") case and 2020 EEOC Charge. Plaintiff and Defendant attended a formal meeting in November of 2020 to discuss the settlement of the IA case and 2020 EEOC Charge. *See* D.E. 69 at ¶¶ 15-17. Although no agreement was reached, both parties continued negotiating the withdrawal of the 2020 EEOC Charge for several weeks before entering into a settlement agreement on or around December 18, 2020. *See* D.E. 71-4. Defendant made expressly clear that Plaintiff must simultaneously enter into a Last Chance Agreement ("LCA")[2] along with a settlement agreement when withdrawing her 2020 EEOC Charge. *See* D.E. 71-4 at pp. 1-2. Although the Settlement Agreement and LCA are separate documents, they were executed simultaneously and were contingent on one another. *Id*.

On Plaintiff's very first shift after settling her 2020 EEOC Charge and entering into the LCA, on or around December 27, 2020, Defendant assigned her an overtime shift to be supervised by Steven Cosner ("Lieutenant Cosner" and/or "Cosner"), who Plaintiff had a plethora of issues with over the past few years. *See PSOMF* ¶¶ 86-90. Following Plaintiff's first shift back, Lieutenant Cosner submitted an outrageous Administrative Action Form ("AAF") against Plaintiff, citing inapplicable violations of department rules and regulations[3], and writing Plaintiff

---

[2] The terms of the LCA included the following: "[t]he Chief's decision as to compliance with this Agreement shall not be subject to any grievance and/or review of any kind by [Plaintiff] and/or the Union and is not subject to explanation or review." *See* D.E. 71-4 at p. 6.

[3] Cosner admitted that he improperly cited Plaintiff for violating DRR 6.28.3.6 in his AAF, which was never corrected. *See PSOMF* ¶105

up for subjective violations of department rules and regulations[4]. *See PSOMF* ¶¶ 96-107. Lieutenant Cosner did not follow standard department protocols in filling out or filing the AAF to make sure that Plaintiff would be reprimanded for these allegations. *See PSOMF* ¶ 107.

Chief Clements did not have internal affairs conduct any sort of formal investigation into Cosner's AAF, which is a department standard, and instead unilaterally held a meeting on or around January 19, 2021, to validate Lieutenant Cosner's ludicrous AAF submission. *See PSOMF* ¶¶ 108, 110, 111. At this meeting, Clements bypassed standard procedure as he denied Plaintiff the right to an attorney, defended Lieutenant Cosner's unfounded accusations, and unilaterally decided that Plaintiff was lying. *See PSOMF* ¶¶ 109-111. On or around January 25, 2021, still without any formal investigation underway or completed, Clements formally implemented Plaintiff's letter of resignation. *See PSOMF* ¶¶ 61; *See* D.E. 71-5.

Clements would not have been able to terminate Plaintiff but for being on a Last Chance Agreement, which she was placed on as part of settling her 2020 EEOC Charge. *See* D.E. 71-4. Plaintiff worked one (1) shift after withdrawing her 2020 EEOC Charge before being accused of misconduct, and was terminated without any proper investigation. *See PSOMF* ¶¶ 96, 99, 108, 111.

Based on the record, Plaintiff has provided sufficient evidence that there was a clear causal connection between her protected activity and the materially adverse action she suffered. As such, Plaintiff has established each element of her retaliation claim. First, she participated in a statutorily protected activity by filing her EEOC Charge. Second, Plaintiff suffered a materially adverse action as Defendant terminated her employment by implementing her letter of resignation. Last, there is a clear causal link connecting her EEOC Charge to her termination.

---

[4] Cosner acknowledged that DRR violations can be alleged based on subjective analysis or general interpretation. *See PSOMF* ¶106.

## II.    **Defendant's Legitimate Nondiscriminatory Reason for Plaintiff's Termination is Pretextual**

Plaintiff will further highlight how the Defendant's legitimate nondiscriminatory reason for Plaintiff's termination is pretextual. "If a plaintiff establishes a prima facie case of retaliation, a rebuttable presumption arises that the employer has acted unlawfully." *Matthews v. Wells Fargo*, 758 Fed. Appx. 842, 843 (11th Cir. 2019) (citing *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010)). The employer can rebut the presumption by providing a legitimate nondiscriminatory reason for its action. *Id.* "If it does so, the burden shifts back to the plaintiff to produce evidence that the employer's proffered reasons are a pretext for discrimination." *Id.*

At the summary judgment stage, "[t]he district court must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1312 (11th Cir. 2018) (citing *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005)).

As addressed further herein, Plaintiff is able to demonstrate significant flaws in Defendant's proffered legitimate reasons for terminating Plaintiff, including the following:

(1) Plaintiff entered into the Last Chance Agreement and was vulnerable to termination solely because she settled her 2020 EEOC Charge against Defendant[5]; (2) Defendant assigned Plaintiff an overtime shift where she was supervised by Lieutenant Cosner, despite knowing that Plaintiff had previously opposed Cosner's intimate advances and Cosner harbored ill-will towards Plaintiff[6]; (3) Defendant failed to abide by its own protocols in reporting Plaintiff's alleged misconduct[7]; (4) Defendant failed to abide by its own procedures by not conducting a thorough

---

[5] *See* D.E. 71-4.
[6] *See PSOMF* ¶¶ 86-90, 96.
[7] *See PSOMF* ¶ 107.

investigation into Cosner's allegations and allowing Clements to conduct an unlawful meeting[8]; (5) Defendant terminated Plaintiff without any meaningful evidence of misconduct beyond allegations made by her former harasser; and (6) Defendant failed to conduct any investigation before termination Plaintiff and deviated from its own procedures[9].

### a. Plaintiff and Defendant Would Not Have Entered Into the Last Chance Agreement If Plaintiff Had Not Filed Her 2020 EEOC Charge Against Defendant

As previously stated, Plaintiff filed her second EEOC Charge against Defendant in or around July 13, 2020, alleging sex discrimination, national origin discrimination, and retaliation. *See* D.E. 71-3. At the same time, Plaintiff had a pending IA case with Defendant, accusing her of leaving her job assignment early, showing up late, or even failing to appear at all. *See* D.E. 69 at ¶ 10. Defendant exploited Plaintiff's position with the IA investigation as leverage to settle her 2020 EEOC Charge, while simultaneously entering into a Last Chance Agreement ("LCA") that would make "[t]he Chief's decision as to compliance with this Agreement [] not be subject to any grievance and/or review of any kind by [Plaintiff] and/or the Union and is not subject to explanation or review." *See PSOMF* ¶¶ 92-95; *see also* D.E. 71-4 at p. 6.

Mr. Guasto's declaration confirms that Chief Clements was desperate to settle Plaintiff's 2020 EEOC Charge, and even threatened termination if Plaintiff did not withdraw the 2020 EEOC Charge. *See PSOMF* ¶¶ 92-95. To this point, Plaintiff and Mr. Guasto were both subjects of the same IA case, the only difference was Mr. Guasto had not filed an EEOC Charge of Discrimination. *See PSOMF* ¶ 92. Yet, Plaintiff was the only one who entered into a Last Chance Agreement to settle the internal affairs case and was the only one terminated by Defendant. To this day, Mr. Guasto is still employed by Defendant. *See* D.E. 69 at ¶ 73.

---

[8] *See PSOMF* ¶¶108-111.
[9] *See PSOMF* ¶¶100-108, 111.

In *Baskerville v. Sec'y of the VA*, the Middle District of Florida held that a Last Chance Agreement conditioned on the dismissal of existing EEOC charges was sufficient to establish evidence of an employer's retaliatory animus. *See Baskerville v. Sec'y of the VA*, 2021 U.S. Dist. LEXIS 70655 (M.D. Fla. 2021). The plaintiff in *Baskerville* was employed by the defendant and filed several EEOC charges against the defendant throughout his employment. *See id*. The defendant issued several write ups to the plaintiff for leaving early without permission on several occasions. *Id.* The defendant issued the write-ups while the plaintiff's EEOC charges were pending, and offered the plaintiff a Last Chance Agreement that would waive the plaintiff's rights to grievance procedures, the EEOC, and Federal Courts. *Id*. at 4.

The plaintiff in *Baskerville* argued that the "Last Chance Agreement in conjunction with the Defendant's admission provide disputed evidence that the legitimate reasons for his removal were pretextual and that he was actually fired in retaliation for his EEOC Charges." *Id*. at *7-8. The *Baskerville* Court recognized the Eleventh Circuit's reasoning in concluding, "a reasonable juror could find that a last chance agreement showed pretext where the agreement required the plaintiff to drop a prior and pending claim for racial discrimination to retain his employment." *Id*. at *8 (citing *Knox v. Roper Pump Co.*, 957 F.3d 1237, 1246-47 (11th Cir. 2020)). The *Baskerville* court ruled in favor of the plaintiff by denying the defendant's motion for summary judgment. *Baskerville* at *8.

Similarly, in this case, Plaintiff was the subject of an IA case and had a pending EEOC Charge. *See* D.E. 71-4. Similar to *Baskerville*, Plaintiff's continued employment was contingent on signing an agreement which required the withdrawal of her 2020 EEOC Charge and a waiver of her claims of discrimination, while simultaneously entering into a Last Chance Agreement. *Id*. In fact, the Settlement Agreement includes a section titled, "EEOC Charge Withdrawn With

Prejudice and Discipline," that includes the following language: "Salabarria will execute the attached Last Chance Agreement, which contains additional provisions." D.E. 71-4 at pp. 1-2. As discussed in *Baskerville*, a finder of fact could easily determine that the Settlement Agreement showed pretext where the agreement required Plaintiff to drop her pending claim for sex discrimination, national origin discrimination, and retaliation to retain her employment.

### b. Defendant Forced Plaintiff to Be Supervised by Her Former Harasser and Used His False Allegations to Justify Her Unlawful Termination

In or around December 27, 2020, Defendant assigned Plaintiff to work beneath a colleague that she had not interacted with for several years, now-Lieutenant Steven Cosner. *See PSOMF* ¶¶ 86-90, 96. Their lack of interaction at work was intentional, as Cosner had deliberately avoided Plaintiff for years after she rejected his sexually harassing advances towards her. *See PSOMF* ¶¶ 38, 86-90. This fallout was rather dramatic as Cosner confessed his love for Plaintiff but was rejected. *See PSOMF* ¶¶ 33, 86-90. Thus, Cosner harbored significant ill-will towards Plaintiff moving forward. *Id*. Yet, Defendant assigned Plaintiff to be supervised by Cosner on her first shift back after withdrawing her 2020 EEOC Charge[10]. *See PSOMF* ¶ 96.

During this 12:00 A.M. to 6:00 A.M. shift, Cosner emailed Plaintiff her instructions at around 3:55 AM, stating "Forgot to send this to you." *See PSOMF* ¶ 97. Plaintiff's shift started almost four (4) hours earlier, meaning Cosner had failed to properly inform her of her duties for nearly four (4) full hours. *Id*. Approximately 28 minutes later, Plaintiff left the station and went to her assigned Area. *See PSOMF* ¶ 98. Less than two hours later, Plaintiff completed each and every instruction asked by Lieutenant Cosner. *Id*. There is no identifiable repercussion as a direct result of Plaintiff's actions during her shift. *See PSOMF* ¶ 98; *see also* D.E. 69-19.

---

[10] Cosner had been promoted to Lieutenant in or around September of 2020 and this was his first chance to supervise Plaintiff. *See* D.E. 69-6, Cosner TR:39:12-14. This was the first time Cosner had directly supervised Plaintiff. *See PSOMF* ¶ 96.

It is well-established that "[a]n employer's departure from its normal policies and procedures can, in some cases, serve as evidence of pretext." *Connelly v. WellStar Health Sys., Inc.*, 758 F. App'x 825, 829 (11th Cir. 2019) (citing *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1899 (11th Cir. 2006)); *see also Walker v. Prudential Prop. & Cas. Ins. Co.*, 286 F.3d 1270, 1279 (11th Cir. 2002) ("The bending of established rules may, of course, be suggestive of discrimination."). But for a departure from standard policies or procedures to establish pretext, a plaintiff must show more than the mere fact of a deviation; she must also "show that the deviation from policy occurred in a discriminatory manner." *Rojas v. Florida*, 285 F.3d 1339, 1344 n.4 (11th Cir. 2002) (citing *Brown v. American Honda Motor Co.*, 939 F.2d 946, 952 (11th Cir. 1991)).

In this case, unbeknownst to Plaintiff, Cosner drafted an Administrative Action Form ("AAF") against Plaintiff on or around December 30, 2020, and submitted the document directly to Michael Elkins ("Elkins" and/or "Defendant's Counsel") and the Director of Internal Affairs, AJ Prieto ("Prieto") on or around January 8, 2024. *See PSOMF* ¶¶ 107-108. Prior to Cosner's submission of this AAF form, he had never submitted an AAF form directly to Elkins, as the AAF form is traditionally sent up the chain-of-command and brought to the attention of the officer being accused of misconduct. *See PSOMF* ¶ 107. Cosner further testified that he knew discipline was likely to ensue following his submission of the AAF. *See PSOMF* ¶¶ 66, 99.

Cosner made a number of non-routine decisions in drafting this AAF. *See PSOMF* ¶¶ 97-106. First, Defendant admits that "Cosner used the wrong form" in writing up Plaintiff. *See* D.E. 69 at p. 8. Next, Cosner failed to have the form signed or dated by either an Employee, Lieutenant, Preparer, Captain, Witness, Division Commander, or Chief of Police. Exh. 6. Although the failure to have the document signed or dated is not fatal, it poses questions as to why Cosner took such an unorthodox approach to submitting an AAF form. *See PSOMF* ¶ 44. Many of Cosner's

colleagues have testified that the form should typically be completed, signed, dated, and brought through the proper chain-of command before being presented to the employee whose conduct is being questioned. *See PSOMF* ¶¶ 44, 107. Here, none of the standard procedure occurs as Cosner simply filled out a select portion of the document before sending it directly to an attorney, and then to the Director of Internal Affairs– this is entirely unusual and is not standard practice. *See PSOMF* ¶¶ 44, 107; *see also* Exh. 8; *see also* Exh. 9. Cosner even notified Prieto that "I was advised to forward this to you." *See* Exh. 9. Even more suspicious, Cosner's email to Prieto came less than two (2) minutes after forwarding his AAF to Michael Elkins. *See* Exh. 8. Clearly, there was an orchestrated attempt to oust Plaintiff.

Lieutenant Cosner's AAF is further riddled with unverified inaccuracies. *See PSOMF* ¶¶ 98-106. Cosner's AAF alleged that Plaintiff violated twelve (12) Department Rules and Regulations (DRRs). *See* Exh. 6. Each DRR correlates to a complex rule or regulation, some requiring the knowledge of an individual's intent, yet Cosner testified at deposition to the following: (1) he received no training to interpret any DRR; (2) Cosner did not review the DRRs either alone or with another individual prior to determining if Plaintiff violated that DRR; (3) Cosner included an incorrect DRR on Plaintiff's AAF; (4) Cosner claimed Plaintiff violated several DRRs that had an intent element despite admitting to never asking Plaintiff of her intent; (5) Cosner admitted that DRR violations can be alleged based on a subjective analysis or general interpretation; and (6) Cosner never directly asked Plaintiff about her whereabouts or activities on the entire night in question while accusing her of violating twelve (12) DRRs[11]. *See PSOMF* ¶¶ 99-106.

---

[11] *See* D.E. 69-6, Cosner TR:101,103.

There is a genuine dispute as to the veracity of Cosner's character and actions, and whether he would have conducted himself in a similar manner had Plaintiff not been the Sergeant he was supervising on that overnight shift.

**c.** **Defendant Violated Its Own Policies and Procedures in Fabricating False Allegations Against Plaintiff and Unlawfully Terminating Her**

On or around January 19, 2021, just one month following Plaintiff's withdrawal of her 2020 EEOC Charge, and eleven (11) days following Cosner's AAF submission to Prieto, Clements ordered Plaintiff to appear for a meeting alongside himself, several FOP members, Cosner, and Prieto to discuss the AAF. *See PSOMF* ¶ 53. Plaintiff asked for an attorney to be present at this meeting, yet she was denied an attorney. *See PSOMF* ¶¶ 53, 109. One FOP member present for this meeting specifically recalls Clements denying Plaintiff an attorney. *See PSOMF* ¶ 109. To be clear, Plaintiff is entitled to an attorney and Chief Clements intentionally acted unlawfully in denying her rights given to her as a police officer[12]. Further, this meeting was not recorded, and there are no formal records of the meeting, additional violations of Plaintiff's rights[13]. An FOP member testified that he did not believe he had the authority to stop the meeting, indicating the meeting's unlawful nature. *See PSOMF* ¶ 55. Clements actually acknowledged that he departed from Defendant's norms during this entire process because Plaintiff was on an LCA[14]. Regardless, Clements used this meeting to blindly accept the allegations in Cosner's AAF, as Defendant's internal affairs department had not conducted or completed an investigation into the Cosner's allegations. *See PSOMF* ¶¶ 108, 111.

---

[12] *See* Fla. Stat. § 112.532. Note, Plaintiff never waived her §112.532 rights.
[13] *Id*.
[14] *See* D.E. 69-16, Clements TR:96:1-3, "Again, I think it's important to note that I didn't have to have that meeting; you know, there was a Last Chance Agreement…"

The Eleventh Circuit has held that an employer "cannot testify in abstract terms as to what might have motivated the decision-maker; it must present specific evidence regarding the decision-maker's actual motivations with regard to each challenged employment decision." *Walker v. Mortham*, 158 F.3d 1177, 1182 n. 8 (11th Cir. 1998) (citing *Increase Minority Participation by Affirmative Change Today of Nw. Florida, Inc. (IMPACT) v. Firestone*, 893 F.2d 1189, 1193 (11th Cir. 1990)). This showing requires the presentation of facts which the decision-maker knew at the time when the decision was made. *See Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1076 (11th Cir. 2003).

In implementing Plaintiff's letter of resignation, Clements did not use any objective criteria in his analysis. Instead, his decision was based on a wholly subjective interpretation of facts regarding the events on the night in question and an unfounded determination as to whether Plaintiff was being truthful regarding her work. *See PSOMF* ¶¶ 108, 111. In this regard, Clements testified as follows:

> Q:    And has there been a further investigation brought into that Internal Affairs allegation by Steven Cosner against [Plaintiff], following her termination?
> A:    I believe that we had enough at that point in time to implement the letter of resignation, you know, without going further into it. And again, like I said earlier on, I conducted that meeting, even though I didn't have to. And what I heard did not satisfy, from my perspective, a reason to keep Jessica still employed with Miami Beach.

*See* D.E. 69-16, Clements TR:98, 99:19-3.

Defendant's own employees did not believe that Plaintiff's termination was warranted or justified. Paul Ozaeta, President of the Fraternal Order of Police ("FOP") at the time Plaintiff was terminated, testified as follows:

> Q:    And ordinarily, without a Last Chance Agreement, do you believe that [Plaintiff] would have been terminated for the same reason?

A:    No.
Q:    Why not?
A:    I don't believe that the violation in question from that incident rose
        to the level of termination.

*See* D.E. 69-23, Ozaeta TR:64:1-11.

Reggie Lester, the current First Vice President of the FOP, and the Second Vice President of the FOP when Plaintiff was terminated, testified as follows: "So when I initially was brought into this, I didn't feel like the violation met the need for termination until obviously, it was made known to me, which I reviewed, that there was a Last Chance Agreement." *See* D.E. 69-24, Lester TR:66:2-6.

Each flaw in Defendant's proffered legitimate reason for terminating Plaintiff, if taken as true, might lead a reasonable juror to conclude that Defendant's stated reasons for the adverse employment actions were "pretextual." This includes direct and circumstantial evidence that the measures taken against Plaintiff were motivated by retaliatory animus, as indicated above. If taking the above as true, at the least, a reasonable jury could conclude that, "but for Plaintiff's filing of her EEOC complaint, such action would not have been taken."

## III.    **Plaintiff Has Established a Convincing Mosaic of Defendant's Retaliatory Intent**

Even if Plaintiff had somehow failed to establish the elements of her claim under the *McDonnell-Douglas* framework, she would nonetheless prevail by establishing a convincing mosaic of Defendant's retaliatory intent. The Eleventh Circuit established that "for decades we have explained that the *McDonnell Douglas* framework 'is not the exclusive means' by which an employee can prove discrimination with circumstantial evidence." *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300 at 1310 (11th Cir. 2023) (citing *Lee v. Russell Cnty. Bd. of Educ.*, 684 F.2d 769, 773 (11th Cir. 1982)); *accord Smith v. Lockheed-Martin*, 644 F.3d 1321 at 1328 (11th Cir. 2011)). Although the "*McDonnell Douglas* framework is one 'tool' that helps an employee prove

retaliation with circumstantial evidence," *Berry*, 84 F.4th at 1310, "[w]ithout relying on the *McDonnell Douglas* framework, an employee may prove retaliation with any circumstantial evidence that creates a reasonable inference of retaliatory intent." *Id*. The Eleventh Circuit continued, "[s]ome of our precedents refer to this evidentiary approach as the 'convincing mosaic framework.'" *Id*. at 1310-11 (citing *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 764-65 (7th Cir. 2016)). Thus, "[t]he legal standard – and the question for the court at summary judgment – is only whether the evidence permits a reasonable factfinder that they employer retaliated against the employee. That legal standard applies no matter how an employee presents her circumstantial evidence." *Id*.

Under the convincing mosaic framework, "[e]mployees are not limited in the kinds of circumstantial evidence they may present. We have identified three nonexclusive categories of circumstantial evidence that can raise a reasonable inference of unlawful conduct: evidence of suspicious timing, ambiguous statements, or other information from which unlawful intent may be inferred; evidence of systematically better treatment of similarly situated employees; or evidence that the employer's justification for its action is pretextual." *Id*. at 1311. (citing *Jenkins v. Nell*, 26 F.4th 1243, 1250 (11th Cir. 2022)).

"[S]o long as [it] raises a reasonable inference" that the employer retaliated against the employee, 'summary judgment is improper'." *Berry*, 84 F.4th at 1311 (citing *Smith v. Lockheed-Martin*, 644 F.3d 1321 at 1328 (11th Cir. 2011)). Similar to the *McDonnel Douglas* framework, "the court must view the evidence in the light most favorable to the employee and draw all reasonable inferences in her favor" under the convincing mosaic theory. *Id*. (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986)).

18

### a. __Plaintiff Has Created A Reasonable Inference Of Defendant's Retaliatory Intent__

Plaintiff has proffered substantial material evidence, as indicated supra, which, if taken as true, will lead a reasonable juror to conclude that the Defendant's stated reasons for the adverse employment actions were "pretextual." Further, this includes direct and circumstantial evidence that the measures taken against Plaintiff were motivated by discriminatory and/or retaliatory animus.

Plaintiff provided evidence of suspicious timing, ambiguous statements, and other information from which unlawful intent may be inferred: (1) Clements' threatening statements to Nicholas Guasto following the filing of Plaintiff's 2020 EEOC Charge, (2) Clements using third party individuals to discuss with Nicholas Guasto over the phone to avoid a record of discussion; (3) Plaintiff and Defendant's Settlement Agreement being contingent on the dismissal of her 2020 EEOC Charge and entering into a Last Chance Agreement; (4) Cosner's supervision over Plaintiff on her first shift after withdrawing her 2020 EEOC Charge despite his known ill-will towards her; (5) Cosner 'forgetting' to send Plaintiff her instructions for the first four (4) hours of her shift; (6) Cosner drafting an AAF with twelve (12) false and inaccurate DRR violations; (7) Cosner emailing his AAF to Michael Elkins, which is outside of the chain of command and not standard procedure; (8) Cosner emailing his AAF to AJ Prieto, again outside of the chain of command, just minutes after sending it to Michael Elkins; (9) Clements demanding an improper a meeting be held where he denied Plaintiff an attorney; (10) Clements subjectively determining that Cosner's AAF was true despite conducting no investigation, which again is not standard procedure; and (11) Clements invoking Plaintiff's letter of resignation prior to any official investigation, and taking Cosner's AAF as true despite Plaintiff's attempts to explain what happened.

Suffice it to say that Plaintiff's termination was based on false allegations against her, and an unjustified, subjective determination of her truthfulness by Clements. It has all the markings of a "witch-hunt." And even the petty nature of the twelve (12) DRR violations maintained by Cosner against her raise doubts as to their credibility as the basis for Plaintiff being discharged for her truthfulness. At the least, a reasonable jury could conclude that, "but for Jessica's filing of her EEOC complaint, and or her lawsuit, such punitive action would not have been taken."

<u>**CONCLUSION**</u>

For the reasons set forth above, Plaintiff respectfully requests that the Court deny the Defendant's Motion for Summary Judgement on the remaining Counts.

Dated:  Miami, Florida
          July 8, 2024

**DEREK SMITH LAW GROUP, PLLC**
*Counsel for Plaintiff*


*/s/ Daniel J. Barroukh*
Daniel J. Barroukh, Esq.
Florida Bar No.: 1049271
Derek Smith Law Group, PLLC
520 Brickell Key Drive, Suite O-301
Miami, FL 33131
Tel: (305) 946-1884
Fax: (305) 503-6741
Danielb@dereksmithlaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing document is being

served on July 8, 2024, on all counsel of record on the service list below via e-mail.

By: */s/ Daniel J. Barroukh*
Daniel J. Barroukh, Esq.

## SERVICE LIST

**CITY ATTORNEY'S OFFICE OF MIAMI BEACH**
Benjamin Z. Braun
benjaminbraun@miamibeachfl.gov
Florida Bar No.: 1017937
Henry Joseph Hunnefeld
henryhunnefeld@miamibeachfl.gov
Florida Bar No. 343811
1700 Convention Center Drive
Miami Beach, Florida 33139
Telephone: (305) 673-7470
Facsimile: (877) 673-7002

**MLE LAW**
Michael Lewis Elkins
melkins@mlelawfirm.com
Florida Bar No.: 523781
1212 NE 16th Terrace
Fort Lauderdale, FL 33304
Telephone: (954) 401-2608

*Counsel for Defendant*