UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-21004-Civ-DAMIAN/TORRES

JESSICA GUASTO,

      *Plaintiff,*

v.

THE CITY OF MIAMI BEACH, FL,
a Florida municipality, et al.

      *Defendants.*
_____/

## ORDER ON DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S EXPERT WITNESS AND AMENDED EXPERT REPORT

Pending before the Court is The City of Miami Beach's ("Defendants" or "The City") Motion to Strike Plaintiff Jessica Guasto's Expert Witness and Amended Expert Report. [D.E. 72]. On February 2, 2024, Plaintiff disclosed her expert witness, Paul M. Mason, Ph.D. ("Dr. Mason"). [D.E. 75 at 1]. The Court struck Plaintiff's initial expert report on March 19, 2024, to which Plaintiff responded by serving an Amended expert report. [*Id.*]. After deposing the expert, Defendants again moved to strike Dr. Mason and his report on June 3, 2024. Plaintiff filed her respective response on June 17, 2024 [*Id.* at 9], to which Defendants timely replied. [D.E. 76 at 10]. Defendants'

Motion, therefore, is ripe for disposition.[1] After a careful review of the motion, response, reply, and relevant authority, and for the reasons discussed below, Defendants' Motion to Strike Plaintiff's Expert Witness and Amended Expert Report is **GRANTED**.

## I. BACKGROUND

This lawsuit arises out of a dispute between Plaintiff and Defendants, where Plaintiff filed a ten-count complaint on claims of employment discrimination. [D.E. 72 at 1]. This Court dismissed eight of the ten counts, leaving only Counts III and IV, which are claims for retaliation under Title VII and the Florida Civil Rights Act. [*Id.*]. Subsequently, Plaintiff disclosed Dr. Mason as her expert and produced Dr. Mason's Expert Report. [*Id.* at 2]. The Court then struck this report, and Plaintiff responded by serving Dr. Mason's Amended Expert Report. [*Id.*].

In the amended report, Dr. Mason explained that he provided his expert opinion on economic damages, specifically considering "the past and future lost income and fringe benefits for [Plaintiff] as the result of her dismissal from the Miami-Dade County Police Department." [*Id.* at 2].

Defendants now point out a critical flaw in Plaintiff's expert testimony, explaining that Dr. Mason's calculations are based, almost entirely, on the wrong retirement system. Dr. Mason based his expert opinion and report off the retirement plan from the Florida Retirement System ("FRS"), which neither the City nor Plaintiff

---

[1] On July 3, 2024, the Honorable Judge Melissa Damian referred this motion to the Undersigned Magistrate Judge for disposition. [D.E. 77].

are or were ever participants in during any relevant time period. In fact, the City maintains its own pension plan completely independent from the FRS: The City Pension Fund for Firefighters and Police Officers in the City of Miami Beach, which includes the Police Officers' Relief and Pension Fund, a public record easily obtainable on the internet. [D.E. 72 at 5]. Additionally, Plaintiff was governed by the Collective Bargaining Agreement ("CBA"), which includes the Deferred Retirement Option Plan ("DROP") program the City was and is a party to.

Yet, Dr. Mason heavily, indeed exclusively, on calculations from the FRS. Therefore, Defendants conclude, his report and opinions are unreliable and should be stricken from trial. Moreover, Dr. Mason did not use either of the City's main documents (the CBA and the City Code), and instead used a completely independent and distinct system. So his opinions are irrelevant, unhelpful, and inadmissible.

In response, although Plaintiff concedes that Dr. Mason used the FRS for his calculations and failed to use the City's systems to calculate retirement, pension, and employee earnings, Plaintiff insists that his report and opinions should not be excluded. Plaintiff theorizes that because Dr. Mason is qualified as an expert witness, a point not contested by Defendants, his opinions are still helpful and reliable enough to be used at trial. Considering Dr. Mason's extensive education, past experience working on cases that have resulted in the production of similar reports, and the fact that his opinion goes beyond the understanding of the average lay person, Plaintiff concludes that his testimony should not be excluded. In fact, Plaintiff views Dr. Mason's usage of the FRS as the utilization of an alternative retirement system to

base his calculations, which has no bearing on the reliability of his conclusions. Instead, Plaintiff argues that that Defendants' objections about reliability should be presented at trial to weigh against his credibility before the jury.

To buttress their motion, Defendants reemphasize in their reply the crucial error of using the wrong system. Defendants explain that this flaw is fatal because, considering that neither the City nor the Plaintiff were ever a part of the systems Dr. Mason used to calculate damages, the report's conclusions have no bearing on either party, Plaintiff's potential damages, or the case as a whole. So apart from being legally unreliable, the expert's opinions are simply not helpful to the trier of fact in this case that must be tasked with assessing damages based on the retirement system that Plaintiff and the City actually used.

## *II. APPLICABLE PRINCIPLES AND LAW*

The decision to admit or exclude expert testimony is within the trial court's discretion and the court enjoys "considerable leeway" when determining the admissibility of this testimony. *See Cook v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1103 (11th Cir. 2005). As explained in *Daubert v. Marrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the admissibility of expert testimony is governed by Fed. R. Evid. 702. The party offering the expert testimony carries the burden of laying the proper foundation for its admission, and admissibility must be shown by a preponderance of the evidence. *See Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999); *see also United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) ("The burden of establishing qualification, reliability, the helpfulness rests on the proponent of the

expert opinion, whether the proponent is the plaintiff or the defendant in a civil suit, or the government or the accused in a criminal case.")

"Under Rule 702 and Daubert, district courts must act as 'gate keepers' which admit expert testimony only if it is both reliable and relevant." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (citing *Daubert*, 509 U.S. at 589). The purpose of this role is to "ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 289 F.3d 1253, 1256 (11th Cir. 2002). Also, in its role as a gatekeeper, "its duty is not to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003).

To facilitate this process, district courts engage in a three-part inquiry to determine the admissibility of expert testimony:

> (1) the expert is qualified to testify competently regarding the matters he intends to address: (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert: and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. (figure out how to block quote this)

*City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (citations omitted). The Eleventh Circuit refers to these requirements as the "qualification," "reliability," and "helpfulness" prongs and while they "remain distinct concepts...courts must take care not to conflate them." *Frazier*, 387 F.3d at 1260 (citing *Quiet Tech*, 326 F.3d at 1341).

In determining the reliability of a scientific expert opinion, the Eleventh Circuit also considers the following factors to the extent possible:

> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community. Notably, however, these factors do not exhaust the universe of considerations that may bear on the reliability of a given expert opinion, and a federal court should consider any additional factors that may advance its Rule 702 analysis.

*Quiet Tech*, 326 F.3d at 1341 (citations omitted). These are not "a definitive checklist or test," *Daubert*, 509 U.S. at 593, but are "applied in case-specific evidentiary circumstances," *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005). While this inquiry is flexible, the Court must focus "solely on principles and methodology, not on conclusions that they generate." *Daubert*, 509 U.S. at 594-95. Importantly, a "district court's gatekeeper role under Daubert 'is not intended to supplant the adversary system or the role of the jury." *Quiet Tech*, 326 F.3d at 1341 (quoting *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001)). Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instructions on the burden of proof are the tradition and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 580; *see also Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1306 (11th Cir. 2014) ("As gatekeeper for the expert evidence presented to the jury, the judge 'must do a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'") (quoting *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010)).

"The objective of [the gatekeeping role] is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). The district court's role is especially significant since the expert's opinion "can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert*, 509 U.S. at 595 (quoting Jack B. Weinstein, *Rule 702 of the Federal Rules of Evidence is Sound; It Should Not Be Amended*, 138 F.R.D. 631, 632 (1991)).

### III. ANALYSIS

#### A. *Whether Dr. Mason's methodology is reliable*

First, to assess whether Dr. Mason's expert opinions are reliable, we must apply the plain language of Rule 702 that requires an expert witness relying primarily on experience to "explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Frazier*, 387 F.3d at 1261 (citing Fed. R. Evid. 702 advisory committee's note (2000 amends.)); *see also Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995) ("One very significant fact to be considered is whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying.") (on remand).

The *Daubert* factors may still be applicable in non-scientific, experience-based expert reports, including: "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication… and (3) whether the technique is generally accepted in the . . . community." *Daubert*, 509 U.S. at 593-95. Further, "[t]he Eleventh Circuit affords a district court substantial discretion to decide how to test the reliability under *Daubert* of the type of experiential evidence presented by expert witnesses like [Dr. Mason]." *Berkley Ins. Co. v. Suffolk Constr. Co., Inc.*, No. 19-23059-CIV, 2023 WL 7010001, at *6 (S.D. Fla. Oct. 23, 2023) (finding Plaintiff's expert testimony unreliable under Daubert because the expert was unable to identify publications or scientific studies that supported his theories) (citing *Sumner v. Biomet, Inc.*, 434 F. App'x 834, 842 (11th Cir. 2011)). Moreover, while the Court must assess the admissibility of the proffered expert's methodology, "it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech.*, 326 F.3d at 1341.

In Dr. Mason's report, he renders his expert opinion as to the "economic damages" in Plaintiff's case, specifically considering "the past and future lost income and fringe benefits for [Plaintiff] as the result of her dismissal from the Miami-Dade County Police Department." [D.E. 72 at 2]. Plaintiff argues that Dr. Mason's report is reliable because his methodology involved the application of standard theories of economics, his theory has been peer-reviewed, and his techniques are generally accepted in the community of economics. Additionally, Dr. Mason considered a list of materials in developing his opinions, using an alternative retirement system (the

FRS) to base his opinion. In fact, Plaintiff suggests that Dr. Mason was in no way required to use the City Code or CBA to provide admissible testimony on the issue of economic loss, believing that the testimony should be admitted, and that Defendants' concerns would be addressed when the factfinders determine the credibility and weight of the testimony.

Plaintiff does not contest, however, that, although the report may accurately apply the equations Dr. Mason utilized from the FRS, the entire report is based on the wrong retirement system. Instead of using the retirement, pension, and fringe benefit plans that the City and Plaintiff were a part of, Dr. Mason used a completely separate, unrelated, and different system with distinct equations and calculations. Perhaps his report would be useful in a case where the parties were a part of the FRS, but that is not the case here. Consequently, Defendants argue, Dr. Mason's entire expert opinion is based on a system that is not even remotely relevant to the present case and should be stricken.

Plaintiff disagrees that using a different system undermines the ultimate reliability of the expert's conclusions, referring to it simply as an "alternate retirement system." But Plaintiff's position on this key point is simply not persuasive. Relying on an entirely different retirement system, which neither party is or was a part of, which cannot possibly have any direct bearing on Plaintiff's future earnings, is fatal to the expert's reliability. The entire report is incorrect, and thus unreliable, because it was not based on sufficient facts, or in this case, the right facts. Dr. Mason's testimony must be supported on "good grounds" based on what is known, and the use

of the wrong underlying factual predicate to form his opinion means that it is not based on good grounds. As the Eleventh Circuit has repeatedly recognized, a trial court should not weigh competing expert opinions; it should instead determine if the underlying methods used to reach that opinion are sound and have a meaningful relationship to the issues in a case. If, for instance, an expert is basing his opinions on calculations or testing that are too dissimilar to the conditions at issue, then a court under *Daubert* is properly excluding that opinion on both relevance and reliability grounds. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1293 (11th Cir. 2005) (affirming exclusion of expert opinion that sought to apply testing from one location to a different location; "As we have explained, the district court's exclusion of Matson was based on its rejection of his methodology to derive temperature data, not the data itself. Thus, the district court's exclusion of Matson can be distinguished from a situation in which an exclusion is based on a district court's refusal to credit hard data arrived at by unassailable methods.").

Exclusion under these circumstances is warranted based on the Supreme Court's warning that expert testimony should not be admitted based on the "ipse dixit" nature of the expert's conclusions: "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Thus, a court is correctly exercising its discretion by excluding expert evidence that is patently imprecise or unspecific, *e.g., Cook ex rel. Est. of Tessier v. Sheriff of*

*Monroe Cnty.*, 402 F.3d 1092, 1111 (11th Cir. 2005), or that is too attenuated to the facts at issue in the case because the expert simply lacked sufficient information, *e.g., Hughes v. Kia Motors Corp.*, 766 F.3d 1317, 1330 (11th Cir. 2014). As the Court put it, "something doesn't become scientific knowledge just because it's uttered by a scientist; nor can an expert's self-serving assertion that his conclusions were derived by the scientific method be deemed conclusive." *McDowell v. Brown,* 392 F.3d 1283, 1299 (11th Cir. 2004) (alteration in original) (internal quotation marks omitted); *see also Daubert*, 509 U.S. at 593 (the Court must consider "whether [the] reasoning or methodology properly can be applied to the facts in issue").

Applying these principles, our court has had to exclude expert opinions as unreliable because "the principles, theories, and methodologies behind the opinion [must be] scientifically valid and [applicable] to the facts at issue in the case…." *City of South Miami, et al., v. Ron DeSantis, et al.*, 2020 WL 7074644, at *10-11 (S.D. Fla. Dec. 3, 2020). Here, given Dr. Mason's use of the FRS instead of the CBA or the City Code, his expert report cannot be properly applied to the facts at issue or to the case at all. *See Daubert*, 509 U.S. at 597 ("[T]he Rules of Evidence—especially Rule 702— do assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."). Because the calculations generated by Dr. Mason were based on the wrong system, and thus, factually unrelated to the case, the report and his conclusions are too factually dissimilar to this case and thus unreliable.

Undeterred, Plaintiff resorts to the familiar argument that Defendants' objections go toward the weight of the evidence and not its admissibility, suggesting that the factfinders will resolve any disputes over credibility and weight of this testimony. However, Defendants do not scrutinize the reliability of the expert's methodological application using the FRS system. In fact, Defendants admit that the expert's application is sound, if it had any bearing with the facts in this case. Instead, they contest the underlying methodology on the grounds that the wrong system was used to generate the calculations, rendering them unreliable, irrelevant, and inadmissible. That challenge is very well taken in this case. *See, e.g., Knepfle v. J-Tech Corp.*, 48 F.4th 1282, 1296 (11th Cir. 2022) (affirming exclusion causation expert whose "entire claim distills to the contentions that [he] is an expert, he looked at the available evidence, and deduced what happened. Quite simply, Knepfle relies on [the expert's] unreliable *ipse dixit*. . . . Consequently, the district court did not abuse its discretion by finding that [the expert's] methodology concerning the helmet liner compression was unreliable."); *Rink v. Cheminova, Inc.*, 400 F.3d at 1293 ("As we have explained, the district court's exclusion of Matson was based on its rejection of his methodology to derive temperature data, not the data itself. Thus, the district court's exclusion of Matson can be distinguished from a situation in which an exclusion is based on a district court's refusal to credit hard data arrived at by unassailable methods."); *City of South Miami,* 2020 WL 7074644, at *13 ("There is an important distinction between scrutinizing the reliability of an expert opinion's underlying methodology (or principles) and scrutinizing the expert's application of

that methodology. Challenging the underlying methodology in general is an admissibility issue; challenging the expert's application of that methodology is an accuracy issue.") (citations omitted).

Therefore, considering Dr. Mason's usage of the incorrect retirement system to calculate damages, coupled with his failure to demonstrate why that renders his opinion here relevant or reliable in any meaningful way. Mason's expert report is unreliable, and therefore inadmissible.

### B. *Whether Dr. Mason's testimony will assist the trier of fact*

Next, we assess whether Dr. Mason's testimony would assist the trier of fact.

The reliability of expert testimony is a prerequisite for its helpfulness. *See City of South Miami, et al.*, 2020 WL 7074644, at *11 (finding that, to satisfy reliability, "the principles, theories, and methodologies behind the opinion [must be] scientifically valid and [applicable] to the facts at issue in the case…"); *Daubert*, 509 U.S. at 591-92, (finding that helpfulness "requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility"). If the testimony is deemed unreliable, it fails to meet the criteria for admissibility and cannot assist the trier of fact in understanding the evidence or determining a fact in issue. *See, e.g., Reed v. Royal Caribbean Cruises Ltd.*, LEXIS 154175, at *24 (Fla. S.D. Mar. 3, 2021) (finding that, "because [the expert's opinions] are unreliable they will not assist the trier of fact understand evidence or determine a fact at issue"); *Farley v. Oceania Cruises, Inc.*, No. 13-20244-CIV, 2015 LEXIS 30576, at *9 (S.D. Fla. Mar. 12, 2015) ("Having

determined that [the expert's] methodology is not reliable, the Court agrees with the defendant that his opinions will not assist the trier of fact.").

Therefore, given the previous determination that Dr. Mason's report is unreliable, his report is also not helpful to the jury under Rule 702, and thus, inadmissible on that basis as well.

## IV.   CONCLUSION

For the reasons set forth above, Defendants' Motion to Strike Plaintiff's Expert Witness and Amended Expert Report is **GRANTED**.  Dr. Mason's testimony is excluded from trial under *Daubert*.

**DONE and ORDERED** in Chambers in Miami, Florida, this 3rd day of September, 2024.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge