UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:22-cv-21004-MD

**JESSICA GUASTO**,

    Plaintiff,

vs.

**THE CITY OF MIAMI BEACH, FL**,
a Florida municipality,

    Defendant.
_____/

## **JOINT PRETRIAL STIPULATION**

Plaintiff, JESSICA GUASTO ("Plaintiff") and Defendant, CITY OF MIAMI BEACH ("City"), through their counsel and pursuant to Southern District of Florida Local Rule 16.1(e), and the Court's May 9, 2024, Order Setting Trial and Pre-Trial Schedule, Requiring Mediation and Referring Certain Matters to Magistrate Judge [DE 59], file this Joint Pretrial Stipulation.

    1.    **A short concise statement of the case by each party in the action.**

        A.    Plaintiff's Statement

Plaintiff dedicated more than nine (9) years of exemplary service to Defendant as a police officer, quickly rising up the ranks and eventually reaching the rank of police sergeant in 2017. Plaintiff served as a police sergeant up until Defendant invoked her letter of resignation.

Earlier in Plaintiff's career, in February of 2014, Lieutenant Steven Cosner ("Cosner") began a series of unwanted sexual advances towards Plaintiff. Cosner gave Plaintiff a vulgar Valentine's Day card featuring a man offering a woman a chocolate in the shape of a penis, stating "try the one in the center, it's cream filled." *See* D.E. 78-1. Cosner wrote, "Love you Sweetie!! xxoo" on the card. *Id*. Plaintiff, who was 22 at the time, expressed to Cosner that she did not want a romantic relationship, but Cosner, in his 40s, continued to pursue her.

Cosner's unwanted sexual advances persisted in April of 2014 when he gave Plaintiff another card for her birthday, expressing his love and referring to her as "babydoll" and "princess." *See* D.E. 78-2. Despite Plaintiff's rejections, Cosner testified that she meant a lot to

1

him and even played a role in his decision to separate from his wife. *See* D.E. 69-6, Cosner TR:32:7-11, Cosner TR:34:11-14. Cosner's frustration grew when he saw Plaintiff with another man, further intensifying his emotional reaction toward her. *Id*. at TR:33:3, 22.

Plaintiff consistently rejected Cosner's advances, which he did not handle well. Eventually, their relationship soured to the point where Cosner ignored Plaintiff entirely after she made it clear that she did not welcome his romantic gestures. The tension between them became evident when they stopped communicating altogether. *See* D.E. 69-18, Plaint. Vol. I, TR:53:22-24.

Plaintiff later entered into a relationship with Nicholas Guasto ("Guasto") in 2019, eventually marrying him in 2021 and divorcing in 2023. Guasto was and is currently employed as a police officer for Defendant. Guasto simultaneously serves as a Board Member for the Fraternal Order of Police ("FOP"), the City of Miami Beach's police union, in the capacity of State Trustee.

On July 13, 2020, Plaintiff filed an EEOC Charge against Defendant, alleging unlawful discrimination and retaliation. *See* D.E. 71-3. Shortly thereafter, in September of 2020, Guasto was pressured by then-Chief of Police Richard Clements ("Clements") to convince Plaintiff to drop her 2020 EEOC charge in exchange for leniency in a pending internal affairs case. *See* D.E. 78-3. Clements contacted Mr. Guasto via indirect means, including third-party calls, to avoid records of their conversations. *Id*.

Ultimately, Plaintiff and Defendant settled the EEOC Charge, resulting in Plaintiff's agreement to enter into a Last Chance Agreement and serve a brief suspension. *See* D.E. 71-4. Plaintiff's Settlement Agreement for her 2020 EEOC Charge explicitly included a provision that required her to execute the Last Chance Agreement. *See* D.E. 71-4 at p.2.

Upon Plaintiff's very first shift back to work following the settlement of her 2020 EEOC Charge, Cosner was assigned to supervise Plaintiff. Cosner had never supervised Plaintiff previously. During this shift, Cosner was hours late in assigning Plaintiff tasks and emailed her, "forgot to send this to you. Please assign." *See* D.E. 78-4. Plaintiff completed the assigned tasks, but Cosner later filed an Administrative Action Form ("AAF") accusing Plaintiff of violating twelve (12) Department Rules and Regulations ("DRR"). *See* D.E. 78-6. Cosner later admitted that DRR violations are subjective and that he made an error in selecting at least one DRR that he accused Plaintiff of violating. *See* D.E. 69-6, Cosner TR:115:16-17, Cosner TR:130:10-20.

Additionally, Cosner ignored protocol and bypassed the standard chain of command by sending the AAF directly to Michael Elkins, counsel for Defendant, rather than to his commanding officer. *See* D.E. 78-8. Exactly one minute later, Cosner forwarded the AAF to A.J. Prieto, employed by Defendant as Internal Affairs Commander, stating, "I was advised to forward this to you." *See* D.E. 78-9. Again, Cosner submitted this form outside of the chain of command. At no point was a formal internal affairs investigation conducted into Cosner's allegations against Plaintiff, which was against typical procedure.

Following Cosner's submission of his AAF, Clements held a meeting involving several

members of the FOP, Cosner, and Plaintiff. Clements denied Plaintiff the right to an attorney at this meeting. *See* D.E. 69-24, Lester TR:35:19-20; *See* D.E. 69-23, Ozaeta TR:49:2-14. Clements further told members of the meeting that he would fire Plaintiff immediately if any FOP member objected to the meeting from going forward. *See* D.E. 69-23, Ozaeta TR:49:15-19, Ozaeta TR:50:2-10. Ultimately, Clements cited to Cosner's unverified, inaccurate, and subjective AAF, along his own unverified and unofficial findings, before invoking Plaintiff's letter of resignation. Defendant did not conduct any official internal affairs investigation into Plaintiff's actions prior to invoking her letter of resignation.

Quite simply, Defendant ignored its policies and procedures to invoke Plaintiff's letter of resignation at the first chance it could, her first shift following the settlement of her 2020 EEOC Charge.

### B. Defendant's Statement

This is an employment discrimination case brought by Plaintiff, a former Sergeant with the City's Police Department. On April 2, 2022, Plaintiff filed a ten (10) count Complaint [DE 1]. On July 10, 2023, this Court issued its order dismissing eight (8) of the ten (10) counts [DE 32][1] leaving only Counts III and IV, which are claims for retaliation under Title VII and the Florida Civil Rights Act ("FCRA") respectively.[2]

Plaintiff, now on her fifth lawyer, alleges that she was retaliated against by both Lieutenant Steven Cosner ("Lieutenant Cosner") and then-Chief of Police Richard Clements ("Chief Clements") for filing her second EEOC charge of discrimination against the City on July 13, 2020 ("2020 Charge"). Importantly, Plaintiff's 2020 Charge came after she was placed under investigation by the City's Internal Affairs Department ("IA") on April 23, 2020 (the "IA Case").

On or about December 18, 2023, Plaintiff, the Fraternal Order of Police ("FOP" or "Union"), and the City entered into a Settlement Agreement and a Last Chance Agreement. During the negotiation of the Settlement Agreement and Last Chance Agreement, Plaintiff was represented by two lawyers and her Union President.

As part of the Last Chance Agreement, Plaintiff: (1) executed an Irrevocable Letter of Resignation ("Resignation"), (2) became an employee at will, and (3) admitted that she engaged in the conduct that formed the basis of the IA Case. The Last Chance Agreement makes no mention of the 2020 Charge. Instead, it addresses, among other things, what happens if Plaintiff engages in conduct like her conduct in the IA Case.

---

[1] The remaining counts are only against the City. Therefore, former Defendants Richard Clements ("Clements") and Steven Cosner ("Cosner") were dismissed as part of the Court's Order. *See* DE 32 (dismissing all counts against Clements and Cosner).

[2] Courts in the Southern District of Florida apply the same legal analysis to claims brought under Title VII and the FCRA. *See Su v. Broward County, Florida*, Case No. 0:23-CV-61385-CIV-DIMITROULEAS, 2024 WL 1236243, at *3 (S.D. Fla. Mar. 1, 2024) (*citing Wilbur v. Corr. Servs. Corp.*, 393 F.3d 1192, 1195 n.1 (11th Cir. 2004) ("The [FCRA] was patterned after Title VII, and Florida courts have construed the act in accordance with decisions of federal courts interpreting Title VII.")).

As part of the Settlement Agreement, Plaintiff accepted a 160-hour suspension and agreed to pay the City a total of $3,531.20 in resolving the allegations against her in the IA Case.

On or about January 8, 2021, Lieutenant Cosner, who supervised Plaintiff during a shift that spanned December 27-28, 2020, made allegations against Plaintiff via an Administrative Action Form ("AAF"). *See* Facts ¶ 40. Lieutenant Cosner did not know about Plaintiff's 2020 EEOC Charge or her Last Chance Agreement at the time he made the allegations.

On January 25, 2021, the City implemented Plaintiff's Resignation.

There is no causal connection between Plaintiff's protected activity (her 2020 Charge) and the City implementing her resignation. At the time Lieutenant Cosner made his allegations against Plaintiff, he did not know about Plaintiff's 2020 Charge or her Last Chance Agreement. More to the point, Lieutenant Cosner was not a decision-maker, and he did not influence the decision-maker, Chief Clements. As to the decision-maker, Chief Clements, there is no evidence that his decision to implement Plaintiff's Resignation was motivated, in any way, by her protected activity.

In fact, the evidence is the opposite. The allegations from Lieutenant Cosner are strikingly like Plaintiff's conduct in the IA Case. Therefore, pursuant to the Last Chance Agreement, the City properly implemented Plaintiff's Resignation.

Significantly, neither Plaintiff Union nor either of her attorneys at the time challenged the City's implementation of her Resignation. There is simply no evidence of any connection between Plaintiff's protected activity and the City implementing her Resignation.

Plaintiff alleges that the allegations from Lieutenant Cosner are false. However, when asked about each allegation and whether they were false, Plaintiff repeatedly testified "I don't know." Plaintiff's entire theory of this case is that in 2015, she rejected Lieutenant Cosner's romantic advances, that he harbored resentment and anger from 2015 until 2020, and in 2020, saw an opportunity to get back at Plaintiff and took it. There is no evidence to support this theory.

    2.    **<u>The basis of federal jurisdiction</u>.**

    28 U.S.C. §§ 1331 and 1367.

    3.    **<u>The pleadings raising the issues</u>.**

    Complaint [DE 1].

    Order Granting Defendant's Motion to Dismiss [DE 32].

    Defendant's Answer and Affirmative Defenses to Plaintiff's Complaint [DE 34].

4. **A list of all undisposed of motions or other matters requiring action by the Court.**

Defendant's Fully Dispositive Motion for Summary Judgment [DE 70].

Plaintiff's Motions in Limine [DE 85].

Defendant's Motions in Limine [DE 87].

5. **A concise statement of uncontested facts which will require no proof at trial, with reservations, if any.**

On or about January 27, 2012, the City hired Plaintiff for the position of Police Officer. On August 31, 2018, Plaintiff filed a Charge of Discrimination ("2018 Charge") with the EEOC. On July 13, 2020, Plaintiff filed her second EEOC Charge against the City, EEOC Charge No. 510-2020-04794 ("2020 Charge"). On or about December 18, 2023, Plaintiff, the FOP (Plaintiff's Union at the City), and the City entered into a Settlement Agreement and a Last Chance Agreement. As part of the Last Chance Agreement, Plaintiff executed an Irrevocable Letter of Resignation ("Resignation"). On January 25, 2021, then-Chief of Police Richard Clements, issued a Memorandum to Plaintiff, notifying Plaintiff of his decision to implement her resignation. On June 22, 2021, Plaintiff filed her third EEOC Charge against the City, EEOC Charge No. 510-2021-05270 ("2021 Charge"). On April 2, 2022, Plaintiff filed her Complaint.

6. **A statement in reasonable detail of issues of fact which remain to be litigated at trial.**

Whether Lieutenant Cosner was involved in the conduct leading to Plaintiff's 2020 Charge.

Whether Plaintiff's Last Chance Agreement was connected to her 2020 Charge.

Whether Lieutenant Steven Cosner knew about Plaintiff's Last Chance Agreement and/or 2020 Charge at the time he wrote the Administrative Action Form.

Whether Richard Clements repeatedly approached Nicholas Guasto to persuade Plaintiff to withdraw her EEOC Charge. The City contends that this issue is irrelevant and therefore, the City disputes that this is an issue of fact that remains to be litigated at trial.

Whether Cosner's AAF was procedurally proper. The City contends that this issue is irrelevant and therefore, the City disputes that this is an issue of fact that remains to be litigated at trial.

Whether there was a formal investigation into the allegations of Cosner's AAF in accordance with Defendant's policies. The City contends that this issue is irrelevant and therefore, the City disputes that this is an issue of fact that remains to be litigated at trial.

Whether there was a formal investigation into Plaintiff's statements prior to Defendant invoking her letter of resignation. The City contends that this issue is irrelevant and therefore, the City disputes that this is an issue of fact that remains to be litigated at trial.

Whether then-Chief of Police Richard Clements considered Plaintiff's protected activity in implementing her Irrevocable Letter of Resignation.

7. **A concise statement of issues of law on which there is agreement.**

The parties agree that Plaintiff engaged in protected activity and suffered an adverse action.

8. **A concise statement of issues of law which remain for determination by the Court.**

Whether there is causal connection between the adverse action and Plaintiff's protected activity.

Whether Plaintiff mitigated her damages.

Whether Plaintiff is entitled to back pay.

9. **Each party's numbered list of trial exhibits, other than impeachment exhibits, with objections.**

Plaintiff's Exhibit List is attached as Exhibit A.

Defendant's Exhibit List is attached as Exhibit B.

10. **Each party's numbered list of trial witnesses.**

Plaintiff's Witness List is attached as Exhibit C.

Defendant's Witness List is attached as Exhibit D.

The Parties note that Police Officer home addresses are redacted for safety purposes.

11. **Estimated trial time.**

The parties estimate that trial will last 3 – 4 days.

12. **Where attorney's fees may be awarded to the prevailing party, an estimate of each party as to the maximum amount properly allowable.**

Plaintiff estimates that her prevailing party reasonable attorney's fees and costs will be

more than One Hundred and Seventy-Five Thousand Dollars and 00/100 ($175,000.00).

Defendant estimates that its prevailing party reasonable attorney's fees and costs will be more than One Hundred Thousand Dollars and 00/100 ($100,000.00).

Dated: September 18, 2024

By: /s/ Michael L. Elkins
Michael L. Elkins, Esq
Florida Bar No. 523781
melkins@mlelawfirm.com
**MLE LAW**
1212 NE 16th Terrace
Ft. Lauderdale, FL 33304
Telephone: 954.401.2608
*Co-counsel for Defendant*

/s/*Henry J. Hunnefeld*
Henry J. Hunnefeld, Esq.
Florida Bar No. 343811
henryhunnefeld@miamibeachfl.gov

By: /s/*Benjamin J. Braun*
Benjamin J. Braun, Esq.
Florida Bar No. 1017937
benjaminbraun@miamibeachfl.gov

**CITY OF MIAMI BEACH**
**CITY ATTORNEY**
City Attorney's Office
1700 Convention Center Drive
Fourth Floor- Legal Department
Miami Beach, FL 33139
Telephone: 305.673.7470
*Co-Counsel for Defendant*

By: /s/ Daniel J. Barroukh
Daniel J. Barroukh, Esq.
Florida Bar No. 1049271
danielb@dereksmithlaw.com
**DEREK SMITH LAW GROUP**
520 Brickell Key Drive
Suite O-31
Miami, Florida 33131
Telephone: 786.688.2335
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 18, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                                    *s/Michael L. Elkins*
                                                    Michael L. Elkins

## SERVICE LIST

CASE NO.: 1:22-cv-21004-MD

Daniel J. Barroukh, Esq.
danielb@dereksmithlaw.com
**DEREK SMITH LAW GROUP, PLLC**
520 Brickell Key Drive
Suite O-301
Miami, FL 33131
Telephone: 786.688.2335
*Counsel for Plaintiff*